IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSE JUAN MAYSONET, JR., Plaintiff, v. REYNALDO GUEVARA, et al., Defendants. | Case No. 18-cv-2342  Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jose Juan Maysonet, Jr. brings suit under federal and state law against six Defendant police officers, former Cook County State's Attorney Frank DiFranco, Cook County, and the City of Chicago (the "City"), challenging his arrest, prosecution, and conviction for a double homicide in 1990. Before the Court is Defendant City of Chicago's motion to bifurcate Plaintiff's *Monell* claims and to stay *Monell* discovery under Federal Rule of Civil Procedure 42(b) [94]. For the reasons stated below, the City's motion is denied.

## BACKGROUND

This case arises from Plaintiff's arrest and conviction for the murders of Torrence and Kevin Wiley in 1990. After spending 27 years in prison, Maysonet's conviction was vacated on November 15, 2017. Plaintiff brings this suit pursuant to 42 U.S.C. §1983, and various state law causes of action, claiming that several City of Chicago police officers, together with Di Franco, violated his due process rights by (1) manipulating and coercing Maysonet into giving a false confession, (2) fabricating

1

inculpatory evidence, (3) suppressing exculpatory evidence, (4) conspiring to deprive Maysonet of his constitutional rights, and (5) failing to intervene to protect those rights. Maysonet also alleges, pursuant to *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), that these actions were facilitated by or carried out pursuant to City policies and that the City failed to adequately train, supervise, investigate and discipline its officers. At present, the City seeks to bifurcate Plaintiff's *Monell* claims and stay *Monell* discovery under Federal Rule of Civil Procedure 42(b).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). The Seventh Circuit has emphasized that only one of the above criteria, prejudice or judicial economy, needs to be satisfied for a court to grant bifurcation, but the court must ensure that "doing so will not prejudice the non-moving party or violate the Seventh Amendment." *Chlopek v. Fed. Ins. Co.,* 499 F.3d 692, 700 (7th Cir. 2007). The district court has considerable discretion in deciding whether to bifurcate claims. *See e.g., Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000). "[T]he decision to grant or deny bifurcation is a heavily fact-intensive analysis, dependent upon costs and benefits of bifurcation under the unique circumstances of each case." *Awalt v. Marketti,* No. 11 C 6142, 2012 WL 1161500, at *10 (N.D. Ill. April 9, 2012).

## ANALYSIS

### I. Judicial Economy

The City argues that bifurcation would avoid unnecessary litigation and discovery. Because Maysonet's *Monell* claim is contingent on a finding of liability against the Defendant officers, the City argues, the *Monell* claim may not need to be adjudicated at all.

#### A. Pendency of *Monell* Claim on Individual Officer Liability

The Seventh Circuit has made clear that "a municipality can be held liable under *Monell*, even when its officers are not, unless such a finding would create an *inconsistent* verdict." *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010) (emphasis in original). Inconsistency is assessed by considering "the nature of the constitutional violation, the theory of municipal liability, and the defenses set forth." *Id.*

Maysonet alleges several theories of *Monell* liability against the City, including that the City maintained policies that facilitated the fabrication of evidence, abusive interrogation methods, and the suppression of exculpatory evidence. Although the parties do not dispute that most of these theories would require a finding of misconduct on behalf of the Defendant officers, Maysonet argues that his suppression of exculpatory evidence claim is not contingent on individual officer misconduct. Maysonet alleges:

> [M]embers of the Chicago Police Department … systematically suppressed exculpatory and/or impeaching memos and other information in files that were maintained solely at the police department and were not disclosed to the participants of the criminal justice system. As a matter of widespread

3

>custom and practice, these clandestine files were withheld from the State's Attorney's Office and from criminal defendants, and they were routinely destroyed at the close of the investigation, rather than being maintained as part of the official file.

(Dkt. 1 at ¶214). According to Maysonet "a jury might find that the individual defendants put investigative materials where they were supposed to in police department files, but that the City had no mechanism for ensuring those files were turned over to Plaintiff or the attorneys involved in his criminal prosecution." (Dkt. 107 at 6-7).[1] Courts in this district have recognized that under similar facts, *Monell* liability against the City is not necessarily dependent on a finding of liability against the individual officers. For instance, in *Gomez v. Guevara et al.*, the court denied bifurcation:

>[W]ith respect to the evidence suppression allegations, the jury could presumably find that the Defendant Officers put the evidence in its proper place within the Chicago Police Department files, but that the City had no mechanism for guaranteeing that those files were turned over in the litigation process. This finding would not be contingent on the jury determining that the individual officers intentionally suppressed evidence. . . . Therefore, Gomez's asserted *Monell* claim could still proceed independent of the Defendant Officers individual liability. Accordingly, bifurcation would not serve the interests of judicial economy on this ground.

No. 18c3335, 2019 U.S. Dist. LEXIS 155120, *8; *10 (N.D. Ill. April 8, 2019); *see also Cage v. City of Chicago*, No. 9 C 3078, 2010 WL 3613981, at *2 (N.D. Ill. Sept. 8, 2010)

---

[1] The City, citing to *Mitchell v. City of Chicago*, No. 18 C 7375, (N.D. Ill. Sept. 19, 2019), contends that this argument should be rejected because Maysonet's Complaint does not allege that the City's filing system prevented production of exculpatory information. (Dkt. 94-1 Ex. 5 at 2). The Court disagrees. Maysonet alleges that a "clandestine" filing system prevented the disclosure of exculpatory information. (Dkt. 1 at ¶214). The Plaintiff in *Mitchell*, on the other hand, alleged "*only* that the individual defendants intentionally withheld or destroyed exculpatory information … and *only* that the City's policy was to systematically suppress[ ] evidence pertaining to … fabricated and coerced statements." (*Id.*) (emphasis in original).

4

(jury could hold the City liable for a policy of not providing exculpatory evidence to the defense despite the individual actors not intending to withhold evidence). Additionally, because each of the individual Defendants asserts a defense of qualified immunity in this case, this too creates the possibility that a jury could find the City liable for *Monell* violations despite the individual officers being shielded from liability. *See Cage,* 2010 WL 3613981, at *2 ("Moreover, some of the individual defendants have asserted a defense of qualified immunity, and if [plaintiff] can establish it was the policy of the Chicago Police Department crime lab to withhold exculpatory evidence, a verdict could exist against the municipality but in favor of the individual defendants."); *Medina v. City of Chicago*, 100 F. Supp. 2d 893, 896 (N.D. Ill. 2009) ("Thus when a plaintiff loses his claim against a police officer based on qualified immunity, he can still recover against the municipality if he can prove a constitutional deprivation caused by a municipal policy or custom.").[2]

Accordingly, bifurcation weighs against the interests of judicial economy.

### B. Increased Discovery Burden and Expense

Given the expansive breadth and scope of Maysonet's *Monell* allegations and discovery requests to date, the City next argues the increased discovery burden and expense of proceeding with the *Monell* claim is grounds for bifurcation. Although the Court acknowledges the significant burden of *Monell* discovery, this burden is

---

[2] The City argues that the individual Defendants' assertions of qualified immunity will not create inconsistent verdicts because the constitutional violations alleged by Maysonet are clearly established. It is too early to reach this conclusion. Indeed, the assertion of qualified immunity, unless brought in bad faith, reflects an expectation that the evidence may reveal ambiguities such that the court or a jury could find that the officers did not violate clearly established law.

5

mitigated by the fact that *Monell* discovery including written policies and training manuals, employee records, and samples of homicide and or CR files have or will be produced in other cases involving a similar group of Chicago Police Officers including *Rivera v. Chicago*, No. 12c4428 (N.D. Ill.); *Fields v. Chicago*, No. 10c1168 (N.D. Ill.); *Ryes v. Guevara, et al*, No. 18c1028 (N.D. Ill.); *Gomez*, No. 18c335 (N.D. Ill.); *Reyes & Solache v. Guevara*, Nos. 18 18c1028 & 18c2312 (N.D. Ill.); *Almodovar v. Guevara*, Nos. 18c2341 & 18c2701 (N.D. Ill.); *Sierra v. Guevara*, No. 18c3029 (N.D. Ill.); and *Bouto v. Guevara*, No. 19cv2442 (N.D. Ill.). Other courts have reached similar conclusions. *See e.g., Rodriguez v. City of Chicago*, No. 18-CV-7951, 2019 WL 4278501, at *2 (N.D. Ill. Sept. 10, 2019), objections overruled, 429 F. Supp. 3d 537 (N.D. Ill. 2019) ("This is …. one of several cases alleging the same pattern and practice of fabricating incriminating evidence and hiding exonerating evidence against a similar group of Chicago Police Officers that is currently being litigated in several courts in the Northern District of Illinois. At least one of these cases, *Rivera*, has already been tried to a jury, and gone through *Monell* discovery. As such, much of the discovery on *Monell* liability has already been done by the City at least once, and it will not need to expend significant time or resources to complete it."); *Cadle v. City of Chicago*, No. 15 C 4725, 2015 WL 6742070, at *2 (N.D. Ill. Nov. 2, 2015) ("The City is very familiar with this type of discovery, and the Court has no doubt that the City has produced similar information in other cases. The incremental burden of doing so again here does not militate heavily in favor of bifurcation."). Although the discovery in these cases does not completely overlap in terms of time period or subject matter, it overlaps

enough to decrease the burden of discovery. Additionally, to the extent the City finds Plaintiff's *Monell* discovery requests overly broad or unduly burdensome, "the parties can seek assistance from the Court to tailor the requests as necessary after making independent good faith attempts to do so." *Estate of McIntosh v. City of Chicago*, 2015 WL 5164080, at *8 (N.D. Ill. Sept. 2, 2015).

Moreover, much of the evidence required to litigate the individual claims will be relevant to the *Monell* claim and *vice a versa*, such that bifurcation could result in two rounds of depositions and document production. *See e.g., Gomez*, 2019 U.S. Dist. LEXIS 155120, at *11 (denying bifurcation of *Monell* claim in part because in § 1983 cases "there is a significant overlap in the witnesses, experts, and evidence" such that it "could create double work in the sense of, for example, needing to depose witnesses or solicit testimony first regarding [plaintiff's] specific case and a second time regarding how the City's policies impacted that case work."). The City argues that all but one of the Defendant officers, as well as some third-party officers and witnesses, have already been deposed on *Monell*-related questions, such that they would not need to be deposed again. But in the case that there is a second trial, Plaintiff would certainly seek the right to ask these individuals *Monell*-related questions and request *Monell*-related documents that were not produced earlier. Thus, because bifurcation would likely duplicate discovery efforts and expense, and because the burden of unitary discovery is lessened by the expanse of similar litigation, the interests of judicial economy weigh against bifurcation.[3]

---

[3] In the alternative, the City requests the Court to stay *Monell* discovery and revisit the issue of bifurcation after summary judgment assuming Plaintiff's claims will have been narrowed. The Court

7

## II. Prejudice

The Court also considers whether bifurcation would avoid prejudice to the Defendants and concurrently addresses any prejudice to Maysonet from bifurcation. The City argues that if the claims against the Defendant officers and the *Monell* claim against the City are tried together, there is risk that the jury will impute evidence against the officers to the City and evidence against the City to the individual officers. Limiting instructions and other evidentiary tools are the proper mechanism to address this concern. *See e.g., Giles v. Ludwig*, No. 12–cv–6746, 2013 WL 6512683, at *2 (N.D. Ill. Dec. 6, 2013) (denying bifurcation because "any potential prejudice that might arise from a unitary trial can be mitigated through the use of limiting instructions, *motions in limine*, and the Rules of Evidence"). "Though the Court is cognizant of the possibility of prejudice to the individual officers [and the City] if the claims are tried together, our system generally trusts jurors to understand and follow limiting instructions regarding consideration of evidence against some defendants and not others …." *Medina*, 100 F. Supp. 2d at 897. Moreover, determining potential prejudice to parties at trial is often "premature and too speculative" at this stage of the litigation. *McIntosh*, 2015 WL 5164080, at *9; *Estate of Loury by Hudson v. City of Chicago*, No. 16-CV-04452, 2017 WL 1425594, at *4 (N.D. Ill. Apr. 20, 2017); *see also Jackson v. City of Chicago*, No. 14 C 6746, 2017 WL 8199322, at *3 (N.D. Ill. Dec. 12, 2017) ("[T]he better time to evaluate [prejudice from trying individual and *Monell*

---

declines to do so. As noted, there is likely to be significant overlap between the *Monell* claim and the individual claims such that it is more efficient to conduct unitary discovery. Also, the Court does not wish to referee the inevitable disputes about the scope of *Monell* versus non-*Monell* discovery.

8

claims together] is shortly before trial, when the court (and the parties) will have a much better understanding of the evidence and its relevance to the individual and *Monell* claims."). Defendants have not established that bifurcation is necessary to avoid prejudice in this case.

By contrast, despite the City's assurances to the contrary, bifurcation would prejudice Maysonet. The City asserts that if "any one of the Defendant Officers are found to have violated Plaintiff's constitutional rights, bifurcation of Plaintiff's *Monell* claim will not affect his recovery of any damages that a jury may award him" because the City agrees to "entry of a judgment against it for the amount of compensatory damages … that would be awarded by the jury, plus reasonable attorney's fees, without requiring Plaintiff to prove the elements of Section 1983 for municipal liability." (Dkt. 94 at 9). Because Maysonet is not entitled to any additional compensatory damages and he does not seek injunctive relief, the City argues that bifurcation would allow Plaintiff to recover the same amount of damages without having to litigate his *Monell* claim at all.

This argument overlooks the important nonmonetary considerations a plaintiff has in litigating a *Monell* claim against a municipality. *See e.g.*, *Loury*, 2017 WL 1425594, at *5 ("Plaintiff has other important objectives—most notably, deterrence and reform— that would be furthered by a judgment holding the City liable for the Defendant Officers' alleged misconduct."); *McIntosh*, 2015 WL 5164080, at *10 ("A judgment against a municipality can be a catalyst for change, because it not only holds that entity responsible for its actions and inactions, but also can encourage the

municipality to reform the patterns and practices that led to constitutional violations, as well as alert the municipality and its citizenry to the issue.") (internal quotations omitted). These nonmonetary interests are not moot simply because Maysonet does not pursue injunctive relief. That "argument misunderstands the policy value in finding that the City's policy and practices were constitutionally deficient, and the precedential value of such findings for other plaintiffs in future cases who might seek to hold the City liable for similar policies." *Bouto v. Guevara*, 19-cv-2441, 2020 WL 956294, at *3 (N.D. Ill. Feb. 27, 2020).[4]

Although some courts in this district have found that the City's willingness to consent to a judgment against it for compensatory damages adequately serves nonmonetary interests, *see Ezell v. City of Chicago*, No. 18 C 1049, 2019 WL 3776616, at *6 (N.D. Ill. Aug. 12, 2019); *Williams v. City of Chicago*, 315 F. Supp. 3d 1060, 1083–84 (N.D. Ill. 2018), others have found "such stipulations insufficient to justify bifurcation, noting that the plaintiff is entitled to be the master of her own complaint and pursue claims even if they have a minimal pecuniary reward." *Rodriguez v. City of Chicago*, No. 17 CV 7248, 2018 WL 3474538, at *3 (N.D. Ill. July 19, 2018) (citing *McIntosh*, 2015 WL 5164080, at *9; *Warren v. Dart*, No. 09 CV 3512, 2012 WL 1866372, at *2 (N.D. Ill. May 22, 2012)). Further, courts in this district have particularly taken issue with similar consents to judgment as offering little, if any,

---

[4] The City's argument that because the policies at issue are 25 years old and have been revised, any impact of a judgment that those policies violate the constitution would be limited at best is equally unavailing. The City has not shown that the pertinent policies have been meaningfully reformed such that a finding of *Monell* liability in this case would have no impact on institutional reform or deterrence.

10

deterrent effect where, as here, the proposal expressly denies any wrongdoing on the part of the City. *Rodriguez*, 2018 WL 3474538, at *3 ("A proposed consent judgment is particularly ill-designed to have any deterrent effect where, as here, it expressly denies any wrongdoing on the City's part."); *Loury*, 2017 WL 1425594, at *5 (noting same); *Giles*, 2013 WL 6512683, at *3.

The Court notes that bifurcation is essentially a means "to achieve a *de facto* dismissal of the *Monell* claim." *Gomez*, 2019 U.S. Dist. LEXIS 155120, *12-13; *see also Cadiz v. Kruger*, No. 06 C 5463, 2007 WL 4293976, at *10 (N.D. Ill. Nov. 29, 2007) ("If accepted, the City's bifurcation strategy would allow it to avoid the merits of virtually any *Monell* claim alleging police misconduct.") *and Kuri v. Folino*, 409 F. Supp. 3d 626, 653 (N.D. Ill. 2019) (denying plaintiff's motion to pursue bifurcated *Monell* claim after trial on individual claims explaining: "Since [plaintiff] is not able to collect anything in addition to th[e] [amount of compensatory damages awarded against the individual officers], regardless of any *Monell* claims, and since he has not brought claims against the City for injunctive relief, there is no live case or controversy against the City on which [plaintiff] can move forward.").

This Court will not deprive a plaintiff, particularly one who has spent 27 years in prison on a conviction that has been vacated by the state courts, a merits determination on a *Monell* claim. *Monell* claims are difficult to prove and consent to judgment agreements like that proposed here may pose a benefit to someone in Maysonet's position. But the Court will not *force* Maysonet to accept such an agreement and forfeit a merits determination on his *Monell* claim through the vehicle

11

of bifurcation. *See Cadiz*, 2007 WL 4293976, at *11 (the court "does not believe that the City should be allowed to deprive a plaintiff of a merits determination of a *Monell* claim by the expedient of agreeing to pay a judgment against its officers that the City may be statutorily or contractually obligated to pay anyway."). The City's motion is denied.[5]

## CONCLUSION

For the reasons set forth above, Defendants' motion to bifurcate and stay discovery is denied without prejudice.

E N T E R:

Dated: June 11, 2020

MARY M. ROWLAND
United States District Judge

---

[5] Because the Court has determined that bifurcation would prejudice the Plaintiff, it declines to address Maysonet's argument that bifurcation would violate the Seventh Amendment.

12