# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JOSE JUAN MAYSONET, JR.** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 18 CV 02342 |
| | ) | |
| v. | ) | |
| | ) | Hon. Mary M. Rowland |
| **REYNALDO GUEVARA, ERNEST** | ) | |
| **HALVORSEN, EDWARD MINGEY,** | ) | |
| **EPPLEN; FERNANDO MONTILLA,** | ) | |
| **ROLAND PAULNITSKY, FRANK** | ) | |
| **DIFRANCO, CITY OF CHICAGO, and** | ) | **JURY TRIAL DEMANDED** |
| **COOK COUNTY.** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S FOURTH REQUESTS TO PRODUCE
DOCUMENTS TO DEFENDANT CITY OF CHICAGO**

Plaintiff Jose Juan Maysonet Jr., by his undersigned attorneys, propounds the following Requests for Production of Documents pursuant to Rule 34 of the Federal Rules of Civil Procedure, and applicable local rules, upon Defendant CITY OF CHICAGO, to be answered in writing within thirty days after service hereof.

**DEFINITIONS AND INSTRUCTIONS**

1. Whenever the term Plaintiff, Jose Maysonet, Jose Juan Maysonet, Mr. Maysonet or Maysonet is used herein, it shall refer to Jose Juan Maysonet Jr.

2. "And" and "or" mean "and/or" so that the terms are given their broadest possible meaning. In construing a request, the singular shall include the plural and the plural shall include the singular, and the use of a masculine, feminine, or neutral pronoun shall not exclude any of the others. The past tense includes the present tense and the present tense includes the past tense,

1

where the clear meaning is not destroyed by the change.

3. "Relate," "relating to," or "regarding" shall mean directly or indirectly mentioning or describing, pertaining to, being connected with, reflecting upon, or having any logical or factual connection with a stated subject matter.

4. "Person" shall refer to any individual, corporation, partnership, organization, or other legal entity.

5. "Document" shall have the broadest possible meaning under the Federal Rules of Civil Procedure and shall include any handwritten, typed, photographed, computerized, audio, video, or other graphic matter, regardless of how it is printed, stored or reproduced, in the possession and/or control of Defendant or known by Defendant to exist, whether or not claimed to be privileged or otherwise excludable from discovery. Any document with any marks or notations, including but not limited to: initials; routing instructions; date stamps; and any comment, marking or notation of any character, is to be considered a separate document.

6. "Communication" means the exchange of information between two or more Persons, whether orally, in writing, or by any other means. Communication includes but is not limited to letters, memoranda, e-mail, notes, audio recordings, video recordings, SMS or text messages, Tweets, and other exchanges on social media such as but not limited to Facebook, Twitter, and Instagram.

7. If there are no Documents in Your possession, custody or control that are responsive to a particular request, please so state and identify such request.

8. If any Documents responsive to a request are known by You to exist but are not in Your possession, custody or control, please identify such request and identify those Document(s) and the Person who has possession, custody or control thereof.

9.      "Defendant Officers" shall refer to Defendants REYNALDO GUEVARA, ERNEST HALVORSEN, EDWARD MINGEY, LEE EPPLEN, FERNANDO MONTILLA and ROLAND PAULNITSKY, both individually and collectively, as well as their counsel and any consultants, experts, investigators, representatives, agents, or other Persons acting on their behalf.

10.     The "City of Chicago" or the "City" shall refer to Defendant City of Chicago, including its subdivisions, departments, agencies, police departments, subsidiaries, elected officials, corporate officers, and any other constituent entity within its control, including but not limited to the Independent Police Review Authority ("IPRA"), the Civilian Office of Police Accountability ("COPA"), the Office of Professional Standards ("OPS"), and the Internal Affairs division of the Chicago Police Department, as well as any counsel, consultants, employees, representatives, agents, contractors, experts, investigators, or other persons acting on their behalf.

11.     "Department" or "CPD" shall refer to the Chicago Police Department, as well as its counsel, consultants, employees, representatives, agents, contractors, experts, investigators, or other Persons acting on its behalf, including other law enforcement agencies and laboratories.

12.     The terms "You" and "Your" shall refer to the City of Chicago and/or the Department and/or agents of the City of Chicago, including its attorneys.

13.     "Jose Maysonet double murder investigation" shall mean any actions taken by You or any "Investigators" (as that term is defined below) relating in any way to the prosecution of Jose Maysonet in case numbers 92 CR 10146 and 90 CR 21787. This term is not limited solely to actions taken prior to the arrest of Jose Maysonet, but includes as well actions undertaken both before and after the arrest of Jose Maysonet, including any actions during Jose Maysonet's criminal trial and any actions up to and including the present day.

14. "Jose Maysonet attempt murder investigation" shall mean any actions taken by You or any "Investigators" (as that term is defined below) relating in any way to the prosecution of Jose Maysonet in case numbers 90 CR 18419. This term is not limited solely to actions taken prior to the arrest of Jose Maysonet, but includes as well actions undertaken both before and after the arrest of Jose Maysonet, including any actions during Jose Maysonet's criminal trial and any actions up to and including the present day.

15. "The Wiley brothers" shall mean Torrence Wiley and Kevin Wiley, the two male victims murdered on the morning of May 25, 1990 at 3428 W. North Avenue in Chicago, Illinois.

16. "Investigation of the Wiley brothers' murder" shall mean any actions taken by you or any "Investigators" (as that term is defined below) relating in any way to the investigation of the murders of the Wiley brothers. This term includes but is not limited to any action taken prior to the questioning and/or arrest of any potential "suspect" (as that term is defined below), any action undertaken during and after the arrest of any "suspects", any actions taken during and after the criminal prosecution of Jose Maysonet, Alfredo Gonzalez, Justino Cruz, and Christopher Hernandez (aka Christopher Goosens) and any actions up to and including the present day.

17. Whenever the term Christopher Goosens or Christopher Hernandez or Fro, is used herein, it shall refer to Christopher Goosens.

18. "Investigators" shall mean any Persons who materially participated in the Jose Maysonet double murder, Jose Maysonet attempt murder investigation or the investigation of the Wiley brothers' murder. This includes not only the named Defendants but also any other law enforcement officers, prosecutors, state investigators, co-workers, colleagues, assistants, agents,

advisors, or entities who furnished any material support to any Jose Maysonet investigation and/or the Investigation of the Wiley brothers' murder.

19.    "Suspects" shall mean any individual(s) who was suspected as a perpetrator in the Wiley brothers' murder. This includes, but is not limited to, any individual placed in a line-up, show-up or photo array, any individual(s) questioned, investigated, accused, indicted, formally charged, convicted, and/or pled guilty to the murder of the Wiley Brothers. This includes but is not limited to, the following individuals: Efrain Cruz ("King"), Francisco Veras ("Cisco"), Alfredo Gonzalez ("Lluvia"), Christopher Hernandez (aka Christopher Goosens) ("Fro"), Justino Cruz ("Tino") and Jose Maysonet.

20.    "Persons of interest" shall mean any individual who was considered and/or discussed as a potential as a person in the Wiley brothers' murder. This term includes but is not limited to any person who was questioned, considered, investigated, and/or spoken to regarding his or her knowledge of the Wiley brothers' murder investigation irrespective of whether that person was ever taken into custody.

21.    "Exculpatory Evidence" shall mean evidence favorable to Jose Maysonet and evidence that would tend to show that Jose Maysonet was not guilty of the criminal charges against him in People v. Maysonet, 92 CR 10146, 90 CR 21787, and/or 90 CR 18419, including any evidence that would tend to undermine the credibility of any prosecution witness who testified during Jose Maysonet's criminal proceedings.

22.    "Plaintiff's Complaint" shall mean the operative pleading entitled First Amended Complaint, which was filed in *Maysonet v. Guevara, et. al.,* Case No. 18-cv-02342 or if that Complaint is amended, the most recent amended complaint filed on Jose Maysonet's behalf at the time.

23.     "Complaint" refers to any complaint or criticism, including but not limited to written complaints, grievances, disciplinary records, personnel records, legal proceedings, or other Documents relating in any manner to Your job performance or the job performance of any of Your counsel, consultants, employees, representatives, agents, contractors, experts, investigators, or other Persons acting on Your behalf, regardless of the disposition of any resulting inquiry or investigation. This includes but is not limited to all citizen complaints made to IPRA, COPA, OPS, or the CPD's Internal Affairs Division, all Summary Punishment Action Requests ("SPARS") or other such departmental citations, all Counseling Records, and all lawsuits filed in either federal or state court alleging misconduct by a police officer.

24.     "Identify," with respect to a Person, shall mean to provide that Person's name, address, and telephone number. With respect to a Document, "identify" shall mean to provide the date of the Document, the author of the Document, the subject matter of the Document, and, where applicable, all recipients of the Document. With respect to a Communication, "identify" shall mean to provide the date of the Communication, the Person making the Communication, the subject matter of the Communication, and all Persons who received the Communication.

25.     "Street File" is defined as all Documents pertaining to a police investigation that are not provided to the prosecutor and/or the defendant for a pending criminal proceeding relating to that police investigation. This includes but is not limited to Documents that were not submitted to the Records Division of the Chicago Police Department for inclusion into the Permanent Retention File associated with a particular RD number, or which are not included in the Investigative File, the Investigative File Case Folder, or the Unit Investigative File. The definitions of "Street File" that are contained in *Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1988), and *Palmer v. City of Chicago*, 576 F. Supp. 1067 (N.D. Ill. 1983), are incorporated as if

fully stated herein. The term "street files" may include "running files"; files maintained on "clipboards"; and/or "officer files." To be clear, the term "Street Files" refers to all of the Documents from these Street Files, including any detective notes, memos and Witness Statements contained therein.

26.     "Permanent Retention File" is the file pertaining to a particular criminal investigation that is maintained by the Records Division of the Chicago Police Department and stored in the Records Division warehouse.

27.     "Investigative File" shall have the meaning given to it in CPD Special Order 83-1 and/or Special Order 86-3.

28.     "Investigative File Case Folder" shall have the same meaning attributed to it in CPD Special Order 83-1 and/or Special Order 86-3.

29.     "Witness Statement" includes any statement by an individual, made either orally or in writing, and memorialized in a General Progress Report ("GPR") or supplementary report, or by a stenographer, police officer or Assistant State's Attorney. Witness Statements also include any such statements by an individual that were not memorialized in any fashion.

30.     "Custody Logs" shall mean any document that identifies the date, time, location, and/or name of an individual in custody at any given time.

31.     "Allegation of Misconduct" refers to any complaint or criticism, including but not limited to written complaints, grievances, disciplinary records, personnel records, legal proceedings, or other Documents relating in any manner to the job performance of any Chicago Police Department officers, regardless of the disposition of any inquiry or investigation. This definition expressly includes, but is not limited to any and all internal affairs, COPA, IPRA, OPS, intra or inter-departmental, and citizen complaints, Complaint Register files, and any other

Documents generated by any unit or sub-unit of the City responsible for investigating complaints or criticisms of the Chicago Police Department.

32.     Unless otherwise stated, the "Relevant Time Period" for Plaintiff's discovery requests shall be the period from 5 years prior to the incident described in Plaintiff's Complaint to the present.

33.     Please identify any Document withheld under a claim of privilege, identifying the source and nature of the privilege.

34.     These Requests for Production shall be deemed continuing so as to require supplemental answers and production if You or Your agents, representatives or attorneys obtain further information or documents subsequent to the time Your responses are served and prior to the time of any trial of this action.

## **REQUESTS FOR PRODUCTION**

1.  All documents comprising or relating to any training manual(s), employee handbook, or police procedure manual that any individual defendant ever received from the Chicago Police Department.

2.  A complete copy of any policies or procedures relating to the discipline of police officers or to disciplinary procedures between 1983 and the present day.

3.  All documents relating to any written policy or procedure of the City of Chicago or the Chicago Police Department including but not limited to written policies and procedures on any of the following subject matters:

    a.  Documenting or memorializing the various development in an investigation in such a way that they would become a part of the official file, investigative file and/or permanent retention file as the investigation proceeded

    b.  Conducting, documenting or memorializing photo or in-person line-up, or any other type of identification procedures

    c.  Conducting, documenting or memorializing interrogation interviews or questioning of suspects and witnesses, including video and/or audio recordings such interrogations

    d.  Writing, filing, retaining, storing, or destroying police investigative materials including witness statements, reports, and notes during the course of an investigation

    e.  Disclosing exculpatory evidence to suspects, criminal defendants, prosecutors, or any employee of the Cook County State's Attorney's Office

    f.  Providing testimony in Court

    g.  Reporting, investigating, identifying, tracking, and/or reviewing allegations of officer misconduct

    h.  Disciplining and/or supervising police officers who engage in misconduct

4.  All documents identifying any policy maker who was responsible for or had final policy making authority for any policy or procedure of the Chicago Police Department between 1983 and the present on any of the subject matters identified in Request for Production No. 3, above, as well as all documents relating to any effort of those policy maker(s) to review, investigate, analyze, uncover, prevent, or determine the prevalence of any misconduct, deficiency, shortcoming, or other problem relating to any such policy or procedure.

5.  All documents relating to any change made to any policy or procedure on any of the subjects identified in Request for Production No. 3, above.

6.  All documents relating to any training that any individual defendant received in connection with his employment, including but not limited to training on any of the following subjects:

    a.   Documenting or memorializing the various development in an investigation in such a way that they would become a part of the official file, investigative file and/or permanent retention file as the investigation proceeded

    b.   Conducting, documenting or memorializing photo or in-person line-up, or any other type of identification procedures

    c.   Conducting, documenting or memorializing interrogation interviews or questioning of suspects and witnesses, including video and/or audio recordings such interrogations

    d.   Writing, filing, retaining, storing, or destroying police investigative materials including witness statements, reports, and notes during the course of an investigation

    e.   Disclosing exculpatory evidence to suspects, criminal defendants, prosecutors, or any employee of the Cook County State's Attorney's Office

    f.   Providing testimony in Court

    g.   Reporting, investigating, identifying, tracking, and/or reviewing allegations of officer misconduct

    h.   Disciplining and/or supervising police officers who engage in misconduct

7.   All documents relating to every instance in which an employee of the Chicago Police Department was subject to any form of discipline for failing to follow policies or procedures on any of the following subject matters:

    a.   Documenting or memorializing the various development in an investigation in such a way that they would become a part of the official file, investigative file and/or permanent retention file as the investigation proceeded

    b.   Conducting, documenting or memorializing photo or in-person line-up, or any other type of identification procedures

    c.  Conducting, documenting or memorializing interrogation interviews or questioning of suspects and witnesses, including video and/or audio recordings such interrogations

    d.  Writing, filing, retaining, storing, or destroying police investigative materials including witness statements, reports, and notes during the course of an investigation

    e.  Disclosing exculpatory evidence to suspects, criminal defendants, prosecutors, or any employee of the Cook County State's Attorney's Office

    f.  Providing testimony in Court

    g.  Reporting, investigating, identifying, tracking, and/or reviewing allegations of officer misconduct

    h.  Disciplining and/or supervising police officers who engage in misconduct

8.  All documents related to homicide investigations in the period from 1983 (i.e., the enactment of special order 83-1 regarding the maintenance and disclosure of homicide files) through 2000 (i.e., ten years after the Wiley Brothers' investigation). This request includes each and every unit of the Chicago Police Department in which documents related to homicide investigations are stored or maintained, including but not limited to Chicago Police Headquarters, the Office of Legal Affairs, the Records Division, Detective Division Areas, Gang Crimes, the Special Operation section, the Evidence and Recovered Property Section (ERPS), the Chicago Crime Lab, and the Identification Section, as well as any storage warehouses, rooms, repositories, or other areas used by any unit of the Chicago Police Department.

9.  All documents related to homicide investigation in the period from 1983 (i.e., the enactment of special order 83-1 regarding the maintenance and disclosure of homicide files) through 2000 (i.e., ten years after the Wiley brothers' investigation), where there was any claim of actual or alleged withholding of exculpatory or impeaching information from a criminal

defendant. This request includes each and every unit of the Chicago Police Department in which documents in relation to homicide investigations are stored or maintained including but not limited to  Chicago Police Headquarters, the Office of Legal Affairs, the Records Division, Detective Division Areas, Gang Crimes, the Special Operation section, the Evidence and Recovered Property Section (ERPS), the Chicago Crime Lab, and the Identification Section, as well as any storage warehouses, rooms, repositories, or other areas used by any unit of the Chicago Police Department.

10. All documents related to any Allegation of Misconduct against any Chicago Police Officer in the ten years prior to and ten years after the Wiley brothers' investigation alleging dishonest behavior, lying under oath, witness manipulation, improper behavior during interrogations or interviews, use of improperly suggestive coercive, or torturous methods on suspects, arrestees, or witnesses, use of excessive force, false arrests, malicious prosecution, fabrication or planting of evidence, concealment or suppression of evidence, use of unduly suggestive visual or voice identification procedure, and lawsuits or administrative complaints filed in State or federal courts or agencies alleging police or prosecutorial misconduct. This request specifically seeks but is not limited to (a) the date of any Allegation of Misconduct, the type of Allegation of Misconduct, and the result of any investigation or disciplinary proceedings with respect to each such Allegation of Misconduct and (b) the complete file for each allegation of misconduct within the period specified in this request.

11. All documents related to any action including policy changes or training, taken by the Chicago Police Department in response to any of the conduct alleged in the Complaint and its amendment in *Klipfel, et. al. v. Bentsen, et al.* 94-cv-06415 (N.D. Ill.), including allegations concerning the Chicago Police Department's failure to discipline and supervise officers, the

Code of Silence, the failures in the Internal Affairs Division's investigations, policies and practices and, "the City of Chicago's knowledge and support of Miedzianowski's conduct" (*e.g.* Fourth Amended Complaint). This request does not seek attorney-client or work product privileged documents.

12. All documents produced or exchanged by the parties in *Klipfel, et. al. v. Bentsen, et al.* 94-cv-06415 (N.D. Ill.). This request includes all pleadings, documents exchange in discovery, audio and video recordings, wiretap recordings, and all other forms of electronic media. This request does not seek attorney-client or work product privileged documents.

13. All depositions and trial transcripts related to *Klipfel, et. al. v. Bentsen, et al.* 94-cv-06415.

14. All Complaints, and any investigations and findings related thereto, against former Chicago Police Officer Joseph Miedzianowski. This request includes but is not limited to all civilian complaints, complaint registers, IAD or internal affairs investigations, any complaint or referrals by Phil Cline or other supervisors, internal department complaints, and complaints by other law enforcement agencies.

15. Any and all documents and communications that relate to the banning and/or disallowing of former Chicago Police Officer Joseph Miedzianowski's from the Gang Crimes Office and/or Unit and any documents and/or communications pertaining to the reinstating or allowing his return to the Gang Crimes Office and/or Unit.

16. Any and all Documents relating to any investigations and/or inquiries into former Chicago Police Officer Joseph Miedzianowski, including but not limited to investigative notes investigative reports, notes and records of witness interviews.

17. All documents related to any criminal investigations and/or law enforcement activities

between 1983-2000 in which both former Chicago Police Officers Joseph Miedzianowski and Reynaldo Guevara participated in some manner. This includes, but is not limited to any criminal investigations involving homicide, attempted homicides, drug related offenses, executions of search warrants, robberies, assaults, weapon offenses, mob action and/or any gang related offenses.

18. All documents reflecting the execution of search warrants and/or warrantless search of Jose Maysonet Jr.'s homes located at 1302 N. Homan Avenue, 1530 N. Kedzie Avenue and/or 1302 N. Kimball Avenue between 1986 and 1989 by both Chicago Police Officers Joseph Miedzianowski and Reynaldo Guevara.

19. Chicago Police Department Special Orders for the following subject matters:

   a. Assignment of Cases by Location/Classification (Det. Div. S.O. 96-2) (*See*: RFC-Maysonet 8139)

   b. Complaint Register and Criminal Investigations (Det. Div. S.O. 96-2c) (*See*: RFC-Maysonet 8139)

   c. CR Numbers and Criminal Investigation (Det. Div. S.O. 96-2c) (*See*: RFC-Maysonet 8139)

   d. Gang Crime Specialist (Det. Div. S.O. 00-1) (*See*: RFC-Maysonet 8141)

   e. Gun Recovery (Det. Div. S.O. 96-2) (*See*: RFC-Maysonet 8141)

   f. Investigative Responsibility (Det. Div. S.O. 96-2) (*See*: RFC-Maysonet 8141)

   g. Investigative Responsibility – Area 4 Pilot Program (Det. Div. S.O. 01-04) (*See*: RFC-Maysonet 8141)

   h. Investigative Responsibility (Det. Div. S.O. 02-02) (*See*: RFC-Maysonet 8141)

   i. Miscellaneous Procedures (Det. Div. S.O. 97-6) (*See*: RFC-Maysonet 8141)

j.   Property Crimes Offices – Investigative Responsibility (Det. Div. S.O. 96-2) (*See*: Maysonet 8143)

k.   Responsibility-Follow-Up (Det. Div. S.O. 96-2) (*See*: RFC-Maysonet 8143)

l.   Violent Crimes Offices-Investigative Responsibility (Det. Div. S.O. 01-01) (*See*: RFC-Maysonet 8143)

Dated:  December 4, 2020
        Brooklyn, New York

                              Respectfully Submitted,

                              **JOSE MAYSONET**

                              *Attorneys for Plaintiff*

                              By: /s/JENNIFER BONJEAN
                              /s/ASHLEY COHEN
                              Bonjean Law Group, PLLC
                              467 Saint Johns Place
                              Brooklyn, New York 11238
                              718-875-1850


                              /s/STEVE GREENBERG
                              53 W. Jackson Blvd., Ste. 1260
                              Chicago, IL 60604
                              312-399-2711



## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that she served the foregoing document upon all parties of record by electronic mail on December 4, 2020

                              /s/ JENNIFER BONJEAN

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JOSE JUAN MAYSONET, JR | |
| Plaintiff, | Case No. 18-CV-02342 |
| v. | Honorable Mary M. Rowland |
| REYNALDO GUEVARA, ET. AL. | |
| Defendants. | |

**CITY OF CHICAGO'S RESPONSES AND OBJECTIONS TO
PLAINTIFF'S FOURTH REQUEST FOR PRODUCTION**

Defendant City of Chicago, by and through its undersigned attorneys, and in response to

Plaintiff Maysonet's Fourth Request of Production to Defendant City of Chicago, states as follows:

1.      All documents comprising or relating to any training manual(s), employee
handbook, or police procedure manual that any individual defendant ever received from the
Chicago Police Department.

**RESPONSE:**  Defendant City objects to the extent this request is duplicative of Plaintiff's First

Set of Requests to Produce to the City Nos. 17, 49, and 51, and refers Plaintiff to its objections and

responses to those requests.  The City objects that this request is not limited in time or scope, and,

thus, is not proportional to the needs of this case.  The City also objects that this request is

overbroad and unduly burdensome with respect to the terms/phrases/definitions of "documents"

and "relating to."  Subject to and without waiving these objections, and to the extent this request

calls for materials provided to the individual defendants, the City refers Plaintiff to training

materials produced at RFC 1017-63 and 6678-6704.  Additional training materials may be found

at RFC 1064-1677.  Further answering, the City refers Plaintiff to Detective Division Standard

Operating Procedures produced at RFC 7705-8360.  To the extent Plaintiff seeks additional

materials, the City states that the Parties will need to conduct a Rule 37.2 conference to determine the scope of that request. Investigation continues.

2. A complete copy of any policies or procedures relating to the discipline of police officers or to disciplinary procedures between 1983 and the present day.

**RESPONSE:** Defendant City objects that this request is overbroad and unduly burdensome with respect to the terms/phrases/definitions of "relating to," and because it is not limited in time (this request alone seeks nearly 40 years of policies and procedures) or scope, and, thus, is not proportional to the needs of the case. Subject to and without waiving these objections, as previously agreed upon, the City provided Plaintiff with an index of policies from 1993 at RFC-Maysonet 7673-7704 so Plaintiff could narrow his request to specific policies relevant to this case. Otherwise, the City states that the Parties will need to conduct a Rule 37.2 conference to determine the scope of this request. Investigation continues.

3. All documents relating to any written policy or procedure of the City of Chicago or the Chicago Police Department including but not limited to written policies and procedures on any of the following subject matters:

   a. Documenting or memorializing the various development in an investigation in such a way that they would become a part of the official file, investigative file and/or permanent retention file as the investigation proceeded
   b. Conducting, documenting or memorializing photo or in-person line-up, or any other type of identification procedures
   c. Conducting, documenting or memorializing interrogation interviews or questioning of suspects and witnesses, including video and/or audio recordings such interrogations
   d. Writing, filing, retaining, storing, or destroying police investigative materials including witness statements, reports, and notes during the course of an investigation
   e. Disclosing exculpatory evidence to suspects, criminal defendants, prosecutors, or any employee of the Cook County State's Attorney's Office
   f. Providing testimony in Court
   g. Reporting, investigating, identifying, tracking, and/or reviewing allegations of officer misconduct
   h. Disciplining and/or supervising police officers who engage in misconduct

**RESPONSE:** Defendant City objects to the extent this request is duplicative of Plaintiff's First Set of Requests to Produce to the City No. 49, and refers Plaintiff to its objections and responses

to that requests.  The City also objects that this request is overly broad and unduly burdensome with respect to the terms/phrases/definitions of "documents" and "relating to," and because it is not limited in time or scope, and, thus, is not proportional to the needs of this case.  The City also objects that this request is vague and ambiguous as to each of the eight separate and distinct subparts for which it seeks documents.  Subject to and without waiving these objections, as previously agreed upon, the City provided Plaintiff with an index of policies from 1993 at RFC-Maysonet 7673-7704 so Plaintiff could narrow his request to specific policies relevant to this case.  Otherwise, the City states that the Parties will need to conduct a Rule 37.2 conference to determine the scope of this request.  Investigation continues.

4.      All documents identifying any policy maker who was responsible for or had final policy making authority for any policy or procedure of the Chicago Police Department between 1983 and the present on any of the subject matters identified in Request for Production No. 3, above, as well as all documents relating to any effort of those policy maker(s) to review, investigate, analyze, uncover, prevent, or determine the prevalence of any misconduct, deficiency, shortcoming, or other problem relating to any such policy or procedure.

**RESPONSE:**  Defendant City objects that this request is overly broad and unduly burdensome with respect to the terms/phrases/definitions of "documents" and "relating to," and "identifying any policymaker who was responsible for or had final policymaking authority for any policy or procedure."  The City also objects that this request is vague and ambiguous as to "effort of those policymaker(s) to review, investigate, analyze, uncover, prevent, or determine the prevalence of any misconduct, deficiency, shortcoming, or other problem," and for the eight separate and distinct subparts for which it seeks documents.  The City also objects that this request is not limited in time or scope, and, thus, is not proportional to the needs of this case.  Subject to and without waiving these objections, the City states that the Parties will need to conduct a Rule 37.2 conference to determine the scope of this request.  Investigation continues.

5.    All documents relating to any change made to any policy or procedure on any of the subjects identified in Request for Production No. 3, above.

**RESPONSE:**  Defendant City objects that this request is vague and ambiguous as to "any change made to any policy or procedure" and for the eight separate and distinct subparts for which it seeks documents.  The City also objects that this request is overly broad and unduly burdensome with respect to the terms/phrases/definitions of "documents" and "relating to," and because it is not limited in time or scope, and, thus, is not proportional to the needs of this case.  Subject to and without waiving these objections, the City states that the Parties will need to conduct a Rule 37.2 conference to determine the scope of this request.  Investigation continues.

6.    All documents relating to any training that any individual defendant received in connection with his employment, including but not limited to training on any of the following subjects:

    a.  Documenting or memorializing the various development in an investigation in such a way that they would become a part of the official file, investigative file and/or permanent retention file as the investigation proceeded
    b.  Conducting, documenting or memorializing photo or in-person line-up, or any other type of identification procedures
    c.  Conducting, documenting or memorializing interrogation interviews or questioning of suspects and witnesses, including video and/or audio recordings such interrogations
    d.  Writing, filing, retaining, storing, or destroying police investigative materials including witness statements, reports, and notes during the course of an investigation
    e.  Disclosing exculpatory evidence to suspects, criminal defendants, prosecutors, or any employee of the Cook County State's Attorney's Office
    f.  Providing testimony in Court
    g.  Reporting, investigating, identifying, tracking, and/or reviewing allegations of officer misconduct
    h.  Disciplining and/or supervising police officers who engage in misconduct

**RESPONSE:**  Defendant City objects to the extent this request is duplicative of Request No. 1 above, as well as Plaintiff's First Set of Requests to Produce to the City Nos. 17 and 51, and refers Plaintiff to its objections and responses to those requests.  The City also objects that this request is not limited in time or scope, and, thus, is not proportional to the needs of this case.  The City also objects that this request is vague and ambiguous as to the eight separate and distinct subparts

4

for which it seeks documents. Subject to and without waiving these objections, the City refers

Plaintiff to training materials produced at RFC 1017-63 and 6678-6704. Additional training

materials may be found at RFC 1064-1677. To the extent Plaintiff seeks documents in addition to

those referenced herein, the City states that the Parties will need to conduct a Rule 37.2 conference

to determine the scope of this request. Investigation continues.

7.     All documents relating to every instance in which an employee of the Chicago
Police Department was subject to any form of discipline for failing to follow policies or procedures
on any of the following subject matters:

   a. Documenting or memorializing the various development in an investigation in such a
      way that they would become a part of the official file, investigative file and/or
      permanent retention file as the investigation proceeded
   b. Conducting, documenting or memorializing photo or in-person line-up, or any other
      type of identification procedures
   c. Conducting, documenting or memorializing interrogation interviews or questioning of
      suspects and witnesses, including video and/or audio recordings such interrogations
   d. Writing, filing, retaining, storing, or destroying police investigative materials
      including witness statements, reports, and notes during the course of an investigation
   e. Disclosing exculpatory evidence to suspects, criminal defendants, prosecutors, or any
      employee of the Cook County State's Attorney's Office
   f. Providing testimony in Court
   g. Reporting, investigating, identifying, tracking, and/or reviewing allegations of officer
      misconduct
   h. Disciplining and/or supervising police officers who engage in misconduct

**RESPONSE:**  Defendant City objects that this request is vague and ambiguous as to "discipline"

and "failing to follow policies or procedures." The City also objects that this request is not limited

in time or scope, and, thus, is not proportional to the needs of this case. The City also objects that

this request is vague and ambiguous with respect to the terms/phrases/definitions of "documents"

and "relating to," and as to the eight separate and distinct subparts for which it seeks documents.

Subject to and without waiving these objections, the City states that the Parties will need to conduct

a Rule 37.2 conference to determine the scope of this request. Investigation continues.

8.     All documents related to homicide investigations in the period from 1983 (i.e., the

enactment of special order 83-1 regarding the maintenance and disclosure of homicide files) through 2000 (i.e., ten years after the Wiley Brothers' investigation). This request includes each and every unit of the Chicago Police Department in which documents related to homicide investigations are stored or maintained, including but not limited to Chicago Police Headquarters, the Office of Legal Affairs, the Records Division, Detective Division Areas, Gang Crimes, the Special Operation section, the Evidence and Recovered Property Section (ERPS), the Chicago Crime Lab, and the Identification Section, as well as any storage warehouses, rooms, repositories, or other areas used by any unit of the Chicago Police Department.

**RESPONSE:**  Defendant City objects that this request is overly broad and unduly burdensome with respect to the terms/phrases/definitions of "documents" and "relating to," and because it seeks documents from every unit of the Chicago Police Department for thousands of unrelated and unidentified homicide investigations for a seventeen-year period, and, thus, is not proportional to the needs of this case.  Defendant City further objects because this request does not relate to the claims and defenses in the case, is not relevant to this case, and is disproportional to the needs of the case.  Subject to and without waiving these objections, the City states that the Parties will need to conduct a Rule 37.2 conference to determine the scope of this request.  Investigation continues.

9.      All documents related to homicide investigation in the period from 1983 (i.e., the enactment of special order 83-1 regarding the maintenance and disclosure of homicide files) through 2000 (i.e., ten years after the Wiley brothers' investigation), where there was any claim of actual or alleged withholding of exculpatory or impeaching information from a criminal defendant. This request includes each and every unit of the Chicago Police Department in which documents in relation to homicide investigations are stored or maintained including but not limited to Chicago Police Headquarters, the Office of Legal Affairs, the Records Division, Detective Division Areas, Gang Crimes, the Special Operation section, the Evidence and Recovered Property Section (ERPS), the Chicago Crime Lab, and the Identification Section, as well as any storage warehouses, rooms, repositories, or other areas used by any unit of the Chicago Police Department.

**RESPONSE:**  Defendant City objects that this request is overly broad and unduly burdensome with respect to the terms/phrases/definitions of "documents" and "relating to," and "exculpatory," and because it requires a search of documents, some of which are not in the possession or control of the Chicago Police Department (i.e. the Cook County State's Attorney's Office, criminal defense attorney files, court files), of hundreds of thousands of pages of documents from every

unit of the Chicago Police Department for thousands of unrelated and unidentified homicide investigations for a seventeen-year period to determine whether "there was a claim of actual or alleged withholding of exculpatory or impeaching information from a criminal defendant," making it unlimited in scope, and, thus, not proportional to the needs of this case. The City also objects that "any claim" and "actual or alleged withholding of exculpatory or impeaching information" is vague and ambiguous. Defendant City further objects because this request does not relate to the claims and defenses in the case, is not relevant to this case, and is disproportional to the needs of the case. Subject to and without waiving these objections, the City states that the Parties will need to conduct a Rule 37.2 conference to determine the scope of this request. Investigation continues.

10.     All documents related to any Allegation of Misconduct against any Chicago Police Officer in the ten years prior to and ten years after the Wiley brothers' investigation alleging dishonest behavior, lying under oath, witness manipulation, improper behavior during interrogations or interviews, use of improperly suggestive coercive, or torturous methods on suspects, arrestees, or witnesses, use of excessive force, false arrests, malicious prosecution, fabrication or planting of evidence, concealment or suppression of evidence, use of unduly suggestive visual or voice identification procedure, and lawsuits or administrative complaints filed in State or federal courts or agencies alleging police or prosecutorial misconduct. This request specifically seeks but is not limited to (a) the date of any Allegation of Misconduct, the type of Allegation of Misconduct, and the result of any investigation or disciplinary proceedings with respect to each such Allegation of Misconduct and (b) the complete file for each allegation of misconduct within the period specified in this request.

**RESPONSE:** Defendant City objects that this request is overly broad and unduly burdensome with respect to the terms/phrases/definitions of "documents" and "relating to," and "Allegation of Misconduct," and because it seeks documents related to a virtually limitless list of allegations of misconduct pertaining to "any Chicago Police Officer" irrespective of the officer's unit of assignment, for a twenty-year period, including but not limited to, all documents related to "lawsuits" or "administrative complaints" filed in "state or federal court or agencies" for the entirety of the Chicago Police Department, making it unlimited in scope, and, thus, not proportional to the needs of this case. The City further objects that the words/phrases "allegation

7

of misconduct," "dishonest behavior," "witness manipulation," "improper behavior," "suggestive, coercive or torturous," and "excessive force" are vague and ambiguous. Subject to and without waiving these objections, the City states that the Parties will need to conduct a Rule 37.2 conference to determine the scope of this request. Investigation continues.

11.     All documents related to any action including policy changes or training, taken by the Chicago Police Department in response to any of the conduct alleged in the Complaint and its amendment in *Klipfel, et. al. v. Bentsen, et al.* 94-cv-06415 (N.D. Ill.), including allegations concerning the Chicago Police Department's failure to discipline and supervise officers, the Code of Silence, the failures in the Internal Affairs Division's investigations, policies and practices and, "the City of Chicago's knowledge and support of Miedzianowski's conduct" (*e.g.* Fourth Amended Complaint). This request does not seek attorney-client or work product privileged documents.

**RESPONSE:**  Defendant City objects to this request as it is vague and ambiguous ("Documents," "policy changes," "training," "in response to," "any alleged conduct," "failure to discipline and supervise," "code of silence," "failures in the Internal Affairs Division's investigations, policies, and practices," and "'the City of Chicago's Knowledge and Support of Miedzianowski's Conduct'"), and overly broad and unduly burdensome ("all Documents," "related to any actions," "policy changes," "training").  The City also objects to this request in that it appears to quote a document Plaintiff did not attach to this request or reference by bates number.  Additionally, the City objects that this request does not relate to claims and defenses in this case and is not proportional to the needs of the case because this request appears to relate to litigation pertaining to individuals who are not individual defendants in this case and had no involvement in the Wiley brothers' 1990 murder investigation and the litigation referred to in the request occurred and resolved many years after the Wiley brothers' murder investigation.

12.     All documents produced or exchanged by the parties in *Klipfel, et. al. v. Bentsen, et al.* 94-cv-06415 (N.D. Ill.). This request includes all pleadings, documents exchange in discovery, audio and video recordings, wiretap recordings, and all other forms of electronic media. This request does not seek attorney-client or work product privileged documents.

**RESPONSE:** The City objects to this request as it is vague and ambiguous ("All Documents produced or exchanged") and it is overly broad and unduly burdensome in that it requests the City to locate and produce every single document "produced or exchanged" during litigation that spanned approximately thirteen years that is unrelated to this case. Additionally, the City objects that this request does not relate to claims and defenses in this case, is not relevant to this case, and is not proportional to the needs of this case because this request appears to relate to litigation pertaining to individuals who are not individual defendants in this case and had no involvement in the Wiley brothers' 1990 murder investigation and the litigation at issue occurred and resolved many years after the Wiley brothers' murder investigation. *See DeLeon-Reyes v. Guevara*, 1:18-CV-01028, 2020 WL 3050230, at *6-11 (N.D. Ill. June 8, 2020) (concluding discovery related to Miedzianowski is irrelevant to nearly identical claims and allegations as raised here).

13. All depositions and trial transcripts related to *Klipfel, et. al. v. Bentsen, et al.* 94-cv-06415.

**RESPONSE:** Defendant City objects to this request as it is overly broad and unduly burdensome ("All depositions and trial transcripts") and vague and ambiguous ("related to), as the litigation referenced in this request involved multiple parties, many of whom were not Chicago Police Officers or otherwise employed by the Chicago Police Department and concerned the litigation of multiple claims not relating to the City of Chicago or the Chicago Police Department. The City further objects that this request does not relate to claims and defenses in this case, is not relevant to this case, and is not proportional to the needs of the case because this request appears to relate to litigation pertaining to individuals who are not individual defendants in this case and had no involvement in the Wiley brothers' 1990 murder investigation and the litigation at issue occurred and resolved many years after the Wiley brothers' murder investigation. *See DeLeon-Reyes*, 2020

WL 3050230, at *6-11 (concluding discovery related to Miedzianowski is irrelevant to nearly identical claims and allegations as raised here).

14.     All Complaints, and any investigations and findings related thereto, against former Chicago Police Officer Joseph Miedzianowski. This request includes but is not limited to all civilian complaints, complaint registers, IAD or internal affairs investigations, any complaint or referrals by Phil Cline or other supervisors, internal department complaints, and complaints by other law enforcement agencies.

**RESPONSE:**  Defendant City objects to this request as it is vague and ambiguous ("All Complaints," "any investigations and findings," "Complaints by other law enforcement agencies"), and overly broad and unduly burdensome considering it requests documents related to Joseph Miedzianowski, who is not a Defendant in this litigation, nor was he involved in the Wiley brothers' 1990 murder investigation. *See DeLeon-Reyes*, 2020 WL 3050230, at *6-11 (concluding discovery related to Miedzianowski is irrelevant to nearly identical claims and allegations as raised here).  For those reasons, as well, the request does not relate to the claims and defenses in the case, is not relevant to this case, and is disproportional to the needs of the case. *Id.*

15.     Any and all documents and communications that relate to the banning and/or disallowing of former Chicago Police Officer Joseph Miedzianowski's from the Gang Crimes Office and/or Unit and any documents and/or communications pertaining to the reinstating or allowing his return to the Gang Crimes Office and/or Unit.

**RESPONSE:**  Defendant City objects to this request as it is vague, ambiguous, overly broad, and unduly burdensome ("all documents and communications," "relate to," "banning and/or disallowing," and "reinstating or allowing his return"), and further overly broad and unduly burdensome considering it requests documents related to Joseph Miedzianowski, who is not a Defendant in this litigation, nor was he involved in the Wiley brothers' 1990 murder investigation. *See DeLeon-Reyes*, 2020 WL 3050230, at *6-11 (concluding discovery related to Miedzianowski is irrelevant to nearly identical claims and allegations as raised here).  For those reasons, as well,

the request does not relate to the claims and defenses in the case, is not relevant to this case, and

is disproportional to the needs of the case. *Id.*

16.     Any and all Documents relating to any investigations and/or inquiries into former Chicago Police Officer Joseph Miedzianowski, including but not limited to investigative notes investigative reports, notes and records of witness interviews.

**RESPONSE:**  Defendant City objects to this request as it is vague, ambiguous, overly broad, and

unduly burdensome ("all documents," "relating to," "investigations and/or inquiries," and

"investigative reports, notes"), and further overly broad and unduly burdensome considering it

requests documents related to Joseph Miedzianowski, who is not a Defendant in this litigation, nor

was he involved in the Wiley brothers' 1990 murder investigation.  *See DeLeon-Reyes*, 2020 WL

3050230, at *6-11 (concluding discovery related to Miedzianowski is irrelevant to nearly identical

claims and allegations as raised here).  For those reasons, as well, the request does not relate to the

claims and defenses in the case, is not relevant to this case, and is disproportional to the needs of

the case. *Id.*

17.     All documents related to any criminal investigations and/or law enforcement activities between 1983-2000 in which both former Chicago Police Officers Joseph Miedzianowski and Reynaldo Guevara participated in some manner. This includes, but is not limited to any criminal investigations involving homicide, attempted homicides, drug related offenses, executions of search warrants, robberies, assaults, weapon offenses, mob action and/or any gang related offenses.

**RESPONSE:**  Defendant City objects to this request as it is vague, ambiguous, overly broad, and

unduly burdensome ("all documents," "relating to," and "law enforcement activities,"), and further

overly broad and unduly burdensome considering it requests documents related to Joseph

Miedzianowski, who is not a Defendant in this litigation, nor was he involved in the Wiley

brothers' 1990 murder investigation.  *See DeLeon-Reyes*, 2020 WL 3050230, at *6-11 (concluding

discovery related to Miedzianowski is irrelevant to nearly identical claims and allegations as raised

here).  For those reasons, as well, the request does not relate to the claims and defenses in the case,

is not relevant to this case, and is disproportional to the needs of the case. *Id.* The City also objects that this request is not limited in scope, and is overbroad and unduly burdensome because it requires a search of documents of potentially hundreds of thousands of pages of documents from every unit of the Chicago Police Department for every single case two separate officers may have worked on over a seventeen-year period, and, thus, this request is not proportional to the needs of this case.

18.     All documents reflecting the execution of search warrants and/or warrantless search of Jose Maysonet Jr.'s homes located at 1302 N. Homan Avenue, 1530 N. Kedzie Avenue and/or 1302 N. Kimball Avenue between 1986 and 1989 by both Chicago Police Officers Joseph Miedzianowski and Reynaldo Guevara.

**RESPONSE:**   Defendant City objects to this request as it is vague, ambiguous, overly broad, and unduly burdensome ("all documents," "relating to," and "warrantless search,"), and further overly broad and unduly burdensome considering it requests documents related to Joseph Miedzianowski, who is not a Defendant in this litigation, nor was he involved in the Wiley brothers' 1990 murder investigation. *See DeLeon-Reyes*, 2020 WL 3050230, at *6-11 (concluding discovery related to Miedzianowski is irrelevant to nearly identical claims and allegations as raised here). For those reasons, as well, the request does not relate to the claims and defenses in the case, is not relevant to this case, and is disproportional to the needs of the case. *Id.*

19.     Chicago Police Department Special Orders for the following subject matters:

a.  Assignment of Cases by Location/Classification (Det. Div. S.O. 96-2) (*See*: RFCMaysonet 8139)
b.  Complaint Register and Criminal Investigations (Det. Div. S.O. 96-2c) (*See*: RFCMaysonet 8139)
c.  CR Numbers and Criminal Investigation (Det. Div. S.O. 96-2c) (*See*: RFC-Maysonet 8139)
d.  Gang Crime Specialist (Det. Div. S.O. 00-1) (*See*: RFC-Maysonet 8141)
e.  Gun Recovery (Det. Div. S.O. 96-2) (*See*: RFC-Maysonet 8141)
f.  Investigative Responsibility (Det. Div. S.O. 96-2) (*See*: RFC-Maysonet 8141)
g.  Investigative Responsibility – Area 4 Pilot Program (Det. Div. S.O. 01-04) (*See*: RFC-Maysonet 8141)

h. Investigative Responsibility (Det. Div. S.O. 02-02) (*See*: RFC-Maysonet 8141)
i. Miscellaneous Procedures (Det. Div. S.O. 97-6) (*See*: RFC-Maysonet 8141)
j. Property Crimes Offices – Investigative Responsibility (Det. Div. S.O. 96-2) (*See*: Maysonet 8143)
k. Responsibility-Follow-Up (Det. Div. S.O. 96-2) (*See*: RFC-Maysonet 8143)
l. Violent Crimes Offices-Investigative Responsibility (Det. Div. S.O. 01-01) (*See*: RFC-Maysonet 8143)

**RESPONSE:** The City is in the process of obtaining responsive documents and will produce upon receipt.

Dated: January 11, 2021

Respectfully submitted,

CELIA MEZA,
Acting Corporation Counsel for the City of Chicago

By: ___*s/ Eileen E. Rosen*_____
*Special Assistant Corporation Counsel*
*for Defendant City of Chicago*
Eileen E. Rosen
Catherine M. Barber
Theresa Berousek Carney
Austin G. Rahe
Rock Fusco & Connelly, LLC
321 N. Clark Street, Suite 2200
Chicago, Illinois 60654
312.494.1000
312.494.1001- fax
erosen@rfclaw.com

## CERTIFICATE OF SERVICE

The undersigned, an attorney, states that a true and correct copy of the Defendant City of Chicago's Responses and Objections to Plaintiff's Fourth Request to Produce was served upon all counsel of record on January 11, 2021.

*/s/ Eileen E. Rosen*

13



467 Saint Johns Place
Brooklyn, New York 11238

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

**BONJEAN**
LAW GROUP, PLLC

January 30, 2021

Ms. Eileen Rosen
Rock Fusco & Connelly, LLC
321 N. Clark St., Ste. 2200
Chicago, IL. 60654

RE:     *Maysonet v. Guevara, et al.*, 18 CV 2342

Dear Ms. Rosen:

Please accept this letter in follow-up to our telephone conversation on January 21, 2021 related to the scope of *Monell* discovery and the City's Responses to Plaintiff's Fourth Request for Production. My goal is to summarize our conversation and propose some compromises to advance *Monell* discovery without litigation. As you know, we owe Judge Rowland a status report on February 1, 2021 regarding outstanding discovery disputes related to *Monell* so hopefully this letter will move us forward to identifying those disputes that can be resolved between the parties and those that will require motion practice.

**First,** per your suggestion we have reviewed the index of Chicago police policies from 1993 and have identified those policies which we believe are relevant or could lead to relevant evidence both as to Plaintiff's *Monell* claims and to his claims against the individual defendant officers. We have prepared a separate document identifying all policies we are seeking. If you have any objection to the identified policies, please advise and we would be happy to explain our basis for seeking said policy. Once we review the policies, we may follow up with requests to determine whether the policy was in effect in 1990 since the underlying investigation took place in this case in 1990, not 1993.

**Second,** in an effort to narrow the scope of training materials we seek, Plaintiff requests that the City produce all syllabi, calendars, and written training materials for the following courses between 1970 and 1995:

- In-service detective homicide seminar for the years
- Pre-Service Detective Training Program
- Gang loitering
- Gang and Narcotics Loitering
- Gang crimes division in-service training
- Courtrrom demeanor: credibility
- Eyewitness identification



467 Saint Johns Place
Brooklyn, New York 11238

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

**BONJEAN**
LAW GROUP, PLLC

- Fundamentals of criminal investigation
- Pre-Service Sergeants Training Program
- Operational Training Program

**Third,** in the spirit of cooperation, Plaintiff amends his request for homicide files to include CPD Area Five homicide investigation files from the years 1988 through 1992. As you know from Plaintiff's Complaint, Plaintiff alleges that his conviction was a product of a number of unconstitutional policies and practices of Area Five detectives, including: (1) coercing false inculpatory statements from suspects (*e.g.*, Maysonet and his co-defendants court-reported and handwritten statements and Maysonet's alleged oral statements): (2) coercing false statements from witnesses (*e.g.*, coerced false statement from Rosa Bello); (3) suppression of exculpatory evidence either by failing to document investigave conduct that tended to be favorable to the target(s) of the investigation or by concealing reports reflecting exculpatory material (*e.g.*, statements from Efrain Cruz, Francisco Veras, identifications of Cruz and Veras; evidence that Guevara was shaking down suspects and forcing Maysonet to pay protection money); and (4) testifying falsely about alleged oral statements made by defendants (*e.g.*, Montilla testified falsely that Maysonet made inculpatory false statements). These allegations are not unique to this case but were one of the many unconstitutional practices of Area Five detectives that were regularly used to frame men from Humboldt Park for crimes they did not commit.

Plaintiff believes, like several courts considering this issue, that five years of homicide files strikes the right balance between Plaintiff's need for the discovery and the burden production imposes on the City. Furthermore, at least a good portion of homicide files from this time period were produced in the *Rivera* case and Judge Weismann ordered the City to produce homicide files in *Sierra* from 1991- 1995 which overlaps to some degree with Plaintiff's request here.

**Fourth,** Plaintiff narrows his request for CR files to all CRs initiated against Area Five detectives between 1988 and 1992. Plaintiff would be willing to consider a random sampling of CRs if the City would stipulate that the sample is representative of its policies and practices but if the City refuses to do that, Plaintiff must insist on production of all CR files for that period of time. For the reasons we discussed, Plaintiff would be amenable to narrowing the production to certain cateogories of CRs but that approach is not workable since the City does not accurately or reliably categorize its CR files in a manner that permits easy identification of relevant misconduct.



467 Saint Johns Place
Brooklyn, New York 11238

Tel: 718.875.1850
Fax: 718.230.0582

www.bonjeanlaw.com

**BONJEAN**
LAW GROUP, PLLC

    **Fifth,** as for Plaintiff's request for material related to Joseph Miedzianowski, Plaintiff understands that the City is conducting a diligent search to locate documents that reflect Guevara and Miedzianowski's execution of a search warrant in the late 1980s at the home of Plaintiff. Apart from this specific request, Plaintiff maintains that Reynaldo Guevara and Joseph Miedzianowski were co-conspirators in a criminal enterprise that involved shaking-down drug-dealers, extorting gang members, and allowing gang members to buy their way out of trouble. Indeed, Plaintiff met Guevara when he and Joseph Miedzianowski were involved in such activities. Accordingly, Plaintiff's requests as set forth in Requests 11-16 are legitimate. Undersigned counsel is willing to engage in another meet and conference to discuss this category of documents.

    Please advise whether you have some time on Monday to discuss the foregoing so that we can meet Judge Rowland's deadline.

    Regards,


    /s/JENNIFER BONJEAN

*Maysonet v. Guevara, et. al.,* **18 CV 2342**

| POLICY #: | NAME: |
|---|---|
| S88-9 | • Access and Review Procedures, Criminal History Records<br>• Arrest Information, Criminal History<br>• Criminal History Records<br>• IR Record |
| S88-30 | • Active criminal<br>• Criminal, Active<br>• Computerized Records on Active Criminals<br>• Information Report (Active Criminal)<br>• Records, Computerized |
| G93-3-5 | • Admonishments, CR Numbers<br>• CR Number, DUI Incidents<br>• CR Numbers, Alcohol and Drug Use Incidents<br>• CR Numbers, Investigation by Outside Police Agency<br>• CR Numbers, Verbal Abuse<br>• Verbal Abuse, CR Investigation |
| G84-7-6 | Administrative, Leave of Absence |
| G92-4 | • Anti-Gang Loitering Ordinance<br>• Criminal Street Gang<br>• Gang Arrest Information Formset<br>• Gang Information File<br>• Gang membership, Criteria for Establishing<br>• Loitering |
| S92-7 | Anti-Gang Loitering Ordinance Seminar |
| G87-7 | • Arrest (Interrogations, Field and Custodial)<br>• Frisk, Stop and (Interrogations, Field and Custodial)<br>• Interrogations: Field and Custodial |
| S88-4 | • Arrest Information, Computerized Criminal History<br>• Computerized Criminal History (CCH) |
| G91-11 | • Arrestee, Handcuffing<br>• Arrestee, Restraining<br>• Handcuffing Arrestees<br>• Restraining Arrestees |
| G92-5 | • Arrest Procedures<br>• Arrest Report<br>• Arrestee, Movement Of (Processing Persons Under Department Control) |

*Maysonet v. Guevara, et. al.,* **18 CV 2342**

| POLICY #: | NAME: |
|---|---|
| | • Arrestee, Photographing (Processing Persons Under Department Control)<br>• Arrestee, Release Without Charging (Processing Persons Under Department Control)<br>• Arrestees, Fingerprinting (Processing Persons Under Department Control)<br>• Arrestee, Juvenile (Processing Persons Under Department Control)<br>• Arrestee, Requiring Hospitalization (Processing Persons Under Department Control)<br>• Booking Officer (Processing Persons Under Department Control)<br>• Criminal History Sheet<br>• Desk Sergeant (Processing Persons Under Department Control)<br>• Documents, Court (Processing Persons Under Department Control)<br>• Movement of Arrestee (Processing Persons Under Department Control)<br>• Photographing Arrestee (Processing Persons Under Department Control)<br>• Processing Persons Under Department Control |
| G82-13 | Arrestees, Transporting of |
| G88-19 | • Arrests, Felony, Approval by Felony Review<br>• Felony Review by Assistant State's Attorney<br>•Warrants, Approval by Felony Review |
| G86-6 | Arrests, Multiple, Processing |
| G83-14 | • Arrests, Warrant Procedure (Non-Traffic)<br>• Non-Traffic Arrest Warrant Procedure |
| N91-46 | Assignment Codes |
| G83-13 | • Beat book, Field Reporting Manual<br>• Beat File, Station<br>• Field Reporting Manual/Beat Book |
| G92-8 | • Beat Maps, District and<br>• Districts, Police and Area Centers<br>• Maps, Beat and District |
| S92-14-1 | • Case and Supplementary Report Distribution/Specific Responsibilities<br>• Case Reports, General Offense<br>• Case Reports, Hospitalization<br>• Case Reports, Lost and Found<br>• Case Reports, Missing/Founds Person<br>• Case Reports, Supplementary<br>• Specific Responsibilities, Area Special Desk<br>• Specific Responsibilities, Bureau of Investigative Services |

*Maysonet v. Guevara, et. al.,* **18 CV 2342**

| POLICY #: | NAME: |
|---|---|
| | • Specific Responsibilities, Designated Reviewing Supervisors in Units without Review Offices<br>• Specific Responsibilities, Desk Sergeant<br>• Specific Responsibilities, Detective Division Investigative Units<br>• Specific Responsibilities, Records Processing Section, Records Division<br>• Specific Responsibilities, District Review Office<br>• Supplementary Report Distribution of |
| S92-14 | • Case Report Transfer List<br>• Distribution of Case and Supplementary Reports<br>• Reports, Distribution of Case<br>• Supplementary Reports, Distribution of |
| S87-20 | • Case Reports, Dissemination of Information<br>• Official Reports |
| S89-25 | • Case Reports, RD Numbers<br>• Records Division Numbers, Assignment and Processing of<br>• Reports, Assignments of RD Numbers |
| G87-6 | • Civil Suits involving Department Member<br>• Guidelines for Disseminating Information in Civil and/or Criminal Legal • Actions and in Civil Suits<br>• Subpoena of Department Member<br>• Witness Statements by Department Member |
| S91-20 | Claims Against the City, Damage |
| G93-3-4 | • Command Channel Review, CR Numbers<br>• Complaint Review Panel, CR Numbers<br>• CR Numbers, Command Channel Review<br>• CR Numbers, Complaint Review Panel<br>• CR Numbers, Police Board Review<br>• CR Numbers, Reporting and Review<br>• CR Numbers, Summary Report<br>• Police Board Review, CR Numbers<br>• Summary Report, CR Numbers |
| G89-1-4 | Command Members, Sworn Supervisors and Probationary Polices Officers, Processing Grievances and |
| G90-8 | • Command Structure, Department<br>• Department Organization for Command<br>• Order of Succession, Command Structure |

*Maysonet v. Guevara, et. al.,* **18 CV 2342**

| POLICY #: | NAME: |
|---|---|
| G86-4 | • Commanders, District |
| G93-3 | • Complaint and Disciplinary Procedures<br>• CR Numbers (General Information)<br>• Disciplinary Procedures |
| G93-3-7 | • Complaint Review Panel, Summary Punishment<br>• Summary Punishment |
| G93-3-3 | • Conduct of the Investigation<br>• CR Numbers, Extension of Investigation<br>• CR Numbers, Immediate Suspension<br>• CR Numbers, Investigation of<br>• CR Numbers, Termination of Investigation<br>• Investigation of CR Numbers |
| G93-3-2 | • CR Numbers, Obtaining<br>• Internal Affairs Division<br>• OPS<br>• Specific Responsibilities |
| G93-3-6 | • CR Numbers, Suspension/Options<br>• Expungement of CR Records |
| S89-2 | • Crime Scene Processing<br>• Line-Up, Photographing by ET |
| G84-3 | Crime Scene Processing |
| G86-3 | • Detective, Assignment to<br>• Gang Crime Specialist, Assignment to, |
| G85-7 | • Directives, Written<br>• Orders, Department |
| S88-29 | • Disciplinary History, Review of<br>• Personnel Records, Review of |
| S92-14-4 | • Distribution of Extra Copies of Case and Supplementary Reports<br>• Reports, Distribution of Case (Extra Copies)<br>• Reports, Distribution of Supplementary (Extra Copies) |

4

*Maysonet v. Guevara, et. al.,* **18 CV 2342**

| POLICY #: | NAME: |
|---|---|
| | |
| S82-25 | Evaluation Review Board, Probationary Police Officer |
| S92-6 | • Felony Review by State's Attorney's Office<br>• Search Warrant Data Report<br>• Search Warrants |
| G80-18 | • Force, Non-Deadly, Guidelines<br>• Reasonable Force |
| G86-8 | • Force, Use of |
| S89-4 | • Forms Management |
| S87-10 | • Forms Retention Schedule, Department<br>• Index, Department Record<br>• Purging, Department Records<br>• Records Disposal (Destruction) Procedures<br>• Records Management<br>• Records, Department, Purging |
| S91-16 | • Freedom of Information<br>• Records Index, Department<br>• Records, Public<br>• Request, Freedom of Information |
| S86-3 | Gang Control Program |
| G89-3 | • Gang Crime Section, Notifications, Preliminary Investigations<br>• Investigations, Preliminary<br>• Notifications, B.I.S., Preliminary Investigations<br>• Preliminary Investigations |
| G88-15-2D | Handcuffs/Restraining Devices |
| G88-18 | • Identification, Line-Up<br>• Lineup Procedures<br>• Photograph, Line-Up |
| G88-13 | • Incident, Miscellaneous Exception Report<br>• Miscellaneous Incident Reporting Procedures |
| G92-1 | Individual Rights |

*Maysonet v. Guevara, et. al.,* **18 CV 2342**

| POLICY #: | NAME: |
|---|---|
| G92-1-1 | • Individual Rights and the Law<br>• Unlawful Arrest/Unreasonable Search and Seizure |
| G90-3 | Information Report System |
| G87-1 | Information Resource Management System |
| G93-3-1 | • Interrogation, Department Member<br>• Polygraph, Department Member |
| S84-9 | IR Photos |
| G89-9 | • LEADS Computer System (Stop Orders)<br>• NCIC Computer System (Stop Orders)<br>• Record Stop Order<br>• Stop Orders |
| G84-7-7 | Miscellaneous Personnel Actions |
| G90-8-3 | Organization and Functions of the Bureau of Investigative Services |
| G90-8-2A | Organization and Functions of the Bureau of Operational Services |
| G90-8-1 | Organization and Functions of the Office of the Superintendent |
| S87-13 | Organizations, Police and Ethnic |
| N93-2 | Performance Ratings – Sworn Members |
| S89-26 | Performance Ratings – Sworn Members |
| G92-1-3 | Personnel Practices |
| G92-6 | Police Districts and Area Centers |
| S92-15 | Preliminary Investigations |
| S89-13 | Records/Players – Tape, Disc, etc, (Prohibition) |
| G93-3-34 | Reporting and Review Procedures |
| S83-21 | Reports, Call Back Program |
| S86-15 | Requirements for Department Reports |

*Maysonet v. Guevara, et. al.,* **18 CV 2342**

| POLICY #: | NAME: |
|---|---|
| S92-14-3 | • Reports, Supplementary Case<br>• Specific Responsibilities, Designated Reviewing Supervisors in Units without Review Offices<br>• Specific Responsibilities, Desk Sergeants<br>• Specific Responsibilities, District Review Office<br>• Specific Responsibilities, Organized Crime Division<br>• Specific Responsibilities, Records Processing Section, Records Division |
| S79-30 | • Request to Hold and Review Recording Tapes<br>• Tapes, Communication – Holding/Reviewing |
| G88-15-1 | Responsibilities and Procedures |
| G83-1 | Responsibilities of Sergeants Assigned to Field Activities |
| N87-43 | Rules and Regulations, Delayed Implementation |
| G91-9 | Rumor Central |
| G88-11 | Search, Arrestees |
| S92-14-2 | • Specific Responsibilities, Desk Sergeant<br>• Specific Responsibilities, District Review Office<br>• Specific Responsibilities, Records Processing Section, Records Division<br>• Specific Responsibilities, Units other than Districts |
| G90-1 | Training Bulletins |