# Exhibit 11

| GENERAL ORDER | DATE OF ISSUE 13 January 1993 | EFFECTIVE DATE 15 January 1993 | NO. 93-3 |
|---|---|---|---|

| SUBJECT COMPLAINT AND DISCIPLINARY PROCEDURES | DISTRI-BUTION C | AMENDS | |
|---|---|---|---|

| RELATED DIRECTIVES General Orders: Department Organization for Command; Traffic Accident Investigation; Department Traffic Safety Program; Media Guidline; Interrogations: Field and Custodial. | RESCINDS General Orders 82-14 and 80-? |
|---|---|

## I. INTRODUCTION

The Superintendent is charged with the responsibility and has the authority to maintain discipline within the Department. Accordingly, he must ensure that internal investigations are conducted in accordance with the provisions outlined in this directive, in order to provide Department members with the fundamental principles of fairness and to ensure that members are afforded all their rights. These rights will also be understood to mean the provisions of the applicable agreement (contract) between the City of Chicago/Department of Police and the particular organization (union) representing the members.

All members will comply with Department Rules and Regulations, directives and orders. Members who fail to comply hinder the effective performance of the Department's functions. This failure will be considered just cause for disciplinary action. Sworn members will be held strictly accountable for properly exercising the authority they have been given to protect the rights, lives and property of all individuals. At the same time, Department members must be protected against false allegations of misconduct. This can only be accomplished through a consistently thorough investigative process. Prompt, thorough investigations will be conducted into allegations of misconduct to establish facts which can absolve the innocent and identify the guilty.

Certain rights afforded all Department members relative to the conduct of a disciplinary investigation are set forth in Addendum 1 of this directive. However, members are reminded that they can be disciplined, even separated from the Department for refusing to answer questions, narrowly directed, relating to their official actions or obligations which were assumed upon appointment to the Department.

## II. DISCIPLINARY PROCESS

All alleged or suspected violations of Department Rules and Regulations or directives by any member with the exception of temporary Department employees (i.e. seasonal temporary and internship program employees, etc.) sworn and civilian, of the Chicago Police Department will be processed in accordance with the provision of this order.

The addenda which comprise this order set forth rights, responsibilities and procedures for conducting investigations relative to disciplinary matters.

| | | |
|---|---|---|
| A. | Addendum 1: | Department Member's Bill of Rights |
| B. | Addendum 2: | Specific Responsibilities |
| C. | Addendum 3: | Conduct of the Investigation |
| D. | Addendum 4: | Reporting and Review Procedures |
| E. | Addendum 5: | Special Situations |
| F. | Addendum 6: | Suspension/Options |
| G. | Addendum 7: | Summary Punishment |

*Matt L. Rodriguez*
Superintendent of Police

| Indicates new or revised item.

87-028   BW

| ADDENDUM TO: | DATE OF ISSUE | EFFECTIVE DATE | ADDENDUM NO. |
|---|---|---|---|
| General Order 93-3 | 13 January 1993 | 15 January 1993 | 1 |

| SUBJECT | DISTRI-BUTION | RESCINDS |
|---|---|---|
| DEPARTMENT MEMBER'S BILL OF RIGHTS | | |

## PURPOSE

This addendum reiterates certain rights afforded Department members relative to complaint and disciplinary procedures.

A. The interrogation of a Department member other than in the initial stage of the investigation shall be scheduled at a reasonable time, preferably while the member is on duty, or if feasible, during daylight hours.

B. The interrogation, depending upon the allegation, will normally take place at either the member's unit of assignment, the Office of Professional Standards, the Internal Affairs Division, or other appropriate location.

C. Prior to an interrogation, the Department member under investigation will be informed of the identity of the person in charge of the investigation, the interrogating officer and the identity of all persons present during the interrogation. When a formal statement is being taken, all questions directed to the member under interrogation shall be asked by and through one interrogator.

D. No anonymous complaint made against a Department member shall be made the subject of a Complaint Register investigation unless the allegation is of a criminal nature.

E. Immediately prior to the interrogation of a Department member under investigation, the member will be informed in writing of the nature of the complaint and the names of all complainants.

F. The length of the interrogation will be reasonable, with interruptions permitted for personal necessities, meals, telephone calls and rest.

G. A Department member will not be threatened with transfer, disciplinary action, dismissal or promised a reward as inducement to provide information relating to an incident under investigation or for exercising any rights contained herein.

H. A Department member under investigation will be provided, without unnecessary delay, with a copy of any written statement he has made.

I. If the allegation under investigation indicates that a recommendation for separation is probable against the member, the member will be given the statutory administrative proceedings rights, or if the allegation indicates that criminal prosecution is probable against the member, the member will be given the constitutional rights concerning self-incrimination prior to the commencement of interrogation.

J. A Department member under interrogation will have the right to be represented by counsel of his own choice and to have that counsel present at all times during the interrogation. The interrogation will be suspended for a reasonable time until representation can be obtained.

K. If the police officer under interrogation is a bargaining unit member represented by the Fraternal Order of Police, he will have the right to be represented by a representative of the Fraternal Order of Police, who will be either a police officer on leave to work for the Fraternal Order of Police or a retired police officer working for the Fraternal Order of Police. The interrogation will be suspended for a reasonable time until representation can be obtained.

L. A civilian Department member under interrogation will have the right to be represented by a union representative in accordance with applicable existing union contracts. The interrogation will be suspended for a reasonable time until representation can be obtained.

M. When a Department member is required to give a written statement or oral statement in the presence of an observer, as a witness in a disciplinary investigation other than summary punishment, or as a witness in a police related shooting investigation, at the request of the member the interview shall be conducted in the following manner:

1. The interview of the member will be scheduled at a reasonable time, preferably while the member is on duty or, if feasible, during daylight hours.

2. The interview, depending on the nature of the investigation, will normally take place at either the member's unit of assignment, the Office of Professional Standards, the Internal Affairs Division, or other appropriate location.

3. Prior to an interview, the member being interviewed shall be informed of the identity of the person in charge of the investigation, the interviewing member, the identity of all persons present during the interview, and the nature of the complaint including the date, time, location and relevant RD number, if known. When a formal statement is being taken, all questions directed to the member being interviewed shall be asked by and through one interviewer.

4. The member will be provided, without unnecessary delay, with a copy of any written statement he has made.

5. A member being interviewed will, upon his request, have the right to be represented by counsel of his own choice and to have that counsel present at all times during the interview, or at the request of the member being interviewed, if the member is a bargaining unit member represented by the Fraternal Order of Police, he will have the right to be represented by a representative of the Fraternal Order of Police who shall be either a police officer on leave to work for the Fraternal Order of Police or a retired police officer working for the Fraternal Order of Police. The member's counsel and/or representative, if any, will only advise the member but will not in any other way interfere with the interview. The interview shall be postponed for a reasonable time, but in no case more than forty-eight hours from the time the member is informed of the interview and the general subject matter thereof, until his counsel or his representative can be obtained; provided that, in any event, interviews in shooting cases may be postponed for no more than two hours.

   NOTE: Items M-1,2,3,4 and 5 of this addendum do not apply to questions from a supervisor in the course of performing his normal day-to-day supervisory duties or to requests to prepare detailed reports or To-From-Subject reports, except To-From-Subject reports that relate to a police-related shooting.

6. The length of interviews will be reasonable, with reasonable interruptions permitted for personal necessities, meals, telephone calls and rest.

N. The Department shall not compel a member under investigation to speak or testify before, or to be questioned by any nongovernmental agency relating to any matter or issue under investigation.

*Matt L. Rodriguez*
Superintendent of Police

| Indicates new or revised item.
87-028 BW

2

| REVISION TO:<br>General Order 93-03-01 | DATE OF ISSUE<br>11 MAY 2010 | EFFECTIVE DATE<br>11 MAY 2010 | NO.<br>A |
|---|---|---|---|

| SUBJECT<br>DEPARTMENT MEMBER'S BILL OF RIGHTS | DISTRI-<br>BUTION | RESCINDS |
|---|---|---|

I.    PURPOSE

This directive revises Department member's bill of rights relative to written or formal statements given by members under investigation for misconduct.

II.   REVISIONS

A.    Item I-H is revised and reads:

H.    A Department member under investigation will be provided, without unnecessary delay, with a copy of any written or formal statement *the member* has made.

*NOTE: Written or formal statements include any electronically recorded statements made by Department members.*

B.    Item I-M-4 is revised and reads:

4.    The member will be provided, without unnecessary delay, with a copy of any written or formal statement *the member has made.*

*NOTE: Written or formal statements include any electronically recorded statements made by Department members.*

Superintendent of Police

10-042 MAV
© Chicago Police Department, April 2010

New or revised material is indicated by *italics*.

RFC-Maysonet 014460

| ADDENDUM TO:<br>General Order 93-3 | DATE OF ISSUE<br>13 January 1993 | EFFECTIVE DATE<br>15 January 1993 | ADDENDUM NO.<br>2 |
|---|---|---|---|

| SUBJECT<br>SPECIFIC RESPONSIBILITIES | DISTRI-<br>BUTION<br>C | RE: **RESCINDED**<br>Rescinded by<br>GO 93-3 Addendum 2A<br>on 5 Oct 1998 |
|---|---|---|

**I.  PURPOSE**

This addendum:

A. defines the responsibilities of Department members when allegations of misconduct come to their attention.

B. sets forth procedures relative to certain investigatory and review functions.

**II.  RESPONSIBILITIES**

A. Individual Responsibility

1. Each member of the Department will perform the duties and assume the obligations of his rank and/or position in the investigation of complaints or allegations of misconduct against any member of the Department.

2. Each member will cooperate fully with personnel of the Office of Professional Standards, the Internal Affairs Division, or any other member conducting such investigation.

3. ANY MEMBER WHO HAS OR IS ALLEGED TO HAVE KNOWLEDGE OF CIRCUMSTANCES SURROUNDING A COMPLAINT INVESTIGATION WILL SUBMIT AN INDIVIDUAL WRITTEN REPORT BEFORE REPORTING OFF DUTY.  The report will be accurate and will include all facts relating to the incident known or reported to him.  The supervisor will forward one copy of any report or document he receives from members, immediately upon receipt, to the Office of Professional Standards or the Internal Affairs Division, as appropriate.  A letter of transmittal or cover report is not required when such reports or documents are forwarded.

4. When misconduct is observed or complaints/information relative to misconduct are received by a non-supervisory member, such member will immediately notify a supervisory member and prepare a written report to his commanding officer containing the information received, observations and/or action taken.

5. When misconduct is observed or complaints/information relative to misconduct are received, supervisory and command personnel will initiate complete and comprehensive investigations in accordance with this and other directives without looking to higher authority for such action.

6. When reports of alleged or suspected violations are received, the supervisor or command officer who first receives information of the alleged violation will:

   a. report the information to the Office of Professional Standards by telephone within one hour after the information is received.  This does not apply to violations for which summary punishment may be administered.

   b. record all information available at the time the complaint was received in statement or report form and forward the report to the Office of Professional Standards without unnecessary delay (not required if the complaint was taken by the Communication Operations Section).

7. When reports of alleged or suspected violations are taken at the Communication Operations Section, the supervisor receiving the information will make the required notification to the Office of Professional Standards.  Complete information will be recorded in the Communication Message Book which will be available for examination by the member assigned to investigate the complaint.

8. Telephone notifications and reports to the Office of Professional Standards will not be made when a complaint involves only differences of opinion between a Department member and a citizen as to whether a Traffic Citation (Notice to Appear) should have been issued. If there is an accompanying allegation of misconduct such as bribery, abusive conduct or other violation of Department Rules and Regulations or directives, the investigation will be directed toward the specific allegation of misconduct.

B. Office of Professional Standards

The Office of Professional Standards is a component of the personal staff of the Superintendent which investigates complaints of excessive force and other matters as directed by the Superintendent. The Office of Professional Standards will:

1. upon receipt of a complaint of alleged misconduct against a member of the Department:

   a. register the complaint.

   b. prepare a Complaint Against Department Member (CPD-44.202) formset, including as much detail and circumstances of the allegation as feasible.

   c. advise the person making the complaint of the Complaint Register number assigned.

   d. inform the complainant by mail of the Complaint Register number.

   e. notify the administrators and other members of the Office of Professional Standards, as appropriate.

2. investigate the complaint if it is an allegation involving the use of excessive force by a Department member on or off duty. (One copy of the Complaint Against Department Member formset will be forwarded to the Internal Affairs Division).

3. refer to the Internal Affairs Division, all complaints against Department members which are not to be investigated by the Office of Professional Standards.

4. inform the complainant and the accused member by mail of the final classification of the complaint.

5. review instances of injury or death of a person involving alleged action of a Department member (excluding automobile accidents unless assigned by the Superintendent) and conduct an independent investigation, when warranted.

6. establish and maintain liaison with the State's Attorney, the United States' Attorney, the City Department of Law, the courts, bar associations, other law enforcement agencies, and community groups, representing the Superintendent in matters concerning excessive force or other matters as directed.

7. review all assigned cases wherein a member is recommended for separation and assist the Office of Legal Affairs in the preparation of cases for presentation to the Chicago Police Board as determined to be appropriate by the Commanding Officer of the Office of Legal Affairs.

8. safeguard the Complaint Register and allow access only to:

   a. the Superintendent,

   b. the Deputy Superintendents,

   c. the General Counsel to the Superintendent,

   d. the Assistant Deputy Superintendent, Internal Affairs Division,

   e. the Assistant Deputy Superintendents, Operations Command,

2

RFC-Maysonet 014462

    f. the Commander, Auditing and Internal Control Division,

    g. Commanding Officer, Office of Legal Affairs, and

    h. any other member of the Department designated by written order of the Superintendent.

C. Internal Affairs Division

1. The Internal Affairs Division is a component of the personal staff of the Superintendent which investigates complaints of misconduct against Department members, except those conducted by the Office of Professional Standards.

2. The Internal Affairs Division may assist investigators engaged in complaint register investigations when requested to do so, and may provide such assistance without request if the seriousness of the alleged violation appears to warrant involvement of the division in the investigation.

3. Any member of the Department who feels threatened by a false accusation or a contrived situation involving false evidence may request an investigation by the Internal Affairs Division by submitting a written report of his situation directly to the Superintendent of Police or the Assistant Deputy Superintendent, Internal Affairs Division, without prior report to his superiors.

4. The Internal Affairs Division will:

    a. upon receipt of a complaint for investigation from the Office of Professional Standards, either investigate the complaint or refer it, with photocopies of any related reports, to the appropriate command for investigation.

    b. inform the complainant and the accused member by mail of the final classification of the investigation at the conclusion of the investigation.

    c. establish and maintain liaison with the State's Attorney, the United States' Attorney, the courts, bar associations, other law enforcement agencies and community groups; representing the Superintendent in matters as directed.

    d. review all assigned cases wherein a member is recommended for separation and assist the Office of Legal Affairs in the preparation of cases for presentation to the Chicago Police Board as determined to be appropriate by the Commanding Officer of the Office of Legal Affairs.

D. Command Consultation and Guidance

The Internal Affairs Division, Office of Professional Standards, General Counsel to the Superintendent, Assistant Deputy Superintendents assigned to Operations Command and the Office of Legal Affairs will be available for consultation and guidance in the conduct of complaint investigations.

E. Superintendent of Police

The Superintendent of Police will review recommendations for disciplinary action including those of a Complaint Review Panel, which are advisory, and will take such action as he deems appropriate. Nothing in this order diminishes the authority of the Superintendent of Police to order suspensions, to separate provisional employees or probationary employees, or to file charges with the Police Board at his own discretion without regard to recommendations made by a Complaint Review Panel or subordinates.

*Matt L. Rodrigue*

Superintendent of Police

| Indicates new or revised item.
87-028 BW

3

| **ADDENDUM TO:** General Order 93-3 | **DATE OF ISSUE** 4 October 1998 | **EFFECTIVE DATE** 5 October 1998 | **NO.** 2A |
|---|---|---|---|
| **SUBJECT** SPECIFIC RESPONSIBILITIES | **DISTRIBUTION** C | **RESCINDS** G.O. 93-3 Addendum 2 | |

**I.    PURPOSE**

This addendum:

*Rescinded by*
*GO 93-03-2B*
*on 23 May 01*

A.    defines the responsibilities of Department members when allegations of misconduct come to their attention.

B.    sets forth procedures relative to certain investigatory and review functions.

**II.   RESPONSIBILITIES**

A.    Individual Responsibility

1.    Each Department member will perform the duties and assume the obligations of his rank and/or position in the investigation of complaints or allegations of misconduct against any Department member.

2.    Each member will cooperate with personnel of the Office of Professional Standards (OPS), the Internal Affairs Division (IAD), or any other member conducting such investigation.

3.    Department members who are not directly assigned to a complaint register (CR) investigation, including members in command channel review, will not contact complainants or witnesses for the purpose of reinvestigating, obtaining additional information or clarifying information regarding the case.

    NOTE:    This prohibition does not apply to Department members directed by the Superintendent to contact complainants or witnesses to ensure compliance with this directive or to verify the information obtained during the investigation as part of an audit or quality control check.

4.    A Department member within the command channel review process with concerns regarding missing, erroneous or vague information relative to a CR investigation will address those concerns in a nonconcurrence report.

5.    Any member who has knowledge of circumstances surrounding a complaint will submit an individual written report to a supervisor before reporting off duty on the day he becomes aware of the investigation. The report will include all facts relating to the incident known or reported to him, and the CR number. The supervisor will forward one copy of any report or document he receives from members, without unnecessary delay, directly to either OPS or IAD. A letter of transmittal or cover report is not required when such reports or documents are forwarded.

6.    When misconduct is observed or a complaint relative to misconduct is received by a non-supervisory member, such member will immediately notify a supervisory member and prepare a written report to his commanding officer containing the information received, observations, and any action taken.

7.    When misconduct is observed or a complaint relative to misconduct is received by supervisory or command personnel, they will initiate a complete and comprehensive investigation in accordance with this and other directives without looking to higher authority for such action.

RFC-Maysonet 014464

8.  When reports of alleged or suspected violations are received, the supervisor or command officer who first receives information of the alleged violation will:

    a.  report the information to the Office of Professional Standards by telephone within one hour after the information is received. This does not apply to violations for which summary punishment may be administered.

    b.  record all information available at the time the complaint was received in statement or report form and forward the report to the Office of Professional Standards without unnecessary delay.

9.  When reports of alleged or suspected violations are taken at the Office of Emergency Communications (OEC), the individual receiving the complaint will forward the phone call to the Office of Professional Standards.

10. Telephone notifications and reports to the Office of Professional Standards will not be made when a complaint involves only differences of opinion between a Department member and a citizen as to whether a Traffic Citation (Notice to Appear) should have been issued. If there is an accompanying allegation of misconduct, the investigation will be directed toward these specific allegations.

C.  Office of Professional Standards

The Office of Professional Standards investigates complaints of excessive force and other matters as directed by the Superintendent. The Office of Professional Standards will:

1.  upon receipt of a complaint of alleged misconduct against a member of the Department:

    a.  register the complaint.

    b.  prepare a Complaint Against Department Member (CPD-44.202) form-set, including as much detail and circumstances of the allegation as feasible.

    c.  advise the person making the complaint of the Complaint Register number assigned.

    d.  inform the complainant by mail of the Complaint Register number.

    e.  notify the administrator and other members of the Office of Professional Standards, as appropriate.

2.  investigate the complaint in a fair and impartial manner.

3.  forward one copy of the Complaint Against Department Member form set to the Internal Affairs Division.

4.  notify the Internal Affairs Division of all complaints against Department members which are not to be investigated by the Office of Professional Standards.

5.  inform the complainant and the accused member by mail of the final classification of the complaint.

6.  review instances of injury or death of a person involving alleged action of a Department member (excluding automobile accidents unless assigned by the Superintendent) and conduct an independent investigation, when warranted.

2

7.  establish and maintain liaison with the Cook County State's Attorney, the United States' Attorneys office, the City Department of Law, the courts, bar associations, other law enforcement agencies, community groups, and represent the Superintendent in other matters as directed.

8.  review all assigned cases wherein a member is recommended for separation and assist the Office of Legal Affairs in the preparation of cases for presentation to the Chicago Police Board as determined to be appropriate by the Commanding Officer of the Office of Legal Affairs.

9.  safeguard the Complaint Register and allow access only to:

    a.  the Superintendent,

    b.  the Deputy Superintendents,

    c.  the General Counsel to the Superintendent,

    d.  the Assistant Deputy Superintendent, Internal Affairs Division,

    e.  the Assistant Deputy Superintendents, Operations Command,

    f.  the Commander, Auditing and Internal Control Division,

    g.  Commanding Officer, Office of Legal Affairs, and

    h.  any other member of the Department designated by written order of the Superintendent.

D.  Internal Affairs Division

1.  The Internal Affairs Division investigates all complaints of misconduct against Department members not conducted by the Office of Professional Standards.

2.  The Internal Affairs Division may assist investigators engaged in complaint register investigations when requested to do so, and may provide such assistance without request if the seriousness of the alleged violation appears to warrant involvement of the Division in the investigation.

3.  Any member of the Department who feels that he has been the subject of a false accusation or a contrived situation may request an investigation by the Internal Affairs Division by submitting a written report of his situation directly to the Superintendent of Police or the Assistant Deputy Superintendent, Internal Affairs Division. The member may submit this request without prior report to his superiors.

4.  The Internal Affairs Division, upon receipt of a complaint for investigation from the Office of Professional Standards, will:

    a.  investigate the complaint or refer it to the appropriate command for investigation with photocopies of any related reports.

    b.  inform the complainant and the accused member by mail of the final classification of the investigation at the conclusion of the investigation.

5.  It is the responsibility of the Internal Affairs Division to:

    a.  establish and maintain liaison with the Cook County State's Attorney, the United States' Attorneys office, the courts, bar associations, other law enforcement agencies, community groups, and represent the Superintendent in matters as directed.

3

RFC-Maysonet 014466

b.  review all assigned cases wherein a member is recommended for separation.

c.  assist the Office of the Corporation Counsel in the preparation of cases for presentation to the Chicago Police Board as determined to be appropriate by the General Counsel to the Superintendent of Police and the Superintendent of Police.

E.  Command Consultation and Guidance

Members assigned to the Internal Affairs Division, Office of Professional Standards, the Office of Legal Affairs, the General Counsel to the Superintendent, and the Assistant Deputy Superintendents assigned to Operations Command will be available for consultation and guidance relative to complaint investigations.

F.  Superintendent of Police

The Superintendent of Police will review recommendations for disciplinary action including those of a Complaint Review Panel and will take such action as he deems appropriate. Nothing in this order diminishes the authority of the Superintendent of Police to order suspensions, to separate provisional employees or probationary employees, or to file charges with the Police Board at his own discretion without regard to recommendations made by a Complaint Review Panel or subordinates.

Superintendent of Police

| Indicates new or revised items.

97-059 MTB/AJB

4

RFC-Maysonet 014467

| | **ADDENDUM TO:**<br>General Order 93-3 | DATE OF ISSUE<br><br>23 May 2001 | EFFECTIVE DATE<br><br>24 May 2001 | NO.<br><br>2B |
|---|---|---|---|---|
| SUBJECT<br>SPECIFIC RESPONSIBILITIES | | DISTRI-<br>BUTION<br>C | RESCINDS<br>Addendum 2A | |

## I. PURPOSE

This addendum:

A. defines the responsibilities of Department members when allegations of misconduct come to their attention.

B. sets forth procedures relative to certain investigatory and review functions.

## II. RESPONSIBILITIES

A. Individual Responsibilities

1. All Department members will perform the duties and assume the obligations of their rank and/or position in the investigation of complaints or allegations of misconduct against any Department member.

2. Each member will cooperate with personnel from the Office of Professional Standards, the Internal Affairs Division, or any other member conducting such investigation.

3. Department members who are not directly assigned to a Complaint Register (CR) investigation, including members in command channel review, will not contact complainants or witnesses for the purpose of reinvestigating, obtaining additional information, or clarifying information regarding the case.

   NOTE: This prohibition does not apply to Department members directed by the Superintendent to contact complainants or witnesses to ensure compliance with this directive or to verify the information obtained during the investigation as part of an audit or quality control check.

4. A Department member within the command channel review process with concerns regarding missing, erroneous, or vague information relative to a CR investigation will address those concerns in a nonconcurrence report.

5. Members who have knowledge of circumstances relating to a complaint will submit an individual written report to a supervisor before reporting off duty on the day the member becomes aware of the investigation. The report will include the CR number and all facts relating to the incident known or reported to the member. The supervisor will forward one copy of any such report or document, without unnecessary delay, directly to either the Office of Professional Standards or the Internal Affairs Division. A letter of transmittal or cover report is not required when such reports or documents are forwarded.

B. Initiation Responsibilities and Procedures

1. When misconduct is observed or a complaint relative to misconduct is received by a non-supervisory member, such member will immediately notify a supervisory member and prepare a written report to the

commanding officer containing the information received, observations made, and any action taken.

2. When misconduct is observed or a complaint relative to misconduct is received by supervisory or command personnel, they will initiate a complete and comprehensive investigation in accordance with this and other directives without looking to higher authority for such action.

3. When reports of alleged or suspected violations are received, the supervisor or command officer who first receives information of the alleged violation will:

   a. report the information to the Office of Professional Standards by telephone within one hour after the information is received. This does not apply to violations for which summary punishment may be administered.

   b. record all information available at the time the complaint was received in statement or report form and forward the report to the Office of Professional Standards without unnecessary delay.

4. When reports of alleged or suspected violations are taken at the Office of Emergency Communications, the individual receiving the complaint will forward the phone call to the Office of Professional Standards.

5. Telephone notifications and reports to the Office of Professional Standards will not be made when a complaint involves only differences of opinion between a Department member and a citizen as to whether a Personal Service Citation should have been issued. If there is an accompanying allegation of misconduct, the investigation will be directed toward that specific allegation.

6. Telephone notifications and reports to the Office of Professional Standards will not be made when the complaint involves only differences of opinion between Department members concerning the provisions of a Collective Bargaining Agreement. If there is an accompanying allegation of misconduct, the investigation will be directed toward that specific allegation.

C. Office of Professional Standards

The Office of Professional Standards investigates complaints of excessive force and other matters as directed by the Superintendent. The Office of Professional Standards will:

1. upon receipt of a complaint of alleged misconduct against a member of the Department,

   a. register the complaint except when:

      (1) the complaint involves only differences of opinion between a Department member and a citizen as to whether a Personal Service Citation should have been issued.

      (2) the complaint involves only differences of opinion between Department members concerning the provisions of a Collective Bargaining Agreement.

*Complaint and Disciplinary Procedures,*
*Addendum 2B*                                    2

**NOTE:** In Items II-C-1-a-(1) and (2) above, if there is an accompanying allegation of misconduct, the complaint will be registered and the investigation will be directed toward that specific allegation.

b.  prepare a Complaint Against Department Member (CPD-44.202) form-set, including as many details and circumstances of the allegation as feasible.

c.  advise the person making the complaint of the Complaint Register number assigned.

d.  inform the complainant by mail of the Complaint Register number.

e.  notify the administrator and other members of the Office of Professional Standards, as appropriate.

f.  forward one copy of the Complaint Against Department Member formset to the Internal Affairs Division.

g.  after an initial review regarding the nature of the allegations of misconduct, either:

(1)  investigate the complaint in a fair and impartial manner, or;

(2)  notify the Internal Affairs Division that the complaint involves allegations of misconduct that are not investigated by the Office of Professional Standards

h.  inform the complainant and the accused member by mail of the final classification of the complaint.

2.  review instances of injury or death of a person involving alleged action of a Department member (excluding automobile accidents unless assigned by the Superintendent) and conduct an independent investigation, when warranted.

3.  establish and maintain a liaison with the Cook County State's Attorney's Office, the United States Attorney's Office, the City Department of Law, the courts, bar associations, other law enforcement agencies, community groups, and represent the Superintendent in other matters as directed.

4.  review all assigned cases wherein a member is recommended for separation and assist the Office of Legal Affairs in the preparation of cases for presentation to the Chicago Police Board as determined to be appropriate by the Commanding Officer of the Office of Legal Affairs.

5.  safeguard the Complaint Register and allow access only to:

a.  the Superintendent;

b.  the Deputy Superintendents;

c.  the General Counsel to the Superintendent;

d.  the Assistant Deputy Superintendent, Internal Affairs Division;

*Complaint and Disciplinary Procedures,*
*Addendum 2B*                          3

e.   the Assistant Deputy Superintendents, Operations Command;

f.   the Commander, Auditing and Internal Control Division;

g.   Commanding Officer, Office of Legal Affairs, and;

h.   any other member of the Department designated by written order of the Superintendent.

D.   Internal Affairs Division

1.   The Internal Affairs Division investigates all complaints of misconduct against Department members not conducted by the Office of Professional Standards.

2.   The Internal Affairs Division may assist investigators engaged in complaint register investigations when requested to do so, and may provide such assistance without request if the seriousness of the alleged violation appears to warrant involvement of the Division in the investigation.

3.   Members of the Department who feel that they have been the subject of a false accusation or a contrived situation may request an investigation by the Internal Affairs Division by submitting a written report of the situation directly to the Superintendent of Police or the Assistant Deputy Superintendent, Internal Affairs Division. Members may submit this request without prior report to their superiors.

4.   Upon receipt of a complaint for investigation from the Office of Professional Standards, the Internal Affairs Division will:

a.   investigate the complaint or refer it to the appropriate command for investigation with photocopies of any related reports.

b.   inform the complainant and the accused member by mail of the final classification of the investigation at its conclusion.

5.   It is the responsibility of the Internal Affairs Division to:

a.   establish and maintain a liaison with the Cook County State's Attorney's Office, the United States Attorney's Office, the courts, bar associations, other law enforcement agencies, community groups, and represent the Superintendent in matters as directed.

b.   review all assigned cases in which a member is recommended for separation.

c.   assist the Office of the Corporation Counsel in the preparation of cases for presentation to the Chicago Police Board as determined to be appropriate by the General Counsel to the Superintendent of Police and the Superintendent of Police.

E.   Command Consultation and Guidance

Members assigned to the Internal Affairs Division, Office of Professional Standards, the Office of Legal Affairs, the General Counsel to the Superintendent, and the Assistant Deputy Superintendents assigned to Operations Command will be available for consultation and guidance relative to complaint register investigations.

RFC-Maysonet 014471

F.    Superintendent of Police

The Superintendent of Police will review recommendations for disciplinary action including those of a Complaint Review Panel and will take such action as he deems appropriate.  Nothing in this order diminishes the authority of the Superintendent of Police to order suspensions, to separate provisional employees or probationary employees, or to file charges with the Police Board at his own discretion without regard to recommendations made by a Complaint Review Panel or subordinates.

Superintendent of Police

| Indicates new or revised material.

01-024  LMT

RFC-Maysonet 014472

| ADDENDUM TO: | DATE OF ISSUE | EFFECTIVE DATE | ADDENDUM NO. |
|---|---|---|---|
| General Order 93-3 | 13 January 1993 | 15 January 1993 | 3 |

| SUBJECT | DISTRI-BUTION | RESCINDS |
|---|---|---|
| CONDUCT OF THE INVESTIGATION | C | |

I.    **PURPOSE**

This addendum sets forth certain procedures relative to the manner in which a complaint against a Department member will be investigated.

II.   **CONDUCT OF THE INVESTIGATION**

A.    The ranking on-duty member of the unit which has initiated an investigation or to which an investigation has been assigned will immediately designate a command or supervisory member of the unit to conduct the investigation. Every effort will be made to ensure that the investigation is conducted by an impartial member.

B.    When copies of the Complaint Against Department Member report (CPD-44.202) relating to a specific complaint are received by the unit which will conduct the investigation, the name, rank or position, star/employee number, unit number and social security number of the member designated to conduct the investigation and the date and time of the assignment will be entered on the reports which will be distributed as follows:

1.    Original copy to the investigator.

2.    One copy to the investigator's commanding officer.

3.    One copy returned to the Internal Affairs Division.

C.    The member assigned to investigate a complaint against a Department member will:

1.    contact all complainants and witnesses as soon as possible, ensuring that such complainants and witnesses are not unduly inconvenienced. If repeated efforts to contact a complainant or witness are unsuccessful after three days, the investigator will prepare and send a form letter (CPD-44.223 or CPD-44.224 as appropriate) by certified mail to the person requesting that the investigator be contacted immediately. Form letters and special envelopes for this purpose (Commodity Number 23-3489-5312 certified) are available from the Equipment and Supplies Section. In all instances, the investigator will record each date and time he or any other member designated to assist him in the investigation attempted to contact the person and the means of communication used (telephone, correspondence, personal visit) in the final report of the investigation.

2.    take written statements from complainants and witnesses when such statements will assist him in reaching a sound conclusion in the case. If the allegation is such that a recommendation for separation is unlikely, the statement(s) need not be formal question-and-answer or narrative form. If the allegation is such that the case is likely to result in a recommendation for separation, the statement(s) will be in question-and-answer form.

3.    if the accused is a member of AFSCME he will be afforded the predisciplinary provisions outlined in their collective bargaining agreement. In cases wherein criminal prosecution is not probable this will be understood to mean making available a copy of all investigatory reports/statements concerning the investigation, including the name of the complainant and any witness.

4.    inform the member against whom an allegation has been made, in writing, of the nature of the allegations before any interrogation begins.

a.    If the allegation indicates that criminal prosecution is not probable against the Department member, the investigator will have the accused member read and sign both a Notification of Charges/Allegations form (CPD-44.115) and an Administrative Proceedings Rights form (CPD-44.105,Rev.10A/92) to acknowledge that he has received a written copy of the specific allegations made against him and that he has been advised of his statutory rights. These forms will be prepared in duplicate; the

RFC-Maysonet 014473

original of each form will be placed in the investigative file, and the duplicate copy of each form will be given the accused member. Signing of the forms is not a waiver of rights, it is an acknowledgement that the accused has received a written copy of the specific allegations made against him and that he has been given his rights.

b. If criminal prosecution is probable against a Department member, the investigator will recite to the accused member his constitutional rights (Miranda warnings) contained within the Criminal Rights form (CPD-44.104) in clear and unequivocal words. The accused member will then read and sign both a Notification of Charges/Allegations form and a Criminal Rights form. These forms will be prepared in duplicate: the original copy of each form will be placed in the investigative file, and the duplicate copy of each form will be given to the accused member. Signing of the forms is not a waiver of rights, it is an acknowledgement that the accused has received a written copy of the specific allegations made against him and that he has been given his rights.

c. After the appropriate criminal and/or administrative rights forms have been read and signed by the accused member, he will be requested to sign either a Waiver of Counsel section or the Request to Secure Legal Counsel section of the Waiver of Counsel/Request to Secure Counsel form (CPD-44.106,Rev.10A/92). This form will be prepared in duplicate: The original copy will be placed in the investigative file, and the duplicate copy will be given to the accused member.

d. In the event an accused member refuses to execute any of the forms, such forms will be marked "Refused." The forms will be dated and signed by any witness(es) to the refusal; the exact location (including room number, if applicable) of refusal will be noted, and the forms will be retained in the investigative file. A duplicate copy of the forms will be given to the accused member.

e. The advice of counsel to decline to answer questions will not excuse an accused member from responding when he has been properly and lawfully ordered to do so by a member of higher rank.

f. If the accused member has waived counsel, the investigator will renew the offer of the right to counsel each time an interrogation is resumed. A written record will be made of the waiver of counsel or demand for counsel at each interrogation. A request for a continuance to secure legal counsel will not be permitted to become a tactic to delay or otherwise obstruct the orderly process of the investigation. Each time an interrogation is resumed, the investigator will advise the accused member of the applicable criminal or statutory rights prior to the interrogation.

g. If the alleged act is a crime and the evidence is such that had the crime been committed by a private citizen it would have resulted in his arrest, the investigator will explain the circumstances to his commanding officer of exempt rank or, in his absence, the on-duty watch/unit commander who will contact the Assistant Deputy Superintendent, Internal Affairs Division, and Administrator of the Office of Professional Standards, or the on duty assistant deputy superintendent, Bureau of Operational Services. The Assistant Deputy Superintendent, Internal Affairs Division, Administrator of the Office of Professional Standards, or the assistant deputy superintendent, as appropriate, will determine the further action to be taken, consulting the Office of the State's Attorney and appropriate Detective Division personnel for guidance when necessary.

h. Upon the completion of the criminal portion of the investigation, the investigator will expressly inform the accused member that the criminal segment of the investigation has been concluded. If an administrative investigation is then to be initiated, the investigator will expressly inform the accused member that any action taken during this segment cannot be used in the criminal investigation. The accused member will also be informed that he must comply/cooperate with the administrative investigation which specifically relates to the alleged misconduct or the performance of his official duties and that failure to comply/cooperate may result in further disciplinary action.

2

5. interrogate the accused member -- remaining cognizant of the member's rights as defined in Addendum 1 of this order, the applicable provisions of any agreement (contract) pertaining to the accused member and the General Orders entitled "Interrogations: Field and Custodial" -- and other members who have knowledge of alleged misconduct, taking written statements when necessary. If the allegation is such that a recommendation for separation is unlikely, the statement(s) may be in the form of reports from the member(s). If the allegation is such that the case is likely to result in a recommendation for separation, the statement of the accused member will be in question-and-answer form. Joint or duplicate copies of statements or reports will not be submitted.

6. require an accused member to submit a report and answer questions which specifically, directly, and narrowly relate to the alleged misconduct or to the performance of his official duties.

7. ensure that his commanding officer is informed of continuing developments in the investigation. In addition, the investigator will prepare and submit the Notification RE: C.R. Investigation form (CPD-44.217) to his unit commanding officer when additional information relative to corrections, deletions, etc., concerning the accused, complainant, witness or victim is obtained.

8. when the investigation of an allegation, supported by evidence, strongly indicates unfitness for duty, notify his commanding officer of exempt rank.

9. not unduly extend the investigation to include minor infractions which are violations of Rules and Regulations or directives unless the infraction is reasonably related to the original allegation. Infractions which involve violations of the law and other irregularities which are willful, devious, serious in nature, or which involve the integrity of the Department will result in further investigation and recommendations for disciplinary action, if warranted, no matter what the investigation discloses regarding the original complaint.

10. terminate the investigation when it is determined at any time that the complaint is unfounded or the member clearly exonerated. Reports and statements containing information to justify the unfounding or exoneration of the accused will be forwarded in accordance with the provisions of Addendum 4 of this order.

11. complete the investigation as soon as possible, but no later than thirty days after the date the complaint was received or on the date of any authorized extension. If the investigation, due to its nature or complexity will require more than thirty days to complete, the investigator will submit a Request for Time Extension form (CPD-44.114) for each extension of time to his commanding officer for approval and forwarding to the Internal Affairs Division/Office of Professional Standards. Each time a request for an extension of time is submitted by an investigator, the reason for the request must be clearly justified.

12. when the investigation is complete, classify the complaint as one of the following:

    a. "Unfounded"          when the allegation is false or not factual.

    b. "Exonerated"         when the incident occurred but the actions of the accused were lawful and proper.

    c. "Not Sustained"      when there is insufficient evidence either to prove or disprove allegation.

    d. "Sustained"          when the allegation is supported by substantial evidence to justify disciplinary action.

13. before sustaining a complaint, ensure that "just cause" exists to support the allegation. The investigator will consider the following criteria in making this determination:

    a. The member must have received forewarning or have foreknowledge of possible or probable consequences of his conduct. (This is satisfied by a published rule, regulation, or order made known to Department members.)

3

RFC-Maysonet 014475

     b.  A full and fair investigation established that the member did in fact violate or disobey a rule or order of the Department.

     c.  The accused was afforded an opportunity to respond to the allegations.

     d.  The investigation uncovered substantial evidence or proof of the allegation against the accused.

     e.  The rules, regulations, orders and penalties have been applied without discrimination.

14. if the complaint is sustained:

     a.  request a copy of the accused member's "Summary of Previous Disciplinary Actions" from the Internal Affairs Division via PAX 0-603.

     b.  request a copy of the accused member's "Record of Previous Complimentary History" from the Personnel Division via PAX 0-342.

     c.  ensure the disciplinary action recommended is reasonably related to the seriousness of the member's proven offense, and gives appropriate consideration to the member's previous disciplinary and complimentary history.

     d.  ensure that the investigative file includes all relevant information and establishes the basis for recommending one of the following actions:

        (1) Violation noted, no disciplinary action.

        (2) Reprimand.

        (3) Suspension for a specific number of days, not to exceed 30.

        (4) Separation.

     e.  specifically state that he has taken into consideration the accused member's previous complimentary history and disciplinary history when preparing the recommendation for disciplinary action portion on either the Summary Report (CPD-44.112) or the Summary Report Digest (CPD-44.112A). However, the investigator will not enter the accused member's complimentary history or disciplinary history into the narrative of any report. These histories will be utilized as attachments only.

15. forward reports and statements which justify the finding in accordance with the provisions of Addendum 4 of this order.

D.  The commanding officer of the investigating unit is responsible for ensuring a complete and expeditious investigation of the complaint, and he may assign other members of the unit to assist in the investigation when the investigating member is off duty or otherwise unavailable. The commanding officer will periodically check the progress of the investigation and will record the dates of these progress checks on the reverse side of the Investigator's Copy of the Complaint Against Department Member report which is retained in unit files. The commanding officer of the investigative unit may recommend whether the accused member should be:

1.  retained in his present assignment;

2.  assigned to other duty where he is under close supervision and has limited contact with the public or other members;

3.  excused from duty; or

4.  immediately suspended.

E.  An accused member may be excused from duty without pay by his commanding officer for a period not to exceed two tours of duty. In unusual situations when an accused member should be excused for more than two tours of duty, such as over a holiday weekend, or when a change of assignment is recommended, permission will first be obtained either from the Assistant Deputy Superintendent, Internal Affairs Division, an Administrator of the Office of Professional Standards, or the on duty assistant deputy superintendent for Operations Command. (In the event an accused member is excused from duty without pay, and the complaint is classified

RFC-Maysonet 014476

as unfounded, exonerated or not sustained as a result of the investigation, the member will receive pay for the period of time he was excused.)  Whenever an accused member is excused from duty, his commanding officer will immediately notify (by telephone and in writing) the Internal Affairs Division or the Office of Professional Standards, as appropriate and the commanding officer of the division or bureau to which the accused member is assigned.  The commanding officer will also notify (by telephone and via a Personnel Action Request form, CPD-11.612) the Director of the Finance Division (for payroll purposes) as soon as possible.

*Matt L. Bodigne*
Superintendent of Police

| Indicates new or revised item
87-028 BW

RFC-Maysonet 014477

| REVISION TO: | DATE OF ISSUE | EFFECTIVE DATE | REVISION NO. |
|---|---|---|---|
| General Order 93-3, Add. 3. | 12 July 1994 | 13 July 1994 | 93-3-3A |

| TITLE | DISTRI-BUTION | RESCINDS |
|---|---|---|
| CONDUCT OF THE INVESTIGATION | C | |

I.     **PURPOSE**

This revision directs the assignment of a complaint investigation to the immediate supervisor of an accused member when the member is assigned to the unit that has been designated to conduct the investigation.

II.    Item II-A is amended and will read as follows:

A.     The ranking on-duty member of the unit which has initiated an investigation or to which an investigation has been assigned will immediately designate a command or supervisory member of the unit to conduct the investigation. If the accused is a member of the unit assigned to conduct the investigation, the immediate supervisor of the accused will be assigned the investigation unless that supervisor initiated the investigation, and is the complainant, or witnessed the incident which resulted in the complaint being filed, or is on extended medical, or is on furlough. Every effort will be made to ensure that the investigation is conducted in an impartial manner.

_Matt L. Rodriguez_
Superintendent of Police

94-064   JJH

RFC-Maysonet 014478



| **REVISION TO:** | **DATE OF ISSUE** | **EFFECTIVE DATE** | **NO.** |
|---|---|---|---|
| General Order 93-3, Add. 3. | 31 December 1997 | 1 January 1998 | 3B |

| **TITLE** | **DISTRI-BUTION** | **RESCINDS** |
|---|---|---|
| CONDUCT OF THE INVESTIGATION | C | |

1. **PURPOSE**

   This revision informs Department members of a change in disciplinary procedures for captains and exempt command members.

2. **REVISIONS**

   Item II-C-14-d-(3) is revised and will read as follows:

   d.   ensure that the investigative file includes all relevant information and establishes the basis for recommending one of the following actions:

   (1) Violation noted, no disciplinary action.

   (2) Reprimand.

   (3) Suspension for a specific number of days, not to exceed 30.

   **NOTE:**   Captains, exempt command members and civilian members exempt from coverage under the overtime provisions of the Fair Labor Standards Act may only be suspended in increments of the designated work week (7 calendar days). For example, suspensions can only be for 7, 14, 21 and 28 calendar days. A disciplinary suspension can never be less than 7 days.

   (4) Separation.

   *Acting Superintendent of Police*

| Indicates new or revised item.

97-122 JHP

RFC-Maysonet 014479

| REVISION TO:<br><br>General Order 93-03, Addendum 3 | DATE OF ISSUE<br><br>26 February 2003 | EFFECTIVE DATE<br><br>27 February 2003 | NO.<br><br>3C |
|---|---|---|---|
| SUBJECT<br>CONDUCT OF THE INVESTIGATION | DISTRI-<br>BUTION<br>C | RESCINDS<br><br>General Order 93-03,<br>Addendum 3B | |

## I. PURPOSE

This revision informs Department members of the change in disciplinary procedures for captains. Captains are no longer exempt from the Fair Labor Standards Act and may therefore be suspended for time periods other than one week increments.

## II. REVISION

Item II-C-14-d-(3) is revised and reads:

(3) Suspension for a specific number of days, not to exceed 30.

> NOTE: *Exempt command members and civilian members exempt from coverage under the overtime provisions of the Fair Labor Standards Act may only be suspended in increments of the designated work week (7 calendar days). For example, suspensions can only be for 7, 14, 21, and 28 calendar days. A disciplinary suspension can never be less than 7 days.*

Superintendent of Police

New or revised material is indicated by *italics*.

02-131 SMK

| | ADDENDUM TO:<br>General Order 93-3 | DATE OF ISSUE<br>13 January 1993 | EFFECTIVE DATE<br>15 January 1993 | ADDENDUM NO.<br>4 |
|---|---|---|---|---|
| SUBJECT<br>REPORTING AND REVIEW PROCEDURES | | | DISTRI-<br>BUTION<br>C | RESCINDS |

I.    **PURPOSE**

     This addendum sets forth reporting procedures and provides for command review of recommended disciplinary action.

II.   **REPORTING AND REVIEW PROCEDURES**

    A.   In cases wherein the recommendation exceeds 5 days suspension, a final report of a complaint register investigation, utilizing a Summary Report (CPD-44.112) as the first page and following the instructions shown on the reverse side of the form for the balance of the report, will be submitted regardless of the status of any court action relating to the accused member.

    B.   The investigator will ensure that the final report contains the employee number and social security number of the accused member, the classification of the complaint and, in sustained cases, the number(s) of the Department Rules and Regulations which were violated, the content of the rule(s), a statement indicating how the rule was violated by the accused member, and the recommended disciplinary action.

    C.   In cases wherein the investigation is to be classified as either unfounded, exonerated, not sustained, or sustained and the disciplinary recommendation does not exceed 5 days suspension, the investigator will prepare the Summary Report Digest (CPD-44.112A) as the first page and follow the instructions shown on the form.

    D.   All pages of reports or documents relating to a complaint register investigation will be identified by the Complaint Register number entered on the lower right hand corner. In addition, each report or document will be numbered consecutively by the investigator. This number will be the "Attachment" number and will also be entered on the lower right hand corner. The Complaint Against Department Member report (CPD-44.202) will always be "Attachment 1," and will be the original copy of the final investigation report.

    E.   Sustained Cases

       1.   If the accused member is assigned to the unit which has conducted the complaint register investigation, the investigator will submit the original and three copies of the final investigation report to his unit commanding officer who will:

          a.   review the report to ascertain the adequacy and timeliness of the investigation.

          b.   determine whether the evidence indicates any culpability by supervisory personnel for the violation. (The failure of supervisory personnel at any level of command to hold subordinates accountable requires disciplinary action.) If culpability is apparent, a Complaint Register number will be obtained and a separate investigation will be conducted.

          c.   judge the soundness of the conclusions and the findings, returning the report for further investigation, when necessary.

          d.   ensure that the original copy (Investigator's Copy), of the Complaint Against Department Member report (CPD-44.202), with all required entries completed, is attached to the original copy of the final investigation report as "Attachment 1."

          e.   retain one copy of the final investigation report for unit files. (This copy will be destroyed upon notification by the Internal Affairs Division that there has been a final disposition of the case.)

    f.  forward two copies of the final investigation report directly to the Internal Affairs Division.

    g.  forward the original copy of the final investigation report to the Internal Affairs Division through command channels.

2.  If the accused member is not assigned to the unit which has conducted the complaint register investigation, and the investigation has not been conducted by the Internal Affairs Division or the Office of Professional Standards, the investigator will submit the original and four copies of the final investigation report to his unit commanding officer who will follow the procedures outlined in Items II-E-1-a through II-E-1-f of this addendum, and forward the original and one copy of the report to the unit commanding officer of the accused member. The unit commanding officer of the accused member will follow the procedures outlined in Item II-E-1-a through II-E-1-e and II-E-1-g of this addendum. In the event the unit commanding officer of the accused member does not concur with the findings and/or recommendation of the investigating unit, a cover report containing detailed justification for proposing alternate findings and/or an alternate recommendation will be prepared which will be forwarded with the original copy of the final investigation report through command channels.

3.  The member's commanding officer or any superior officer in the chain of command will recommend whether or not options to suspension should be granted by the Superintendent.

F.  Unfounded, Exonerated or Not Sustained Cases

1.  If the accused member is assigned to the unit which has conducted the complaint register investigation, the investigator will submit the original and two copies of the final investigation report to his unit commanding officer who will:

    a.  review the report to ascertain the adequacy and timeliness of the investigation.

    b.  judge the soundness of the conclusions and the findings, and either indicate concurrence with the findings or return the report for further action, when necessary.

    c.  ensure that the original copy of the Complaint Against Department Member report (Investigator's copy), with all required entries completed, is attached to the original copy of the final investigation report as "Attachment 1."

    d.  retain one copy of the final investigation report for unit files. (This copy will be destroyed upon notification by the Internal Affairs Division that there has been a final disposition of the case.)

    e.  forward one copy of the final investigation report directly to the Internal Affairs Division.

    f.  forward the original copy of the final investigation report to the Internal Affairs Division through command channels.

2.  In unfounded, exonerated or not sustained cases, if the accused member is not assigned to the unit which has conducted the complaint register investigation, and the investigation has not been conducted by the Internal Affairs Division or the Office of Professional Standards, the investigator will submit the original and three copies of the final investigation report to his unit commanding officer. The commanding officer will follow procedures outlined in Items II-F-1-a through II-F-1-e, and forward the original and one copy of the report to the unit commanding officer of the accused member. The unit commanding officer of the accused member will follow the procedures outlined in Items II-F-1-a through II-F-1-d and II-F-1-f of this addendum. In the event the unit commanding officer of the accused member does not concur with the findings and/or recommendation of the investigating unit, a cover report containing detailed justification for proposing alternate findings and/or an alternate recommendation will be

2

RFC-Maysonet 014482

prepared and forwarded with the original copy of the final investigation report through command channels.

G.   Command Channel Review

The first exempt member in the accused member's chain of command, upon receipt of the original copy of a final report of a complaint register investigation, will:

1.   review the report for completeness and thoroughness of the investigation also considering the factors outlined in Addendum 3, Item II-C-12.

2.   either approve or disapprove of the findings and the recommendation utilizing the Command Channel Review form (CPD-44.113). If disapproved, he will prepare a cover report containing detailed justifications for proposing alternate findings and/or an alternate recommendation which will be attached to the original copy of the final investigation report. If the exempt member determines that further investigation is necessary, he will prepare a report outlining the area of concern and return the report with the investigative file to the investigator.

3.   forward the original copy of the final investigation report to the deputy superintendent through his chain of command who will review the report, approve the findings and/or recommendation or propose alternate findings and/or an alternate recommendation, and forward the report to the Internal Affairs Division. Following approval by the deputy superintendent, no new charges will be added by anyone, except the Superintendent, without consultation with the deputy superintendent who approved the report.

H.   Complaint Review Procedures

Department Review of Disciplinary Recommendation

1.   The Assistant Deputy Superintendent, Internal Affairs Division, or an Administrator of the Office of Professional Standards, upon receipt of a final report of a Complaint Register investigation, will review the report, concur with the finding or propose an alternate finding/recommendation, in a report containing detailed justification for proposing the alternate finding/recommendation making the final recommendation for disciplinary action which an accused member may accept or reject. If the final recommendation is a reprimand or a suspension of 30 days or less, the Internal Affairs Division/Office of Professional Standards will notify the unit commanding officer of the member facing disciplinary action, by telephone, that a Request For Complaint Review Panel Hearing/Waiver of Complaint Review Panel Hearing and Waiver of Police Board Review (CPD-44.210), in duplicate, is being forwarded to the unit and that the member will have 72 hours after receiving the form to request a Complaint Review Panel hearing or waive the right to both such hearing and a Police Board Review of the disciplinary action. However, AFSCME members will not be afforded the Complaint Review Panel process as the predisciplinary provisions outlined in their collective bargaining agreement serves in place of the Complaint Review Panel Hearing process.

2.   Upon receipt of the forms at the unit of assignment of the member facing disciplinary action, the unit commanding officer or the unit watch commander will:

a.   schedule a meeting with the member as soon as possible, at which time the member will be given the original copy of the Request For Complaint Review Panel Hearing/Waiver of Complaint Review Panel Hearing and Waiver of Police Board Review form.

b.   record the date and time that the member was given the original copy of the form on both copies of the form.

c.   immediately forward the duplicate copy of the form to the Internal Affairs Division/Office of Professional Standards.

3

    d.  advise the member:

        (1)  of the rule(s) violated and the corresponding specifications of misconduct, to include date, time, location and manner in which the rule was violated.

        (2)  that the form must be executed and returned to the Internal Affairs Division/Office of Professional Standards within 72 hours after the date and time of notification recorded on the form.

  3.  When a signed Request For Complaint Review Panel Hearing/Waiver of Complaint Review Panel Hearing and Waiver of Police Board Review form is received at the Internal Affairs Division/Office of Professional Standards within the 72 hour time period from a member facing disciplinary action and:

    a.  a Complaint Review Panel hearing is requested, the Department Advocate will schedule the hearing as soon as practicable.

    b.  both a Complaint Review Panel hearing and a Police Board hearing are waived, the final investigation report will be forwarded to the Superintendent for review and decision.

  4.  In the event a signed Request for Complaint Review Panel Hearing/Waiver of Complaint Review Panel Hearing and Waiver of Police Board Review form is not received by the Internal Affairs Division/Office of Professional Standards within 72 hours after a member facing disciplinary action was given the form, the right to both the hearing and the review has been waived by the member.

I.  Complaint Review Panel

  1.  A Complaint Review Panel will hear cases:

    a.  when an accused member requests a hearing relative to a suspension of 30 days or any lesser degree of disciplinary action.

    b.  upon direction of the Superintendent.

  2.  Complaint Review Panels for the hearing of individual cases will be selected as follows:

    a.  Sworn members

        (1)  When one of the accused is a member of the rank of sergeant or above, the panel will consist of at least one member of exempt rank and one member of the same rank as the accused and one member as determined by the Assistant Deputy Superintendent, Internal Affairs Division.

        (2)  In all other cases, the panel will consist of one lieutenant of police, one sergeant of police, and one member of the same rank as the accused.

        (3)  Whenever possible, the member of the panel who is the same rank as the accused will be selected from the ranks performing duties similar to those of the accused.

    b.  Civilian members

        (1)  When an accused is a civilian member serving in a position classified by the Department of Personnel at a salary which is equal to Grade 14 or above, the panel will consist of two members of exempt rank and one civilian member of the same pay grade or higher as the accused.

        (2)  In all other cases, the panel will consist of one lieutenant of police, one sergeant of police, and one civilian member of the same pay grade as the accused.

4

c. A member will not serve on a Complaint Review Panel which reviews the case of any accused member who was under his supervision or command, is presently assigned to the same unit, or was assigned to the same unit at the time the alleged incident occurred or when the Complaint Register number was obtained.

3. The Department Advocate will prepare cases for presentation to a Complaint Review Panel, requesting additional investigation when necessary. He will schedule cases and will designate a presiding officer from within the panel selected to hear the case.

4. Accused Department members will be allowed reasonable access to the Complaint Register investigation file that is the subject of a Complaint Review Panel hearing. An accused member requesting access will submit a To-From-Subject report to the Department Advocate, Office of the Superintendent, at least 24 hours prior to inspecting the file. An accused member may not remove or make copies of any documents in the file.

5. The Department may remove confidential documents or information from the Complaint Register investigation file prior to allowing access by the accused member. Documents or information excluded will not be used against the member in the Complaint Review Panel Hearing.

6. All Department members appearing before a Complaint Review Panel will:

a. attend in the uniform prescribed for the member's regular assigned duty.

b. be provided with a copy of a synopsis of the investigation of the Complaint Register file. An accused member may obtain a copy of the synopsis at least 48 hours prior to the Complaint Review Panel hearing at the Department Advocate's Office, Office of the Superintendent.

7. The Complaint Review panel will consider investigative reports, statements, other documents, previous disciplinary history, previous complimentary history, and such other evidence it deems appropriate to the issue. The panel will hear the plea of any accused member who wishes to be heard, and at its discretion may order an accused member or any other member of the Department to appear. The highest ranking member of the panel, as chairman, will retain control of the proceedings at all times in accordance with established rules of procedure.

8. An accused member will be permitted to select one person of his choosing who agrees to assist him. The assisting member must be of the same rank and/or position or below the rank and/or position of the highest ranking member of the Complaint Review Panel if the accused member desires that he accompany him into the hearing room.

9. At the Complaint Review Panel hearing the assisting member will:

a. assist the accused member in the presentation of his defense by reminding the accused member of pertinent points or circumstances he may have omitted which could affect his case.

b. be allowed to make an inquiry concerning relevant and material issues on behalf of the accused member and may present argument and a summary of evidence in support of the accused member's position.

c. be allowed to address the panel on behalf of the accused member but will not be permitted to cross-examine members of the panel or the Department Advocate.

10. If the Complaint Review Panel concludes that further investigation is necessary before its findings can be determined, the case will be returned to the Department Advocate indicating the specific action desired or information sought.

11. The Complaint Review Panel will recommend whether the charges should result in a finding of unfounded, exonerated, not sustained or sustained.

5

RFC-Maysonet 014485

12. In those cases where the Complaint Review Panel has concurred with the sustained finding, it will then review the recommended penalty and either concur or recommend a greater or lesser penalty. When an alternate penalty is recommended, it must be based upon additional specific facts which were discovered during the hearing and be set forth in writing in a clear, concise and complete manner.

13. After the Complaint Review Panel hearing has been conducted, the Assistant Deputy Superintendent, Internal Affairs Division, or the Chief Administrator, Office of Professional Standards, as appropriate, will forward the case file and the recommendations of the panel to the Superintendent of Police for review and decision.

J. **Police Board Review of Suspension**

1. The Police Board review of suspension is a review of the written investigative case file only, and an accused member is not afforded the opportunity of personally appearing and testifying before the Board in such instances.

2. When the Superintendent has reviewed a case which has been heard by a Complaint Review Panel and orders a suspension of not less than 6 days nor more than 30 days, the case file will be returned to the Internal Affairs Division/Office of Professional Standards which will notify the unit commanding officer of the member facing suspension, by telephone, that a Request For/Waiver of Police Board Review of Suspension (CPD-44.222), in duplicate, is being forwarded to the unit and that the member facing suspension will have 3 business days after receiving the form to exercise or waive the right to such review. The Office of the Police Board is open from 0800 to 1600 hours, Monday through Friday, except holidays.

3. Members of AFSCME ordered suspended for more than 10 days will be afforded the Police Board review of suspension.

4. Upon receipt of the forms at the unit of assignment of the member facing suspension, the unit commanding officer or unit watch commander will:

    a. schedule a meeting with the member as soon as possible, at which time the member will be given the original copy of the Request For/Waiver of Police Board Review of Suspension form.

    b. record the date and time that the member was given the original copy of the form on both copies of the form.

    c. immediately forward the duplicate copy of the form to the Internal Affairs Division/Office of Professional Standards.

    d. advise the member that within 3 business days after the date and time of notification recorded on the form that the:

        (1) signed form indicating acceptance of the suspension and waiver of the Police Board review must be returned to the Internal Affairs Division/Office of Professional Standards if the suspension is accepted.

        (2) member must personally file a request for a Police Board review or file the request by certified mail, postage prepaid, with the Office of the Police Board, Room 603, James R. Riordan Headquarters Building, 1121 S. State Street, if the suspension is rejected. The date and time of the certified mailing, will be the date and time of the filing. A failure to file the request within the 3 business day time period waives the member's right to such review. AT THE TIME OF THE FILING, OR WITHIN 5 DAYS THEREAFTER, THE MEMBER MAY ALSO SUBMIT A WRITTEN STATEMENT, AND DOCUMENTARY EVIDENCE IF ANY, OUTLINING THE REASONS THE MEMBER REQUESTS THE REVIEW.

*Matt L. Rodriguez*
Superintendent of Police

Indicates new or revised item.
87-028   BW

6

| **REVISION TO:** General Order 93-3, Addendum 4 | DATE OF ISSUE 25 March 1999 | EFFECTIVE DATE 26 March 1999 | NO. 4A |
|---|---|---|---|
| TITLE **REPORTING AND REVIEW PROCEDURES** | DISTRIBUTION C | RESCINDS | |

General Order 93-3, Addendum 4 is revised as follows:

Items I - A through C are added and will read:

I.   **PURPOSE**

This addendum:

A.   sets forth reporting procedures and provides for command review of recommended disciplinary action.

B.   discontinues the use of the Command Channel Review - Complaint Register Investigation No. form (CPD-44.113, Rev. 2/84).

C.   introduces the use of the Command Channel Review Complaint Register Investigation No. form (CPD-44.113, Rev. 1/99) and Command Channel Review Sustained Case Complaint Register No. form (CPD-44.113-A, Rev. 1/99).

1.   In all sustained cases, form (CPD 44.113-A), which is pink, will be used.

2.   In all cases without a sustained finding (not-sustained, unfounded, exonerated), form (CPD 44.113), which is white, will be used.

Item II - G is revised and will read:

G.   Command Channel Review

1.   A time limit is imposed on each level of Command Channel Review for **all** complaint register investigations.  The time allotted for each level of exempt review will be ten days from receipt by the unit.

a.   The date that a unit receives the investigation for review will be entered in the "Date Received By Unit" box on the appropriate Command Channel Review form.

b.   Upon completion of the exempt member's review, the date the investigation was forwarded to the next exempt member in the chain of command will be entered in the "Date Forwarded By Unit" box on the appropriate Command Channel Review form.

2.   The first exempt member in the accused member's chain of command, upon receipt of the original copy of a final report of a complaint register investigation, will review the investigation.  This review should determine if the investigation was thorough and complete; that the finding was correctly classified; and that any recommendation made is appropriate.

a.   If the exempt member determines that additional investigation is necessary, he will prepare a report outlining the area of concern

RFC-Maysonet 014487

and forward that report along with the original file to the investigator for further action.

b.   If the exempt member disapproves the findings or recommendation, this member will prepare a cover report containing detailed justifications supporting the alternate conclusion(s). This report will be attached to the original copy of the investigation report and will be forwarded to the next level exempt member with the proper indication made on the appropriate Command Channel Review form.

c.   If the exempt member approves the final report of a complaint register investigation, he will indicate his concurrence on the appropriate Command Channel Review form and submit it with the original investigation to the next level exempt member for review.

3.   Investigations with a finding other than sustained (i.e., not-sustained unfounded, exonerated) will normally require only two levels of exempt review. Upon a finding of concurrence by the second level exempt member, the original investigative report and the (white) Command Channel Review form will be routed to Internal Affairs Division or the Office of Professional Standards, as appropriate. The exceptions to the two levels of review, which require full Command Channel Review to the bureau deputy superintendent, are as follows:

a.   Investigations in which the accused member is alleged to have committed a crime, including domestic battery.

b.   Investigations in which a complaint was or could be made to the Equal Employment Opportunity Officer (includes allegations of cultural bias, sexual harassment, or other violations prohibited by prevailing labor laws).

c.   Investigations in which an exempt member is the accused.

d.   Investigations in which the accused member is assigned to a division under the Office of the Superintendent, the Command Channel Review form and original investigation will be routed from the division's exempt member to the Administrative Assistant to the Superintendent.

e.   Investigations that are resubmitted through Command Channel Review after an initial non-concurrence.

4.   In those cases with a sustained finding, the original investigation, the (pink) Command Channel Review form, and any exempt member's cover report(s) supporting alternate conclusions will be submitted for review through the chain of command to the bureau deputy superintendent.

a.   Upon review and approval by the bureau deputy superintendent, the entire packet will be routed to the Internal Affairs Division or the Office of Professional Standards, as appropriate.

RFC-Maysonet 014488

b.    Following the approval of the bureau deputy superintendent, no new charges will be added by anyone, except the Superintendent, without consulting the deputy superintendent who approved the final complaint register investigation report.

Superintendent of Police

99-018 BSU

3

RFC-Maysonet 014489

| REVISION TO: General Order 93-3, Addendum 4 | DATE OF ISSUE 6 April 1999 | EFFECTIVE DATE 7 April 1999 | NO. 4B |
|---|---|---|---|

| SUBJECT REPORTING AND REVIEW PROCEDURES | DISTRI- BUTION C | RESCINDS |
|---|---|---|

**Item II-I has been revised and reads:**

I.   Complaint Review Panel

   1.   A Complaint Review Panel will hear cases:

      a.   when an accused member requests a hearing relative to a suspension of 30 days or any lesser degree of disciplinary action.

      b.   upon direction of the Superintendent.

   2.   Complaint Review Panels for the hearing of individual cases will be selected as follows:

      a.   Sworn members

        (1)   When one of the accused is a member of the rank of sergeant or above, the panel will consist of at least one member of exempt rank and one member of the same rank as the accused and one member as determined by the Assistant Deputy Superintendent, Internal Affairs Division.

        (2)   In all other cases, the panel will consist of one lieutenant of police, one sergeant of police, and one member of the same rank as the accused.

        (3)   Whenever possible, the member of the panel who is the same rank as the accused will be selected from the ranks performing duties similar to those of the accused.

      b.   Civilian members

        (1)   When an accused is a civilian member serving in a position classified by the Department of Personnel at a salary which is equal to Grade 14 or above, the panel will consist of two members of exempt rank and one civilian member of the same pay grade or higher as the accused.

        (2)   In all other cases, the panel will consist of one lieutenant of police, one sergeant of police, and one civilian member of the same pay grade as the accused.

      c.   A member will not serve on a Complaint Review Panel which reviews the case of any accused member who was under his supervision or command, is presently assigned to the same unit, or was assigned to the same unit at the time the alleged incident occurred or when the CR number was obtained.

   3.   The Department Advocate will prepare cases for presentation to a Complaint Review Panel, requesting additional investigation when necessary. The Advocate will schedule cases according to the provisions of this directive. The highest ranking member of the Complaint Review Panel will serve as the presiding Chairperson.

4.   Accused Department members will be allowed reasonable access to the CR investigation file that is the subject of a Complaint Review Panel hearing. The review must take place in the Office of the Department Advocate or Office of Professional Standards (depending upon which investigative body conducted the CR investigation) during normal business hours. An accused member requesting to review the complaint register investigation file:

a.   has the right to review the investigative file, from the date the notice of the hearing date is received, until 48 hours prior to the scheduled hearing date.

b.   will submit a To-From-Subject report to the Department Advocate, at least twenty-four hours prior to inspecting the file.

c.   who wishes to present new evidence to the Complaint Review Panel, will submit such evidence to the Department Advocate at least five days prior to the hearing date.

d.   may use an audio tape recorder during the file review. However, the member may not remove or make copies of any documents in the file.

5.   Complaint Review Panel hearings will:

a.   whenever possible, be held on the member's regularly scheduled working days.

b.   be scheduled giving the member a minimum of ten days' notice as to the date and time of the hearing.

c.   be scheduled, whenever possible, with:

(1)   1st watch officers scheduled for the first hearings of the day.

(2)   3rd watch officers scheduled for the last hearings of the day.

NOTE: Members will not be scheduled to attend CRP hearings at the same time they are scheduled to appear in court; however, members will be required to attend the CRP hearing on days they are scheduled to appear in court if there is no time conflict. If unable to attend the CRP hearing because of a required court appearance, members will notify the Department Advocate Section providing the court location and time, and fax to the Department Advocate Section a copy of the subpoena/notification (if any).

d.   be continued only upon good cause. A written request for a continuance must be made at least five days prior to the date scheduled for hearing. Normally, a case set for hearing will only be continued once.

e.   not normally be scheduled or rescheduled to a date during the officer's scheduled furlough segment. Officers who are scheduled to attend a Complaint Review Panel while on furlough will have their furlough segment extended equal to the number of days required for the Complaint Review Panel.

6.   The Department may remove confidential documents or information from the CR investigation file prior to allowing access by the accused member.

2

RFC-Maysonet 014491

Documents or information excluded **will not** be used against the member in the Complaint Review Panel Hearing.

7. All Department members appearing before a Complaint Review Panel will:

   a. attend in the uniform prescribed for the member's regular assigned duty.

   b. be provided with a copy of a synopsis of the investigation of the Complaint Register file. An accused member may obtain a copy of the synopsis at least forty-eight hours prior to the Complaint Review Panel hearing at the Department Advocate's Office.

8. The Complaint Review Panel will:

   a. consider investigative reports, statements, other documents, and such other evidence it deems appropriate to the issue.

   b. hear the plea of any accused member who wishes to be heard.

   c. order an accused member or any other member of the Department to appear before it, at the Panel's discretion.

   d. **not** discuss the case pending before it with either the Advocate or the assisting member without the other being present.

      **NOTE:** The Chairperson will retain control of the proceedings at all times in accordance with established rules of procedure.

9. An accused member will be permitted to select one person of his choosing who agrees to assist him. The assisting member must be of the same rank and/or position or below the rank and/or position of the highest ranking member of the Complaint Review Panel if the accused member desires that he accompany him into the hearing room.

10. At the Complaint Review Panel hearing, the assisting member will:

    a. assist the accused member in the presentation of his defense by reminding the accused member of pertinent points or circumstances he may have omitted which could affect his case.

    b. be allowed to make an inquiry concerning relevant and material issues on behalf of the accused member and may present argument and a summary of evidence in support of the accused member's position.

    c. be allowed to address the panel on behalf of the accused member, but will not be permitted to cross-examine members of the Panel or the Department Advocate.

11. If the Complaint Review Panel concludes that further investigation is necessary before its findings can be determined, the case will be returned to the Department Advocate indicating the specific action desired or information sought. Further investigation will be conducted as directed by the panel.

12. The Complaint Review Panel will recommend whether the charges should result in a finding of unfounded, exonerated, not sustained, or sustained.

13. For those cases in which the Complaint Review Panel has concurred with the sustained finding, it will review the recommended penalty, previous complimentary and disciplinary history, and either concur or recommend a greater or lesser penalty. When an alternate finding is recommended, it

3

RFC-Maysonet 014492

must be based upon specific facts entered into the record during the hearing and be set forth in writing.

14. After the Complaint Review Panel hearing has been conducted, the Assistant Deputy Superintendent, Internal Affairs Division, or the Administrator in Charge, Office of Professional Standards, as appropriate, will forward the case file and the recommendations of the panel to the Superintendent of Police for review and decision.

Superintendent of Police

Indicates new or revised item.

97-058 MLS

4

| ADDENDUM TO:<br>General Order 93-3 | DATE OF ISSUE<br>13 January 1993 | EFFECTIVE DATE<br>15 January 1993 | ADDENDUM NO<br>5 |
|---|---|---|---|

| SUBJECT<br>SPECIAL SITUATIONS | DISTRI-<br>BUTION<br>C | RESCINDS |
|---|---|---|

I.  PURPOSE

*RESCINDED BY*
*GO.93-03053*
*ON 27-Sep-02*

This addendum identifies certain special situations and sets forth procedures for their investigation and processing.

II.  SPECIAL SITUATIONS

A.  Indebtedness

1.  Members who incur just debts are expected to liquidate such debts within a reasonable period of time.

2.  Wages of public employees are not immune from garnishment under the Wage Deduction Act (Chapter 62, Illinois Revised Statutes).

3.  Any member receiving a complaint of indebtedness against any other member will inform the creditor reporting such indebtedness that an adequate remedy for a creditor is now provided by law.

B.  Arrest Warrants and Judicial Non-Traffic Summons for Department Members

1.  A warrant clerk will, when preparing an application for a warrant against a Department member:

a.  follow the procedures outlined in the Department Special Order entitled "Judicial Non-Traffic Summons."

b.  ascertain if a Complaint Register number has been obtained.

c.  immediately notify a supervisory member in instances where a Complaint Register number has not previously been obtained.

d.  accompany the complainant to court and inform the judge that the person against whom the complaint is being filed is a member of the Chicago Police Department and that the matter is being investigated by the Department.

e.  submit a brief report of the circumstances to the Office of Professional Standards or Internal Affairs Division, as appropriate.

2.  When a member assigned to serve a warrant determines that the person named in the warrant is a member of the Department, he will notify his supervisor who, in turn, will notify the Office of Professional Standards.  The Complaint Register number assigned by the Office of Professional Standards will be recorded on the Arrest Report (CPD-11.420).

3.  Whenever a member of the Department is subjected to a physical arrest by the Chicago Police Department for other than a traffic or conservation offense, the case will be set for a court hearing within five days after the date of arrest.

4.  Whenever a member of the Department is subjected to a physical arrest for a traffic or conservation offense, the case will be set for a court hearing in accordance with existing Department directives.

C.  The Polygraph

1.  When a polygraph examination is deemed necessary, the complainant will be requested to take a polygraph examination first.

RFC-Maysonet 014494

2. If the complainant does not take the polygraph exam, the accused police officer will not be requested to take a polygraph exam.

3. If the complainant takes the polygraph exam and the results indicate deception, the accused officer may be requested to take a polygraph exam covering those issues wherein the examiner determines that the complainant is truthful.

4. When the polygraph is used, the accused member will be advised 24 hours prior to the administering of the tests, in writing, of any questions to which the Department will request an answer.

5. If the officer under investigation requests to take a polygraph exam, he may do so. However, an officer shall not be disciplined for refusal to take a polygraph exam, and the results of the polygraph exam shall not be admissible as evidence in proceedings before the Police Board, or in any proceedings where the officer may appeal to the Police Board, unless by Illinois or Federal Court decision or Illinois Statute such evidence becomes admissible before the Police Board.

D. Resisting a Police Officer, Obstructing a Police Officer, Assault of a Police Officer and/or Battery of a Police Officer

1. In every instance when a person is arrested for Resisting a Police Officer, Obstructing a Police Officer, Assault of a Police Officer, and/or Battery of a Police Officer, the arresting officer and the booking officer will notify the district watch commander immediately. The arresting officer, when appropriate, will also follow the procedures contained in the Department Special Order entitled "Police Officer's Battery Reporting Procedures."

2. The watch commander will personally conduct a complete and thorough investigation into the circumstances of the arrest and any injuries. This must include an interview of the arrestee(s) and the arresting officer(s) and, when circumstances permit, the taking of photographs.

3. When improper action of the arresting officer is indicated during the investigation, the watch commander will immediately notify the Office of Professional Standards and obtain a Complaint Register number.

4. Before completing his tour of duty, the watch commander will prepare a summary report of this investigation, regardless of his findings, in quadruplicate, to which he will attach available related documents. The original copy will be forwarded to the Office of Professional Standards; one copy will be forwarded to the Office of the First Deputy Superintendent; one copy will be forwarded to the appropriate area deputy chief; and the remaining copy will be submitted to the unit commander for his review.

E. Allegations of Impairment, Involving the Operation of a Vehicle -- on or off duty

1. Allegations of impairment involving the operation of a vehicle include driving while under the influence of alcohol, drugs or a combination of alcohol and drugs.

2. The meaning of the term "drugs" will include but not be limited to cannabis as defined in Chapter 56 1/2, Section 703, Illinois Revised Statutes, and controlled substances as defined in Chapter 56 1/2, Section 1102, paragraph (f), Illinois Revised Statutes, or as amended.

3. In every instance when a complainant or a sworn member makes an allegation against a Department member relating to impairment while operating a motor vehicle, in addition to complying with the provisions of Addendum 2 of this directive, the procedures outlined below will be followed.

a. The responsible command or supervisory member will:

(1) obtain a Complaint Register number.

2

RFC-Maysonet 014495

    (2)    ensure that a To-From-Subject report is obtained from each member having knowledge of the circumstances surrounding the complaint.

    (3)    prepare a To-From-Subject report summarizing the preliminary investigation.

b.  The accused member will be requested to read and sign a Notification of Charges/Allegations (CPD-44.115) to acknowledge that he has received a written copy of the specific allegations made against him.

c.  The incident will be investigated in accordance with the provisions of the General Order entitled "Driving While Under The Influence-Implied Consent" and any related directives (e.g., "Traffic Accident Investigation," etc.).

d.  When the accused member has complied with all the provisions (e.g., Alcoholic Influence Field Report, (CPD-22.117), Alcoholic Influence Report, (CPD-22.116), breath test, etc.) of the General Order entitled "Driving While Under The Influence-Implied Consent," it will not be necessary to repeat these procedures in the administrative phase of the investigation. In these cases the investigating member will photocopy the completed forms. These photocopies will be marked "Administrative Phase" and noted as attachments to the administrative phase of the CR file.

4.  The responsible command or supervisory member will advise the accused member when the criminal segment of the preliminary investigation has been terminated, regardless of whether or not the accused member is subsequently charged with a violation of Chapter 95 1/2, Section 11.501. When the accused member has not completed or has refused to comply with any of the tests required in the investigation of allegations of Driving While Under the Influence of Alcohol, Drugs or a Combination Thereof-Implied Consent (Illinois Revised Statutes, Chapter 95 1/2, Section 11.501), as applicable, the following mandatory procedures will be required under Administrative Proceedings.

a.  The accused member will be:

    (1)    presented with the Administrative Proceedings Rights form (CPD-44.105,Rev.10A/92) before being asked the questions in the "Interview" section of the Alcoholic Influence Field Report or any other questions which would tend to prove or disprove the allegation. A separate Alcoholic Influence Field Report will be used for this purpose. The investigating member will insert "Administrative Phase" and the CR number in the blank space in the upper left hand corner of the report immediately under the title "Chicago Police Department."

    (2)    ordered to submit to a visual examination, the results of which will be recorded in the "Observations" section of the Alcoholic Influence Field Report.

    (3)    ordered to complete the "Performance Tests," the results of which will be recorded on an Alcoholic Influence Report. A separate Alcoholic Influence Report will be used for this purpose. The investigating member will insert "Administrative Phase" and the CR number in the blank space in the upper left hand corner of the report immediately adjacent to the title "Chicago Police Department." The "Performance Tests" will be administered by a sworn member at least one rank above the rank of the member being examined. In those instances when the accused member is a supervisory member, the performance tests will be conducted by the watch commander of the district of occurrence. If the circumstances require the presence of an exempt member, this member will be responsible for signing the report to indicate that his assessment of the accused member's condition is basically consistent with that of the examiner.

    (4)    ordered to answer the questions in the "Interview" portion of a

3

RFC-Maysonet 014496

Alcoholic Influence Field Report.

(5) ordered to submit to a Breath Test, the results of which will be recorded on the Breath Test Operational Checklist form (CPD-33.804) and entered into the Breath Test section of the Alcoholic Influence Report.

(6) ordered to submit a urine specimen if physically incapable of taking a breath test and not hospitalized, if the results of the Breath Test are inconclusive, or if the results of the breath test are inconsistent with the degree of impairment. Once a decision is made by the responsible command or supervisory member to have the accused member submit a urine specimen, no action pertaining to the collection of the urine specimen will be initiated until after the Internal Affairs Division has been notified. Urine specimen containers can be obtained from the Internal Affairs Division on the 2nd and 3rd watches by calling PAX 0-610 and on the 1st watch by calling PAX 0-301.

b. The urine specimen will be:

(1) collected in a manner that will preserve the dignity of the accused member and ensure the integrity of the sample.

(2) collected in the presence of the investigating supervisor only if the supervisor is of the same sex as the accused member. When the supervisor is not of the same sex as the accused member, arrangements will be made to have a sworn member of the same sex as the accused member witness the collection of the urine specimen. The responsible command or supervisory member will submit a To-From-Subject report which identifies the sample collection site, the date and time of the collection, the identity of the witness to the collection, and any other circumstances pertaining to the investigation.

(3) turned over to a member of the Internal Affairs Division who will assume the responsibility for ensuring that the urine specimen is properly secured in accordance with established division-level standard operating procedures, pending laboratory processing.

c. If the accused member refuses to provide a urine specimen or has refused to complete or comply with any tests required in conjunction with the administrative segment of the investigation, a violation of the Department Rules and Regulations, "Disobedience of an Order or Directive Whether Written or Oral", will be added to the administrative charges against the accused member.

d. All completed reports and forms relating to the incident will be distributed in accordance with the General Order entitled "Driving While Under the Influence-Implied Consent" and/or the addendum to this order entitled "Reporting and Review Procedures," as applicable.

F. Allegations of Impairment, Not Involving the Operation of a Vehicle -- on or off duty

1. Allegations of impairment, not involving the operation of a vehicle include:

a. Alcohol Intoxication,

Alcohol intoxication means that a person's mental or physical functioning is substantially impaired as a result of the use of alcohol.

b. Being under the Influence of Drugs.

Drugs include but are not limited to the following - cannabis as defined in Chapter 56 1/2, Section 703, Illinois Revised Statutes, and controlled substances as defined in Chapter 56 1/2, Section 1102, paragraph (f),

4

RFC-Maysonet 014497

Illinois Revised Statutes, or as amended.

c. Being under the Influence of a Combination of Alcohol and Drugs.

2. Whenever a sworn member or complainant makes an allegation against a Department member relating to impairment not involving the operation of a vehicle, the procedures outlined below will be followed.

    a. The responsible command or supervisory member will:

      (1) obtain a Complaint Register number.

      (2) ensure that a To-From-Subject report is obtained from each member having knowledge of the circumstances surrounding the complaint.

      (3) prepare a To-From-Subject report summarizing the investigation.

    b. The accused member will be requested to read and sign a Notification of Charges/Allegations to acknowledge that he has received a written copy of the specific allegations made against him and will be:

      (1) presented with the Administrative Proceedings Rights form (CPD-44.105,Rev.10A/92) before being asked the questions in the "Interview" section of the Alcoholic Influence Field Report or any other questions which would tend to prove or disprove the allegation.

      (2) ordered to submit to a visual examination, the results of which will be recorded in the "Observation" section of the Alcoholic Influence Field Report.

      (3) ordered to complete the "Performance Tests," the results of which will be recorded on an Alcoholic Influence Report. The Alcoholic Influence Field Report will be marked "Administrative Phase CR#      " in the upper left hand corner. The "Performance Tests" will be administered by a sworn member at least one rank above the rank of the member being examined. In those instances when the accused member is a supervisory member, the performance tests will be conducted by the watch commander of the district of occurrence. If the circumstances require the presence of an exempt member, this member will be responsible for signing the report to indicate that his assessment of the accused member's condition is basically consistent with that of the examiner.

      (4) ordered to answer the questions in the "Interview" portion of a Alcoholic Influence Field Report.

      (5) ordered to submit to a Breath Test, except when the allegation focuses exclusively upon drugs, the results of which will be recorded on the Breath Test Operational Checklist and entered into the Breath Test section of the Alcoholic Influence Report.

      (6) ordered to submit a urine specimen if physically incapable of taking a breath test and not hospitalized, or if the results of the breath test are inconclusive, or if the results of the breath test are inconsistent with the degree of impairment or the allegation focuses upon drugs.

      Once a decision is made by the responsible command or supervisory member to have the accused member submit a urine specimen, no action pertaining to the collection of the urine specimen will be initiated until after the Internal Affairs Division has been notified. Urine specimen containers can be obtained from the Internal Affairs Division on the 2nd and 3rd watches by calling PAX 0-610 and on the 1st watch by calling PAX 0-301.

    c. The urine specimen will be:

5

(1)   collected in a manner that will preserve the dignity of the accused member and ensure the integrity of the sample.

(2)   collected in the presence of the investigating supervisor only if the supervisor is of the same sex as the member. When the supervisor is not of the same sex as the accused member, arrangements will be made to have a sworn member of the same sex as the accused member witness the collection of the urine specimen. The responsible command or supervisory member will submit a To-From-Subject report which identifies the sample collection site, the date and time of the collection, the identity of the witness to the collection, and any other circumstances pertaining to the investigation.

(3)   turned over to a member of the Internal Affairs Division who will assume the responsibility for ensuring that the urine specimen is properly secured in accordance with established division-level standard operating procedures, pending processing by a medical laboratory.

d.  If the accused member refuses to provide a urine specimen or has refused to complete or comply with any tests required in conjunction with the administrative segment of the investigation, a violation of the Department Rules and Regulations, e.g., disobedience of an order or directive whether written or oral, will be added to the administrative charges against the accused member.

e.  All completed reports and forms relating to the incident will be distributed in accordance with the procedures established in the addendum to this order entitled "Reporting and Review Procedures."

G.  Allegations of Miscellaneous Drug Related Activity -- on or off duty

1.  Allegations of miscellaneous drug related activity include, but are not limited to a member's:

a.  unauthorized involvement with a person or enterprise engaged in the illegal use, sale, delivery, manufacture, purchase, or possession of drugs.

NOTE:  For the purpose of this order, the meaning of the words "person" and "enterprise," will be understood to be that of the definitions provided in Chapter 56 1/2, Paragraph 1653, Illinois Revised Statutes.

b.  illegal sale, delivery, manufacture, purchase, possession or use of drugs.

2.  Whenever an allegation against a Department member concerning any of the above categories of conduct is received, the responsible command or supervisory member will obtain a Complaint Register number.

3.  The Complaint Register investigation and the preliminary investigation of all criminal charges, where applicable, will be conducted in conformance with existing Department procedures.

4.  Whenever the results of the preliminary criminal investigation indicate reasonable grounds to believe that the accused member is involved in illegal drug related activity, or upon completion of the initial stages of an administrative investigation which indicates reasonable grounds to believe that the accused member is personally using illicit drugs or is personally misusing legally prescribed or dispensed medications, the accused member will be required to submit a urine specimen in accordance with the procedures established in Item II-E-4-b of this addendum.

H.  Repeated Minor Infractions

Department members who have repeated minor infractions will, in addition to any

6

disciplinary action, be processed in accordance with the Department directive entitled "Personnel Concerns."

I. Civil Suits Against Department Members

Allegations against Department members contained in a civil complaint will be handled in accordance with the General Order entitled "Civil Suits Against Members." However, if the complaint alleges conduct which would be a violation of Department rules, regulations or directives and has not been the subject of a previous Complaint Register investigation, a Complaint Register number will be obtained.

J. Verbal Abuse

1. Complaints of verbal abuse against a Department member which include the use of profane, insolent, or disrespectful language, will require the obtaining of a Complaint Register number to record the incident and facilitate an inquiry as to its validity.

2. The manner of speaking as well as the choice of words must be considered in determining whether or not a member has verbally abused a citizen.

3. Whenever an allegation of verbal abuse is the only allegation made, in addition to complying with the applicable provisions of this order, the procedures outlined below will be followed.

   a. The supervisor assigned to the Complaint Register investigation will record his findings on a Summary Report Digest form (CPD-44.112A).

   b. The unit commanding officer will review the Summary Report Digest form and forward the report through channels to the Internal Affairs Division.

III. ADMONISHMENTS

A supervisor or command officer, or any member acting in such capacity, may exercise the prerogative of immediate correction or admonishment of a subordinate whenever the nature or circumstances of an incident do not warrant a reprimand or disciplinary action. If the application of immediate correction or admonishment is not effective, i.e., the conduct of the member indicates a repetitive pattern of irregularities, the procedures contained in Addendum 7 of this order entitled "Summary Punishment" will be followed.

IV. DEPARTMENT MEMBERS UNDER INVESTIGATION BY ANY OUTSIDE LAW ENFORCEMENT AGENCY

A. A Department member who is under investigation by any outside law enforcement agency, or having knowledge that another member is under investigation by any law enforcement agency, whether or not that member has been contacted by that agency, will immediately submit a To-From-Subject report of the information, in triplicate, to his unit commanding officer.

B. The unit commanding officer will immediately forward the original copy of the report to the Administrator in Charge, Office of Professional Standards, and the second copy to the Assistant Deputy Superintendent, Internal Affairs Division. The third copy will be retained in unit files.

*Matt L. Rodrigue*
Superintendent of Police

Indicates new or revised item.

87-028 BW

7

| REVISION TO:<br>General Order 93-3, Addendum 5 | DATE OF ISSUE<br>15 May 2001 | EFFECTIVE DATE<br>16 May 2001 | NO.<br>5A |
|---|---|---|---|

| SUBJECT<br>SPECIAL SITUATIONS | DISTRI-<br>BUTION<br>B | RESCINDS |
|---|---|---|

I. **PURPOSE**

RESCINDED BY
GO 93-3-6B
ON 27 SEPT 02

This revision updates procedures relative to allegations of impairment, on or off duty.

**ITEM II-E-3-d IS REVISED TO READ AS FOLLOWS:**

　　d.　*When the accused member has complied with all the provisions (e.g., Alcohol/Drug Influence Report (CPD-22.118), breath test , etc.) of the General Order entitled "Driving While Under The Influence – Implied Consent," it will not be necessary to repeat these procedures in the administrative phase of the investigation. In these cases the investigating member will photocopy the completed form. The words "Administrative Phase" will be inserted in the DUI Citation Number section of the Alcohol/Drug Influence Report photocopy and noted as an attachment to the administrative phase of the CR file.*

**ITEM II-E-4-a IS REVISED TO READ AS FOLLOWS:**

　　a.　*The accused member will be:*

　　　　(1)　*presented with the Administrative Proceedings Rights form (CPD-44.105) before being asked the questions in the "Interview" section of the Alcohol/Drug Influence Report or any other questions which would tend to prove or disprove the allegation.*

　　　　(2)　*ordered to submit to a visual examination, the results of which will be recorded in the "Observations" section of the Alcohol/Drug Influence Report.*

　　　　(3)　*ordered to complete the "Standardized Field Sobriety Tests," the results of which will be recorded on the Alcohol/Drug Influence Report.*

　　　　　　(a)　*The investigating member will:*

　　　　　　　　i)　*use a separate Alcohol/Drug Influence Report for this administrative phase.*

　　　　　　　　ii)　*insert the words "Administrative Phase" in the DUI Citation Number section (top center) of the Alcohol/Drug Influence Report.*

　　　　　　　　iii)　*write "D – N – A" (Does Not Apply) over the Court Information section in the top right hand corner of the Alcohol/Drug Influence Report.*

　　　　　　　　iv)　*write the CR number in the Traffic Court/Records Unit Control Number section in the lower right hand corner of the Alcohol/Drug Influence Report.*

(b) Standardized Field Sobriety Tests will be administered by a sworn member at least one rank above the rank of the member being examined. In those instances when the accused member is a supervisory member, the Standardized Field Sobriety Tests will be conducted by the watch commander of the district of occurrence. If the circumstances require the presence of an exempt member, this member will be responsible for signing the report to indicate that his/her assessment of the accused member's condition is basically consistent with that of the examiner.

(4) ordered to answer the questions in the "Interview" section of the Alcohol/Drug Influence Report.

(5) ordered to submit to a breath test, the results of which will be entered into the "Breath Test" section of the Alcohol/Drug Influence Report.

(6) ordered to submit a urine specimen if physically incapable of taking a breath test and not hospitalized, if the results of the Breath Test are inconclusive, or if the results of the breath test are inconsistent with the degree of impairment or the allegation focuses upon drugs. Once a decision is made by the responsible command or supervisory member to have the accused member submit a urine specimen, no action pertaining to the collection of the urine specimen will be initiated until after the Internal Affairs Division has been notified. Urine specimen containers can be obtained from the internal affairs division on the 2nd and 3rd watches by calling Pax 0610 and on the 1st watch by calling Pax 0301.

## ITEM II-F-2-b IS REVISED TO READ AS FOLLOWS:

b. The accused member will be requested to read and sign a Notification of Charges/Allegations (CPD-44.115) to acknowledge that he/she has received a written copy of the specific allegations made against him/her and will be:

(1) presented with the Administrative Proceedings Rights form (CPD-44.105) before being asked the questions in the "Interview" section of the Alcohol/Drug Influence Report or any other questions which would tend to prove or disprove the allegation.

(2) ordered to submit to a visual examination, the results of which will be recorded in the "Observations" section of the Alcohol/Drug Influence Report.

(3) ordered to complete the Standardized Field Sobriety Tests, the results of which will be recorded on the Alcohol/Drug Influence Report.

(a) The investigating member will:

i) use a separate Alcohol/Drug Influence Report for this administrative phase.

ii) insert the words "Administrative Phase" in the DUI Citation Number section (top center) of the Alcohol/Drug Influence Report.

Complaint And Disciplinary Procedures,
Addendum 5A                                    2

RFC-Maysonet 014502

        iii)   write "D – N – A" (Does Not Apply) over the Court Information section in the top right hand corner of the Alcohol/Drug Influence report.

        iv)   write the CR Number in the Traffic Court/Records Unit Control Number section in the lower right hand corner of the Alcohol/Drug Influence Report.

   (b)   The Standardized Field Sobriety Tests will be administered by a sworn member at least one rank above the rank of the member being examined. In those instances when the accused member is a supervisory member, the Standardized Field Sobriety Tests will be conducted by the watch commander of the district of occurrence. If the circumstances require the presence of an exempt member, this member will be responsible for signing the report to indicate that his/her assessment of the accused member's condition is basically consistent with that of the examiner.

(4)   ordered to answer the questions in the "Interview" section of the Alcohol/Drug Influence Report.

(5)   ordered to submit to a breath test, except when the allegation focuses exclusively on drugs, the results of which will be recorded in the "Breath Test" section of the Alcohol/Drug influence Report.

(6)   ordered to submit a urine specimen if physically incapable of taking a breath test and not hospitalized, or if the results of the breath test are inconclusive, or if the results of the breath test are inconsistent with the degree of impairment or the allegation focuses upon drugs. Once a decision is made by the responsible command or supervisory member to have the accused member submit a urine specimen, no action pertaining to the collection of the urine specimen will be initiated until after the Internal Affairs Division has been notified. Urine specimen containers can be obtained from the Internal Affairs Division on the 2nd and 3rd watches by calling Pax 0610 and on the 1st watch by calling Pax 0301.

Superintendent of Police

New or revised material is indicated by *itali*

01-034 DGM

*Complaint and Disciplinary Procedures,*
*Addendum 5A*

3

RFC-Maysonet 014503

| ADDENDUM TO: | DATE OF ISSUE | EFFECTIVE DATE | NO. |
|---|---|---|---|
| General Order 93-3 | 27 September 2002 | 1 October 2002 | 5B |

| SUBJECT | DISTRI-BUTION | RESCINDS |
|---|---|---|
| SPECIAL SITUATIONS | C | Addendum 5, Addendum 5A, AMFN Nos. 95-011753, 96-004801, 97-004977, and 02-002133 |

## I.  PURPOSE

This addendum identifies certain special situations and sets forth procedures for their investigation and processing.

## II.  SPECIAL SITUATIONS

A.  Indebtedness

1.  Members who incur just debts are expected to liquidate such debts within a reasonable period of time.

2.  Wages of public employees are not immune from garnishment.

3.  Any member receiving a complaint of indebtedness, other than a complaint of indebtedness to the City of Chicago, will inform the creditor reporting such indebtedness that an adequate remedy for a creditor is now provided by law.

4.  Complaints of indebtedness to the City will be processed pursuant to the provisions of the Department directive entitled "Indebtedness to the City of Chicago."

B.  Arrest Warrants and Judicial Non-Traffic Summons for Department Members

1.  A warrant clerk will, when preparing an application for a warrant against a Department member:

a.  follow the procedures outlined in the Department directive entitled "Judicial Non-Traffic Summons."

b.  ascertain if a Complaint Register number has been obtained.

c.  immediately notify a supervisory member in instances where a Complaint Register number has not previously been obtained.

d.  accompany the complainant to court and inform the judge that the person against whom the complaint is being filed is a member of the Chicago Police Department and that the matter is being investigated by the Department.

e.  submit a brief report of the circumstances to the Office of Professional Standards or Internal Affairs Division, as appropriate.

2.  When a member assigned to serve a warrant determines that the person named in the warrant is a member of the Department, the member will notify his or her supervisor who, in turn, will notify the Office of Professional Standards.  The Complaint Register number assigned by the Office of Professional Standards will be recorded on the Arrest Report (CPD-11.420).

3.  Whenever a member of the Department is subjected to a physical arrest by the Chicago Police Department for other than a traffic or

RFC-Maysonet 014504

conservation offense, the case will be set for a court hearing within five days after the date of arrest.

4. Whenever a member of the Department is subjected to a physical arrest for a traffic or conservation offense, the case will be set for a court hearing in accordance with existing Department directives.

C. The Polygraph

1. When a polygraph examination is deemed necessary, the complainant will be requested to take a polygraph examination first.

2. If the complainant does not take the polygraph exam, the accused police officer will not be requested to take a polygraph exam.

3. If the complainant takes the polygraph exam and the results indicate deception, the accused officer may be requested to take a polygraph exam covering those issues wherein the examiner determines that the complainant is truthful.

4. When the polygraph is used, the accused member will be advised, in writing 24 hours prior to the administering of the tests, of any questions to which the Department will request an answer.

5. If the officer under investigation requests to take a polygraph exam, the officer may do so. However, an officer shall not be disciplined for refusal to take a polygraph exam, and the results of the polygraph exam shall not be admissible as evidence in proceedings before the Police Board or in any proceedings where the officer may appeal to the Police Board, unless by Illinois or Federal Court decision or Illinois Statute such evidence becomes admissible before the Police Board.

D. Arrestees Who Resist, Obstruct, Assault or Commit Battery of a Department Member

When a person is arrested for resisting, obstructing, assault and/or battery of a Department member, members will additionally refer to the Department directive entitled "Use of Force Guidelines" and follow the investigative and reporting procedures established in that directive.

E. Allegations of Impairment, Involving the Operation of a Vehicle - On or Off Duty

1. Allegations of impairment involving the operation of a vehicle include driving while under the influence of alcohol or a combination of alcohol and drugs.

2. The meaning of the term "drugs" will include but not be limited to cannabis as defined in 720 ILCS 550/3 and controlled substances as defined in Chapter 720, Article II of the Illinois Compiled Statutes, or as amended.

3. In every instance when a complainant or a sworn member makes an allegation against a Department member relating to impairment while operating a motor vehicle, in addition to complying with the provisions of the addendum to this directive entitled "Specific Responsibilities," the procedures outlined below will be followed.

a. The responsible command or supervisory member will:

(1) obtain a Complaint Register number.

RFC-Maysonet 014505

       (2)    ensure that a To-From-Subject report is obtained from each member having knowledge of the circumstances surrounding the complaint.

       (3)    prepare a To-From-Subject report summarizing the preliminary investigation.

   b.   Accused members will be requested to read and sign a Notification of Charges/Allegations (CPD-44.115) to acknowledge that they have received a written copy of the specific allegations made against them.

   c.   The incident will be investigated in accordance with the provisions of the Department directive entitled "Driving While under The Influence-Implied Consent" and any other related directives (e.g., "Traffic Crash Investigations").

   d.   When the accused member has complied with all the provisions (e.g., Alcohol/Drug Influence Report (CPD-22.118), breath test) of the Department directive entitled "Driving While Under The Influence — Implied Consent," it will not be necessary to repeat these procedures in the administrative phase of the investigation. In these cases, the investigating member will photocopy the completed form. The words "Administrative Phase" will be inserted in the DUI Citation Number section of the Alcohol/Drug Influence Report photocopy and noted as an attachment to the administrative phase of the CR file.

4.   The responsible command or supervisory member will advise the accused member when the criminal segment of the preliminary investigation has been terminated, regardless of whether or not the accused member is subsequently charged with a violation of 625 ILCS 5/11-501. When the accused member has not completed or has refused to comply with any of the tests required in the investigation of allegations of Driving While Under the Influence of Alcohol, Drugs or a Combination Thereof-Implied Consent (625 ILCS 5/11-501), as applicable, the following mandatory procedures will be required under Administrative Proceedings.

   a.   The accused member will be:

       (1)    presented with the Administrative Proceedings Rights form (CPD-44.105) before being asked the questions in the "Interview" section of the Alcohol/Drug Influence Report or any other questions which would tend to prove or disprove the allegation.

       (2)    ordered to submit to a visual examination, the results of which will be recorded in the "Observations" section of the Alcohol/Drug Influence Report.

       (3)    ordered to complete the "Standardized Field Sobriety Tests," the results of which will be recorded on the Alcohol/Drug Influence Report.

          (a)    The investigating member will:

              i)    use a separate Alcohol/Drug Influence Report for this administrative phase.

              ii)    insert the words "Administrative Phase" in the DUI Citation Number section (top center) of the Alcohol/Drug Influence Report.

RFC-Maysonet 014506

    iii) write "DNA" (Does Not Apply) over the Court Information section in the top right hand corner of the Alcohol/Drug Influence Report.

    iv) write the CR number in the Traffic Court/Records Unit Control Number section in the lower right hand corner of the Alcohol/Drug Influence Report.

   (b) Standardized Field Sobriety Tests will be administered by a sworn member at least one rank above the rank of the member being examined. In those instances when the accused member is a supervisory member, the Standardized Field Sobriety Tests will be conducted by the watch commander of the district of occurrence. If the circumstances require the presence of an exempt member, this member will be responsible for signing the report to indicate that his or her assessment of the accused member's condition is basically consistent with that of the examiner.

  (4) ordered to answer the questions in the "Interview" section of the Alcohol/Drug Influence Report.

  (5) ordered to submit to a breath test, the results of which will be entered into the "Breath Test" section of the Alcohol/Drug Influence Report.

  (6) ordered to submit a urine specimen if physically incapable of taking a breath test and not hospitalized, if the results of the breath test are inconclusive, or if the results of the breath test are inconsistent with the degree of impairment or the allegation focuses upon drugs. Once a decision is made by the responsible command or supervisory member to have the accused member submit a urine specimen, no action pertaining to the collection of the urine specimen will be initiated until after the Internal Affairs Division has been notified. Urine specimen containers can be obtained from the Internal Affairs Division on the 2nd and 3rd watches by calling Pax 0610 and on the 1st watch by calling Pax 0301.

 b. The urine specimen will be:

  (1) collected in a manner that will preserve the dignity of the accused member and ensure the integrity of the sample.

  (2) collected in the presence of the investigating supervisor only if the supervisor is of the same sex as the accused member. When the supervisor is not of the same sex as the accused member, arrangements will be made to have a sworn member of the same sex as the accused member witness the collection of the urine specimen. The responsible command or supervisory member will submit a To-From-Subject report which identifies the sample collection site, the date and time of the collection, the identity of the witness to the collection, and any other circumstances pertaining to the investigation.

RFC-Maysonet 014507

       (3)   turned over to a member of the Internal Affairs Division who will assume the responsibility for ensuring that the urine specimen is properly secured in accordance with established division-level standard operating procedures, pending laboratory processing.

   c.   If the accused member refuses to provide a urine specimen or has refused to complete or comply with any tests required in conjunction with the administrative segment of the investigation, a violation of the Department Rules and Regulations, "Disobedience of an Order or Directive Whether Written or Oral," will be added to the administrative charges against the accused member.

   d.   All completed reports and forms relating to the incident will be distributed in accordance with the Department directive entitled "Driving While Under the Influence-Implied Consent" and/or the addendum to this order entitled "Reporting and Review Procedures," as applicable.

**F.**   Allegations of Impairment, Not Involving the Operation of a Vehicle - On or Off Duty

   1.   Allegations of impairment, not involving the operation of a vehicle include:

      a.   Alcohol Intoxication.

          Alcohol intoxication means that a person's mental or physical functioning is substantially impaired as a result of the use of alcohol.

      b.   Being under the Influence of Drugs.

          Drugs include but are not limited to the following - cannabis as defined in 720 ILCS 550/3 and controlled substances as defined in Chapter 720, Article II of the Illinois Compiled Statutes, or as amended.

      c.   Being under the Influences of a Combination of Alcohol and Drugs.

   2.   Whenever a sworn member or complainant makes an allegation against a Department member relating to impairment not involving the operation of a vehicle, the procedures outlined below will be followed.

      a.   The responsible command or supervisory member will:

         (1)   obtain a Complaint Register number.

         (2)   ensure that a To-From-Subject report is obtained from each member having knowledge of the circumstances surrounding the complaint.

         (3)   prepare a To-From-Subject report summarizing the investigation.

      b.   The accused member will be requested to read and sign a Notification of Charges/Allegations (CPD-44.115) to acknowledge that he or she has received a written copy of the specific allegations made against him or her and will be:

RFC-Maysonet 014508

(1)    presented with the Administrative Proceedings Rights form (CPD-44.105) before being asked the questions in the "Interview" section of the Alcohol/Drug Influence Report or any other questions which would tend to prove or disprove the allegation.

(2)    ordered to submit to a visual examination, the results of which will be recorded in the "Observations" section of the Alcohol/Drug Influence Report.

(3)    ordered to complete the Standardized Field Sobriety Tests, the results of which will be recorded on the Alcohol/Drug Influence Report.

    (a)    The investigating member will:

        i)    use a separate Alcohol/Drug Influence Report for this administrative phase.

        ii)    insert the words "Administrative Phase" in the DUI Citation Number section (top center) of the Alcohol/Drug Influence Report.

        iii)    write "DNA" (Does Not Apply) over the Court Information section in the top right hand corner of the Alcohol/Drug Influence report.

        iv)    write the CR Number in the Traffic Court/Records Unit Control Number section in the lower right hand corner of the Alcohol/Drug Influence Report.

    (b)    The Standardized Field Sobriety Tests will be administered by a sworn member at least one rank above the rank of the member being examined. In those instances when the accused member is a supervisory member, the Standardized Field Sobriety Tests will be conducted by the watch commander of the district of occurrence. If the circumstances require the presence of an exempt member, this member will be responsible for signing the report to indicate that his or her assessment of the accused member's condition is basically consistent with that of the examiner.

(4)    ordered to answer the questions in the "Interview" section of the Alcohol/Drug Influence Report.

(5)    ordered to submit to a breath test, except when the allegation focuses exclusively on drugs, the results of which will be recorded in the "Breath Test" section of the Alcohol/Drug Influence Report.

(6)    ordered to submit a urine specimen if physically incapable of taking a breath test and not hospitalized, or if the results of the breath test are inconclusive, or if the results of the breath test are inconsistent with the degree of impairment or the allegation focuses upon drugs. Once a decision is made by the responsible command or supervisory member to have the accused member submit a urine specimen, no action pertaining to the collection of the urine specimen will be initiated until after the

RFC-Maysonet 014509

Internal Affairs Division has been notified. Urine specimen containers can be obtained from the Internal Affairs Division on the 2nd and 3rd watches by calling Pax 0610 and on the 1st watch by calling Pax 0301.

c. The urine specimen will be:

    (1) collected in a manner that will preserve the dignity of the accused member and ensure the integrity of the sample.

    (2) collected in the presence of the investigating supervisor only if the supervisor is of the same sex as the member. When the supervisor is not of the same sex as the accused member, arrangements will be made to have a sworn member of the same sex as the accused member witness the collection of the urine specimen. The responsible command or supervisory member will submit a To-From-Subject report which identifies the sample collection site, the date and time of the collection, the identity of the witness to the collection, and any other circumstances pertaining to the investigation.

    (3) turned over to a member of the Internal Affairs Division who will assume the responsibility for ensuring that the urine specimen is properly secured in accordance with established division-level standard operating procedures, pending processing by a medical laboratory.

d. If the accused member refuses to provide a urine specimen or has refused to complete or comply with any tests required in conjunction with the administrative segment of the investigation, a violation of the Department Rules and Regulations (e.g., disobedience of an order or directive whether written or oral) will be added to the administrative charges against the accused member.

e. All completed reports and forms relating to the incident will be distributed in accordance with the procedures established in the addendum to this order entitled "Reporting and Review Procedures."

G. Allegations of Miscellaneous Drug Related Activity - On or Off Duty

  1. Allegations of miscellaneous drug related activity include but are not limited to a member's:

    a. unauthorized involvement with a person or enterprise engaged in the illegal use, sale, delivery, manufacture, purchase, or possession of drugs.

      NOTE: For the purpose of this order, the meaning of the words "person" and "enterprise" will be understood to be that of the definitions provided in Chapter 725, Act 175, Section 3, of the Illinois Compiled Statutes.

    b. illegal sale, delivery, manufacture, purchase, possession, or use of drugs.

  2. Whenever an allegation against a Department member concerning any of the above categories of conduct is received, the responsible command or supervisory member will obtain a Complaint Register number.

RFC-Maysonet 014510

3. The Complaint Register investigation and the preliminary investigation of all criminal charges, where applicable, will be conducted in conformance with existing Department procedures.

4. Whenever the results of the preliminary criminal investigation indicate reasonable grounds to believe that the accused member is involved in illegal drug related activity, or upon completion of the initial stages of an administrative investigation which indicates reasonable grounds to believe that the accused member is personally using illicit drugs or is personally misusing legally prescribed or dispensed medications, the accused member will be required to submit a urine specimen in accordance with the procedures established in Item II-E-4-b of this addendum.

H. Allegation of Misconduct for a Member Striking a Citizen with an Object

Whenever an allegation of misconduct for a member striking a citizen with an object is made, the watch commander will ensure that:

1. an evidence technician is requested to inventory the item(s) allegedly used.

2. the assigned evidence technician hand-carries the inventoried item(s) to the Forensic Services Section.

3. OPS is notified and provided with the applicable inventory numbers.

4. the member reports to Operations Command, if necessary, to obtain temporary replacement of the affected item (e.g., flashlight, baton, handgun).

I. Repeated Minor Infractions

Department members who have repeated minor infractions will, in addition to any disciplinary action, be processed in accordance with the Department directive entitled "Personnel Concerns."

J. Civil Suits Against Department Members

Allegations against Department members contained in a civil complaint will be handled in accordance with the Department directive entitled "Disseminating Information in Civil and/or Criminal Legal Actions and in Civil Suits Against Department Members." However, if the complaint alleges conduct which would be a violation of Department rules, regulations, or directives and has not been the subject of a previous Complaint Register investigation, a Complaint Register number will be obtained.

K. Verbal Abuse

1. A complaint of verbal abuse against a Department member, which includes the use of profane, insolent, or disrespectful language, will require the obtaining of a Complaint Register number to record the incident and facilitate an inquiry as to its validity.

2. The manner of speaking as well as the choice of words must be considered in determining whether or not a member has verbally abused a citizen.

3. Whenever an allegation of verbal abuse is the only allegation made, in addition to complying with the applicable provisions of this order, the procedures outlined below will be followed.

*Complaint and Disciplinary Procedures, Addendum 5B*

8

        a.    The supervisor assigned to the Complaint Register investigation will record his findings on a Summary Report Digest form (CPD-44.112A).

        b.    The unit commanding officer will review the Summary Report Digest form and forward the report through channels to the Internal Affairs Division.

L.    Orders of Protection Against Sworn Members

Orders of Protection are court issued by a judge directing a "respondent" (the accused) to perform certain acts or to refrain from committing certain acts. Effective 1 January 1996, a member who is a respondent in an order of protection, issued on or after that date, may be ordered by the court to surrender the member's duty firearm(s) and the member's non-duty related firearms as one of the remedies listed on a "plenary" (permanent) order [725. ILCS 5/112A-14 (b) (14.5); effective January 1, 1996]. A plenary order of protection is for a stated period not to exceed two years. Usually, before a plenary order can be issued, an emergency order of protection must be entered and a hearing date set to examine the "petitioner" (the accuser) under oath to ascertain whether there is any "danger of the illegal use of firearms" by the respondent. The following procedures are applicable to any order of protection issued by either the criminal or civil courts.

1.    When a member is served with a Notice to Appear or is otherwise notified or made aware of an order of protection (regardless of the source), where the member is the "respondent," or if the member receives notice that the petitioner has sought modification and reopening of a "current" order of protection, the member will:

        a.    immediately prepare a To-From-Subject report indicating the date and time the member was served or became aware of the existence of or modification to the order of protection, and also indicate the date and time of any future court appearance as listed on any document received or of which the member is aware. In addition, the member will list the CR number and date of incident of any pending CR investigation, if known by the member.

        b.    submit the report, with copies of all documents, to the member's watch commander/ watch operation lieutenant for review and forwarding.

2.    The watch commander/watch operation lieutenant will review and sign the report and immediately forward the original report, with copies of all documents, to the General Counsel, Office of the Superintendent, and forward additional copies to the Assistant Deputy Superintendent, IAD, the Chief Administrator of OPS, and to the member's unit commanding officer of exempt rank to be retained in unit files.

3.    OPS will, upon receipt of the report, review its records to determine if a CR number has been issued against the member for the incident that precipitated the issuance of the order of protection. If a CR number has not been initiated, OPS will review the order of protection and all documents and issue a CR number. Both IAD and OPS will maintain a file of all current orders of protection (including expiration date) issued against Department members for access by supervisory personnel.

4.    Designated members from IAD and OPS will appear in court for the hearing on the indicated date and time.

RFC-Maysonet 014512

a.  Should a plenary order of protection be issued by the judge at that hearing which includes as a remedy, "the prohibition of firearm possession", the IAD representative will:

    (1)  if the hearing is held in criminal court, request the assistant state's attorney to provide the Department with a copy of the plenary order of protection. If the hearing is held in civil court, the IAD representative will request the petitioner's attorney to provide a copy of the plenary order of protection.

    (2)  deliver to the member a copy of a Notification of Duty Restrictions (CPD-44.301) instructing the member to surrender the member's duty and non-duty firearms as directed by the court. Unless some other timetable is provided for in a court order, the member will be ordered to immediately surrender their firearms to the IAD representative at the Evidence and Recovered Property Section.

    (3)  contact the Field Inquiry Section of the Records Division to obtain a listing of all firearms registered to the member.

    (4)  inventory the firearms in accordance with the Department directive entitled "Firearms Taken Into Custody or Turned In." The notation "Police Officer's Weapon - Do Not Mark or Destroy" will be entered in the "Comments" field on the Recovery screen of the eTrack application. On the Classification screen, the action "Hold for Investigation" will be checked and the star number of the person assigned to the investigation entered in the appropriate box. Multiple firearms may be entered on a single property inventory. The IAD representative will provide the member with the owner's/citizen copy of the inventory.

    (5)  provide the member with written notification directing the member to report to the Personnel Division to surrender his or her star, shield and I.D. card and to receive information concerning the disposition of duty status.

b.  Immediately following the hearing, the designated member from OPS will prepare a To-From-Subject report to the Superintendent of Police summarizing all available information from the case file and the hearing.

c.  If a "prohibition of firearm possession" remedy is not included in the plenary order of protection, the IAD representative will still request a copy of the order from the court to be included in the member's case file.

d.  Nothing in this order precludes the Superintendent from exercising his or her prerogative to immediately suspend or reassign a member, based on the circumstances of each individual case.

5.  If a member is subject to an order of protection issued in another state, the member will submit a To-From-Subject report outlining the circumstances as prescribed in Item II-L-1 of this addendum. OPS will investigate the circumstances and will obtain a CR number, if appropriate.

RFC-Maysonet 014513

6.  If at some future date, a member receives a written court order, issued by a judge, that allows the member to possess firearms, the member will prepare a To-From-Subject report to the member's commanding officer, attaching a copy of that order. The watch commander/watch operations lieutenant will forward the report as directed in Item II-L-2 of this addendum.

7.  The Evidence and Recovered Property Section will not release an officer's firearms inventoried pursuant to Item II-L of this addendum without the express written authorization of IAD.

## III. ADMONISHMENTS

A supervisor or command officer, or any member acting in such capacity, may exercise the prerogative of immediate correction or admonishment of a subordinate whenever the nature or circumstances of an incident do not warrant a reprimand or disciplinary action. If the application of immediate correction or admonishment is not effective, i.e., the conduct of the member indicates a repetitive pattern of irregularities, the procedures contained in the addendum to this dierctive entitled "Summary Punishment" will be followed.

## IV. DEPARTMENT MEMBERS UNDER INVESTIGATION BY ANY OUTSIDE LAW ENFORCEMENT AGENCY

A.  A Department member who is under investigation by any outside law enforcement agency, or having knowledge that another member is under investigation by any law enforcement agency, whether or not that member has been contacted by that agency, will immediately submit a To-From-Subject report of the information, in triplicate, to his or her unit commanding officer.

B.  The unit commanding officer will immediately forward the original copy of the report to the Chief Administrator, Office of Professional Standards, and a copy to the Assistant Deputy Superintendent, Internal Affairs Division. A copy will also be retained in unit files.

Superintendent of Police

| Indicates new or revised material.

00-148 LMT

RFC-Maysonet 014514

| REVISION TO:<br>Department General Order 93-03 | DATE OF ISSUE<br>03 July 2008 | EFFECTIVE DATE<br>04 July 2008 | NO.<br>05C |
|---|---|---|---|
| SUBJECT<br>SPECIAL SITUATIONS | | DISTRI-<br>BUTION<br>C | RESCINDS |

## I.  PURPOSE

This directive revises procedures relative to allegations of impairment, involving the operation of a vehicle - on or off duty.

## II.  REVISIONS

A.  Item II-E-3 is revised to read:

   3.  In every instance when a complainant or a sworn member makes an allegation against a Department member relating to impairment while operating a motor vehicle, the incident will be investigated in accordance with the provisions of the Department directive entitled "Driving While The Influence-Implied Consent" and "Specific Responsibilities," and any other related directives (e.g., "Traffic Crash Investigations").  The procedures outlined below will be followed.

   a.  The assigned supervisory member will:

      (1)  obtain a Complaint Register Log number.

      (2)  *make immediate notifications to the watch commander in the district of occurrence and then the on-duty Assistant Deputy Superintendent assigned to Operations Command.*

         **NOTE:**  *Operations Command will notify the IAD call-out supervisor.*

      (3)  ensure that a To-From-Subject report is obtained from each member having knowledge of the circumstances surrounding the complaint, *prior to the end of that tour of duty.*

   b.  *The watch commander will immediately respond to the scene of the incident and ensure adherence to Department policies and procedures.*

   c.  If the accused member has complied with all the provisions of the Department directive entitled "Driving While Under The Influence-Implied Consent," it will not be necessary to repeat these procedures in the administrative phase of the investigation.  The IAD call-out supervisor will:

      (1)  photocopy the completed form;

      (2)  insert the words "Administrative Phase" in the DUI Citation Number section of the Alcohol/Drug Influence Report photocopy.

         **NOTE:**  The photocopy will be included as an attachment to the administrative phase of the CR file.

B.  Item II-E-4 is revised to read:

   4.  The assigned supervisory member will advise the accused member when the criminal segment of the preliminary investigation has been terminated, regardless of whether or not the accused member is subsequently charged with a violation of 625 ILCS 5/11-501.  When the accused member has not

completed or has refused to comply with any of the tests required in the investigation of allegations of Driving While Under the Influence of Alcohol, Drugs or a Combination Thereof-Implied Consent (625 ILCS 5/11-501), as applicable, the following mandatory procedures will be required under Administrative Proceedings.

a.    The IAD call-out supervisor will:

   (1)    prepare a Notification of Charges/Allegations(CPD-44.105) form, present it to the accused member, and request the accused member to read and sign the notification which will acknowledge that they have received a written copy of the specific allegations made against them.

   (2)    order the accused member to submit to a visual examination, the results of which will be recorded in the "Observations" section of the Alcohol/Drug Influence Report.

   (3)    order the accused member to complete the "Standardized Field Sobriety Tests," the results of which will be recorded on the Alcohol/Drug Influence Report.

      (a)    The call-out supervisor will:

         i)    use a separate Alcohol/Drug Influence Report for this administrative phase than the report prepared for the criminal phase.

         ii)   insert the words "Administrative Phase" in the DUI Citation Number section (top center) of the Alcohol/Drug Influence Report.

         iii)  write "DNA" (Does Not Apply) over the Court Information section in the top right-hand corner of the Alcohol/Drug Influence Report.

         iv)   write the CR number in the Traffic Court/ Records Unit Control Number section in the lower right-hand corner of the Alcohol/Drug Influence Report.

      (b)    If the accused is a supervisory member of the rank of lieutenant or above, the Standardized Field Sobriety Tests will be conducted by the watch commander assigned to the district of occurrence. If the circumstances require the presence of an exempt member, the exempt member will sign the report to indicate that their assessment of the accused member's condition is basically consistent with that of the examiner.

   (4)    order the accused member to answer the questions in the "Interview" section of the Alcohol/Drug Influence Report.

   (5)    order the accused member to submit to a breath test, the results of which will be entered into the "Breath Test" section of the Alcohol/Drug Influence Report.

   (6)    order the accused member to submit a urine specimen if:

      (a)    physically incapable of taking a breath test and not hospitalized;

      (b)    the results of the breath test are inconclusive;

*Complaint and Disciplinary Procedures, Addendum 5B*    2

(c)  the results of the breath test are inconsistent with the degree of impairment; or

(d)  the allegation focuses upon drugs.

b.  If it is necessary to collect a urine specimen, the urine specimen will be:

(1)  collected in a manner that will preserve the dignity of the accused member and ensure the integrity of the sample.

(2)  collected in the presence of the call-out supervisor only if the call-out supervisor is of the same sex as the accused member. If the call-out supervisor is not of the same sex as the accused member, arrangements will be made to have a sworn member of the same sex as the accused member witness the collection of the urine specimen. The assigned supervisory member will submit a To-From-Subject report identifying the sample collection site, the date and time of the collection, the identity of the witness to the collection, and any other circumstances pertaining to the investigation, prior to the end of that tour of duty.

(3)  turned over to the call-out supervisor who is responsible for ensuring that the urine specimen is properly secured in accordance with established division-level standard operating procedures, pending laboratory processing.

c.  If the accused member refuses to complete or comply with any tests required in conjunction with the administrative segment of the investigation, a violation of the Department Rules and Regulations, "Disobedience of an Order or Directive Whether Written or Oral," will be added to the administrative charges against the accused member.

d.  All completed reports and forms relating to the incident will be distributed in accordance with the Department directive entitled "Driving While Under the Influence-Implied Consent" and/or the addendum to this order entitled "Reporting and Review Procedures," as applicable. The administrative phase reports will **NOT** be included in the court file/transmittal.

C.  Item II-M is added to read:

M.  *Personal Injury Traffic Crashes Involving Off-Duty Department Members*

1.  *When a field unit responding to a personal injury traffic crash investigation becomes aware that the crash involves an off-duty Department member, the responding unit will immediately notify the watch commander assigned to the district of occurrence and request a field lieutenant respond to the scene.*

**NOTE:** *If a field lieutenant is not available, the watch commander will respond and assume the responsibilities of the field lieutenant.*

2.  *A field lieutenant assigned to the district of occurrence, will respond to the scene and determine if impairment from alcohol or other substances is evident.*

a.  *If impairment from alcohol or other substances is not evident, the traffic crash investigation will be processed consistent with the Department directive entitled "Traffic Crash Investigations."*

*Complaint and Disciplinary Procedures, Addendum 5B*      3

RFC-Maysonet 014517

b. *If impairment is suspected, in addition to ensuring compliance with the provisions outlined in Item II-E of this directive, the field lieutenant will immediately notify the watch commander.*

1) *The watch commander will notify the on-duty Assistant Deputy Superintendent, Operations Command.*

2) *The on-duty Assistant Deputy Superintendent, Operations Command, will ensure the IAD call-out supervisor is notified.*

3) *The IAD call-out supervisor will respond to the scene and conduct an investigation consistent with Item II-E of this directive.*

Superintendent of Police

New or revised items indicated by *italics*.
08-022 AMR

*Complaint and Disciplinary Procedures, Addendum 5B*    4

RFC-Maysonet 014518

| REVISION TO: | DATE OF ISSUE | EFFECTIVE DATE | NO. |
|---|---|---|---|
| General Order 93-03-05B | 16 July 2010 | 16 July 2010 | 5D |

| SUBJECT | | | |
|---|---|---|---|
| SPECIAL SITUATIONS | DISTRI-BUTION | RESCINDS | |

## I. PURPOSE

This revision introduces the prohibition for command staff members and sworn Department members, in compliance with any applicable collective bargaining agreement, from consuming alcohol within the four-hour period preceding the start of a previously scheduled shift or after receiving notice to report for duty.

## II. REVISION

Item II-N is added and reads:

N. Prohibition on the Consumption of Alcohol Prior to Reporting for Duty

1. Command staff and sworn Department members are prohibited from consuming alcohol within the four-hour period preceding the start of a previously scheduled shift or after receiving notice to report for duty, in compliance with any applicable collective bargaining agreement.

2. Whenever a reporting party, upon signed affidavit, or sworn member makes an allegation against a Department member relating to the prohibition on the consumption of alcohol prior to reporting for duty, the responsible command staff or supervisory member will:

    a. obtain a Complaint Number.

    b. ensure that a To-From-Subject report is obtained from each member having knowledge of the circumstances surrounding the incident prior to the end of their tour of duty.

    c. prepare a To-From-Subject report summarizing the investigation.

    d. prepare a Notification of Charges/Allegations (CPD-44.115) form, present it to the accused member, and request the accused member read and sign the notification which will acknowledge that they have received a written copy of the specific allegations made against them.

    e. prepare an Alcohol/Drug Influence Report to document the observation of the accused member and the administration of the breath test.

        (1) insert the words "Administrative" in the DUI Citation Number section,

        (2) write "DNA" (Does Not Apply) over the Court Information section, and

        (3) write the Complaint Number in the Traffic Court/Records Unit Control Number section.

      f.    order the accused member to submit to a visual examination, the results of which will be recorded in the "Observations" section of the Alcohol/Drug Influence Report.

      g.    order the accused member to submit to a breath test, the results of which will be entered into the "Breath result" section of the Alcohol/Drug Influence Report.

      h.    forward all completed reports and forms relating to the incident, including a copy of the breath test results, in accordance with the procedures established in the addendum entitled "Reporting and Review Procedures."

3.    If the accused member refuses to comply with any test pursuant to this process, it is a violation of the Department Rules and Regulations, (e.g., disobedience of an order or directive whether written or oral), and will result in additional administrative charges against the member, which may include discipline up to and including separation.

Superintendent of Police

10-064 MWK
© Chicago Police Department, June 2010

RFC-Maysonet 014520

| ADDENDUM TO: | DATE OF ISSUE | EFFECTIVE DATE | ADDENDUM NO. |
|---|---|---|---|
| General Order 93-3 | 13 January 1993 | 15 January 1993 | 6 |

| SUBJECT | DISTRI-BUTION | RESCINDS |
|---|---|---|
| SUSPENSION/OPTIONS | C | |

I.  **PURPOSE**

This addendum:

A.  delineates procedures relative to suspensions.

B.  identifies the responsibilities and options of the accused member.

C.  designates responsibility for destruction of disciplinary records.

II.  **SUSPENSION/OPTIONS**

A.  When a member is to be ordered suspended, a Suspension Notification (CPD-44.102), in duplicate, will be forwarded to the member's unit of assignment by the Office of Professional Standards or the Internal Affairs Division, as appropriate.

B.  The unit commanding officer will ensure that the Suspension Notification is hand-delivered to the member being suspended, or to an adult member of the member's household. If two personal attempts to serve the member or an adult member of his household result in no response, the Suspension Notification may be left at the residence address the member has reported to the Department.

C.  When the unit commanding officer or his designee has served the Suspension Notification on the member being suspended, one copy of the notification will be given to the member, the remaining copy will be signed by the person who served the notification, who will indicate the date and time of service, and return it to the issuing unit within 24 hours.

D.  When the unit commanding officer or his designee has made two personal attempts at service without a response and a copy of the Suspension Notification is left at the residence address of the member, the remaining copy will be signed by the person attempting service, containing a certification attesting to the attempts at service, and be returned to the issuing unit within 24 hours.

E.  Options to suspension may be granted by the Superintendent to a member who has been ordered suspended for a specified number of days.

F.  The Superintendent may permit the member to satisfy all or part of the suspension by forfeiture of compensatory time earned, by forfeiture of days of accumulated vacation/furlough time up to one-half of the member's authorized vacation/furlough, by forfeiture of any combination of compensatory time earned and accumulated vacation/furlough days not to exceed one-half of the member's authorized vacation/furlough, or by forfeiture of one or more of the member's personal days or authorized baby furlough days.

G.  The Superintendent may also permit the member to satisfy all or part of the suspension by working regular scheduled days off without compensation if the affected member is exempt from the overtime compensation provisions of the Federal Fair Labor Standards act (i.e., not subject to mandatory time and one-half pay rate compensation for overtime hours worked according to provision of the Act). These members will not be allowed to satisfy a suspension by working regular scheduled days off without compensation on paid holidays established by City Ordinance and may not exceed the limit of working one regular scheduled day off without compensation per calendar week unless a three day weekend is involved, in which case the member may work two regular scheduled days off.

RFC-Maysonet 014521

H. The suspended member's unit commanding officer, any superior officer in the chain of command, the Assistant Deputy Superintendent, Internal Affairs Division, or Administrators of the Office of Professional Standards may recommend that the Superintendent NOT grant options to suspension.

I. When the Superintendent has signed a suspension order and has granted options to suspension, the case file will be forwarded to the Finance Division.

J. The Finance Division will prepare an Election/Rejection of Options to Suspension (CPD-61.416), in triplicate, and will forward the original and one copy to the unit of assignment of the member facing suspension.

K. Upon receipt of the forms at the member's unit of assignment, the watch commander or unit commanding officer will:

   1. inform the member that options to suspension have been granted by the Superintendent.

   2. record the date and time the member was notified on each copy of the form, and affix his signature.

   3. advise the member that he must complete and return the original copy of the form to the unit within 72 hours after the date and time of notification recorded on the form if he elects to exercise options to suspension.

   4. give the original copy to the member and retain the duplicate copy in unit files.

L. When a member facing suspension returns a completed Election/Rejection of Options to Suspension within the 72 hour time period and the form indicates that the member elects to exercise options, the unit timekeeper will complete the certification of compensatory time earned, vacation/furlough time, personal days and authorized baby furlough days accredited to the member, sign the form, and forward it to the Finance Division without unnecessary delay.

M. Members facing suspension who do not return a completed Election/Rejection of Options to Suspension within the 72 hour time period will be considered as having rejected options. In such cases, after the 72 hour period of time has elapsed without response from the member, the unit commanding officer will ensure the completion of the unit copy of the form indicating "Options Rejected," and forward the form to the Finance Division in order that a suspension order may be issued.

N. If a member of the Department is ordered suspended for more than 30 days, the City of Chicago will not make the premium payment for the member's hospitalization insurance. In such instances the Personnel Division will notify the suspended member, by certified mail, of the action the member must take to ensure the continuation of any insurance coverage during the period of suspension.

O. When a sworn member is ordered suspended, he will turn in his star, his shield, and his identification card to his commanding officer. When a civilian member is ordered suspended, he will turn in his identification card to his commanding officer. These articles will be returned to the member when he is returned to duty. Failure to turn in this Department equipment will result in further disciplinary action against the member.

P. A sworn member of the Department is bound by the Rules, Regulations, directives and orders of the Chicago Police Department while on suspension, leave of absence or disability pension, except those rules, regulations, directives and orders which require the exercise of direct police action by a member or which by their very nature do not apply. A sworn member of the Department while on suspension, leave of absence or disability pension will NOT:

   1. exercise the police powers of a Chicago Police Officer.

   2. carry a weapon.

2

RFC-Maysonet 014522

3. be required to appear at court hearings in cases in which he was the arresting officer when such hearings are scheduled during the period of time the member will be on suspension, leave of absence or disability pension, unless subpoenaed.

Q. A sworn member who is scheduled to appear at a court hearing while on suspension, leave of absence or disability pension, unless subpoenaed will notify a supervisor of his unit of assignment at least one hour before the scheduled court call. (In the event a unit receives notification of court cases requiring the appearance of a member during such member's period of absence, and there is no other arresting officer available, the unit of assignment of the member will request continuances of the cases to a date subsequent to the member's scheduled return to duty.)

R. Expungement of Records of Complaints

1. Disciplinary investigation files, other than Police Board cases, will be destroyed by the Internal Affairs Division five years after the date of the incident or the date upon which the violation is discovered, whichever is longer, unless the investigation relates to a matter which has been subject to either civil or criminal court litigation or arbitration prior to the expiration of the five year period. In such instances, the Complaint Register case files normally will be destroyed five years after the date of the final arbitration award or the final court adjudication, unless a pattern of sustained infractions exists.

2. Any information of an adverse employment nature which may be contained in any unfounded, exonerated or otherwise not sustained file, shall not be used against the member in any future proceedings.

*Matt L. Rodriguez*
Superintendent of Police

| Indicates new or revised item.

87-028  BW

3

RFC-Maysonet 014523

| ADDENDUM TO: General Order 93-3 | DATE OF ISSUE 13 January 1993 | EFFECTIVE DATE 15 January 1993 | ADDENDUM NO. 7 |
|---|---|---|---|

| SUBJECT SUMMARY PUNISHMENT | DISTRI-BUTION C | RESCINDS |
|---|---|---|

## I. PURPOSE

This addendum:

A. defines the scope of summary punishment.

B. identifies acts and omissions which are considered less serious transgressions.

C. outlines procedures to be followed in administering summary punishment to sworn and civilian members of the Department.

D. provides penalty guidelines for supervisory and command members to ensure uniformity in administering summary punishment.

E. outlines requirements and procedures to be followed for summary punishment action, penalty appeal and challenges to summary punishment for sworn and civilian members of the Department.

F. introduces the Summary Punishment Action Request form, CPD-11.635, Revised 3/92 (SPAR).

G. discontinues the Summary Punishment Action Request form, CPD-11.635, Revised 9/79.

## II. DEFINITIONS

A. SUMMARY PUNISHMENT: an alternative to Complaint Register disciplinary procedures for conduct defined as a less serious transgression which is observed by or comes to the attention of a Department supervisor or command member.

B. LESS SERIOUS TRANSGRESSION: an act or omission listed in Item IV of this addendum which warrants prompt and appropriate action but does not require a Complaint Register number.

C. HEARING OFFICER: command personnel of exempt rank who conduct hearings with the affected member (see Item VI-C-1 of this addendum).

D. SUMMARY PUNISHMENT ACTION/PENALTY APPEAL: a request made by an affected member to have a hearing officer review the particular facts of a summary punishment application and render a decision regarding the action and/or penalty.

## III. GENERAL INFORMATION

A. All members who have the right to have volunteer bargaining unit representation can exercise that right at hearings, if such representation is available at the time of the hearing. Members not covered by a bargaining unit agreement can also have a voluntary assisting member present at hearings. The Department will not unreasonably defer or postpone its intended disciplinary action because of the unavailability of a member's representative.

B. A Department member initiating summary punishment procedures will also be cognizant of the affected members individual contract agreement (e.g., AFSCME pre-disciplinary provisions, etc.) relative to disciplinary action.

C. Nothing in this addendum precludes obtaining a Complaint Register number when it is deemed appropriate.

D. If a member develops a history of repeated less serious transgressions, a Complaint Register number may be obtained and the provisions set forth in addenda 1 through 6 of this directive will be followed.

E. Summary punishment will NOT be used to process a citizen's complaint.

F. Supervisors will exercise discretion in the application of summary punishment. The supervisor will prior to initiating summary punishment be cognizant of the applicable provisions of any agreement (contract) pertaining to the member to be disciplined. Supervisory counseling and discretion will be administered prior to the application of summary punishment when the transgression allows for such action. Care will be taken to ensure that critical assignments are not left uncovered as a result of the application of summary punishment.

G. Each level of review has the authority to recommend an alternate penalty within the applicable schedule.

H. Action recommended under summary punishment procedure will not bar a recommendation for a more severe penalty by a higher level of authority.

I. When the hearing officer determines, in light of the totality of the circumstances, that the scheduled penalty is too severe, he may recommend a summary punishment disciplinary action which is less than the minimal scheduled penalty.

J. The Assistant Deputy Superintendent, Internal Affairs Division, has the authority to implement the approved penalty following final waiver or exhaustion of the appeal process.

K. In all cases where the member has marked the "Request Hearing" square on the Summary Punishment Action Request, a To-From-Subject report requesting a hearing will be required within 24 hours (excluding days off). Failure to submit a report within the prescribed time limits constitutes a waiver of any future hearing.

IV. LESS SERIOUS TRANSGRESSIONS

A. The list of less serious transgressions is as follows:

1. Being unfit for duty for reasons other than those which justify action under a Complaint Register investigation.

2. Absence without permission under conditions which do not necessitate a Complaint Register investigation.

3. Violation of medical roll procedure under conditions which do not necessitate a Complaint Register investigation.

4. Tardiness in reporting for duty or for required court appearance.

5. Failure to appear in court or to notify superiors of an inability to appear.

6. Failure to:

   a. comply with the provisions of the General Order entitled "Uniforms/Citizen's Dress and Personal Equipment."

   b. appear in the prescribed uniform in court, at disciplinary hearings, and at other official hearings, except when assigned to citizens dress duty.

7. Failure to wear/carry personal radio properly, maintain authorized equipment, and/or wear a properly adjusted and fastened seat belt when operating a Department vehicle or riding as a front seat passenger in such vehicle.

8. Failure of a sworn member to comply with the requirements outlined in Department directives concerning Department and personal weapons or ammunition.

9. Failure to report back in service immediately upon completion of an assignment or to notify the dispatcher when leaving the location of assignment for any reason.

10. Taking excessive time for lunch or personal reasons.

11. Failure to provide prompt, correct and courteous police service.

2

RFC-Maysonet 014525

12. Failure, while on patrol duty, to give full attention to the prevention of crime as a result of:

    a. lounging on or about the location of a primary or secondary assignment.

    b. unnecessary visiting with members of the general public.

    c. visiting with other officers or non-sworn members except for the exchange of information relating to their duties.

    d. parking Department vehicles in locations and in such a manner as to serve no useful police purpose.

13. Transporting persons in a Department vehicle except for a proper police purpose or on Department business.

14. Congregating in an eating establishment with two or more officers while on duty without the prior approval of an immediate supervisor.

15. Being absent from or leaving a duty assignment without being properly relieved or without proper authorization before the prescribed time or at the end of the tour of duty.

16. Failure to perform assigned tasks.

17. Possessing a commercial type radio or television while on duty. The possession of a personal camera, tape recorder/player or field glasses, while on duty and without the authorization of a supervisor, is also prohibited.

18. Reading commercial publications in public view while on duty.

19. Inattention to duty.

20. Misuse of Department equipment and supplies.

21. Failure to acknowledge or respond promptly to a radio dispatched call, or to investigate a silent radio for possible failure when an unusual period of time has elapsed without radio transmission.

22. Failure to perform any duty.

23. Failure to indicate promptly on Recovered Property Disposition Tracers (CPD-34.500) that inventoried property can be returned to owners, or that seized or recovered property can be disposed of legally in instances when a case has been adjudicated in court.

24. Smoking in any Department facility, in any Department vehicle when occupied by any non-smoker and/or holding a cigarette, cigar, or pipe in mouth while in uniform and in official contact with the public.

25. Driving a Department vehicle involved in a traffic accident classified as "preventable."

26. Failure of a supervisory officer to take appropriate action upon observing a less serious transgression.

B. A less serious transgression will be identified on the appropriate Summary Punishment Action Request by both number and explanatory statement of the transgression.

## V. SUMMARY PUNISHMENT LIMITATIONS

A. The penalty recommended for a less serious transgression will be based on the affected member's summary punishment history and complimentary history for the twelve months preceding the date of the current transgression. A copy of the affected member's summary punishment (obtained from IAD) and complimentary history (obtained from Personnel Division) will be attached to the SPAR.

B. Department policy requires implementation of a summary punishment penalty immediately following the decision of the final review authority.

RFC-Maysonet 014526

C. A member may be permitted to elect an option of day(s) off without pay, to satisfy a summary punishment penalty.

    1. Sworn members below the rank of sergeant may be permitted to substitute accrued compensatory time; the loss of furlough day(s), baby furlough day(s), or personal day(s) as an alternative to being excused without pay, disciplinary.

    2. Sworn members of the rank of sergeant or above or Department members whose job classification exempts them from the provisions of the Federal Fair Labor Standards Act may be permitted to work regular day(s) off in lieu of day(s) off without pay, subject to the following restrictions:

        a. The affected member must be exempted from the overtime compensation provisions of the Federal Fair Labor Standards Act (i.e., not subject to mandatory time and one-half pay rate compensation for overtime worked according to the provisions of the Act).

        b. The member may not exceed the limit of working one regular day off per calendar week unless a period of three or more consecutive regular days off is involved, in which case the member may work two regular days off. Members will not be allowed to work a recognized paid holiday to satisfy summary punishment penalties.

D. Timekeepers will note the appropriate code on the Attendance and Assignment Record (CPD-11.605) whenever a member, pursuant to summary punishment penalty implementation, works his regular day off or is day off without pay.

E. Loss of wages as a result of being absent without permission will <u>NOT</u> be considered summary punishment served.

## VI. PROCEDURES

A. Initiation

    1. When the application of summary punishment is deemed appropriate, the supervisor initiating the action will:

        a. review the affected member's personnel files to determine summary punishment action taken and complimentary history within one year of the current transgression.

        b. prepare a Summary Punishment Action Request ensuring that:

            (1) both the "Number" and "Nature of the Less Serious Transgression" recorded on the SPAR coincide with the number and nature of the transgression as set forth in Item IV of this order.

            (2) the "Detailed Description of Incident" portion of the SPAR accurately describes the pertinent circumstances of the incident.

            (3) a member of AFSCME is afforded the predisciplinary provisions outlined in their collective bargaining agreement. This will be understood to mean making available a copy of all investigatory reports/statements concerning the investigation, including the name of the complainant and any witness.

            (4) the recommended penalty is within the applicable penalty schedule enumerated in Item VIII of this addendum.

            (5) in the case of a civilian member, the collective bargaining unit to which the member belongs and his Job Title description (example AFSCME-Cashier, Hearing Tester, etc.; PSEBU-Crossing Guard, Detention Aide, etc.) are specified in the portion of the SPAR entitled "Job Title."

        c. when an incident giving rise to a summary punishment action involves multiple less serious transgressions, record only one transgression in the "Number" and "Nature of the Less Serious Transgression" boxes

4

RFC-Maysonet 014527

on the SPAR, other transgression(s) will be noted in the "Detailed Description of the Incident" portion of the SPAR.

    d.   confer with the watch commander/unit commanding officer of non-exempt rank regarding the particulars of the incident and determine the most appropriate course of corrective action.

    e.   sign the SPAR with the approval of the watch commander/unit commanding officer and present it to the affected member for his response choice and signature.

    f.   forward the SPAR to his watch commander/unit commanding officer for review and further processing.

    g.   whenever the affected member is immediately excused without pay or is absent without permission, prepare a Personal Action Request (CPD-11.612) with the approval of the watch commander/unit commanding officer of non-exempt rank, and forward it through channels to the Finance Division for payroll purposes.

2.   Upon receipt of a SPAR from the initiating supervisor, the affected member will:

    a.   indicate on the SPAR either acceptance of the recommended penalty or if the member is requesting a hearing.

    b.   in all cases where the "Request Hearing" square is marked, prepare a To-From-Subject report by the end of the next tour of duty. The report will also detail the affected member's reason(s) for appealing the recommended summary punishment action and will be attached to the SPAR. Failure to submit a To-From-Subject report requesting a hearing within 24 hours (excluding days off) constitutes a waiver of any future hearings.

    c.   be requested to sign the SPAR indicating his response and return it with attachment(s) if any, to the initiating supervisor.

3.   Upon return of a SPAR from an affected member, the initiating supervisor will review it to determine what further action is necessary.

4.   If the member has refused to sign the SPAR or indicates a request for an appeal hearing, the initiating supervisor will:

    a.   enter "Refused," the date and time in the "Affected Member Signature" box on the SPAR.

    b.   check and initial the "Requests Hearing" square.

5.   When an affected member has submitted a To-From-Subject report requesting a hearing, the initiating supervisor will prepare a To-From-Subject report responding to the information supplied in the member's report and, when necessary, include relevant information not previously incorporated on the SPAR or other related reports.

6.   When a member's prescribed time limit for requesting an appeal hearing has elapsed, the initiating supervisor will forward the SPAR, the related To-From-Subject reports, if any, and all other relevant documents to the affected member's commanding officer of exempt rank.

B.  Exempt Rank Command Member Review

1.   Upon receipt of a SPAR, the affected member's commanding officer of exempt rank will review Part I and any attachments.

2.   If the affected member has accepted the initiating supervisor's disciplinary recommendation and such recommendation is approved, the commanding officer will:

    a.   check the "Action Approved" square in Part 2 of the SPAR.

    b.   sign, date and record the time on the SPAR in the "C.O./Exempt Rank" signature box in Part 2 of the SPAR.

5

RFC-Maysonet 014528

      c.   forward the SPAR and all related documents through the affected member's chain of command to the Internal Affairs Division for final review and implementation.

   3.   If the member has requested a hearing in the allotted time and followed the prescribed method, the responsible commanding officer, after conducting the hearing, will:

      a.   inform the affected member of his decision.

      b.   indicate in the "Remarks" section of the SPAR the reason for supporting or altering the initial recommendation and check the appropriate square in the "C.O./ Exempt Rank Review" box.

      c.   present the SPAR to the affected member who will be requested to indicate his response choice in the "Affected Member - Response" box and sign the form.

      d.   inform the affected member of his right to request a hearing with the next member in his chain of command. The To-From-Subject report will be submitted before the end of his next tour of duty.

      e.   if the member has refused to sign the SPAR or indicates a request for an additional appeal hearing, the commanding officer will:

         (1)   enter "Refused," the date and time in the "Affected Member Signature" box on the SPAR.

         (2)   check and initial the "Request Hearing" square.

         (3)   inform the member that he can appeal the secondary finding by submitting a To-From-Subject report requesting a hearing before the end of his next tour of duty.

      f.   sign, date and record the time in the "C.O./Exempt Rank Signature" box.

      g.   retain the SPAR and attachments until the member's prescribed time limit for requesting an appeal hearing has elapsed.

   4.   If an affected member has accepted the commanding officer's disciplinary recommendation after the appeal hearing, the SPAR and attachments, if any, will be forwarded to the next higher exempt rank command member in the affected member's chain of command for review and then to the Internal Affairs Division. When the member has requested a further hearing at this step, the SPAR and all related documents will be sent DIRECTLY to the Internal Affairs Division (i.e., not forwarded through channels).

   5.   The Internal Affairs Division will review the SPAR and any related documents. The completed package of reports will be directed to the appropriate exempt rank command member who will schedule a hearing as requested by the affected member.

   6.   The Exempt Rank Command Member Review will not be afforded members of AFSCME.

C.  Hearing Officer Review

   1.   The appropriate deputy superintendent, assistant deputy superintendent/ deputy chief or exempt rank designee, will conduct a hearing with the affected member. The Superintendent's exempt rank designee will serve as the hearing officer for affected members assigned to units which are staff to the Superintendent. The Commander of the Training Division will con- hearings for Probationary Police Officers.

   2.   Upon receipt of a SPAR requesting a hearing, the hearing officer will:

      a.   review Parts 1 and 2 of the SPAR and all related documents.

      b.   schedule, notify and conduct a hearing with the affected member.

   3.   At the hearing, the hearing officer will complete Part 3 of the SPAR by:

      a.   reviewing all relevant facts relating to the SPAR with the affected member.

RFC-Maysonet 014529

    b.   rendering a disciplinary action/penalty decision and recording it on the SPAR.

    c.   informing the affected member of the decision before concluding the hearing.

    d.   signing the SPAR in the "Hearing Officer-Signature" box.

    e.   recording the date and time of the hearing in the space provided on the SPAR.

    f.   informing the member that he has the option to request a Complaint Review Panel (CRP) hearing if he disagrees with the hearing officer's decision. This request will be made prior to the end of the member's next tour of duty. However, AFSCME members will not be afforded the Complaint Review Panel process as the predisciplinary provisions outlined in their collective bargaining agreement serves in place of the Complaint Review Panel Hearing process.

4.   Following the hearing, the completed SPAR and all attachments will be promptly forwarded to the Internal Affairs Division.

D.  **Complaint Review Panel**

1.   The recommendation of the hearing officer is subject to review by a CRP at the option of the accused member.

2.   In order to obtain a CRP hearing, the accused member must submit a To-From-Subject report to the Department Advocate, Internal Affairs Division, requesting a hearing by the CRP. The Department Advocate must receive this report within three calendar days (exclusive of Saturdays, Sundays and holidays) following the date on which the recommendation of the hearing officer was made. Failure to submit this report within the prescribed period constitutes a waiver of a further hearing or appeal.

3.   The recommendation of the CRP will be forwarded to the Assistant Deputy Superintendent, Internal Affairs Division for final review and implementation.

E.  **Records Control**

1.   Upon receipt of the final summary punishment recommendation, the Internal Affairs Division will:

    a.   retain the SPAR and attachment(s), if any.

    b.   forward one copy of the SPAR to the affected member's unit of assignment for immediate implementation and retention in the member's personnel file.

    c.   forward a copy of the completed SPAR to the Finance Division in all cases in which imposition of the penalty requires a day(s) off without pay.

2.   All records relating to summary punishment will be retained in accordance with the existing records retention requirements and/or applicable laws.

VII.  **CHALLENGE OF SUMMARY PUNISHMENT**

A.  After summary punishment has been administered three (3) times within a twelve (12) month period, a member who wishes to contest the application of summary punishment on a fourth occasion within the last twelve (12) months may contest the fourth and/or succeeding application of summary punishment by timely challenge through the Complaint Register process or the grievance procedure.

B.  A member who elects to proceed through the Complaint Register process will notify his immediate supervisor who will obtain a Complaint Register number and follow the procedures outlined within addenda 1 through 6 of this directive.

C.  A member who elects to proceed through the grievance procedure will submit his written grievance in accordance with the provisions of the Department directive entitled "Processing Grievances and Discrimination Complaints of Department Members."

RFC-Maysonet 014530

## VIII. SCHEDULE OF PENALTIES

The schedule of penalties will apply generally for all Department members being disciplined under the provisions of Summary Punishment. However, the Department may elect to investigate conduct and invoke discipline under provisions contained in addenda 1 through 6 of this order. In the case of a probationary employee (including a P.P.O.), the Department may invoke a greater penalty than those indicated in the schedule, including separation.

A. The following schedule governs those less serious transgressions wherein a member has been found unfit for duty, has been absent without permission, has violated medical roll procedures, or wherein a supervisor has failed to take action:

1. <u>First Transgression</u> – One to two days off.

2. <u>Second Transgression</u> – One to three days off.

3. <u>Third and Subsequent Transgressions</u> – Two to three days off.

B. The following schedule governs the transgression wherein a member was the driver of a Department vehicle involved in a traffic accident classified as "preventable."

1. <u>First Transgression</u> – Reprimand to two days off.

2. <u>Second and Subsequent Transgressions</u> – Complaint Register investigation.

C. The following schedule governs all other less serious transgressions:

1. <u>First Transgression</u> – Reprimand to one day off.

2. <u>Second Transgression</u> – Reprimand to two days off.

3. <u>Third Transgression</u> – One to two days off.

4. <u>Fourth and Subsequent Transgressions</u> – Two to three days off.

*Matt L. Rodrigue*
Superintendent of Police

| Indicates new or revised item.

84-138  BW

8

| REVISION TO:<br>General Order 93-3, Add. 7. | DATE OF ISSUE<br>31 December 1997 | EFFECTIVE DATE<br>1 January 1998 | NO.<br>7A |
|---|---|---|---|
| TITLE<br>SUMMARY PUNISHMENT | | DISTRI-<br>BUTION<br>C | RESCINDS |

**Item II-A is revised and will read as follows:**

A.   SUMMARY PUNISHMENT:   an alternative to Complaint Register disciplinary procedures for conduct defined as a less serious transgression which is observed by or comes to the attention of a Department supervisor or command member.

   NOTE: Captains and exempt members may only be disciplined by reprimand for conduct defined as a less serious transgression. This provision does not preclude the initiation of a complaint register investigation or a finding and recommendation of "violation noted, no disciplinary action" for same.

**Item V-A is revised and will read as follows:**

A.   The penalty recommended for a less serious transgression (other than preventable Department vehicle traffic crashes) will be based upon the affected member's summary punishment history and complimentary history for the twelve months preceding the date of the current transgression. A copy of the affected member's summary punishment (obtained from the Internal Affairs Division) and complimentary history (obtained from the Personnel Division) will be attached to the SPAR.

   NOTE: The Fraternal Order of Police Lodge 7 Agreement specifies that a Department member's Department vehicle traffic crash history may be considered in determining future discipline for a period of time not to exceed two years from the date of the current incident provided there is no intervening preventable Department vehicle traffic crash. If such intervening traffic crash exists, the two year period shall continue to run from the date of the most recent traffic crash and any prior preventable incidents may be considered for disciplinary purposes. In no event shall any prior incident five or more years old be considered.

   Example 1:  Current crash:        October 1997
               Most recent crash:    September 1995 (2 yrs. & 1 mo.)

               September 1995 crash **cannot be considered** (no intervening crashes within two years of current crash).

   Example 2:  Current crash:        October 1997
               Most recent crash:    October 1996    (1 yr. from current crash)
               Prior crash:          July 1995       (2 yrs. 3 mos. from October 1997 crash and 1 yr. 3 mos. from October 1996 crash)
               Prior crash:          August 1993     (1 yr. and 11 mos. from July 1995 crash; 4 yrs. and 2 mos. from current crash)
               Prior crash:          September 1992  (5 yrs. and 1 mo. from current crash)

RFC-Maysonet 014532

The October 1996, July 1995 and August 1993 crashes **may all be considered** (The most recent intervening crash was the October 1996 crash. Traffic crashes two years prior to that date may be considered. Also, since there was an intervening crash (July 1995) within the second two year period, the Department may go back a subsequent two years to include the August 1993 crash. The September 1992 crash cannot be considered; it occurred more than 5 years prior to the current crash.

**Item V-C is revised and will read as follows:**

C.   A member may be permitted to elect an option of day(s) off without pay to satisfy a summary punishment penalty. Sworn members may be permitted to substitute accrued compensatory time; or forfeit a furlough day(s), baby furlough day(s), or personal day(s) as an alternative to being excused without pay, disciplinary.

**Item V-D is revised and will read as follows:**

D.   Timekeepers will note the appropriate code on the Attendance and Assignment Record (CPD-11.605) whenever a member, pursuant to summary punishment penalty implementation, is day off without pay.

**Item VI-A-1-a is revised and will read as follows:**

a.   review the affected member's personnel files to determine summary punishment action taken and complimentary history within one year of the current transgression (see "Note" in Item V-A for Department vehicle traffic crashes).

**Item VIII-B is revised and will read as follows:**

B.   The following schedule governs the transgression wherein a member was the driver of a Department vehicle involved in a traffic crash classified as "preventable."

   1.   <u>First Transgression</u> - Reprimand to two days off.

   2.   <u>Second and Subsequent Transgressions</u> - One to three days off.

Acting Superintendent of Police

Indicates new or revised item.

97-038 GHY

RFC-Maysonet 014533

| | **REVISION TO:**<br>General Order 93-3, Addendum 7 | DATE OF ISSUE<br>17 December 2001 | EFFECTIVE DATE<br>18 December 2001 | NO.<br>7B |
|---|---|---|---|---|
| SUBJECT<br>SUMMARY PUNISHMENT | | DISTRI-<br>BUTION<br>C | RESCINDS | |

**I.    PURPOSE**

This revision clarifies the amount of time after the receipt of a Summary Punishment Action Request (SPAR) that a member who is entitled to a post-SPAR hearing has to request such a hearing.

**II.   REVISIONS**

A.    Item III-K is revised to read:

K.    In all cases where a member *who is entitled to a hearing* has marked the "Request Hearing" square on the Summary Punishment Action Request, a To-From-Subject Report requesting a hearing will be required *by the end of the member's next tour of duty or within ninety-six hours, whichever period is shorter.* Failure to submit a report within *the prescribed time limits* constitutes a waiver of any future hearing.

B.    Item VI-A-2 has been revised to read:

2.    Upon receipt of a SPAR from the initiating supervisor, the affected member will:

a.    indicate on the SPAR either acceptance of the recommended penalty or *that the member, if entitled,* is requesting a hearing.

b.    in all cases where the "Request Hearing" square is marked, prepare a To-From-Subject Report by the end of the next tour of duty *or within ninety-six hours, whichever period is shorter.*    The report will also detail the affected member's reason(s) for appealing the recommended summary punishment action.    Failure to submit a To-From-Subject Report requesting a hearing within *the prescribed time limits* constitutes a waiver of any future hearings.

c.    be requested to sign the SPAR indicating *the member's* response and return it with attachments(s), if any, to the initiating supervisor.

C.    Item VI-B-3-d is revised to read:

d.    inform the affected member, *if entitled,* of *the* right to request a hearing with the next member in *the member's* chain of command. The To-From-Subject Report will be submitted *by the end of the member's next tour of duty or within ninety-six hours, whichever period is shorter.*

D.    Item VI-B-3-e-(3) is revised to read:

(3)    inform the member, *if entitled, of the right* to appeal the secondary finding by submitting a To-From-Subject Report requesting a hearing *by the end of the member's next tour of duty or within ninety-six hours, whichever period is shorter.*

RFC-Maysonet 014534

E.    Item VI-C-3-f is revised to read:

>     f.    informing the member *of the* option to request a Complaint Review
>           Panel (CRP) hearing if *the member* disagrees with the hearing
>           officer's decision.  This request will be made *by the end of the*
>           *member's next tour of duty or within ninety-six hours, whichever*
>           *period is shorter.*  However, AFSCME members will not be afforded
>           the Complaint Review Panel process as the predisciplinary
>           provisions outlined in their collective bargaining agreement
>           serves in place of the Complaint Review Panel Hearing process.

                                          Superintendent of Police

New or revised material is indicated by *italics*.

01-097 LMT

*Complaint and Disciplinary Procedures,*
*Addendum 7B*                              2

RFC-Maysonet 014535

| REVISION TO:<br>General Order 93-3, Addendum 7 | DATE OF ISSUE<br>28 July 2004 | EFFECTIVE DATE<br>29 July 2004 | NO.<br>7C |
| --- | --- | --- | --- |
| SUBJECT<br>SUMMARY PUNISHMENT | DISTRI-<br>BUTION<br>C | RESCINDS | |

## I. PURPOSE

This revision updates the list of less serious transgressions to permit the issuance of summary punishment for Department members who engage in pursuits not in compliance with Department policy, but do not necessitate the initiation of a complaint register investigation.

## II. REVISION

Item IV-A-27 is added to read:

27. Failure of a sworn member to comply with the requirements outlined in Department directives concerning motor vehicle pursuits when the Chairman of the Traffic Review Board determines that a summary punishment, rather than a complaint register investigation, would best achieve the goals of the Department.

Superintendent of Police

04-064 DK

RFC-Maysonet 014536