Exhibit 32

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **JOSE JUAN MAYSONET, JR.** ) ) Plaintiff, ) ) v. ) ) **REYNALDO GUEVARA, ERNEST HALVORSEN, EDWARD MINGEY, EPPLEN; FERNANDO MONTILLA, ROLAND PAULNITSKY, FRANK DIFRANCO, CITY OF CHICAGO, and COOK COUNTY.** ) ) ) ) ) ) ) ) ) Defendants. ) ) | Case No. 18 CV 02342 Hon. Mary M. Rowland **JURY TRIAL DEMANDED** |

**PLAINTIFF'S FOURTH REQUESTS TO PRODUCE
DOCUMENTS TO DEFENDANT CITY OF CHICAGO**

Plaintiff Jose Juan Maysonet Jr., by his undersigned attorneys, propounds the following Requests for Production of Documents pursuant to Rule 34 of the Federal Rules of Civil Procedure, and applicable local rules, upon Defendant CITY OF CHICAGO, to be answered in writing within thirty days after service hereof.

**DEFINITIONS AND INSTRUCTIONS**

1. Whenever the term Plaintiff, Jose Maysonet, Jose Juan Maysonet, Mr. Maysonet or Maysonet is used herein, it shall refer to Jose Juan Maysonet Jr.

2. "And" and "or" mean "and/or" so that the terms are given their broadest possible meaning. In construing a request, the singular shall include the plural and the plural shall include the singular, and the use of a masculine, feminine, or neutral pronoun shall not exclude any of the others. The past tense includes the present tense and the present tense includes the past tense,

where the clear meaning is not destroyed by the change.

3. "Relate," "relating to," or "regarding" shall mean directly or indirectly mentioning or describing, pertaining to, being connected with, reflecting upon, or having any logical or factual connection with a stated subject matter.

4. "Person" shall refer to any individual, corporation, partnership, organization, or other legal entity.

5. "Document" shall have the broadest possible meaning under the Federal Rules of Civil Procedure and shall include any handwritten, typed, photographed, computerized, audio, video, or other graphic matter, regardless of how it is printed, stored or reproduced, in the possession and/or control of Defendant or known by Defendant to exist, whether or not claimed to be privileged or otherwise excludable from discovery. Any document with any marks or notations, including but not limited to: initials; routing instructions; date stamps; and any comment, marking or notation of any character, is to be considered a separate document.

6. "Communication" means the exchange of information between two or more Persons, whether orally, in writing, or by any other means. Communication includes but is not limited to letters, memoranda, e-mail, notes, audio recordings, video recordings, SMS or text messages, Tweets, and other exchanges on social media such as but not limited to Facebook, Twitter, and Instagram.

7. If there are no Documents in Your possession, custody or control that are responsive to a particular request, please so state and identify such request.

8. If any Documents responsive to a request are known by You to exist but are not in Your possession, custody or control, please identify such request and identify those Document(s) and the Person who has possession, custody or control thereof.

9. "Defendant Officers" shall refer to Defendants REYNALDO GUEVARA, ERNEST HALVORSEN, EDWARD MINGEY, LEE EPPLEN, FERNANDO MONTILLA and ROLAND PAULNITSKY, both individually and collectively, as well as their counsel and any consultants, experts, investigators, representatives, agents, or other Persons acting on their behalf.

10. The "City of Chicago" or the "City" shall refer to Defendant City of Chicago, including its subdivisions, departments, agencies, police departments, subsidiaries, elected officials, corporate officers, and any other constituent entity within its control, including but not limited to the Independent Police Review Authority ("IPRA"), the Civilian Office of Police Accountability ("COPA"), the Office of Professional Standards ("OPS"), and the Internal Affairs division of the Chicago Police Department, as well as any counsel, consultants, employees, representatives, agents, contractors, experts, investigators, or other persons acting on their behalf.

11. "Department" or "CPD" shall refer to the Chicago Police Department, as well as its counsel, consultants, employees, representatives, agents, contractors, experts, investigators, or other Persons acting on its behalf, including other law enforcement agencies and laboratories.

12. The terms "You" and "Your" shall refer to the City of Chicago and/or the Department and/or agents of the City of Chicago, including its attorneys.

13. "Jose Maysonet double murder investigation" shall mean any actions taken by You or any "Investigators" (as that term is defined below) relating in any way to the prosecution of Jose Maysonet in case numbers 92 CR 10146 and 90 CR 21787. This term is not limited solely to actions taken prior to the arrest of Jose Maysonet, but includes as well actions undertaken both before and after the arrest of Jose Maysonet, including any actions during Jose Maysonet's criminal trial and any actions up to and including the present day.

14. "Jose Maysonet attempt murder investigation" shall mean any actions taken by You or any "Investigators" (as that term is defined below) relating in any way to the prosecution of Jose Maysonet in case numbers 90 CR 18419. This term is not limited solely to actions taken prior to the arrest of Jose Maysonet, but includes as well actions undertaken both before and after the arrest of Jose Maysonet, including any actions during Jose Maysonet's criminal trial and any actions up to and including the present day.

15. "The Wiley brothers" shall mean Torrence Wiley and Kevin Wiley, the two male victims murdered on the morning of May 25, 1990 at 3428 W. North Avenue in Chicago, Illinois.

16. "Investigation of the Wiley brothers' murder" shall mean any actions taken by you or any "Investigators" (as that term is defined below) relating in any way to the investigation of the murders of the Wiley brothers. This term includes but is not limited to any action taken prior to the questioning and/or arrest of any potential "suspect" (as that term is defined below), any action undertaken during and after the arrest of any "suspects", any actions taken during and after the criminal prosecution of Jose Maysonet, Alfredo Gonzalez, Justino Cruz, and Christopher Hernandez (aka Christopher Goosens) and any actions up to and including the present day.

17. Whenever the term Christopher Goosens or Christopher Hernandez or Fro, is used herein, it shall refer to Christopher Goosens.

18. "Investigators" shall mean any Persons who materially participated in the Jose Maysonet double murder, Jose Maysonet attempt murder investigation or the investigation of the Wiley brothers' murder. This includes not only the named Defendants but also any other law enforcement officers, prosecutors, state investigators, co-workers, colleagues, assistants, agents,

4

advisors, or entities who furnished any material support to any Jose Maysonet investigation and/or the Investigation of the Wiley brothers' murder.

19. "Suspects" shall mean any individual(s) who was suspected as a perpetrator in the Wiley brothers' murder. This includes, but is not limited to, any individual placed in a line-up, show-up or photo array, any individual(s) questioned, investigated, accused, indicted, formally charged, convicted, and/or pled guilty to the murder of the Wiley Brothers. This includes but is not limited to, the following individuals: Efrain Cruz ("King"), Francisco Veras ("Cisco"), Alfredo Gonzalez ("Lluvia"), Christopher Hernandez (aka Christopher Goosens) ("Fro"), Justino Cruz ("Tino") and Jose Maysonet.

20. "Persons of interest" shall mean any individual who was considered and/or discussed as a potential as a person in the Wiley brothers' murder. This term includes but is not limited to any person who was questioned, considered, investigated, and/or spoken to regarding his or her knowledge of the Wiley brothers' murder investigation irrespective of whether that person was ever taken into custody.

21. "Exculpatory Evidence" shall mean evidence favorable to Jose Maysonet and evidence that would tend to show that Jose Maysonet was not guilty of the criminal charges against him in People v. Maysonet, 92 CR 10146, 90 CR 21787, and/or 90 CR 18419, including any evidence that would tend to undermine the credibility of any prosecution witness who testified during Jose Maysonet's criminal proceedings.

22. "Plaintiff's Complaint" shall mean the operative pleading entitled First Amended Complaint, which was filed in *Maysonet v. Guevara, et. al.,* Case No. 18-cv-02342 or if that Complaint is amended, the most recent amended complaint filed on Jose Maysonet's behalf at the time.

23. "Complaint" refers to any complaint or criticism, including but not limited to written complaints, grievances, disciplinary records, personnel records, legal proceedings, or other Documents relating in any manner to Your job performance or the job performance of any of Your counsel, consultants, employees, representatives, agents, contractors, experts, investigators, or other Persons acting on Your behalf, regardless of the disposition of any resulting inquiry or investigation. This includes but is not limited to all citizen complaints made to IPRA, COPA, OPS, or the CPD's Internal Affairs Division, all Summary Punishment Action Requests ("SPARS") or other such departmental citations, all Counseling Records, and all lawsuits filed in either federal or state court alleging misconduct by a police officer.

24. "Identify," with respect to a Person, shall mean to provide that Person's name, address, and telephone number. With respect to a Document, "identify" shall mean to provide the date of the Document, the author of the Document, the subject matter of the Document, and, where applicable, all recipients of the Document. With respect to a Communication, "identify" shall mean to provide the date of the Communication, the Person making the Communication, the subject matter of the Communication, and all Persons who received the Communication.

25. "Street File" is defined as all Documents pertaining to a police investigation that are not provided to the prosecutor and/or the defendant for a pending criminal proceeding relating to that police investigation. This includes but is not limited to Documents that were not submitted to the Records Division of the Chicago Police Department for inclusion into the Permanent Retention File associated with a particular RD number, or which are not included in the Investigative File, the Investigative File Case Folder, or the Unit Investigative File. The definitions of "Street File" that are contained in *Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1988), and *Palmer v. City of Chicago*, 576 F. Supp. 1067 (N.D. Ill. 1983), are incorporated as if

fully stated herein. The term "street files" may include "running files"; files maintained on "clipboards"; and/or "officer files." To be clear, the term "Street Files" refers to all of the Documents from these Street Files, including any detective notes, memos and Witness Statements contained therein.

26. "Permanent Retention File" is the file pertaining to a particular criminal investigation that is maintained by the Records Division of the Chicago Police Department and stored in the Records Division warehouse.

27. "Investigative File" shall have the meaning given to it in CPD Special Order 83-1 and/or Special Order 86-3.

28. "Investigative File Case Folder" shall have the same meaning attributed to it in CPD Special Order 83-1 and/or Special Order 86-3.

29. "Witness Statement" includes any statement by an individual, made either orally or in writing, and memorialized in a General Progress Report ("GPR") or supplementary report, or by a stenographer, police officer or Assistant State's Attorney. Witness Statements also include any such statements by an individual that were not memorialized in any fashion.

30. "Custody Logs" shall mean any document that identifies the date, time, location, and/or name of an individual in custody at any given time.

31. "Allegation of Misconduct" refers to any complaint or criticism, including but not limited to written complaints, grievances, disciplinary records, personnel records, legal proceedings, or other Documents relating in any manner to the job performance of any Chicago Police Department officers, regardless of the disposition of any inquiry or investigation. This definition expressly includes, but is not limited to any and all internal affairs, COPA, IPRA, OPS, intra or inter-departmental, and citizen complaints, Complaint Register files, and any other

7

Documents generated by any unit or sub-unit of the City responsible for investigating complaints or criticisms of the Chicago Police Department.

32. Unless otherwise stated, the "Relevant Time Period" for Plaintiff's discovery requests shall be the period from 5 years prior to the incident described in Plaintiff's Complaint to the present.

33. Please identify any Document withheld under a claim of privilege, identifying the source and nature of the privilege.

34. These Requests for Production shall be deemed continuing so as to require supplemental answers and production if You or Your agents, representatives or attorneys obtain further information or documents subsequent to the time Your responses are served and prior to the time of any trial of this action.

## **REQUESTS FOR PRODUCTION**

1. All documents comprising or relating to any training manual(s), employee handbook, or police procedure manual that any individual defendant ever received from the Chicago Police Department.

2. A complete copy of any policies or procedures relating to the discipline of police officers or to disciplinary procedures between 1983 and the present day.

3. All documents relating to any written policy or procedure of the City of Chicago or the Chicago Police Department including but not limited to written policies and procedures on any of the following subject matters:

    a. Documenting or memorializing the various development in an investigation in such a way that they would become a part of the official file, investigative file and/or permanent retention file as the investigation proceeded

8

    b. Conducting, documenting or memorializing photo or in-person line-up, or any other type of identification procedures

    c. Conducting, documenting or memorializing interrogation interviews or questioning of suspects and witnesses, including video and/or audio recordings such interrogations

    d. Writing, filing, retaining, storing, or destroying police investigative materials including witness statements, reports, and notes during the course of an investigation

    e. Disclosing exculpatory evidence to suspects, criminal defendants, prosecutors, or any employee of the Cook County State's Attorney's Office

    f. Providing testimony in Court

    g. Reporting, investigating, identifying, tracking, and/or reviewing allegations of officer misconduct

    h. Disciplining and/or supervising police officers who engage in misconduct

4. All documents identifying any policy maker who was responsible for or had final policy making authority for any policy or procedure of the Chicago Police Department between 1983 and the present on any of the subject matters identified in Request for Production No. 3, above, as well as all documents relating to any effort of those policy maker(s) to review, investigate, analyze, uncover, prevent, or determine the prevalence of any misconduct, deficiency, shortcoming, or other problem relating to any such policy or procedure.

5. All documents relating to any change made to any policy or procedure on any of the subjects identified in Request for Production No. 3, above.

6. All documents relating to any training that any individual defendant received in connection with his employment, including but not limited to training on any of the following subjects:

9

   a. Documenting or memorializing the various development in an investigation in such a way that they would become a part of the official file, investigative file and/or permanent retention file as the investigation proceeded

   b. Conducting, documenting or memorializing photo or in-person line-up, or any other type of identification procedures

   c. Conducting, documenting or memorializing interrogation interviews or questioning of suspects and witnesses, including video and/or audio recordings such interrogations

   d. Writing, filing, retaining, storing, or destroying police investigative materials including witness statements, reports, and notes during the course of an investigation

   e. Disclosing exculpatory evidence to suspects, criminal defendants, prosecutors, or any employee of the Cook County State's Attorney's Office

   f. Providing testimony in Court

   g. Reporting, investigating, identifying, tracking, and/or reviewing allegations of officer misconduct

   h. Disciplining and/or supervising police officers who engage in misconduct

7. All documents relating to every instance in which an employee of the Chicago Police Department was subject to any form of discipline for failing to follow policies or procedures on any of the following subject matters:

   a. Documenting or memorializing the various development in an investigation in such a way that they would become a part of the official file, investigative file and/or permanent retention file as the investigation proceeded

   b. Conducting, documenting or memorializing photo or in-person line-up, or any other type of identification procedures

    c.  Conducting, documenting or memorializing interrogation interviews or questioning of suspects and witnesses, including video and/or audio recordings such interrogations

    d.  Writing, filing, retaining, storing, or destroying police investigative materials including witness statements, reports, and notes during the course of an investigation

    e.  Disclosing exculpatory evidence to suspects, criminal defendants, prosecutors, or any employee of the Cook County State's Attorney's Office

    f.  Providing testimony in Court

    g.  Reporting, investigating, identifying, tracking, and/or reviewing allegations of officer misconduct

    h.  Disciplining and/or supervising police officers who engage in misconduct

8. All documents related to homicide investigations in the period from 1983 (i.e., the enactment of special order 83-1 regarding the maintenance and disclosure of homicide files) through 2000 (i.e., ten years after the Wiley Brothers' investigation). This request includes each and every unit of the Chicago Police Department in which documents related to homicide investigations are stored or maintained, including but not limited to Chicago Police Headquarters, the Office of Legal Affairs, the Records Division, Detective Division Areas, Gang Crimes, the Special Operation section, the Evidence and Recovered Property Section (ERPS), the Chicago Crime Lab, and the Identification Section, as well as any storage warehouses, rooms, repositories, or other areas used by any unit of the Chicago Police Department.

9. All documents related to homicide investigation in the period from 1983 (i.e., the enactment of special order 83-1 regarding the maintenance and disclosure of homicide files) through 2000 (i.e., ten years after the Wiley brothers' investigation), where there was any claim of actual or alleged withholding of exculpatory or impeaching information from a criminal

11

defendant. This request includes each and every unit of the Chicago Police Department in which documents in relation to homicide investigations are stored or maintained including but not limited to Chicago Police Headquarters, the Office of Legal Affairs, the Records Division, Detective Division Areas, Gang Crimes, the Special Operation section, the Evidence and Recovered Property Section (ERPS), the Chicago Crime Lab, and the Identification Section, as well as any storage warehouses, rooms, repositories, or other areas used by any unit of the Chicago Police Department.

10. All documents related to any Allegation of Misconduct against any Chicago Police Officer in the ten years prior to and ten years after the Wiley brothers' investigation alleging dishonest behavior, lying under oath, witness manipulation, improper behavior during interrogations or interviews, use of improperly suggestive coercive, or torturous methods on suspects, arrestees, or witnesses, use of excessive force, false arrests, malicious prosecution, fabrication or planting of evidence, concealment or suppression of evidence, use of unduly suggestive visual or voice identification procedure, and lawsuits or administrative complaints filed in State or federal courts or agencies alleging police or prosecutorial misconduct. This request specifically seeks but is not limited to (a) the date of any Allegation of Misconduct, the type of Allegation of Misconduct, and the result of any investigation or disciplinary proceedings with respect to each such Allegation of Misconduct and (b) the complete file for each allegation of misconduct within the period specified in this request.

11. All documents related to any action including policy changes or training, taken by the Chicago Police Department in response to any of the conduct alleged in the Complaint and its amendment in *Klipfel, et. al. v. Bentsen, et al.* 94-cv-06415 (N.D. Ill.), including allegations concerning the Chicago Police Department's failure to discipline and supervise officers, the

Code of Silence, the failures in the Internal Affairs Division's investigations, policies and practices and, "the City of Chicago's knowledge and support of Miedzianowski's conduct" (*e.g.* Fourth Amended Complaint). This request does not seek attorney-client or work product privileged documents.

12. All documents produced or exchanged by the parties in *Klipfel, et. al. v. Bentsen, et al.* 94-cv-06415 (N.D. Ill.). This request includes all pleadings, documents exchange in discovery, audio and video recordings, wiretap recordings, and all other forms of electronic media. This request does not seek attorney-client or work product privileged documents.

13. All depositions and trial transcripts related to *Klipfel, et. al. v. Bentsen, et al.* 94-cv-06415.

14. All Complaints, and any investigations and findings related thereto, against former Chicago Police Officer Joseph Miedzianowski. This request includes but is not limited to all civilian complaints, complaint registers, IAD or internal affairs investigations, any complaint or referrals by Phil Cline or other supervisors, internal department complaints, and complaints by other law enforcement agencies.

15. Any and all documents and communications that relate to the banning and/or disallowing of former Chicago Police Officer Joseph Miedzianowski's from the Gang Crimes Office and/or Unit and any documents and/or communications pertaining to the reinstating or allowing his return to the Gang Crimes Office and/or Unit.

16. Any and all Documents relating to any investigations and/or inquiries into former Chicago Police Officer Joseph Miedzianowski, including but not limited to investigative notes investigative reports, notes and records of witness interviews.

17. All documents related to any criminal investigations and/or law enforcement activities

between 1983-2000 in which both former Chicago Police Officers Joseph Miedzianowski and Reynaldo Guevara participated in some manner. This includes, but is not limited to any criminal investigations involving homicide, attempted homicides, drug related offenses, executions of search warrants, robberies, assaults, weapon offenses, mob action and/or any gang related offenses.

18. All documents reflecting the execution of search warrants and/or warrantless search of Jose Maysonet Jr.'s homes located at 1302 N. Homan Avenue, 1530 N. Kedzie Avenue and/or 1302 N. Kimball Avenue between 1986 and 1989 by both Chicago Police Officers Joseph Miedzianowski and Reynaldo Guevara.

19. Chicago Police Department Special Orders for the following subject matters:

   a. Assignment of Cases by Location/Classification (Det. Div. S.O. 96-2) (*See*: RFC-Maysonet 8139)

   b. Complaint Register and Criminal Investigations (Det. Div. S.O. 96-2c) (*See*: RFC-Maysonet 8139)

   c. CR Numbers and Criminal Investigation (Det. Div. S.O. 96-2c) (*See*: RFC-Maysonet 8139)

   d. Gang Crime Specialist (Det. Div. S.O. 00-1) (*See*: RFC-Maysonet 8141)

   e. Gun Recovery (Det. Div. S.O. 96-2) (*See*: RFC-Maysonet 8141)

   f. Investigative Responsibility (Det. Div. S.O. 96-2) (*See*: RFC-Maysonet 8141)

   g. Investigative Responsibility – Area 4 Pilot Program (Det. Div. S.O. 01-04) (*See*: RFC-Maysonet 8141)

   h. Investigative Responsibility (Det. Div. S.O. 02-02) (*See*: RFC-Maysonet 8141)

   i. Miscellaneous Procedures (Det. Div. S.O. 97-6) (*See*: RFC-Maysonet 8141)

j. Property Crimes Offices – Investigative Responsibility (Det. Div. S.O. 96-2) (*See*: Maysonet 8143)

k. Responsibility-Follow-Up (Det. Div. S.O. 96-2) (*See*: RFC-Maysonet 8143)

l. Violent Crimes Offices-Investigative Responsibility (Det. Div. S.O. 01-01) (*See*: RFC-Maysonet 8143)

Dated: December 4, 2020
       Brooklyn, New York

                                            Respectfully Submitted,

**JOSE MAYSONET**

*Attorneys for Plaintiff*

By: /s/JENNIFER BONJEAN
/s/ASHLEY COHEN
Bonjean Law Group, PLLC
467 Saint Johns Place
Brooklyn, New York 11238
718-875-1850


/s/STEVE GREENBERG
53 W. Jackson Blvd., Ste. 1260
Chicago, IL 60604
312-399-2711


**CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that she served the foregoing document upon all parties of record by electronic mail on December 4, 2020

                                                     /s/ JENNIFER BONJEAN