# Exhibit F

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **JOSE JUAN MAYSONET, JR.** ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **REYNALDO GUEVARA, ERNEST** ) <br> **HALVORSEN, EDWARD MINGEY,** ) <br> **EPPLEN; FERNANDO MONTILLA,** ) <br> **ROLAND PAULNITSKY, FRANK** ) <br> **DIFRANCO, CITY OF CHICAGO, and** ) <br> **COOK COUNTY.** ) <br> ) <br> Defendants. ) <br> ) | Case No. 18 CV 02342 <br><br> Hon. Andrea R. Wood <br><br> Magistrate Maria Valdez <br><br><br> **JURY TRIAL DEMANDED** |

**PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION
TO DEFENDANT CITY OF CHICAGO**

Plaintiff Jose Juan Maysonet Jr., by his undersigned attorneys, propounds the following Requests for Production pursuant to Rule 34 of the Federal Rules of Civil Procedure upon Defendant CITY OF CHICAGO, to be answered in writing within thirty days after service hereof.

**DEFINITIONS AND INSTRUCTIONS**

1.  Whenever the term Plaintiff, Jose Maysonet, Jose Juan Maysonet, Mr. Maysonet or Maysonet is used herein, it shall refer to Jose Juan Maysonet Jr.

2.  "And" and "or" mean "and/or" so that the terms are given their broadest possible meaning. In construing a request, the singular shall include the plural and the plural shall include the singular, and the use of a masculine, feminine, or neutral pronoun shall not exclude any of the others. The past tense includes the present tense and the present tense includes the past tense, where the clear meaning is not destroyed by the change.

1

3. "Relate," "relating to," or "regarding" shall mean directly or indirectly mentioning or describing, pertaining to, being connected with, reflecting upon, or having any logical or factual connection with a stated subject matter.

4. "Person" shall refer to any individual, corporation, partnership, organization, or other legal entity.

5. "Document" shall have the broadest possible meaning under the Federal Rules of Civil Procedure and shall include any handwritten, typed, photographed, computerized, audio, video, or other graphic matter, regardless of how it is printed, stored or reproduced, in the possession and/or control of Defendant or known by Defendant to exist, whether or not claimed to be privileged or otherwise excludable from discovery. Any document with any marks or notations, including but not limited to: initials; routing instructions; date stamps; and any comment, marking or notation of any character, is to be considered a separate document.

6. "Communication" means the exchange of information between two or more Persons, whether orally, in writing, or by any other means. Communication includes but is not limited to letters, memoranda, e-mail, notes, audio recordings, video recordings, SMS or text messages, Tweets, and other exchanges on social media such as but not limited to Facebook, Twitter, and Instagram.

7. If there are no Documents in Your possession, custody or control that are responsive to a particular request, please so state and identify such request.

8. If any Documents responsive to a request are known by You to exist but are not in Your possession, custody or control, please identify such request and identify those Document(s) and the Person who has possession, custody or control thereof.

9. "Defendant Officers" shall refer to Defendants REYNALDO GUEVARA, ERNEST HALVORSEN, EDWARD MINGEY, LEE EPPLEN, FERNANDO MONTILLA and

ROLAND PAULNITSKY, both individually and collectively, as well as their counsel and any consultants, experts, investigators, representatives, agents, or other Persons acting on their behalf.

10. The "City of Chicago" or the "City" shall refer to Defendant City of Chicago, including its subdivisions, departments, agencies, police departments, subsidiaries, elected officials, corporate officers, and any other constituent entity within its control, including but not limited to the Independent Police Review Authority ("IPRA"), the Civilian Office of Police Accountability ("COPA"), the Office of Professional Standards ("OPS"), and the Internal Affairs division of the Chicago Police Department, as well as any counsel, consultants, employees, representatives, agents, contractors, experts, investigators, or other persons acting on their behalf.

11. "Department" or "CPD" shall refer to the Chicago Police Department, as well as its counsel, consultants, employees, representatives, agents, contractors, experts, investigators, or other Persons acting on its behalf, including other law enforcement agencies and laboratories.

12. The terms "You" and "Your" shall refer to the City of Chicago and/or the Department and/or the Defendant Officers and/or agents of the City of Chicago, including its attorneys.

13. "Jose Maysonet double murder investigation" shall mean any actions taken by You or any "Investigators" (as that term is defined below) relating in any way to the prosecution of Jose Maysonet in case numbers 92 CR 10146 and 90 CR 21787. This term is not limited solely to actions taken prior to the arrest of Jose Maysonet, but includes as well actions undertaken both before and after the arrest of Jose Maysonet, including any actions during Jose Maysonet's criminal trial and any actions up to and including the present day.

14. "Jose Maysonet attempt murder investigation" shall mean any actions taken by You or any "Investigators" (as that term is defined below) relating in any way to the prosecution

3

of Jose Maysonet in case numbers 90 CR 18419. This term is not limited solely to actions taken prior to the arrest of Jose Maysonet, but includes as well actions undertaken both before and after the arrest of Jose Maysonet, including any actions during Jose Maysonet's criminal trial and any actions up to and including the present day.

15. "The Wiley brothers" shall mean Torrence Wiley and Kevin Wiley, the two male victims murdered on the morning of May 25, 1990 at 3428 W. North Avenue in Chicago, Illinois.

16. "Investigation of the Wiley brothers' murder" shall mean any actions taken by you or any "Investigators" (as that term is defined below) relating in any way to the investigation of the murders of the Wiley brothers. This term includes but is not limited to any action taken prior to the questioning and/or arrest of any potential "suspect" (as that term is defined below), any action undertaken during and after the arrest of any "suspects", any actions taken during and after the criminal prosecution of Jose Maysonet, Alfredo Gonzalez, Justino Cruz, and Christopher Hernandez (aka Christopher Goosens) and any actions up to and including the present day.

17. Whenever the term Christopher Goosens or Christopher Hernandez or Fro, is used herein, it shall refer to Christopher Goosens.

18. "Investigators" shall mean any Persons who materially participated in the Jose Maysonet double murder, Jose Maysonet attempt murder investigation or the investigation of the Wiley brothers' murder. This includes not only the named Defendants but also any other law enforcement officers, prosecutors, state investigators, co-workers, colleagues, assistants, agents, advisors, or entities who furnished any material support to any Jose Maysonet investigation and/or the Investigation of the Wiley brothers' murder.

19. "Suspects" shall mean any individual(s) who was suspected as a perpetrator in the

Wiley brothers' murder. This includes, but is not limited to, any individual placed in a line-up, show-up or photo array, any individual(s) questioned, investigated, accused, indicted, formally charged, convicted, and/or pled guilty to the murder of the Wiley Brothers. This includes but is not limited to, the following individuals: Efrain Cruz ("King"), Francisco Veras ("Cisco"), Alfredo Gonzalez ("Lluvia"), Christopher Hernandez (aka Christopher Goosens) ("Fro"), Justino Cruz ("Tino") and Jose Maysonet.

20. "Persons of interest" shall mean any individual who was considered and/or discussed as a potential as a person in the Wiley brothers' murder. This term includes but is not limited to any person who was questioned, considered, investigated, and/or spoken to regarding his or her knowledge of the Wiley brothers' murder investigation irrespective of whether that person was ever taken into custody.

21. "Exculpatory Evidence" shall mean evidence favorable to Jose Maysonet and evidence that would tend to show that Jose Maysonet was not guilty of the criminal charges against him in People v. Maysonet, 92 CR 10146, 90 CR 21787, and/or 90 CR 18419, including any evidence that would tend to undermine the credibility of any prosecution witness who testified during Jose Maysonet's criminal proceedings.

22. "Plaintiff's Complaint" shall mean the operative pleading entitled First Amended Complaint, which was filed in *Maysonet v. Guevara, et. al.,* Case No. 18-cv-02342 or if that Complaint is amended, the most recent amended complaint filed on Jose Maysonet's behalf at the time.

23. "Complaint" refers to any complaint or criticism, including but not limited to written complaints, grievances, disciplinary records, personnel records, legal proceedings, or other Documents relating in any manner to Your job performance or the job performance of any of Your counsel, consultants, employees, representatives, agents, contractors, experts,

5

investigators, or other Persons acting on Your behalf, regardless of the disposition of any resulting inquiry or investigation. This includes but is not limited to all citizen complaints made to IPRA, COPA, OPS, or the CPD's Internal Affairs Division, all Summary Punishment Action Requests ("SPARS") or other such departmental citations, all Counseling Records, and all lawsuits filed in either federal or state court alleging misconduct by a police officer.

24. "Identify," with respect to a Person, shall mean to provide that Person's name, address, and telephone number. With respect to a Document, "identify" shall mean to provide the date of the Document, the author of the Document, the subject matter of the Document, and, where applicable, all recipients of the Document. With respect to a Communication, "identify" shall mean to provide the date of the Communication, the Person making the Communication, the subject matter of the Communication, and all Persons who received the Communication.

25. "Street File" is defined as all Documents pertaining to a police investigation that are not provided to the prosecutor and/or the defendant for a pending criminal proceeding relating to that police investigation. This includes but is not limited to Documents that were not submitted to the Records Division of the Chicago Police Department for inclusion into the Permanent Retention File associated with a particular RD number, or which are not included in the Investigative File, the Investigative File Case Folder, or the Unit Investigative File. The definitions of "Street File" that are contained in *Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1988), and *Palmer v. City of Chicago*, 576 F. Supp. 1067 (N.D. Ill. 1983), are incorporated as if fully stated herein. The term "street files" may include "running files"; files maintained on "clipboards"; and/or "officer files." To be clear, the term "Street Files" refers to all of the Documents from these Street Files, including any detective notes, memos and Witness Statements contained therein.

26. "Permanent Retention File" is the file pertaining to a particular criminal

investigation that is maintained by the Records Division of the Chicago Police Department and stored in the Records Division warehouse.

27. "Investigative File" shall have the meaning given to it in CPD Special Order 83-1 and/or Special Order 86-3.

28. "Investigative File Case Folder" shall have the same meaning attributed to it in CPD Special Order 83-1 and/or Special Order 86-3.

29. "Witness Statement" includes any statement by an individual, made either orally or in writing, and memorialized in a General Progress Report ("GPR") or supplementary report, or by a stenographer, police officer or Assistant State's Attorney. Witness Statements also include any such statements by an individual that were not memorialized in any fashion.

30. "Custody Logs" shall mean any document that identifies the date, time, location, and/or name of an individual in custody at any given time.

31. Unless otherwise stated, the "Relevant Time Period" for Plaintiff's discovery requests shall be the period from 5 years prior to the incident described in Plaintiff's Complaint to the present.

32. Please identify any Document withheld under a claim of privilege, identifying the source and nature of the privilege.

33. These Production requests shall be deemed continuing so as to require supplemental answers and production if You or Your agents, representatives or attorneys obtain further information or documents subsequent to the time Your responses are served and prior to the time of any trial of this action.

## REQUESTS FOR PRODUCTION

1. Any and all documents that relate to, support, or rebut any of the allegations or claims in Plaintiff's Complaint, including but not limited to all Exculpatory Evidence.

2. Any and all documents relating to or supporting any affirmative defenses any Defendant has or may assert.

3. Any and all documents upon which Defendants may rely at trial.

7

4.  Any and all documents prepared in connection with the Jose Maysonet double murder investigation, the Investigation of the Wiley brothers' murder, and the investigation, arrest, interrogation and/or charging of Plaintiff and any Suspects or persons of interest in the Wiley Brothers murders, including but not limited to any and all police reports, collected evidence, lab reports, handwritten notes, crime scene photographs, photo arrays, mugshots, and photographs of the Plaintiff, suspects, persons of interests or other witnesses. The request specifically includes but is not limited to the complete Department Permanent Retention File and the complete Investigative File, Area File, Unit File, or Street File with respect to the Jose Maysonet double murder investigation and the Investigation of the Wiley brothers' murder.

5.  Any and all documents prepared in connection with the Jose Maysonet attempt murder investigation, including but not limited to any and all police reports, collected evidence, lab reports, handwritten notes, crime scene photographs, photo arrays, mugshots, and photographs of the Plaintiff, suspects, persons of interests or other witnesses. The request specifically includes but is not limited to the complete Department Permanent Retention File and the complete Investigative File, Area File, Unit File, or Street File with respect to the Jose Maysonet attempt murder investigation.

6.  Any and all documents relating to any line-ups, show-ups, or photo arrays that were used by the Department during the Jose Maysonet Double Murder Investigation and the Investigation of the Wiley brothers' murder.

7.  Any and all documents relating to any line-ups, show-ups, or photo arrays that were used by the Department during the Jose Maysonet Attempt Murder Investigation.

8.  Any and all documents, including any and all attachments and investigator notes, relating to any internal investigation (e.g., COPA, OPS, Internal Affairs, IPRA, etc.) undertaken by the Department in connection with the events described in Plaintiff's Complaint.

9.  All and all documents, including street files or running files, which were not

included in the Investigative File and that summarize, reflect or describe any police actions related to the Jose Maysonet double murder investigation and the investigation of the Wiley brothers' murder.

10. Any and all documents, including street files or running files, which were not included in the Investigative File and that summarize, reflect or describe any police actions related to the Jose Maysonet attempt murder investigation.

11. The Investigative File Control Card for the Jose Maysonet double murder investigation and Investigation of the Wiley brothers' murder Investigative File.

12. The Investigative File Control Card for the Jose Maysonet attempt murder investigation.

13. The Investigative File Inventory Sheet for the Jose Maysonet double murder investigation and the Investigation of the Wiley brothers' murder Investigative File.

14. The Investigative File Inventory Sheet for the Jose Maysonet attempt murder investigation and the Investigation of the Wiley brothers' murder Investigative File.

15. All Documents relating to whether the Plaintiff committed any illegal act in relation to the incident described in the Complaint.

16. Any and all Documents related to any Complaint of any person against any of the Investigators at any time. This request specifically seeks the complete Department "CR" file for each Complaint; a print-out of the disciplinary histories of each of the Investigators with information sufficient to determine the date of any Complaint, the type of Complaint, and the result of any investigation or disciplinary proceeding with respect to each such Complaint; and any Complaints filed in criminal or civil court.

17. All files relating to each Investigator (including the individual defendant officers) maintained by the Department, including complete Department personnel files, internal affairs

9

files, and training records.

19. 18. Documents sufficient to show the location, movements, and assignments of each of the Investigators (including the individual Defendant Officers and Defendant DiFranco) on July 15, 1990, August 1, 1990, and August 22 - 25, 1990, This request specifically seeks but is not limited to the Department Attendance, Court Attendance Forms, and Assignment sheets for the specified time period.

19. All court attendance forms for attending court for the following cases, 92-CR-10146, 90-CR-21787, and 90-CR-18419.

20. Any insurance contracts or indemnification agreements that may cover the liability of any of the Defendant Officers, Defendant DiFranco or the City for the claims Plaintiff makes in this case.

21. A photograph of each of the investigators that shows each Officer's appearance at or near the time of the Jose Maysonet double murder investigation. This request seeks the photograph of each Officer in the department's possession taken closest in time to the Jose Maysonet double murder investigation.

22. A photograph of each of the investigators that shows each officer's appearance at or near the time of the Jose Maysonet attempt murder investigation. This request seeks the photograph of each officer in the department's possession taken closest in time to the Jose Maysonet attempt murder investigation.

23. All documents in Defendants' possession relating to Plaintiff, suspects and/or persons of interests in the Jose Maysonet double murder investigation and the Wiley brothers' murder investigation. This request includes documents obtained prior to, during and after the Jose Maysonet double murder Investigation and Investigation of the Wiley brothers' murder.

24. All documents in Defendants' possession relating to Plaintiff, suspects and/or

persons of interests in the Jose Maysonet attempt murder investigation. This request includes documents obtained prior to, during and after the Jose Maysonet attempt murder investigation.

25. All documents that support or relate to any of Your responses to any of Plaintiff's Interrogatories or Requests for Admission in this case.

26. All documents comprising, containing, or memorializing Communications of any kind relating to this case, including but not limited to memos, letters, faxes, e-mails, reports, text messages, notes, etc. This Request includes but is not limited to (a) all Communications between the Investigators and Plaintiff; (b) all Communications between the Investigators and the witnesses in this case; (c) all Communications with employees of the Cook County State's Attorney's Office; (d) all Communications between or among any person within the Department; and (e) all Communications between any of the Investigators including Defendant DiFranco. This request also includes any such Communications that are not included in the Investigative File for the Jose Maysonet double murder investigation, the Jose Maysonet attempt murder investigation, or the investigative file for the investigation of the Wiley brothers' murder.

27. All transcripts, tape recordings, and radio transmissions (or Documents memorializing the same) relating to the subjects described in Plaintiff's Complaint.

28. Any witness statements (written, oral, recorded or transcribed in any way) relating to any of the events described in Plaintiff's Complaint in this action.

29. All Documents prepared in connection with RD No. N-303737 and RD No. N-234297.

30. Criminal history records for Alfredo Gonzalez, Jose Maysonet, Christopher Gossens, Justino Cruz, Efrain Cruz and Franscico Veras.

31. Any and all documents prepared in connection with the interrogation, arrest, charging and/or prosecution of Alfredo Gonzalez in connection with the Wiley brothers' murder,

11

including but not limited to any and all police reports, collected evidence, lab reports, handwritten notes, crime scene photographs, photo arrays, mugshots, and photographs of the Plaintiff, suspects, persons of interests or other witnesses. The request specifically includes but is not limited to the complete Department Permanent Retention File and the complete Investigative File, Area File, Unit File, or Street File with respect to Alfredo Gonzalez in the Wiley brothers' murder investigation.

32. Any and all documents prepared in connection with the interrogation, arrest, charging and/or prosecution of Justino Cruz in connection with the Wiley brothers' murder, including but not limited to any and all police reports, collected evidence, lab reports, handwritten notes, crime scene photographs, photo arrays, mugshots, and photographs of the Plaintiff, suspects, persons of interests or other witnesses. The request specifically includes but is not limited to the complete Department Permanent Retention File and the complete Investigative File, Area File, Unit File, or Street File with respect to Justino Cruz in the Wiley brothers' murder investigation.

33. Any and all documents prepared in connection with the interrogation, arrest, charging and/or prosecution of Christopher Goosens in connection with the Wiley brothers' murder, including but not limited to any and all police reports, collected evidence, lab reports, handwritten notes, crime scene photographs, photo arrays, mugshots, and photographs of the Plaintiff, suspects, persons of interests or other witnesses. The request specifically includes but is not limited to the complete Department Permanent Retention File and the complete Investigative File, Area File, Unit File, or Street File with respect to Christopher Goosens in the Wiley brothers' murder investigation.

34. Any and all documents comprising, containing, or memorializing communications of any kind with Alfredo Gonzalez, Christopher Goosens (Hernandez), Justino Cruz, Efrain

Cruz, Francisco Veras, and any other supect or person of interest relating to the Wiley Brothers murder, including but not limited to memos, letters, faxes, e-mails, reports, text messages, notes, etc. This Request includes but is not limited to (a) all Communications between the Investigators and any of the above named individuals; (b) all Communications between the Investigators and the witnesses in this case; (c) all Communications with employees of the Cook County State's Attorney's Office; (d) all Communications between or among any person within the Department; and (e) all Communications between any of the Investigators including Defendants DiFranco. This request also includes any such Communications that are not included in the Investigative File for the Jose Maysonet double murder investigation, the Jose Maysonet attempt murder investigation, or the investigative file for the investigation of the Wiley brothers' murder.

35. Any and all arrest reports for Efrain Cruz and Franscisco Veras for the period of time between May 25, 1990 and August 23, 1992, including but not limited to the arrest report for Efrain Cruz on June 9, 1990 for the charge of battery.

36. All arrest reports and/or arrest logs and/or custody logs and/or any document that memorializes all individuals arrested on May 24, 1990 and May 25, 1990 and taken to or detained at the 14th District of the Chicago Police Department located on Shakespeare Avenue, including but not limited to the following individuals: Franscico Veras, Efrain Cruz, an individual with the nickname Yoyo, an individual with the nickname Bean.

37. Any and all documents that reflect any investigative steps taken in connection with the Wiley brothers' murders.

38. Any and all documents prepared in connection with the Wiley brothers' murder investigation pertaining, relating to, or mentioning Franscico Veras, Efrain Cruz, and an individual by the nickname Black Jeffrey, including but not limited to any arrest reports, interview notes, line-up reports, GPRs, or notes of any kind.

13

39. Any and all documents prepared in connection with Case Number 90-CR-1905 relating to the arrest and/or prosecution of Efrain Cruz on January 3, 1990 for aggravated battery, armed robbery and armed violence, including but not limited to all police reports, collected evidence, lab reports, handwritten notes, crime scene photographs, photo arrays, mugshots, and photographs of the Plaintiff, suspects, persons of interests or other witnesses. The request specifically includes but is not limited to the complete Department Permanent Retention File and the complete Investigative File, Area File, Unit File, or Street File with respect to Efrain Cruz on January 3, 1990.

40. Any and all documents prepared in connection with the Santiago Sanchez, RD No. M-384373, including but not limited to all police reports, collected evidence, lab reports, handwritten notes, crime scene photographs, photo arrays, mugshots, and photographs of the Plaintiff, suspects, persons of interests or other witnesses. The request specifically includes but is not limited to the complete Department Permanent Retention File and the complete Investigative File, Area File, Unit File, or Street File with respect to Santiago Sanchez's arrest on August 25, 1989, RD No. M-384273

41. All Documents related to the firing or resignation of any Individual Defendant, including but not limited to any Communication to any Individual Defendant on the subject of firing or resignation.

42. All Documents, including all Communications, between any Individual Defendant or any employee, agent, or contractor of any of the Entity Defendants and any new media on the subject of Jose Maysonet, including but not limited to all video recorded interviews, audio recorded interviews, emails, articles, or written correspondence.

43. All Documents or evidence favorable to Jose Maysonet tending to show Jose Maysonet was not guilty of the Wiley brothers' murder, including any evidence that would tend

14

to undermine the credibility of any prosecution witness who testified during any of Jose Maysonet's criminal proceedings.

44. All Documents relating to any person who you now consider a suspect in the Wiley Brothers' homicide investigation.

45. All Documents obtained from third parties (including but not limited to Documents obtained via third party subpoena in this litigation), including but not limited to employment records, medical records, prison/jail records, or any other records that relate to this litigation or to the allegations in the Complaint.

46. All Documents obtained via FOIA or other means that relate to, support, or rebut any of the allegations or claims in Plaintiff's Complaint.

47. Any and all "demonstrative" aids or exhibits which may be used at trial of this cause.

48. All physical evidence relating to any of the allegations in Plaintiff's Complaint or Defendants' defenses thereto, including but not limited to photographs, inventoried evidence, laboratory evidence, diagrams, sketches, audio or video recordings.

49. All policies, procedures, general orders, special orders, directives, Standard Operating Procedures and/or employee manuals of the Chicago Police Department or any agency affiliate with CPD including policies on how to conduct a felony crime investigation and an investigation of possession with intent to distribute narcotics, as well as making an arrest; canvassing a crime scene; processing evidence; inventorying evidence; writing police reports; taking statements; conducting line-ups; and testifying in Court.

50. All Documents relating to any General Orders, Special Orders or other Department communication relating to: (a) disclosing evidence to the Cook County State's Attorney's Office; (b) memorializing information about a criminal investigation in police

15

documents, including but not limited to supplementary reports and General Progress Reports; (c) maintaining Street Files, personal files or personal notes; and (d) maintaining the Investigative File, Investigative File Case Folder and any associated inventories, logs or control cards.

51. All Documents relating to any training You received on any of the following topics: (a) disclosing evidence to the Cook County State's Attorney's Office; (b) memorializing information about a criminal investigation in police documents, including but not limited to supplementary reports and General Progress Reports; (c) maintaining Street Files, personal files or personal notes; (d) maintaining the Investigative File, Investigative File Case Folder and any associated inventories, logs, or control cards; (e) reporting requirements of Department officers who believe another officer has violated a General Order, Department policy, or state or federal law in the performance of that officer's law enforcement duties; (f) testifying in criminal or civil cases; (g) disclosing exculpatory Evidence to suspects, criminal defendants, or prosecutors.

52. Any documents that support a claim that You or any of the Defendant Officers acted inconsistently with any of the policies or practices of the City of Chicago or Chicago Police Department (formal or informal, written or unwritten) at any time during any event or circumstance described in Plaintiff's Complaint.

53. All Documents relating to your total financial net worth, including the following: (a) Your three most recent tax returns, both state and federal; (b) all documents relating to any assets in your possession with a value in excess of $2,500; (c) copies of all monthly statements for the period of January 2008 through the present for all bank accounts, retirement accounts, stocks, bonds, mutual funds, and/or securities in which you have any ownership interest; (d) copies of any insurance policies in which you are either the beneficiary or have any ownership interest; (e) a copy of the deed to your residence. If you do not own your home, please produce a copy of a current lease; (f) a copy of the title to your automobiles, as well as a copy of all

documentation relating to financing, ownership, and any equity you may have in said automobiles; (g) all documents relating to any ownership interest in any real estate, including copies of any deeds or titles; (h) a copy of your last four pay stubs relating to any employment in which you are engaged, including the Chicago Police Department; (i) all documents relating to any mortgage applications signed by you in the past three years.

54. All Documents that support or rebut a defense by You in this litigation that an award of punitive damages would cause financial hardship.

55. Any and all Documents relating to any psychological testing or screening by any kind performed on each Defendant Officer (a) before You were hired by the Department; and (b) during Your employment with the Department

56. All physical evidence relating to any of the allegations in Plaintiff's Complaint or Defendants' defenses thereto.

57. All Documents relating to any Rule 26 expert witness retained by Defendants in this matter, including but not limited to: (a) all Communication to/from said expert(s) which are not otherwise protected as work product under Rule 26; (b) all Documents provided to and relied upon by said expert(s); (c) all notes, reports, and analysis by said expert(s); (d) all bills or statements of the hours and compensation paid to or billed by the witness for work on this matter; and (e) any transcripts of prior testimony or Rule 26 reports of said expert(s). To the extent responsive Documents become available as the litigation proceeds, please seasonably supplement Your Responses.

58. All Documents, including all Communications, between You and news media on the subject of Plaintiff or any event described in Plaintiff's Complaint, including but not limited to all video-recorded interviews, audio-recorded interviews, emails, articles, or written correspondence.

17

59. All Documents that constitute records, logs, or inventories of physical evidence relating to any of the allegations in Plaintiff's Complaint or Your defenses to Plaintiff's Complaint, including but not limited to records, logs, or inventories of any physical evidence collected from Plaintiff.

60. All Documents which support a contention by You in this litigation that reasonable suspicion or probable cause existed to stop, investigate, question, or arrest Plaintiff on July 15, 1990, August 1, 1990, and/or August 22, 1990 or that Plaintiff had committed any illegal act in relation to the events described in Plaintiff's Complaint.

61. All Documents produced by, sent to, or received from the Cook County State's Attorney's Office relating to the events described in Plaintiff's Complaint.

62. Documents sufficient to show all cell phone numbers and providers used by You, and each of your immediate supervisors, at any time between May 20, 1990 and the present day. This request specifically includes both work-issued and personal cell phone numbers and providers.

63. All Documents relating to all 404(b) witnesses listed in the complaint.

Dated: December 21, 2018
      New York, New York

*Attorneys for Plaintiff*

/s/JENNIFER BONJEAN
/s/ASHLEY COHEN
Bonjean Law Group, PLLC
1000 Dean St., Ste. 422
Brooklyn, New York 11238
718-875-1850

/s/ STEVE GREENBERG
53 W. Jackson Blvd., Ste. 1260
Chicago, IL 60604
312-399-2711