# Exhibit H

IN THE MATTER OF THE ARBITRATION )
                                 )    GRIEVANTS: DELANTY, HAYES,
                 BETWEEN         )    ZINN, HAYNES and GEERS
                                 )
CITY OF CHICAGO                  )    GRIEVANCE #s. 146-96-003;
                                 )    146-96-004; 146-96-002;
                 AND             )    011-96-014; 021-96-005
                                 )
FRATERNAL ORDER OF POLICE,       )
LODGE NO. 7                      )

1.  Hearings in this matter were held on September 16,
    October 16, and December 9, 1997, at the offices of Lodge
    Counsel, 200 West Adams Street, Chicago, Illinois.  The
    Lodge was represented by Mr. Louis E. Sigman and Mr.
    Peter A. Milianti of the firm of Baum, Sigman, Auerbach,
    Pierson & Neuman, Ltd.; the City by Ms. Gia L. Morris,
    Assistant Corporation Counsel.

2.  The Arbitrator was supplied with a stenographic
    transcript of the proceedings.  Briefs of the parties
    were received on or about March 2, 1998.

CHICAGO POLICE DEPT.
33 MAR 1998 · 07 13
MANAGEMENT & LABOR
AFFAIRS SECTION

CHICAGO POLICE DEPT.
-2 APR 1998   07 16
MANAGEMENT & LABOR
AFFAIRS SECTION

RFC-Maysonet 048266

## OPINION AND AWARD OF THE ARBITRATOR

### BACKGROUND FACTS

The parties have been engaged in collective bargaining since 1983. Its most recent collective bargaining agreement was ratified in September, 1996, retroactive to July 1, 1995; (hereafter the "Contract"). Before me are five grievances. Four grievances were filed by Officers John Delanty, Ruth C. Zinn, James T. Geers and Jeanette Hayes, and challenge Counselling Session Reports received by them, as disciplinary in nature and issued without just cause in violation of Section 8.1 of the Contract. The grievance of Officer Mary Haynes claims that she was placed in the Personnel Concerns Program without just cause in violation of Section 8.1.

The testimony by Department officials regarding the history and background of counseling sessions is undisputed, and is summarized as follows:

Since 1973, the Department has conducted counseling sessions as a management tool to counsel officers concerning their work performance. Likewise, some form of counseling session report has been traditionally utilized to memorialize discussions between a supervisor and a subordinate regarding work-related performance. Counseling and the issuance of a counseling session report has always been at the discretion of each individual supervisor.

-2-

Counseling session reports are never made part of an officer's disciplinary record.

Counseling session reports can be issued for any number of performance related issues, however, the most common cause for the issuance of a report involves attendance. The Department has an interest in monitoring the attendance habits of its officers, including their use of the medical roll. Not only is it important for officers to be present to perform their work, but the Department has determined that continual use of the medical roll can be an indicator of other more serious problems such as drug abuse or severe stress. In addition, absenteeism is of particular concern to specialized units within the Department because they are smaller and there is an obvious need to maintain staffing levels.

The Department has established a policy based on a survey of non-IOD medical usage of sworn personnel below the rank of Sergeant that provides for automatic counseling any officer who has five instances. In 1996, the Department conducted a survey that determined that only 8% of sworn personnel below the rank of Sergeant used the medical roll five or more times for non-injury on duty ("non-IOD") illnesses or injuries. Based on this information, the Department established, and codified in General Order 83-3, a standard operating procedure that makes an officer automatically subject to consideration for the Behavior Alert program after five non-IOD medical absences. However, up until five non-IOD medical

-3-

RFC-Maysonet 048268

absences, it is left up to the discretion of the unit commanders to determine whether or not an officer's use of the medical roll warrants a counseling session. Historically, unit commanders always have had the discretion to decide whether or not to review an officer's medical roll usage over a one or five year period or even the total length of time the officer has been on the force. However, five medical absences in a twelve month period is generally the time period reviewed. After reviewing the unit time records, the decision to conduct a counseling session generally depends on such factors as the unit's specialty and its operational and staffing needs.

In 1994, the year preceding the start of the contract negotiations of the new contract, the Department created a counseling session report form to be used Department-wide, a copy of which is set forth below. This "generic" Department-wide counseling form was designed to cover not only medical roll usage, but all different behaviors and performance deficiencies. In accordance with counseling procedures, a counseling session report will remain in the officer's Unit file for a period of one year unless the officer receives two additional counseling session reports within that twelve month period. However, if an officer receives three counseling session reports within a 12 month period, the officer's file will be forwarded to the Personnel Concerns Manager for a determination of whether or not the officer should be placed in either the Behavior Alert or Personnel Concerns programs.

-4-

RFC-Maysonet 048269

The four grievants challenging the Counseling Service Reports issued to them are long term officers with good records, Delanty 25 years; Zinn 11 years; Hayes 18 years; Haynes 8 years and Geers 20 years. The facts in each case are essentially uncontroverted and similar. All had availed themselves of medical leave for various ailments, not questioned by the City. Three officers were called into the office by Sergeant Bleke, Officer Geers was called in by Sergeant Giles. They were handed a counseling session report and asked to make a response. In all cases the counseling session report was in the following form:

RFC-Maysonet 048270

Brief Synopsis of the problem behavior:


A brief synopsis of the member's response and/or comments are herewith indicated:


Witness(es):

The above-named member was counseled relative to the above-referenced irregularity/deficiency and advised that continued infractions will result in lowered Performance Ratings and/or recommendations for stern disciplinary measures in the future.

A brief synopsis of the member's response and/or comments are herewith indicated:


____ Check here if To-From-Subject is submitted by counseled member.


Acknowledged:_____
                          Signature of Member Counseled


Submitted by:_____
                          Signature of Counseling
                          Supervisor


Reviewed by:_____
                          District Unit Commander

Approved:_____
              Watch Commander  Star #

NOTE:   Completed <u>Counseling Session Reports</u> are to be held in Unit file until the cumulative number totals three (3) in one year.  Once the member has been counseled three (3) times <u>within a one-year period</u>, forward all Counseling Session Reports [CPD 11.66 (5/94)], to: Personnel Concerns Program Manager, Personnel Division, for consideration of member's placement into either the Behavioral Alert System or Personnel Concerns Program.


-6-

RFC-Maysonet 048271

On October 21, 1996, Sergeant Bleke handed Officer Delanty a Counseling Session Report stating that Officer Delanty "may have a pattern of medical abuse during the past five years," and instructed Officer Delanty to read the document and inform him of his response so he could record it on the document. Officer Delanty testified that after reading the report, he was concerned because the document states that he could be subject to stern disciplinary measures and lowered performance ratings. His response was that he "only uses the medical roll when he is sick." When Officer Delanty asked Sergeant Bleke what documentation he was relying on to justify the issuance of the Counseling Session Report, Sergeant Bleke stated that there was no documentation for Officer Delanty to review. Delanty testified that the Counseling Session Report was given to him in a non-confidential manner and anyone walking past Officer Delanty and Sergeant Bleke could freely hear and observe what was transpiring.

On October 31, 1996, Officer Zinn was issued a Counseling Session Report by Sergeant Bleke. The report stated that Officer Zinn "may have a pattern of medical abuse during the past five years." Officer Galey was also present and close enough to hear what transpired during the session. Officer Zinn refused to sign the form claiming that she had not abused the medical roll and that she felt the session was unjust. Officer Zinn testified that when she received the Counseling Session Report, Sergeant Bleke did not tell her what constituted a pattern of medical abuse or if there

-7-

RFC-Maysonet 048272

are a number of medical day usages that triggers being given the report. She further testified that after receiving the Counseling Session Report, she had been treated differently by her co-workers.

Officer Hayes testified that Sergeant Bleke called her into his office on October 31st, 1996 and issued her the Counseling Session Report in the presence of two other officers. The report stated that Officer Hayes has "a pattern of medical abuse during the past five years." Prior to receiving this Counseling Session Report, Officer Hayes had never been accused of abusing the medical roll. She read the form, signed it, and informed Sergeant Bleke that she would grieve the matter. Her response to the Report was that she "has never been on the medical unless she was ill." Sergeant Bleke did not provide her with any documentation or material indicating how he determined she abused the medical roll. Officer Hayes further testified that after receiving the Report, other officers began teasing her and calling her a "medical roll abuser," and that these comments upset her because she has always followed the Department rules and regulations concerning use of the medical roll.

Officer Geers testified that on August 11, 1996 Sergeant Earl Giles issued him a Counseling Session Report stating that he has "five Medical usage incidents during the period of 1 Aug., 1995/31 July 96." Sergeant Giles handed Officer Geers the counseling form, instructed him to read it, and informed him that

-8-

he needed to make a response. Other officers and desk personnel were present.

Officer Geers further testified that when he received the report, he paid particular attention to the paragraph on the form which states "that continued infractions will result in lowered Performance Ratings and/or recommendations for stern disciplinary measures in the future" and that he felt that he did not do anything to warrant this type of warning. Officer Geers' response to receiving the Counseling session form was recorded by Sergeant Giles, as follows:

> Member takes issue with being counseled for something that is entitled him in the contract and further states that since he has met all the requirements for utilizing this right (ex: Doctors letters, etc.) feels that to be disciplined is a violation of the contract. Member states that the reasons for medical usage is inaccurate.

The testimony of the grievants was undisputed. The grievants admit that following the issuance of the Counseling Session Reports none of them were reprimanded, suspended from active duty, demoted or subjected to loss of salary. None of the grievants' performance evaluation ratings were lowered, nor were any of the grievants denied the opportunity to take advantage of the medical roll as provided in Article 18 of the Contract.

-9-

RFC-Maysonet 048274

Dr. Friedman, a qualified psychologist, testified on behalf of the Lodge, (1) "counseling" is usually performed by a mental health professional whose objective is to guide or direct an individual who has a life or employment adjustment difficulty; (2) "Counseling" requires direct guidance designed to remediate an individual's problems and is usually conducted in a private setting to protect the privacy of the matter and the dignity of the individuals involved; and (3) While a "counselor" is supposed to act as an advocate for the "counselee," The Counseling Session Report form used by the Department with relation to the grievants itself was punitive in nature and did not have the appearance of a counselor-counselee relationship. The City requested that this testimony be stricken as going to the ultimate issues to be decided by the arbitrator. Acknowledging that the objection had merit the arbitrator let the testimony stand.

We turn to the grievance of Officer Mary Haynes. Her grievance claims that the City violated Section 8.1 and "related article by placing her in the Personnel Concerns Program without just cause."

Officer Haynes was initially placed in the Behavior Alert program on or around July 28, 1994 in accordance with General Order 83-3 after she received multiple summary punishments for failing to appear in court on the designated dates and times as required. Subsequently, she was placed in the Personnel Concerns program

-10-

RFC-Maysonet 048275

after she sustained additional court deviations. Officer Haynes incurred at least one more court deviation after she had been placed in Personnel Concerns. While in Personnel Concerns, Sgt. George Gottlieb, was assigned as one of Officer Haynes' Field Supervisors. In accordance with General Order 83-3, Sgt. Gottlieb was generally responsible for monitoring Haynes with respect to her court dates and submitting monthly progress reports to the Personnel Concerns Manager.

Haynes remained in the Personnel Concerns program until she was released on or about March 17, 1997.

Officer Haynes testified that she was removed from the Personnel Concerns Program in June 1955. This claim is based on a telephone conversation she had with Sergeant Woods, as follows:

> Q. How did you find out that you were removed from the Personnel Concerns Program?
>
> A. I called Sergeant Woods.
>
> Q. What did he say to you?
>
> A. I said -- okay, he said that this is your -- usually in the program for a year. You don't have any problems. And I said no. He said, well okay its been a year. I -- no, he said it's been a year. So I said fine, so I thought I was out of it.

Based on grievant's understanding that she was removed from the program she claims she was unfairly kept in the program after an

RFC-Maysonet 048276

alleged argument with Sergeant Ognogua. Officer Haynes received her 7th Deviation in July 6th, a month before her claimed argument with Sgt. Ognogua. It is undisputed that only the Personnel Concerns manager has authority to recommend how long an officer remain in the program. While in the program, grievant was not removed from active duty, demoted or subjected to a loss of pay. With permission, grievant was allowed to work secondary employment in accordance with General Order 83-3. Other than her knowledge of being placed in the program and her requirement to respond to a supervisor's occasional inquiries regarding her court appearances, grievant did not encounter any disruption to her daily police duties.

General Order 83-3 (1983) sets forth the policies and procedures for the Behavior Alert or Personnel Concerns Program. The testimony of Department officials elicited the following facts.

The purpose of the Behavior Alert program is set forth as follows:

1.    identify Department members whose behavior indicates that future disciplinary or performance problems may result unless corrective action is taken.

2.    assist command/supervisory personnel in developing and implementing strategies for corrective action.

-12-

RFC-Maysonet 048277

3. Standardize a system for documenting and maintaining records of corrective action taken.

General Order 83-3 provides that the Department's Director of Personnel has the final authority to decide whether an individual should be placed in either program. Similarly, only the Director of Personnel, upon the recommendation of the Behavior Alert/Personnel Concerns Manager, has the authority to release an officer from either program. Generally, placement into the Personnel Concerns program involves deficiencies such as substance abuse, excessive force or receiving multiple sustained summary punishments within a 12 month period.

When an officer is placed in the Personnel Concerns program, he is not suspended, removed from active duty, demoted or subject to a loss of pay. In addition, prior to placement in the Personnel Concerns program, the Officer is notified and advised of the Department's reasons for placing him in the program. In accordance with General Order 83-3, monitoring of officers placed in Personnel Concerns is the responsibility of Field Supervisors. The manner and intensity in which an officer's behavior is monitored varies according to several factors, such as the reason for placement in the program and the needs of the individual officer. Although the release of an officer from the program is reviewed after 12 months, the actual length of time an officer remains in either program is determined by the Behavior

-13-

Alert/Personnel. Concerns Manager and the Director of Personnel based on the individual officer's progress.

The parties' current contract was ratified in September of 1996. Contract negotiations began in approximately June of 1995, shortly after the expiration of the parties' previous contract. During contract negotiations in June of 1995, the Union proposed that the City be required to meet the contract's disciplinary just cause standard before it placed an officer in either the Department's Behavior Alert or Personnel Concerns Programs. The City rejected this proposal.

## CONTRACT PROVISIONS CITED BY THE PARTIES

### ARTICLE 8 - EMPLOYMENT SECURITY

#### Section 8.1  Just Cause Standard.

No officer covered by this Agreement shall be suspended, relieved from duty or disciplined in any manner without just cause.

#### Section 8.2  File Inspection

The Employer's personnel files, disciplinary history files and completed inactive investigative files, except for information which the Employer deems to be confidential, shall be open and available for inspection by the affected officer during regular business hours.

-14-

Section 8.3    Limitation on Use of File Material.

It is agreed that any material and/or matter not available for inspection, such as provided in Section 8.2 above, shall not be used in any manner or any forum adverse to the officer's interests.


## ARTICLE 4 - MANAGEMENT RIGHTS

Inherent managerial functions, prerogatives and policymaking rights, whether listed above or not, which the Employer has not expressly restricted by a specific provision of this Agreement are not in any way, directly or indirectly subject to the grievance and arbitration procedures contained herein, provided that no right is exercised contrary to or inconsistent with other terms of this Agreement.


## ARTICLE 10

### NON-DISCRIMINATION

Section 10.2 - Non-Discrimination.

The Employer shall not discriminate against officers, and employment-related decisions will be based on qualifications and predicted performance in a given position without regard to race, color, sex, religion, age (40-63), or national origin of the officer nor shall the Employer discriminate against officers as a result of membership in the Lodge. Nothing contained in this Agreement shall be deemed to preclude the mandatory retirement of any officer shall not be transferred, assigned or reassigned for reasons prohibited by this Section 10.2.

-15-

RFC-Maysonet 048280

Article 18, Section 18.1 - IOD

Any officer absent from work on account of injury on duty (IOD) for any period of time not exceeding twelve (12) months shall receive for each such IOD full pay and benefits for the period of the absence, provided such injury or illness is certified by the Department's physician. Such certification shall not be unreasonably withheld.

Article 18, Section 18.2 - Non-IOD

Any officer absent from work on account of non-IOD, injury or illness for any period of time not exceeding twelve (12) months in any twenty-four (24) consecutive month period, shall receive full pay and benefits for the period of the absence, provided such injury or illness is certified by the Department's physician. Such certification shall not be unreasonably withheld.

Article 18, Section 18.5 - Certification

Certification that an officer has been injured in the line of duty shall not be unreasonable withheld.

## ARTICLE 32

### COMPLETE AGREEMENT

The parties acknowledge that during the negotiations which preceded this Agreement, each had the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law from the area of collective bargaining. The understandings and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this

-16-

RFC-Maysonet 048281

Agreement. Except as may be stated in this Agreement, each party voluntarily and unqualifiedly waives the right, and each agrees that the other shall not be obligated to bargain collectively with respect to any subject or matte referred to, or covered in this Agreement or with respect to any subject or matter not specifically referred to or covered in this Agreement, even though such subjects or matters may not have been within the knowledge or contemplation of either or both of the parties at the time they negotiated and signed this Agreement.

### ISSUES

1. Did the City violate Section 8.1 of the Collective Agreement when it placed Officer Haynes in its Personnel Concerns Program?

2. Did the City violate Sections 8.1, 8.3, 10.2 and 18.2 of the Collective Agreement when it counseled and issued counseling session reports to Officers Zinn, Delanty, Hayes and Geers? If so, what is the appropriate remedy?

### DISCUSSION

After consideration of the entire record and the briefs of the parties, for the reasons set forth below I have concluded that the grievance of Officer Haynes must be denied and that the grievances of Officers Zinn, Delanty, Hayes and Geers must be sustained.

RFC-Maysonet 048282

I   THE HAYNES GRIEVANCE

This grievance seeks to apply the just cause provision of the agreement Section 8.1 to the Personnel Concerns Program of the Department. The program was established by the department as General Order 83.3 in 1983. The order creates the Behavior Alerts and Personnel Concerns Programs. The thrust of the order is to establish a benign alternative to the use of discipline. The purpose of the Behavior Alerts Program is to identify officers whose behavior indicates possible further disciplinary or performance problems unless corrective action is taken, and the Personnel Concerns Program is established as an alternative when members have not responded to routine corrective action.

The Department's position from the beginning has been that the program is not disciplinary and accordingly the just cause standard was inapplicable. It is undisputed that during contract negotiations for the current contract the Union proposed that the just cause standard be met before an officer was placed in the Behavior Alert or Personnel Concerns Program. This proposal was rejected and did not become part of the agreement.

This grievance is the first attempt by the Union to apply the just cause standard to the Department's administration of the Behavior Alert and Personnel Concerns Program. It is an attempt to

-18-

RFC-Maysonet 048283

accomplish by the grievance procedure what could not be gained at the bargaining table. The Personnel Concerns Program has been in effect for more than ten years. It has been a clearly defined program. By reason of its use over time it meets the test of a past practice binding on the Lodge.

The problem which brought Officer Haynes into the Personnel Concerns Program was failure to appear in court in connection with her duties as police officer. It was only after she received five summary punishments for failure to appear in court, not challenged by her as was her right under Section 7.2 of the Agreement, that was she placed in the Behavior Alert Program. After continuing to receive more court deviations she was placed in the Personnel Concerns Program on or about June 27, 1994. Although Officer Haynes testified that she believed her placement in Personnel Concerns was unwarranted she acknowledged that her repeated court deviations were grounds for termination.

The Union claims that Officer Haynes was informed in June 1995 that she had been removed from the Personnel Concerns Program and that she was returned to the Personnel Concerns Program in August of 1996, immediately following an argument with Lt. Ognogua about performance grades.

Whether Officer Haynes was removed from the Personnel Concerns Program in June 1995 is an issue of fact. Officer Haynes

-19-

RFC-Maysonet 048284

came away from a telephone conversation with Sergeant Woods with the impression that she had been removed. She testified that "she thought she was out of it" because Sergeant Woods said that the program was usually for one year and that he acknowledged a year went by. She did not claim that Sergeant Woods stated that she had been released from the program. General Order 83.3 provides that an officer's release requires the approval of the Director of Personnel upon the recommendation of the Personnel Concerns Manager. The written notification indicating Officer Haynes was released was not issued until March, 1997.

The Union's assertion that grievant was unfairly kept in the program because of an argument with Sergeant Ognogua is not supported by the record. The City points out that Officer Haynes received her seventh court deviation in July 1996, a month before the claimed argument and it is likely that she was kept in the program because of her continued deficiencies.

Implied in the Union's argument is the contention that placing the grievant in the Personnel Concerns Program was in any event, an unreasonable exercise of a management prerogative. I find no basis for the contention. Grievant had a serious problem relating to her court duties. Despite many infractions she was not dismissed, and over the course of time while in the Personnel Concerns Program the problem was corrected. She suffered no loss from being placed in the Personnel Concerns Program. Her placement

RFC-Maysonet 048285

in Personnel Concerns is not part of her disciplinary history. Under General Order 83.3 files are maintained for only one year. She was not demoted, removed from active duty or subject to loss of salary.

There is no merit to the grievance.

## II  The Counselling Session Grievances

It is undisputed that the Department has customarily conducted counseling sessions since 1973, and there is no claim by the Lodge that it was unaware of this practice. Given these circumstances I find that the Department's counseling practice is a past practice binding on the Lodge.

The Lodge relies on the language of Article 4 of the contract, the management rights claims which provides that no management right can be exercised contrary to or inconsistent with other terms of the Contract.

The Lodge claims that the Department in counseling the grievants did so contrary to the provisions of Article 18, Section 18.2, which entitle officers to use 365 days of non-IOD absences in any 24 consecutive month period.

Each of the Counseling Session Reports issued by Sergeant Bleke stated that the officer "may have a pattern of medical abuse

-21-

RFC-Maysonet 048286

during the past five years," and Sergeant Giles referred to five medical usage incidents during a period of 18 months.

The Lodge directs most of its attack on the counseling afforded grievants' to the Counseling Session Reports used in connection with the counseling of grievants. Specific attention is drawn to the statement.

> The above-named member was counselled relative to the above-reference irregularity/deficiency and advised that continued infractions will result in lowered Performance Ratings and/or recommendation for stern disciplinary measures in the future.

And to the Note added to the form:

> NOTE: Completed <u>Counseling Session Reports</u> are to be held in Unit file until the cumulative number totals three (3) in one year. Once the member has been counseled three (3) times <u>within a one-year period</u>, forward all Counseling Session Reports [CPD 11.66 (5/94)], to: Personnel Concerns Program Manager, Personnel Division, for consideration of member's placement into either the Behavioral Alert System or Personnel Concerns Program.

The Department stipulated that it does not claim that any of the grievants obtained medical leave improperly or that there was any factual basis for a claim of medical abuse by any of them. (Tr. 150, 2nd Session).

-22-

RFC-Maysonet 048287

The Department contends that since the form used was initiated in 1994 a past practice has been established binding the Lodge. This contention is wholly without merit. The grievance was filed in 1996. The Department is unable to establish that the forms have been in effect long enough to meet the standard criteria for the establishment of a past practice.

The record is clear that the three grievants supervised by Sergeant Bleke were told that the grievants "may have a pattern of abuse." We know from the Department's stipulation that in the case of each grievant medical leave was due to the grievants and that the medical leave was used properly. Accordingly, the grievants were charged with possible medical abuse without any basis for the accusation. This charge is coupled with language in the form advising the grievants that continued infractions will result in lowered Performance Ratings and a recommendation for stern disciplinary measures in the future. The note to the form suggests the possibility of grievants being place in the Behavioral Alert System or Personnel Concerns Program.

The Lodge makes the point that the use of the word "abuse" implies discipline. It points to the testimony of Lieutenant William Powers, the Commanding Officer of the Personnel Investigations section of the Personnel Division and former supervising Sergeant of the Behavior Alert/Personnel Concerns Program. In response to a question from Counsel for the Department

-23-

RFC-Maysonet 048288

to explain the difference between medical abuse and counseling, Lieutenant Powers stated (Tr. 373-374):

> ...when we train the sergeants, when we do the Personnel concerns supervisory training, when I have trained supervisors through Northwestern, the word abuse is not to be used. You know, somebody may think it, somebody may feel it, but you are in a session with somebody talking about the medical, you don't use the word "abuse." Abuse implies discipline. It implies the person wasn't sick. It implies the fact they violated medical procedures. Even if there was -- it's not a word that we teach to be used in the counseling session.

The Department seeks to justify the use of the medical rolls in this case by a Department wide survey to establish a pattern of normal medical roll usage for sworn personnel. The survey determined that only 8% of such personnel used the medical roll five or more times.

It determined that it is not reasonable to set five as an arbitrary number before a supervisor can discuss an officer's absences because the factors used to determine whether or not such a discussion is warranted varies for each unit, and that the Department has always allowed the unit commander to weigh such factors as the number of absences over a given length of time against the unit's individual operational needs.

-24-

RFC-Maysonet 048289

It is true that the Department has a vital concern in maintaining a staffing pattern to carry out all of its functions, and accordingly may consider the attendance of its employees and absences, including medical leave, excused or otherwise. But the method used here was heavy-handed and violated grievants' rights.

In these cases there was no counselling as that term is generally understood. The grievants were handed the Counseling Session Reports by their supervisors, instructed to read it, make a response, and to sign the report acknowledging the report. There is also some evidence to support several of the grievants' contention that confidentiality was not observed.

The Lodge contends that the whole process was disciplinary and that accordingly the City had the burden of establishing just cause under Section 8.1. The fact is that none of the grievants were suspended, demoted, removed from active duty, denied access to their personal or medical records, denied use of the roll or subjected to loss of salary or a lowering of their performance rating. Indeed, the crucial fact is that the Counseling Session Reports are not made a part of the disciplinary files. I find that there is no basis for application of the just cause standard in this case.

There is clear merit, however, to the grievances. The Department in the exercise of its management prerogatives may not

RFC-Maysonet 048290

do so in violation of other provisions of the contract. Here the Department by charging possible abuse of the medical rolls when indeed there was no abuse, violated Article 18.2 of the contract. Given this fact its exercise of the management prerogative to conduct the counseling sessions here challenged was unreasonable, arbitrary and unfair. At a minimum the action of the Department lowered the self-esteem of the grievants, and in several cases because of the failure to observe confidentiality, subjected grievants to embarrassment and shame. Given this conclusion I sustain the grievance. The Counseling Session Reports of Officers Delanty, Hayes, Zinn and Geers should be expunged from the record.

## AWARD

1. The grievance of Officer Haynes is denied.

2. The grievance of Officers Delanty, Hayes, Zinn and Geers are sustained. The Department is directed to expunge their Counseling Session Reports from the record.

3. The Employer and the Lodge shall share equal responsibility for the arbitrator's fees and expense.

_____
Alex Elson - Arbitrator

ENTERED AT
CHICAGO, ILLINOIS
this __27th__ day of

__March_____, 1998.

awards\5 grievants

RFC-Maysonet 048291