# Exhibit F

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| John Velez, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 18 CV 8144 |
| v. ) | |
| ) | |
| Thomas J. Dart, et. al. ) | |
| ) | |
| Defendants. ) | |

**COOK COUNTY PUBLIC DEFENDER'S**
**REPLY IN SUPPORT OF MOTION TO QUASH SUBPOENA**

NOW COMES the Hon. Sharone R. Mitchell, Jr., Public Defender of Cook County, and in further support of his motion to quash the Plaintiff's subpoena directed to his office, states as follows:

**The Subpoena Is Overly Burdensome**

In Plaintiff's Response to the CCPD's motion to quash, Plaintiff minimizes the effort required of the CCPD to comply with the subpoena issued in this case - and in other cases in which similar subpoenas have been issued. The CCPD already described in its motion to quash the great deal of time and effort which has been expended by the CCPD so as to comply with the similar Reyes Subpoena. An even greater amount of time and effort would have to be expended in this case to comply with the subpoena at issue as it is requests twice as many files as does the Reyes Subpoena.

Not only would the CCPD have to spend many hours looking for box numbers, and many more hours looking for the boxes themselves in the warehouse, it would then have to spend additional hours with movers directing those movers to position those boxes in an area where the boxes could be scanned.

.

1

For example, in the *Reyes* case, it took the two staff members, who had to also continue to perform their normal duties, months to locate the box numbers for the hundreds of files requested by Loevy and Loevy. These support staff members do not usually keep track of the hours they spend on each task and thus cannot give a precise number of hours spent. But the fact that they do not record how each of their hours is spent should not be a reason to dismiss the great deal of time they spent.

After CCPD staff identified the box numbers, the CCPD's sole warehouse employee then began the process of determining how many of the identified boxes could be located within the warehouse. Despite spending over 100 hours over a series of weeks trying to complete this project in addition to his usual duties, the warehouse employee was not able to accomplish this task on his own.[1] Therefore, after the *Reyes* court ordered the CCPD to identify within a week how many boxes could be located, a team of eleven members of CCPD management, including the Public Defender himself and his First Assistant, spent a day at the warehouse in order to complete the task of tagging boxes which could be located.[2] The court then ordered the CCPD to produce 132 of the files located in response to the Reyes Subpoena.

On Wednesday, August 25, 2021, three moving company employees, four attorneys,[3] and one support staff member, worked on the project of moving the previously tagged boxes to the staging area. Despite the fact that there were eight people working on this project, it took five hours to complete. This is exactly the type of work that Plaintiff glosses over and minimizes. And the scanning of the files at the warehouse, which needs to be supervised by CCPD employees at the CCPD warehouse, has not yet even begun. A manager from the scanning company who visited the site and viewed the boxes estimated the scanning could take four weeks to complete.

---

[1] This warehouse employee is now on a medical leave, the length of which is undetermined.
[2] This work had to be completed during the summer in a warehouse which is not air-conditioned.
[3] The CCPD acknowledges that two of the attorneys were Defendants' attorneys and was one was a Plaintiffs' attorney. All three assisted and worked diligently to help complete the project despite the reported 105 degree heat index on that day.

This entire process has been and continues to be extremely time-consuming and costly for the CCPD in terms of staff hours. If this Court were to require the CCPD to also comply with the Velez Subpoena, it would place a doubly undue burden on the CCPD.

Complying with the Velez Subpoena would force the CCPD to take all the steps described above for hundreds of additional files. Plus it would require the CCPD to remove or redact privileged documents from all of these files. The CCPD contends that removing or redacting privileged documents cannot properly be outsourced by the CCPD. Even if the CCPD were to consent to using contract attorneys, the CCPD would still need to vet those attorneys for any possible conflicts, train and supervise those attorneys, possibly provide them with computers and appropriate software for performing digital privilege document reviews, and then review their work. The CCPD cannot be expected to quantify how many hours this will take as it has never used contract attorneys for this purpose in the past.

Here, the CCPD is a non-party, and it requests that this Court give it the protections Rule 45 affords. The CCPD asks that the subpoena be quashed. Further, the burden of complying with the subpoena exceeds the benefit of production of the material sought by the subpoena.

**The Burden of Compliance Exceeds the Benefit of Production**

As the CCPD argued in its opening motion, this Court should also examine whether the benefit of production outweighs the monumental effort required to produce hundreds of files, and this Court should question the underlying assumption, adopted in other cases, that if a report is not found in the CCPD's file, that report must not have been given to the CCPD.

The CCPD believes that the subpoena should be quashed simply because it is overwhelmingly burdensome. But if this Court does not elect to simply quash the subpoena outright, the CCPD suggests that this Court should defer ruling on this motion until the parties and this Court have had an opportunity to explore whether the massive amount of work demanded by this subpoena would really lead to

probative competent evidence. The undersigned has already received a subpoena from the City of Chicago's attorneys which indicates they intend to pursue this question. (See Exhibit A.)

Plaintiff's attorneys have at times belittled the CCPD's record-keeping practices,[4] but at the same time, they apparently intend to rely on those very records to prove their case. The CCPD acknowledges that when its attorneys were creating and maintaining files in the 1990's, those attorneys would not have been carefully maintaining the content of those files for the benefit of civil litigants, who might want to search through their closed files thirty years later. Before ordering the CCPD to produce hundreds of these files, it is proper to examine the relevance of those files.

**Conclusion**

The Plaintiff's subpoena to the CCPD is overly burdensome and should be quashed. Further, the value of requiring that such a massive effort be expended by a non-party should be closely examined.

Respectfully submitted,

Sharone R. Mitchell, Jr
Public Defender of Cook County
/s/Karen J. Dimond
By: Karen J. Dimond
Deputy Public Defender
69 West Washington, Suite 1600
Chicago, Illinois 60602
(312)603-0712
Karen.dimond@cookcountyil.gov
3126059

---

[4] See p. 7 of Plaintiff's Response, referring to the "CCPD's inability to identify [certain] files up front, due to its own record-keeping practices..."

4

## Certificate of Service

    I, Karen Dimond, hereby certify that on August 30, 2021, I e-filed a copy of the above COOK COUNTY PUBLIC DEFENDER'S REPLY IN SUPPORT OF MOTION TO QUASH SUBPOENA and that all counsel of record will thereby receive a copy of it.

                                                 */s/Karen J. Dimond*

Case: 1:18-cv-02484 Document #: 366 Filed: 07/15/24 Page 5 of 5 PageID #:5503