IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSE JUAN MAYSONET, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No.: 18 cv 02342 |
| | ) | District Judge Mary M. Rowland |
| REYNALDO GUEVARA, et al., | ) | Magistrate Judge Keri L. Holleb Hotaling |
| | ) | |
| Defendants. | ) | |

**DEFENDANT REYNALDO GUEVARA'S MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

Plaintiff brings claims against Defendant Guevara as well as five other former Chicago Police Officers (JOANN HALVORSEN as SPECIAL REPRESENTATIVE for the Estate of ERNEST HALVORSEN ("Halvorsen"), EDWARD MINGEY ("Mingey"), LEE EPPLEN ("Epplen"), FERNANDO MONTILLA ("Montilla"), and ROLAND PAULNITSKY)("Paulnitsky") and a former Cook County Assistant State's Attorney, Frank DiFranco ("ASA DiFranco").

This case arises from Plaintiff's, Juan Jose Maysonet, Jr. ("Plaintiff"), prosecution for the May 25, 1990, murders of Torrence and Kevin Wiley ("the Wiley brothers"). Plaintiff first appeared on the radar of the police relative to this incident when he got arrested on July 15, 1990 for an unrelated shooting occurring on July 3, 1990. Dckt. No. 136 at ¶¶ 47-51. The weapon used was the same type of weapon used in the Wiley brothers' murder. Plaintiff claims that Mingey and Montilla spoke to him about the Wiley brothers' murder while he was in custody for this other incident. *Id.* at ¶ 49. According to Mingey and Montilla, Plaintiff admitted having knowledge of the murders and stated that, on the night of the murders, three of his fellow Latin King gang members arrived at his home and retrieved a 9mm handgun that Plaintiff was holding. *See* Co-Def.'s Stat. Mat. Facts ("SOF") at ¶¶ 44-47.[1] According to these Defendants, Plaintiff stated that he "assumed" his fellow gang members then committed the murders. *Id.* Plaintiff declined to identify these gang members. *Id.* There is no evidence that Guevara was present for this interaction nor any evidence that Guevara was involved in the investigation of the Wiley brothers murder at this stage.

Plaintiff was later charged with attempted murder arising from the July 3rd shooting and transferred to Cook County Jail. Dckt. No. 136 at ¶ 52. On August 1, 1990, Plaintiff alleges he was visited at Cook County Jail by Mingey and Montilla who spoke to him again about the Wiley brothers' murder. *Id.* at ¶ 54. According to Mingey and Montilla, Plaintiff again admitted "he was involved in

---

[1] Guevara hereby adopts the Local Rule 56.1 Statement of Material Facts of the co-defendant officers and refers to this herein as "SOF at __"

the [Wiley brothers'] murders." SOF at ¶¶ 48-49. Plaintiff stated that "he was not the shooter but was present when the shooting occurred" and "he knew who the shooter was and the other persons with him." *Id.* According to Montilla and Mingey, Plaintiff stated he would not cooperate unless he was given a deal to get out of jail. *Id.* There is no evidence Guevara was present for this interaction.

Plaintiff later made bond on his attempted murder charges. Dckt. No. 136 at ¶ 55. According to Plaintiff, when he went to the courthouse for a court date, he was taken into custody by Paulnitsky on August 21, 1990. Dckt. No. 136 at ¶¶ 565-61. Plaintiff alleges he was questioned again by Mingey and Montilla. *Id.* According to these Defendants, Plaintiff reiterated his statements about his involvement in the murders. *Id.* Plaintiff was then placed into custody for the murders. *Id.* Again, there is no evidence Guevara was involved in these events. *Id.*

After this occurred, Guevara arrived at Area 5and joined the investigation. *Id.* Guevara then questioned Plaintiff. Dckt. No. 136 at ¶¶ 66-74. According to Plaintiff, Guevara used physical coercion and threats in order to get him to provide a confession. *Id.* Plaintiff gave a court reported confession on August 23, 1990. *Id.* at ¶¶ 77-79. Guevara was not present during this confession. *Id.* Rather, this confession was taken before a court reporter, ASA DiFranco, and Montilla. SOF at ¶ 65. Plaintiff's court reported statement adds little material information regarding Plaintiff's culpability that had not already been developed by other officers before Guevara became involved. The confession details that Plaintiff was asked to hide a 9mm handgun several days before the murders by Alfredo "Lluvia" Gonzalez. Dckt. No. 136 at ¶ 79. On May 24, Lluvia and two other Latin King gang members, Christopher "Fro" Hernandez/Goosens and Justino "Tino" Cruz came back to Plaintiff's home and retrieved the weapon Plaintiff was hiding. *Id.* at ¶ 79. Plaintiff then left with his fellow gang members. *Id.* The confession does not implicate Plaintiff in the planning of the murders. *Id.* Rather, it has Plaintiff providing the gun to these individuals and driving to the area of Drake and North Avenue where Lluvia, Fro, and Tino stated they had two guys "waiting for dope." *Id.* The confession details Plaintiff

hearing gunshots and then seeing Lluvia standing over the men pointing a 9mm weapon. *Id.* This confession also details Plaintiff being threatened by Lluvia, Fro, Tino, and two other Latin Kings (Cisco (Francisco Veras) and King (Efrain Cruz)) if he talked about the murders. *Id.*

Contrary to Plaintiff's insinuations about the lack of evidence other than his confession, there is a wealth of other evidence. Plaintiff's live-in girlfriend (sole putative alibi), Rosa Bello, provided a statement to the police tracking every material aspect of his confession, including: (1) three of Plaintiff's fellow gang members arrived at their home late on May 24, 1990 and were provided a 9mm handgun by Plaintiff; (2) all four men left the apartment together; (3) Plaintiff returned home at 1:00am on May 25, 1990 and advised her that he had been with the other men; and (4) Plaintiff later expressed knowledge that two men had been shot. SOF at ¶¶ 63-64, 72. Ms. Bello has not recanted this statement, testified to the veracity of her statements at the trial of Plaintiff's co-defendant (Alfredo Gonzalez) and testified in this case that she was truthful in both. SOF at ¶ 87. Additionally, one of Plaintiff's co-arrestees and criminal co-defendants, Justino Cruz, implicated Plaintiff in the murders via a statement to police and prosecutors and, later, testimony at the trial of Plaintiff's co-defendant (Alfredo Gonzalez). SOF at ¶ 80-81, 88. Cruz also plead guilty to the murders in *People v. Cruz*, 90CR2178703, was sentenced to 22 years and has an intact conviction. SOF at ¶¶ 4, 86.

Plaintiff alleges that Halvorsen authored a false supplemental report. Dckt. No. 136 at ¶¶ 87-92. While Plaintiff generally alleges that this was done "[w]ith the collaboration of all of the defendants," he does not specify Guevara's involvement in any aspects of the report except for the portions documenting Plaintiff's alleged oral statements to him about his involvement in the murders on August 22, 1990. *Id.* at ¶ 91. Plaintiff alleges that Halvorsen documented that Montilla, Paulnitsky, and DiFranco drove to the crime scene with Plaintiff and Plaintiff corroborated various aspects of the crimes by walking these persons through the crime. Dckt. No. 136 at ¶ 92. Plaintiff denies this occurred but does not allege Guevara was present for or participated in this. *Id.*

3

At trial, Plaintiff was prosecuted on an accountability theory based on his provision of a weapon used in the murder and presence during the murder. *See* SOF at ¶ 99. Montilla testified for the prosecution and related the inculpatory statements Plaintiff made to him on July 15 and August 1. Dckt. No. 136 at ¶ 96; SOF at ¶ 101-102. Montilla testified to Plaintiff providing his court reported statement on August 23 in the presence of himself, ASA DiFranco and a court reporter. *Id.* Montilla also testified to Plaintiff leaving the police station with him, ASA DiFranco, and Paulnitsky and walking them through the details of the murders step by step. *Id.* ASA DiFranco testified to having a conversation with Plaintiff about Plaintiff's involvement in the murders with detectives present as well as having a conversation alone with Plaintiff about how he was treated by police. *Id.* at ¶ 103. ASA DiFranco also testified to the substance of Plaintiff's court reported statement and laid the foundation for admitting it into evidence. *Id.* Guevara also testified at Plaintiff's criminal trial. *Id.* at ¶ 103. Guevara's testimony covered Plaintiff's oral statements to him prior to Plaintiff's court-reported confession. *Id.* Plaintiff was convicted. *Id.* at ¶ 107.

Plaintiff has also advanced a theory that Guevara and Halvorsen arrested two individuals named Efrain Cruz and Francisco Veras at some point on an unrelated armed robbery case and unsuccessfully attempted to get them to make incriminating statements about their own involvement in the Wiley brothers' murder. Dckt. No. 136 at ¶¶ 42-44. This was done allegedly by placing them in police line-ups and falsely telling them that they were identified as the shooters. *Id.* According to Plaintiff, this tactic was unsuccessful because both men were in police custody at the time of the murders. *Id.* While Plaintiff insinuates he was not aware of this, he does not allege either man was responsible for these murders (he alleges the opposite), and does not allege any exculpatory or impeaching statements were elicited from either.

## **ARGUMENT**

I.      **Guevara's Invocation Of His Constitutional Rights Cannot Substitute For Evidence.**

Plaintiff relies heavily on Guevara's invocation of his constitutional rights as support for his claims. *See* Dckt. No. 136 at ¶¶ 8, 104, 110, 111. Even if an adverse inference were permissible on summary judgment,[2] such invocation cannot standing alone be a basis for a plaintiff to controvert evidence on any particular matter. Rather, in order to rely on this invocation for any purpose, a plaintiff must come forward with *other* competent evidence supporting any such matter. A trier of fact is allowed to draw an adverse inference against a party who refuses to testify in response to probative evidence offered against him. *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). Before an adverse inference may be drawn, "there must be independent corroborative evidence to support the negative inference beyond the invocation of the privilege." *LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 391 (7th Cir. 1995)("[A]lthough inferences based on the assertion of the privilege are permissible, the entry of judgment based only on the invocation of the privilege and without regard to the other evidence exceeds constitutional bounds."); *Wrice v. Burge*, 2020 WL 419419, *2 (N.D.Ill. 2020)("[C]laims against [a defendant] cannot survive unless he can identify evidence, in addition to [defendant's] silence" evidence supporting claims); *Kluppelberg v. Burge*, 2017 WL 3142757, *4 (N.D. Ill. 2017)(same); *Logan v. City of Chi.*, 891 F. Supp. 2d 897, 901 (N.D. Ill. 2012)(same). Here, reliance on Guevara's invocation of his Fifth Amendment rights is insufficient to preclude summary judgment where there is not other competent evidence to support the existence or non-existence of any fact.

## II. Plaintiff's Fourteenth Amendment Coerced Confession Claim Is Time Barred.

Guevera hereby adopts and incorporates Co-Defendants' Motion for Summary Judgment as to Plaintiff's 14th Amendment claim in Count I. *See* Co-Def. MSJ at Part I.b.

## III. Plaintiff's Fabrication Of Evidence Claim Against Guevara Fails As A Matter Of Law.

---

[2] While the courts may permit a permissive adverse inference at trial against a civil defendant who invokes his Fifth Amendment Rights, the use of this inference for summary judgment remains unclear. *See Genova v. Kellogg*, 2015 WL 3930351, *5 (N.D. Ill. 2015)("[T]he Court will not use the invocation of the Fifth Amendment against Kellogg at this summary judgment phase of litigation because of..the unsettled case law revolving around whether a negative inference is appropriate in the context of a summary judgment motion..."); *Ruiz-Cortez v. City of Chicago*, 2016 WL 6270768, *7 (N.D.Ill. 2016).

Counts I and II allege claims for fabrication of evidence in violation of the 14th Amendment. *See* Dckt. No. 136 at Ct. I-II. To prevail on an evidence fabrication claim, Plaintiff must establish: (1) the existence of false evidence; (2) that was known "with certainty" to the Defendant was false; (3) that was introduced against Plaintiff at his criminal trial, and (5) was "material" to securing his conviction. *Fields v. Wharrie*, 740 F.3d 1107, 1114 (7th Cir. 2014); *Whitlock v. Brueggemann*, 682 F.3d 567, 682 (7th Cir. 2012); *Gray v. City of Chicago,* 2022 WL 910601, * 12 (N.D. Ill. 2022); *Brown v. City of Chicago*, 633 F.Supp.3d 1122, 1160 (N.D.Ill. 2022); *Bolden v. City of Chicago*, 2019 WL 3766104, at *19 (N.D.Ill. 2019); *Hyung Seok Koh v. Graf*, 307 F.Supp.3d 827, 857–60 (N.D.Ill. 2018). Plaintiff claims that his confession, the statement of Rosa Bello, the confessions of his criminal co-defendants (LIST), and a police supplemental report drafted by Halvorsen each were fabricated. Guevara concedes that Plaintiff's confession was used against him at his trial. However, the other evidence Plaintiff contends was fabricated was not used at Plaintiff's trial and, further, Plaintiff cannot establish the existence of other elements with respect to any of the evidence he alleges was fabricated.

First, Rosa Bello's statement, the confessions of his criminal co-defendants, and Halvorsen's supplemental report were not introduced at Plaintiff's criminal trial. The very "essence of a due process evidence-fabrication claim is that the accused was convicted and imprisoned based on knowingly falsified evidence" and, thus, evidence not introduced at trial cannot, by definition, form the basis for a fabrication of evidence claim *See Patrick v. City of Chicago*, 974 F.3d 824, 835 (7th Cir. 2020); *Moran v. Calumet City*, 54 F.4th 483, 499 (7th Cir. 2022)("Because the evidence we assume was fabricated—the police report and the detectives' pretrial testimony—was not introduced at the trial, it could not have influenced the jury's verdict."); *Brown*, 633 F.Supp.3d at 1160 (noting "deprived of liberty in some way" standard was improper; "The Seventh Circuit rejected this standard, clarifying that fabricated evidence must be 'used against [plaintiff] in his criminal trial.'…No reasonable jury could find that the unintroduced and unreferenced statements of Harper and Ford were "used" against

6

him at trial, so Defendants are entitled to summary judgment on this claim."). Even testimonial references to a police report or non-substantive use of same does not transform out of court evidence into an actionable item for a fabrication claim. *Brown*, 633 F.Supp.3d at 1159–60 ("The fact that [defendants] testified to a version of events consistent with the reports makes no difference. … This is so even when the false testimony is consistent with fabricated but unadmitted police reports.").

Second, insofar as Plaintiff's claim is premised on the testimony of Guevara during the criminal proceedings, this cannot be a basis for any claim because this testimony is subject to absolute immunity. *Briscoe v. LaHue*, 460 U.S. 325, 332 (1983); *see also Knox v. Curtis*, 771 Fed.Appx. 656, 657–58 (7th Cir. 2019); *Canen v. Chapman*, 847 F.3d 407, 415 (7th Cir. 2017); *Maxson v. Dwyer*, 2017 WL 1493712, *5 (N.D. Ill. 2017); *Sanders v. Peoria County States Atty.*, 2023 WL 2699960, *1 (C.D. Ill. 2023); *Wilson v. Estate of Burge*, 667 F.Supp.3d 785, 837 (N.D.Ill. 2023).

Third, there is no evidence that Guevara knew with certainty that Plaintiff's confession was false. While Plaintiff, of course, claims that he protested his innocence to Guevara and gave inculpatory statements because of coercion, this does not mean that Guevara necessarily knew with certainty it was false. The Seventh Circuit has drawn a distinction between coerced testimony (which might be true, even if coerced) and false or fabricated testimony, "which is known to be untrue by the witness and whoever cajoled or coerced the witness to give it." *Fields*, 740 F.3d at 1110; *Coleman*, 925 F.3d at 346; *Bolden*, 2019 WL 3766104 at *19 ("Evidence that only suggests defendants had reason to doubt that the evidence was true is insufficient to meet the knowledge requirement."). Even where a plaintiff claims that a defendant knew his testimony was false because the officer allegedly coerced his confession, this is not enough to avoid summary judgment. *See Koh*, 307 F.Supp.3d at 857–60 (rejecting claims that coerced confession established defendant knew resulting confession was false). Here, Guevera did not become involved in the investigation until well after numerous inculpatory statements were made by Plaintiff that mirrored his later court reported confession. Nor is the fact that Plaintiff

denies the veracity of his prior inculpatory statements a basis to find that Guevara knew this was false with certainty. *Koh*, 307 F.Supp.3d at 857–60 (witness's denial of making incriminating statement to several police officers is not sufficient to find that a different officer knew such evidence was false).

As far as the statement of Ms. Bello, there is no evidence that this was a false statement (much less one known with certainty) considering that Ms. Bello has affirmed she told the truth to the police when making her statements. *See, e.g., Grayson v. City of Aurora*, 157 F. Supp. 3d 725, 740 (N.D. Ill. 2016)(rejecting fabrication claim because "the two witnesses who testified at Grayson's criminal trial, universally stated that the Defendants did not provide them with what to say or force them to make statements at trial that they knew to be untrue"); *Humphrey v. City of Anderson*, 2021 WL 4477806, *7 (C.D. Ill. 2021)(no fabrication claim because the witness "testified unequivocally 'No,'" when asked if officers told him "what to say"). The same is true for Justino Cruz (a/k/a Tino) who reaffirmed the veracity of his statements during sworn testimony against Plaintiff's co-defendant (Alfredo Gonzalez), plead guilty to his involvement in the Wiley brothers murder, and who has an intact conviction.

Fourth, much of the evidence Plaintiff claims was fabricated against him is not evidence that Guevara had any personal involvement in generating. This includes, most notably, Plaintiff repeated inculpatory statements prior to Guevara becoming involved in the investigation and the statement of Rosa Bello mirroring details of Plaintiff's confession and negating his alibi for the crimes at issue. "Section 1983 creates a cause of action based on personal liability and predicated upon fault." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). Guevara cannot be liable under Section 1983 unless Plaintiff shows he personally caused or participated in the alleged constitutional deprivation. *Colbert v. City of Chi.*, 851 F.3d 649, 657 (7th Cir. 2017); *Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008); *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Participation in an investigation alone is not enough. *See, e.g., de Lima Silva v. Wisconsin Dep't of Corrections*, 917 F.3d 546, 564 (7th Cir. 2019)(no personal involvement of defendants who participated in an investigation but were not involved in the decision

8

to discharge plaintiff); *Koh*, 307 F.Supp.3d at 857–60 ("[T]here is no evidence at all that Graf or any other defendant knew that the interviewing officers' account of Hwang's interview was false. So none of the Defendants is on the hook for the alleged falsehoods about Hwang's testimony."); *Rivera v. Guevara*, 319 F. Supp. 3d 1004, 1050-51 (N.D.Ill. 2018)(claims against officers whose names on reports in investigation failed as there was no evidence of personal involvement in the fabrication or *Brady* violations); *Colbert*, 851 F.3d at 657–58 (failure to provide evidence establishing personal involvement bars claims even if plaintiff can establish underlying violation); *Molina ex rel. Molina v. Cooper*, 325 F.3d 963, 974 (7th Cir. 2003)(same); *Hessel v. O'Hearn*, 977 F.2d 299, 305 (7th Cir. 1992)(same).

Fifth, the evidence that Guevara was allegedly involved in fabricating was not necessarily material to his conviction under the circumstances. In order to establish a Due Process claim, the plaintiff must establish that the fabricated evidence was material. *See Carvajal v. Dominguez*, 542 F.3d 561, 566-67 (7th Cir. 2008); *Ienco v. Angarone*, 429 F.3d 680, 683 (7th Cir.2005). Evidence is material if there is a reasonable likelihood the evidence affected the judgment of the jury. *Patrick v. City of Chicago*, 974 F.3d 824, 835 (7th Cir. 2020). However, "if the fabricated evidence was immaterial, it cannot be said to have caused an unconstitutional conviction and deprivation of liberty." *Id.* Due process claims are examined by looking at the totality of the evidence. *Kyles v. Whitley*, 514 U.S. 419, 434 (1995); *U.S. v. Morales*, 746 F.3d 310, 315-17 (7th Cir. 2014).

"The mere possibility" that evidence "might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *See United States v. Agurs*, 427 U.S. 97, 109–10 (1976) "In performing the materiality analysis, courts are to consider the "cumulative effect" of the evidence at issue "as opposed to considering each piece alone." *Lyons v. Vill. of Woodridge*, 2011 WL 2292299, *8 (N.D. Ill. 2011); *Phillips*, 743 F.Supp.2d at 948; *see also Agurs*, 427 U.S. at 112. Even probative evidence that is cumulative of other evidence is not necessarily material. *See e.g. U.S. v. Villasenor,* 664 F.3d 673, 683 (7th Cir. 2011)(materiality was not established because there was wealth of other

incriminating evidence that supported conviction); *U.S. v. Bland*, 517 F.3d 930, 934 (7th Cir. 2008)(same); *U.S. v. Wilson*, 481 F.3d 475, 478 (7th Cir. 2007)(same); *U.S. v. Baker*, 453 F.3d 419, 423 (7th Cir. 2006)(same); *Mola v. Warden*, 2020 WL 6149803, at *6 (N.D. Ind. 2020)(existence of other incriminating evidence established that evidence was not material); *Alexander v. City of Danville*, 2022 WL 132191, *10-11 (C.D. Ill. 2022)(summary judgment on plaintiff's pretrial deprivation claim where witnesses gave the police a similar account of the facts); *Moran*, 54 F.4th at 498 (eyewitness identification-even if questionable-made allegedly fabricated evidence immaterial and conclusively established probable cause requiring summary judgment); *Holland v. City of Chicago*, 643 F.3d 248, 256 (7th Cir. 2011)(affirming judgment on due process claims based on suppression of evidence regarding victim's hesitation to identify plaintiff because victim identified him at trial and other independent evidence of guilt existed); *Mola v. Warden*, 2020 WL 6149803, at *6 (N.D. Ind. 2020)(numerous other eyewitnesses established that allegedly fabricated evidence not material).

Guevara concedes that a confession can be an important piece of evidence in a criminal case. However, here, the confession Plaintiff alleges was fabricated by Guevara was almost entirely cumulative of evidence already in existence or developed separate and apart from Guevara's alleged actions. SOF at ¶¶ 44-49. Plaintiff was prosecuted under an accountability theory for his involvement in the Wiley brothers' murder. *Id.* at 99. In order to sustain these charges, it was unnecessary for the State to introduce Plaintiff's court reported confession because the elements of the charges would have been sustained by reliance on evidence obtained by other officers before Guevara ever became involved in this investigation, specifically, Plaintiff's prior admissions to providing the gun used in the killing, his admissions to "involvement" in the crimes, his presence when this gun was used for these murders, his affiliation with the shooters, his failure to immediately report the offense, and his attempts to make a deal with the police. SOF at ¶¶ 44-49; *see People v. Valladares*, 2013 IL App (1st) 112010, ¶ 90 (1st Dist)(provision of gun, affiliation with killers, and failure to report crime sufficient

10

to sustain conviction under accountability theory); *People v. Taylor*, 164 Ill.2d 131, 141 (Ill. 1995)("Proof that defendant was present during the perpetration of the offense, that he maintained a close affiliation with his companions after the commission of the crime, and that he failed to report the crime are all factors that the trier of fact may consider in determining the defendant's legal accountability...").

## IV. Plaintiff's *Brady* Claim Against Guevara Fails As A Matter Of Law.

During discovery, Plaintiff was asked to "state with particularity the exculpatory evidence…withheld and/or suppressed from prosecutors or defense counsel during the investigation of, or during any of the underlying criminal proceedings relating to, the Wiley brothers homicide…" SOF at ¶¶ 131-137 citing Pl. Ans. to Def. Halvorsen First Rogs No. 3. Plaintiff provided no substantive answer and simply referred to his Complaint. *Id.*. This litigation tactic limits Plaintiff to the theories and evidence in his Complaint. *See Moran v. Calumet City*, 54 F.4th 483, 497–98 (7th Cir. 2022)(affirming court's refusal to consider matters not disclosed in interrogatories). Even generously interpreting Plaintiff's Complaint, Plaintiff appears to allege as the basis for his *Brady* claim the following: (1) that Guevera failed to affirmatively disclose his own misconduct and/or alleged fabrications made relative to Plaintiff's investigation (Dckt. No. 136 at ¶ 4); and (2) Guevera allegedly brought in two individuals (Francisco Veras and Efrain Cruz) for lineups and falsely told them they were identified by witnesses as involved in the Wiley brothers' murder and did not disclose this information (Dckt. No. 136 at ¶¶ 42-44). Neither of these theories are actionable as *Brady* claims.

First, the Seventh Circuit does not permit plaintiffs to proceed on putative *Brady* claims based upon a defendant police officer supposedly keeping quiet about their own misconduct. *Saunders-El v. Rhode*, 778 F.3d 556, 562 (7th Cir. 2015)("In the end [plaintiff] seeks to charge the officers with a *Brady* violation for keeping quiet about their wrongdoing [fabricating evidence], not for failing to disclose any existing piece of evidence to the prosecution. But our case law makes clear that *Brady* does not require the creation of exculpatory evidence, nor does it compel police officers to accurately disclose

11

the circumstances of their investigation to the prosecution."); *Jackson v. City of Chicago*, 2024 WL 1142015, *12 (N.D.Ill. 2024)("Jackson 'seeks to charge the officers with a Brady violation for keeping quiet about their wrongdoing,' or lying about what they observed, and 'not for failing to disclose any particular piece of evidence to the prosecution.' And 'Brady does not require the creation of exculpatory evidence, nor does it compel police officers to accurately disclose the circumstances of their investigations to the prosecution.'"); *Ezell v. City of Chicago*, 2024 WL 278829, *23 (N.D.Ill. 2024)("Plaintiffs claim that Defendants had an obligation to disclose the precise means they used to interrogate them, despite each of the Plaintiffs having experienced the interrogations themselves and testifying as to Defendants' coercive methods. Given that the law does not require the police 'to accurately disclose the circumstances of their investigations,' and Plaintiffs do not allege that Defendants failed to hand over documents or other physical evidence, it is unclear what additional evidence Plaintiffs could have sought under *Brady*."); *Serrano v. Guevara*, 2020 WL 3000284, *19 (N.D. Ill. 2020)("Failing to disclose falsified evidence, or "keeping quiet" about that evidence, is the same as a fabrication of evidence claim and cannot be recast as a *Brady* allegation"); *Patrick*, 103 F. Supp. 3d at 915 ("[P]laintiff's objection to defendants' conduct appears to be not so much that they suppressed evidence as that the evidence they ultimately produced was fabricated or otherwise secured by misconduct and is more appropriately characterized as a claim for malicious prosecution"); *Phillips v. City of Chicago*, 2015 WL 5675529, *5-6 (N.D. Ill. 2015)(officers' non-disclosure of their alleged treatment of the plaintiffs' codefendants' and witness does not amount to a *Brady* violation); *Myvett v. Heerdt*, 2015 WL 12745087, *6 (N.D. Ill. 2015)(summary judgment on *Brady* claim where plaintiff failed to identify any evidence that was withheld from him, but instead claimed that defendants withheld their fabrication of witnesses' statements); *Alvarado v. Hudak*, 2015 WL 4978683, *3 (N.D. Ill. 2015) (dismissing *Brady* claim that officers failed to admit their misdeeds to the prosecution because silence following fabrication of evidence does not result in a *Brady* violation).

Second, with respect to the alleged interaction between Guevara and Veras/Cruz, this evidence was not favorable to Plaintiff nor even admissible at his trial. This evidence consists of Guevara supposedly *accusing* other persons of being involved in the Wiley brothers' murders. However, as Plaintiff concedes, these individuals were not guilty of these crimes and had an "ironclad" alibi. This is not remotely sufficient to establish that this undisclosed "evidence" was material. *Carvajal*, 542 F.3d at 567; *Harris v. Kuba*, 486 F.3d 1010, 1016 (7th Cir. 2007)("[T]he evidence is arguably favorable only after several inferences are made.... This stretches the meaning of 'favorable' beyond that of *Brady*."); *U.S. v. Hamilton*, 107 F.3d 499, 510 (7th Cir. 1997)(same)*; Socha v. Richardson*, 874 F.3d 983, 989 (7th Cir. 2017)(notes of deputy who interviewed cellmate of accomplice in murder, was not material as it was cumulative of other evidence). Indeed, evidence that the police interviewed and released other people who had "ironclad" alibis would never have been admissible at Plaintiff's criminal trial. *People v. Dukett*, 56 Ill. 2d 432, 448 (Ill. 1974); *People v. Yang*, 2013 WL 244694, ¶ 13 (2d Dist. 2013); *People v. Granter*, 2014 WL 5879384, ¶ 17 (2d Dist.); *People v. Bruce*, 185 Ill.App.3d 356, 364 (Ill. App.)("[I]f the evidence fails to link a third person closely with the commission of the crime, then the trial court should exclude the evidence."); *People v. King*, 61 Ill.App.3d 49, 52 (1978)("[E]vidence connecting a third person with the commission of the crime may only be shown if and when the third person had been closely linked to the commission of the crime."). Inadmissible evidence cannot be material for a *Brady* claim. *See Beaman v. Freesmeyer,* 776 F.3d 500, 509 (7th Cir. 2015)(inadmissible evidence cannot be basis for *Brady* claim); *U.S. v. Silva,* 71 F.3d 667, 671 (7th Cir. 1995)(same).

**V.    Plaintiff's Federal Malicious Prosecution (Count IV)/State Malicious Prosecution (Count VIII) Claims Fail As A Matter Of Law Against Guevara.**

Guevara hereby adopts and incorporates by reference the arguments of Co-Defendant Officers as set forth in their Motion for Summary Judgment on Plaintiff's federal and state law Malicious Prosecution claims. *See* Co-Def. MSJ at Part IV. Indeed, Guevara's arguments are even stronger in many respects. First, as set forth by Co-Defendant Officers, there existed ample probable

cause to support Plaintiff's arrest and prosecution even putting to the side Plaintiff's claim that Guevara allegedly coerced him into confessing. In addition to the inculpatory evidence cited by Co-Defendant Officers, Guevara also was not involved in the procurement of numerous inculpatory statements made by Plaintiff himself to other Defendants well prior to Defendant Guevara's involvement in the investigation. At minimum, this evidence constitutes "arguable probable cause" sufficient for Guevara to be entitled to Qualified Immunity on Count IV.

Second, for the purposes of Plaintiff's state law Malicious Prosecution claim, Plaintiff must establish that Guevara instituted or continued the proceedings maliciously. The CCSAO's decision to charge Plaintiff and seek an indictment (*see* SOF at ¶ 85) breaks the chain of causation for a malicious prosecution claim against Guevara. *Rehberg v. Paulk*, 566 U.S. 356, 372 (2012). Moreover, "even if an individual knowingly provides false information to a prosecuting authority, he or she is not liable for commencing a criminal proceeding if the prosecution is based upon separate or independently developed information." *Simon v. Northwestern University*, 175 F.Supp.3d 973, 982 (N.D. Ill. 2016); *see also Szczesniak v. CJC Auto Parts, Inc.*, 2014 IL App (2d) 130636, ¶ 13 (2d. Dist. 2014)(evidence other than alleged false statements to police broke chain of causation). Here, it was not Guevara who decided to charge Plaintiff, but CCSAO. SOF at ¶¶ 73, 85 . This was not based solely on Plaintiff's court reported confession. Rather, there was a large body of evidence supporting these charges which Guevara had no role in creating including numerous inculpatory statements by Plaintiff, inculpatory statements of his co-defendants (one of whom plead guilty, cooperated with the prosecution and has an intact conviction), an alibi contradicted by Plaintiff's girlfriend, incriminating statements of his girlfriend corroborating his involvement/confession, and his own involvement in a shooting using a similar weapon mere days after the murders (an offense which he later plead guilty). *Id.* at ¶¶ 44-49, 63-64, 70. Guevara was also not present for Plaintiff's court reported confession nor did he testify about it during Plaintiff's trial. *Id.* at ¶¶ 65. Rather, this evidence was presented via ASA DiFranco

who took and testified to this confession. *Id.* at ¶ 103. Indeed, if there were any doubt that this prosecution would have been brought regardless of Plaintiff's confession on August 22, 1990, this Court need only look at the circumstance of Plaintiff's co-defendant Christopher Goosens. Unlike Plaintiff, Mr. Goosens did not confess to his involvement in the murders. *Id.* at ¶ 83-92. Yet, he was indicted by a grand jury and prosecuted nonetheless by CCSAO based on the other evidence. *Id.*

**VI.     Plaintiff's § 1983 Failure to Intervene Claim (Count VI) Fails As A Matter Of Law.**

Guevara hereby adopts and incorporates by reference Co-Defendant Officer's arguments in their Motion for Summary Judgment seeking judgment on Count VI. *See* Co-Def MSJ at Part V.

**VII.    Plaintiff's Intentional Infliction of Emotional Distress Claim (Count X) Fails As A Matter Of Law.**

Plaintiff's IIED claim is premised entirely upon his alleged treatment while in police custody and his later prosecution. *See* Dckt. No. 136 at Ct. IX. This claim is deficient for two reasons. First, as set forth by Co-Defendant Officers, the law in the Seventh Circuit is clear that claims for IIED premised upon a police investigation and/or prosecution accrue at the time the alleged actions of Defendants occurred. *See* Co-Def. MSJ at Part VII *citing Bridewell v. Ewell*, 730 F.3d 672, 678 (7th Cir.2013). Thus, these claims are time-barred. Second, ample probable cause existed for Plaintiff's arrest and prosecution even putting to the side Plaintiff's allegations that he was coerced into confessing on August 22, 1990 by Guevara. *See supra* Part IV. An IIED claim premised on a wrongful arrest/prosecution may not be sustained if there was probable cause for such arrest/prosecution. *See Larsen v. Elk Grove Village, Ill.*, 433 Fed.Appx. 470, 474 (7th Cir. 2011); *McDade v. Stacker*, 106 Fed.Appx. 471, 476 (7th Cir. 2004); *Andersen v. Village of Glenview*, 2019 WL 4261186, *6 (N.D. Ill. 2019). Therefore, Guevara is entitled to summary judgment on Count X.

WHEREFORE Defendant Guevara prays this Court enter summary judgment in his favor on Counts I, II, III, IV, VIII, and X and for whatever other relief this Court deems fit.

Respectfully submitted,

BORKAN & SCAHILL, LTD.

By:    /s/ <u>Timothy P. Scahill</u>
          Timothy P. Scahill

Steven B. Borkan
Timothy P. Scahill
Special Assistants Corporation Counsel
Borkan & Scahill, Ltd.
20 South Clark Street
Suite 1700
Chicago, IL 60603
(312)580-1030
*Attorneys for Reynaldo Guevara*

16