# EXHIBIT 5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JOSE JUAN MAYSONET, JR. )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>REYNALDO GUEVARA, JOANN )<br>HALVORSEN as SPECIAL REPRESENTATIVE )<br>TO THE ESTATE OF ERNEST HALVORSEN, )<br>deceased, EDWARD MINGEY, EPPLEN, )<br>FERNANDO MONTILLA, ROLAND )<br>PAULNITSKY, FRANK DIFRANCO, CITY OF )<br>CHICAGO, and COOK COUNTY )<br>)<br>Defendants. ) | Case No. 18 CV 02342<br><br>Hon. Mary M. Rowland<br><br>Magistrate Judge Maria Valdez<br><br><br><br>JURY DEMAND |

**DEFENDANT REYNALDO GUEVARA'S ANSWER, JURY DEMAND AND**
**AFFIRMATIVE DEFENSES TO PLAINTIFF'S AMENDED COMPLAINT**

Defendants Reynaldo Guevara, by and through his attorneys, Leinenweber Baroni &

Daffada, LLC, submits the following answer, jury demand, and affirmative defenses to

Plaintiff's Amended Complaint.

## INTRODUCTION

1.      Plaintiff, Jose Juan Maysonet, Jr., spent 27 years incarcerated in the Illinois

Department of Corrections for the murders of Torrence and Kevin Wiley ("the Wiley brothers")

– a crime he did not commit.

**ANSWER:**      Defendant Guevara admits Plaintiff was incarcerated in the Illinois

Department of corrections for murdering Torrence and Kevin Wiley but lacks information or

knowledge sufficient to form a belief as to the truth or falsity of the allegation he was

incarcerated for 27 years. As to the remaining allegations in this paragraph, Defendant Guevara

asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

     2.     In and around August 22, 1990, the Police Officer Defendants conspired among themselves and with others, known and unknown, to prosecute Plaintiff for the murders of the Wiley brothers while indifferent to the fact that he was innocent.

     **ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

     3.     Former Assistant Cook County State's Attorney defendant Frank DIFRANCO, while acting in an investigatory function and prior to the existence of any probable cause to believe Plaintiff committed the crime, conspired with the defendant officers to procure a fabricated confession from Plaintiff.

     **ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

     4.     All of the defendants concealed the fact that they had conspired to and did frame Plaintiff for the murders by attributing fabricated oral admissions to the Plaintiff, by coercing, threatening, and manipulating witnesses into making false statements implicating Plaintiff in the murders, and by physically coercing a fabricated court-reported statement from Plaintiff that was transcribed in English even though Plaintiff spoke little to any English at the time of his arrest.

     **ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

     5.     There were no eyewitnesses to the murders, no plausible motive, and no physical evidence connecting Plaintiff to the crime.  Without the Defendants' concealment of evidence,

falsification of evidence, manipulation of witness testimony, and physical coercion of Plaintiff's false inculpatory statements, Plaintiff would never have been convicted.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

6.    For nearly three decades, Plaintiff fought to prove his innocence while the defendant officers continued to frame Latino men in the Humboldt Park area of Chicago until retiring with their full police pension.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

7.    On October 19, 2016, Cook County Circuit Court Judge Ricky Jones vacated Plaintiff's convictions without objection from the State after it was discovered that his trial attorney, Richard Beuke, labored under a *per se* conflict of interest while defending Plaintiff against the double murder charges.  Unbeknownst to Plaintiff, at the time of his trial, Mr. Beuke was simultaneously representing defendant GUEVARA in unrelated child-support proceedings.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

8.    On November 15, 2017, the State moved for an order too *nolle prosequi* the charges against Plaintiff after *all* of the defendant officers represented through counsel that they would exercise their Fifth Amendment rights to remain silent in response to questions about their investigation of the Wiley brothers' murders.  That same day, Plaintiff was released from custody after having spent 27 years of his life in the Illinois Department of Corrections.

**ANSWER:**    Defendant Guevara lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in this paragraph.

9.     Sadly, Plaintiff is among a growing group of Latino men from Humboldt Park who have proven that they were framed for crimes they did not commit at the hands of the defendant officers.  Just by way of example, defendants GUEVARA, MINGEY and deceased officer HALVORSEN framed Armando Serrano and Jose Montanez for the 1993 murder of Rodrigo Vargas.  Serrano and Montanez were exonerated on July 20, 2016, following the Illinois Appellate Court's issuance of a pair of scathing decisions acknowledging GUEVARA's pattern and practice of misconduct.  *People v. Serrano,* 2016 IL App (1st) 133493 (June 7, 2016) & *People v. Montanez*, 2016 IL App (1st) 133726 (June 7, 2016).  Serrano and Montanez received Certificates of Innocence in November 2016 and both filed federal civil rights actions that are currently pending in this Court.  *See Serrano v. Guevara, et al*., 17-cv-2869 and *Montanez v. Guevara, et al.* 17-cv-4560.

**ANSWER:**     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

10.     Defendants GUEVARA, MINGEY and deceased officer HALVORSEN framed Roberto Almodovar, Jr. and William Negron for the murders of Jorge Rodriguez and Amy Merkes in September 1994.  Both men were exonerated in April 2017 and received Certificates of Innocence on November 20, 2017.

**ANSWER:**     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

11.     Defendants GUEVARA and MINGEY also framed Jacques Rivera who was wrongfully convicted of the 1988 murder of Felix Valentin.  The Cook County State's Attorney's office vacated Rivera's conviction on October 4, 2011, and he received a Certificate

of Innocence on September 5, 2012. Rivera's civil suit against GUEVARA and MINGEY is currently pending in this Court. *Rivera v. Guevara, et al.,* 12-cv-4428.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

12. Since Plaintiff's exoneration less than a year ago, the State has vacated murder convictions of at least four other individuals who have demonstrated that they were framed by GUEVARA, HALVORSEN and MINGEY, including Arturo Reyes, Gabriel Solache, Thomas Sierra, Ariel Gomez and Ricardo Rodriguez.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

13. Plaintiff now seeks compensation for the incalculable hardship and injury he suffered as a result of the Defendants' egregious misconduct.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

## JURISDICTION AND VENUE

14. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of state law of Plaintiff's rights as secured by the United States Constitution as well as the deprivation of rights under Illinois state law.

**ANSWER:** Defendant Guevara admits that this action is brought pursuant to 42 U.S.C. §1983, the United States Constitution and Illinois law. As to the remaining allegations in this paragraph, Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

15.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367. Venue is proper under 28 U.S.C. § 1391(b), because the parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred in this judicial district.

**ANSWER:**    Defendant Guevara admits that this Court has jurisdiction pursuant to 28 U.S.C. §§1331, and 1367, and that Venue is proper under 28 U.S.C. §1391(b). As to the remaining allegations in this paragraph, Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

## PARTIES

16.     Plaintiff Jose Juan Maysonet, Jr., a 49-year-old Latino man, is a citizen of the United States and resides in the City of Chicago.

**ANSWER:**    Defendant Guevara lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in this paragraph.

17.     At all relevant times hereto, Defendants Reynaldo GUEVARA (Star No. 16345), Roland PAULNITSKY (Star No. 6503) and now deceased officer Ernest HALVORSEN (Star No. 6036) were members of the Chicago Police Department and assigned to Area Five's Violent Crimes Unit. Fernando MONTILLA (Star No. 16410) was a member of the Chicago Police Department assigned to Area Five Property Crime Unit. Each of these defendants conspired with one another and with other persons, known and unknown, to conceal and fabricate evidence, manipulate witness testimony, coerce fabricated statements, and maliciously prosecute Plaintiff for the murders of the Wiley brothers.

**ANSWER:**    Defendant Guevara admits that he was a member of the Chicago Police Department but lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegation that he was a member of the Chicago Police Department "at all times

6

relevant to this action." As to the remaining allegations in this paragraph, Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

18.     JoAnn Halvorsen, the Special Representative for the Estate of Ernest Halvorsen, deceased, is named as a Defendant in her capacity as Special Representative of the Estate of Ernest Halvorsen, as successor in interest and to defend this action on behalf of Defendant Ernest Halvorsen.

**ANSWER:**     Defendant Guevara admits that JoAnn Halvorsen, the Special Representative of Ernest Halvorsen, deceased, is named as a Defendant in her capacity as Special Representative of Ernest Halverson. As to the remaining allegations in this paragraph Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

19.     Defendants Sergeant Edward MINGEY (Star No. 1731) and Sergeant Lee EPPLEN (Star No. 890) were members of the Chicago Police Department and assigned to Area Five's Violent Crimes Unit.  MINGEY and EPPLEN were, at all relevant times, supervisors of the Police Officer Defendants.  They facilitated, condoned and approved the constitutional violations committed by the Police Officer Defendants.  In addition, Defendant MINGEY directly fabricated oral statements of the Plaintiff that were later used to convict him.

**ANSWER:**     Defendant Guevara admits Epplen and Mingey were members of the Chicago Police Department and assigned to Area Five's Violent Crimes Unit and had been assigned to Area 5. As to the remaining allegations in this paragraph, Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

20.     Defendant Frank DIFRANCO, at all relevant times, was an Assistant Cook County State's Attorney.  Defendant DIFRANCO, while acting in an investigatory fashion, helped procure a fabricated statement from Plaintiff and his girlfriend that was later introduced at trial and used to wrongfully convict Plaintiff.  Defendant DIFRANCO is sued for conspiring with the Defendant Officers to frame Plaintiff while acting in an investigatory capacity and without probable cause to believe Plaintiff committed a crime.

**ANSWER:**     Defendant Guevara admits only that Difranco was an Assistant Cook County State's Attorney. As to the remaining allegations in this paragraph, Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

21.     Defendant CITY OF CHICAGO is an Illinois Municipal Corporation, which employs or employed the Police Officer Defendants at the time of the events giving rise to this suit.

**ANSWER:**     Defendant Guevara only admits that the City of Chicago is an Illinois Municipal Corporation and had employed him and the other Police Officer Defendants former employer. Defendant Guevara lacks information or knowledge sufficient to form a belief as to the truth or falsity of the remaining allegations in this paragraph.

22.     Defendant COOK COUNTY is a governmental entity within the State of Illinois which provides funding for the Cook County State's Attorney's office which is responsible for paying any judgment entered against the defendant Frank DIFRANCO.

**ANSWER:**     Defendant Guevara admits that Cook County is a governmental entity within the State of Illinois. Defendant Guevara lacks information or knowledge sufficient to form a belief as to the truth or falsity of the remaining allegations in this paragraph.

23.     Each of the individual Chicago Police officer defendants and defendant DIFRANCO are sued in their individual capacity, and each acted under color of state law and in the scope of his or her employment while engaging the actions alleged in this Complaint.

**ANSWER:**     Defendant Guevara only admits the complaint purports to sue Chicago Police officer defendants and defendant DIFRANCO in their individual capacities. Defendant Guevara lacks information or knowledge sufficient to form a belief as to the truth or falsity of the remaining allegations in this paragraph.

## FACTUAL ALLEGATIONS

24.     In the mid-1980s, Plaintiff lived with his mother, step-father, and sister in the Humboldt Park area of Chicago.  Plaintiff had spent much of his childhood in Puerto Rico but settled in Chicago to attend high school.

**ANSWER:**     Defendant Guevara lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in this paragraph.

25.     Plaintiff struggled academically since he did not speak English fluently and eventually dropped out of high school around his junior year.  Like many of the young men in his community, Plaintiff became a member of the Latin Kings street gang.

**ANSWER:**     Defendant Guevara lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in this paragraph.

26.     Shortly after dropping out of high school, Plaintiff moved into the basement of his family building with his girlfriend Rosa Bello and her two daughters.

**ANSWER:**     Defendant Guevara lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in this paragraph.

### A "Deal with the Devil"

27.      As a member of the Latin Kings street gang, Plaintiff was involved in selling narcotics in the area of Pierce and Kedzie.  In the summer of 1988, defendant GUEVARA and Joseph Miedzianowski,[1] both officers from the 25th district gang crimes unit, raided Plaintiff's home searching for drugs and guns.  Although the officers came up empty handed, defendant GUEVARA told Plaintiff (in Spanish) that he wasn't "dumb" and knew what Plaintiff was up to (i.e., selling drugs) and that if Plaintiff didn't want trouble from them [the police] there was a "price to pay."  At the time, Plaintiff did not give much thought to GUEVARA's statements.

**ANSWER:**      Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer, including the allegations in the footnote.

28.      After the raid, Plaintiff and Rosa Bello (and her children) moved out of Plaintiff's mother's building into an apartment on North Homan Avenue.

**ANSWER:**      Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

29.      Several months later, Plaintiff was formally introduced to defendant GUEVARA and Joe Miedzianowski in the kitchen of a Cuban restaurant on North Avenue.  Plaintiff was friendly with the owner of the restaurant who was involved in the drug trade and used the restaurant mostly as a front for narcotics activity.

**ANSWER:**      Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

30.      Plaintiff vividly recalls the day he met GUEVARA and Miedzianowski in the kitchen of the Cuban restaurant.  Plaintiff had finished eating a meal and walked to the kitchen to drop off his dirty plate when he noticed the owner speaking to defendant GUEVARA and Joseph

---

[1] Joseph Miedzianowski is currently serving a life sentence in the federal Bureau of Prisons after being convicted of racketeering and drug conspiracy in April 2001.

Miedzianowski.  Plaintiff recognized the officers from the raid of his home several months

earlier.  The owner introduced Plaintiff to GUEVARA and Miedzianowski and told him that if

he ever had any problems with other officers in the neighborhood, GUEVARA and

Miedzianowski could be of assistance.

> **ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the
> United States Constitution and declines to answer.

31.    Defendant GUEVARA spoke in Spanish to Plaintiff and told him that he

remembered him from the raid of his home.  Defendant GUEVARA confirmed that he could

help protect Plaintiff from arrest for his drug activities but that there was a cost involved.

Plaintiff asked GUEVARA what type of "cost" was involved and Defendant GUEVARA told

him that he would talk to him later about the details.

> **ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the
> United States Constitution and declines to answer.

32.    After another conversation a week later, Plaintiff began paying defendant

GUEVARA protection money in the amount of $1000 per week so that Plaintiff and a small

crew with whom he worked could sell drugs without police interference.  Plaintiff did not feel at

liberty to decline defendant GUEVARA's offer.  GUEVARA made it clear that if Plaintiff did

not pay him the fee he was charging, he and his friends would be targeted for arrest.

> **ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the
> United States Constitution and declines to answer.

33.    For roughly a year, Plaintiff paid GUEVARA his weekly fee and GUEVARA

delivered on his promise to protect Plaintiff from police interference in his drug sales.  However,

in late 1989, Plaintiff and GUEVARA had a "falling-out" when Area Five detectives arrested

and falsely charged one of Plaintiff's best friends, Santiago Sanchez ("Macho") with attempt murder. Upset that his friend had been charged, Plaintiff confronted GUEVARA about the situation. GUEVARA was unsympathetic to Plaintiff's complaint and told Plaintiff, in sum and substance, that Sanchez was getting "hooked up" and there was nothing Plaintiff could do about it.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

34. Plaintiff reluctantly continued to pay GUEVARA his weekly "protection" fee, fearful that the notorious "hook-up" artist might turn his sights on him. But that all changed on May 21, 1990.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

35. On May 21, 1990, Sanchez, who was out on bond, missed a court appearance for his attempt murder case. Later that day Sanchez committed suicide by shooting himself in a car near Crystal and Kedzie avenues.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

36. Although violence was common-place in the Humboldt Park community, suicide was highly unusual which made this period of time striking and memorable. Plaintiff was devastated by the loss of his friend and blamed GUEVARA and the crooked Area Five detectives for the tragedy. Plaintiff stopped making "protection payments" to defendant GUEVARA from that day forward.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

37. On the morning of May 25, 1990, Plaintiff attended Sanchez's funeral along with numerous other friends and fellow Latin Kings from the neighborhood.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

### The Wiley Brothers' Murders

38. Earlier on the morning of May 25, 1990 at roughly 1:00 a.m., Torrence and Kevin Wiley, two African-American men in their late 20s, were shot and killed in front of a vacant lot at 3428 W. North Avenue. The brothers were not associated with any street gangs or drug activity and did not live in Humboldt Park.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

39. There were no eye-witnesses to the crime, but two women who lived on the block told the police that they heard an argument between two black males just before the shooting. The argument lasted for about an hour and the voices they heard were of African-American men, not men speaking Spanish or speaking English with Puerto Rican accents. The women heard bits and pieces of the argument, including the statements, "I'm trying to help you," and "I'm going to kill you first" and "you said we would get the last bus." Of particular note, the men kept saying the name "Lulu Dog."

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

13

40.     After an initial canvas of the neighborhood that yielded little information, defendant MINGEY, who was the supervising sergeant on the case, decided that he would close the case by finding a gang-banger to pin the murders on rather than conduct a meaningful investigation designed to identify the real offenders.  Police reports show that detectives made no further attempts to locate potential witnesses who lived or worked on the busy street where the shooting occurred.  Incredibly, detectives did nothing to identify or track down "Lulu Dog" even though the victims' sister confirmed that he was a person known to the victims and provided a phone number and address for him.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

41.     Area Five detectives supervised by defendant MINGEY had no interest in solving this senseless murder of two young black men but instead saw it as an opportunity to frame "gang bangers."

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

42.     A couple of weeks after the Wiley brothers' murders, defendants GUEVARA and Mr. HALVORSEN arrested two Latin Kings from the area, Efrain Cruz ("King") and Francisco Veras ("Cisco") for the petty offense of "mob action." Cruz was being targeted by GUEVARA, HALVORSEN and MINGEY because he had recently beat an armed robbery case.  It was a known practice of Area Five detectives that if a gang-banger "beat" a case, he would be prioritized for a "frame-up."

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

14

43.     Cruz and Veras were taken to Grand and Central where they were interrogated and accused of killing the Wiley brothers.  The men were put in line-ups and falsely told they were identified as the shooters, presumably in hopes that they would make an inculpatory statement that could be used against them or, more likely, would make an exculpatory statement pointing the finger at someone else, thereby providing probable cause to arrest that person who could then be interrogated and tricked, manipulated or coerced into pointing the finger back at Cruz and Veras.  This tactic was standard operating procedure for Area Five detectives under the supervision of defendant MINGEY.

**ANSWER:**     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

44.     Defendant GUEVARA and Mr. HALVORSEN told Cruz and Veras that they knew another Latin King was the get-away driver and that whoever implicated the other first would get leniency.  Neither Cruz nor Veras took the bait.  The men were eventually released from Grand and Central after they figured out that they had been in police custody at the time of the Wiley brothers' murders.

**ANSWER:**     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

45.     As fate would have it, Santiago Sanchez's visitation on the evening of May 24, 1990 had raised tensions in the neighborhood and that same evening, officers conducted a sweep on North Avenue that resulted in the arrests of more than a dozen Latin Kings, including Cruz and Veras.  Thus, Cruz and Veras were sitting in lock-up at the exact time the Wiley brothers were shot and killed.

**ANSWER:**     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

46.     With airtight alibis for the night of the Wiley brothers' murders, detectives GUEVARA, HALVORSEN, and MINGEY realized that they could not pin the murders on Cruz and Veras or any of the other Latin Kings who were in custody that night.  Unfortunately for Plaintiff, on the night of May 24, 1990 after attending Sanchez's visitation, he spent a quiet night at home with his girlfriend, mourning the loss of his close friend.

**ANSWER:**     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

### Plaintiff's July 15, 1990 Arrest

47.     On July 15, 1990, defendant PAULNITSKY arrested Plaintiff in connection with an unrelated shooting that occurred on July 3, 1990.

**ANSWER:**     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

48.     Plaintiff was brought to Area Five, Grand and Central, where he was placed in a line-up and purportedly identified as being involved in the unrelated July 3, 1990 shooting.  With the assistance of a Spanish-speaking police officer, Defendant PAULNITSKY interviewed Plaintiff about the July 3, 1990 shooting.  Plaintiff denied his involvement in the shooting and exercised his right to counsel.  Defendant PAULNITSKY stated, in sum and substance that "he didn't need a statement from Plaintiff, because he was identified and was getting charged." However, defendant PAULNITSKY told Plaintiff that his supervisor, defendant MINGEY, wanted to talk to him about another matter.

16

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

49.    Plaintiff was brought into a different interview room where he was interviewed by defendants MINGEY and MONTILLA.  MINGEY did the questioning while MONTILLA acted as an interpreter.  Defendant MINGEY asked Plaintiff where he was in the early morning hours of May 25, 1990.  Plaintiff responded that he was at home because he was mourning the loss of his good friend, Santiago Sanchez, and that they buried him the morning of May 25, 1990. Plaintiff asked MINGEY why he was asking for his whereabouts during that time period.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

50.    Defendant MINGEY told Plaintiff that two "brothers" had been shot on North Avenue and that the ballistics evidence found at the scene of the murders suggested that the weapon used in the murder of the Wiley brothers was the same caliber weapon used in the shooting that Plaintiff had just been arrested for.  Recognizing defendants MINGEY and MONTILLA's design to implicate Plaintiff in the double murders, Plaintiff told the detectives that they were on some "bullshit" and that he wanted his lawyer.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

51.    Defendant MINGEY stated in sum and substance [through defendant MONTILLA], "you'll be hearing from us again.  We know where to find you." Plaintiff was then taken to the Cook County jail on charges for attempt murder related to the July 3, 1990 shooting.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

**Defendants MINGEY and MONTILLA Make a Surprise Visit to Cook County Jail**

52. Two weeks later on August 1, 1990, a correctional officer retrieved Plaintiff from Division 2 of the Cook County jail where he was being housed. Plaintiff followed the correctional officer to Division 5 where he was met by an older supervising Cook County sheriff dressed in jeans and a white shirt. The sheriff directed Plaintiff to sign a piece of paper and Plaintiff complied without question. Plaintiff did not read the paper as it was written in English and assumed it was just protocol. No one translated the paper to Plaintiff or explained its contents.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

53. After signing the paper, the sheriff brought Plaintiff into an interview room where Plaintiff was surprised to see defendants MINGEY and MONTILLA seated at a table. MINGEY and MONTILLA told Plaintiff to sit down. Again, MONTILLA was acting as an interpreter, translating from English to Spanish and vice versa. Plaintiff complied but told the detectives that he had nothing to say to them and that they should contact his lawyer, William Swano. Plaintiff had Swano's business card in his pocket and pulled it out and handed it to the detectives.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

54. Defendants MINGEY and MONTILLA told Plaintiff that they weren't calling his lawyer and only wanted to talk to him about the murders of those "niggers" on North Avenue. Plaintiff went to grab a telephone that was in the interview room and defendant MINGEY

grabbed it out of his hand.  MINGEY told Plaintiff "we have a CTA bus full of people who identified you."  Plaintiff responded by stating, "then why are you here talking to me?"  Plaintiff stood up with an intent to leave the room and the detectives also stood up aggressively and began yelling at Plaintiff to sit down.  The conversation got so heated that the Cook County sheriff came into the room and stated something sternly to the detectives.  The sheriff looked at Plaintiff and asked him, "you ok?" and then escorted Plaintiff out of the interview room.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

55.    On August 16, 1990, Plaintiff made bond on the attempt murder case and was released from Cook County jail.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

**Plaintiff's August 22, 1990 Arrest for the Wiley Brothers' Murders**

56.    Shortly before 9:00 a.m. on August 22, 1990, Plaintiff appeared before the Chief Judge of the criminal division of the Circuit Court of Cook County (Room 101) at 26th and California for assignment of his attempt murder case.  Plaintiff was accompanied by a friend and his sister Rose Maysonet.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

57.    Plaintiff noticed that defendant PAULNITSKY entered the courtroom and PAULNITSKY seemed surprised to see Plaintiff out of custody.  Defendant PAULNITSKY quickly left room 101.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

58. Plaintiff's case was called shortly after 9:00 a.m. and acting Chief Judge Bastone told Plaintiff that his case was assigned to Judge Loretta Lee Morgan and ordered him to appear in her courtroom, located in the same building, *instanter*. Plaintiff's attorney William Swano had previously told Plaintiff that he would meet Plaintiff in the assigned court room.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

59. Plaintiff walked out of courtroom 101 and toward the elevator bank that led to Judge Morgan's courtroom when he was grabbed and physically pushed up against the wall by defendant PAULNITSKY in the hallway directly outside courtroom 101. Defendant's bi-lingual sister immediately questioned the detective in English, "what are you doing?" and PAULNITSKY told Plaintiff's sister that Plaintiff was wanted for two murders and that he had to go with him. Plaintiff, with the assistance of his sister, told defendant PAULNITSKY that he wanted his attorney who was waiting for him in Judge Morgan's courtroom. Defendant PAULNITSKY ignored Plaintiff's request, handcuffed him, and took him to the other side of the building that housed the administrative offices.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

60. Defendant PAULNITSKY took Plaintiff up to the offices of the Cook County State's Attorney where he made a phone call. Defendant PAULNITSKY then brought Plaintiff to the basement of the building where he was brought outside, placed in a marked police car, and

driven to the police station at Grand and Central. Plaintiff never made it to Judge Morgan's courtroom.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

61. Meanwhile Plaintiff's sister called Plaintiff's attorney to tell him that Plaintiff had just been arrested in the courthouse.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

62. Once at a Grand and Central, Plaintiff was placed in an interview room. Defendants MONTILLA and MINGEY entered the room and Plaintiff immediately told the detectives that he wanted to speak to his attorney, William Swano.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

63. Speaking in Spanish, defendant MONTILLA asked Plaintiff who arrested him, and Plaintiff pointed at defendant PAULNITSKY who was standing outside the interview room. Upon seeing Plaintiff pointing at him, defendant PAULNITSKY ran into the interview room, grabbed Plaintiff by the throat and threw Plaintiff to the floor while hitting him in the face. Defendant PAULNITSKY threatened to "bust" his face if Plaintiff ever spoke about him in Spanish again.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

64. After that assault, Plaintiff was taken to the lock-up for the better part of the afternoon. During that time, William Swano called Area Five numerous times but was

repeatedly told that Plaintiff was not there.  Plaintiff's sister went to Grand and Central to locate

her brother and was falsely told that he was not there.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the

United States Constitution and declines to answer.

65.    Plaintiff was held *in communicado* until defendants GUEVARA and Mr.

HALVORSEN arrived to Grand and Central to start their shift.  GUEVARA was eager to frame

Plaintiff for the murders since Plaintiff had stopped paying "protection money" to GUEVARA

and knew that Plaintiff had information about GUEVARA that could expose GUEVARA as a

corrupt officer.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the

United States Constitution and declines to answer.

66.    At roughly 5:00 p.m. defendant GUEVARA retrieved Plaintiff from the lock up

and brought him to an interview room.  GUEVARA told Plaintiff that he wanted Plaintiff to tell

him "about them two niggers that was shot on North Avenue."  Plaintiff responded that he knew

nothing about the murders and wanted to speak to his attorney William Swano.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the

United States Constitution and declines to answer.

67.    Defendant GUEVARA left the interrogation room and returned with a telephone

book and large black flashlight.  Detective Guevara asked Defendant whether he was "ready to

talk."  Plaintiff again exercised his right to counsel by saying, "I want my lawyer."  Defendant

GUEVARA put on black leather gloves and began beating Defendant in the head and body with

the phonebook.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

68. Guevara left the interview room a number of times only to return and continue the beating by placing the telephone book on various parts of Defendant's body, including his head and genitals, striking the book with the flashlight with all of his force. During the beating, Guevara repeatedly asked Defendant "do you still want to talk to your lawyer?" Guevara also falsely told Defendant that he already knew that he was involved in the shooting and that they had witnesses who said it was him. Defendant eventually began to cry, and Guevara said, "you wasn't crying like a little bitch when you shot those two niggers?" Guevara eventually left, and detective MONTILLA returned to the interview room.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

69. Defendant MONTILLA told Plaintiff to calm down and that he would allow Plaintiff to see his sister who was at the police station and had some anxiety medicine for him. MONTILLA uncuffed Plaintiff and brought him to another interview room. Shortly after being brought to another room, MONTILLA returned to the room with Plaintiff's sister, Rose Maysonet. Plaintiff and Rose had a short conversation and Rose gave him an anxiety pill that she obtained from her mother.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

70. Defendant MONTILLA also brought Plaintiff's pregnant and live-in girlfriend, Rosa Bello, to the interview room to speak with Plaintiff. Rosa was terrified because the detectives told her that she could have her kids taken away if Plaintiff didn't cooperate with their

investigation. Rosa tried to persuade Plaintiff to "talk" to the officers, but Plaintiff told her that he had no knowledge about the shootings. Rosa expressed her fear that the police were going to arrest her and take the kids from her and begged him to "cooperate."

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

71. Defendant MONTILLA told Rosa she had to leave and after escorting her out, MONTILLA returned and asked Plaintiff in sum and substance, "do you want your kids to grow up without their family? Just tell us what happened." Plaintiff again asked for his attorney.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

72. After some time, GUEVARA returned to the interview room and again began beating Plaintiff with the phone book and flashlight, yelling at him in Spanish to tell him about the murders. Plaintiff lost track of time but after several hours, a female State's attorney came into the interview room to speak with him. The female State's Attorney, ASA Jennifer Borowitz, read Plaintiff his rights with defendant MONTILLA translating and asked Plaintiff what he knew about the murders on North Avenue. Plaintiff told the ASA that he knew nothing and wanted his lawyer. ASA Borowitz then got up and left the room.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

73. Sometime after ASA Borowitz left, defendant GUEVARA returned to the room and began threatening and beating Plaintiff again. Apart from the physical punishment, GUEVARA told Plaintiff that he would get the death penalty if he did not admit his involvement in the murders and that he just needed to admit that he was present at the shooting not that he

was the shooter. GUEVARA repeatedly asked Plaintiff for the names of other people who may have done the shooting and urged Plaintiff to point the finger at someone else. GUEVARA also continually threatened to "lock up" Plaintiff's girlfriend and sister.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

74. After nearly 20 hours in custody, much of it involving physical and psychological abuse by defendants GUEVARA and MONTILLA, Plaintiff's will was overborne, and he agreed to tell GUEVARA whatever he wanted him to say. Plaintiff was overcome with fear that the beatings would continue and that the detectives would arrest his sister and girlfriend and place Rosa's children with DCFS.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

75. Assistant State's Attorney defendant DIFRANCO arrived at Area Five shortly after Plaintiff succumbed to defendant GUEVARA's physical abuse and agreed to "cooperate." At roughly 7:00 am., defendants GUEVARA, MONTILLA, and DIFRANCO met in a room with Plaintiff to construct a false narrative that Plaintiff would regurgitate in front of a court-reporter. DIFRANCO knew that Plaintiff had been physically beaten and had exercised his right to counsel to ASA Borowitz, but nonetheless approved of, conspired with and aided GUEVARA and MONTILLA in creating a false narrative that Plaintiff would repeat under oath before a court reporter.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

76.     However, defendant DIFRANCO realized that Plaintiff would not be able to give a statement in English and DIFRANCO did not speak Spanish.  Defendant DIFRANCO wrote out the questions and answers in English on a yellow pad of paper, and defendant MONTILLA translated the questions and answers in Spanish.  Plaintiff was then instructed to study the pad of paper.

**ANSWER:**     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

77.     Approximately two hours later, a court-reporter arrived at the station to transcribe a statement from Plaintiff.  Defendant DIFRANCO began questioning Plaintiff in English according to the script the group had previously prepared.  Defendant MONTILLA translated the question into Spanish for Plaintiff, and Plaintiff responded in Spanish as he had practiced.  MONTILLA provided the English translation of Plaintiff's response, and the court-reporter transcribed the English provided by MONTILLA.  At no point did any party put on the record that Plaintiff was speaking only in Spanish.

**ANSWER:**     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

78.     Plaintiff's court-reported statement was taken on August 23, 1990 at 9:28 a.m.

**ANSWER:**     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

79.     Consistent with the false narrative concocted by defendants, Plaintiff falsely confessed that on May 20, 1990 at around 12:45 a.m. Alfredo Gonzalez ("Lluvia") came to his house at 1320 North Homan to ask him to hide a .9 mm pistol.  Lluvia returned to his home between 11:30 p.m. and 12:00 a.m. on May 24, 1990 with two other Latin Kings, Christopher

26

Hernandez who went by the nickname "Fro," and "Tino" Cruz. According to the physically coerced false statement, Plaintiff stated that Lluvia, Fro, and Tino told him that "they got two guys on Drake and North avenue waiting for dope." Plaintiff then falsely stated that he drove to Drake and North with Lluvia, Fro and Tino. Plaintiff drove the car; Lluvia was in the front passenger seat with the gun, and Fro and Tino were in the back. According to the false statement, when they got to the area, Plaintiff waited in the car while Lluvia, Fro, and Tino approached the two black men. Plaintiff could see them talking and then heard five or six shots and saw the two men on the ground and Lluvia pointing the .9 mm at them. The three returned to Plaintiff's car and he drove away. According to the false statement, Lluvia, Fro, Tino, Cisco (Francisco Veras) and King (Efrain Cruz) came to his house on August 16, 1990, and King put a gun to his head and threatened to kill him if he talked.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

80.    Plaintiff was unable to read English but signed the statement per DIFRANCO's direction. The statement was false in its entirety and procured from Plaintiff through physical abuse and threats and other coercive tactics.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

81.    Subsequent to Plaintiff's false and physically coerced statement, Area Five detectives arrested Alfredo Gonzalez ("Lluvia"), Justino Cruz ("Tino"), and Christopher Goosens ("Fro"). Like Plaintiff, Gonzalez and Cruz were also physically coerced by defendant GUEVARA to confess to the crimes and both men were charged and then later wrongfully convicted of the Wiley brothers' murders. Goosens was charged but acquitted after a bench trial.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

**Coerced and Manipulated Statement of Rosa Bello**

82. After coercing Plaintiff's court-reported statement, defendants MONTILLA and DIFRANCO threatened and coerced a statement from Plaintiff's pregnant girlfriend Rosa Bello.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

83. On August 23, 1990 at 2:10 p.m., Bello provided a hand-written statement in which she falsely stated that Lluvia, Fro, and Tino came to the house she shared with Plaintiff and retrieved a .9mm weapon at roughly 11:30 p.m. on May 24, 1990.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

84. Defendants MONTILLA and DIFRANCO told Bello that Plaintiff had already confessed to the murders and that her kids would be taken away from her if she did not admit that she saw the men retrieve a gun from the house on that particular date.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

85. After spending over 24 hours at the police station, Bello eventually agreed to sign whatever statement the assistant state's attorney and the detective prepared for her.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

86.     Defendants DIFRANCO and MONTILLA knew that they had fed a false statement to Bello and that she signed the statement out of fear that she would lose custody of her kids if she did not cooperate with the defendants.

**ANSWER:**     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

## Defendant HALVORSEN Authors a False and Fabricated Supplemental Police Report with the Help of All the Defendants

87.     After Plaintiff and his co-defendants were charged with the double murder of the Wiley brothers, defendant DIFRANCO realized that Plaintiff's court-reported statement was subject to suppression since no probable cause existed to justify his arrest in the first place. Indeed, no evidence existed whatsoever that suggested Plaintiff was involved in the Wiley brothers' murder.

**ANSWER:**     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

88.     With the collaboration of all of the defendants, HALVORSEN put his report-writing skills to work and began drafting a supplemental police report replete with false and fabricated statements that served to justify Plaintiff's unlawful arrest and bolster the bogus investigation.  The report was written on the evening of August 24, 1990 and approved by defendant sergeant EPPLEN at 11:45 p.m. – long after Plaintiff was charged.

**ANSWER:**     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

89.     Defendants MINGEY and MONTILLA directed HALVORSEN to falsely report that on July 15, 1990, Plaintiff told them he *did* have knowledge of the murders of the two black youths on North Avenues, and that on the night of the murders, three Latin Kings came to his

house to get a 9mm pistol.  Plaintiff never made this statement; its contents are false in their

entirety and completely fabricated by the defendants.  No police report or General Progress

Report ("GPR") reflects that Plaintiff made this statement on July 15, 1990.  Defendant EPPLEN

approved this false and fabricated oral statement even though the defendant officers and

defendant MINGEY could not provide a writing of any kind that suggested it ever occurred.

  **ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the

United States Constitution and declines to answer.

  90.  HALVORSEN further reported (at defendant MINGEY's direction) that Plaintiff

told defendants MONTILLA and MINGEY at Cook County Jail on August 1, 1990 that he was

involved in the murders of the black men but that he was not the shooter and was only present

for the shooting.  According to the fabricated statement, Plaintiff told MINGEY and

MONTILLA that he knew who the shooter was but would only reveal the information in

exchange for leniency on his attempt murder case.  Plaintiff never made this statement; its

contents are false in their entirety, completely contrived by the defendants.  No police report or

GPR reflects that Plaintiff made these admissions on August 1, 1990.  Defendant EPPLEN

approved this false and fabricated oral statement even though the defendant officers and

defendant MINGEY could not provide a writing of any kind that suggested it ever occurred.

  **ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the

United States Constitution and declines to answer.

  91.  According to the supplemental police report signed by the defendant officers but

authored by HALVORSEN, Plaintiff admitted his involvement in the shooting to defendant

GUEVARA on August 22, 1990 at approximately 8:00 p.m. Plaintiff never admitted his

involvement in the murders of the Wiley brothers to defendant GUEVARA.  Only after being

physically abused and threatened for nearly 24 hours by GUEVARA and his accomplices did Plaintiff eventually agree to repeat a false and fabricated statement that was fed to him by defendants GUEVARA, MONTILLA and DIFRANCO and later recorded by a court reporter.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

92. HALVORSEN also falsely reported that after providing a court-reported statement, Plaintiff drove to the area of 3428 W. North Ave., the scene of the murders, with defendants MONTILLA, PAULNITSKY, and DIFRANCO to "corroborate" his court-reported statement. Plaintiff never drove to the crime scene with the defendants nor did he demonstrate or point out any of the facts set forth in his physically coerced and fabricated statement.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

**Plaintiff's Wrongful Conviction**

93. HALVORSEN and defendant PAULNITSKY falsely testified before the grand jury that Plaintiff had supplied the murder weapon that was used to shoot the Wiley brothers and that Plaintiff had driven the car to and from the murder scene.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

94. Prior to Plaintiff's trial, Plaintiff was forced to hire a new attorney after his attorney William Swano was indicted in connection with allegations that he had "payed off" a judge in exchange for a favorable outcome in a criminal case. Unfortunately for Plaintiff, Plaintiff's new attorney, Richard Beuke, was no more ethical than his prior one.

31

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

95.    While Beuke was defending Plaintiff against these double murder charges, he was concurrently representing defendant GUEVARA (the State's key witness against Plaintiff) in unrelated family and child-support proceedings.  Indeed, Beuke and GUEVARA had a decade-long personal and professional friendship that Beuke failed to disclose to Plaintiff.  Unsurprisingly, Beuke's efforts at challenging the State's evidence and cross-examining his buddy defendant GUEVARA were feeble and ineffectual.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

96.    At Plaintiff's trial, defendant MONTILLA falsely testified that Plaintiff made inculpatory statements to him and defendant MINGEY on July 15, 1990 and August 1, 1990 as set out in detail above.  Defendant MONTILLA also falsely testified at Plaintiff's trial that Plaintiff made a voluntary confession to the murders as described in detail above.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

97.    Defendant PAULNITSKY falsely testified at Plaintiff's trial that he had knowledge of Plaintiff's inculpatory oral statements made on July 15 and August 1, 1990 when he arrested Plaintiff on August 22, 1990.  Defendant PAULNITSKY had no knowledge about those statements as Plaintiff never made the statements and the defendants did not fabricate the statements until after Plaintiff's arrest on August 22, 1990.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

98.     Defendant GUEVARA falsely testified that Plaintiff first orally confessed his involvement to him for the murders of the Wiley brothers as reflected above.  GUEVARA denied that he used any sort of physical coercion or threats to coerce those statements. GUEVARA further denied that he supplied the false narrative that Plaintiff regurgitated before a court reporter on August 23, 1990.

**ANSWER:**     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

99.     Defendant DIFRANCO falsely testified at Plaintiff's trial that he conversed with Plaintiff in English and that Plaintiff had no difficulties communicating with him in English. DIFRANCO falsely testified that Plaintiff gave his court-reported statement in English and that it was a voluntarily given statement free from physical coercion or suggestion.  DIFRANCO further falsely testified that he accompanied Plaintiff and defendants MONTILLA and PAULNITSKY to the crime scene so that Plaintiff could "act out" the shooting.  This field-trip to the crime scene never happened.

**ANSWER:**     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

100.     Although Plaintiff wanted to testify, his attorney (whose conflict was so disabling that Plaintiff was essentially left without counsel at all) told him that no one would believe him and that he shouldn't testify.

**ANSWER:**     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

101.    Based on the foregoing false and fabricated testimony, a jury convicted Plaintiff of two counts of first-degree murder and Plaintiff was sentenced to a prison term of natural life imprisonment.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

### Plaintiff's Exoneration

102.    Throughout his wrongful incarceration, Plaintiff tirelessly fought to prove that he was innocent and wrongfully convicted of the 1990 murders of the Wiley brothers.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

103.    Plaintiff, through his counsel, filed a successive post-conviction petition, alleging Plaintiff's actual innocence.  Plaintiff further claimed that Plaintiff's Sixth Amendment right to conflict free counsel was violated when his trial attorney, Richard Beuke, simultaneously represented defendant GUEVARA on unrelated family/child support proceedings.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

104.    The State agreed that Beuke labored under a *per se* conflict of interest and on October 19, 2016, the State consented to the court vacating Plaintiff's convictions and sentence. The matter was set for a new trial scheduled to commence on November 15, 2017.  However, the State moved to *nolle prosequi* all charges against Plaintiff after *all* of the defendant officers indicated that they would plead the Fifth Amendment in response to any questions regarding their investigation of the Wiley brothers' murders.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

105.     After spending 27 years in the Illinois Department of Corrections, Plaintiff was released from custody on November 2017.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

**Defendants GUEVARA, MINGEY and Mr. HALVORSEN'S
History of Framing Innocent Persons**

106.     Tragically, Plaintiff's wrongful conviction at the hands of defendant GUEVARA and his accomplices, including HALVORSEN and defendant MINGEY, is not an isolated miscarriage of justice.  Over the course of two decades, the trio framed literally dozens of other innocent men who have all lodged independent accusations of similar misconduct against him.[2]

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

107.     GUEVARA, HALVORSEN, and MINGEY are the subject of an ever-growing number of litigations both in criminal and civil courts. All three defendants are now refusing to testify about any of their activities as Chicago police officer on grounds that truthful testimony would subject them to criminal liability.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

108.     Defendant GUEVARA has a long history of engaging in precisely the kind of investigative misconduct that occurred in this case, including abusive tactics, physical coercion

---

[2] https://www.buzzfeed.com/melissasegura/detective-GUEVARAs-witnesses?utm term=.tymQzXk3Yn#.ilhx2y8nb1B

of inculpatory statements, manipulation of witnesses, fabrication of evidence, and concealment of evidence in the course of maliciously prosecuting innocent persons. There are dozens of identified cases in which GUEVARA has engaged in serious investigative misconduct, including many cases in which he has manipulated and coerced suspects and witnesses and fabricated and concealed evidence, as he did in this case. In many of these cases, detective HALVORSEN worked hand-in-hand with GUEVARA while MINGEY supervised the rogue detectives, approved their investigations, and sometimes played an even more active role in framing suspects.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

109. Given this extensive history, it is apparent that GUEVARA, HALVORSEN, and MINGEY engaged in such misconduct because they had no reason to fear that the City of Chicago and its Police Department would ever discipline then [sic] for doing so.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

110. Regarding their role in framing Plaintiff, the Defendant Officers have all indicated that they will assert their Fifth Amendment rights to silence when questioned about: whether they physical coerced a court-reported statement from Plaintiff, whether they manipulated, threatened and coerced a statement from Plaintiff's girlfriend, and whether they attributed false oral statements to Plaintiff, and whether they prepared false reports.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

111.    On at least seven occasions in the last few years, defendant GUEVARA has invoked his Fifth Amendment right and refused to answer any questions about allegations that he physically coerced suspects and/or manipulated dozens of witnesses to provide false identifications because truthful responses could subject him to criminal liability, including every single instance of misconduct detailed below.  And recently, HALVORSEN and defendant MINGEY have begun asserting their Fifth Amendment rights to refuse to answer questions about their involvement in Area Five investigations, most recently in response to interrogatories propounded to them in the federal civil rights litigation brought by Armando Serrano and Jose Montanez.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

112.    Bill Dorsch is a former Area Five Chicago police detective.  While serving with the Chicago police department, Dorsch was assigned to investigate a murder.  Several months after the murder occurred, Defendant GUEVARA brought two juveniles to the police station who purported to have witnessed a shooting and recorded the license place [sic] of the shooter.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

113.    Based on the information provided, Detective Dorsch created a photo array for the juveniles to attempt to identify the shooter.  While the first juvenile was viewing the photo array, and before he identified any of the photographs, Defendant GUEVARA pointed to the suspect's photo and told the juvenile "that's him."  The juvenile then agreed with GUEVARA, saying that was the person who committed the shooting.

**ANSWER:**     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

114.     Dorsch then directed Defendant GUEVARA to leave the room and had the other juvenile view the same photo array, and he was unable to make any identification.

**ANSWER:**     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

115.     Based on the first juvenile's identification, the suspect was charged with murder. Subsequently, Dorsch spoke to the two juveniles without Defendant GUEVARA being present. The juveniles admitted that they had been paid to falsely claim that the suspect was the person responsible for the shooting.  After prosecutors spoke to the two juveniles, the suspect was released.

**ANSWER:**     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

116.     Defendant GUEVARA's activities have drawn the interest of federal law enforcement officers.  In 2001, the FBI authored a special report detailing the criminal activity of Chicago Police Officer Joseph Miedzianowski and his associates, including defendant GUEVARA.  The report details that defendant GUEVARA, while acting in his capacity as a police officer, would apprehend drug and gun dealers and then allow them to "buy their way of trouble."  According to the report, GUEVARA also took bribes to alter both positive and negative lineups of murder suspects.  Finally, the report states that GUEVARA, using an attorney [Richard Beuke] as a conduit, would receive cash in exchange for the ultimate dismissal of murder cases he investigated.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

117. In 1989, Defendant GUEVARA coerced Samuel Perez into falsely identifying Juan Johnson as the person who killed Ricardo Fernandez. Defendant GUEVARA put Perez inside his car, showed Perez a photo of Juan Johnson, and told Perez that he wanted Juan Johnson to take the blame for the murder. Unsurprisingly, Perez subsequently falsely identified Johnson as a murderer.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

118. In 1989, Defendant GUEVARA also coerced Salvador Ortiz into making a false identification of Juan Johnson, which he later recanted.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

119. Juan Johnson was later exonerated and brought suit against Defendant GUEVARA. A federal jury found that GUEVARA framed Johnson for murder and awarded Johnson $21 million in damages.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

120. In 1989, Defendant GUEVARA coerced Virgilio Muniz into making a false identification by repeatedly threatening Muniz that if he did not identify Manuel Rivera as the murderer, Muniz would "go down for the murder."

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

121.     In 1989, Defendant GUEVARA coerced Virgilio Calderon Muniz (unrelated to Virgilio Muniz, described in the above paragraph) into making a false identification by telling him who to identify and making a veiled threat as to what would happen if he did not.

**ANSWER:**     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

122.     In 1991, Defendant GUEVARA coerced Wilfredo Rosario into making a false identification and giving false testimony before the Grand Jury by threatening Rosario that if he did not identify Xavier Arcos as the murderer, Rosario would be "pinned" for the murder. GUEVARA fed Rosario details of the crime, such as the number of shots fired, the type of vehicle used in the crime, and the participants in the crime.  Rosario recanted his identification of Arcos at trial.  Though Arcos was still found guilty of murder by a jury, the appellate court overturned the conviction based on the lack of sufficient evidence.

**ANSWER:**     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

123.     In 1991, Defendant GUEVARA physically coerced sixteen-year-old David Velazquez into making a false identification and giving false testimony by taking him to a rival gang's territory, beating him while chained to a wall at Area 5, and threatening to "get you for anything I can" if he did not talk.  All of the false details of Velazquez's statement were provided by GUEVARA.

**ANSWER:**     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

124.     In 1993, Defendant GUEVARA coerced an identification from Carl Richmond by threatening Richmond that he could make his life very uncomfortable if Richmond did not

identify Robert Bouto as the murderer of one of Richmond's friends. Richmond, who was familiar with GUEVARA's tactics, believed that GUEVARA would honor this threat.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

125. In 1995, Defendant GUEVARA arrested Edwin Davila and, in an attempt to coerce a confession, chained him to the wall of an interrogation room and told him that he was going to frame him for murder. After Davila told GUEVARA that he did not do it, GUEVARA forced Davila to participate in a lineup in which two witnesses identified Davila as the perpetrator, despite the fact that each of those witnesses had previously told the police that they had not been able to see the shooter.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

126. In 1991, Defendant GUEVARA told Efrain and Julio Sanchez to pick David Colon out of a lineup. As a result, these men falsely claimed that Colon had committed murder, but later came forward to bring Defendant GUEVARA's misconduct to light.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

127. In 1995, Defendant GUEVARA coerced Evelyn Diaz into making a false identification and providing false testimony to the Grand Jury by threatening Diaz that if she did not identify Luis Serrano as the shooter, her children would be taken away by the Department of Children and Family Services.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

128.    In 1995, Defendant GUEVARA told Luis Figueroa to falsely identify Angel Diaz as the perpetrator even though Figueroa did not see anything.  Figueroa identified Diaz but recanted his identification at trial.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

129.    In 1995, Defendant GUEVARA coerced Gloria Ortiz Bordoy into making a false statement and testifying falsely against Santos Flores at trial.  During Ortiz Bordoy's six-to-eight-hour interrogation, GUEVARA yelled in her face, threatened that her children would be taken by the Department of Children and Family Services, called her "the B word," and "raised his hand" saying that he "felt like smacking" her.  Finally, without reading its contents, Ortiz Bordoy signed a statement that the detectives wrote out for her because she just wanted to "get out of there."

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

130.    In 1995, Defendant GUEVARA coerced Rodolfo Zaragoza, who was a victim and an eyewitness to a crime, into making a false identification and providing false testimony.  Zaragosa was intimidated by GUEVARA and identified Ricardo Rodriguez as the offender because GUEVARA told him that Rodriguez was the shooter.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

131.    In 1995, Defendant GUEVARA engaged in misconduct when he told Jose Melendez to falsely identify Thomas Sierra as the shooter even though Melendez did not see the

shooter.  Melendez identified Sierra but recanted his identification at trial.  Thomas Sierra was exonerated in 2018 but only after serving his entire sentence .

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

132.    In 1996, Defendant GUEVARA coerced Maria Rivera into making a false identification of a man in a lineup by unzipping his pants and propositioning her.  Rivera later told the prosecutor that she had falsely identified an individual in a lineup at GUEVARA's direction.  The prosecution later abandoned murder charges against the individual whom Rivera falsely identified in the lineup.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

133.    In 1997, Defendant GUEVARA coerced Robert Ruiz into making a false identification.  GUEVARA detained Ruiz repeatedly over the course of a ten-day period, locking him in an interrogation room without food, water, or a bathroom.  Though Ruiz kept telling GUEVARA that he had not seen the shooter or the driver involved in the crime, GUEVARA told Ruiz whom to identify and what to say in his statement.  Ruiz finally implicated Freddy and Concepcion Santiago in the murder because Ruiz believed that GUEVARA would continue to harass him until he changed his story.  Ruiz recanted his identification at trial, and the judge found Freddy and Concepcion Santiago not guilty.  The trial judge found it disturbing that GUEVARA was the lead detective in the case because the victim was GUEVARA's nephew.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

134.    In 1997, Defendant GUEVARA withheld physical evidence and failed to disclose the exculpatory statements of witness Ruth Antonetty to Ariel Gomez.  Gomez was accused of firing multiple shots from a car into a crowd.  Ruth Antonetty told GUEVARA that she heard multiple shots coming from within the crowd, not from Gomez's vehicle.  GUEVARA continued to pressure her to change her account, and when she would not, he told her he "had other witnesses" and "didn't need her."  As a result, Ariel Gomez did not have access to key *Brady* material at his trial.  Gomez was also exonerated last year.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

135.    In 1998, Defendant GUEVARA used suggestive tactics to force twelve-year-old Orlando Lopez to falsely identify Jacques Rivera as the person who shot Felix Valentin.  As a result, Rivera was convicted of murder.  In 2011, Lopez testified at an evidentiary hearing that he had never been able to identify Rivera as the murderer.  As a result, Rivera received a new trial. Ultimately, the State's Attorney dropped all charges against Rivera.  Rivera was awarded a Certificate of Innocence and filed a federal civil rights action in this Court.  On June 29, 2019, a jury returned a verdict in favor of Rivera in the amount of $17,000,000.00 in compensatory damages and $75,000.00 each in punitive damages against Reynaldo Guevara and Edward Mingey.  .

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

136.    In 1982, Defendant GUEVARA and another officer arrested and physically assaulted Annie Turner for smoking on a bus.  GUEVARA called her a "bitch" and pushed her out the back door of the bus.  He twister her arm, threatened to "snap" it, and handcuffed her so

tightly that he skin broke.  He also hit her across the face with a metal bracelet he was wearing and called her a "nigger bitch".  Turner sought medical treatment and filed a complaint with the Office of Professional Standards.

      **ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

      137.    In 1982, Defendant GUEVARA and three other officers broke through Almarie Lloyd's locked front door and conducted a warrantless search of her home.  When Lloyd asked who they were, she was told to shut up.  The officers terrified Lloyd, her brother, and two children, and left the home in shambles.  Lloyd filed a complaint with the Office of Professional Standards the next day.

      **ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

      138.    In 1983, Defendant GUEVARA and other officers forcibly removed Leshurn Hunt from his home and handcuffed him to a ring in the wall at the police station where he was beaten about the head, face, and body until he confessed to murder and robbery charges.  Hunt was detained for approximately 23 hours and deprived of food, water, and sleep until after he confessed.  Hunt sought medical treatment for his injuries and filed a complaint with the Office of Professional Standards. Witnesses who saw Hunt while in custody corroborated his claim of a beating by the police.  The criminal court judge suppressed Hunt's confession, and a jury returned a favorable verdict in a related civil rights action on Hunt's claim of excessive detention against the City of Chicago.

      **ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

139.    In 1984, Defendant GUEVARA and other officers physically assaulted Graciela Flores and her 13-year old sister Anna during a search of their home, during which the officers did not identify themselves as police.  GUEVARA repeatedly slapped Graciela, called her a "bitch" and pulled her hair.  As a result of this incident, Graciela's arm was dislocated/broken and she spent one week in the hospital.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

140.    In 1985, Defendant GUEVARA attempted to coerce a false statement from Reynaldo Munoz. GUEVARA handcuffed Munoz and put him in the back of a squad car.  When Munoz denied knowing the people GUEVARA was asking about, GUEVARA repeatedly hit him in the mouth with his fist.  GUEVARA then took Munoz to rival gang territory where he allowed rival gang members to spit on Munoz and beat Munoz about the head.  Munoz was later framed by HALVORSEN for the murder of after HALVORSEN induced a false identification from an alleged witness to the shooting.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

141.    In 1986, Defendant GUEVARA threw Rafael Garcia against a car, struck him in the face several times, kicked him and hit him in the head.  Garcia filed a complaint with the Chicago Police Department's Office of Professional Standards (OPS).  Although GUEVARA denied the charges, Garcia's complaints were corroborated by physical evidence, as he was treated at the hospital for lacerations to the head.  After an investigation into the incident, OPS found that GUEVARA had lied about the incident and recommended that GUEVARA be suspended for two days.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

142. In 1986, Defendant GUEVARA and two other officers coerced a confession from Daniel Pena by beating him about the face and ribs with their hands and about the groin and thighs with flashlights during an interrogation. Pena was taken to see a doctor where he complained about being beaten by the police. The doctor found bruising to Pena's legs and abrasions and lacerations to Pena's nose. Family members corroborated Pena's claim that he had been beaten while in police custody.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

143. In 1986, Defendant GUEVARA pulled over Melvin Warren because Warren cut him off while driving westbound on Augusta Boulevard. GUEVARA called Warren a "nigger dog" and "threatened to tear [Warren's] head off." GUEVARA hit Warren in the face with a closed fist and then forced him down into the front seat of his car and began to choke him. Two eyewitnesses confirmed that GUEVARA initiated the beating. In response to this incident, Warren sought medical treatment and filed a complaint with the Office of Professional Standards (OPS). OPS sustained Warren's allegations that GUEVARA had physically and verbally assaulted him and recommended that GUEVARA be reprimanded.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

144. In 1989, Defendant GUEVARA coerced a false confession from Victor Vera by transporting him to rival gang territory and threatening to release him unless he confessed to the

murder of Edwin Castaneda.  Fearing for his life, Vera agreed to falsely confess to a crime he knew nothing about.

**ANSWER:**     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

145.     In 1991, Defendant GUEVARA coerced David Rivera into signing a confession for murder by intimidation, threats, and inducements.  GUEVARA told Rivera that if he confessed he would serve seven years in prison whereas if he did not confess, he would be sent away for fifty years.  GUEVARA then promised Rivera that if he signed a statement, he could go home.

**ANSWER:**     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

146.     In 1991, Defendant GUEVARA coerced a false confession from Daniel Rodriguez through the use of threats and intimidation.  While en-route to the police station, GUEVARA threatened to harm Rodriguez's family if he did not cooperate.  Once at Area 5, Rodriguez was chained to a wall, denied food, water, and use of a restroom, and beaten by GUEVARA's partner, HALVORSEN in the chest and torso.  GUEVARA provided details of the crime to Rodriguez to include in Rodriguez's false confession.

**ANSWER:**     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

147.     In 1992, Defendant GUEVARA engaged in misconduct when he interrogated Jacqueline Montanez without a youth officer present.  The appellate court reversed and remanded Ms. Montanez's conviction for murder, noting that "not only was defendant

48

interrogated before having an opportunity to confer with a concerned adult, but, worse, any opportunity to do so was effectively frustrated by police."

**ANSWER:**     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

148.    In 1993, Defendant GUEVARA arrested fifteen-year-old Eliezar Cruzado and threatened him with life imprisonment if he did not make a statement implicating himself in a murder.  GUEVARA also told Cruzado that he could go home and see his family again, but only if he agreed to make a statement.  At the time, Cruzado had a limited ability to read and write.

**ANSWER:**     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

149.    In 1993, Defendant GUEVARA used physical force and threats to coerce a false confession from Adolfo Frias-Munoz.  Over the course of a two-day interrogation, Frias-Munoz was handcuffed to a ring on the wall of the interrogation room, hit in the face with an open hand by Defendant GUEVARA, and beaten by two other officers.  Though isolated in a locked interrogation room, Frias-Munoz could hear his wife screaming and his son crying in another room.  GUEVARA threatened Frias-Munoz that if he did not confess, his wife would go to prison and his children would be taken away.  Frias-Munoz, who did not speak English, agreed to give a statement to an assistant state's attorney.  Frias-Munoz spoke in Spanish and GUEVARA translated the statement so that the prosecutor could write the statement in English.  Frias-Munoz then signed a statement he could not read.

**ANSWER:**     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

150.    In 1994, Defendant GUEVARA, after 14 hours of interrogation, coerced a confession from Adrian Duta by hitting him in the face with an open palm, punching him in the stomach, and telling him he could go home if he signed a statement.  When Duta's father came to see Duta at the station house, Duta was exhausted and crying and repeatedly said that he did not know what he had signed and had only signed the document so he could go home.  Duta complained to his father of being struck in the head and stomach by GUEVARA.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

151.    In 1994, defendant GUEVARA and Mr. HALVORSEN manipulated, coerced and induced false identifications of Robert Almodovar and William Negron from Kennelly Saez and Jacqueline Grande for the murders of Jorge Rodriguez and Amy Merkes.  Saez admitted that GUEVARA showed him and Grande photos of Almodovar and Negron prior to having them view a line-up.  Almodovar and Negron were wrongfully convicted of the murders based on these fabricated eye-witnesses identifications and sentenced to natural life imprisonment.  Both men were exonerated and received Certificates of Innocence in November 2017.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

152.    In 1995, Defendant GUEVARA and Mr. HALVORSEN coerced a confession from 17-year-old Santos Flores after handcuffing him to the wall of a locked interview room and refusing his requests for an attorney.  During the course of the 11-hour interrogation, GUEVARA yelled at him, slapped him numerous times on the side of his head, and told him that if he did not confess he would never see the light of day.  Flores eventually gave a statement to

the police indicating his involvement in the crime. Flores's statement was ruled inadmissible on appeal on the grounds that it was elicited in violation of *Miranda*.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

153. In 1997, Defendant GUEVARA coerced a false confession from Voytek Dembski by beating him while chained to a wall in a locked interrogation room. Dembski, a Polish National who did not speak English, was interrogated by GUEVARA without *Miranda* warnings, without notification to the Polish consulate, and without a Polish language interpreter. Dembski could not read the statement he eventually signed as it was written in English.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

154. In 1998, Defendant GUEVARA repeatedly hit Rosauro Mejia in an attempt to coerce a confession from him. Rosauro never confessed and was finally released after being held in custody for three days.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

155. In 1998, Defendant GUEVARA repeatedly pulled Adriana Mejia's hair and struck her once on the back of her neck while she was interrogated.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

156. In 1998, Defendant GUEVARA repeatedly threatened and beat Arturo Reyes in an attempt to unconstitutionally coerce Reyes into giving an incriminating statement. After two days of isolation and interrogation, Reyes provided a false statement.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

157. In 1998, Defendant GUEVARA repeatedly struck Gabriel Solache on the left side of his head and in the stomach while Solache was chained to the wall of a locked interrogation room. After 40 hours of interrogation, Solache gave a false statement so the beating would stop. Solache sought medical treatment and sustained permanent hearing loss to his left ear.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

158. Reyes and Solache were also exonerated and released from prison. Reyes filed a civil rights action in this Court, *Deleon-Reyes v. Guevara, et al.* 18-cv-1028.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

### Plaintiff's Damages

159. Plaintiff has suffered and continues to suffer enormous physical and psychological injury as a direct and proximate result of the Defendants' misconduct. Plaintiff faced the risk of being executed for a crime he did not commit and spent 27 years of his life imprisoned for crimes that he did not commit. He woke up each day with this reality, not knowing whether he would see his family or child again outside prison property or ever successfully prove the wrongfulness of his conviction and incarceration.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

160.    Over the course of his 27 years of imprisonment, Plaintiff was separated from his son who was not even born when he was incarcerated.  Plaintiff lost the chance to raise, care for, and mentor his child who was a grown man by the time Plaintiff was released from prison.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

161.    As a result of Defendants' actions, Plaintiff continues to experience physical and psychological pain and suffering, humiliation, constant fear and anxiety, deep depression, despair, rage, and other physical and psychological effects from his years of wrongful conviction.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

**COUNT I**
**42 U.S.C. § 1983 – Due Process: False Confession**

162.    Plaintiff repeats and re-alleges all of the paragraphs in this Complaint as if fully set forth herein.

**ANSWER:**    Defendant Guevara repeats and re-alleges his answer to all of the paragraphs in this Complaint as if fully set forth herein.

163.    In the manner described more fully above, the Police Officer Defendants and Defendant DIFRANCO, acting as an investigator and without probable cause to suspect Plaintiff of committing any crime, individually, jointly, and in conspiracy with one another, and others unknown, as well as under color of law and within the scope of their employment, forced Plaintiff to make false statements involuntarily and against his will, which incriminated him and which were used against him in criminal proceedings, in violation of his rights secured by the Fifth and Fourteenth Amendments.

**ANSWER:**     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

164.     In addition, the Police Officer Defendants and defendant DIFRANCO, acting as an investigator and without probable cause to suspect Plaintiff of any crime, individually and jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, used physical violence and psychological coercion in order to force Plaintiff to incriminate himself falsely and against his will in a crime he had not committed, in violation of his right to due process secured by the Fourteenth Amendment.  This misconduct was so severe as to shock the conscience, it was designed to injure Plaintiff, and it was not supported by any conceivable governmental interest.

**ANSWER:**     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

165.     Similarly, Defendant DIFRANCO, acting individually, jointly, and in conspiracy with the Police Officer Defendants, deprived Plaintiff of his constitutional right to a fair trial, in violation of the Fifth and Fourteenth Amendments when he knowingly solicited a physically coerced statement from the Plaintiff that he knew to be false.  Indeed, DIFRANCO directly participated in crafting the false statement with the defendant officers that was then fed to the Plaintiff whose will had been overborne by the physical and psychological abuse he incurred at the hands of the Defendant officers.

**ANSWER:**     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

166.     In addition, the Police Officer Defendants and defendant DIFRANCO, acting as an investigator and without probable cause to suspect Plaintiff of any crime, individually and

jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, fabricated a false confession, which was attributed to Plaintiff and used against Plaintiff in his criminal proceedings, in violation of Plaintiff's right to a fair trial protected by the Fourteenth Amendment.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

167.    Specifically, Police Officer Defendants and defendant DIFRANCO conducted, participated in, encouraged, advised, and ordered an unconstitutional 24-hour interrogation of Plaintiff, using physical violence and psychological coercion, which overbore Plaintiff's will and resulted in him making involuntary statements implicating himself in the murders of Kevin and Torrence Wiley.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

168.    Those false incriminating statements were wholly fabricated by the Defendants and attributed to Plaintiff who was forced to regurgitate the statements before a court reporter.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

169.    Those false incriminating statements were used against Plaintiff to his detriment throughout his criminal case.  They were the reason that Plaintiff was prosecuted and convicted of the Wiley brothers' murders.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

170.    The misconduct described in this Court was objectively unreasonable and was undertaken intentionally, and in total disregard of the truth and Plaintiff's clear innocence.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

171.    As a result of Defendants' misconduct described in this County, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

172.    The misconduct described in this County by the Police Officer Defendants was undertaken pursuant to the policy and practice of the Chicago Police Department, in the manner more fully described below in Count VII.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

**COUNT II**
**42 U.S.C. § 1983 – Due Process: Fabrication of Evidence**

173.    Plaintiff repeats and re-alleges all of the paragraphs in this Complaint as if fully set forth herein.

**ANSWER:**    Defendant Guevara repeats and re-alleges his answer to all of the paragraphs in this Complaint as if fully set forth herein.

174.    As more fully described above, the individual Police Officer Defendants acting individually, jointly, and in conspiracy, as well under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial, in violation of the Fifth

and Fourteenth Amendments by fabricating Plaintiff's inculpatory statements and by testifying at Plaintiff's trial about those statements.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

175.    In the manner described more fully above, Defendants fabricated, coerced, manipulated and/or solicited false testimony from Rosa Bello implicating Plaintiff in the crimes that they knew he did not commit; falsified police reports; obtained Plaintiff's conviction using false evidence; and failed to correct fabricated evidence that they knew to be false when it was used against Plaintiff at his criminal trial.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

176.    The Police Officer Defendants concealed and fabricated additional evidence that is not yet known to Plaintiff.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

177.    Absent this misconduct, Plaintiff would not have been wrongfully convicted of the murders of the Wiley brothers.  Thus, the defendants' misconduct deprived Plaintiff of his constitutional right to a fair trial and directly resulted in Plaintiff's wrongful conviction.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

178.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

179. As a direct and proximate result of this deprivation of his constitutional right to a fair trial, Plaintiff suffered injuries, including but limited to loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

180. The misconduct described above in this Count by the Defendant officers was undertaken pursuant to the policy and practice of the Chicago Police Department, in the manner more fully described below in Count VII.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

### COUNT III
### 42 U.S.C. § 1983 – *Brady* Violations

181. Plaintiff repeats and re-alleges all of the paragraphs in this Complaint as if fully set forth herein.

**ANSWER:** Defendant Guevara repeats and re-alleges his answer to all of the paragraphs in this Complaint as if fully set forth herein.

182. As described in detail above, all of the individual Police Officer Defendants, acting individually, jointly, and in conspiracy, as well under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial, in violation of the Fifth and Fourteenth Amendments by withholding and suppressing exculpatory evidence from Plaintiff and the prosecutors who tried the case.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

183. Defendant DIFRANCO, while acting in an investigatory function, also withheld exculpatory evidence from Plaintiff during the pendency of his criminal proceedings, up to and including the time of Plaintiff's conviction.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

184. The Police Officer Defendants and defendant DIFRANCO continued to suppress exculpatory evidence after Plaintiff's conviction. Had this exculpatory evidence been disclosed, Plaintiff would not have spent 27 years in prison for a crime he did not commit.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

185. The misconduct described above was objectively unreasonable and was undertaken intentionally, with malice, willful indifference to Plaintiff's constitutional rights and in total disregard of the truth and Plaintiff's clear innocence.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

186. As a direct and proximate result of this deprivation of his constitutional right to a fair trial, Plaintiff suffered injuries, including but limited to loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

187.     The misconduct described above in this Count by the Defendant officers was undertaken pursuant to the policy and practice of the Chicago Police Department, in the manner more fully described below in Count VII.

ANSWER:     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

### COUNT IV
### 42 U.S.C. § 1983 – Malicious Prosecution

188.     Plaintiff repeats and re-alleges all of the paragraphs in this Complaint as if fully set forth herein.

ANSWER:     Defendant Guevara repeats and re-alleges his answer to all of the paragraphs in this Complaint as if fully set forth herein.

189.     In manner more fully described above, the Defendant officers acting individually, jointly, and in conspiracy, as well under color of law and within the scope of their employment, deprived Plaintiff of his Fourth and Fourteenth Amendment constitutional rights.

ANSWER:     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

190.     The Defendant officers accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so, in violation of his rights secured by the Fourth Amendment and the procedural and substantive due process components of the Fourteenth Amendment.

ANSWER:     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

191.     Similarly, defendant DIFRANCO, acting in an investigatory function, exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any

probable cause for doing so, in violation of his rights secured by the Fourth Amendment and the procedural and substantive due process components of the Fourteenth Amendment.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

192.    In so doing, the Defendant officers and Defendant DIFRANCO caused Plaintiff to be unreasonably seized and improperly subjected to judicial proceedings for which there was no probable cause.  These judicial proceedings were instituted and continued maliciously, resulting in injury, and in all such proceedings were ultimately terminated in Plaintiff's favor indicative of his innocence.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

193.    The Defendant officers and defendant DIFRANCO subjected Plaintiff to unauthorized and arbitrary governmental action that shocks the conscience in that Plaintiff was deliberately and intentionally framed for a crime of which he was totally innocent, through the Defendants' procurement of a physically coerced confession, fabrication of evidence, and suppression, and withholding of evidence.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

194.    The misconduct described above was objectively unreasonable and was undertaken intentionally, with malice, willful indifference to Plaintiff's constitutional rights and in total disregard of the truth and Plaintiff's clear innocence.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

195.     As a direct and proximate result of this deprivation of his constitutional right, Plaintiff suffered injuries, including but limited to loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

**ANSWER:**     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

196.     The misconduct described above in this Count by the Defendant officers was undertaken pursuant to the policy and practice of the Chicago Police Department, in the manner more fully described below in Count VII.

**ANSWER:**     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

### COUNT V
### 42 U.S.C. § 1983 – Conspiracy

197.     Plaintiff repeats and re-alleges all of the paragraphs in this Complaint as if fully set forth herein.

**ANSWER:**     Defendant Guevara repeats and re-alleges his answer to all of the paragraphs in this Complaint as if fully set forth herein.

198.     All of the individual Police Officer Defendants, defendant DIFRANCO, and other co-conspirators, known and not yet known to Plaintiff, reached an agreement amongst themselves to coerce, induce, and fabricate false evidence in the form of confessions, admissions, witness statements and testimony for the purpose of framing Plaintiff for a crime he did not commit.

**ANSWER:**     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

199.    All of the individual Police Officer Defendants, defendant DIFRANCO, and other co-conspirators, known and not yet known to Plaintiff, reached an agreement amongst themselves to deprive Plaintiff of material exculpatory evidence and information to which he was lawfully entitled and to conceal their misconduct from Plaintiff, all in violation of Plaintiff's constitutional rights, as described above.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

200.    In this manner, the Police Officer Defendants and defendant DIFRANCO acting in concert with other known and unknown co-conspirators, conspired to accomplish an unlawful purpose by an unlawful means.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

201.    In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant joint activity.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

202.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally and with willful indifference to Plaintiff's constitutional rights.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

203.    As a direct and proximate result of this of this[sic] illicit agreement referenced above, Plaintiff suffered injuries, including but limited to loss of liberty, great mental anguish,

humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

203. [Sic] The misconduct described above in this Count by the Defendant officers was undertaken pursuant to the policy and practice of the Chicago Police Department, in the manner more fully described below in Count VII.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

**COUNT VI**
**42 U.S.C. § 1983 – Failure to Intervene**

204. Plaintiff repeats and re-alleges all of the paragraphs in this Complaint as if fully set forth herein.

**ANSWER:** Defendant Guevara repeats and re-alleges his answer to all of the paragraphs in this Complaint as if fully set forth herein.

205. In the manner described above, one or more of the individual Police Officer Defendants, defendant DIFRANCO, and other unknown individuals, stood by without intervening to prevent the alleged constitutional violations, despite having an opportunity to do so.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

206. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with willful indifference to Plaintiff's constitutional rights, and in total disregard of the truth and Plaintiff's innocence.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

207.    As a direct and proximate result of this failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered injuries, including, but not limited to, loss of liberty, great mental anguish, humiliation, degradation, emotional pain and suffering, and other grievous and continuing injuries and damages.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

208.    The misconduct described above in this Count by the Defendant officers was undertaken pursuant to the policy and practice of the Chicago Police Department, in the manner more fully described below in Count VII.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

### COUNT VII
### 42 U.S.C. § 1983 – *Monell* Policy Claim

**Count VII of Plaintiff's Complaint is not directed at Defendant Guevara, and therefore he answers Count VII only to the extent the allegations herein are adopted and re-alleged in other counts of Plaintiff's Complaint.**

209.    Plaintiff repeats and re-alleges all of the paragraphs in this Complaint as if fully set forth herein.

**ANSWER:** Defendant Guevara repeats and re-alleges his answer to all of the paragraphs in this Complaint as if fully set forth herein.

210.    The Chicago Police Department is responsible for scores of miscarriages of justice.  Since 1986, no fewer than 75 documented cases have come to light in which Chicago

Police Detectives amassed "evidence" against an innocent person for a serious crime that he did not commit. There are undoubtedly many more such cases that have not yet been discovered.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

211. The false charges against innocent people include numerous cases in which Chicago Police Officers used the very same tactics that Defendants GUEVARA, MINGEY, PAULNITSKY, MONTILLA, and Mr. Halvorsen employed against Plaintiff in this case, including: (1) physical abuse and coercion to procure an inculpatory statement/confession; (2) concealment of exculpatory evidence; (3) manipulation of witnesses in order to obtain false identifications; and (4) manipulation of witnesses in order to influence their testimony; and (5) the use of other tactics to secure the arrest, prosecution and conviction of a person without regard to his actual guilt or innocence of the offense.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

212. At all times relevant hereto, members of the Chicago Police Department, including but not limited to the Defendants in this action, systematically used prolonged physical violence and psychological coercion to force suspects to make false inculpatory and incriminating statements against themselves. As a matter of widespread custom and practice, these physically coerced statements from criminal defendants were routinely used to convict defendants at trial.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

213.    Consistent with the municipal police and practice described in the preceding paragraph, employees of the City of Chicago, including but not limited to the named Defendants, used physical violence and psychological coercion to overcome Plaintiff's will and force him to regurgitate a false and fabricated confession that was later used as the primary piece of evidence against at his trial for the murders of the Wiley brothers.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

214.    At all times relevant hereto, members of the Chicago Police Department, including but not limited to the Defendants in this action, systematically suppressed exculpatory and/or impeaching material by intentionally secreting discoverable reports, memos and other information in files that were maintained solely at the police department and were not disclosed to the participants of the criminal justice system.  As a matter of widespread custom and practice, these clandestine files were withheld from the State's Attorney's Office and from criminal defendants, and they were routinely destroyed at the close of the investigation, rather than being maintained as part of the official file.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

215.    Consistent with the municipal policy and practice described in the preceding paragraph, employees of the City of Chicago, including but not limited to the named Defendants, concealed exculpatory evidence from Plaintiff, including evidence that Plaintiff's court-reported statement was involuntary and procured through physical coercion, that Plaintiff's girlfriend's statement was procured through manipulation, threats and coercion, that certain oral statements attributed to the Plaintiff were fabricated and all police reports reflecting that two other suspects

(Efrain Cruz and Francisco Veras) were interrogated and allegedly identified as the perpetrators of the Wiley brothers' murders.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

216. At all times relevant hereto, members of the Chicago Police Department, including but not limited to the Defendants in this action, routinely manipulated, tricked, lied to, and misled witnesses for the purpose of influencing their testimony to conform to a false narrative contrived by the officers themselves. As a matter of widespread practice and custom, these tactics were also used to induce false identifications of suspects.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

217. Consistent with the municipal policy and practice described in the preceding paragraph, employees of the City of Chicago, including but not limited to the named Defendants, manipulated, tricked, and improperly influenced the testimony of Rosa Bello to falsely implicate Plaintiff in the shooting of the Wiley brothers' by threatening to take her children away from her.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

218. The City of Chicago and the Chicago Police Department has failed to investigate any of the cases in which Chicago Police Detectives recommended charging an innocent person with a serious crime, and no Chicago Police Officer has ever been disciplined as a result of his misconduct in any of those cases.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

219.    Prior to and during 1990, the year in which Plaintiff was falsely charged with the Wiley brothers' murders, the City of Chicago operated a dysfunctional disciplinary system for Chicago Police Officers accused of serious misconduct.  The Former Chicago Police Officer of Professional Standards almost never imposed significant discipline against police officers accused of violating the civil and constitutional rights of members of the public.  The Chicago Police disciplinary apparatus included no mechanism for identifying police officers who were repeatedly accused of engaging in the same type of misconduct.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

220.    As a matter of both policy and practice, municipal policy makers and department supervisors condoned and facilitated a code of silence with the Chicago Police Department.  In accordance with this code, officers refused to report and otherwise lied about misconduct committed by their colleagues, including the misconduct at issue in this case.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

221.    As a result of the City of Chicago's established practice of not tracking and identifying police officers who are repeatedly accused of the same kinds of serious misconduct, failing to investigate cases in which the police are implicated in a wrongful charge or conviction, failing to discipline officers accused of serious misconduct and facilitating a code of silence within the Chicago Police Department, officers (including the Defendants here) have come to believe that they may violate the civil rights of members of the public and cause innocent persons to be charged with serious crimes without fear of adverse consequences.  As a result of

these policies and practices of the City of Chicago, members of the Chicago Police Department act with impunity when they violate the constitutional and civil rights of citizens.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

222. The defendant officers have a long history of engaging in the kind of investigative misconduct that occurred in this case, including the physical coercion of fabricated confessions, manipulation of witnesses, fabrication of evidence, and concealment of evidence in the course of maliciously prosecuting innocent persons. There are approximately 40 known cases in which GUEVARA and Mr. Halvorsen have engaged in serious investigative misconduct, including many cases in which they have manipulated and coerced witnesses and fabricated and concealed evidence, as he did in this case. Defendants engaged in such misconduct because he had no reason to fear that the City of Chicago and its Police Department would ever discipline him for doing so.

**ANSWER:** Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

223. The City of Chicago and its Police Department failed in 1994 and in the years prior to provide adequate training to Chicago Police Detectives and other officers in any of the following areas, among others:

a. The constitutional requirement to disclose exculpatory evidence, including how to identify such evidence and what steps to take when exculpatory evidence has been identified in order to ensure that the evidence is made part of the criminal proceeding.

  b.  The need to refrain from manipulation or potentially coercive conduct in relation to witnesses.

  c.  The need to refrain from using physical violence, threats of violence, and psychological coercion to procure involuntary statements from suspects.

  d.  The risks of wrongful conviction and the steps police officers should take to minimize risks.

  e.  The risks of engaging in tunnel vision during investigation.

  f.  The need for full disclosure, candor, and openness on the part of all officers who participate in the police disciplinary process, both as witnesses and as accused officers, and the need to report misconduct committed by fellow officers.

**ANSWER:**  Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

224.  The need for police officers to be trained in these areas was and remains obvious. The City of Chicago's failure to train Chicago Police Officers as alleged in the preceding paragraph proximately caused Plaintiff's wrongful conviction and his injuries.

**ANSWER:**  Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

225.  The City's failure to train supervise and discipline its officers, including repeat offenders such as Defendants GUEVARA, MINGEY, and Mr. Halvorsen effectively condones, ratifies, and sanctions the kind of misconduct that the Police Officer Defendants committed against Plaintiff in this case. Constitutional violations such as occurred in this case are encouraged and facilitated as a result of the City's practices and *de facto* polices, as alleged above.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

226.    The City of Chicago and officials within the Chicago Police Department failed to act to remedy the patterns of abuse described in the preceding paragraphs, despite actual knowledge of the pattern of misconduct.  They thereby perpetuated the unlawful practices and ensured that no action would be taken (independent of the judicial process) to remedy Plaintiff's ongoing injuries.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

227.    The policies and practices described in the foregoing paragraphs were consciously approved by the City of Chicago policymakers who were deliberately indifferent to the violations of the constitutional rights described herein.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

228.    The actions of all of the individual Police Officer Defendants were done pursuant to policies and practices of the Chicago Police Department were done pursuant to one or more interrelated *de facto* policies, practices and/or customs of the Defendant City of Chicago which were ratified by policymakers for the City of Chicago with final policymaking authority.  These policies and practices included, among others:

a.    conducting physically and psychologically or otherwise illegal or improperly coercive interrogations of suspects and witnesses in order to obtain false statements and wrongful convictions.

b.      manufacturing and fabricating false witness statements and manipulating and lying to witnesses to influence unreliable and inaccurate testimony.

c.      filing false reports and giving false statements and testimony about interrogations and witness interviews or constructing parts or all of witness statements; suppressing evidence concerning interrogations and/or witness interviews; pursuing and obtaining wrongful prosecutions and false imprisonments on the basis of fabricated witness statements, including those by "jailhouse snitches;" and otherwise covering up the true nature of those interviews and/or interrogations.

d.      failing to properly train, supervise, discipline, transfer, monitor, counsel and/or otherwise control police officers, particularly those who are repeatedly accused of misconduct, on how to avoid false arrests, wrongful imprisonments, malicious prosecutions, and wrongful convictions, and on the proper manner in which to conduct interrogations of witnesses and arrestees. Among those the City failed to properly train, supervise, discipline, transfer, monitor, counsel and/or otherwise control were the repeat offenders Defendant GUEVARA and Mr. Halvorsen.

e.      perpetuating, encouraging  and condoning the police code of silence, specifically in cases where officers engaged in the violations articulated in paragraphs a-d above, whereby police officers refused to report or otherwise covered-up instances of police misconduct, and/or fabricated, suppressed and destroyed evidence of which they were aware, despite their obligation under the law and police regulations to report. This code of silence caused police officers either to remain silent or give false and misleading information during official

investigations and Grand Jury proceedings in order to protect themselves or

fellow officers from discipline, civil liability, or criminal charges.  The code of

silence also caused police offices to perjure themselves in criminal cases where

they and their fellow officers to perjure themselves in criminal cases where they

and their fellow officers have fabricated evidence or concealed exculpatory

evidence.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the

United States Constitution and declines to answer.

229.    The policies and practices described in this Count and in the factual allegations

section of this Complaint were maintained and implemented by the City of Chicago with

deliberate indifference to Plaintiff's constitutional rights.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the

United States Constitution and declines to answer.

230.    As a direct and proximate result of the City's actions, Plaintiff suffered injuries,

including, but not limited to, emotion distress, as if more fully alleged above.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the

United States Constitution and declines to answer.

231.    The City of Chicago is therefore liable for the misconduct committed by the

Police Officer Defendants.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the

United States Constitution and declines to answer.

## COUNT VIII
## State Law Claim – Malicious Prosecution

232.    Plaintiff repeats and re-alleges all of the paragraphs n this Complaint as if fully set forth herein.

**ANSWER:**    Defendant Guevara repeats and re-alleges his answer to all of the paragraphs in this Complaint as if fully set forth herein.

233.    All of the individual Defendants caused Plaintiff to be improperly subjected to judicial proceedings for which there was no probable cause.  These judicial proceedings were instituted and continued with malice and resulted in the injury to Plaintiff.  All such proceedings were ultimately terminated in Plaintiff's favor and in a manner indicative of innocence.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

234.    The Defendants accused Plaintiff of murdering the Wiley brothers, knowing that he was innocent of the crime.  All of the individual defendants fabricated evidence, manipulated witness testimony, and withheld exculpatory evidence.  The individual Defendant officers and defendant DIFRANCO knowingly made false statements to prosecutors with the intent of exerting influence to institute and continue judicial proceedings against Plaintiff.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

235.    The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to Plaintiff's rights.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

236.     As a direct and proximate result of this misconduct, Plaintiff suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

**ANSWER:**     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

### COUNT IX
### State Law Claim – Civil Conspiracy

237.     Plaintiff repeats and re-alleges all of the paragraphs in this Complaint as if fully set forth herein.

**ANSWER:**     Defendant Guevara repeats and re-alleges his answer to all of the paragraphs in this Complaint as if fully set forth herein.

238.     As described more fully in the preceding paragraphs, the individual Defendant officers and defendant DIFRANCO acting in concert with one another and other co-conspirators, known and unknown, conspired to accomplish an unlawful purpose by unlawful means.

**ANSWER:**     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

239.     In furtherance of the conspiracy, the Defendants committed overt acts and were otherwise willing participants in joint activity.

**ANSWER:**     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

240.     The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to Plaintiff's rights.

**ANSWER:**     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

241.    As a direct and proximate result of this misconduct, Plaintiff suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

### COUNT X
### State Law Claim – Intentional Infliction of Emotional Distress

242.    Plaintiff repeats and re-alleges all of the paragraphs in this Complaint as if fully set forth herein.

**ANSWER:**    Defendant Guevara repeats and re-alleges his answers to all of the paragraphs in this Complaint as if fully set forth herein.

243.    The acts and conduct of the individual Defendants as set forth above were extreme and outrageous.  The Defendants intended to cause or were in reckless disregard of the probability that their conduct would cause sever[sic], emotional distress to Plaintiff.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

244.    The individual Defendants' actions and conduct directly and proximately caused severe emotional distress to Plaintiff, and thereby constituted intentional infliction of emotional distress.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

245.    The misconduct described in this Count was undertaken with malice, willfulness and reckless indifference to Plaintiff's rights.

**ANSWER:**    Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

246.     As a direct and proximate result of Defendants' wrongful acts, Plaintiff suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

**ANSWER:**     Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

### COUNT XI
### State Law Claim- *Respondeat Superior*

**Count XI of Plaintiff's Complaint is not directed at Defendant Guevara, and therefore he answers Count XI only to the extent the allegations herein are adopted and re-alleged in other counts of Plaintiff's Complaint.**

247.     Plaintiff repeats and re-alleges all of the paragraphs in this Complaint as if fully set forth herein.

**ANSWER:**     Defendant Guevara repeats and re-alleges his answer to all of the paragraphs in this Complaint as if fully set forth herein.

248     When they committed the acts alleged in this Complaint, the individual Defendant officers were members and agents of the Chicago Police Department, an agency of the City of Chicago, acting at all relevant times within the scope of their employment and under color of law.

**ANSWER:**     Defendant Guevara admits that at all relevant times he was an employee of the Chicago Police Department. As to the remaining allegations in this Paragraph Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

249.     Defendant City of Chicago is liable as principal for all torts committed by its agents.

**ANSWER:**    The Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

**COUNT XI [sic]**
**State Law Claim – Indemnification**

**Count XII of Plaintiff's Complaint is not directed at Defendant Guevara, and therefore he answer Count XII only to the extent the allegations herein are adopted and re-alleged in other counts of Plaintiff's Complaint.**

250.    Plaintiff repeats and re-alleges all of the paragraphs in this Complaint as if fully set forth herein.

**ANSWER:**    Defendant Guevara repeats and re-alleges his answer to all of the paragraphs in this Complaint as if fully set forth herein.

251.    Illinois law provides that public entities must pay any tort judgment for compensatory damages for which its employees are liable based on upon the employees' misconduct committed within the scope of their employment activities.

**ANSWER:**    Defendant Guevara is without knowledge or information sufficient to form a belief as to the truth of the allegation of this paragraph.

252.    The individual Defendant officers are or were employees of the Chicago Police Department, an agency of the City of Chicago, who acted within the scope of their employment in committing the misconduct described herein.

**ANSWER:**    Defendant Guevara admits that at all relevant times he was an employee of the Chicago Police Department. As to the remaining allegations in this paragraph Defendant Guevara asserts his right under the Fifth Amendment to the United States Constitution and declines to answer.

253.     Defendant Cook County is responsible for any judgment entered against defendant DIFRANCO.

**ANSWER:**     Defendant Guevara lacks information or knowledge sufficient to form a belief as to the truth or falsity of the allegations in this paragraph.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

At all times material hereto, Defendant Guevara was a law enforcement officer who performed discretionary functions. A reasonable law enforcement officer objectively viewing the facts and circumstances that confronted Defendant Guevara could have believed his actions to be lawful, in light of clearly established law. Defendant Guevara is therefore entitled to qualified immunity on Plaintiff's federal claims.

### Second Affirmative Defense

Plaintiff's claim under Illinois law for intentional infliction of emotional distress barred by the one-year statute of limitations under the Illinois Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/8-101 because it was not filed within one year after it accrued.

### Third Affirmative Defense

Plaintiff fails to state a claim for "federal malicious prosecution" in Count IV.

### Fourth Affirmative Defense

Defendant Guevara is absolutely immune from civil liability for any claim alleged based on their testimony given in judicial proceedings in plaintiff's underlying criminal case.  *Rehberg v. Paulk*, 566 U.S. 356 (2012); *Briscoe v. LaHue*, 460 U.S. 325 (1983); *Jurgensen v. Haslinger*, 295 Ill.App.3d 139; 692 N.E.2d 347 (3rd Dist. 1998).

## Fifth Affirmative Defense

As to the state law claims, Defendant Guevara is not liable for any of the claims alleged because at all times relevant to this complaint he was a public employee, namely a police officer, who was engaged in the execution and enforcement of the law, and none of his acts or omissions in the execution or enforcement of any law constituted willful and wanton conduct. 745 ILCS 10/2-202.

## Sixth Affirmative Defense

As to the state law claims, Defendant Guevara is not liable for any of the claims alleged because a public employee, as such and acting within the scope of his employment, is not liable for an injury caused by the act or omission of another person. 745 ILCS 10/2-204.

## Seventh Affirmative Defense

As to the state law claims, Defendant Guevara is not liable for any of the claims alleged because a public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, unless he acts maliciously and without probable cause. 745 ILCS 10/2-208.

## Eighth Affirmative Defense

As to the state law claims, the Answering Defendants are not liable for any of the claims alleged because their alleged decisions regarding the investigation and the arrest of Plaintiff were decisions that involved the determination of policy and the exercise of discretion for which they are immune from liability. 745 ILCS 10/2-201.

## Ninth Affirmative Defense

As to the state law claim of Intentional Infliction of Emotional Distress, Punitive damages cannot be awarded for this claim based on Illinois law. *Knierim v. Izzo*, 22 Ill. 2d 73

(1961).

## Tenth Affirmative Defense

As to the state law claims, Punitive damages cannot be awarded for these claims because the Illinois Governmental Tort Immunity Act does not allow punitive damages. 745 ILCS 10/2-102.

## Eleventh Affirmative Defense

Plaintiff has a duty to mitigate his damages, and any damages awarded to Plaintiff are required to be reduced by any amount by which the damages could have been lessened by Plaintiff's failure to take reasonable action to minimize those damages.

## Twelfth Affirmative Defense

Plaintiff's claims as alleged in his Complaint are barred in whole or in part by the applicable statute of limitations.

## JURY DEMAND

Defendant Guevara requests trial by jury for all issues so triable.

Dated: July 2, 2020

By: */s/ Justin L. Leinenweber*
Justin L. Leinenweber, Attorney No. 6290038
Special Assistant Corporation Counsel

Justin L. Leinenweber

Leinenweber Baroni & Daffada, LLC
120 N LaSalle St Ste 2000
Chicago, IL 60602
(312) 380-6635
Justin@ilesq.com

*One of the Attorneys for Defendant Guevara*

## CERTIFICATE OF SERVICE

I certify under penalty of perjury pursuant to 28 U.S.C.A. § 1746, that on July 2, 2020, I electronically filed foregoing DEFENDANT REYNALDO GUEVARA'S ANSWER, JURY DEMAND AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S AMENDED COMPLAINT with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the below service list.

By: */s/ Justin L. Leinenweber*
Justin L. Leinenweber
One of the Attorneys for Defendant Guevara

**_Attorneys for Plaintiff:_**
Jennifer A. Bonjean
Ashley B. Cohen
100 Dean Street, Suite 422
Brooklyn, NY 11238
(718)875-1850
jennifer@bonjeanlaw.com
ashley@bonjeanlaw.com

Steven A. Greenberg
Steven A. Greenberg, Ltd.
53 W. Jackson, Suite 1260
Chicago, IL 60604
(312)879-9500
steve@greenergcd.com

**_Attorneys for Cook County Defendants:_**
Edward M. Brener
David Adelman
Cook County State's Attorney's Office
50 W. Washington St., Room 500
Chicago, IL 60602
(312) 603-3369
edward.brener@cookcountyil.gov
david.adelman@cookcountyil.gov

**_Attorneys for City of Chicago:_**
Eileen E. Rosen
Stacy A. Benjamin
Catherine M. Barber
Theresa B. Carney
Austin G. Rahe
Rock Rusco & Connelly, LLC
312 N. Clark, Suite 2200
Chicago, IL 60654
(312) 494-1000
erosen@rfclaw.com
sbenjamin@rfclaw.com
cbarber@rfclaw.com
tcarney@rfclaw.com
arahe@rfclaw.com

**_Attorneys for Individual Defendant:_**
James G. Sotos
Jeffrey N. Given
Caroline P. Golden
Josh M. Engquist
David A. Brueggen
Special Assistant Corporation Counsel
The Sotos Law Firm, P.C.
141 W. Jackson, Suite 1240A
Chicago, Illinois 60604
Tel: (630) 735-3300
jenquist@jsotoslaw.com