# EXHIBIT 27



# Transcript of Ernest Halvorsen

**Date:** April 20, 2018
**Case:** Montanez -v- Guevara, et al.

**Planet Depos**
**Phone:** 888.433.3767
**Email::** transcripts@planetdepos.com
**www.planetdepos.com**

WORLDWIDE COURT REPORTING | INTERPRETATION | TRIAL SERVICES

MAYSONET_MUNOZ 000346

Transcript of Ernest Halvorsen
Conducted on April 20, 2018

1 (1 to 4)

```
                                    1
 1        IN THE UNITED STATES DISTRICT COURT
 2           NORTHERN DISTRICT OF ILLINOIS
 3
 4   JOSE MONTANEZ,           )
 5           Plaintiff,       )
 6       -vs-                 ) No. 17 CV 4560
 7   REYNALDO GUEVARA, et al.,)
 8           Defendants.      )
 9   --------------------------
10   ARMANDO SERRANO,         )
11           Plaintiff,       )
12       -vs-                 ) No. 17 CV 2869
13   REYNALDO GUEVARA, et al.,)
14           Defendants.      )
15
16         Deposition of ERNEST HALVORSEN
17               Chicago, Illinois
18            Friday, April 20, 2018
19                 10:14 A.M.
20
21
22   Job No:  182444
23   Pages:  1 - 420
24   Reported By:  Aneesha L. Williams, CSR
```

```
                                    2
 1        Deposition of ERNEST HALVORSEN, held at
 2   the offices of:
 3
 4         LOEVY & LOEVY
 5         311 North Aberdeen Street,
 6         3rd Floor
 7         Chicago, Illinois  60607
 8         (312) 243-5900
 9
10
11        Pursuant to notice before Aneesha L.
12   Williams, Certified Shorthand Reporter and
13   Notary Public, to and for the State of
14   Illinois.
```

```
                                    3
 1   APPEARANCES:
 2
 3   ON BEHALF OF THE PLAINTIFF, JOSE MONTANEZ:
 4         MS. JENNIFER BONJEAN
 5         BONJEAN LAW GROUP, PLLC
 6         1000 Dean Street, Suite 422
 7         Brooklyn, New York 11238
 8         (718) 875-1850
 9
10   ON BEHALF OF THE PLAINTIFF, ARMANDO SERRANO:
11         MS. ELIZABETH MAZUR
12         LOEVY & LOEVY LLC
13         311 North Aberdeen Street, 3rd Floor
14         Chicago, Illinois  60607
15         (312) 243-5900
16
17   ON BEHALF OF THE DEFENDANT, REYNALDO GUEVARA:
18         MR. JEFFREY N. GIVEN
19         THE SOTOS LAW FIRM, P.C.
20         550 East Devon Street, Suite 150
21         Itasca, Illinois 60143
22         (630) 735-3300
```

```
                                    4
 1   APPEARANCES:
 2
 3   ON BEHALF OF THE DEFENDANT, ANDT:
 4         MS. TAMMY WENDT
 5         HERBERT LAW FIRM
 6         206 South Jefferson Street,
 7         Suite 100
 8         Chicago, Illinois  60661
 9         (312) 655-7660
10
11   ON BEHALF OF THE DEFENDANT, MATTHEW COGHLAN:
12         MS. KRISTINA KATZ CERCONE
13         JONES DAY
14         77 West Wacker Drive
15         Chicago, Illinois  60601
16         (312) 782-3939
17
18   ON BEHALF OF THE DEFENDANT, COOK COUNTY and
19   JOHN DILLON:
20         MR. MICHAEL P. GORMAN
21         ASSISTANT STATE'S ATTORNEY
22         500 Richard J. Daley Center
23         Chicago, Illinois  60602
24         (312) 603-4366
```

53

1 sure that they weren't in custody at the time
2 of the murder; isn't that right?
3     MR. GIVEN: Objection, form.
4     THE WITNESS: On advice of counsel, I
5 assert the Fifth Amendment.
6 BY MS. BONJEAN:
7     Q. In fact, Detective Guevara and
8 yourself was kind of sloppy at times, and at
9 times you actually tried to frame people who
10 were in custody; isn't that right?
11     MR. GIVEN: Objection; form, harassing
12 oppressive.
13     THE WITNESS: On advice of counsel, I
14 assert the Fifth Amendment.
15 BY MS. BONJEAN:
16     Q. Well, isn't it true that you
17 actually tried to frame Efrain Cruz and
18 Francisco Veras for the murders of the Wiley
19 brothers, but you had to let them go because
20 they were actually in police custody at the
21 time of the murders?
22     MR. GIVEN: Hold on a second.
23 Objection; form, foundation, also object to
24 the fact that Efrain -- that the Wiley

54

1 brothers' murders is the subject of a
2 different lawsuit that's currently pending;
3 and I object to the use of this deposition to
4 ask questions about another lawsuit.
5     You can answer.
6     THE WITNESS: On advice of counsel, I
7 assert the Fifth Amendment.
8 BY MS. BONJEAN:
9     Q. And isn't it true that at one point
10 Detective Guevara and yourself attempted to
11 frame George Laureano for a murder that he
12 did not commit but --
13     MR. GIVEN: Objection; form, foundation.
14     I'm sorry. Were you done?
15     MS. BONJEAN: Sort of. Go ahead. You
16 can answer.
17     THE WITNESS: On advice of counsel, I
18 assert the Fifth Amendment.
19 BY MS. BONJEAN:
20     Q. And on one occasion, you learned
21 that George Laureano actually had an airtight
22 alibi, as he was visiting someone else in the
23 Illinois Department of Corrections, and you
24 couldn't frame him for that murder, correct?

55

1     MR. GIVEN: Objection; form and
2 foundation.
3     THE WITNESS: On advice of counsel, I
4 assert the Fifth Amendment.
5 BY MS. BONJEAN:
6     Q. So by 1993, you realized that you
7 probably should check the criminal histories
8 of the defendants you -- strike that.
9     By 1993, you knew that you had to
10 check the criminal history of an individual
11 who you wanted to frame for a murder to make
12 sure that they weren't in custody at the time
13 of the murder; isn't that right?
14     MR. GIVEN: Objection; form.
15     THE WITNESS: On advice of counsel, I
16 assert the Fifth Amendment.
17 BY MS. BONJEAN:
18     Q. So I am going to hand you what has
19 been previously marked as, I believe,
20 Montanez 1.
21     MR. GIVEN: Why don't we call it
22 Guevara 1.
23     MS. BONJEAN: It was just 1, right?
24     MR. GIVEN: Well --

56

1     MS. BONJEAN: Yeah, we'll call it
2 Guevara 1. That's fine.
3     MR. GIVEN: Well, only because it was
4 used in the Guevara dep, and things will get
5 really --
6     MS. BONJEAN: I just don't remember what
7 it was called in the Guevara dep.
8     MR. GIVEN: I wrote it as Guevara No. 1.
9     MS. BONJEAN: Okay. Fine.
10     MR. GIVEN: Is what I wrote it as.
11     But I think if you identify it for
12 the record with its Bates stamp, then we'll
13 be good.
14     MS. BONJEAN: Sure. Okay.
15 BY MS. BONJEAN:
16     Q. I'm going to hand you what's been
17 previously marked Exhibit 1 or Guevara 1,
18 we'll call it. It has a Bates stamp
19 RFC-Serrano/Montanez 000222.
20     I'm going to have you look at
21 what's been marked Guevara 1, and if you
22 could look specifically at the line that is
23 four up from the bottom. Isn't it true, sir,
24 that on May 20th, 1993, a person named

385

1 Avenue at that location was King territory,
2 correct?
3   MR. GIVEN: Objection; form and
4 foundation.
5   THE WITNESS: On advice of counsel, I
6 assert my Fifth Amendment rights.
7 BY MS. BONJEAN:
8   Q. And, in fact, initially, you had
9 conspired with Detective Guevara and your
10 fellow officers to frame two individuals who
11 were Latin Kings by the name of Efrain Cruz
12 and Francisco Vera, correct?
13   A. On advice --
14   MR. GIVEN: Objection; form. I'm sorry.
15 Go ahead.
16   THE WITNESS: On advice of counsel, I
17 assert my Fifth Amendment rights.
18 BY MS. BONJEAN:
19   Q. And, in fact, you arrested -- you
20 and your fellow officer arrested Mr. Vera and
21 Mr. Cruz, Efrain Cruz, and brought them to
22 Grand and Central for questioning about the
23 Wiley brothers murders?
24   A. On advice of counsel, I assert my

386

1 Fifth Amendment rights.
2   Q. You ultimately had to release
3 Mr. Vera and Mr. Cruz from custody because it
4 was determined that they were actually in
5 police custody on the early morning hours
6 of May 25th, 1990 when with the murders
7 occurred, correct?
8   MR. GIVEN: Objection, form.
9   THE WITNESS: On advice of counsel, I
10 assert my Fifth Amendment rights.
11 BY MS. BONJEAN:
12   Q. So shortly after that, Detective
13 Guevara told you he wanted to frame Jose
14 Masonette for the murders of the Wiley
15 brothers, correct?
16   A. On advice of counsel, I assert my
17 Fifth Amendment rights.
18   Q. And you were aware, sir, weren't
19 you, that Mr. Masonette had been paying
20 protection money to Detective Guevara up
21 until around May 20th of 1990?
22   A. On advice --
23   MR. GIVEN: Form.
24   THE WITNESS: On advice of counsel, I

387

1 assert my Fifth Amendment rights.
2 BY MS. BONJEAN:
3   Q. And, in fact, isn't it true, sir,
4 that Detective Guevara told you that
5 Masonette had stopped make protection
6 payments to him because he was angry at him
7 related to the frame-up of another friend
8 whose name is Santiago Sanchez?
9   A. On advice of counsel, I assert my
10 Fifth Amendment rights.
11   Q. So isn't it true that on
12 August 22nd, 1990 you learned from Detective
13 Pawlniski and your fellow officers that
14 Mr. Masonette had made bond on the attempted
15 murder case that he had been previously
16 arrested for on July 3rd?
17   A. On advice of counsel, I assert my
18 Fifth Amendment rights.
19   Q. And you learned that Detective
20 Pawlnisky had arrested Mr. Masonette at 26th
21 and California outside of Room 101 and had
22 brought him to Grand and Central in the
23 morning, correct, of August 22nd, 1990?
24   A. On advice of counsel, I assert my

388

1 Fifth Amendment rights.
2   Q. And you and Detective Guevara was
3 starting your shift on the evening -- or the
4 early evening of August 22nd, 1990; isn't
5 that correct?
6   A. On advice of counsel, I assert my
7 Fifth Amendment rights.
8   Q. And that after coming to Grand and
9 Central, you and Detective Guevara discussed
10 the fact that Detective Guevara was going to
11 interrogate Mr. Masonette in order to get him
12 to falsely confess to the murders of the
13 Wiley brothers, right?
14   A. On advice of counsel, I assert my
15 Fifth Amendment rights.
16   Q. And over the course of
17 approximately 13 hours, sir, isn't it true
18 that Detective Guevara intermittently
19 would -- strike that.
20     Over the course of the next 13
21 hours, Detective Guevara used physical abuse
22 to extract an inculpatory statement from
23 Mr. Masonette?
24   MR. GIVEN: Objection; form, foundation.

389

 THE WITNESS: On advice of counsel, I assert my Fifth Amendment rights.
 BY MS. BONJEAN:
 Q. And by -- I mean, over the course of 13 hours -- it wasn't necessarily 13 hours straight, but Mr. Guevara would come in and out of the interrogation room and intermittently beat Mr. Masonette about his body, genitals, and head with a telephone book and a flashlight, correct?
 MR. GIVEN: Form and foundation.
 THE WITNESS: On advice of counsel, I assert my Fifth Amendment rights.
 BY MS. BONJEAN:
 Q. You did nothing to stop Mr. Guevara from physically abusing Mr. Masonette in order to secure an inculpatory statement that you would later use against him in order to secure his wrongful conviction, correct?
 MR. GIVEN: Form and foundation.
 THE WITNESS: On advice of counsel, I assert my Fifth Amendment rights.
 BY MS. BONJEAN:
 Q. After approximately 13 hours of

390

intermittent beatings, isn't it true that Detective Guevara told you that Masonette was ready to "cooperate"?
 A. On advice of counsel, I assert my Fifth Amendment rights.
 Q. And by "cooperate," Detective Guevara that meant he was ready to repeat a false narrative or a false story that implicated himself and others, including Alfredo Gonzalez and Justino Cruz, in the murders of Torrence and Kevin Wiley?
 MR. GIVEN: Form, foundation competence.
 THE WITNESS: On advice of counsel, I assert my Fifth Amendment rights.
 BY MS. BONJEAN:
 Q. And as a result, you and Detective Guevara contacted Assistant State's Attorney Frankie DeFranco and told him to come to Area 5 so that he could take a statement from Mr. Masonette that had been secured through physical abuse by Detective Guevara?
 A. On advice of counsel, I assert my Fifth Amendment rights.
 Q. And isn't it true that Assistant's

391

State's Attorney DeFranco came to Area 5, and together with Detective Guevara and yourself and Detective Montia, you agreed to contrive a story that involved Mr. Masonette implicating himself as the driver of the car that was involved in the murders of Kevin and Torrence Wiley, correct?
 MR. GIVEN: Form.
 THE WITNESS: On advice of counsel, I assert my Fifth Amendment rights.
 BY MS. BONJEAN:
 Q. And Detective Guevara had persuaded Mr. Masonette to falsely allege that Alfred Gonzalez was the shooter of Torrence and Kevin Wiley, correct?
 MR. GIVEN: Form and foundation.
 THE WITNESS: On advice of counsel, I assert my Fifth Amendment rights.
 BY MS. BONJEAN:
 Q. And at approximately August 23rd, 1990 at 9:28 a.m., you are aware, sir, that Mr. Masonette falsely confessed to the Wiley brothers murders that occurred on May 20th, 1990, correct?

392

 A. On advice of counsel, I assert my Fifth Amendment rights.
 Q. And isn't it true, sir, that Mr. Masonette also falsely implicated Alfred Gonzalez in the crime?
 MR. GIVEN: Objection; form and foundation.
 THE WITNESS: On advice of counsel, I assert my Fifth Amendment rights.
 BY MS. BONJEAN:
 Q. Specifically, isn't it true, sir, that Mr. Masonette falsely told the Assistant State's Attorney, as well as Detective Montia that Alfredo Gonzalez had asked him to hide a nine millimeter pistol at his home located at 1320 North Homan?
 MR. GIVEN: Form and foundation.
 THE WITNESS: On advice of counsel, I assert my Fifth Amendment rights.
 BY MS. BONJEAN:
 Q. And isn't it true that Masonette falsely stated that Alfred Gonzalez came to his home between 11:30 p.m. and 12 o'clock a.m. on May 24th, 1990 with two other Latin