# EXHIBIT 29

| 911 / OPR / 744 / PAX / OV-RADIO / E.T. NO. | NATURE OF COMPLAINT—SERVICE: PERSONS SHOT | CODE: 30 | BEAT OF OCCURRENCE: 1429 | Q | N-S | |
|---|---|---|---|---|---|---|
| | LOCATION OF INCIDENT—SERVICE: ~~3408~~ 3420 W. NORTH | FLOOR—ROOM—APT: ON ST | UNIT ASSIGNED: 1422 | MAN: 2 | R.D. NO. H234297 | |
| TIME COMPLAINT RECEIVED | COMPLAINANT—REQUESTER: WILEY / NEGRON | | | MAY 25 01 00 '90 | | |
| ADDRESS OF COMPLAINANT—REQUESTER | NO | PHONE NO. 324-6037 | FAOW | MAY 25 03 04 '90 | | |
| VERIFIED COMPLAINT | CODE: 80 | UNFOUNDED (2) | NUMBER ARRESTED: NONE (0) | RECEIVED BY: 330 R | DISPATCHER: 206 | ZONE: 3 |

CPD-32.500-A (7/80) RADIO DISPATCH CARD—RADIO COMPLAINT/CHICAGO POLICE COMMUNICATIONS CENTER

PERMANENT RETENTION FILE

911 OPR 744 PAX OV-RADIO

E.T. NO.

NATURE OF COMPLAINT—SERVICE: PERSONS SHOT

CODE: 30

TIME OF OCCURRENCE: 1429

Q | N-S | E-W

LOCATION OF INCIDENT—SERVICE: 3408 ~~3420~~ W. NORTH

FLOOR-ROOM-APT: ON ST

UNIT ASSIGNED: 1422

MAN: 1 (2)

R.D. NO.: H234297

TIME COMPLAINT RECEIVED

COMPLAINANT—REQUESTER: WILEY ~~NEGRON~~

MAY 25 01 00 '90

ADDRESS OF COMPLAINANT—REQUESTER: (14)

NO

PHONE NO.: 324-6037

FAOW

MAY 25 03 04 '90

| VERIFIED COMPLAINT | CODE | UNFOUNDED | | NUMBER ARRESTED | RECEIVED BY | DISPATCHER | ZONE |
|---|---|---|---|---|---|---|---|
| ☑ | 80 | ☐ (2) | | NONE ☐ (0) | R 370 | 206 | 3 |

CPD-32.500-A (7/80) RADIO DISPATCH CARD—RADIO COMPLAINT / CHICAGO POLICE COMMUNICATIONS CENTER

PERMANENT RETENTION FILE

GENERAL OFFENSE CASE REPORT
CHICAGO POLICE

1. OFFENSE/INCIDENT–PRIMARY CLASSIFICATION: Homicide
I-UCR OFF. CODE: 0110
2. SECONDARY CLASSIFICATION: Murder
3. R.D. NO.: N-234297

4. ADDRESS OF OCCURRENCE: 3428 W North AVE
5. FIRE RELATED: ☐ 1 YES ☐ 2 NO
6. DATE OF OCCURRENCE – TIME: 25 MAY 90 0100
7. BEAT OF OCCUR.: 1422
8. BEAT/UNIT ASSIGN.: 1422

9. TYPE OF LOCATION OR PREMISE WHERE OFFENSE OCCURRED: STREET
10. LOCATION CODE: 304
11. DATE R.O. ARRIVED – TIME: 25 MAY 90 0102
12. ASSIGNED BY: ☒ 1 C.O.S. ☐ 2 ON VIEW ☐ 3 SUPERVISOR

All information, descriptions and statements in this entire report are approximations or summarizations unless indicated otherwise.

VICTIMS

| 21. NAME (LAST–FIRST–M.I.) | 22. HOME ADDRESS | 23. SEX–RACE–AGE | 24. HOME PHONE | 25. BUSINESS PHONE | 26. TIME AVAIL. | 27. OCCUPATION | 28. INJURED | 29. VICTIM REL. CODE |
|---|---|---|---|---|---|---|---|---|
| Wiley, Torrence J | | M 1 | unk | unk | None | unk | X | unk |
| Wiley, Kevin | 3334 W. Maypole | M 1 26 | unk | unk | None | unk | X | unk |

PARENT/GUARDIAN, IF JUVENILE

RACE CODES: 1-BLACK, 2-WHITE, 3-BLACK-HISPANIC, 4-WHITE-HISPANIC, 5-AMER. IND./ALASK. NAT., 6-ASIAN/PACIFIC ISLANDER

OFFENDER/VICTIM RELATIONSHIP CODES (Use for Member of the Same Family or Household): 01-WIFE, 02-HUSBAND, 03-FORMER WIFE, 04-FORMER HUSBAND, 05-MOTHER, 06-FATHER, 07-SON, 08-DAUGHTER, 09-BROTHER, 10-SISTER, 11-AUNT, 12-UNCLE, 13-MOTHER-IN-LAW, 14-FATHER-IN-LAW, 15-SON-IN-LAW, 16-DAUGHTER-IN-LAW, 17-BROTHER-IN-LAW, 18-SISTER-IN-LAW, 19-OTHER RELATIVE, 20-GIRL FRIEND, 21-BOYFRIEND, 22-FRIEND/ACQUAINTANCE, 23-OTHER–SPECIFY, 24-NO RELATIONSHIP

WITNESS

31. ☐ 1 DISCOVERED ☐ 2 WITNESSED ☒ REPORTED OFFENSE

| Name | 32. Address | 33. | 34. | 35. |
|---|---|---|---|---|
| Negron, Isabell | 3445 W North | F 4 | 384-6037 | |

OFFENDER

| 41. OFFENDER'S NAME (OR DESCRIBE CLOTHING, ETC.) | 42. HOME ADDRESS | 43. SEX–RACE–AGE | HEIGHT | WEIGHT | EYES | HAIR | COMPL. | MARKS, SCARS, ETC. | 44. C.B./I.R. NO. | 45. OFFENDER REL. CODE |
|---|---|---|---|---|---|---|---|---|---|---|
| unk | unk | unk | | | | | | | | unk |

CIRCUMSTANCES

51. OBJECT/WEAPON: ☒ 1 USED ☐ 2 DISPLAYED ☐ 3 UNK — ☒ 01 HAND GUN; 02 SHOTGUN; 03 RIFLE; 04 KNIFE; 05 VEHICLE; 06 BLUNT INSTRUMENT; 07 THROWN OBJECT; 08 EXPLOSIVE; 09 LIQUID/GAS; 10 BOTTLE/GLASS; 11 RAZOR; 12 PRY TOOL; 13 HAND, FEET; 14 OTHER; 15 DNA

52. FIREARM FEATURES: 01 CHROME/NICKEL; 02 BLUE STEEL; 03 SHORT BARREL; 04 LONG BARREL; 05 SAWED OFF; 06 OTHER; ☒ 07 UNKNOWN; 08 DNA

53. POINT/ENTRY: 01 FRONT DOOR; 02 REAR DOOR; 03 WINDOW; 04 ROOF; 05 FLOOR; 06 SIDE DOOR; 07 OTHER; 08 UNKNOWN; ☒ 09 DNA

54. POINT/EXIT: 01 FRONT DOOR; 02 REAR DOOR; 03 WINDOW; 04 ROOF; 05 FLOOR; 06 SIDE DOOR; 07 OTHER; 08 UNKNOWN; ☒ 09 DNA

55. BURGLAR ALARM: ☒ DNA; ON PREMISE ☐ 1 YES ☐ 2 NO; ALARM CIRCUMVENTED ☐ 1 YES ☐ 2 NO

56. SAFE BURGLARY METHOD: 01 PUNCH; 02 TORCH; 03 EXPLOSIVE; 04 DRILL; 05 REMOVED; 06 PEEL; 07 OPEN; 08 UNKNOWN; ☒ 09 DNA

57. IF RESIDENCE, WHERE WERE OCCUPANTS: 01 WORK; 02 VISITING; 03 VACATION; 04 WEDDING; 05 FUNERAL/WAKE; 06 OTHER; 07 UNKNOWN; ☒ 08 DNA

58. UNUSUAL CHARACTERISTICS OF OFFENSE: See Narrative

59. GANG RELATED – AFFILIATION: ☐ VICTIM unk ☐ OFFENDER unk

PROPERTY

71. DESCRIBE PROPERTY IN NARRATIVE — T = TAKEN; R = RECOVERED
1 MONEY; 2 JEWELRY; 3 FURS; 4 CLOTHING; 7 OFFICE EQUIPMT.; 8 TV, RADIO, STEREO; 9 HOUSEHOLD GOODS; 0 CONSUM. GOODS; (-) FIREARMS; & Narc./Dang. Drugs; 5 OTHER; 6 NONE

72. VEHICLE/TRAILER ☐ STOLEN ☐ THEFT FROM ☐ OFFENDER'S — YEAR, MAKE, BODY STYLE, COLOR, V.I.N., STATE, LICENSE NO., EXPIR. YR
73. PROPERTY INVENTORY NO(S).
74. VEH. INVENTORY NO. POUND

PERMANENT RETENTION FILE

NARRATIVE (Do not duplicate or repeat information — for explanation or additional information only)

On scene, 1420, FDA. 723, 1426. At 0138 hrs Crime Lab on scene, beat 9601. A.S.V.C on scene beat 5522. M.E on scene. A. Mr. Thompson #55. In Summary: R/O's responded to shots fired at above location and found above victims down on the ground.

81. SOBRIETY OF VICTIM: ☐ 1 SOBER ☐ 2 HBD
82. FLASH MESSAGE SENT? ☒ YES ☐ 2 NO

91. EXTRA COPIES REQUIRED: ☐ NORMAL — ☒ CONT'D. OTHER SIDE
92. OFFICER NOTIFYING FOLLOW-UP INVESTIG. UNIT — UNIT NOTIFIED, PERSON ☐ NOTIFIED ☐ ARRIVED, DATE (DAY-MO-YR), TIME
93. FIRST OFFICER AT SCENE: ☒ R.O.
94. OFFICER NOTIFYING: ☒ 1ST D/S ☒ E.T. ☒ M.E. — PERSON: Bell - 9019; ☒ NOTIFIED ☐ ARRIVED; DATE: 25 May 90; TIME: 0223

95. REPORTING OFFICER'S NAME (PRINT): Montalvo, L — STAR NO.: 13102 — OFFICER'S SIGNATURE: [signature]
96. REPORTING OFFICER'S NAME (PRINT): Jones, W — STAR NO.: 5457 — OFFICER'S SIGNATURE: [signature]
DATE INVEST. COMPLETED–TIME: 25 May 90 0243
97. SUPERVISOR APPROVING (PRINT NAME): Sgt G Petersen — STAR NO.: 2111
APPROVAL SIGNATURE: [signature] — DATE APPROVED: 25 May 90 — TIME: 0253

CPD-11.380 (REV. 8/83)

1.

Identify and describe all property or possible evidence recovered at the end of the Narrative in column form. Show exactly where found, when found, who found it and its description (include Property Inventory numbers). If property taken was scribed for Operation Identification, indicate I.D. number at end of Narrative. Offender's approximate description, if possible, should include name if known, nickname, sex, race code, age, height, weight, color eyes & hair, complexion, scars, marks, etc. If suspect is arrested, give name, sex, race code, age, C.B. or I.R. number, if known, and state "In Custody."

# SUPPLEMENTARY REPORT

CHICAGO POLICE – FOR USE BY B.I.S. PERSONNEL ONLY

All descriptions and statements in this entire report are approximations or summarizations unless indicated otherwise.

4. DATE OF ORIG. OCCURRENCE–TIME: 25 May 90 0100

1. OFFENSE/CLASSIFICATION LAST PREVIOUS REPORT: HOMICIDE MURDER FIRST DEGREE

I-UCR OFF. CODE: 0110

2. ADDRESS OF ORIG. INCIDENT/OFFENSE: 3428 W. North Ave.

3. BEAT OF OCCUR.: 1422

5. VICTIM'S NAME AS SHOWN ON CASE REPORT: WILEY, Torrence

CORRECT: 1 YES / 2 NO — XX

IF NO, CORRECT ALL VICTIM INFORMATION IN BOXES 20 THROUGH 27.

6. FIRE RELATED: 1 YES / 2 NO — XX

7. BEAT ASSIGNED: 5522

8. TYPE OF LOCATION OR PREMISE WHERE INCIDENT/OFFENSE OCCURRED: STREET

LOCATION CODE: 304

9. NO. OF VICTIMS: Two

10. NO. OF OFFENDERS: Unknown

11. CIRCUMSTANCES: XX VERIFIED / UPDATE TO

12. OBJECT/WEAPON | 13. FIREARM FEATURES | 14. POINT/ENTRY | 15. POINT/EXIT | 16. BURGLAR ALARM | 17. SAFE BURGLARY METHOD | 18. IF RESIDENCE WHERE WERE OCCUP.

19. PROPERTY: VERIFIED / DNA / UPDATE TO

DESCRIBE PROPERTY IN NARRATIVE. T = TAKEN; R = RECOVERED. FILL IN THE FULL AMOUNT OF ONLY THOSE VALUES WHICH EITHER DIFFER FROM OR WERE NOT REPORTED ON THE ORIGINAL CASE REPORT OR THE LAST PREVIOUS SUPPLEMENTARY REPORT.

1 MONEY | 2 JEWELRY | 3 FURS | 4 CLOTHING | 7 OFFICE EQUIPMENT | 8 TV, RADIO, STEREO | 9 HOUSEHOLD GOODS | 0 CONSUM. GOODS | (-) FIREARMS | & NARC./DANGEROUS DRUGS | 5 OTHER | 6 NONE

VICTIMS UPDATE ONLY

| | 20. NAME (LAST–FIRST–M.I.) | 21. I-UCR OFFENSE CODE | 22. HOME ADDRESS (NO., DIR., STREET, APT. NO.) | 23. SEX–RACE–AGE CODE | 24. HOME PHONE | 25. BUSINESS PHONE | 26. INJURED YES NO | 27. VICTIM REL. CODE |
|---|---|---|---|---|---|---|---|---|
| 1. | | | | | | | | |
| 2. | | | | | | | | |
| 3. | | | | | | | | |

PERMANENT RETENTION FILE

OFFENDERS UPDATE ONLY

| | 28. OFFENDER'S NAME (OR DESCRIBE CLOTHING, ETC.) | 29. HOME ADDRESS | 30. SEX–RACE–AGE CODE | HEIGHT | WEIGHT | EYES | HAIR | COMPL. |
|---|---|---|---|---|---|---|---|---|
| 1. | | | | | | | | |
| 2. | | | | | | | | |

31. C.B. NO. | I.R. NO., Y.D. NO. OR J.D.A. NO. | OFFENDER REL. CODE | C.B. NO. | I.R. NO., Y.D. NO. OR J.D.A. NO. | OFFENDER REL. CODE | 32. NO. ARRESTED | ARREST. UNIT NO. — OFF. 1 / OFF. 2

33. OFF'S. VEHICLE: USED / STOLEN | YEAR | MAKE | BODY STYLE | COLOR | V.I.N. | STATE LICENSE NO. | STATE

34. SERIAL NOS. OR IDENTIFICATION NOS.: 1 DNA / 2 VERIFIED / 3 CORRECTED — LIST ALL CORRECTIONS & NEW OR ADDITIONAL NOS. OBTAINED IN NARRATIVE

50. OFFENSE/CLASS. THIS DATE (IF SAME ENTER DNA): DNA | REV. CODE | 51. METHOD CODE: DNA | 52. METHOD ASSIGNED: 1 FIELD XX / 3 SUMMARY | UNIT NO.: 652 | 53. STATUS: 0 PROGRESS XX / 1 SUSPENDED / 2 UNFOUNDED

STATUS CONT'D.: 3 CLRD. CLOSED / 4 CLRD. OPEN / 5 EXC. CLRD. CLOSED / 6 EXC. CLRD. OPEN / 7 CLSD. NON-CRIM.

54. IF CASE CLEARED, HOW CLEARED: 1 ARREST & PROSEC. / 2 DIRECTED TO JUV. CRT. / 3 COMPL. RFUSD. TO PROSECUTE / 4 COMMUNITY ADJUSTMENT / 5 OTHER EXCEPT. | ADULT / JUV.

55. FOR SUMMARY CASES ONLY – THE ORIGINAL CASE REPORT IS SUBSTANTIALLY CORRECT, AND CONTACT WITH THE VICTIM HAS DISCLOSED NO ADDITIONAL PERTINENT INFORMATION.

80. NARRATIVE

FIELD INVESTIGATION: Progress Report

VICTIM: WILEY, Torrence M/B/27 [redacted]
11 S. Parkside SSN/[redacted]
IR# 887249

WILEY, Kevin M/B/26 DOB [redacted]
3334 W. Maypole SSN/[redacted]
IR# 636256

continued on page # 2

35. R.D. NO.: N-234297

90. EXTRA COPIES REQUIRED (NO. & RECIPIENT): Normal

91. DATE THIS REPORT SUBMITTED – DAY MO. YR. TIME: 25 May 90 0800

92. SUPERVISOR APPROVING (PRINT NAME) STAR NO.: MINGEY #731

93. REPORTING OFFICER (PRINT NAME): Det. R.S. Tapkowski STAR NO. #15651

94. REPORTING OFFICER (PRINT NAME): Det. P. Boyle STAR NO. #14633

SIGNATURE / SIGNATURE / SIGNATURE

95. DATE APPROVED (DAY–MO.–YR.): 26 MAY 1990 TIME: 1650

CPD-11.411-B (Rev. 8/85)

*MUST BE COMPLETED IN ALL CASES

CRC 228

DETECTIVE DIVISION
AREA FIVE VIOLENT CRIMES
WILEY, Torrence
WILEY, Kevin
MURDER FIRST DEGREE

PERMANENT RETENTION FILE

25 May 90
N 234 297

| | |
|---|---|
| WANTED: | Unknown at this time. |
| INJURIES: | Torrence WILEY<br>GSW to the left chest, lodged in Rt. chest.<br>GSW to the genitals exiting the right thigh pellet recovered in under shorts.<br><br>Kevin WILEY<br>GSW to the head below and to the rear of the left ear. Apparently exiting the mouth. |
| TAKEN TO: | FIFM by MB 1472, pronounced at the scene by ME Thompson #53, Torrence WILEY at 0217hrs ME case 447 May. Kevin WILEY at 0215hrs ME case 446 May. |
| WEAPON: | A 9MM weapon possibly a handgun. |
| LOCATION: | Torrence WILEY was found on the street at 3428 W. North Ave.<br>Kevin WILEY was found on the street at 3426 W. North Ave. |
| DATE and TIME: | 25 May 90 @ 0100hrs Fri. |
| WEATHER and LIGHTING: | Temp. in the low 60s, good visibility, good overhead street lighting. |
| MANNER and MOTIVE: | The victims were shot on the street. Motive unknown at this time. |
| IDENTIFIED BY: | IDPA cards found on the persons of the victims. |
| EVIDENCE: | Photos of the victims and scene.<br>Four shell casings 9MM<br>One can of Beer, Milwaukee's Best<br>One bullet recovered from Torrence WILEY's under pants at FIFM. |
| NOTIFICATIONS: | First Dep office, MEs office, Crime lab |

N 234 297

Continued to page three...

-6 JUN 1990 20 . 18

DETECTIVE DIVISION
AREA FIVE VIOLENT CRIMES

25 May 90
N 234 297

WILEY, Torrence
WILEY, Kevin
MURDER FIRST DEGREE

INVESTIGATION Cont..

The R/Ds then proceeded to the office of the ME to ascertain the injuries to the victims. and get the physical statistics. The results of this examination are contained in the format of this report. The R/Ds were then met by Det. Dickinson who gave the R/Ds the results of his canvass which are as follows.

NEGRON, Isabella the witness in this case related that she heard three shots, looked out the window and saw a body on the sidewalk across the street. She called the police.

GONZALEZ, Jenny F/WH 21yrs DOB [redacted] 3443 W. North Ave Ph 276-7241. Related that she heard a shot followed by a pause then three shots fired in succession. She didn't look out untill police arrived.

FELACIANO, Aurelio M/WH 36yrs DOB [redacted] 3425 W. North Ph 486-7457. Related that he was asleep and didn't see or hear anything.

WINSON, Nelson M/W 37yrs DOB [redacted] 3406 W. North Ave. Night Mgr. DUK'S Ph 384-4591 Related that he starts at 0001 hrs and he didn't see or hear anything.

The following addresses on North Ave were no answers.
3428 W. North
3423 W. North
3420 W. North
3417 W. North
3419 W. North
3432 W. North

PERMANENT RETENTION FILE

The R/Ds then proceeded to this office and attempted to confirm the identities of the victims and notify relatives. The addresses listed in the format of this report are the last known addresses of the victims. The address at 11 S. Parkside was answered by a resident who denied knowing the victim Torrence. Kevin's address at 3334 W. Maypole is a multi unit building and entry could not be gained.

END

Det Boyle 14633
Det R.S. Tapkowski 15665

-6 JUN 1990 20 18

Identify and describe all property or possible evidence recovered at the end of the Narrative in column form. Show exactly where found, when found, who found it and its description (include Property Inventory numbers). If property taken was scribed for Operation Identification, indicate I.D. number at end of Narrative. Offender's approximate description, if possible, should include name if known, nickname, sex, race code, age, height, weight, color eyes & hair, complexion, scars, marks, etc. If suspect is arrested, give name, sex, race code, age, C.B. or I.R. number, if known, and state "In Custody."

# SUPPLEMENTARY REPORT

CHICAGO POLICE – FOR USE BY B.I.S. PERSONNEL ONLY

All descriptions and statements in this entire report are approximations or summarizations unless indicated otherwise.

4. DATE OF ORIG. OCCURRENCE–TIME: DAY 25 MO. May YR. 90 — 0100

1. OFFENSE/CLASSIFICATION LAST PREVIOUS REPORT: HOMICIDE/MURDER
I-UCR OFF. CODE: 0110
2. ADDRESS OF ORIG. INCIDENT/OFFENSE: 3428 W. North ave ☐1 VERIFIED ☐2 CORRECTED
3. BEAT OF OCCUR.: 1422

5. VICTIM'S NAME AS SHOWN ON CASE REPORT: WILEY, Torrence
CORRECT ☐1 YES ☐2 NO — IF NO, CORRECT ALL VICTIM INFORMATION IN BOXES 20 THROUGH 27.
6. FIRE RELATED ☐1 YES ☒2 NO
7. BEAT ASSIGNED: 5055

8. TYPE OF LOCATION OR PREMISE WHERE INCIDENT/OFFENSE OCCURRED: Street
LOCATION CODE: 304
9. NO. OF VICTIMS:
10. NO. OF OFFENDERS: DNA

CIRCUMSTANCES: 11. ☒ VERIFIED ☐ UPDATE TO — 12. OBJECT/WEAPON CODE NOS. — 13. FIREARM FEATURES CODE NO. — 14. POINT/ENTRY CODE NO. — 15. POINT/EXIT CODE NO. — 16. BURGLAR ALARM CODE NOS. — 17. SAFE BURGLARY METHOD CODE NO. — 18. IF RESIDENCE WHERE WERE OCCUP. CODE NO.

19. PROPERTY: ☐ VERIFIED DNA ☐ UPDATE TO — DESCRIBE PROPERTY IN NARRATIVE. T = TAKEN; R = RECOVERED. FILL IN THE FULL AMOUNT OF ONLY THOSE VALUES WHICH EITHER DIFFER FROM OR WERE NOT REPORTED ON THE ORIGINAL CASE REPORT OR THE LAST PREVIOUS SUPPLEMENTARY REPORT.
1 MONEY ☐T $ ☐R; 2 JEWELRY ☐T $ ☐R; 3 FURS ☐T $ ☐R; 4 CLOTHING ☐T $ ☐R; 7 OFFICE EQUIPMENT ☐T $ ☐R; 8 TV, RADIO, STEREO ☐T $ ☐R; 9 HOUSEHOLD GOODS ☐T $ ☐R; 0 CONSUM. GOODS ☐T $ ☐R; (-) FIREARMS ☐T $ ☐R; & NARC./DANGEROUS DRUGS ☐T $ ☐R; 5 OTHER ☐T $ ☐R; 6 NONE ☐T ☐R

VICTIMS UPDATE ONLY

| | 20. NAME (LAST–FIRST–M.I.) | 21. I-UCR OFFENSE CODE | 22. HOME ADDRESS (NO., DIR., STREET, APT. NO.) | 23. SEX–RACE–AGE CODE | 24. HOME PHONE | 25. BUSINESS PHONE | 26. INJURED YES NO | 27. VICTIM REL. CODE |
|---|---|---|---|---|---|---|---|---|
| 1. | | | | | | | | |
| 2. | | | | | | | | |
| 3. | | | | | | | | |

OFFENDERS UPDATE ONLY

| | 28. OFFENDER'S NAME (OR DESCRIBE CLOTHING, ETC.) | 29. HOME ADDRESS | 30. SEX–RACE–AGE CODE | HEIGHT | WEIGHT | EYES | HAIR | COMPL. |
|---|---|---|---|---|---|---|---|---|
| 1. | | | | | | | | |
| 2. | | | | | | | | |

PERMANENT RETENTION FILE

31. C.B. NO. — I.R. NO., Y.D. NO. OR J.D.A. NO. — OFFENDER REL. CODE — OFF. 1 / OFF. 2 — C.B. NO. — I.R. NO., Y.D. NO. OR J.D.A. NO. — OFFENDER REL. CODE — 32. NO. ARRESTED — ARREST. UNIT NO.

33. OFF'S. VEHICLE ☐USED ☐STOLEN — YEAR — MAKE — BODY STYLE — COLOR — V.I.N. — STATE LICENSE NO. — STATE

34. SERIAL NOS. OR IDENTIFICATION NOS. ☐1 DNA ☐2 VERIFIED ☐3 CORRECTED — LIST ALL CORRECTIONS & NEW OR ADDITIONAL NOS. OBTAINED IN NARRATIVE

50. OFFENSE/CLASS. THIS DATE (IF SAME ENTER DNA): D.N.A.
REV. CODE:
51. METHOD CODE:
52. METHOD ASSIGNED: ☒1 FIELD ☐3 SUMMARY
UNIT NO.: 652
53. STATUS: ☒0 PROGRESS ☐1 SUSPENDED ☐2 UNFOUNDED

STATUS CONT'D.: ☐3 CLRD. CLOSED ☐4 CLRD. OPEN ☐5 EXC. CLRD. CLOSED ☐6 EXC. CLRD. OPEN ☐7 CLSD. NON-CRIM.
54. IF CASE CLEARED, HOW CLEARED: ☐1 ARREST & PROSEC. ☐2 DIRECTED TO JUV. CRT. ☐3 COMPL. RFUSD. TO PROSECUTE ☐4 COMMUNITY ADJUSTMENT ☐5 OTHER EXCEPT. — ☐ADULT ☐JUV.

55. ☐FOR SUMMARY CASES ONLY – THE ORIGINAL CASE REPORT IS SUBSTANTIALLY CORRECT, AND CONTACT WITH THE VICTIM HAS DISCLOSED NO ADDITIONAL PERTINENT INFORMATION.

80. NARRATIVE

THIS IS A CAUSE OF DEATH REPORT:

MEDICAL EXAMINERS CASE NUMBER: Case # 447 May 1990

DATE OF AUTOPSY: 25 May 1990

PATHOLOGIST: Dr. Lifschultz

CAUSE & MANNER OF DEATH: Multiple Gunshot Wounds / Homicide

INVESTIGATION: Victim sustained a gunshot wound to the left chest, 18" B.T.H. & 7" L.M.L. ( entrance-lodged) and a G.S.W to the penis which entered the abdomen and exited out the right hip 33" B.T.H.. ** One medium cal partially jacketed lead bullet (deformed) was recovered from victims body:

35. R.D. NO.: N-234-297

90. EXTRA COPIES REQUIRED (NO. & RECIPIENT): D.N.A.
91. DATE THIS REPORT SUBMITTED – DAY 25 MO. May YR. 90 — TIME 1315
92. SUPERVISOR APPROVING (PRINT NAME): Mingey — STAR NO. #1721
93. REPORTING OFFICER (PRINT NAME): Robert Wasmund — STAR NO. 9666
94. REPORTING OFFICER (PRINT NAME) — STAR NO.
SIGNATURE: Robt Wasmund
SIGNATURE
SIGNATURE: [signature]
95. DATE APPROVED (DAY–MO.–YR.): 25 MAY 1990 — TIME 2113

CPD-11.411-B (Rev. 8/85) — *MUST BE COMPLETED IN ALL CASES

CRC ☐ 228



PERMANENT RETENTION FILE
#1. G.S.W.
18" B.T.H
7" L.M.L
(ENT.- LOD.)
G.S.W.
#2 ENT.
34" B.T.H
(LFT. SHAFT)
(INTO ABDOMEN)
(OUT THE HIP)
G.S.W.
#2 EXIT
33" EXIT
CASE #- 447 MAY 1990
PATHOLOGIST: DR. LIFSCHULTZ
CAUSE/MANNER: MULTIPLE GUNSHOT WOUNDS/HOMICIDE
INJURIES: #1. G.S.W. LEFT CHEST, 18" B.T.H. 7" L.M.L (ENT.- LODGED)
#2. G.S.W. PENIS, EXITED OUT RIGHT HIP.
BULLET RECOVERED
-6 JUN 1990 20 SHEAD
(DEFORMED)
N-234297

Identify and describe all property or possible evidence recovered at the end of the Narrative in column form. Show exactly where found, when found, who found it and its description (include Property Inventory numbers). If property taken was scribed for Operation Identification, indicate I.D. number at end of Narrative. Offender's approximate description, if possible, should include name if known, nickname, sex, race code, age, height, weight, color eyes & hair, complexion, scars, marks, etc. If suspect is arrested, give name, sex, race code, age, C.B. or I.R. number, if known, and state "In Custody."

# SUPPLEMENTARY REPORT

CHICAGO POLICE – FOR USE BY B.I.S. PERSONNEL ONLY

All descriptions and statements in this entire report are approximations or summarizations unless indicated otherwise.

4. DATE OF ORIG. OCCURRENCE–TIME: 25 May 1990 | 0100

1. OFFENSE/CLASSIFICATION LAST PREVIOUS REPORT: HOMICIDE/1st degree Murder
I-UCR OFF. CODE: 0110
2. ADDRESS OF ORIG. INCIDENT/OFFENSE [X] 1 VERIFIED [ ] 2 CORRECTED: 3428 W. North
3. BEAT OF OCCUR.: 1422

5. VICTIM'S NAME AS SHOWN ON CASE REPORT: WILEY, Torrence
CORRECT [X] 1 YES [ ] 2 NO — IF NO, CORRECT ALL VICTIM INFORMATION IN BOXES 20 THROUGH 27.
6. FIRE RELATED [ ] 1 YES [X] 2 NO
7. BEAT ASSIGNED: 5548

8. TYPE OF LOCATION OR PREMISE WHERE INCIDENT/OFFENSE OCCURRED: street
LOCATION CODE: 304
9. NO. OF VICTIMS: 2
10. NO. OF OFFENDERS: unknown

CIRCUMSTANCES: 11 [X] VERIFIED [ ] UPDATE TO — 12. OBJECT/WEAPON CODE NOS. — 13. FIREARM FEATURES CODE NO. — 14. POINT/ENTRY CODE NO. — 15. POINT/EXIT CODE NO. — 16. BURGLAR ALARM CODE NOS. — 17. SAFE BURGLARY METHOD CODE NO. — 18. IF RESIDENCE WHERE WERE OCCUP. CODE NO.

19. PROPERTY [X] VERIFIED [ ] UPDATE TO — DESCRIBE PROPERTY IN NARRATIVE. T = TAKEN: R = RECOVERED. FILL IN THE FULL AMOUNT OF ONLY THOSE VALUES WHICH EITHER DIFFER FROM OR WERE NOT REPORTED ON THE ORIGINAL CASE REPORT OR THE LAST PREVIOUS SUPPLEMENTARY REPORT.
1 MONEY, 2 JEWELRY, 3 FURS, 4 CLOTHING, 7 OFFICE EQUIPMENT, 8 TV, RADIO, STEREO, 9 HOUSEHOLD GOODS, 0 CONSUM. GOODS, (-) FIREARMS, & NARC./DANGEROUS DRUGS, 5 OTHER, 6 NONE

VICTIMS UPDATE ONLY: 20. NAME (LAST–FIRST–M.I.) | 21. I-UCR OFFENSE CODE | 22. HOME ADDRESS (NO., DIR., STREET, APT. NO.) | 23. SEX–RACE–AGE CODE | 24. HOME PHONE | 25. BUSINESS PHONE | 26. INJURED YES NO | 27. VICTIM REL. CODE
1.
2.
3.

PERMANENT RETENTION FILE

OFFENDERS UPDATE ONLY: 28. OFFENDER'S NAME (OR DESCRIBE CLOTHING, ETC.) | 29. HOME ADDRESS | 30. SEX–RACE–AGE CODE | HEIGHT | WEIGHT | EYES | HAIR | COMPL.
1.
2.
31. C.B. NO. | I.R. NO., Y.D. NO. OR J.D.A. NO. | OFFENDER REL. CODE | C.B. NO. | I.R. NO., Y.D. NO. OR J.D.A. NO. | OFFENDER REL. CODE | 32. NO. ARRESTED | ARREST. UNIT NO.
OFF. 1 — OFF. 2

33. OFF'S. VEHICLE [ ] USED [ ] STOLEN — YEAR — MAKE — BODY STYLE — COLOR — V.I.N. — STATE LICENSE NO. — STATE

34. SERIAL NOS. OR IDENTIFICATION NOS. [X] DNA [ ] 2 VERIFIED [ ] 3 CORRECTED — LIST ALL CORRECTIONS & NEW OR ADDITIONAL NOS. OBTAINED IN NARRATIVE

50. OFFENSE/CLASS. THIS DATE (IF SAME ENTER DNA): dna
REV. CODE:
51. METHOD CODE: dna
52. METHOD ASSIGNED [X] 1 FIELD [ ] 3 SUMMARY
UNIT NO.: 652
53. STATUS [X] 0 PROGRESS [ ] 1 SUSPENDED [ ] 2 UNFOUNDED

STATUS CONT'D. [ ] 3 CLRD. CLOSED [ ] 4 CLRD. OPEN [ ] 5 EXC. CLRD. CLOSED [ ] 6 EXC. CLRD. OPEN [ ] 7 CLSD. NON-CRIM.
54. IF CASE CLEARED, HOW CLEARED [ ] 1 ARREST & PROSEC. [ ] 2 DIRECTED TO JUV. CRT. [ ] 3 COMPL. RFUSD. TO PROSECUTE [ ] 4 COMMUNITY ADJUSTMENT [ ] 5 OTHER EXCEPT. [ ] ADULT [ ] JUV.

55. [ ] FOR SUMMARY CASES ONLY – THE ORIGINAL CASE REPORT IS SUBSTANTIALLY CORRECT, AND CONTACT WITH THE VICTIM HAS DISCLOSED NO ADDITIONAL PERTINENT INFORMATION.

80. NARRATIVE

FIELD INVESTIGATION: PROGRESS REPORT

INTERVIEWED: 1. Richard Wiley WORTHAM (brother of victims) M/B/32 [REDACTED] [REDACTED] of 440 N Drake unemployed laborer single residing at 440 N Drake IR # 444 668

2. Zearl WILEY (brother of victims) M/B/24 [REDACTED] 9177 S South Chicago single and unemployed, home phone # 375 3578

35. R.D. NO. N 234 297

90. EXTRA COPIES REQUIRED (NO. & RECIPIENT): normal
91. DATE THIS REPORT SUBMITTED – DAY MO. YR.: 25 May 90 — TIME: 1630
92. SUPERVISOR APPROVING (PRINT NAME) STAR NO.: MINGEY #731
93. REPORTING OFFICER (PRINT NAME): Det. J. Boyle — STAR NO.: 6945
94. REPORTING OFFICER (PRINT NAME): Det. B. Brennan — STAR NO.: 14888
SIGNATURE — SIGNATURE — SIGNATURE: [signature]
95. DATE APPROVED (DAY–MO.–YR.): 26 MAY 1990 — TIME: 1710

81 — 02 MAY 1991

CPD-11.411-B (Rev. 8/85) — *MUST BE COMPLETED IN ALL CASES

CRC 228

DETECTIVE DIVISION
AREA FIVE VIOLENT CRIMES

RD # N 234 297
25 May 1990

HOMICIDE / 1st DEGREE MURDER
WILEY, Torrence
WILEY, Kevin

PAGE TWO

INTERVIEWED:

3. Jolanda WILEY (sister of victims) single and unemployed, residing at 1925 N Drake 3rd Floor Rear [redacted]

PERMANENT RETENTION FILE

4. Sandra MONTOYA F/WH/38 years [redacted] single and residing at 2168 Wildwood Lane Hanover Pk. Ill, home phone 708-213 8797 a Supervisor for United Cerebral Palsy 4540 W Washington Blvd (fiancee of Torrence Wiley and his co-worker)

INVESTIGATION:

The Reporting Detectives in the continuing investigation into the above captioned incident were contacted by Sgt. Biebel of this command. He related that the sister of the victims had called the office of Area Five Violent Crimes and requested to speak with the undersigned. The undersigned responded to the residence of Ms. Wiley and met with her and several members of her family. The undersigned requested that a member of the family accompanied them to the Medical Examiner office. The victims two brothers Richard and Zearl along with Sandra Montoya went to the Medical examiners office and positively identified the two victims as Torrence and Kevin Wiley.

The undersigned returned to the residence of Jolanda Wiley and spoke with several members of the family who related the following in essence but not verbatim.

RICHARD WILEY WORTHAM stated that he last saw his brother Torrence on 24 May 1990 at 2145 hours. Torrence left Richard residence stating that he was on his way to Jolanda house. He could add nothing more

JOLANDA WILEY stated that her brother Torrence came to her house at about 2200 hours on 24 May 1990. He stayed for a while speaking with their brother Kevin. Kevin and Torrence left together sometime after 2300 hours. They did not say where they were going other than saying that they had to go out. She could add nothing more other than to say that she knew of no one who would do this to her brothers.

ZEARL WILEY stated that he heard about his brothers on the radio this morning(25 May 1990). He stated that he hadn't seen his brothers in several days and could add nothing more.

SANDRA MONTOYA stated that she is the fiancee of Torrence WILEY She stated that she first met him on 26 June 1989 when he came to work at United Cerebral Palsy. She stated that she last saw Torrence on Wednesday 23 May 1990. She could add nothing more other than to say that Torrence was a very gentle man and would not hurt anyone.

81 02 0661 NAL 9-

The undersigned will attempt to locate any witness to this incident. Any information garnered will become the subject of a future appropriate report. This investigation continues.................

Det. John Boyle # 6945
Det. Bernard Brennan # 14888
DDA FIVE VIOLENT CRIMES

Identify and describe all property or possible evidence recovered at the end of the Narrative in column form. Show exactly where found, when found, who found it and its description (include Property inventory numbers). If property taken was scribed for Operation Identification, indicate I.D. number at end of Narrative. Offender's approximate description, if possible, should include name if known, nickname, sex, race code, age, height, weight, color eyes & hair, complexion, scars, marks, etc. If suspect is arrested, give name, sex, race code, age, C.B. or I.R. number, if known, and state "In Custody."

# SUPPLEMENTARY REPORT

CHICAGO POLICE – FOR USE BY B.I.S. PERSONNEL ONLY

All descriptions and statements in this entire report are approximations or summarizations unless indicated otherwise.

4. DATE OF ORIG. OCCURRENCE–TIME: DAY 25 MO. May YR. 90 | 0100

1. OFFENSE/CLASSIFICATION LAST PREVIOUS REPORT: Homicide/Murder First Degree
I-UCR OFF. CODE: 0110
2. ADDRESS OF ORIG. INCIDENT/OFFENSE [X] 1 VERIFIED [ ] 2 CORRECTED: 3428 W. North Ave.
3. BEAT OF OCCUR.: 1422

5. VICTIM'S NAME AS SHOWN ON CASE REPORT: WILEY, Torrence
CORRECT [XX] YES [ ] 2 NO — IF NO, CORRECT ALL VICTIM INFORMATION IN BOXES 20 THROUGH 27.
6. FIRE RELATED [ ] 1 YES [X] 2 NO
7. BEAT ASSIGNED: 5526

8. TYPE OF LOCATION OR PREMISE WHERE INCIDENT/OFFENSE OCCURRED: On Street
LOCATION CODE: 304
9. NO. OF VICTIMS: Two
10. NO. OF OFFENDERS: Unknown

CIRCUMSTANCES: [XX] VERIFIED [ ] UPDATE TO
12. OBJECT/WEAPON CODE NOS. | 13. FIREARM FEATURES CODE NO. | 14. POINT/ENTRY CODE NO. | 15. POINT/EXIT CODE NO. | 16. BURGLAR ALARM CODE NOS. | 17. SAFE BURGLARY METHOD CODE NO. | 18. IF RESIDENCE WHERE WERE OCCUP. CODE NO.

19. PROPERTY: [ ] VERIFIED DNA [ ] UPDATE TO
DESCRIBE PROPERTY IN NARRATIVE. T = TAKEN; R = RECOVERED
FILL IN THE FULL AMOUNT OF ONLY THOSE VALUES WHICH EITHER DIFFER FROM OR WERE NOT REPORTED ON THE ORIGINAL CASE REPORT OR THE LAST PREVIOUS SUPPLEMENTARY REPORT.

1 MONEY [ ] T $ [ ] R | 2 JEWELRY [ ] T $ [ ] R | 3 FURS [ ] T $ [ ] R | 4 CLOTHING [ ] T $ [ ] R | 7 OFFICE EQUIPMENT [ ] T $ [ ] R | 8 TV, RADIO, STEREO [ ] T $ [ ] R
9 HOUSEHOLD GOODS [ ] T $ [ ] R | 0 CONSUM. GOODS [ ] T $ [ ] R | (-) FIREARMS [ ] T $ [ ] R | & NARC./DANGEROUS DRUGS [ ] T $ [ ] R | 5 OTHER [ ] T $ [ ] R | 6 NONE [ ] T [ ] R

VICTIMS UPDATE ONLY

| | 20. NAME (LAST–FIRST–M.I.) | 21. I-UCR OFFENSE CODE | 22. HOME ADDRESS (NO., DIR., STREET, APT. NO.) | 23. SEX–RACE–AGE CODE | 24. HOME PHONE | 25. BUSINESS PHONE | 26. INJURED YES NO | 27. VICTIM REL. CODE |
|---|---|---|---|---|---|---|---|---|
| 1. | | | | | | | | |
| 2. | | | | | | | | |
| 3. | | | | | | | | |

PERMANENT RETENTION FILE

OFFENDERS UPDATE ONLY

| | 28. OFFENDER'S NAME (OR DESCRIBE CLOTHING, ETC.) | 29. HOME ADDRESS | 30. SEX–RACE–AGE CODE | HEIGHT | WEIGHT | EYES | HAIR | COMPL. |
|---|---|---|---|---|---|---|---|---|
| 1. | | | | | | | | |
| 2. | | | | | | | | |

31. C.B. NO. | I.R. NO., Y.D. NO. OR J.D.A. NO. | OFFENDER REL. CODE | C.B. NO. | I.R. NO., Y.D. NO. OR J.D.A. NO. | OFFENDER REL. CODE | 32. NO. ARRESTED | ARREST. UNIT NO.
OFF. 1 | OFF. 2

33. OFF'S. VEHICLE [ ] USED [ ] STOLEN | YEAR | MAKE | BODY STYLE | COLOR | V.I.N. | STATE LICENSE NO. | STATE

34. SERIAL NOS. OR IDENTIFICATION NOS. [ ] 1 DNA [ ] 2 VERIFIED [ ] 3 CORRECTED — LIST ALL CORRECTIONS & NEW OR ADDITIONAL NOS. OBTAINED IN NARRATIVE

50. OFFENSE/CLASS. THIS DATE (IF SAME ENTER DNA): DNA
REV. CODE:
51. METHOD CODE: DNA
52. METHOD ASSIGNED [X] 1 FIELD [ ] 3 SUMMARY
UNIT NO.: 652
53. STATUS [XX] 0 PROGRESS [ ] 1 SUSPENDED [ ] 2 UNFOUNDED

STATUS CONT'D. [ ] 3 CLRD. CLOSED [ ] 4 CLRD. OPEN [ ] 5 EXC. CLRD. CLOSED [ ] 6 EXC. CLRD. OPEN [ ] 7 CLSD. NON-CRIM.
54. IF CASE CLEARED, HOW CLEARED [ ] 1 ARREST & PROSEC. [ ] 2 DIRECTED TO JUV. CRT. [ ] 3 COMPL. RFUSD. TO PROSECUTE [ ] 4 COMMUNITY ADJUSTMENT [ ] 5 OTHER EXCEPT. [ ] ADULT [ ] JUV.

55. [ ] FOR SUMMARY CASES ONLY – THE ORIGINAL CASE REPORT IS SUBSTANTIALLY CORRECT, AND CONTACT WITH THE VICTIM HAS DISCLOSED NO ADDITIONAL PERTINENT INFORMATION.

80. NARRATIVE

THIS IS A CANVASS REPORT:

PERSONS INTERVIEWED: HERNANDEZ, Alicia F/WH/ a barmaid at the Jose POBRE Tavern 3409 W. North Ave. related that there were no male black patrons in the tavern the evening of 25May90.

PRECEEO, Alma F/WH/ 3419 W. North Ave. related that she was awakened 2400 hrs. by the sound of two male english voices that were engaged in an argument. PRECEEO stated that she could only hear bits of the conversation. (I am trying to help you- I am going to kill you- I am going to kill you first- you said that we would get the last bus) The total argument lasted for about an hour. After hearing four shots, PRECEEO called the police. PRECEEO then gave R/Dets. her sister's MACIAS, Carmen business telephone number. 243-1300 who was also home when the incident occured.

MILAN, David M/WH/ 3429 W. North Ave. Staff member Solder of God Church. Only heard four shots.

35. R.D. NO. N-234297

90. EXTRA COPIES REQUIRED (NO. & RECIPIENT): Normal
91. DATE THIS REPORT SUBMITTED – DAY 25 MO. May YR. 90 — TIME
91 02 (illegible stamp)
92. SUPERVISOR APPROVING (PRINT NAME) STAR NO.: HINGEY #1781
93. REPORTING OFFICER (PRINT NAME): Det. WARE, Willie — STAR NO. 7428
94. REPORTING OFFICER (PRINT NAME): Det. KONDAL Joseph — STAR NO. 4620
SIGNATURE: [signature]
SIGNATURE
SIGNATURE: [signature]
95. DATE APPROVED (DAY–MO.–YR.): 26 MAY 1990 — TIME: 1715

CPD-11.411-B (Rev. 8/85) *MUST BE COMPLETED IN ALL CASES

CRC [ ] 228

DETECTIVE DIVISION
AREA FIVE VIOLENT CRIMES

25 May 1990
N-234297

WILEY, Torrence
WILEY, Kevin
First Degree Murder

Page four

CANVASS CONTINUED.. MACIAS, Carmen F/WH/ 3419 W. North Ave. was contacted by teleph-phone at place of employment 243-1300, related that she was awakened around 2400 Hrs. 24May90 by the sound of two male blacks having an argument. One had a very calm voice, the second had a loud abrasive type of voice and sounded as if he may have been drunk. MACIAS was only able to hear parts of the argument, that lasted for at least an hour. Both subjects refered a number of times to someone called Lulu Dog, and also had some disagreement about a bus. MACIAS did not call the police after hearing shots because she did not have a telephone in her apartment, but considered going downstairs to her father (INOCENCI who was also interviewed) apartment and using his telephone #235-7409 to call the police. MACIAS later looked out of her window and saw the two victim's down on the street.

ALVARDO, Rosa F/WH/ 3428 W. North Ave heard nothing.
GOZMAN, Maria F/WH/ 3417 W. North Ave heard nothing.
MOJICA, Minerva F/WH/ 3432 W. North Ave heard nothing.
No answer was received at 3419, 21, 23, W. North Ave. The R/Dets. went to each open tavern and liquor store in the area trying to determine if any male blacks had purchased any Milwaukee's Best beer, with negative results. End of canvass report.
Dets. WARE,W & KONDAL J. #7428/4620

PERMANENT RETENTION FILE

N-234297

-6 JUN 1990 20 16

Identify and describe all property or possible evidence recovered at the end of the Narrative in column form. Show exactly where found, when found, who found it and its description (include Property Inventory numbers). If property taken was scribed for Operation Identification, indicate I.D. number at end of Narrative. Offender's approximate description, if possible, should include name if known, nickname, sex, race code, age, height, weight, color eyes & hair, complexion, scars, marks, etc. If suspect is arrested, give name, sex, race code, age, C.B. or I.R. number, if known, and state "In Custody."

# SUPPLEMENTARY REPORT

CHICAGO POLICE – FOR USE BY B.I.S. PERSONNEL ONLY

All descriptions and statements in this entire report are approximations or summarizations unless indicated otherwise.

4. DATE OF ORIG. OCCURRENCE–TIME: DAY 25 MO. May YR. 90 — 0100

1. OFFENSE/CLASSIFICATION LAST PREVIOUS REPORT: HOMICIDE/MURDER

I-UCR OFF. CODE: 0110

2. ADDRESS OF ORIG. INCIDENT/OFFENSE: 3428 W. North ave

3. BEAT OF OCCUR.: 1422

5. VICTIM'S NAME AS SHOWN ON CASE REPORT: WILEY, Kevin

CORRECT: ☐1 YES ☐2 NO — IF NO, CORRECT ALL VICTIM INFORMATION IN BOXES 20 THROUGH 27.

6. FIRE RELATED: ☐1 YES ☒2 NO

7. BEAT ASSIGNED: 5055

8. TYPE OF LOCATION OR PREMISE WHERE INCIDENT/OFFENSE OCCURRED: Street

LOCATION CODE: 304

9. NO. OF VICTIMS: 2

10. NO. OF OFFENDERS: DNA

CIRCUMSTANCES: 11. ☒ VERIFIED ☐ UPDATE TO — 12. OBJECT/WEAPON — 13. FIREARM FEATURES — 14. POINT/ENTRY — 15. POINT/EXIT — 16. BURGLAR ALARM — 17. SAFE BURGLARY METHOD — 18. IF RESIDENCE WHERE WERE OCCUP.

19. PROPERTY: VERIFIED DNA ☐ UPDATE TO — DESCRIBE PROPERTY IN NARRATIVE. T = TAKEN; R = RECOVERED. FILL IN THE FULL AMOUNT OF ONLY THOSE VALUES WHICH EITHER DIFFER FROM OR WERE NOT REPORTED ON THE ORIGINAL CASE REPORT OR THE LAST PREVIOUS SUPPLEMENTARY REPORT.

1 MONEY ☐T $ ☐R — 2 JEWELRY ☐T $ ☐R — 3 FURS ☐T $ ☐R — 4 CLOTHING ☐T $ ☐R — 7 OFFICE EQUIPMENT ☐T $ ☐R — 8 TV, RADIO, STEREO ☐T $ ☐R
9 HOUSEHOLD GOODS ☐T $ ☐R — 0 CONSUM. GOODS ☐T $ ☐R — (-) FIREARMS ☐T $ ☐R — & NARC./DANGEROUS DRUGS ☐T $ ☐R — 5 OTHER ☐T $ ☐R — 6 NONE ☐T ☐R

VICTIMS UPDATE ONLY

| | 20. NAME (LAST–FIRST–M.I.) | 21. I-UCR OFFENSE CODE | 22. HOME ADDRESS (NO., DIR., STREET, APT. NO.) | 23. SEX–RACE–AGE CODE | 24. HOME PHONE | 25. BUSINESS PHONE | 26. INJURED YES NO | 27. VICTIM REL. CODE |
|---|---|---|---|---|---|---|---|---|
| 1. | | | | | | | | |
| 2. | | | | | | | | |
| 3. | | | | | | | | |

PERMANENT RETENTION FILE

OFFENDERS UPDATE ONLY

| | 28. OFFENDER'S NAME (OR DESCRIBE CLOTHING, ETC.) | 29. HOME ADDRESS | 30. SEX–RACE–AGE CODE | HEIGHT | WEIGHT | EYES | HAIR | COMPL. |
|---|---|---|---|---|---|---|---|---|
| 1. | | | | | | | | |
| 2. | | | | | | | | |

| | 31. C.B. NO. | I.R. NO., Y.D. NO. OR J.D.A. NO. | OFFENDER REL. CODE | | C.B. NO. | I.R. NO., Y.D. NO. OR J.D.A. NO. | OFFENDER REL. CODE | 32. NO. ARRESTED | ARREST. UNIT NO. |
|---|---|---|---|---|---|---|---|---|---|
| OFF. 1 | | | | OFF. 2 | | | | | |

33. OFF'S. VEHICLE ☐USED ☐STOLEN — YEAR — MAKE — BODY STYLE — COLOR — V.I.N. — STATE LICENSE NO. — STATE

34. SERIAL NOS. OR IDENTIFICATION NOS. ☐1 DNA ☐2 VERIFIED ☐3 CORRECTED — LIST ALL CORRECTIONS & NEW OR ADDITIONAL NOS. OBTAINED IN NARRATIVE

50. OFFENSE/CLASS. THIS DATE (IF SAME ENTER DNA): D.N.A.

REV. CODE — 51. METHOD CODE — 52. METHOD ASSIGNED: ☒ FIELD ☐3 SUMMARY — UNIT NO.: 652 — 53. STATUS: ☒ PROGRESS ☐1 SUSPENDED ☐2 UNFOUNDED

STATUS CONT'D.: ☐3 CLRD. CLOSED ☐4 CLRD. OPEN ☐5 EXC. CLRD. CLOSED ☐6 EXC. CLRD. OPEN ☐7 CLSD. NON-CRIM.

54. IF CASE CLEARED, HOW CLEARED: ☐1 ARREST & PROSEC. ☐2 DIRECTED TO JUV. CRT. ☐3 COMPL. RFUSD. TO PROSECUTE ☐4 COMMUNITY ADJUSTMENT ☐5 OTHER EXCEPT. — ☐ADULT ☐JUV.

55. ☐ FOR SUMMARY CASES ONLY – THE ORIGINAL CASE REPORT IS SUBSTANTIALLY CORRECT, AND CONTACT WITH THE VICTIM HAS DISCLOSED NO ADDITIONAL PERTINENT INFORMATION.

80. NARRATIVE

THIS IS A CAUSE OF DEATH REPORT:

MEDICAL EXAMINERS CASE NUMBER: Case # 446 May 1990

DATE OF AUTOPSY: 25 May 1990

PATHOLOGIST: Dr. Lifschultz

CAUSE & MANNER OF DEATH: Gunshot Wound Of Neck / Homicide

INVESTIGATION: Victim sustained a gunshot wound to the left side of the neck approximately ½" below and 1" behind the left ear lobe. ( entrance-lodged ). ** One medium cal partially metal jacketed lead bullet( defromed ) was recovered from victims head.

35. R.D. NO. N-234-297

90. EXTRA COPIES REQUIRED (NO. & RECIPIENT): D.N.A.

91. DATE THIS REPORT SUBMITTED: 29 May 1990 — TIME 1445

92. SUPERVISOR APPROVING (PRINT NAME): [signature] — STAR NO.

93. REPORTING OFFICER (PRINT NAME): Robert Wasmund — STAR NO. 9666

94. REPORTING OFFICER (PRINT NAME) — STAR NO. [stamp: JUN 02 1990 ... 9-]

SIGNATURE: [signature]

SIGNATURE

SIGNATURE: [signature]

95. DATE APPROVED: 29 MAY 1990 — TIME 2110

CPD-11.411-B (Rev. 8/85) — *MUST BE COMPLETED IN ALL CASES

CRC ☐ 228

Identify and describe all property or possible evidence recovered at the end of the Narrative in column form. Show exactly where found, when found, who found it and its description (include Property Inventory numbers). If property taken was scribed for Operation Identification, indicate I.D. number at end of Narrative. Offender's approximate description, if possible, should include name if known, nickname, sex, race code, age, height, weight, color eyes & hair, complexion, scars, marks, etc. If suspect is arrested, give name, sex, race code, age, C.B. or I.R. number, if known, and state "In Custody."

# SUPPLEMENTARY REPORT

CHICAGO POLICE – FOR USE BY B.I.S. PERSONNEL ONLY

All descriptions and statements in this entire report are approximations or summarizations unless indicated otherwise.

4. DATE OF ORIG. OCCURRENCE–TIME (DAY MO. YR.): 25 May 1990 | 0100

1. OFFENSE/CLASSIFICATION LAST PREVIOUS REPORT: Homicide/First Degree Murder
I-UCR OFF. CODE: 0110
2. ADDRESS OF ORIG. INCIDENT/OFFENSE: ☒ 1 VERIFIED ☐ 2 CORRECTED — 3428 W. North Ave.
3. BEAT OF OCCUR.: 1422

5. VICTIM'S NAME AS SHOWN ON CASE REPORT: WILEY, Torrence
CORRECT: ☒ 1 YES ☐ 2 NO — IF NO, CORRECT ALL VICTIM INFORMATION IN BOXES 20 THROUGH 27.
6. FIRE RELATED: ☐ 1 YES ☒ 2 NO
7. BEAT ASSIGNED: 5535

8. TYPE OF LOCATION OR PREMISE WHERE INCIDENT/OFFENSE OCCURRED: Street
LOCATION CODE: 304
9. NO. OF VICTIMS: 2
10. NO. OF OFFENDERS: (4)

CIRCUMSTANCES: 11. ☒ VERIFIED ☐ UPDATE TO — 12. OBJECT/WEAPON CODE NOS. — 13. FIREARM FEATURES CODE NO. — 14. POINT/ENTRY CODE NO. — 15. POINT/EXIT CODE NO. — 16. BURGLAR ALARM CODE NOS. — 17. SAFE BURGLARY METHOD CODE NO. — 18. IF RESIDENCE WHERE WERE OCCUP. CODE NO.

19. PROPERTY: ☐ VERIFIED ☐ UPDATE TO — DESCRIBE PROPERTY IN NARRATIVE. T – TAKEN; R – RECOVERED. FILL IN THE FULL AMOUNT OF ONLY THOSE VALUES WHICH EITHER DIFFER FROM OR WERE NOT REPORTED ON THE ORIGINAL CASE REPORT OR THE LAST PREVIOUS SUPPLEMENTARY REPORT.
1 MONEY ☐T $ ☐R — 2 JEWELRY ☐T $ ☐R — 3 FURS ☐T $ ☐R — 4 CLOTHING ☐T $ ☐R — 7 OFFICE EQUIPMENT ☐T $ ☐R — 8 TV, RADIO, STEREO ☐T $ ☐R
9 HOUSEHOLD GOODS ☐T $ ☐R — 0 CONSUM. GOODS ☐T $ ☐R — (-) FIREARMS ☐T $ ☐R — & NARC./DANGEROUS DRUGS ☐T $ ☐R — 5 OTHER ☐T $ ☐R — 6 NONE ☐T ☐R

VICTIMS UPDATE ONLY

| | 20. NAME (LAST–FIRST–M.I.) | 21. I-UCR OFFENSE CODE | 22. HOME ADDRESS (NO., DIR., STREET, APT. NO.) | 23. SEX–RACE–AGE CODE | 24. HOME PHONE | 25. BUSINESS PHONE | 26. INJURED YES NO | 27. VICTIM REL. CODE |
|---|---|---|---|---|---|---|---|---|
| 1. | | | | | | | | |
| 2. | | | | | | | | |
| 3. | | | | | | | | |

PERMANENT RETENTION FILE

OFFENDERS UPDATE ONLY

| | 28. OFFENDER'S NAME (OR DESCRIBE CLOTHING, ETC.) | 29. HOME ADDRESS | 30. SEX–RACE–AGE CODE | HEIGHT | WEIGHT | EYES | HAIR | COMPL. |
|---|---|---|---|---|---|---|---|---|
| 1. | MAYSONET, Jose J. | 1302 N. Homan | M/4/22 | 5-11 | 160 | Brn | Blk | Med. |
| 2. | GONZALEZ, Alfredo | 1835 N. Kedzie | M/4/31 | 5-10 | 150 | Brn | Blk | Med. |

| | 31. C.B. NO. | I.R. NO., Y.D. NO. OR J.D.A. NO. | OFFENDER REL. CODE | | C.B. NO. | I.R. NO., Y.D. NO. OR J.D.A. NO. | OFFENDER REL. CODE | 32. NO. ARRESTED | ARREST. UNIT NO. |
|---|---|---|---|---|---|---|---|---|---|
| OFF. 1 | 8628-787 | 772277 | | OFF. 2 | 8629-893 | 610697 | | 2 | 652 |

33. OFF'S. VEHICLE ☐ USED ☐ STOLEN — YEAR — MAKE — BODY STYLE — COLOR — V.I.N. — STATE LICENSE NO. — STATE

34. SERIAL NOS. OR IDENTIFICATION NOS. ☒ DNA ☐ 2 VERIFIED ☐ 3 CORRECTED — LIST ALL CORRECTIONS & NEW OR ADDITIONAL NOS. OBTAINED IN NARRATIVE

50. OFFENSE/CLASS. THIS DATE (IF SAME ENTER DNA): DNA — REV. CODE — 51. METHOD CODE — 52. METHOD ASSIGNED: ☒ 1 FIELD ☐ 3 SUMMARY — UNIT NO.: 652 — 53. STATUS: ☐ 0 PROGRESS ☐ 1 SUSPENDED ☐ 2 UNFOUNDED

STATUS CONT'D.: ☐ 3 CLRD. CLOSED ☒ 4 CLRD. OPEN ☐ 5 EXC. CLRD. CLOSED ☐ 6 EXC. CLRD. OPEN ☐ 7 CLSD. NON-CRIM.
54. IF CASE CLEARED, HOW CLEARED: ☒ 1 ARREST PROSEC. ☐ 2 DIRECTED TO JUV. CRT. ☐ 3 COMPL. RFUSD. TO PROSECUTE ☐ 4 COMMUNITY ADJUSTMENT ☐ 5 OTHER EXCEPT. — ☒ ADULT ☐ JUV.

55. ☐ FOR SUMMARY CASES ONLY – THE ORIGINAL CASE REPORT IS SUBSTANTIALLY CORRECT, AND CONTACT WITH THE VICTIM HAS DISCLOSED NO ADDITIONAL PERTINENT INFORMATION.

80. NARRATIVE

IN CUSTODY: MAYSONET, Jose J. M/WH/Age 22, DOB [redacted]
1302 N. Homan Ave. Married Unemployed, Admitted
Member of the Latin Kings Street Gang, CB# 8628-787,
IR# 772277

GONZALEZ, Alfredo M/WH/Age 31, DOB [redacted]
1835 N. Kedzie 1st fl. Single, Unemployed, Admitted
Member of the Latin Kings Street Gangs, AKA "Lluvia"
CB# IR# 610697

35. R.D. NO.: N-234297

90. EXTRA COPIES REQUIRED (NO. & RECIPIENT): Normal
91. DATE THIS REPORT SUBMITTED – DAY MO. YR.: 23 Aug. 90 — TIME
92. SUPERVISOR APPROVING (PRINT NAME): [signature] — STAR NO.: 890

93. REPORTING OFFICER (PRINT NAME): Det. E. HALVORSEN — STAR NO.: #6036
94. REPORTING OFFICER (PRINT NAME): Det. R. GUEVARA — STAR NO.: #16345
SIGNATURE: [signature]

SIGNATURE: Det. S. GAWRYS #16899
SIGNATURE: Det. R. PAULNITSKY #6503
95. DATE APPROVED (DAY–MO.–YR.): 24 Aug. 90 — TIME: 2340

CPD-11.411-B (Rev. 8/85)
*MUST BE COMPLETED IN ALL CASES

CRC ☐ 228

DETECTIVE DIVISION
AREA FIVE VIOLENT CRIMES

23 AUG. 1990
RD# N-234297

HOMICIDE/FIRST DEGREE MURDER
VICTIM: WILEY, Torrence

PERMANENT RETENTION FILE

WANTED:

Tino, Possible name of Chris CRUZ, M/WH/Age 20-25, 5-07, Muscular build
Known Latin King

FERNANDEZ, Chris M/B/Age 20-25, 1035 N. Spualding, House
Known Latin King, nickname of "FRO"

ARRESTING OFFICERS:

MAYSONET

| | |
|---|---|
| Det. R. PAULNITSKY | #6503 |
| Det. F. MONTILLA | #16410 |

GONZALEZ

| | |
|---|---|
| Det. S. GAWRYS | #16899 |
| Det. E. HALVORSEN | #6036 |
| Det. R. GUEVARA | #16345 |

DATE, TIME, LOCATION, OF ARREST:

MAYSONET
22 Aug. 90, 1200 hrs. 5555 W. Grand Ave.

GONZALEZ
23 Aug. 90, 1830 hrs. 5555 W, Grand Ave.

CHARGES, COURT BRANCH AND DATE:

MAYSONET
First Degree Murder, (2) Counts, Br. 66, 24 Aug. 90, Charges approved per A.S.A. Frank DiFRANCO, Felony Review

GONZALEZ
Charges are pending at this time.

Continued On Pagae (3)

DETECTIVE DIVISION
AREA FIVE VIOLENT CRIMES

23 AUG. 1990
RD# N-234297

HOMICIDE/FIRST DEGREE MURDER
VICTIM: WILEY, Torrence

PERMANENT RETENTION FILE

WEAPON: 9mm Automatic pistol, 4" barrel, B/S, Not Recovered.

MANNER/MOTIVE: Victims who were male black youths were standing on the street when they were approached by the offenders who are Latin and members of the Latin Kings. Offenders shot victims to death. Motive was gang rivalry.

VEHICLE USED: Older model Pontiac Bonv. 2 Dr. Light blue top/over dark blue bottom. This car is alleged to belong to a Latin King first name Jeffery.

NOTIFICATIONS: A.S.A. Jennifer BOROWITZ, Felony Review
A.S.A. Frank DIFRANCO, Felony Review

STATEMENTS: MAYSONET
Has provided a court reported typed statement.

INTERVIEWED: BELLO, Rosa F/WH /Age 24, DOB [REDACTED]
1302 N. Homan, Wife of Jose MAYSONETT
Ph# 235-4081 SS# [REDACTED]

INVESTIGATION: On 15 July 90, Sgt. E. MINGEY #1713, Area Five Violent Crimes, became aware of an offender charged in a shooting incident, in which three persons were shot on the street. This person was Jose MAYSONET, IR# 772277.

Continued On Page (4)



DETECTIVE DIVISION
AREA FIVE VIOLENT CRIMES

23 AUG. 1990
RD# N-234297

HOMICIDE/FIRST DEGREE MURDER
VICTIM: WILEY, Torrence

PERMANENT RETENTION FILE

This shooting incident was reported under RD# N-303737. Recovered from the scene of this shooting were three fired cartridge casings, with a class of 9MM 00. These casings were inventoried under Inventory #784562.

Sgt. MINGEY was aware of the fact that the weapon used to kill Torrence and Kevin WILEY was a 9mm automatic pistol. Sgt. MINGEY believed that there might be a connection between these two seperate shooting incidents.

On 15 July 90, Sgt. MINGEY in company with Det. F. MONTILLA #16410, Area Five Propety Crimes, interviewed Jose MAYSONET while he was at Area Five. Det. F. MONTILLA speaks Spanish. Det. E. MONTILLA advised Jose MAYSONET of his Miranda Rights in Spanish. Jose MAYSONET acknowledged understanding these rights and agreed to speak with these detectives. Jose MAYSONET indicated that he did have some knowledge of the murders of the two black youths on North Av. He stated that on the night the blacks were shot, three Latin Kings came by his house and wanted to get a 9mm automatic pistol that he had been given by the gang to hold. He gave the gun to these guys and they left. The next day he learned about the shooting of the two blacks on North Ave. and assumed that the Kings he gave the gun to must have done this shooting. Jose MAYSONET declined to provide the names of the individuals who had the gun.

Jose MAYSONET was thereafter locked up in the Cook County Jail. On 1 Aug. 90, Sgt. MINGEY and Det. MONTILLA went to interview Jose MAYSONET at the Cook County Jail. Jose MAYSONET signed the required attorney waiver form and agreed to be interviewed. Jose MAYSONET stated that he was involved in the murders of the two black youths. He stated that he was not the shooter but was present when the shooting occured. He stated that he knew who the shooter was and the other persons with him. He stated that he would not co-operate in this investigation unless a deal was cut to get him out of jail. Jose MAYSONET was informed by Sgt. MINGEY that no deal would be made even if possible.

On 22 Aug. 90, Det. R. PAULNITSKY was in court and saw that Jose MAYSONET had made bond and was also in court. Det. R. PAULNITSKY was aware of the previous admissions that Jose MAYSONET had made and asked Jose MAYSONET to come with him to Area Five for additional investigation of these murders.

Continued On Page (5)

DETECTIVE DIVISION
AREA FIVE VIOLENT CRIMES

23 AUG. 1990
RD# N-234297

HOMICIDE/FIRST DEGREE MURDER
VICTIM: WILEY, Torrence

PERMANENT RETENTION FILE

At Area Five, Jose MAYSONET was advised of his Miranda Rights by Det. F. MONTILLA. Jose MAYSONET acknowledged understanding each of his rights and agreed to talk with the detectives. Jose MAYSONET again repeated his previous statements about supplying the gun used in these murders and the fact that he knew who the offenders were. Jose MAYSONET stated that he could not provide an further information because he had been threatened by Latin King Gang Members with the death of himself, his wife and child, if he informed to the police. Jose MAYSONET was informed that he was being placed in custody for these murders.

On 22 Aug. 90, Dets. E. HALVORSEN, R. GUEVARA, and S. GAWRYS, arrived at Area Five to work the third watch. This investigation was passed on to these detectives.

On 22 Aug. 90, at 2000 hrs. Jose MAYSONET was interviewed by Det. R. GUEVARA, who speaks Spanish. During this interview Jose MAYSONET agreed to tell all he knew.

MAYSONET, Jose in summary acknowledged understanding his Miranda Rights as they were read to him by Det. GUEVARA, from a pre-printed paper. Jose MAYSONET agreed to make a statement. On 20 May 90, some members of the Latin Kings came by his house. He is a member of the Latin Kings. One of the Latin Kings was a guy called "Lluiva" He was asked by "Llviva" to hide a gun at his house. He agreed to do so. "Lluiva gave him a 9mm automatic pistol, 4' barrel, 15 shot, dark finish. On 24 May between 2330-0000, he was at home with his wife Rosa BELLO. Three Latin Kings came to his apartment. One of the Kings was "Lluiva. The other two guys were "Fro" and "Tino" They told him that they needed the pistol They told him they had something to do with two guys at Drake and North Ave. that involved dope and they wanted the pistol. He saw that "Lluiva was wearing a black hooded sweatshirt, which ment that they planed on doing a "Roll". He walked out of his apartment and they asked him if he wanted to drive the the car they had. He recognized the car as being the older model, light blue over dark blue, Pontaic Bonv. that belonged to another Latin King named Jeffery. He agreed to drive the car. He drove down Homan to Potomac, then turned and went down Potomac to St. Louis, and went down St. Louis to North Ave. He then drove from North Ave. to Drake and parked in the alley.

Continued On Page (6)

PERMANENT RETENTION FILE

MAYSONET, Jose "Lluiva", "Fro", and "Tino" all got out of the car. "Lluiva" pulled the hooded sweatshirt over his head. MAYSONET saw two guys standing on the street. "Lluiva", "Fro", and "Tino"started walking towards the guys. They waited about five minutes and then he heard five or six gunshots. He looked and saw that the two guys were on the ground. "Lluiva" had the 9mm pistol in his hand pointing the gun at the guys to see if they still moved. When no one moved, all three guys started to walk back towards the car. All three guys got back into the car and he drove off. He drove back to his home at 1302 N. Kimball. He got out of the car. "Lluiva got into the drivers seat and drove off. That same morning the shooting occurred, he saw "Lluiva" about 1100 hrs. He met up with "Lluiva" at LeMoyne and Spualding. "Lluiva said, "I killed two black motherfuckers". MAYSONET was told to keep his mouth shut and not say nothing. MAYSONET was then locked up on 15 July 90, that involved a different shooting. MAYSONET stayed in the Cook County Jail until he was able to make bond on Thrusday 16 Aug. 90. That same day about 2200 hrs. he was at home. "Lluiva", "Fro", "Tino", "Cisco", and "King" all came by his house. "Tino" and "King" are brothers. "King" showed MAYSONET that he was carrying a gun, the same gun used in the murders. "King" put the gun to MAYSONET'S head and told him that if he ever talked about the two murders he would be six feet under.

On 22 Aug. 90, at 2100 hrs. MAYSONET"s wife Rosa BELLO arrived at Area Five. She was allowed to talk with MAYSONET, in the presence of detectives. MAYSONET told her to tell the truth about the night the blacks were killed. She agreed to do so.

BELLO, Rosa in summary stated the following. On the evening of 24 May 90, at about 2330 hrs. she was at home with Jose MAYSONET. Three of Jose's friends she knows as, "Lluiva", "Fro", and "Tino"came to the apartment. "Lluiva" asked Jose for the gun. She saw the gun, and knows about guns. She recognized the gun as being a 9mm automatic pistol 15 shot. The gun was wrapped in a towel and Rosa put the gun in a plastic bag. Jose handed the gun to "LlUiva" All four men left the apartment. Jose returned about 0100 hrs. Jose told her that he had been out with the guys, and that he had been driving. Jose later told her that two guys had been shot.

01 61 ... 20 Continued On Page (7)

DETECTIVE DIVISION
AREA FIVE VIOLENT CRIMES

23 AUG. 1990
RD# N-234297

HOMICIDE/FIRST DEGREE MURDER
VICTIM: WILEY, Torrence

PERMANENT RETENTION FILE

Jose MAYSONET stated that he knew where both "Lluiva" and "Fro" lived. He offered to show detectives these addresses. MAYSONET also stated that he knew that "Tino's" last name was CRUZ. MAYSONET identified an apartment building on Kedzie as being where "Lluiva"stayed.He also identified a house at 1035 N. Spualding as where "Fro" lived. While MAYSONET was being driven around he spotted "Lluiva"at the corner of LeMoyne and Spualding. MAYSONET was returned to Area Five. At Area Five MAYSONET was shown loose candid photos of Latin King menbers. He identified a photo of Chris FERNANDEZ as being "Fro".

The R/Dets. and Sgt. E. MINGEY spent the next hours searching the neighborhood for all three offenders. During the early morning hours of 23 Aug. 90, "Lluiva" was seen on the street by Det. S. GAWRYS. and Sgt. E. MINGEY. "Lluiva" was now identified as being Alfredo GONZALEZ. GONZALEZ was informed of the allegation made against him by Jose MAYSONET. GONZALEZ was asked to come to Area Five and be interviewed. GONZALEZ stated that he would and was driven to Area Five.

At Area Five GONZALEZ denied any knowledge of the murders or of knowing Jose MAYSONET.

At Area Five Jose MAYSONET saw Alfredo GONZALEZ. He again identified GONZALEZ as being "Lluiva", and the person he saw shoot and kill the victims.

On 23 Aug. at 0430 hrs. A.S.A. Jennifer BOROWITZ, Felony Review was assigned to this investigation. She had been in the office at Area Five on an unrelated investigation and was familiar with this homicide investigation. An interview was conducted with Jose MAYSONET. Present for this interview were A.S.A. BOROWITZ, and Dets. GUEVARA and MONTILLA. Jose MAYSONET repeated his previous statement.

At the conclusion of this interview Jose MAYSONET agreed to provide a court reported typed statement. Due to the amount of time these statements take a second Assistant States Attorney was assigned to replace A.S.A. BOROWITZ.

01 6 12

Continued On Page (8)

PERMANENT RETENTION FILE

On 23 Aug. 90, at 0630 hrs. A.S.A. Frank DIFRANCO arrived and conducted his first interview with Jose MAYSONET. Also present for this interview were Dets. R. GURVARA and F. MONTILLA. MAYSONET repeated his previous statements.

On 23 Aug. 90 at 0710 hrs. MAYSONET was moved from the interview room he was at to the conference room. Another interview was then conducted by A.S.A. DIFRANCO. Present for this interview were Dets. R. GUEVARA and F. MONTILLA.

On 23 Aug. 90 at 0928 hrs. another interview was conducted with MAYSONET for the purpose of taking his court reported typed statement. Present for this interview were A.S.A. DIFRANCO, Det. F. MONTILLA, and court reporter Joseph SZYBIST.

Jose MAYSONET thereafter read his statement which he signed.

A.S.A. DIFRANCO requested that Jose MAYSONET be driven to the scene of the murder to corroborate the statement that he had just given. A.S.A. DIFRANCO, accompanied by Dets. R. PAULNITSKY and F. MONTILLA, drove Jose MAYSONET to 3428 W. North Ave. where he demonstrated the facts set forth in his statement.

A.S.A. DIFRANCO defered formal charging of Jose MAYSONET pending additional interviews with Alfredo GONZALEZ.

On 23 Apr. 90, at 1800 hrs. A.S.A. DIFRANCO charging Jose MAYSONET with two counts of First Degree Murder. Charges against Alfredo GONZALEZ are pending at the time of this report.

With the arrest and charging of one of the four offenders in this crime, it is requested that this case be filed, CLEARED BY ARREST/OPEN FOR ADDITIONAL INVESTIGATION.

Det. E. HALVORSEN #6036
Det. R. GUEVARA #16345
Det. S. GAWRYS #16899
Det. R. PAULNITSKY #6503
Det. F. MONTILLA #16410

27 AUG 1990 19 11

Identify and describe all property or possible evidence recovered at the end of the Narrative in column form. Show exactly where found, when found, who found it and its description (include Property Inventory numbers). If property taken was scribed for Operation Identification, indicate I.D. number at end of Narrative. Offender's approximate description, if possible, should include name if known, nickname, sex, race code, age, height, weight, color eyes & hair, complexion, scars, marks, etc. If suspect is arrested, give name, sex, race code, age, C.B. or I.R. number, if known, and state "In Custody."

# SUPPLEMENTARY REPORT

CHICAGO POLICE – FOR USE BY B.I.S. PERSONNEL ONLY

All descriptions and statements in this entire report are approximations or summarizations unless indicated otherwise.

4. DATE OF ORIG. OCCURRENCE–TIME: DAY 25 MO. May YR. 90 | 0100

1. OFFENSE/CLASSIFICATION LAST PREVIOUS REPORT: Homicide/First Degree Murder
I-UCR OFF. CODE: 0110
2. ADDRESS OF ORIG. INCIDENT/OFFENSE: 3438 W. North — XX 1 VERIFIED ☐ 2 CORRECTED
3. BEAT OF OCCUR.: 1422
5. VICTIM'S NAME AS SHOWN ON CASE REPORT: WILEY, Torrence
CORRECT ☐ 1 YES XX NO — IF NO, CORRECT ALL VICTIM INFORMATION IN BOXES 20 THROUGH 27.
6. FIRE RELATED ☐ 1 YES XX NO
7. BEAT ASSIGNED: 5549
8. TYPE OF LOCATION OR PREMISE WHERE INCIDENT/OFFENSE OCCURRED: Street
LOCATION CODE: 304
9. NO. OF VICTIMS: Two
10. NO. OF OFFENDERS: (4)

11. CIRCUMSTANCES: XX VERIFIED ☐ UPDATE TO — 12. OBJECT/WEAPON CODE NOS. — 13. FIREARM FEATURES CODE NO. — 14. POINT/ENTRY CODE NO. — 15. POINT/EXIT CODE NO. — 16. BURGLAR ALARM CODE NOS. — 17. SAFE BURGLARY METHOD CODE NO. — 18. IF RESIDENCE WHERE WERE OCCUP. CODE NO.

19. PROPERTY: ☐ VERIFIED ☐ UPDATE TO — DESCRIBE PROPERTY IN NARRATIVE. T = TAKEN; R = RECOVERED. FILL IN THE FULL AMOUNT OF ONLY THOSE VALUES WHICH EITHER DIFFER FROM OR WERE NOT REPORTED ON THE ORIGINAL CASE REPORT OR THE LAST PREVIOUS SUPPLEMENTARY REPORT.
1 MONEY ☐T $ ☐R — 2 JEWELRY ☐T $ ☐R — 3 FURS ☐T $ ☐R — 4 CLOTHING ☐T $ ☐R — 7 OFFICE EQUIPMENT ☐T $ ☐R — 8 TV, RADIO, STEREO ☐T $ ☐R — 9 HOUSEHOLD GOODS ☐T $ ☐R — 0 CONSUM. GOODS ☐T $ ☐R — (-) FIREARMS ☐T $ ☐R — & NARC./DANGEROUS DRUGS ☐T $ ☐R — 5 OTHER ☐T $ ☐R — 6 NONE ☐T ☐R

VICTIMS UPDATE ONLY

| | 20. NAME (LAST–FIRST–M.I.) | 21. I-UCR OFFENSE CODE | 22. HOME ADDRESS (NO., DIR., STREET, APT. NO.) | 23. SEX–RACE–AGE CODE | 24. HOME PHONE | 25. BUSINESS PHONE | 26. INJURED YES NO | 27. VICTIM REL. CODE |
|---|---|---|---|---|---|---|---|---|
| 1. | | | | | | | | |
| 2. | | | | | | | | |
| 3. | | | | | | | | |

PERMANENT RETENTION FILE

OFFENDERS UPDATE ONLY

| | 28. OFFENDER'S NAME (OR DESCRIBE CLOTHING, ETC.) | 29. HOME ADDRESS | 30. SEX–RACE–AGE CODE | HEIGHT | WEIGHT | EYES | HAIR | COMPL. |
|---|---|---|---|---|---|---|---|---|
| 1. | CRUZ, Justino | 3337 W. Pierce | M/4/21 | 5'8 | 175 | brn | blk | med |
| 2. | | | | | | | | |

| 31. C.B. NO. | I.R. NO., Y.D. NO. OR J.D.A. NO. | OFFENDER REL. CODE | OFF. 2 C.B. NO. | I.R. NO., Y.D. NO. OR J.D.A. NO. | OFFENDER REL. CODE | 32. NO. ARRESTED | ARREST. UNIT NO. |
|---|---|---|---|---|---|---|---|
| 8630335 | | 024 | | | | 1 | 652 |

33. OFF'S. VEHICLE ☐ USED ☐ STOLEN — YEAR — MAKE — BODY STYLE — COLOR — V.I.N. — STATE LICENSE NO. — STATE

34. SERIAL NOS. OR IDENTIFICATION NOS. XX NA ☐ 2 VERIFIED ☐ 3 CORRECTED — LIST ALL CORRECTIONS & NEW OR ADDITIONAL NOS. OBTAINED IN NARRATIVE

50. OFFENSE/CLASS. THIS DATE (IF SAME ENTER DNA): D N A — REV. CODE — 51. METHOD CODE — 52. METHOD ASSIGNED: XX 1 FIELD ☐ 3 SUMMARY — UNIT NO. 652 — 53. STATUS ☐ 0 PROGRESS ☐ 1 SUSPENDED ☐ 2 UNFOUNDED

STATUS CONT'D. ☐ 3 CLRD. CLOSED XX 4 CLRD. OPEN ☐ 5 EXC. CLRD. CLOSED ☐ 6 EXC. CLRD. OPEN ☐ 7 CLSD. NON-CRIM.
54. IF CASE CLEARED, HOW CLEARED: ☐ 1 ARREST & PROSEC. ☐ 2 DIRECTED TO JUV. CRT. ☐ 3 COMPL. RFUSD. TO PROSECUTE ☐ 4 COMMUNITY ADJUSTMENT ☐ 5 OTHER EXCEPT. — XX ADULT ☐ JUV.

55. ☐ FOR SUMMARY CASES ONLY – THE ORIGINAL CASE REPORT IS SUBSTANTIALLY CORRECT, AND CONTACT WITH THE VICTIM HAS DISCLOSED NO ADDITIONAL PERTINENT INFORMATION.

80. NARRATIVE

In Custody : CRUZ, Justino M/WH [redacted] age 21, resides at 3337 W. Pierce. Subject is 5'8, 175 lbs. blk/brn.

Arrested By : Dets. GUEVARA #16345 A/5 VC & GCSP ZACHARIAS #.

Subject was taken into custody on 24 Aug. 90 at 0500hrs. at A/5 Hdqtrs. after he was implicated in the double homicide by two other offenders in this matter.

Charges/Court : Br. 66 on 27 Aug. 90
2 – First Degree Murder Complaints

35. R.D. NO. N – 2 3 4 2 9 7

90. EXTRA COPIES REQUIRED (NO. & RECIPIENT)
91. DATE THIS REPORT SUBMITTED – DAY 24 MO. Aug. YR. 90 TIME 1700
92. SUPERVISOR APPROVING (PRINT NAME): EPPLEN STAR NO. 850
93. REPORTING OFFICER (PRINT NAME): Det. R. Smitka STAR NO. 5577
94. REPORTING OFFICER (PRINT NAME): Det. R. Schaak STAR NO. 5333
SIGNATURE [signature] SIGNATURE [signature] SIGNATURE [signature]
95. DATE APPROVED (DAY–MO.–YR.): 25 Aug 90 TIME 2450

CPD-11.411-B (Rev. 8/89) *MUST BE COMPLETED IN ALL CASES

CRC ☐ 228

Detective Division
Area 5 Violent Crimes

24 August 90

R.D. # N-234297

Homicide/First Degree Murder
WILEY, Torrence

PERMANENT RETENTION FILE

Investigation :

In Continuance of the above captioned investigation conducted by Dets. HALVORSEN #6036, PAULNITSKY #6503, GAWRYS #16899 & GUEVARA #16345 and supervised by Sgt. E. MINGEY, it had been established that there were four individuals responsible for the above captioned double homicide. Two subjects, GONZALEZ, Alfredo and MAYSONET, Jose had previously been taken into custoy and charged. Both implicated CRUZ, JUSTINO as having been present and involved. Efforts then continued to locate and apprehend the two named subjects, HERNANDEZ and CRUZ. On this date at 0500 hrs. CRUZ was taken into custody and processed.

The undersigned detectives, working the 2nd. Watch were then subsequently assigned the follow-up in this matter. After having been informed again of his Rights, CRUZ indicated that he wished to tell his side of the story.

CRUZ, Justino

In a subsequent statement to the undersigned, CRUZ stated that he and the other offenders, MAYSONET, GONZALEZ & HERNANDEZ all met at MAYSONET's residence. At that time, they picked up the 9mm automatic machine pistol and then left to go out and do a shooting. They rode around for a short time, MAYSONET drove, GONZALEZ rode in the front passenger seat, HERNANDEZ in the rear passenger seat and CRUZ in the rear passenger seat behind the driver. After a short while they pulled into an alley in the vicinity of North and St. Louis, at which time GONZALEZ, HERNANDEZ and CRUZ got out. MAYSONET remained with the vehicle, continued to keep it running, CRUZ walked a short distance with the other two subjects and acted as a lookout in case the police came by. GONZALEZ & HERNANDEZ then walked over to the two victim stood and remained there for a few minutes. At that time CRUZ heard 5-6 shots and GONZALEZ and HERNANDEZ came running back to the car, GONZALEZ was carrying the machine pistol and they all got back into the vehicle in their respective places and drove off. They just drove around after that and finally, split up some time later.

ASA John PERKAUS of Felony Review responded to Area 5 Headquarters after the necessary notifications. He then reviewed the file, interviewed CRUZ who reiterated what he had told the undersigned. ASA PERKAUS then prepared a handwritten statement concerning what CRUZ had stated concerning his knowledge and involvement in this incident. After reviewing this statement, CRUZ then signed same, with the undersigned witnessing.

ASA PERKAUS then approved the charging of Justin CRUZ with two counts of First Degree Murder in this matter. Until the apprehension of the 4th. wanted offender, HERNANDEZ, the undersigned would request that this matter remain CLEARED/OPEN.

Det. Robert Smitka #5577
Det. Richard Schak #5333

N 234297

Identify and describe all property or possible evidence recovered at the end of the Narrative in column form. Show exactly where found, when found, who found it and its description (include Property Inventory numbers). If property taken was scribed for Operation Identification, indicate I.D. number at end of Narrative. Offender's approximate description, if possible, should include name if known, nickname, sex, race code, age, height, weight, color eyes & hair, complexion, scars, marks, etc. If suspect is arrested, give name, sex, race code, age, C.B. or I.R. number, if known, and state "In Custody."

# SUPPLEMENTARY REPORT

CHICAGO POLICE – FOR USE BY B.I.S. PERSONNEL ONLY

All descriptions and statements in this entire report are approximations or summarizations unless indicated otherwise.

4. DATE OF ORIG. OCCURRENCE–TIME: DAY MO. YR. 25 May 1990 0100

1. OFFENSE/CLASSIFICATION LAST PREVIOUS REPORT: Homicide/First Degree Murder
I-UCR OFF. CODE: 0110
2. ADDRESS OF ORIG. INCIDENT/OFFENSE [X] 1 VERIFIED [ ] 2 CORRECTED: 3428 W. North Ave.
3. BEAT OF OCCUR.: 1422

5. VICTIM'S NAME AS SHOWN ON CASE REPORT: WILEY, Torrence
CORRECT [X] 1 YES [ ] 2 NO — IF NO, CORRECT ALL VICTIM INFORMATION IN BOXES 20 THROUGH 27.
6. FIRE RELATED [ ] 1 YES [X] 2 NO
7. BEAT ASSIGNED: 5535

8. TYPE OF LOCATION OR PREMISE WHERE INCIDENT/OFFENSE OCCURRED: Street
LOCATION CODE: 304
9. NO. OF VICTIMS: 2
10. NO. OF OFFENDERS: 4

CIRCUMSTANCES: 11. [XX] VERIFIED [ ] UPDATE TO | 12. OBJECT/WEAPON CODE NOS. | 13. FIREARM FEATURES CODE NO. | 14. POINT/ENTRY CODE NO. | 15. POINT/EXIT CODE NO. | 16. BURGLAR ALARM CODE NOS. | 17. SAFE BURGLARY METHOD CODE NO. | 18. IF RESIDENCE WHERE WERE OCCUP. CODE NO.

19. PROPERTY: [ ] VERIFIED [ ] UPDATE TO
DESCRIBE PROPERTY IN NARRATIVE. T = TAKEN; R = RECOVERED
FILL IN THE FULL AMOUNT OF ONLY THOSE VALUES WHICH EITHER DIFFER FROM OR WERE NOT REPORTED ON THE ORIGINAL CASE REPORT OR THE LAST PREVIOUS SUPPLEMENTARY REPORT.
1 MONEY [ ] T $ [ ] R | 2 JEWELRY [ ] T $ [ ] R | 3 FURS [ ] T $ [ ] R | 4 CLOTHING [ ] T $ [ ] R | 7 OFFICE EQUIPMENT [ ] T $ [ ] R | 8 TV, RADIO, STEREO [ ] T $ [ ] R
9 HOUSEHOLD GOODS [ ] T $ [ ] R | 0 CONSUM. GOODS [ ] T $ [ ] R | (-) FIREARMS [ ] T $ [ ] R | & NARC./DANGEROUS DRUGS [ ] T $ [ ] R | 5 OTHER [ ] T $ [ ] R | 6 NONE [ ] T [ ] R

VICTIMS UPDATE ONLY

| | 20. NAME (LAST–FIRST–M.I.) | 21. I-UCR OFFENSE CODE | 22. HOME ADDRESS (NO., DIR., STREET, APT. NO.) | 23. SEX–RACE–AGE CODE | 24. HOME PHONE | 25. BUSINESS PHONE | 26. INJURED YES NO | 27. VICTIM REL. CODE |
|---|---|---|---|---|---|---|---|---|
| 1. | | | | | | | | |
| 2. | | | | | | | | |
| 3. | | | | | | | | |

PERMANENT RETENTION FILE

OFFENDERS UPDATE ONLY

| | 28. OFFENDER'S NAME (OR DESCRIBE CLOTHING, ETC.) | 29. HOME ADDRESS | 30. SEX–RACE–AGE CODE | HEIGHT | WEIGHT | EYES | HAIR | COMPL. |
|---|---|---|---|---|---|---|---|---|
| | #3) CRUZ, Justino | 3337 W. Pierce | M/4/21 | 5-8 | 175 | Brn | Blk | Med. |
| 2. | | | | | | | | |

| | 31. C.B. NO. | I.R. NO., Y.D. NO. OR J.D.A. NO. | OFFENDER REL. CODE | | C.B. NO. | I.R. NO., Y.D. NO. OR J.D.A. NO. | OFFENDER REL. CODE | 32. NO. ARRESTED | ARREST. UNIT NO. |
|---|---|---|---|---|---|---|---|---|---|
| OFF. 1 | 8630-335 | 871356 | | OFF. 2 | | | | 3 | 652 |

33. OFF'S. VEHICLE [ ] USED [ ] STOLEN | YEAR | MAKE | BODY STYLE | COLOR | V.I.N. | STATE LICENSE NO. | STATE

34. SERIAL NOS. OR IDENTIFICATION NOS. [X] 1 DNA [ ] 2 VERIFIED [ ] 3 CORRECTED — LIST ALL CORRECTIONS & NEW OR ADDITIONAL NOS. OBTAINED IN NARRATIVE

50. OFFENSE/CLASS. THIS DATE (IF SAME ENTER DNA): DNA
REV. CODE
51. METHOD CODE
52. METHOD ASSIGNED [X] 1 FIELD [ ] 3 SUMMARY
UNIT NO.: 652
53. STATUS [ ] 0 PROGRESS [ ] 1 SUSPENDED [ ] 2 UNFOUNDED

STATUS CONT'D. [ ] 3 CLRD. CLOSED [X] 4 CLRD. OPEN [ ] 5 EXC. CLRD. CLOSED [ ] 6 EXC. CLRD. OPEN [ ] 7 CLSD. NON-CRIM.
54. IF CASE CLEARED, HOW CLEARED [ ] 1 ARREST & PROSEC. [ ] 2 DIRECTED TO JUV. CRT. [ ] 3 COMPL. RFUSD. TO PROSECUTE [ ] 4 COMMUNITY ADJUSTMENT [ ] 5 OTHER EXCEPT. [ ] ADULT [ ] JUV.

55. [ ] FOR SUMMARY CASES ONLY – THE ORIGINAL CASE REPORT IS SUBSTANTIALLY CORRECT, AND CONTACT WITH THE VICTIM HAS DISCLOSED NO ADDITIONAL PERTINENT INFORMATION.

60. NARRATIVE

IN CUSTODY: CRUZ, Justino M/WH/Age 21, DOB [redacted]
3337 W. Pierce, Admitted member of the Latin
Kings Street Gang, Nickname of "Tino", IR# 871356,
CB# 8630-335

ARRESTING OFFICERS: Det. R. GUEVARA #16345, Area Five VC
Det. E. HALVORSEN #6036, "
Det. F. MONTILLA #16410, " PC
GCSP P. ZACHARIAS # Gang Crimes North

35. R.D. NO.: N-234297

90. EXTRA COPIES REQUIRED (NO. & RECIPIENT): N0rmal
91. DATE THIS REPORT SUBMITTED – DAY MO. YR. TIME: 24 Aug..90
92. SUPERVISOR APPROVING (PRINT NAME): [signature] STAR NO. 840
93. REPORTING OFFICER (PRINT NAME): Det. E. HALVORSEN STAR NO. #6036
SIGNATURE: [signature]
94. REPORTING OFFICER (PRINT NAME): Det. R. GUEVARA STAR NO. #16345
SIGNATURE
[stamp] 25 AUG 1990 82
SIGNATURE: [signature]
95. DATE APPROVED (DAY–MO.–YR.): 27 AUG 1990 TIME: 2340

CPD-11.411-B (Rev. 8/85)
*MUST BE COMPLETED IN ALL CASES

CRC 228

DETECTIVE DIVISION
AREA FIVE VIOLENT CRIMES

24 AUG. 1990
RD# N-234297

HOMICIDE/FIRST DEGREE MURDER
VICTIM: WILEY, Torrence

PERMANENT RETENTION FILE

DATE, TIME, LOCATION OF ARREST: 24 Aug. 0500, 5555 W. Grand Ave.

CHARGES, COURT BRANCH AND DATE:

GONZALEZ, Alfredo
(2) counts of First Degree Murder, Chp. 38-9-1a2, Br. 66, 24 Aug. 90, Charges approved by A.S.A. Jennifer BOROWITZ, Felony Review

CRUZ, Justino
Charges are pending at this time

NOTIFICATIONS: A.S.A. Jennifer BOROWITZ, Felony Review

INVESTIGATION: On 23 Aug. at 0928 hrs. Jose MAYSONET gave a court reported typed statement. In this statement MAYSONET identified Alfredo GONZALEZ, AKA Lluiva, as the person he witnessed kill the two victims.

A.S.A. Frank DIFRANCO defered charging MAYSONET at this time until all efforts had been exhausted to locate the other two individuals named in MAYSONET'S statement. A.S.A. DiFRANCO also wanted MAYSONET returned to the scene of the murders and re-create the events that he observed.

During the second watch detectives were not successful in locating, the other two wanted offenders. On 23 Aug. 90, at 1800 hrs. A.S.A. DIFRANCO approved charging Jose MAYSONET with two counts of First Degree Murder.

Alfredo GONZALEZ had been in the office of Area Five due to the allegation made against him by MAYSONET. On 23 Aug. 90, at 1830 hrs. Alfredo GONZALEZ was informed that MAYSONET had signed a statement implicating GONZALEZ as the person who killed the two victims. GONZALEZ again stated that he did not know anything about these murders. GONZALEZ was placed in custody based on the statement of Jose MAYSONET.

During the 3rd watch on 23 Aug. 90, Dets. E. HALVORSEN, and R. GUEVARA searched to find the two remaining named offenders, Chris CRUZ, AKA "Tino", and Chris FERNANDEZ, AKA "Fro".

At 2300 hrs. the R/Dets. returned to Area Five to interview Alfredo GONZALEZ further. GONZLEZ was given a copy of the statement signed by Jose MAYSONET to read. After reading this statement GONZALEZ anounced, that Jose MAYSONET was a liar, and that GONZALEZ wanted to tell the true story.

28 AUG 1990 19 52

GONZALEZ, Alfredo in summary acknowledged understanding his Miranda rights as they were read to him by Det. R. GUEVARA from a pre-printed card. GONZALEZ stated that he wanted to talk with the detectives.

Continued On Page (3)

PERMANENT RETENTION FILE

GONZALEZ, Alfredo He is a member of the Latin Kings. On 24 May 90, about 2330 hrs. he was walking to his house. He was at LeMoyne and Spualding. He saw a blue car and recognized, "Fro" inside the car and told him to stop. The car stopped. The car was a midsize, two door model. Also in the car were Jose, and Tino. "Fro", Jose and Tino are also members of the Latin Kings Street Gang. Tino is his nephew. Jose was driving the car. Jose was wearing a dark blue hoodie. "Fro" was wearing a black hoodie. Tino was weaing a white hoodie. GONZALEZ got into the car and asked for a ride home. They did not drive him home but instead drove to an alley by North ave. and St. Louis. Jose was carrying a gun. The gun was 9mm automatic. They parked in the alley. Jose, Tino and "Fro" all got out of the car. They all put their hoodies up. GONZALEZ now realized that they were going to do a "Roll", and try to kill someone. They walked away and disappeared. The nect thing he heard was five to six gunshots. All three guys got back into the car. As they drove off he looked and saw two bodies on the sidewalk on North ave. They then drove him home.

The R/Dets. contacted A.S.A. J. BOROWITZ, Felony Review who arrived at Area Five. A.S.A. BOROWITZ was familiar with this investigation, having previously interviewed Jose MAYSONET. A.S.A. BOROWITZ in company with Det. R. GUEVARA interviewed Alfredo GONZALEZ. After this interview GONZALEZ agreed to give a court reported typed statement.

On 24 Aug. 90 at 0200 hrs.Alfredo GONZALEZ gave a court reported typed statement. Present for this statement were Det. R. GUEVARA, A.S.A. J. BOROWITZ and court reporter J. LUPA . Alfredo GONZALEZ subsequently read and signed his statement. After signing this statement Alfredo GONZALEZ was charged by A.S.A. J. BOROWITZ with two counts of First Degree Murder.

At 0330 hrs. on 24 Aug. 90, detectives located Justino CRUZ, AKA Chris CRUZ on the street at Kimball and North Ave. He was known on sight by Det. R. GUEVARA. CRUZ was informed of the statements given by Jose MAYSONET and Alfredo GONZALEZ, implicating him in these murders. CRUZ stated that it was a lie and agreed to come to Area Five and confront his accusers.

After arriving at Area Five Justino CRUZ was seen by both Alfredo GONZALEZ, and Jose MAYSONET and identified by both of these persons as being the "Tino" they spoke of.

On 24 Aug. 90 at 0500 hrs. Justino CRUZ was arrested for these murders. Due to the late hour CRUZ was allowed to sleep in an interview room at Area Five.

28 AUG 1990 18 25

At 0900 hrs. the R/Dets. turned this investigation over to Dets. R. Schak and R. Smitka. Their investigation is reported under a seperate Supp. Report.

Det. E. HALVORSEN #6036
Det. R. GUEVARA #16345

Identify and describe all property or possible evidence recovered at the end of the Narrative in column form. Show exactly where found, when found, who found it and its description (include Property Inventory numbers). If property taken was scribed for Operation Identification, indicate I.D. number at end of Narrative. Offender's approximate description, if possible, should include name if known, nickname, sex, race code, age, height, weight, color eyes & hair, complexion, scars, marks, etc. If suspect is arrested, give name, sex, race code, age, C.B. or I.R. number, if known, and state "In Custody."

# SUPPLEMENTARY REPORT

CHICAGO POLICE – FOR USE BY B.I.S. PERSONNEL ONLY

All descriptions and statements in this entire report are approximations or summarizations unless indicated otherwise.

4. DATE OF ORIG. OCCURRENCE–TIME: DAY 25 MO. May YR. 90 | 0100

1. OFFENSE/CLASSIFICATION LAST PREVIOUS REPORT: HOMICIDE, 1st. Degree Murder
I-UCR OFF. CODE: 0110
2. ADDRESS OF ORIG. INCIDENT/OFFENSE: [X] 1 VERIFIED [ ] 2 CORRECTED — 3438 W. North Ave.
3. BEAT OF OCCUR.: 1422

5. VICTIM'S NAME AS SHOWN ON CASE REPORT: WILEY, Torrence
CORRECT: [X] YES [ ] 2 NO — IF NO, CORRECT ALL VICTIM INFORMATION IN BOXES 20 THROUGH 27.
6. FIRE RELATED: [ ] 1 YES [X] 2 NO
7. BEAT ASSIGNED: 5532

8. TYPE OF LOCATION OR PREMISE WHERE INCIDENT/OFFENSE OCCURRED: Street
LOCATION CODE: 304
9. NO. OF VICTIMS: 2
10. NO. OF OFFENDERS: 4

CIRCUMSTANCES: 11. [X] VERIFIED [ ] UPDATE TO — 12. OBJECT/WEAPON CODE NOS. — 13. FIREARM FEATURES CODE NO. — 14. POINT/ENTRY CODE NO. — 15. POINT/EXIT CODE NO. — 16. BURGLAR ALARM CODE NOS. — 17. SAFE BURGLARY METHOD CODE NO. — 18. IF RESIDENCE WHERE WERE OCCUP. CODE NO.

19. PROPERTY: Dna VERIFIED [ ] UPDATE TO — DESCRIBE PROPERTY IN NARRATIVE. T = TAKEN; R = RECOVERED. FILL IN THE FULL AMOUNT OF ONLY THOSE VALUES WHICH EITHER DIFFER FROM OR WERE NOT REPORTED ON THE ORIGINAL CASE REPORT OR THE LAST PREVIOUS SUPPLEMENTARY REPORT.
1 MONEY [ ] T $ [ ] R — 2 JEWELRY [ ] T $ [ ] R — 3 FURS [ ] T $ [ ] R — 4 CLOTHING [ ] T $ [ ] R — 7 OFFICE EQUIPMENT [ ] T $ [ ] R — 8 TV, RADIO, STEREO [ ] T $ [ ] R
9 HOUSEHOLD GOODS [ ] T $ [ ] R — 0 CONSUM. GOODS [ ] T $ [ ] R — (-) FIREARMS [ ] T $ [ ] R — & NARC./DANGEROUS DRUGS [ ] T $ [ ] R — 5 OTHER [ ] T $ [ ] R — 6 NONE [ ] T [ ] R

VICTIMS UPDATE ONLY

| | 20. NAME (LAST–FIRST–M.I.) | 21. I-UCR OFFENSE CODE | 22. HOME ADDRESS (NO., DIR., STREET, APT. NO.) | 23. SEX–RACE–AGE CODE | 24. HOME PHONE | 25. BUSINESS PHONE | 26. INJURED YES NO | 27. VICTIM REL. CODE |
|---|---|---|---|---|---|---|---|---|
| 1. | | | | | | | | |
| 2. | | | | | | | | |
| 3. | | | | | | | | |

PERMANENT RETENTION FILE

OFFENDERS UPDATE ONLY

| | 28. OFFENDER'S NAME (OR DESCRIBE CLOTHING, ETC.) | 29. HOME ADDRESS | 30. SEX–RACE–AGE CODE | HEIGHT | WEIGHT | EYES | HAIR | COMPL. |
|---|---|---|---|---|---|---|---|---|
| 1. | GOSENS, Christopher | 2033 W. Diversey | M 4 18 | 6-0 | 175 | Brn | Blk | Dk |
| 2. | | | | | | | | |

| | 31. C.B. NO. | I.R. NO., Y.D. NO. OR J.D.A. NO. | OFFENDER REL. CODE | | C.B. NO. | I.R. NO., Y.D. NO. OR J.D.A. NO. | OFFENDER REL. CODE | 32. NO. ARRESTED | ARREST. UNIT NO. |
|---|---|---|---|---|---|---|---|---|---|
| OFF 1 | 8703-496 | 885625 | 24 | OFF. 2 | | | | 1 | 652 |

33. OFF'S. VEHICLE [ ] USED [ ] STOLEN — YEAR — MAKE — BODY STYLE — COLOR — V.I.N. — STATE LICENSE NO. — STATE

34. SERIAL NOS. OR IDENTIFICATION NOS. [X] 1 DNA [ ] 2 VERIFIED [ ] 3 CORRECTED — LIST ALL CORRECTIONS & NEW OR ADDITIONAL NOS. OBTAINED IN NARRATIVE

50. OFFENSE/CLASS. THIS DATE (IF SAME ENTER DNA): Dna — REV. CODE: Dna — 51. METHOD CODE: Dna — 52. METHOD ASSIGNED: [X] FIELD [ ] 3 SUMMARY — UNIT NO.: 652 — 53. STATUS: [ ] 0 PROGRESS [ ] 1 SUSPENDED [ ] 2 UNFOUNDED

STATUS CONT'D.: [X] 3 CLRD. CLOSED [ ] 4 CLRD. OPEN [ ] 5 EXC. CLRD. CLOSED [ ] 6 EXC. CLRD. OPEN [ ] 7 CLSD. NON-CRIM.
54. IF CASE CLEARED, HOW CLEARED: [X] 1 ARREST & PROSEC. [ ] 2 DIRECTED TO JUV. CRT. [ ] 3 COMPL. RFUSD. TO PROSECUTE [ ] 4 COMMUNITY ADJUSTMENT [ ] 5 OTHER EXCEPT. — [X] ADULT [ ] JUV.

55. [ ] FOR SUMMARY CASES ONLY – THE ORIGINAL CASE REPORT IS SUBSTANTIALLY CORRECT, AND CONTACT WITH THE VICTIM HAS DISCLOSED NO ADDITIONAL PERTINENT INFORMATION.

80. NARRATIVE

IN CUSTODY: GOSENS, Christopher AKA FERNANDEZ, Christopher, Street Name "Fro", M/WH/18, [REDACTED], 2033 W. Diversey, 6-0, 175 lbs., Brn. Blk. Dark Comp. IR# 885625.

ARRESTING OFFICERS: Det. J. Bogucki #16640, A/5 V.C.
Det. R. Schalk #14250, A/5 V.C.
P.O. J. Colon #17820, 019 Dist. Tact.
P.O. J. Delpilar #3902, 019 Dist. Tact.

DATE, TIME, LOCATION OF ARREST: 23 Nov 90, 1630 hours at 2801 N. Damen on the street

CHARGES & COURT: Released without charging

NOTIFICATIONS: ASA Cenar & ASA Eannace, Felony review

35. R.D. NO.: N-234 297

90. EXTRA COPIES REQUIRED (NO. & RECIPIENT): Normal
91. DATE THIS REPORT SUBMITTED – DAY 24 MO. Nov YR. 90 — TIME 2100
92. SUPERVISOR APPROVING (PRINT NAME): [signature] — STAR NO. 1013
93. REPORTING OFFICER (PRINT NAME): Det. J. Bogucki — STAR NO. 16640
94. REPORTING OFFICER (PRINT NAME): Det. R. Schalk — STAR NO. 14250
SIGNATURE: [signature] — SIGNATURE: [signature] — SIGNATURE: [signature]
95. DATE APPROVED (DAY–MO.–YR.): 24/11/90 — TIME 0945

CPD-11.411-B (Rev. 8/85) — *MUST BE COMPLETED IN ALL CASES

PERMANENT RETENTION FILE

STATEMENT: Christopher GOSENS

INVESTIGATION: The R/Dets. were made aware that the before mentioned 019 Dist. officers had who they believed to be "Fro" in custody. This subject had identified himself as Christopher GOSENS. This subject was transported to Area 5 for further investigation. The R/Dets. observed that the picture of "Fro", which was in the street file, looked identical to Christopher GOSENS. The R/Dets. obtained the arrest record of GOSENS and found that he had used the last name of FERNANDEZ on his last arrest.

GOSENS denied that he had ever been called "Fro" or that he had ever used the name FERNANDEZ. He did state that he at one time lived at 1035 N. Spaulding. The R/Dets. interviewed Mirta COTTO who is the girlfriend of GOSENS and was with GOSENS at the time of his arrest. She stated that she thought his name to be GOSENS, but knew that his sister's name was FERNANDEZ.

The R/Dets. advised Christopher GOSENS of his rights per Miranda afterwhich he stated the following in essense:

Christopher GOSENS: GOSENS again denied that he had ever been called by the street name of "Fro". He again denied that he ever used the name of FERNANDEZ. He stated that he had no knowledge of this incident. When the R/Dets. asked GOSENS if he knew Jose MAYSONET, Justino CRUZ, or Alfredo GONZALEZ. He replied that he did not know any of these subjects. GOSENS also stated that he had no idea what he was doing on 25 May 90 at about 0100 hours.

The R/Dets. asked GOSENS if he would be willing to take a polygraph test. He stated that he would. Arrangements were then made for GOSENS to be tested. At about 0100 hours, polygraph examiner TOVAR advised GOSENS of his rights per Miranda afterwhich he was tested. Following the polygraph test, GOSENS admitted knowing Jose MAYSONET, Justino CRUZ & Alfredo GONZALEZ to Tech. TOVAR. He told TOVAR that he was a Latin King and that those three subjects were Latin Kings from a different faction than he. GOSENS was transported back to Area 5 by the R/Dets. at which time the Felony Review Unit was notified. It was the opinion of Examiner Tovar that GOSENS was being untruthful, and was a participant in the homicides.

The R/Dets. further interviewed GOSENS, who now also told the R/Dets. what he told Examiner Tovar. He further related that he is known by the nickname "Fro". He stated that after the police had gone to his house on Spaulding Ave., he moved to Diversey Ave. He continued to deny any participation in the homicides, or ever going to Jose MAYSONET & Rosa BELLO's apartment on 24/25MAY90.

ASA Cenar arrived at Area 5 and was advised of the facts of the case. After reviewing all the reports, ASA Cenar interviewed Christopher GOSENS. ASA Cenar advised GOSENS of his rights and questioned him regarding the homicides. GOSENS continued to deny his participation, and related the same account as last told the R/Dets. ASA Cenar then consulted with ASA John Eannace and GOSENS was subsequently held in the 025 District lock-up pending further investigation and interviews.

On 24NOV90, ASA Cenar and the R/Dets. interviewd Rosa BELLO. She related the same account as in her written statement which was previously taken.

28 NOV 1990 18 45

Continued on Page 3

Detective Division A/5 V.C.
HOMICIDE, 1st Degree Murder
Torrence & Kevin WILEY

Page 3

24 NOV 90

RD# N-234-297

INVESTIGATION: Christopher GOSENS was again interviewed by ASA Cenar and the R/Dets. He then continued to deny any knowledge or participation.

ASA Cenar again contacted ASA John Eannace, who rejected charges on Christopher GOSENS due to insufficient evidence. GOSENS was subsequently released from custody.

The R/Dets. request that this previously Cleared by Arrest case be now considered Closed, with the apprehension of the final offender.

Det. R. Schalk#14250
Det. J. Bogucki#16640

PERMANENT RETENTION FILE

28 NOV 1990 18 __ 45

RFC-Maysonet 000095

WARRANT INFORMATION: The warrant charged Christopher GOSENS with (2) counts of First Degree Murder. Warrant #CT8697, Docket #92CR-112381, Bond, none, Returnable to Br. 66. Warrant approved by A.S.A. Chris DONELLY,

OTIFICATIONS: A.S.A. Chris DONELLY, Felony Review

INVESTIGATION: On 24 Mar. 92, the R/Dets. were informed by A.S.A. Frank MAREK of the Felony Trial Division, that Justino CRUZ had agreed to testify for the state in the murder trial of his uncle Alfredo GONZALEZ. Justino CRUZ also agreed to testify against Christopher GOSENS. Christopher GOSENS had previously been implicated in this case, but insufficient evidence existed at that time to bring charges.

Armed with the testimony of Justino CRUZ, A.S.A. Frank MAREK instructed the R/Dets. to obtain an arrest warrant for Christopher GOSENS.

On 24 Mar. 92, the R/Dets. obtained approval for an arrest warrant from A.S.A. Chris DONELY, Felony Review. The R/Dets. then had this warrant signed by Judge Robert BASTONE.

The R/Dets. were aware that Christopher GOSENS was currently an inmate at Menard State Prison, serving a sentence for an un-related murder. The R/Dets. contacted the Writs Unit of the States Attorney's Office, and obtained Writ #18-49. to have Christopher GOSENS brought to Branch 66.

Christopher GOSENS is writed into Branch 66, on 14 Apr. 92. At that time he will be taken into custody for the new warrant, and arrest processed at the States Attorney's Office.

Det. E. HALVORSEN #20692
Det. R. GUEVARA #20861

PERMANENT RETENTION FILE

Identify and describe all property or possible evidence recovered at the end of the Narrative in column form. Show exactly where found, when found, who found it and its description (include Property Inventory numbers). If property taken was scribed for Operation Identification, indicate I.D. number at end of Narrative. Offender's approximate description, if possible, should include name if known, nickname, sex, race code, age, height, weight, color eyes & hair, complexion, scars, marks, etc. If suspect is arrested, give name, sex, race code, age, C.B. or I.R. number, if known, and state "In Custody."

# SUPPLEMENTARY REPORT

CHICAGO POLICE – FOR USE BY B.I.S. PERSONNEL ONLY

All descriptions and statements in this entire report are approximations or summarizations unless indicated otherwise.

4. DATE OF ORIG. OCCURRENCE–TIME: 25 May 1990 | 0100

| Field | Value |
|---|---|
| 1. OFFENSE/CLASSIFICATION LAST PREVIOUS REPORT | Homicide/First Degree Murder |
| I-UCR OFF. CODE | 0110 |
| 2. ADDRESS OF ORIG. INCIDENT/OFFENSE (X 1 VERIFIED, ☐ 2 CORRECTED) | 3428 W. North Ave. |
| 3. BEAT OF OCCUR. | 1422 |
| 5. VICTIM'S NAME AS SHOWN ON CASE REPORT | WILEY, Torrence |
| CORRECT | X 1 YES ☐ 2 NO |
| 6. FIRE RELATED | ☐ 1 YES X 2 NO |
| 7. BEAT ASSIGNED | 5535 |
| 8. TYPE OF LOCATION OR PREMISE WHERE INCIDENT/OFFENSE OCCURRED | Street |
| LOCATION CODE | 304 |
| 9. NO. OF VICTIMS | 2 |
| 10. NO. OF OFFENDERS | 4 |

PERMANENT RETENTION FILE

| 28. OFFENDER'S NAME | 29. HOME ADDRESS | 30. SEX–RACE–AGE CODE | HEIGHT | WEIGHT | EYES | HAIR | COMPL. |
|---|---|---|---|---|---|---|---|
| 1. GOSENS, Christopher | Illinois State Penitentiary Menard | M/4/20 | 6-00 | 175 | Brn | Blk | Med |

| 31. C.B. NO. | I.R. NO., Y.D. NO. OR J.D.A. NO. | 32. NO. ARRESTED | ARREST. UNIT NO. |
|---|---|---|---|
| OFF. 1: 9097-674 | 885625 | 1 | 652 |

34. SERIAL NOS. OR IDENTIFICATION NOS.: X DNA

50. OFFENSE/CLASS. THIS DATE (IF SAME ENTER DNA): DNA

52. METHOD ASSIGNED: X 1 FIELD — UNIT NO. 652

STATUS CONT'D.: X 3 CLRD. CLOSED

54. IF CASE CLEARED, HOW CLEARED: X 1 ARREST & PROSEC. — X ADULT

55. ☐ FOR SUMMARY CASES ONLY – THE ORIGINAL CASE REPORT IS SUBSTANTIALLY CORRECT, AND CONTACT WITH THE VICTIM HAS DISCLOSED NO ADDITIONAL PERTINENT INFORMATION.

80. NARRATIVE

IN CUSTODY: GOSENS, Christopher M/WH/Age 20, DOB [redacted] AKA FERNANDEZ, Christopher, known member of the Latin Kings Street Gang, nickname of "FRO", Currently incarcerated at the Illinois State Penitentiary Menard, Inmate #B-19893

DATA ENTERED DD AREA 5

ARRESTING DETECTIVES: Det. E. HALVORSEN #20692, Area Five Violent Crimes

Det. R. GUEVARA #20861, "

35. R.D. NO. N-234297

| 91. DATE THIS REPORT SUBMITTED | TIME | 92. SUPERVISOR APPROVING (PRINT NAME) | STAR NO. |
|---|---|---|---|
| 1 May 92 | 1700 | BIEBEL | 1545 |

93. REPORTING OFFICER (PRINT NAME): Det. E. HALVORSEN, STAR NO. #20692 — SIGNATURE: [signature]

94. REPORTING OFFICER (PRINT NAME): Det. R. GUEVARA, STAR NO. #20861 — SIGNATURE: [signature]

SIGNATURE: [signature]

95. DATE APPROVED (DAY–MO.–YR.): 02 MAY 1992 — TIME 1045

CPD-11.411-B (Rev. 8/85) — *MUST BE COMPLETED IN ALL CASES

DETECTIVE DIVISION
AREA FIVE VIOLENT CRIMES

1 MAY 1992
RD# N-234297

HOMICIDE/FIRST DEGREE MURDER
VICTIM: WILEY, Torrence

PAGE (2)

PERMANENT RETENTION FILE

DATE, TIME, LOCATION OF ARREST: 14 April 92, 1200 hrs. 2600 S. California

CHARGES, COURT BRANCH AND DATE: First Degree Murder, Chp. 38-9-1a2, per Warrant CT8697, Br. 66, 14 Apr. 92, A.S.A. REGIS, Felony Review approving.

NOTIFICATIONS: A.S.A. Sue REGIS, Felony Review

INVESTIGATION: On 14 April 92, the R/Dets. took custody of Christopher GOSENS at Br. 66, 2600 S. California. GOSENS was arrest processed on the previously issued warrant, charging him with First Degree Murder in the homicides of Torrence and Kevin WILEY. A.S.A. Sue REGIS, Felony Review was contacted and gave final approval for these charges.

With the arrest of Christopher GOSENS, all four persons involved in the murders of Torrence and Kevin WILEY have been arrested and charged.

It is requested that this case be filed, CLEARED BY ARREST/CLOSED.

Det. E. HALVORSEN #20692
Det. R. GUEVARA #20861

**EVIDENCE REPORT**
**CRIME LABORATORY DIVISION/CHICAGO POLICE**

OTHER NO.
RD NO. N-234297

| OFFENSE OR INCIDENT | IUCR | AREA-DIST.-BEAT | DATE RECEIVED | TIME |
|---|---|---|---|---|
| Homicide | 0110 | 5 014 1422 | 25 May 90 | 0115 |
| **ASSIGNMENT TYPE** | **UNIT ASSIGNED** | **RECEIVED BY** | **DATE ARRIVED** | **TIME** |
| CS | 9601 | Butler & Bachelder | 25 May 90 | 0135 |
| **LOCATION OF SERVICE** | | **REQUESTED BY** | **DATE COMPLETED** | **TIME** |
| 3428 W. North Ave. (street) | | Off. Donas#5451 | 25 May 90 | 0430 |

| VICTIM'S NAME | SEX-RACE-AGE | ADDRESS | PHONE NO. |
|---|---|---|---|
| #1) WILEY, Torrence | M B | 11 S. Parkside | |

ELIM. PRINTS ☐YES ☐NO | IN CUSTODY ☐YES ☐NO | NAME | D.O.B. | CB NO. | IR NO.

**FINGERPRINTS**

| MED | NEG | LIFT | LOCATION FOUND | F.N. | MED | NEG | LIFT | LOCATION FOUND | F.N. |
|---|---|---|---|---|---|---|---|---|---|
| B | 0 | 0 | Milwaukee's Best 12oz beer can found on front sidewalk at 3428 W. North Ave. | | | | | | |

PERMANENT RETENTION FILE

POSSIBLE SUSPECT INFORMATION ☐MALE ☐FEMALE | RACE | ☐ADULT ☐JUVENILE | IDENT. SECTION ☐SUITABLE ☒NOT SUITABLE | INITIAL [signature] | DATE 29 May 1990

**PHOTOS TAKEN**

| | | |
|---|---|---|
| A O/A-Scene and surrounding area | E O/A-Victim #2 on scene | I C/U-Wound in penis of vict.#1 C/U-GSW. behind ear of vict. #2 (left ear) |
| B C/U-Cartridge cases on and next to sidewalk | F Identification vict. #2 | J |
| C O/A-Victim #1 on scene | G C/U-GSW. left side of chest vict. #1 | K |
| D Identification Vict. #1 | H C/U-GSW. right side of hip vict. #1 | L |

**VEHICLE(S)**

| YEAR | MAKE & MODEL | COLOR | STATE LICENSE NO. | V.I.N. |
|---|---|---|---|---|
| | | | | |
| | | | | |

**PHYSICAL EVIDENCE**

| PROP. INVENT. NO.—UNIT | DESCRIPTION & LOCATION | INITIAL DEST. |
|---|---|---|
| 773257--177 | One sealed evidence envelope containing four fired cartridge cases (9mm WW) found on and next to sidewalk on east side of building at 3428 W. North Ave. approx. four Ft. south of front sidewalk | FA |
| 773257--177 | One sealed evidence envlope containing one fired bullet recovered from under shorts (right side) fo Torrence WILLEY at Medical Examiner's facility. | FA |
| 773258--177 | One 12oz can of Milwaukee's Best beer can recovered from front sidewalk at 3428 W. North Ave. | PH |

DETAILS OF CASE Victim #2) WILEY, Kevin M/B-36, 5'6", 140 DOB [redacted] 3334 W. Maypole. Met on scene by Det.s Boyle & Topkowski and Bt.#1422. In responding to an assignment of "shots fired on street", at 3428 W. North Ave. at approx. 0056hrs., 25May90, Bt.#1422 found victims fatally shot lying on the sidewalk. Vict.#1 shot in left side of chest, right side of hip, and penis; and victim #2 shot behind left ear. Vict.#1 found lying on sidewalk in front of 3428 W. North and vict.#2, front sidewalk, northeast corner of bldg. A search of the scene was conducted for relevant physical evidence met with results noted above. Victims pronounced on scene by medical examiner investigator, printed & photographed at medical examiner's facility at 033hrs., 25May90. Ridge imps. found on above noted beer can.

RD NO. N-234297

| INVESTIGATING OFFICER'S NAME | STAR NO. | UNIT | BEAT OFFICER'S NAME | STAR NO. | UNIT |
|---|---|---|---|---|---|
| Boyle #14633 & Topkowski #15665 | | 5522 A/5VC | Donas#5451 & Montalvo#13102 | | 1422 |
| **REPORTING TECHNICIAN'S NAME** | **STAR NO.** | | **APPROVING SUPERVISOR'S NAME** | **STAR NO.** | |
| J. Butler [signature] T. Bachelder [signature] | 10448 12680 | | | | |

CPD-33.103 (Rev. 11/85)

[CRIME LABO]RATORY DIVISION COPY

**CRIME LABORATORY REPORT**
**CRIME LABORATORY DIVISION/CHICAGO POLICE**

| INCIDENT/OFFENSE CLASSIFICATION | I-UCR OFF. CODE | RD NO. |
|---|---|---|
| HOMICIDE / MURDER | 0110 | N234297 |
| VICTIM'S NAME | DISTRICT / AREA | DATE OF THIS REPORT |
| WILEY, TORRENCE | 1 | 29 Nov 1990 |
| DEFENDANT'S NAME | LABORATORY UNIT | |
| | POLYGRAPH UNIT | |

The following subject was scheduled for a polygraph examination at the Crime Laboratory Division Polygraph Unit.

PERMANENT RETENTION FILE

SUBJECT: GOOSSENS, CHRISTOPHER.
DATE/TIME: 23-11-90 0020 hours
REQUESTED BY: DET SHAAK of Area 5 VC
CONDUCTED BY: Robert Tovar 12847

RESULT: DECEPTION INDICATED

RD NO N 234297

Page 1 of 1

EXTRA COPIES REQUIRED (NO. & RECIPIENT)
1 To Area 5 VC

REPORTING MEMBER (PRINT NAME)
Robert Tovar 12847

SIGNATURE Robert Tovar

CPD-33.110 (9/89)

**CRIME LABORATORY REPORT**
CRIME LABORATORY DIVISION/CHICAGO POLICE

| INCIDENT/OFFENSE CLASSIFICATION | I-UCR OFF. CODE | RD NO. |
|---|---|---|
| HOMICIDE / MURDER | 0110 | N234297 |

| VICTIM'S NAME | DISTRICT / AREA | DATE OF THIS REPORT |
|---|---|---|
| WILEY TORRENCE | 177 | 30-05-90 |

| DEFENDANT'S NAME | LABORATORY UNIT |
|---|---|
| | FIREARMS |

SUMMARY FINDINGS - FIREARMS EVIDENCE

PERMANENT RETENTION FILE

The following fired evidence was submitted to the Crime Laboratory for examination, classification and evaluation relative to RD N234297:

| INVENTORY NUMBER | DATE RECEIVED | CLASS CHARACTERISTICS | SUITABLE FOR COMPARISON | PLACED IN OPEN CASES |
|---|---|---|---|---|
| 773257 | 26-05-90 | 9MM 5R<br>9MM 00 | Yes<br>Yes | Yes<br>Yes |
| 773440 | 26-05-90 | 9MM 5R | Yes | No |
| 773446 | 26-05-90 | 9MM 5R | Yes | No |

All evidence that has not been placed in the open case file has been forwarded to the Evidence and Recovered Property Unit.

PAGE 1 OF 1 PAGES

| EXTRA COPIES REQUIRED (NO. & RECIPIENT) | REPORTING MEMBER (PRINT NAME) | RD NO |
|---|---|---|
| 1 TO A5 VC | Ernest Warner | N 234297 |
| | SIGNATURE: Ernest Warner | |

CPD-33.110 (9/89)

Identify and describe all property or possible evidence recovered at the end of the Narrative in column form. Show exactly where found, when found, who found it and its description (include Property Inventory numbers). If property taken was scribed for Operation Identification, indicate I.D. number at end of Narrative. Offender's approximate description, if possible, should include name if known, nickname, sex, race code, age, height, weight, color eyes & hair, complexion, scars, marks, etc. If suspect is arrested, give name, sex, race code, age, C.B. or I.R. number, if known, and state "In Custody."

# SUPPLEMENTARY REPORT

CHICAGO POLICE – FOR USE BY B.I.S. PERSONNEL ONLY

All descriptions and statements in this entire report are approximations or summarizations unless indicated otherwise.

4. DATE OF ORIG. OCCURRENCE–TIME: 25 May 1990 | 0100

1. OFFENSE/CLASSIFICATION LAST PREVIOUS REPORT: Homicide/First Degree Murder

I-UCR OFF. CODE: 0110

2. ADDRESS OF ORIG. INCIDENT/OFFENSE: 3428 W. North Ave. — [X] 1 VERIFIED [ ] 2 CORRECTED

3. BEAT OF OCCUR.: 1422

5. VICTIM'S NAME AS SHOWN ON CASE REPORT: WILEY, Torrence

CORRECT: [X] 1 YES [ ] 2 NO — IF NO, CORRECT ALL VICTIM INFORMATION IN BOXES 20 THROUGH 27.

6. FIRE RELATED: [ ] 1 YES [X] 2 NO

7. BEAT ASSIGNED: 5535

8. TYPE OF LOCATION OR PREMISE WHERE INCIDENT/OFFENSE OCCURRED: Street

LOCATION CODE: 304

9. NO. OF VICTIMS: 2

10. NO. OF OFFENDERS: 4

CIRCUMSTANCES: 11. [ ] VERIFIED [ ] UPDATE TO — 12. OBJECT/WEAPON CODE NOS. — 13. FIREARM FEATURES CODE NO. — 14. POINT/ENTRY CODE NO. — 15. POINT/EXIT CODE NO. — 16. BURGLAR ALARM CODE NOS. — 17. SAFE BURGLARY METHOD CODE NO. — 18. IF RESIDENCE WHERE WERE OCCUP. CODE NO.

PROPERTY: 19. DESCRIBE PROPERTY IN NARRATIVE. T = TAKEN; R = RECOVERED. [ ] VERIFIED [ ] UPDATE TO

FILL IN THE FULL AMOUNT OF ONLY THOSE VALUES WHICH EITHER DIFFER FROM OR WERE NOT REPORTED ON THE ORIGINAL CASE REPORT OR THE LAST PREVIOUS SUPPLEMENTARY REPORT.

1 MONEY [ ]T $ [ ]R — 2 JEWELRY [ ]T $ [ ]R — 3 FURS [ ]T $ [ ]R — 4 CLOTHING [ ]T $ [ ]R — 7 OFFICE EQUIPMENT [ ]T $ [ ]R — 8 TV, RADIO, STEREO [ ]T $ [ ]R

9 HOUSEHOLD GOODS [ ]T $ [ ]R — 0 CONSUM. GOODS [ ]T $ [ ]R — (-) FIREARMS [ ]T $ [ ]R — & NARC./DANGEROUS DRUGS [ ]T $ [ ]R — 5 OTHER [ ]T $ [ ]R — 6 NONE [ ]T [ ]R

VICTIMS UPDATE ONLY

| | 20. NAME (LAST–FIRST–M.I.) | 21. I-UCR OFFENSE CODE | 22. HOME ADDRESS (NO., DIR., STREET, APT, NO.) | 23. SEX–RACE–AGE CODE | 24. HOME PHONE | 25. BUSINESS PHONE | 26. INJURED YES NO | 27. VICTIM REL. CODE |
|---|---|---|---|---|---|---|---|---|
| 1. | | | | | | | | |
| 2. | | | | | | | | |
| 3. | | | | | | | | |

OFFENDERS UPDATE ONLY

| | 28. OFFENDER'S NAME (OR DESCRIBE CLOTHING, ETC.) | 29. HOME ADDRESS | 30. SEX–RACE–AGE CODE | HEIGHT | WEIGHT | EYES | HAIR | COMPL. |
|---|---|---|---|---|---|---|---|---|
| 1. | | | | | | | | |
| 2. | | | | | | | | |

PERMANENT RETENTION FILE

31. C.B. NO. — I.R. NO., Y.D. NO. OR J.D.A. NO. — OFFENDER REL. CODE — OFF 1 — C.B. NO. — I.R. NO., Y.D. NO. OR J.D.A. NO. — OFFENDER REL. CODE — 32. NO. ARRESTED — ARREST. UNIT NO. — OFF. 2

DATA ENTERED DD AREA 5

33. OFF'S. VEHICLE [ ] USED [ ] STOLEN — YEAR — MAKE — BODY STYLE — COLOR — V.I.N. — STATE LICENSE NO. — STATE

34. SERIAL NOS. OR IDENTIFICATION NOS. [X] 1 DNA [ ] 2 VERIFIED [ ] 3 CORRECTED — LIST ALL CORRECTIONS & NEW OR ADDITIONAL NOS. OBTAINED IN NARRATIVE

50. OFFENSE/CLASS. THIS DATE (IF SAME ENTER DNA): DNA — REV. CODE — 51. METHOD CODE — 52. METHOD ASSIGNED: [X] 1 FIELD [ ] 3 SUMMARY — UNIT NO.: 652 — 53. STATUS: [ ] 0 PROGRESS [ ] 1 SUSPENDED [ ] 2 UNFOUNDED

STATUS CONT'D.: [ ] 3 CLRD. CLOSED [X] 4 CLRD. OPEN [ ] 5 EXC. CLRD. CLOSED [ ] 6 EXC. CLRD. OPEN [ ] 7 CLSD. NON-CRIM.

54. IF CASE CLEARED, HOW CLEARED: [X] 1 ARREST & PROSEC. [ ] 2 DIRECTED TO JUV. CRT. [ ] 3 COMPL. RFUSD. TO PROSECUTE [ ] 4 COMMUNITY ADJUSTMENT [ ] 5 OTHER EXCEPT. — [X] ADULT [ ] JUV.

55. [ ] FOR SUMMARY CASES ONLY – THE ORIGINAL CASE REPORT IS SUBSTANTIALLY CORRECT, AND CONTACT WITH THE VICTIM HAS DISCLOSED NO ADDITIONAL PERTINENT INFORMATION.

80. NARRATIVE

WANTED: GOSENS, Christopher, AKA FERNANDEZ, Christopher, M/B/Age 20 DOB [redacted] Known member of the Latin Kings Street Gang, Nickname of "FRO", Currently incarcerated at Illinois State Penitentiary, Menard, Inmate #B-19893

WARRANT INFORMATION: On 24 Mar. 92, the R/Dets. appeared before Judge Robert BASTONE, presiding in Branch 66, and obtained an arrest warrant for Christopher GOSENS.

35. R.D. NO.: N-234297

90. EXTRA COPIES REQUIRED (NO. & RECIPIENT)

91. DATE THIS REPORT SUBMITTED: 1 April 1992 — TIME: 1700

92. SUPERVISOR APPROVING (PRINT NAME): Lt. John A. Kozaniec — STAR NO. 146 — SIGNATURE: [signature]

93. REPORTING OFFICER (PRINT NAME): Det. E. HALVORSEN — STAR NO. #20692 — SIGNATURE: [signature]

94. REPORTING OFFICER (PRINT NAME): Det. R. GUEVARA — STAR NO. #20861 — SIGNATURE: [signature]

95. DATE APPROVED (DAY–MO.–YR.): 2 April 92 — TIME: 1300

CPD-11.411-B (Rev. 8/85) — *MUST BE COMPLETED IN ALL CASES