# EXHIBIT 30

```
 1           IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                    EASTERN DIVISION

 3   JOSE JUAN MAYSONET,        )
                                )
 4              Plaintiff,      )
                                )
 5         vs.                  )      No. 18 CV 2342
                                )
 6   REYNALDO GUEVARA, et al.,  )
                                )
 7              Defendants.     )

 8

 9           The deposition of ELLEN BETH MANDELTORT,

10   taken pursuant to the Federal Rules of Civil

11   Procedure, before Kathleen A. Hillgard, Certified

12   Shorthand Reporter No. 084-004093, at 321 North

13   Clark Street, Suite 2200 Chicago, Illinois, on

14   Wednesday, June 24, 2020, commencing at 10:43 a.m.

15   pursuant to subpoena.

16

17

18

19

20

21

22

23

24
```

```
                                                Page 2
 1      APPEARANCES:
 2         BONJEAN LAW GROUP, by
              MS. JENNIFER BONJEAN, via Zoom
 3           (467 Saint Johns Place
              Brooklyn, New York  11238
 4            718.875.1850
              Jennifer@bonjeanlaw.com)
 5              -and-
           GREENBERG TRIAL LAWYERS, LTD., by
 6            MR. STEVEN A. GREENBERG
             (53 West Jackson Boulevard, Suite 1260
 7            Chicago, Illinois  60604
              312.879.9500
 8            Steve@greenbergcd.com)
                appeared on behalf of the plaintiff;
 9
           THE SOTOS LAW FIRM, by
10            MR. DAVID A. BRUEGGEN
             (141 West Jackson Boulevard, Suite 1240A
11            Chicago, Illinois  60604
              312.494.1000
12            Dbrueggen@jsotoslaw.com)
                appeared on behalf of the defendant
13              police officer defendants;
14         ROCK FUSCO & CONNELLY, LLC, by
              MS. EILEEN E. ROSEN
15           (312 North Clark Street, Suite 2200
              Chicago, Illinois  60654
16            312.494.1000
              Erosen@rfclaw.com)
17              appeared on behalf of the defendant
                 City of Chicago;
18
19
20
21
22
23
24
```

```
                                                Page 4
 1                     I N D E X
 2
     Witness:                                   Page
 3
           ELLEN BETH MANDELTORT
 4
             Examination by:
 5
                Ms. Bonjean.................    6
 6              Ms. Rosen...................  174
                Ms. Bonjean.................  191
 7
 8
 9
10
11
12                    E X H I B I T S
13
       No.    Description              Marked/Referenced
14
        1  DiFranco Felony Review Folder
15         CCSAO 1761-1763......................  30
        2  Police Reports
16         RFC-Maysonet 000001-000066............ 103
        3  Statement of Jose Maysonet
17         CCSAO 287-293......................... 147
        4  Two Photographs
18         CCSAO 403............................. 162
        5  Rap Sheets of Wiley Brothers
19         Maysonet 10890-10891.................. 163
        6  General Progress Report,
20         CCSAO 874-881......................... 176
21
               (Exhibits attached/scanned.)
22
23                       - - -
24
```

```
                                                Page 3
 1      ALSO PRESENT:
 2         COOK COUNTY STATE'S ATTORNEY'S OFFICE, by
              MR. EDWARD M. BRENER, via Zoom
 3            MR. DAVID A. ADELMAN, via Zoom
             (50 West Washington Street, Room 500
 4            Chicago, Illinois  60602
              312.603.3369
 5            Edward.brener@cookcountyil.gov
              David.adelman@cookcountyil.gov)
 6              appeared on behalf of the defendants
                 Cook County and Frank DiFranco;
 7
           LEINENWEBER BARONI & DAFFADA, LLC, by
 8            MR. JUSTIN L. LEINENWEBER, via Zoom
             (120 North LaSalle Street, Suite 2000
 9            Chicago, Illinois  60602
              312.380.6635
10            Justin@ilesq.com)
                appeared on behalf of the defendant
11              Reynaldo Guevara;
12         LAW OFFICES OF JOHN C. COYNE
              MR. JOHN C. COYNE
13           (53 West Jackson Boulevard, Suite 1750
              Chicago, Illinois  60604
14            312.929.4308
              Jcc@johnccoynelaw.com)
15              appeared on behalf of the deponent.
16
17                 *  *  *  *  *  *  *
18
19
20
21
22
23
24
```

```
                                                Page 5
 1       MS. BONJEAN:  Okay.  So I guess we can swear
 2  the witness in and maybe then everyone can identify
 3  themselves for the purposes of the record.
 4           (Witness sworn.)
 5       MR. COYNE:  On behalf of Judge Mandeltort,
 6  John Coyne, C-o-y-n-e.
 7       MR. GREENBERG:  On behalf of Mr. Maysonet,
 8  Steve Greenberg.
 9       MR. BRUEGGEN:  On behalf of the defendant
10  officers, Dave Brueggen.
11       MS. ROSEN:  On behalf of defendant City of
12  Chicago, Eileen Rosen.
13       MR. BRENER:  On behalf of defendant DiFranco
14  and Cook County, Edward Brener, B-r-e-n-e-r.
15       MR. ADELMAN:  On behalf of defendant Frank
16  DiFranco and Cook County also, David Adelman.
17       MR. LEINENWEBER:  On behalf of defendant
18  Guevara, Justin Leinenweber, L-e-i-n-e-n-w-e-b-e-r.
19       MS. BONJEAN:  And as I previously introduced
20  myself, my name is Jennifer Bonjean, B-o-n-j-e-a-n,
21  and I represent the plaintiff Jose Maysonet in this
22  matter.
23           Again, good morning, Ms. Mandeltort.
24  My name is Jennifer Bonjean and I represent the
```

Page 154
1  the policies of the police department, that
2  prohibited or precluded a detective who was working
3  the case to also simultaneously serve as an
4  interpreter?
5      MR. COYNE:  Objection.
6      MS. ROSEN:  Objection, foundation.
7      THE WITNESS:  I have no knowledge of any
8  policies from either Chicago Police Department or
9  the State's Attorney's Office.
10 BY MS. BONJEAN:
11     Q.   Okay.  I want to ask you to look at
12 page -- well, let's see.
13          Okay.  If you can look at page --
14 it's page 6 of the statement, Bates stamped 292.
15     A.   I have it in front of me.
16     Q.   Okay.  Thank you.
17          And it starts off with an answer, At
18 LeMoyne and Spaulding.  Do you see that?
19     A.   Yes, I do.
20     Q.   Okay.  And then there is a question
21 that follows, "What if anything did Lluvia say to
22 you"?
23          "Answer:  I killed two black
24     motherfuckers.

Page 155
1          "Question:  What happened next?
2          "Then they told me you are not
3  going to say nothing, right?  I said,
4  No, I wasn't going to say nothing.  They
5  said keep it under your hat, keep my
6  mouth shut.
7          "Question:  On August 16, 1990
8  about 10:00 p.m., where were you?
9          "Answer:  Home.
10         "Question:  What if anything
11 happened then?"
12         Do you see that?
13     A.   Yes, ma'am.
14     Q.   And then he answers, "Lluvia, Fro,
15 Tino, Cisco, King, they came to my house."
16         Do you see that?
17     A.   Yes, I do.
18     Q.   Do you have a recollection of whether
19 or not Cisco or King ever provided statements to
20 any police personnel or any Cook County State's
21 Attorney?
22     A.   I have no recollection.
23     Q.   Would it have been your practice to at
24 least inquire of the detectives whether or not they

Page 156
1  had interviewed Cisco or King or made an effort to
2  find them?
3      A.   I mean, I have no recollection of the
4  conversation, but I think in terms of my practice,
5  it would be fair that at some point I may have
6  asked.
7      Q.   Okay.  And as you can see, Mr. Maysonet
8  goes on to say that -- allegedly that:
9           "They put a .9 millimeter
10           to my head.
11          "Who put the .9 millimeter to
12           your head?
13          "King.
14          "What did he say?
15          "Answer:  You know about the two
16 murders.  If you talk, we're going to put you six
17 feet under."
18         Do you see that?
19     A.   Yes, I do.
20     Q.   Okay.  So Mr. Maysonet is revealing
21 that another individual, who I guess he claims is a
22 part of this, has also threatened to kill him if he
23 talks about it, right?
24     A.   That's what it appears to say.

Page 157
1      Q.   Right.
2           And would you agree that, at
3  least -- and I know you don't have an independent
4  recollection, but your practice would have been
5  maybe to try to inquire about this King fellow, if
6  police had not already done so.
7      MR. COYNE:  Objection.
8  BY MS. BONJEAN:
9      Q.   Or at least ask the police whether they
10 had spoken to King or found him?
11     MR. COYNE:  Objection.
12     MS. ROSEN:  Objection, form.
13     THE WITNESS:  I have no recollection, but I
14 may have.  I don't know.
15 BY MS. BONJEAN:
16     Q.   Okay.  So do you have any information
17 when -- or did you have any information in 1995
18 that a person by the name of Francisco Verez
19 (phonetic) had been arrested by Area 5 detectives
20 and accused of being the offender of the Wiley
21 brothers' murder?
22     A.   I have no memory of that knowledge.
23     Q.   Okay.  Do you recall having any
24 information or any detective sharing with you

Page 158

1  information, whether it be orally or in a report,
2  that they had placed Francisco Verez in a lineup in
3  connection with his alleged involvement in the
4  murders of the Wiley brothers?
5     A.   I have no memory of that knowledge.
6     Q.   And would that be also true if I told
7  you that Efrain King, perhaps I'm -- strike that.
8  My apologies.
9          Do you recall having information
10 back in 1995 when you tried this case that a person
11 by the name of Efrain Cruz had also been arrested
12 and interrogated in connection with the Wiley
13 brothers' murders prior to Mr. Maysonet's arrest?
14    A.   I have no memory of that.
15    Q.   And is it also true that you have no
16 recollection or have no -- no basis of knowledge
17 that in 1995 that Efrain Cruz had been placed in a
18 lineup in connection with his involvement in the
19 murder of the Wiley brothers?
20    A.   I have no memory of that.
21    Q.   And you testified earlier your practice
22 was that if you had such reports that reflected
23 this investigative conduct, that is interviews,
24 lineup reports with these other two individuals,

Page 159

1  that that's information that you would have shared
2  with the opposing counsel, correct?
3     A.   If I had it, I would share it, yes.
4     Q.   You wouldn't have suppressed or
5  concealed any reports that reflected investigative
6  actions taken with respect to two other possible
7  suspects, right?
8     A.   I would not suppress any evidence in
9  any case.
10    MS. BONJEAN:  Thank you.
11         If you guys can give me two minutes,
12 I might be done.  So --
13    MS. ROSEN:  Okay.  Why don't we --
14    MS. BONJEAN:  But I just want to collect my
15 thoughts.
16    MS. ROSEN:  All right.  Why don't we take a
17 break so that we can figure out if we have
18 questions.
19    MS. BONJEAN:  Yes, sure.  Let's take a
20 five-minute break and then --
21    MS. ROSEN:  Yeah, that's fine.
22         (Recess taken.)
23
24

Page 160

1          (Deposition Exhibits Nos. 4
2           and 5, Witness Mandeltort,
3           were marked for identification
4           06/24/2020.)
5  BY MS. BONJEAN:
6     Q.   Okay.  Before I have you look at those
7  exhibits, just a couple quick follow-up questions.
8          And I just want the record to be
9  clear on this:  Did you learn before, during, or
10 after trial at any point that Defendant Guevara had
11 used physical coercion against Mr. Maysonet during
12 the course of the interrogation that produced his
13 court-reported statement?
14    A.   I have no memory of that knowledge.
15    Q.   Okay.  And fair to say that if you had
16 known that information, you would have revealed
17 that information to the criminal justice system?
18    A.   I think that is fair to say.
19    Q.   Okay.  And did you learn before,
20 during, or after trial that any of the defendants
21 had fabricated their testimony or the substance of
22 their testimony that they provided either at the
23 pretrial hearings or at the trial?
24    A.   I have no memory of knowing that.

Page 161

1     Q.   And if you had known that, I assume you
2  would have revealed that information to the
3  criminal justice system, including the defendants'
4  attorney?
5     A.   That is fair to say, yes.
6     Q.   And did you learn before, during, or
7  after trial that any of the defendants had
8  fabricated any portions of their police reports or
9  the contents of their police reports, period --
10 question mark?
11    A.   Did I -- I have no memory of knowing
12 that.
13    Q.   Yeah, okay.  Sorry.  That was a
14 terrible question, but I think we got it.
15         And had you known that the
16 defendants had fabricated their police reports, if
17 you received any information that suggested that or
18 showed that, is that information you would have
19 disclosed to the criminal justice system, including
20 the defendants' attorneys?
21    A.   Yes, I would have.
22    Q.   Okay.  Did you learn before, during, or
23 after trial at any point that any defendant
24 associated with this case and in this investigation