# EXHIBIT 54

| DETECTIVE DIVISION SPECIAL ORDER NO. | DATE OF ISSUE 2 May 1983 | EFFECTIVE DATE 2 May 1983 | NO. 83-2 |
|---|---|---|---|
| SUBJECT INVESTIGATIVE FILES | | DISTRIBUTION | AMENDS |
| RELATED DIRECTIVES | | | RESCINDS DETECTIVE DIVISION SPECIAL ORDER NO. 83-1 |

I. INTRODUCTION

This order is designed to institutionalize the control of all violent crimes field investigation documents and files, which previously may have been referred to as street files, working files, running files, or detective's personal files and notes.

This order also provides for the maintenance and preservation of these documents by Detective Division field units.

II. PURPOSE

This order provides:

A. guidelines for the proper retention of official Department reports, notes, memoranda, and miscellaneous documents of potential evidentiary value, accumulated during the course of a particular violent crime field investigation.

B. guidelines for the proper preparation of a supplementary report.

C. for the proper maintenance of Investigative Files and "R.D." numerical sequence files at the unit level by Detective Division personnel assigned to violent crime field investigations.

D. specific instructions for the development and proper assemblage of all documents placed into a violent crime Investigative File.

E. instructions for the inventory of all documents placed into an Investigative File Case Folder.

F. guidelines to Violent Crimes Unit supervisors for the proper maintenance, storage and retention of Investigative Files.

G. instructions for the use of the Investigative File Folder.

H. instructions for the use of the Miscellaneous Document Repository.

I. instructions for the use of the General Progress Report (CPD-23.122).

J. instructions for the use of the Investigative File Inventory Sheet.

K. instructions for the use of the Investigative File Control Card (CPD 23-124(1/83).

III. POLICY

It is the policy of the Chicago Police Department to conduct all criminal investigations in an impartial and objective manner and to maintain the integrity of its investigative files to ensure that the due process rights of the accused are not compromised during the subject investigation, initial court hearing or any subsequent review. Additionally, it is the policy of the Chicago Police Department to record

RFC-Iglesias 005231

and preserve <u>any</u> relevant information obtained by <u>any</u> detective during the course of a violent crime field investigation.

When assigned to violent crime field investigations, detectives will preserve and record information and materials obtained in the course of the investigation to assure not only that information and materials indicating the possible guilt of the accused are preserved, but also that any information and materials that may tend to show his possible innocence or aid in his defense are preserved.

Deviation from this policy adversely impacts on the goals and objectives of the Chicago Police Department and may result in disciplinary action against that Department member.

IV. DEFINITIONS

  A. Investigative File

   An Investigative File is a criminal case file pertaining to a violent crime field investigation which contains official Department reports, notes, memoranda and miscellaneous documents generated by or received by any detective during the course of such investigation. This investigative file is designed to provide all parties engaged in a criminal proceeding including the judge, State's Attorney, Defense Attorney and the assigned Department members with a comprehensive account of the subject criminal case.

  B. Investigative File Case Folder

   An Investigative File Case Folder is an 8½" x 11" case folder complete with two (2) two-hole metal punch fasteners designed to secure all documents relating to the subject criminal case.

  C. Miscellaneous Document Repository

   A Miscellaneous Document Repository is an 8½" x 11" envelope which will be utilized as a receptacle for all items and documents which are not 8½" x 11" in size. This envelope will be fastened with a two-prong metal fastener to the right hand side of the Investigative File Case Folder. It will be the first (bottom) document on the right hand side.

  D. Investigative File Inventory Sheet

   An Investigative File Inventory Sheet is a multi-lined 8½" x 11" sheet of paper with columns to identify each investigative document that is palced in the investigative file case folder. This form functions as the case index for all documents within the investigative file case folder.

   A copy of the form will be forwarded to the Records Division whenever felony charges are placed against a person(s) to ensure proper notice of all existing documents pertaining to the subject investigation can be made to the State's Attorney's Office, the Courts, and the defense counsel.

RFC-Iglesias 005232

E. General Progress Report

A General Progress Report is a Department form, 8½" x 11" in size, which will be utilized by all detectives assigned to violent crime field investigations. This document is designed to standardize the recording of handwritten notes and memoranda (the investigative work-product) including: inter-watch memoranda (whether handwritten or typewritten), witness or suspect interview notes, on-scene canvass notes, and any other handwritten personal notes normally generated by investigating detectives during the course of a violent crime field investigation.

F. Investigative File Control Card

The Investigative File Control Card is a Department form designed to document the temporary removal of investigative files from the file repository.

V. RESPONSIBILITIES AND PROCEDURES

A. The Violent Crimes Unit supervisors will ensure that:

1. an Investigative File Case Folder is initiated immediately in all violent crime field investigations.

2. an Investigative File Case Folder is initiated for all violent crime field investigations which culminate with the arrest of the offender(s) and the approval of felony charges.

3. all submitted documents are reviewed and inserted into the Investigative File Case Folder and logged on the Investigative File Inventory Sheet when an Investigative File Case Folder exists.

4. in those cases wherein an Investigative File Case Folder has not been prepared, all submitted documents presented with each supplementary report are reviewed and that those documents are attached to the photocopy of the original case report in the unit's R.D. numerical sequence file.

B. Detectives are required to:

1. record and preserve all relevant information as fully and accurately as possibly, take and maintain complete notes of all relevant matters during the course of their investigation. (This requirement is intended to serve the purposes of Department directives to assure ... only that information and materials indicating the possible guilt of the accused are preserved, but also that the accused may ultimately be granted access to any information and materials that may tend to show his possible innocence or aid in his defense.)

2. transcribe relevant information which initially had been recorded upon General Progress Reports, Violent Crimes Major Incident Worksheets, and other miscellaneous investigative documents, on an official Department Case report form (Supplementary, General Offense, etc.) consistent with the Detective Division Violent Crimes reporting format.

RFC-Iglesias 005233

3. promptly (normally at the end of each tour of duty) submit all handwritten notes and investigative documents generated or received to the unit supervisor for review and inclusion in the Investigative File Case Folder whenever an Investigative File Case Folder has been initiated.

4. preserve all handwritten notes and investigative documents generated or received and submit them to the unit supervisor with each supplementary report submitted whenever an Investigative File Case Folder has not been initiated.

5. assume responsibility for the contents of the Investigative File Case Folder and any documents placed within the folder during his tour of duty. Whenever a member of the Division removes the Investigative File Case Folder from the Watch Commander's office, the member will sign the Investigative File Control Card before removing the subject file from the Watch Commander's office.

6. Any detective who has or receives information relating to a violent crime field investigation not assigned to him will promptly forward the information to the assigned detective for investigation and inclusion in the Investigative File Case Folder.

Whenever a subpoena or discovery motion is received in any case, two copies of the Investigative File Inventory Sheet will be forwarded to the Office of Legal Affairs of the Department in the case of a subpoena, or to the Criminal Division of the State's Attorney's Office in the case of a discovery motion, so that one of such copies may be transmitted to the attorney for the defendant.

Whenever a member of the Division removes the Investigative File Case Folder from the Watch Commander's office, the member will complete the Investigative File Control Card indicating the date and time that the subject file was removed and returned. The Investigative File Control Card will be inserted in the place of the removed file for the duration of the file's absence. The Investigative File Case Folder will not be handed over to another Division member without recording this exchange in the File Control Card. Upon return of the file, the Investigative File Control Card will, itself, become part of the Investigative File.

C. The Violent Crimes Unit Commanding Officer will ensure that:

1. the proper maintenance of the unit's R.D. numerical sequence files and direct administrative control of all Investigative File Case Folders are achieved.

2. a copy of the completed Investigative File Inventory Sheet is forwarded to the Records Processing/Case Report Unit (164) whenever a violent crime field investigation results in a person(s) being charged with a felony.

3. all related documents, except original copies of supplementary case reports, are retained in unit files.

RFC-Iglesias 005234

4. all notes, memoranda, and miscellaneous documents of potential evidentiary value are retained in the Violent Crimes Unit's Investigative File Case Folders.

## VI. VIOLENT CRIMES FILE RETENTION

The retention schedule for Violent Crimes Units' files is as follows:

A. Non-criminal incidents: . . . . . . . . . . . . . . . . . . . . . . One (1) year/Purged

B. Cleared Misdemeanor incidents: . . . . . . . . . . . . . . . . One (1) year/Purged

C. Unfounded incidents: . . . . . . . . . . . . . . . . . . . . . . . . One (1) year/Purged

D. Exceptionally Cleared incidents: . . . . . . . . . . . . . . . One (1) year/Purged

E. Suspended incidents (except when warrants have been issued):

   1. Misdemeanors: . . . . . . . . . . . . . . . . . . . . . . . . . . 18 months/Purged
   2. Felonies: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3 years/Purged

F. Cleared Felony: Unit final court disposition/Purged

G. Cleared/Closed Homicides: Until final court disposition and then forwarded to Records Division for permanent retention.

H. Unsolved Homicides: Ten (10) years at Violent Crimes Unit and then forwarded to Records Division for permanent retention.

I. Cleared/Open Homicides: Ten (10) years at the Violent Crimes Unit and then forwarded to Records Division for permanent retention.


Chief William Hurlock

RFC-Iglesias 005235

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

REUBEN PALMER, et al., )
   Subclass A Plaintiffs, )
   and )
EDWARD NEGRON, et al., )
   Subclass B Plaintiffs, )
v. ) No. 82 C 2349
CITY OF CHICAGO, et al., )
   Defendants. )

O R D E R 1/

This Court's Findings of Fact ("Findings") and Conclusions of Law ("Conclusions") dated March 31, 1983 have been entered in accordance with Fed. R. Civ. P. ("Rule") 52(a). Those Findings and Conclusions represent the reasons for the issuance

---

1/ In response to this Court's March 31, 1983 order embodying the Findings and Conclusions, the parties have submitted comments on the proposed form of order that accompanied the March 31 order. Comments by counsel for City Defendants reflect both (a) a niggling approach to what are after all fundamental constitutional concerns and (b) an extraordinarily poor understanding of the fundamentals of drafting. In view of those infirmities, it can only be hoped that their <u>client</u>, the new Superintendent of Police, displays the same forthrightness and supportiveness of the principles dealt with by this Court that now-resigned Superintendent Brzeczek did (see Finding 18). Because City Defendants' comments do not merit individual attention, only n.2 treats with a particularly indefensible aspect of their submission. As for County Defendants, their comments ignore (a) the pervasive problems engendered by the previously existing practices, (b) the fact that various of the Assistant State's Attorneys have in fact been aware of the

RFC-Iglesias 005236

of this Order. In accordance with Rule 65(d), it is ordered that pending a hearing on the ultimate merits of this litigation:

1. "City Defendants" (City of Chicago, Superintendent of Police Rich    Brzeczek and Detective Division Area Two Commander Milton Deas) shall forthwith, and shall forthwith cause their officers, agents, servants, employees, attorneys and persons in active concert or participation with any of them to, modify Special Order 83-1 in the following respects:

    (a) by adding the term "street files" to Paragraph I ("Introduction") as one of the previously-existing common designations of investigative documents and files;

    (b) by revising Paragraph V.A to require immediate initiation of an Investigative File Case Folder in <u>all</u> violent crime field investigations;

    (c) by inserting the following new Paragraph V.B.1 (renumbering the present subparagraphs accordingly):

        in line with the investigator's obligations to record and preserve all relevant information 2/ as fully and

---

Footnote Continued
    that to rid the present system of the constitutionally flawed practices "root and branch" (to import a phrase from another area of constitutional law) requires action by both sets of defendants working in cooperation. As matters now stand either set can frustrate the constitutional rights of defendants, and the provisions of Paragraph 4 of this order represent only minimal requirements that County Defendants' own Deputy State's Attorney Kunkle confirmed would be helpful (see Finding 19 and Conclusion 5(b)). Again it is disingenuous of counsel for County Defendants (as in the case of City Defendants' counsel) to disavow what their clients have been forthright enough to acknowledge. For all these reasons, this order follows the original proposed form in all substantive respects.

2/ Ironically City Defendants complain of the use of the term "relevant information," though it was their own personnel that testified the proper (and only meaningful) criterion to define the obligation of their investigators was to

RFC-Iglesias 005237

3

accurately as possible, take and maintain complete
notes of all relevant matters during the course of
their investigation (this requirement is intended to
serve the purposes of Department directives to assure
not only that information and materials indicating
the possible guilt of the accused are preserved, but
also that the accused may ultimately be granted access
to any information and materials that may tend to
show his possible innocence or aid in his defense).

(d)  by revising the language of present
Paragraph V.B.2 to begin:

promptly (normally at the end of each tour of duty)
submit all handwritten notes and investigative
documents....

(e)  by inserting a provision to the following effect
in an appropriate place in Paragraph V.B:

Any detective who has or receives information
relating to a violent crime field investigation not
assigned to him will promptly forward the information
to the assigned detective for investigation and
inclusion in the Investigative File Case Folder.

(f)  by inserting the following provision in an
appropriate place in Paragraph V.B:

Whenever a subpoena or discovery motion is received
in any case, two copies of the Investigative File
Inventory Sheet will be forwarded to the Office of
Legal Affairs of the Department in the case of a
subpoena, or to the Criminal Division of the Office
of the State's Attorney in the case of a discovery
motion, so that one of such copies may be transmitted
to the attorney for the defendant.

2. City Defendants shall also promptly issue such

directives and take such other action as may be required to

assure that each Investigative File Inventory Sheet in any case

---

Footnote Continued

Defendants and their counsel in response to plaintiffs'
efforts to impose an obligation to record and preserve <u>any
and all</u> matters ascertained during investigation. City
Defendants' counsel will not now be permitted to shift
gears, given the stated constitutionally-directed purposes
of this order.

RFC-Iglesias 005238

that results in arrest and the approval of felony charges shall be supplemented, immediately upon such approval, by a complete list of all types of investigative and other police reports not given the RD number associated with the case, so that the copy transmitted to defendant's attorney as provided in Paragraph 1(f) of this Order will contain that information as well.

3. City Defendants shall also promptly issue such directives and take such other action as may be required to assure that Department's Training Division will develop a program of instruction designed to inform Detective Division personnel of (a) revised procedures relative to the initiation and maintenance of Investigative Files and (b) the underlying reasons for those procedures, including the need to preserve information obtained during investigations to protect the rights of prospective defendants.

4. Cook County State's Attorney Richard M. Daley shall promptly issue such directives and take such other action as may be required to assure that all Assistant State's Attorneys shall:

    (a) maintain familiarity with the Chicago Police Department system (including any changes from time to time) for filing and maintaining police writings in criminal cases that the State's Attorney's Office is prosecuting;

    (b) upon being advised of a discovery motion, or upon the filing of any "answer to discovery" in anticipation of such a motion, in connection with any contemplated or pending criminal prosecution, obtain all police files and records from the various divisions of the Chicago Police Department that have such documentation, and obtain

all additional such documentation as it is subsequently generated;

    (c) provide the defendant with the Investigative File Inventory Sheet where it exists in any pending criminal prosecution and where a discovery motion has been filed or an "answer to discovery" has been filed in anticipation of such a motion;

    (d) upon any request for documents pursuant to discovery motion or upon the filing of any "answer to discovery" in anticipation of such a motion, provide the defendant with all police writings that are discoverable and notice of the existence of others that the State's Attorney claims are not;

    (e) compare all files or notes produced by detectives at felony review, preliminary hearings, pretrial workups and trial with materials in the State's Attorney's file to assure that no police writings have been withheld from the State's Attorney's Office.

5. Rule 65(c) literally requires a bond in conjunction with every preliminary injunction. Two factors militate against requiring a bond here:

    (a) Representative plaintiffs for the two sub-classes are indigent. Our Court of Appeals has taught "Indigence is such a circumstance [for excusing bond]." <u>Wayne Chemical, Inc. v. Columbus Agency Service Corp.</u>, 567 F.2d 692, 701 (7th Cir. 1977) and cases cited.

    (b) Defendants have demonstrated no potential damages to be suffered by them if they were held to have been wrongfully enjoined.

Accordingly bond is excused, and this preliminary injunction is issued without security.

6. This Court reserves judgment on plaintiffs' suggestion that a master be appointed to "monitor detective division operations and communications with the State's Attorney's Office during some test period, and provide the Court with an independent evaluation of reporting and disclosure problems

RFC-Iglesias 005240

6

under the current system." If defendants' performance under this order were to continue to reflect the same attitudes and conduct that were identified in the Findings and Conclusions, such an appointment might be in order. For the present this Court will give defendants the benefit of the assumption they will comply with alacrity and good faith with their duties to assure the constitutional rights of criminal defendants.

                                           *[signature]*
                                         Milton I. Shadur
                                         United States District Judge

Date: April 27, 1983

RFC-Iglesias 005241

| ADDENDUM TO: DETECTIVE DIVISION SPECIAL ORDER NO. 84-2 | 10 September 1984 | 10 September 1984 | 1 |
|---|---|---|---|
| SUBJECT: Investigative Files - Expungement Orders | | DISTRIBUTION | RESCINDS |

## I. PURPOSE

This addendum provides guidelines and procedures for the proper treatment of material contained in Unit Investigative Files which become the subject of an Expungement Order.

## II. PROCEDURES

A. Expungement Orders received at Detective Division Headquarters will be distributed through channels to Division field units for action.

B. Area/section unit commanding officers will be responsible for administering Expungement Orders consistent with current Department directives, except that material which is found to be contained in a Unit Investigative File <u>will not</u> be removed.

C. When an Expungement Order is being processed at a Detective Division field unit, unit supervisors will take necessary and reasonable steps to locate all pertinent material contained in unit files. If during the process, it is determined that material pertaining to an Expungement Order is in an Investigative File, a photocopy of the Expungement Order will be attached to the material in the Investigative File and properly recorded on the Investigative File Inventory Sheet.

D. Whenever a photocopy of an Expungement Order is attached to material within a Unit Investigative File, the unit commanding officer will prepare a report, through channels, to the Director of the Records Division describing the type of material (photos, I.R. Sheet, etc.) and the R.D. Number of the Investigative File.

E. Once a photocopy of an Expungement Order is attached to material within an Investigative File, further use of the material by a Department member for any purpose is absolutely prohibited.

George McMahon, Chief
Detective Division

GMcM/pj

RFC-Iglesias 005242