# EXHIBIT 59

SEPTEMBER 2021

# FOLLOW-UP: REVIEW OF THE CHICAGO POLICE DEPARTMENT'S MANAGEMENT AND PRODUCTION OF RECORDS



CITY OF CHICAGO
OFFICE OF INSPECTOR GENERAL



JOSEPH M. FERGUSON
INSPECTOR GENERAL FOR THE CITY OF CHICAGO

DEBORAH WITZBURG
DEPUTY INSPECTOR GENERAL FOR PUBLIC SAFETY

# I.  INTRODUCTION

The Public Safety section of the City of Chicago Office of Inspector General (OIG) has completed a follow-up to its June 2020 review of the Chicago Police Department's (CPD or the Department) management and production of records. Based on CPD's responses, OIG concludes that CPD has undertaken almost no corrective actions. As a result, CPD's ability to meaningfully ensure that it is fulfilling all of its constitutional and legal obligations to produce all relevant records for criminal and civil litigation remains seriously impaired.

The purpose of OIG's 2020 review was to determine how CPD managed and produced records responsive to criminal and civil litigation and to identify risk areas within those processes. OIG found that CPD could not ensure that it was producing all relevant records in its possession as required by constitutional and legal mandates. Specifically, CPD personnel responsible for relevant duties had no standardized or effective means to identify the totality of records responsive to any specific incident, individual, request, prosecution, or lawsuit. Various stakeholders—including prosecutors, defense attorneys, private attorneys, and judges—told OIG that CPD's practices around record production were ineffective and lacked clarity.

Based on the findings of its 2020 review, OIG recommended that CPD undertake a comprehensive staffing and resource analysis for its records management and production functions; charge a single unit with responsibility for records management across the Department; and develop policies, procedures, and trainings to ensure its ability to produce all responsive records, to include developing a directive outlining responsibilities, developing trainings for relevant personnel, and ensuring all records productions are tracked. OIG also recommended that CPD audit and evaluate its records management and production processes to ensure that records are stored, managed, and produced in accordance with recommended policies, improve transparency with stakeholders, develop better search functions within its Citizen and Law Enforcement Analysis and Reporting (CLEAR) system, and develop and implement a comprehensive, automated records management system.[1] Finally, OIG recommended that the development of a new system consider the management of older records, especially paper records, already in CPD's possession. In its response to OIG's recommendations, CPD described corrective actions it would take (summarized below in *Follow-Up Results*).

In June 2021, OIG inquired about the status of corrective actions taken by CPD in response to the 2020 recommendations. Based on CPD's response, OIG concludes that CPD has implemented very few corrective measures. Although CPD has developed better search functions within its CLEAR system and has, on an ad hoc basis, converted some paper files into electronic formats, CPD has yet to implement most of the improvements to which it committed. Specifically, CPD has yet to conduct a comprehensive staffing and resource analysis, develop and implement

---

[1] CLEAR is a software product procured by CPD, consisting of several modules and applications that, among other functions, store electronic CPD records. In totality, CLEAR is a collection of different technologies, dating from the early 2000s to present day.

standard operating procedures for the management and production of records, or develop necessary trainings. If fully and properly implemented, the improvements to which CPD committed would represent significant improvements in its operations and its ability to meet its legal and constitutional obligations. OIG urges the Department to fully realize its commitments and implement these corrective actions.

## II. FOLLOW UP-RESULTS

In June 2021, OIG followed up on its June 2020 review of the Chicago Police Department's management and production of records, and sought information from CPD on the status of the corrective measures to which it committed in response to OIG's recommendations.[2] Below, we summarize OIG's single finding, the associated recommendations, and the status of CPD's corrective actions. Of note, the City and CPD previously committed to convening a working group with stakeholders to address OIG's finding, but an update on those efforts was not provided. Further, in its response to OIG's follow-up inquiry, CPD provided a copy of Special Order S08-02– Court Appearance, Notification, and Attendance Responsibilities, which appears to be minimally relevant to the issues raised in OIG's report; CPD did not account for the special order's relevance in its written response. This follow-up did not observe or test implementation of the new procedures; thus, we make no determination as to their effectiveness, which would require a new review with full testing.

| FINDING: | CPD CANNOT ENSURE THAT IT IDENTIFIES AND PRODUCES ALL RELEVANT RECORDS IN ITS POSSESSION AS REQUIRED. |
|---|---|

### OIG Recommendation 1:

> OIG recommended that CPD undertake a comprehensive staffing and resource analysis to determine the technical resources, workforce size, and personnel capacities that would be required for the Department to meaningfully meet its constitutional and legal obligations, and should provide its analysis to the Superintendent and the Office of the Mayor.

### Status of Corrective Action: **Not Implemented**

> In CPD's 2020 response to OIG's recommendation, the Department stated that, pursuant to requirements set out in the consent decree entered in *Illinois v. Chicago*, a data-driven staffing assessment and analysis was being conducted.[3] Further, CPD reported that relevant units, such as the Records Section and the Office of Legal Affairs (OLA), were working with CPD's Office of Reform Management to ensure that these units were sufficiently staffed.[4] Finally, the response indicated that CPD's Information

---

[2] City of Chicago Office of Inspector General, "Chicago Police Department's Management and Production of Records," June 10, 2020, https://igchicago.org/wp-content/uploads/2020/06/OIG-Review-of-CPDs-Management-and-Production-of-Records.pdf.

[3] Consent Decree, *State of Ill. v. City of Chi*., No. 17-cv-6260 (N.D. Ill. Jan. 31, 2019).

[4] As of January 30, 2020, CPD's organizational charts refer to this unit as the Legal Affairs Division. In its responses to OIG, CPD continues to refer to this unit as "Legal Affairs" or "OLA." Additionally, the Office of Reform Management has been referred to as the Office of Constitutional Policing and Reform in organizational charts since January 2020.

Services Division and other administrative positions were being transitioned out of CPD to the City's Office of Public Safety Administration.

In its 2021 response to OIG's follow-up inquiry, CPD reported that it does not anticipate meeting its original December 2021 timeline for completing a staffing analysis. CPD did note that a single-unit staffing review was conducted within OLA, and additional positions were added including two Legal Officer I positions and a new position called the Director of Litigation.[5] This new, exempt position will reportedly oversee litigation-related issues for the Department including those related to discovery. CPD has also begun filling vacant OLA positions, including three Staff Attorney positions and two Paralegal positions.

### OIG Recommendation 2:

OIG recommended that CPD charge a single unit with responsibility for records management across all units and record types (e.g., paper and electronic records). This entity should ensure that CPD's records management system allows for effective identification and production of records across all units and CPD members, including the Subpoena Unit and OLA. The charged unit should provide other Department units with guidelines as to how members should maintain and store records they create, in order to ensure processes are consistent between different members and different units.

### Status of Corrective Action 2: **Not Implemented**

In its 2020 response to OIG's recommendation, CPD rejected OIG's recommendation to charge a single unit with developing and implementing records management and production policies. Instead, CPD committed to charging the Subpoena Unit, OLA, the Research and Development Division, and the Records Division with increasing communication and modifying existing policies and standard operating procedures related to records management and production. These additional responsibilities were to include determining whether there should be any changes to the current policy for filling subpoena requests and whether CPD should create a new directive detailing how units should maintain and search for records which might be responsive to a request or subpoena. CPD also stated that each of its bureaus would be tasked with

---

[5] The Legal Officer I position is held by a sworn member who is also a licensed attorney. As relevant here, this position is responsible for "re[v]iew[ing] and distribut[ing] subpoenas and responses to legal request for CPD files and records; review[ing] discovery requests for CPD files and records; review[ing] discovery requests for civil litigation proceedings and initiat[ing] requests for documents to comply with requests." City of Chicago Department of Human Resources, "Police Legal Officer I Job Description (Oct. 1991)," accessed September 10, 2021, https://www.chicago.gov/content/dam/city/depts/dhr/supp_info/JobSpecifications/JobSpecName/POLICE-LEGAL-OFFICER-I_9015.pdf.

creating an internal standard operating procedure (SOP) outlining how they would search for records in its control and verify production of these records. CPD also reported that it had established some Department-wide procedures through a software solution called GovQA, which would allow the Subpoena Unit to track internal production processes related to criminal prosecutions. Further, CPD reported that the Subpoena Unit conducted a Department-wide training on and required each unit to develop an SOP for the use of GovQA.

In its 2021 response to OIG's follow-up inquiry, CPD stated that relevant policies and SOPs have been discussed but the development and implementation is awaiting the implementation of GovQA for use in managing discovery requests arising out of civil litigation, a use that was approved in August 2021 but is not yet operational. It is not clear from CPD's response why policies or SOPs are not yet in place, as GovQA has reportedly been in use for records production in criminal prosecutions since 2019. CPD further stated that its bureaus continue to work on their SOPs regarding how records should be searched for and produced. CPD reported that the Bureau of Detectives has completed a draft SOP that is in the process of internal Department review, "however, even this draft SOP will be informed by the upcoming" GovQA implementation for civil litigation. Once this SOP is finished, CPD asserted that it will serve as an example for other bureaus as they create their SOPs.

When prompted to note any additional corrective actions taken relevant to Recommendation 2, CPD also stated that it has met with external partners to address records production issues that arise. Those partners have reportedly included the Department of Law (DOL) and the Cook County State's Attorney's Office.

## OIG Recommendation 3:

OIG recommended that the unit responsible for records management and production, with input from other CPD units, develop policies, procedures, and trainings to ensure the effective identification and production of records across all CPD units; including, but not limited to:

- Developing a single directive outlining the responsibilities of the Subpoena Unit, OLA, and any other relevant CPD members for ensuring that the Department meets its constitutional and legal obligations, along with a clear delineation of responsibilities;
- Ensuring, both by assigning qualified personnel and by providing adequate training, that responsible members are sufficiently aware of CPD's constitutional and legal obligations and the importance of maintaining and producing records in a manner that satisfies those obligations;

- Providing direction to relevant CPD units as to how to identify and produce paper and electronic records in a manner that will satisfy CPD's obligations and will allow stakeholders to be reasonably confident that they could submit one production request to CPD and receive all relevant and responsive records;
- Ensuring that, in light of the breadth and weight of CPD's constitutional and legal obligations, Subpoena Unit and OLA personnel are adequately trained on CPD's records management practices and the universe of CPD records;
- Given an understanding of legal and constitutional obligations, ensuring that Subpoena Unit members follow consistent procedures when identifying and producing records responsive to subpoenas;
- Ensuring that all records produced to litigants are tracked, including those not produced by the Subpoena Unit; and,
- Providing clear guidelines on the circumstances under which CPD personnel should forward responsive records to OLA for legal review before production, including identifying the person(s) responsible for doing so.

Status of Corrective Action: **Not Implemented**

CPD originally agreed to partly implement this recommendation. In CPD's 2020 response to OIG's recommendation, the Department again relied upon its procurement of GovQA for criminal discovery and the trainings given on the system. CPD also stated that "in the coming months" OLA and the Records Division would work together to confirm that each "responsive unit" had created SOPs detailing how it receives, searches for, and produces records. The Department's response also highlighted that OLA had created internal SOPs and provided trainings to its staff. Finally, CPD's response noted that, in 2017, it gave DOL direct access to its electronic records and that CPD meets with DOL divisions regularly to address any discovery issues.

In its 2021 response to OIG's follow-up inquiry, CPD stated that units had not created SOPs since GovQA for civil litigation was still being implemented. Further, the Department reported that it had not yet provided relevant trainings but would do so when GovQA is implemented and SOPs have been developed. Finally, CPD stated that members of the Records Division meet regularly with members of OLA to discuss subpoenas and conduct any necessary legal reviews.

OIG Recommendation 4:

OIG recommended that CPD audit and evaluate its production and records management processes to ensure that records are stored, managed, and

produced in accordance with forthcoming policies and in a manner that would allow CPD to meet its obligations.

Status of Corrective Action: **Pending**

In its 2020 response to OIG's recommendation, CPD agreed to audit these processes once the document tracking systems and SOPs were developed and implemented, and estimated that this process would be completed no later than December 2023. In its 2021 response to OIG's follow-up inquiry, CPD continued to project this as the appropriate timeline for such an audit.

OIG Recommendation 5:

OIG recommended that CPD improve its transparency with stakeholders by providing contact information for relevant personnel that could answer questions about CPD's management and production of records, as well as providing more complete, publicly available information on the totality of records CPD may have in its possession related to an individual, case, investigation, etc.

Status of Corrective Action: **Partially Implemented**

In its 2020 response to OIG's recommendations, CPD stated that it would detail its records production processes in one of its publicly available directives. Additionally, the Department committed to including contact information for individuals responsible for records requests in unit SOPs on records management. By way of example, CPD pointed to the Subpoena Unit SOP, which includes contact information. CPD also reported that it has had ongoing meetings with the Cook County State's Attorney's Office (CCSAO), the Public Defender's Office, and DOL to help resolve any technical or communication problems and to improve production-related outcomes. Finally, CPD reported that it had taken steps to ensure that DOL Attorneys could directly contact CPD subject matter expert members to ensure complete production, as opposed to having to contact them through OLA.

In its 2021 response to OIG's follow-up inquiry, the Department acknowledged that it has not created or implemented the new directive to which it committed in 2020. With regards to improving communication and providing contact information with stakeholders, CPD indicated that DOL's Federal Civil Rights Litigation Division (FCRL) has the contact information for each CPD unit from which it might request information. Other DOL units are expected to continue making requests through OLA, as opposed to having the direct contact with subject matter experts that FCRL has and which CPD touted in its initial response. CPD also indicated

that contact information is not shared with other agencies such as CCSAO or the Public Defender's Office; those entities must request information through the subpoena process and members of the Subpoena Unit have been trained on who to contact to request records. Neither CPD's 2020 response nor its follow-up response offered any indication that CPD would improve transparency around the type of records it maintains.[6]

### OIG Recommendation 6:

OIG recommended that CPD develop and implement a comprehensive records management system that allows for the automation of all CPD records. If records need to be created on paper, these records should be scanned into the system and rendered searchable for effective and efficient identification and production

### Status of Corrective Action: **Not Implemented**

In its 2020 response to OIG's recommendations, CPD did not agree to implement this recommendation, reporting that it could not commit to a single, comprehensive records management system due to costs, personnel, and technical considerations. CPD did highlight some recent examples of paper records becoming automated but questioned the feasibility of having a single records management system given the number of CPD units with varying legal, confidentiality, and investigatory interests. Finally, CPD stated that a "comprehensive data systems plan" is being developed to comply with the consent decree. Once that data systems plan is developed, CPD reported that further investigation into a comprehensive records management system would be possible.

In response to OIG's 2021 follow-up inquiry, CPD stated that the function of developing a data systems plan has been transferred out of CPD entirely to the Office of Public Safety Administration.

### OIG Recommendation 7:

OIG recommended that CPD production processes provide for the management of older records already in CPD's possession. Improvements to how records are created, stored, and indexed in the future may not impact older records, which may themselves be relevant to ongoing criminal prosecutions and civil litigation arising from law enforcement

---

[6] In an effort to improve transparency, OIG published an Appendix to its 2020 report listing CPD records which were potentially related to criminal and civil litigation arising from law enforcement. The Appendix was intended to demonstrate the breadth of the potential universe of CPD records related to a criminal case, and the significant potential for the existence of records which fall outside of litigants' knowledge and specific requests. See https://igchicago.org/wp-content/uploads/2020/06/OIG-Review-of-CPDs-Management-and-Production-of-Records.pdf at Appendix A.

activities for years to come, given the sometimes lengthy duration of these proceedings.

Status of Corrective Action: **Minimally Implemented**

In its 2020 response to OIG's recommendations, CPD stated that it continued to seek opportunities to move paper records to electronic systems; the Bureaus of Detectives and Internal Affairs had undertaken an initiative to scan older files into electronic format. However, CPD highlighted that this process was "arduous and expensive."

In response to OIG's 2021 follow-up inquiry, CPD indicated that it continued to convert older Bureau of Detectives and Bureau of Internal Affairs paper files into electronic files on an ad hoc basis, as they were specifically requested and being produced. CPD once again described the process as "arduous," given the number of paper files and the age of those files.

OIG Recommendation 8:

OIG recommended that CPD develop a "search all" function for CPD's various CLEAR applications and ensure that related identifiers (e.g., Records Division Numbers for cases and Central Booking Numbers for arrests) are associated with one another to make it more efficient for Subpoena Unit and OLA members to identify and gather electronic records.

Status of Corrective Action: **Partially Implemented**

In its 2020 response to OIG's recommendations, CPD indicated that the Information Services Division was working to develop a "search all" function by Records Division Number across all applications in the Criminal History Records Information System (CHRIS) and CLEAR system.[7]

In its response to the 2021 follow-up inquiry, CPD indicated that the "search all" function had been created for purposes of searching records by Records Division Number; there is no indication that records are searchable by other identifiers.

---

[7] CHRIS consists of several applications that are used to complete and store various automated records, including some records created by the Bureau of Detectives during their investigations.

## III. CONCLUSION

OIG urges CPD to fully implement the corrective measures to which it committed in 2020, to include conducting a resource analysis, better organizing top-down guidance for records management and production, and creating SOPs and trainings to ensure consistency across its operational units. Not having made these improvements, CPD is now—just as it was when OIG published its 2020 report—unable to ensure that it can meet legal and constitutional obligations which are at the core of its function as a law enforcement agency. This is an area of very serious risk for CPD and for the City. In criminal litigation, CPD's failure to identify and produce records and information in its possession might undermine criminal prosecutions or lead to vacated convictions. In civil litigation, the same failures may result in significant legal and financial liability. OIG also urges CPD to reconsider recommendations with which it originally disagreed—specifically, those which concern its enterprise-wide records management processes. Expanding the use of GovQA, along with some of the other incremental steps already taken, will help CPD improve some of its records management and production processes. Particularly when measured against the weight of the obligations at issue, however, these steps do not adequately address the concerns raised in OIG's 2020 report; unless and until CPD improves its processes around records management and production, it will continue to be plagued by the risks identified there.

The City of Chicago Office of Inspector General (OIG) is an independent, nonpartisan oversight agency whose mission is to promote economy, efficiency, effectiveness, and integrity in the administration of programs and operations of City government. OIG achieves this mission through,

- administrative and criminal investigations by its Investigations Section;
- performance audits of City programs and operations by its Audit and Program Review Section;
- inspections, evaluations and reviews of City police and police accountability programs, operations, and policies by its Public Safety Section; and
- compliance audit and monitoring of City hiring and human resources activities by its Compliance Section.

From these activities, OIG issues reports of findings and disciplinary and other recommendations to assure that City officials, employees, and vendors are held accountable for violations of laws and policies; to improve the efficiency, cost-effectiveness government operations and further to prevent, detect, identify, expose and eliminate waste, inefficiency, misconduct, fraud, corruption, and abuse of public authority and resources.

OIG's authority to produce reports of its findings and recommendations is established in the City of Chicago Municipal Code §§ 2-56-030(d), -035(c), -110, -230, and -240.

### PROJECT TEAM
Ricardo Alvarez, Senior Performance Analyst
Kathryn Simon, Chief Performance Analyst

### PUBLIC INQUIRIES
Communications: (773) 478-8417 | communications@igchicago.org

### TO SUGGEST WAYS TO IMPROVE CITY GOVERNMENT
Visit: igchicago.org/contact-us/help-improve-city-government

### TO REPORT FRAUD, WASTE, AND ABUSE IN CITY PROGRAMS
Call OIG's toll-free hotline: (866) 448-4754 / TTY: (773) 478-2066
Or visit: igchicago.org/contact-us/report-fraud-waste-abuse/

*Cover image courtesy of iStock.*
*Alternate formats available upon request.*

