# EXHIBIT 68

12/01/16 AM          ***REALTIME UNEDITED TRANSCRIPT ONLY***

1

| Time | Line | Text |
|------|------|------|
| 09:31:54 | 1 | Judge Kennelly, December 1, 2016. |
| 09:33:33 | 2 | THE COURT:  Trial. |
| 09:33:49 | 3 | THE CLERK:  Case number 10 C 1168. |
| 09:33:54 | 4 | MR. ART:  Steve Art, Anand Swaminathan, Candace |
| 09:33:58 | 5 | Gorman for the plaintiff. |
| 09:33:59 | 6 | MR. BURNS:  Good morning, your Honor.  Terry Burns, |
| 09:34:01 | 7 | Dan Noland, Paul Michalik on behalf the City of Chicago and |
| 09:34:04 | 8 | Joseph Murphy. |
| 09:34:05 | 9 | THE COURT:  First of all. |
| 09:34:06 | 10 | MR. KULWIN:  Hello, your Honor. |
| 09:34:07 | 11 | THE COURT:  I'm sorry. |
| 09:34:08 | 12 | MR. KULWIN:  It's okay.  Shelly Kulwin, Rachel Katz |
| 09:34:13 | 13 | on behalf of defendant O'Callaghan. |
| 09:34:14 | 14 | THE COURT:  First of all, we have a little table |
| 09:34:17 | 15 | that's on wheels, so we can move it if necessary, there is a |
| 09:34:20 | 16 | screen up here which is the equivalent of the witness screen |
| 09:34:23 | 17 | and then we got a better -- the thing was kind of cutting in |
| 09:34:26 | 18 | and out yet, so I have a better wireless mic.  So if we need |
| 09:34:30 | 19 | to move that, it's fine.  It's on wheels.  We will just kind |
| 09:34:36 | 20 | of sort that out when we get it. |
| 09:34:38 | 21 | That's number one.  I've got I think everything that |
| 09:34:42 | 22 | everybody filed on this witness protection issue, and there's, |
| 09:34:47 | 23 | I guess there's different issues for different witnesses, so I |
| 09:34:51 | 24 | want to just -- because we got such a late start with the jury |
| 09:34:54 | 25 | yesterday, at the moment I just want to deal with it on |

***REALTIME UNEDITED TRANSCRIPT ONLY***

Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 3 of 133 PageID #:31505

2

| | | |
|---|---|---|
| 09:34:59 | 1 | Mr. Murphy, so that will be paragraph 7 of the -- paragraph 5 |
| 09:35:04 | 2 | of the defendants' proffer and paragraph 7 of the plaintiff's |
| 09:35:09 | 3 | response to that. |
| 09:35:10 | 4 | So am I right that -- Mr. Kulwin, do you have or |
| 09:35:32 | 5 | Mr. Burns, do you have your submission in front of you guys |
| 09:35:35 | 6 | there? |
| 09:35:35 | 7 | MR. KULWIN:  Yeah. |
| 09:35:36 | 8 | THE COURT:  Paragraph 5, am I right that paragraphs 1 |
| 09:35:41 | 9 | through 5 have basically already come in for Mr. Murphy or |
| 09:35:46 | 10 | not? |
| 09:35:51 | 11 | MR. BURNS:  Page 5. |
| 09:35:53 | 12 | MR. KULWIN:  Did it already come in through |
| 09:35:55 | 13 | Mr. Murphy? |
| 09:35:56 | 14 | THE COURT:  I don't remember. |
| 09:35:59 | 15 | MR. KULWIN:  No. |
| 09:35:59 | 16 | THE COURT:  It hasn't come in through his examination |
| 09:36:01 | 17 | yet. |
| 09:36:02 | 18 | MR. ART:  My memory is he got most of items 1 through |
| 09:36:06 | 19 | 5 of defendants' proffer already in. |
| 09:36:11 | 20 | THE COURT:  The way I am reading the reply filed by |
| 09:36:13 | 21 | the plaintiff is that at this point there's really no |
| 09:36:17 | 22 | objection to Mr. Murphy testifying to items 1 through 5 is |
| 09:36:22 | 23 | that right? |
| 09:36:22 | 24 | MR. LOEVY:  We have some confusion.  Are you asking |
| 09:36:26 | 25 | whether we covered this already with Murphy? |

***REALTIME UNEDITED TRANSCRIPT ONLY***

09:36:28    1      THE COURT:  No, I am asking the question that I am

09:36:31    2    asking.  I'm looking at the response, the reply that was filed

09:36:34    3    last night, paragraph 7.  With respect to paragraph 5,

09:36:38    4    plaintiff has no objection to defendant Murphy telling the

09:36:42    5    story about the arrest of Mr. Beseth and Mr. Swano, items 1

09:36:46    6    through 6.  You are okay with that?

09:36:48    7      MR. LOEVY:  Yes, your Honor.  I understand now.

09:36:50    8      THE COURT:  You have an objection to the rest of it,

09:36:53    9    7, 8, and 9.

09:36:55   10      MR. ART:  Yes.

09:36:57   11      THE COURT:  That's the way I'm reading it.

09:36:59   12      MR. LOEVY:  Got it.

09:36:59   13      THE COURT:  Actually, there isn't a 9.  I am not

09:37:02   14    seeing 9.  It's just 7 and 8.

09:37:04   15      MR. ART:  Yes, that's my mistake.

09:37:06   16      THE COURT:  What you're telling me on that is that I

09:37:09   17    made a ruling, it's document No. 550, which I have to pull out

09:37:14   18    here, before the previous trial that that was inadmissible.

09:37:22   19    So on the defense side, do you agree or disagree that I made

09:37:25   20    that ruling?

09:37:28   21      MR. BURNS:  Just one moment, your Honor.

09:37:33   22      MR. KULWIN:  You are talking --

09:37:36   23      THE COURT:  Items 7 and 8.  The plaintiff is saying

09:37:38   24    that I made a ruling on that in document 550 prior to the

09:37:45   25    previous trial.  Document 550 is an order dated March the 9th

12/01/16 AM    Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 5 of 133 PageID #:31507
***REALTIME UNEDITED TRANSCRIPT ONLY***

4

| | | |
|---|---|---|
| 09:38:10 | 1 | of 2014. |
| 09:38:11 | 2 | MR. ART: Your Honor, the particular parts of that |
| 09:38:15 | 3 | order we're referring to are on our response on page 2, at the |
| 09:38:19 | 4 | top of page 2. |
| 09:38:21 | 5 | MR. BURNS: Judge, maybe I could obviate some of the |
| 09:38:24 | 6 | discussion as at least as Mr. Murphy is concerned. |
| 09:38:28 | 7 | THE COURT: Go for it. |
| 09:38:29 | 8 | MR. BURNS: Mr. Murphy will testify as to the events |
| 09:38:31 | 9 | that occurred at the playground. |
| 09:38:34 | 10 | THE COURT: You said at the playground? |
| 09:38:36 | 11 | MR. BURNS: At the playground. |
| 09:38:37 | 12 | THE COURT: That's the Swano incident. |
| 09:38:38 | 13 | MR. BURNS: That's this incident in the paragraph. |
| 09:38:41 | 14 | He is not going to be testifying as to intimidation. He is |
| 09:38:44 | 15 | going talking about what happened when he went there. He did |
| 09:38:47 | 16 | receive a call, went to that location, found the two children |
| 09:38:51 | 17 | there, found Beseth, found Swano, talked to them, asked what |
| 09:38:55 | 18 | they had said, but he is not getting into a discussion that |
| 09:38:59 | 19 | they were intimidating, that they were threatening, that they |
| 09:39:02 | 20 | were saying things. So it's not intended for that purpose, |
| 09:39:05 | 21 | your Honor if that helps. |
| 09:39:07 | 22 | MR. ART: I think we have agreement with what |
| 09:39:09 | 23 | Mr. Burns is saying and that is what's covered in paragraphs 1 |
| 09:39:12 | 24 | through 6. |
| 09:39:13 | 25 | THE COURT: So, yeah, that's what I'm talking about |

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 6 of 133 PageID #:31508
***REALTIME UNEDITED TRANSCRIPT ONLY***

5

09:39:16   1   paragraphs 7 and 8.  It's the Jean Ball thing and the.

09:39:22   2           MR. ART:  Morris relocation.

09:39:23   3           THE COURT:  The relocation.

09:39:25   4           MR. BURNS:  In regard to Jean Ball, Jean Ball was

09:39:29   5   there.  I think we heard yesterday that she is the wife of

09:39:32   6   James Speights who was a general in the El Rukns.  That would

09:39:35   7   be the extent.  We don't intend to go beyond that, your Honor.

09:39:39   8   That was already elicited through testimony.

09:39:41   9           THE COURT:  Didn't that come out earlier in the

09:39:44   10   trial?

09:39:45   11           MR. LOEVY:  There is no testimony that she is married

09:39:46   12   to James Speights which we don't even believe is true.  There

09:39:50   13   is no foundation for that testimony.

09:39:52   14           THE COURT:  I don't think it's contended that she is

09:39:53   15   married.  Common law doesn't mean this is what happens I tell

09:39:57   16   people, she is not the common law wide, she is the common law

09:40:02   17   wife.

09:40:02   18           MR. LOEVY:  The girlfriend I guess is what they are

09:40:05   19   saying.

09:40:05   20           MR. BURNS:  We are going to, Mr. Murphy, the

09:40:08   21   testimony he gave yesterday, we are not going beyond.  If

09:40:11   22   there is a belief that we are going to say that she was there

09:40:14   23   threatening, we are not going to be saying that about Jean

09:40:18   24   Ball, the wife, the common law wife, the friend of James

09:40:22   25   Speights, however people wish to characterize it.

12/01/16 AM          ***REALTIME UNEDITED TRANSCRIPT ONLY***

6

09:40:27   1          THE COURT:  I know there was testimony about this

09:40:28   2   earlier in the trial.

09:40:29   3          MR. KULWIN:  There was.

09:40:30   4          THE COURT:  From who?

09:40:33   5          MR. KULWIN:  I believe it was from Earl Hawkins.

09:40:36   6   Incompetent read his 2009 trial testimony that James Speights

09:40:40   7   was a general.

09:40:40   8          THE COURT:  No, but about this incident.

09:40:43   9          MR. KULWIN:  About Jean Ball, that incident.

09:40:45   10          THE COURT:  Maybe I just seen it in reports.  Was it

09:40:48   11   in a report.

09:40:48   12          MR. KULWIN:  No.

09:40:49   13          MR. LOEVY:  I think they just keep saying it.  It's

09:40:51   14   not testimony.

09:40:53   15          MR. KULWIN:  I think it came out.

09:41:01   16          MR. LOEVY:  You know where you saw it in the Beseth

09:41:03   17   deposition, isn't it true you brought along James Speights the

09:41:07   18   common law wife and he said I don't know who she is.  That's

09:41:10   19   what you're probably thinking of.

09:41:12   20          THE COURT:  Maybe that's where I read it because I

09:41:15   21   read it the night before last.

09:41:17   22          MR. BURNS:  What we were talking about was admitted

09:41:19   23   in the last trial back in 2014, your Honor.

09:41:21   24          THE COURT:  This person named ball was there and that

09:41:23   25   she was understood to be the common law wife.


                    ***REALTIME UNEDITED TRANSCRIPT ONLY***

09:41:27  1      MR. KULWIN:  We have it right here, it was on page

09:41:29  2  1534.

09:41:30  3      THE COURT:  Do you have a date?

09:41:32  4      MR. KULWIN:  It's Exhibit A to our filing.

09:41:36  5      THE COURT:  Do you have a date?

09:41:49  6      MR. BURNS:  I believe, Judge, the date --

09:41:50  7      THE COURT:  What was the page, Mr. Kulwin.

09:41:52  8      MR. KULWIN:  1534.

09:41:55  9      THE COURT:  Got it.  I'm looking at it.  Thanks.  I

09:42:11  10  let it in at the last trial, I'm letting it in in this trial.

09:42:15  11      That leaves item number 8.  What does Mr. Murphy have

09:42:20  12  personal knowledge of regarding Morris' relocation?

09:42:25  13      MR. BURNS:  He, and this was in conjunction with the

09:42:29  14  state's attorney's office, asked to relocate Morris and his

09:42:31  15  family.  They did that on a Friday night.  The testimony I

09:42:36  16  anticipate that he will give in regard to intimidation was

09:42:38  17  that Morris felt that he and his family were threatened and

09:42:41  18  that's why the relocation occurred.  I think Detective

09:42:45  19  O'Callaghan talked about this, your Honor.

09:42:46  20      THE COURT:  I am just asking about Mr. Murphy.

09:42:48  21      MR. BURNS:  I know --

09:42:49  22      THE COURT:  Mr. Murphy is going to say that he put in

09:42:51  23  the request to the state's attorney's office.

09:42:53  24      MR. BURNS:  They were requested by the state's

09:42:56  25  attorney's office.

8

09:42:56    1        THE COURT:  That he was asked by the state's

09:42:58    2   attorney's office to move Mr. Morris up to Milwaukee.

09:43:02    3        MR. BURNS:  To the witness victim program.  That's

09:43:04    4   how it came to him.  He said we really were the ones to simply

09:43:08    5   then moved him.

09:43:09    6        THE COURT:  And so the information he has about why

09:43:11    7   that happened came from the state's attorney's office?

09:43:13    8        MR. BURNS:  Yes.

09:43:14    9        THE COURT:  It's hearsay.  You can't put that in.  So

09:43:16   10   you can put in that he moved him up to Wisconsin but you can't

09:43:20   11   put in why because the statement from the state's attorney's

09:43:23   12   office is hearsay.  That's it.  I've ruled.

09:43:25   13        What else do I have to deal with before with he

09:43:27   14   start?

09:43:27   15        MR. ART:  You just need to know that Mr. Wharrie is

09:43:30   16   going to go on.  We are going to break in Mr. Murphy right

09:43:33   17   now.

09:43:33   18        MR. LOEVY:  A couple things.  The new ink despite.

09:43:38   19   We found a reference in the transcript.  We resolved it.  We

09:43:41   20   are going to handle it the way we handled it at the last

09:43:44   21   trial.

09:43:44   22        THE COURT:  Look, if I don't have to worry about it,

09:43:49   23   don't bother me with it.

09:43:52   24        Let's get the jury.

09:43:52   25        MR. BURNS:  Judge, if I say victim witness --

09:43:54   1        THE COURT:  Victim witness program is the official
09:43:55   2   name of it and you are okay with using that term, yes.
09:44:20   3        MR. NOLAND:  Your Honor, may I speak with Mr. Murphy
09:44:22   4   about the Court's ruling?
09:44:23   5        THE COURT:  Absolutely.  That's fine.
09:44:25   6        MR. NOLAND:  Thank you.
09:45:23   7        THE COURT:  Everybody have a seat.  I have a
09:45:26   8   technical issue I have to deal with.
09:45:45   9     (The jury enters the courtroom.)
09:45:46  10        THE COURT:  Better today than yesterday.  I am going
09:45:48  11   to give myself a pat on the back.  You see there is a
09:45:51  12   different person up here.  We are interrupting Mr. Murphy's
09:45:55  13   testimony.  That's my decision so we can keep things moving.
09:45:58  14     (Witness sworn.)
09:46:06  15        THE COURT:  Mr. Loevy, you can go ahead.
09:46:07  16        MR. LOEVY:  Thank you, your Honor.
09:46:08  17                        - - -
09:46:08  18        LAWRENCE WHARRIE, DIRECT EXAMINATION
09:46:08  19   BY MR. LOEVY:
09:46:09  20   Q.  Would you state your name for the record?
09:46:10  21   A.  Larry Wharrie.
09:46:11  22   Q.  What do you do for a living, sir?
09:46:13  23   A.  I am an attorney.
09:46:14  24   Q.  You are formerly a prosecutor, correct?
09:46:17  25   A.  Correct.

12/01/16 AM     ***REALTIME UNEDITED TRANSCRIPT ONLY***

10

| | | |
|---|---|---|
| 09:46:17 | 1 | Q.  In the Cook County state's attorney's office? |
| 09:46:19 | 2 | A.  Yes. |
| 09:46:19 | 3 | Q.  And you were one of the prosecutors who prosecuted the |
| 09:46:21 | 4 | murder case against Nate and Earl Hawkins back in '86, |
| 09:46:25 | 5 | correct, sir? |
| 09:46:26 | 6 | A.  That's correct. |
| 09:46:26 | 7 | Q.  Let's talk about some of the evidence that got presented |
| 09:46:30 | 8 | at that trial.  I want to talk first about Randy Langston. |
| 09:46:38 | 9 | Now, you knew from the police reports that at one |
| 09:46:42 | 10 | point when initially interviewed in 1984, Randy said there was |
| 09:46:46 | 11 | one shooter, correct? |
| 09:46:48 | 12 | A.  I believe that was in the report. |
| 09:46:50 | 13 | Q.  All right.  But by the time he testified at trial, he |
| 09:46:53 | 14 | identified two shooter, Nate and Hawkins, correct? |
| 09:46:56 | 15 | A.  That's correct. |
| 09:46:57 | 16 | Q.  By question for you, sir, is was Randy saying there were |
| 09:47:01 | 17 | two shooter by the time you started interacting with him or |
| 09:47:05 | 18 | were you someone who was part of the process where he went |
| 09:47:09 | 19 | from one to two? |
| 09:47:10 | 20 | A.  I don't remember ever really talking to Randy Langston. |
| 09:47:14 | 21 | My partner handled Randy Langston. |
| 09:47:16 | 22 | Q.  So you had no involvement in whatever shift happened from |
| 09:47:19 | 23 | one shooter to two, that had nothing to do with you? |
| 09:47:22 | 24 | A.  I don't believe I talked with him to prepare him for |
| 09:47:26 | 25 | trial. |

***REALTIME UNEDITED TRANSCRIPT ONLY***

12/01/16 AM          ***REALTIME UNEDITED TRANSCRIPT ONLY***

09:47:26    1   Q.  So that had nothing to do with you, right?

09:47:28    2   A.  That's correct.

09:47:28    3   Q.  All right.  Did you ever know that the notes from Randy

09:47:35    4   Langston's interview taken by Detective Bogdalek had gone

09:47:39    5   missing?

09:47:42    6           THE COURT:  Do you want to put a time frame on that?

09:47:46    7   BY MR. LOEVY:

09:47:46    8   Q.  Did you know back in '86 that there was a detective named

09:47:49    9   Bogdalek who had taken notes of the initial interview with

09:47:52   10   Randy Langston in '84?

09:47:53   11   A.  I was aware of Bogdalek.  He did write a report, maybe two

09:48:04   12   pages long.  I don't know if that's what you're referring to.

09:48:06   13   Q.  Who did you depend on to make sure that you got all of the

09:48:10   14   notes, the handwritten notes that under lied the reports?

09:48:12   15   A.  We would order the reports throughout the normal course of

09:48:18   16   business.

09:48:18   17   Q.  And then would you depend on the police department to make

09:48:22   18   sure that you had everything to turn over, right?

09:48:25   19   A.  That's how it was done.

09:48:26   20   Q.  As the prosecutor, it was your responsibility to turn over

09:48:28   21   all potentially exculpatory information, correct?

09:48:30   22           THE COURT:  This is my tech guy.  In case you're

09:48:33   23   wondering.  Just pause for a second.

09:48:59   24     (Brief pause.)

09:49:00   25           THE COURT:  Technical issue solved.


                    ***REALTIME UNEDITED TRANSCRIPT ONLY***

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 13 of 133 PageID #:31515
***REALTIME UNEDITED TRANSCRIPT ONLY***

12

| | | |
|---|---|---|
| 09:49:02 | 1 | Go ahead, Mr. Loevy. Sorry for the interruption. |
| 09:49:04 | 2 | BY MR. LOEVY: |
| 09:49:05 | 3 | Q. I am being to move on to Gerald Morris. Did you interact |
| 09:49:07 | 4 | with Gerald Morris, sir? |
| 09:49:08 | 5 | A. I may have interacted. I just don't remember. I don't |
| 09:49:13 | 6 | think I put any of the eyewitnesses on for testimony. That's |
| 09:49:16 | 7 | my recollection. |
| 09:49:17 | 8 | Q. You have had a chance to review the transcripts and your |
| 09:49:21 | 9 | documents before you testified today, correct? |
| 09:49:24 | 10 | A. I don't know that I reviewed the trial transcript. |
| 09:49:27 | 11 | Q. But you have had -- you have taken some opportunity to |
| 09:49:30 | 12 | refamiliarize yourself with the facts as you knew them, right? |
| 09:49:32 | 13 | A. I did my best to refresh my memory from 30 some years ago. |
| 09:49:38 | 14 | Q. Do you remember whether when Gerald Morris first got to |
| 09:49:42 | 15 | the state's attorney's office, if he had the descriptions of |
| 09:49:44 | 16 | the men, one was tall, short, black, dark, braids, that kind |
| 09:49:48 | 17 | of level of description? Were you part of those discussions? |
| 09:49:52 | 18 | A. I believe there was a description in the police reports. |
| 09:49:57 | 19 | Q. A description by Gerald Morris? |
| 09:49:59 | 20 | A. I don't remember. |
| 09:50:01 | 21 | Q. All right. How about Richard Buckles, do you remember him |
| 09:50:08 | 22 | being located shortly before trial? |
| 09:50:10 | 23 | A. I remember the name Richard Buckles. |
| 09:50:12 | 24 | Q. All right. Do you remember how it was that after two |
| 09:50:15 | 25 | years after the murder, he showed up as an eyewitness? |

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 14 of 133 PageID #:31516
***REALTIME UNEDITED TRANSCRIPT ONLY***

13

09:50:21   1   A.  I thought Richard Buckles was somebody who had been

09:50:30   2   interviewed early on.

09:50:31   3   Q.  Let me show you Plaintiff's Exhibit 96.  This is a police

09:50:37   4   report memorializing the Richard Buckles's witness.  Would you

09:50:40   5   agree with that?

09:50:41   6   A.  Yes.

09:50:58   7   Q.  That's a report you would have had back then?

09:51:02   8   A.  Yes.

09:51:03   9   Q.  Does that refresh your recollection as to how Richard

09:51:05  10   Buckles turned up as a witness in April of '86 before the June

09:51:09  11   trial?

09:51:10  12   A.  Yes, this would be his report.

09:51:13  13   Q.  All right.  Do you remember there being a two year gap

09:51:16  14   between this guy Richard Buckles was found?

09:51:18  15   A.  Well, this report is in 1986, so that would appear to be

09:51:24  16   true.

09:51:25  17   Q.  However, if you look at the first page, it's talking about

09:51:29  18   the witness interaction in April of '85, correct, in the text?

09:51:42  19         MR. LOEVY:  Your Honor, permission to publish

09:51:46  20   defendants' 96.

09:51:47  21         THE COURT:  All right.  The jury can see it and

09:51:50  22   Mr. Wharrie should be able to see it on the screen too.

09:51:52  23         THE WITNESS:  Yes, now that I read the report, I

09:51:55  24   think that's what I had read before coming here, that he had

09:51:59  25   been interviewed in 1985.

14

09:52:01   1   BY MR. LOEVY:

09:52:02   2   Q.  So was it your understanding that Buckles actually was

09:52:05   3   located in '85, not in '86 as the prosecutor, was that the

09:52:11   4   understanding you had?

09:52:11   5   A.  Well, yes, if this report is correct, yes.

09:52:17   6   Q.  You depended on the Chicago Police Department to give you

09:52:19   7   the accurate information, correct?

09:52:20   8   A.  Correct.

09:52:20   9   Q.  But do you have any memory at all about a witness showing

09:52:23  10   up at the last minute, Richard Buckles?  Either you do or you

09:52:27  11   don't?

09:52:27  12   A.  I'm sorry, I don't.

09:52:29  13   Q.  All right.  Now, do you remember, this is Plaintiff's

09:52:34  14   Exhibit 84-1  did anybody ever give you a document

09:52:41  15   memorializing --

09:52:42  16          THE COURT:  Hold it still there.

09:52:43  17          MR. LOEVY:  Sure.  This is Plaintiff's Exhibit 84-1.

09:52:50  18          THE COURT:  Do you want to slide it up so he can see

09:52:52  19   the top?

09:52:53  20   BY MR. LOEVY:

09:52:53  21   Q.  This is a homicide lineup on May 18th, 85 signed by

09:53:00  22   Sergeant Murphy of the Hawkins lineup.  Do you see that, sir?

09:53:03  23   A.  Yes.

09:53:04  24   Q.  Do you remember ever being told that witnesses in the case

09:53:07  25   had identified a guy named Ray Ferguson instead of Earl

12/01/16 AM                    ***REALTIME UNEDITED TRANSCRIPT ONLY***

15

| 09:53:11 | 1 | Hawkins? |
| 09:53:11 | 2 | A.  No, I do not. |
| 09:53:13 | 3 | Q.  That's something that would have stuck in your memory, |
| 09:53:15 | 4 | right? |
| 09:53:15 | 5 | A.  Correct. |
| 09:53:16 | 6 | Q.  And can you state with a high degree of certainty that you |
| 09:53:21 | 7 | never saw a document that Earl Hawkins was not identified? |
| 09:53:25 | 8 | A.  That's correct. |
| 09:53:28 | 9 | Q.  All right.  Your theory of the case was that Earl Hawkins |
| 09:53:36 | 10 | was one of the two shooter, correct? |
| 09:53:38 | 11 | A.  Correct. |
| 09:53:42 | 12 | Q.  How many witnesses did you and your partner put on the |
| 09:53:45 | 13 | stand that claimed to have seen Earl Hawkins come out of the |
| 09:53:49 | 14 | breezeway, shoot him and run away? |
| 09:53:50 | 15 | A.  At the trial? |
| 09:53:54 | 16 | Q.  Yes, sir. |
| 09:53:55 | 17 | A.  I don't remember.  I think there was a couple. |
| 09:53:56 | 18 | Q.  Randy, Gerald and Richard all said that they saw Earl |
| 09:54:01 | 19 | Hawkins do the shooting, correct? |
| 09:54:02 | 20 | A.  I'll take your word for it. |
| 09:54:05 | 21 | Q.  Those were the three guys. |
| 09:54:07 | 22 | A.  Okay. |
| 09:54:07 | 23 | Q.  But you do remember eyewitnesses came to the court and |
| 09:54:10 | 24 | pointed at Earl as the shooter, correct? |
| 09:54:13 | 25 | A.  Correct. |

***REALTIME UNEDITED TRANSCRIPT ONLY***

| | | |
|---|---|---|
| 09:54:13 | 1 | Q. Did you have faith that those were legitimate |
| 09:54:16 | 2 | identifications? |
| 09:54:17 | 3 | A. Yes. |
| 09:54:18 | 4 | Q. And did you place your faith in the police department to |
| 09:54:21 | 5 | make sure that those were properly procured? |
| 09:54:24 | 6 | A. Yes. |
| 09:54:24 | 7 | Q. Did any witness or do you have any memory of Earl Hawkins |
| 09:54:30 | 8 | having been a suspect in the case before Anthony Sumner in May |
| 09:54:34 | 9 | of '85 put him into the crime, do you remember that at all? |
| 09:54:37 | 10 | A. Earl Hawkins? |
| 09:54:42 | 11 | Q. Yeah. |
| 09:54:43 | 12 | A. I don't think so. I don't remember. |
| 09:54:48 | 13 | Q. Your understanding of the case was always that it was a |
| 09:54:51 | 14 | cold case until one day Anthony Sumner supposedly said, he got |
| 09:54:56 | 15 | caught and he said it was me -- it was Earl Hawkins, two guys |
| 09:55:00 | 16 | from Evanston and myself, right? |
| 09:55:02 | 17 | A. Correct. |
| 09:55:02 | 18 | Q. That's how you understood it? |
| 09:55:03 | 19 | A. Correct. |
| 09:55:03 | 20 | Q. You never knew or to this day didn't know that Earl |
| 09:55:07 | 21 | Hawkins was a suspect before Sumner said that, did you? |
| 09:55:09 | 22 | A. I don't believe so. |
| 09:55:12 | 23 | Q. Because that would have changed the dynamic of the case, |
| 09:55:16 | 24 | wouldn't it have? |
| 09:55:17 | 25 | A. Well, I don't know what you mean. |

| | | |
|---|---|---|
| 09:55:20 | 1 | Q.  In other words, if law enforcement was saying to Sumner we |
| 09:55:25 | 2 | know it was you and Earl, that would have been different than |
| 09:55:27 | 3 | the theory you presented in court, right? |
| 09:55:29 | 4 | A.  Yeah, I didn't know anything about Earl Hawkins. |
| 09:55:33 | 5 | Q.  That would have been different than the theory you all |
| 09:55:36 | 6 | presented, right? |
| 09:55:36 | 7 | A.  Correct. |
| 09:55:37 | 8 | Q.  All right.  Did you know that in 1984 -- well, I'll strike |
| 09:55:45 | 9 | that.  I'll come back. |
| 09:55:47 | 10 | Now, one part of the case, the reason why the |
| 09:55:54 | 11 | eyewitnesses were looking at Nate's photo was because Sumner |
| 09:55:59 | 12 | claimed that Nate confessed, right? |
| 09:56:01 | 13 | A.  Correct. |
| 09:56:02 | 14 | Q.  And do you remember from looking at the reports what |
| 09:56:04 | 15 | Sumner was claiming the alleged confession was? |
| 09:56:07 | 16 | A.  From Nathson Fields? |
| 09:56:10 | 17 | Q.  Right. |
| 09:56:13 | 18 | A.  He confronted Nathson Fields about it and Fields |
| 09:56:16 | 19 | acknowledged that it was a good exercise. |
| 09:56:17 | 20 | Q.  It was a good exercise, right? |
| 09:56:20 | 21 | A.  Correct. |
| 09:56:20 | 22 | Q.  That was the words that was in the supposed confession? |
| 09:56:23 | 23 | A.  That's what I recall. |
| 09:56:25 | 24 | Q.  All right.  And this confession supposedly was heard by |
| 09:56:29 | 25 | Anthony Sumner alone just the two of them, right? |

12/01/16 AM                ***REALTIME UNEDITED TRANSCRIPT ONLY***

18

| | | |
|---|---|---|
| 09:56:33 | 1 | A.  I believe you're right. |
| 09:56:34 | 2 | Q.  Take a look at the criminal trial, page 437 and see if |
| 09:56:38 | 3 | that confirms your memory. |
| 09:56:48 | 4 | MR. KULWIN:  Could we have a page, please? |
| 09:56:50 | 5 | THE COURT:  He just said 437. |
| 09:56:52 | 6 | MR. KULWIN:  Thank you, your Honor. |
| 09:57:01 | 7 | BY MR. LOEVY: |
| 09:57:02 | 8 | Q.  It's true, is it not, Mr. Wharrie, that the case you put |
| 09:57:05 | 9 | on was Mr. Sumner testified that he was alone with Fields, |
| 09:57:11 | 10 | just the two of them, Fields pulled him away in private to say |
| 09:57:16 | 11 | it was a good exercise? |
| 09:57:17 | 12 | A.  Correct. |
| 09:57:17 | 13 | Q.  And obviously Anthony Sumner had a motive to lie at the |
| 09:57:20 | 14 | time he was giving that testimony, right? |
| 09:57:22 | 15 | MR. KULWIN:  Objection, Judge. |
| 09:57:23 | 16 | THE COURT:  Overruled. |
| 09:57:25 | 17 | THE WITNESS:  Not that I know of. |
| 09:57:27 | 18 | BY MR. LOEVY: |
| 09:57:27 | 19 | Q.  Well, he had been arrested for murdering, among other |
| 09:57:30 | 20 | people, Joe White and Dee Eggars Vaughn, right? |
| 09:57:33 | 21 | A.  Correct. |
| 09:57:33 | 22 | Q.  And he was making deals to save himself, correct? |
| 09:57:35 | 23 | A.  There was initially there was not a deal with him. |
| 09:57:39 | 24 | Q.  All right.  But was he testifying without a deal? |
| 09:57:42 | 25 | A.  Initially, he was giving information without a deal |

                    ***REALTIME UNEDITED TRANSCRIPT ONLY***

| | |
|---|---|
| 09:57:48 | 1 | because we didn't know what he was involved in. |
| 09:57:51 | 2 | Q.  When he gave up his good friend Earl Hawkins and said my |
| 09:57:57 | 3 | friend Earl Hawkins committed a murder, was he being given |
| 09:58:01 | 4 | assurances that he would get benefits in return? |
| 09:58:04 | 5 | A.  When he was talking about Earl Hawkins? |
| 09:58:08 | 6 | Q.  Yeah.  Focusing on the time period when Anthony said, all |
| 09:58:12 | 7 | right, all right, police, my buddy Earl Hawkins committed the |
| 09:58:16 | 8 | murder with two guys from Evanston and my landlord? |
| 09:58:19 | 9 | MR. KULWIN:  Objection, argumentative. |
| 09:58:21 | 10 | THE COURT:  Overruled. |
| 09:58:22 | 11 | BY MR. LOEVY: |
| 09:58:22 | 12 | Q.  At that point in time, was it your understanding as the |
| 09:58:25 | 13 | prosecutor that Sumner was being promised benefits in exchange |
| 09:58:29 | 14 | for cooperating? |
| 09:58:29 | 15 | A.  I don't believe that there was still an agreement with |
| 09:58:33 | 16 | him.  We told him that we would give him consideration, so I |
| 09:58:38 | 17 | guess to a certain extent, you know, there was some agreement, |
| 09:58:41 | 18 | but I don't think there was anything set in terms of what his |
| 09:58:44 | 19 | agreement would be. |
| 09:58:44 | 20 | Q.  All right.  But as far as evidence as a prosecutor, he has |
| 09:58:49 | 21 | a motivation to lie under those circumstances, correct? |
| 09:58:52 | 22 | MR. KULWIN:  Objection, asked and answered. |
| 09:58:53 | 23 | THE COURT:  Overruled.  Please answer. |
| 09:58:57 | 24 | THE WITNESS:  I wouldn't call it a motivation to lie. |
| 09:59:01 | 25 | I would say that that's something that you take into |

09:59:03   1   consideration, though.

09:59:04   2   BY MR. LOEVY:

09:59:05   3   Q.  Sure.  And that's why you have to corroborate it with

09:59:08   4   things like eyewitnesses, right?

09:59:09   5   A.  Correct.

09:59:10   6   Q.  And there was something unusual about, though, the

09:59:15   7   circumstances by which Mr. Sumner's claim that Nate confessed

09:59:20   8   was documented, wasn't there?

09:59:23   9          MR. BURNS:  Objection, form of the question.

09:59:24   10          THE COURT:  Rephrase the question.

09:59:25   11   BY MR. LOEVY:

09:59:25   12   Q.  Do you remember anything unusual about the circumstances

09:59:28   13   under which Mr. Fields' supposed confession to Sumner was

09:59:33   14   documented?

09:59:34   15   A.  I don't remember.

09:59:36   16   Q.  All right.  Take a look at Defendant's Exhibit 70.  Is

09:59:40   17   this a document you remember?  This is the notes, the GPR

09:59:44   18   notes dated May 14th, 85, submitted May 14th, 86, of a

09:59:51   19   conversation Joe Murphy had with Anthony Sumner.

09:59:56   20          My first question is you are looking at it, do you

09:59:59   21   remember this?

09:59:59   22   A.  Yes.

09:59:59   23   Q.  All right.  Now, take a moment and refamiliarize yourself

10:00:04   24   with it.   Mr. Wharrie, I am not going to ask you questions

10:00:39   25   about the substance.  Can I ask you a question?

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 22 of 133 PageID #:31524
***REALTIME UNEDITED TRANSCRIPT ONLY***

21

| | | |
|---|---|---|
| 10:00:41 | 1 | A.  Sure. |
| 10:00:41 | 2 | Q.  Having refamiliarized yourself generally with what this |
| 10:00:44 | 3 | document is, do you have a recollection that there was an |
| 10:00:46 | 4 | issue about the memorialization of the confession that Nate |
| 10:00:55 | 5 | supposedly gave to Sumner? |
| 10:00:56 | 6 | A.  Not, no -- not then. |
| 10:00:59 | 7 | Q.  Wouldn't you have expected that there would be a police |
| 10:01:04 | 8 | report memorializing that Sumner was claiming Nate confessed? |
| 10:01:08 | 9 | A.  There could be. |
| 10:01:11 | 10 | Q.  All right.  When you dealt with the Chicago Police |
| 10:01:13 | 11 | Department a lot, right? |
| 10:01:14 | 12 | A.  Correct. |
| 10:01:15 | 13 | Q.  Was it your experience with the practices of the Chicago |
| 10:01:19 | 14 | Police Department that if someone was going to claim that |
| 10:01:21 | 15 | another man confessed to murder, that the police department |
| 10:01:23 | 16 | might not make a police report?  I'm saying the Chicago Police |
| 10:01:28 | 17 | Department. |
| 10:01:28 | 18 | A.  I would think they would. |
| 10:01:29 | 19 | Q.  Okay.  Was it the practice of the Chicago Police |
| 10:01:33 | 20 | Department in your experience to create police reports when |
| 10:01:37 | 21 | one man was claiming another man confessed to a murder in a |
| 10:01:40 | 22 | capital murder case? |
| 10:01:41 | 23 | MR. BURNS:  Objection, foundation, your Honor. |
| 10:01:43 | 24 | THE COURT:  Overruled, given the limitation to his |
| 10:01:49 | 25 | own experience when he was prosecuting cases. |

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 23 of 133 PageID #:31525
***REALTIME UNEDITED TRANSCRIPT ONLY***

22

| | | |
|---|---|---|
| 10:01:52 | 1 | THE WITNESS:  I'm sorry.  Could you repeat that? |
| 10:01:54 | 2 | BY MR. LOEVY: |
| 10:01:54 | 3 | Q.  You prosecuted a lot of cases, right? |
| 10:01:56 | 4 | A.  Correct. |
| 10:01:56 | 5 | Q.  And you had a lot of cases involving the Chicago Police |
| 10:01:58 | 6 | Department, correct? |
| 10:01:59 | 7 | A.  Correct. |
| 10:01:59 | 8 | Q.  Was it the practice of the Chicago Police Department |
| 10:02:03 | 9 | ordinarily to create police reports when one man was claiming |
| 10:02:07 | 10 | another man confessed in a capital murder case? |
| 10:02:10 | 11 | A.  Correct. |
| 10:02:10 | 12 | Q.  Okay.  Can you ever think of an exception in your entire |
| 10:02:13 | 13 | career where in a capital murder case based around a |
| 10:02:17 | 14 | confession, there was no police report? |
| 10:02:19 | 15 | A.  Well, this is a police report here. |
| 10:02:22 | 16 | Q.  Well, I'm talking about a supp report that is official, |
| 10:02:27 | 17 | signed, and submitted.  You understand the difference, right? |
| 10:02:29 | 18 | A.  I do. |
| 10:02:29 | 19 | Q.  This is a GPR.  This is a notes, correct? |
| 10:02:32 | 20 | A.  Correct. |
| 10:02:33 | 21 | Q.  So now let's get back to my question.  Have you ever in |
| 10:02:37 | 22 | your entire career prosecuted another case, a murder case with |
| 10:02:40 | 23 | a confession where there wasn't an official police report |
| 10:02:43 | 24 | documenting a confession? |
| 10:02:44 | 25 | MR. BURNS:  Objection, your Honor? |

| | | |
|---|---|---|
| 10:02:45 | 1 | THE COURT:  Overruled. |
| 10:02:46 | 2 | THE WITNESS:  I can't say that I recall ever. |
| 10:02:48 | 3 | BY MR. LOEVY: |
| 10:02:48 | 4 | Q.  That would be extraordinarily unusual, wouldn't it? |
| 10:02:52 | 5 | A.  Like I said, I don't think I ever had that before, yes. |
| 10:02:56 | 6 | Q.  That happened in this case, didn't it? |
| 10:02:58 | 7 | A.  Yes, if this is the only statement.  If this is the only |
| 10:03:05 | 8 | report that reflects that statement. |
| 10:03:07 | 9 | Q.  All right.  And this GPR notes, this does not get |
| 10:03:11 | 10 | submitted through records and date stamped, correct? |
| 10:03:14 | 11 | A.  I am not sure what you're saying. |
| 10:03:19 | 12 | Q.  Official police reports when they're created, they're |
| 10:03:23 | 13 | created by the end of tour of duty, correct? |
| 10:03:26 | 14 | A.  Yes. |
| 10:03:26 | 15 | Q.  And then they get submitted to records where they're date |
| 10:03:30 | 16 | stamped, correct? |
| 10:03:30 | 17 | A.  Correct. |
| 10:03:30 | 18 | Q.  Then they become part of the official file? |
| 10:03:33 | 19 | A.  That's correct, I follow you. |
| 10:03:34 | 20 | Q.  GPRs, not so much, right? |
| 10:03:36 | 21 | A.  Correct. |
| 10:03:37 | 22 | Q.  Did you have concerns that this GPR dated May 14th, 85, |
| 10:03:44 | 23 | but submitted May 14th, 86, was back dated after the fact? |
| 10:03:48 | 24 | A.  I don't think I noticed that. |
| 10:03:51 | 25 | Q.  It is true, is it not, that you cannot prosecute a murder |

12/01/16 AM    Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 25 of 133 PageID #:31527
***REALTIME UNEDITED TRANSCRIPT ONLY***

24

10:04:00  1  case without giving the other side some piece of paper

10:04:04  2  reflecting a confession if you're going to use a confession,

10:04:08  3  right?

10:04:08  4  A.  You would have to give them everything.

10:04:10  5  Q.  But let's say you wanted to have a murder trial and you

10:04:13  6  wanted to try Nate and say that Sumner said he confessed, you

10:04:16  7  couldn't put on that case without giving the defense some

10:04:19  8  piece of paper saying that he confessed, right?

10:04:21  9  A.  If it existed, yes.

10:04:23  10  Q.  Well, I mean, if the police department had done an

10:04:26  11  investigation and had supposedly taken a murder confession,

10:04:30  12  your job as the prosecutor would have been to give paper to

10:04:33  13  Nate saying somebody is claiming to have confessed, right?

10:04:36  14  A.  Correct.

10:04:36  15  Q.  So isn't it true that in April '86 in the lead up to

10:04:40  16  Nate's trial, you all realized that there was no paper

10:04:45  17  memorializing the supposed confession?

10:04:47  18  A.  I don't recall.  There was a gap where I was not there for

10:04:53  19  court every day.

10:04:54  20  Q.  Isn't it true that this document that I showed you,

10:04:57  21  Defendant's Exhibit 70, wasn't produced to Nate until April of

10:05:02  22  '86 shortly before the murder trial?

10:05:03  23  A.  Like I say, I don't know.  I was reassigned out to the

10:05:08  24  south suburbs, so I didn't have anything to do with the file

10:05:12  25  for a period of time.

12/01/16 AM   Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 26 of 133 PageID #:31528
***REALTIME UNEDITED TRANSCRIPT ONLY***

25

| | | |
|---|---|---|
| 10:05:13 | 1 | Q. All right. You did live the case for at least a year or |
| 10:05:16 | 2 | more, right? |
| 10:05:16 | 3 | A. Initially, I had the case. |
| 10:05:24 | 4 | Q. All right. That's what I'm getting at. |
| 10:05:26 | 5 | A. Yeah, initially, I had the case. That's correct. At some |
| 10:05:30 | 6 | point, I got transferred out of 26th and California to be the |
| 10:05:35 | 7 | supervisor out in the south suburbs, in Markham, I believe |
| 10:05:39 | 8 | that was the summer of '85. |
| 10:05:40 | 9 | Q. Weren't you one of the trial lawyers, though, at Nate's |
| 10:05:45 | 10 | trial? |
| 10:05:45 | 11 | A. I ended up coming back to try it. |
| 10:05:47 | 12 | Q. I see, so you had left and come back to try the case? |
| 10:05:50 | 13 | A. Right. |
| 10:05:50 | 14 | Q. Okay. In all of your interactions with this case, have |
| 10:05:54 | 15 | you ever heard of a man named Derrick Kees? |
| 10:05:57 | 16 | A. With this case? |
| 10:05:58 | 17 | Q. Yes. |
| 10:05:59 | 18 | A. Well, I know who Derrick Kees is. |
| 10:06:02 | 19 | Q. Right. But do you remember Derrick Kees being part of the |
| 10:06:05 | 20 | hit team? |
| 10:06:06 | 21 | A. On this case? |
| 10:06:08 | 22 | Q. Right. |
| 10:06:09 | 23 | A. No. |
| 10:06:09 | 24 | Q. In all of your interactions with Anthony Sumner, did you |
| 10:06:17 | 25 | interact with Anthony Sumner, by the way? |

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 27 of 133 PageID #:31529
***REALTIME UNEDITED TRANSCRIPT ONLY***

26

| | | |
|---|---|---|
| 10:06:19 | 1 | A.  Yes. |
| 10:06:19 | 2 | Q.  You debriefed him at some length, correct? |
| 10:06:21 | 3 | A.  I would interview him after he was debriefed by the police |
| 10:06:26 | 4 | for the purposes of putting him in like a grand jury or for |
| 10:06:30 | 5 | testimony. |
| 10:06:30 | 6 | Q.  You were that guy, right? |
| 10:06:31 | 7 | A.  That's right. |
| 10:06:32 | 8 | Q.  All right.  So you had extensive interactions with Anthony |
| 10:06:35 | 9 | Sumner? |
| 10:06:35 | 10 | A.  Early on, yes. |
| 10:06:36 | 11 | Q.  And leaving aside the timing of it, you gave -- you |
| 10:06:40 | 12 | interviewed him and got information from him, right? |
| 10:06:44 | 13 | A.  I pretty much had the information.  I would talk to him to |
| 10:06:50 | 14 | prepare him for testimony. |
| 10:06:51 | 15 | Q.  And then you put him on at the grand jury and then you put |
| 10:06:55 | 16 | him on at trial? |
| 10:06:55 | 17 | A.  I put Anthony Sumner in the grand jury a couple times and |
| 10:06:59 | 18 | I put him on during the course of this trial. |
| 10:07:01 | 19 | Q.  All right.  So you -- based on that foundation of having |
| 10:07:07 | 20 | talked to Anthony Sumner, did Anthony Sumner ever tell you |
| 10:07:10 | 21 | that Derrick Kees, Earl Hawkins, Harry Evans, and himself were |
| 10:07:15 | 22 | part of a hit team to murder Fuddy Smith? |
| 10:07:18 | 23 | A.  I never heard that. |
| 10:07:19 | 24 | Q.  That's something memories aside you would know if you |
| 10:07:22 | 25 | heard that, wouldn't you? |

12/01/16 AM | Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 28 of 133 PageID #:31530
***REALTIME UNEDITED TRANSCRIPT ONLY***

27

| | | |
|---|---|---|
| 10:07:23 | 1 | A.  Sure. |
| 10:07:23 | 2 | Q.  Because Anthony Sumner always said he had nothing to do |
| 10:07:25 | 3 | with this murder, right? |
| 10:07:27 | 4 | A.  This one here, yes, you're right. |
| 10:07:28 | 5 | Q.  And Harry Evans had nothing to do with this murder, right? |
| 10:07:32 | 6 | A.  That's correct. |
| 10:07:32 | 7 | Q.  And Derrick Kees, you never even heard of as related to |
| 10:07:37 | 8 | this murder, correct? |
| 10:07:37 | 9 | A.  Not to this one. |
| 10:07:38 | 10 | Q.  Do you know at one point Derrick Kees started claiming |
| 10:07:46 | 11 | that he was part of the hit team? |
| 10:07:48 | 12 | MR. KULWIN:  Judge, I am going to object. |
| 10:07:53 | 13 | Argumentative. |
| 10:07:54 | 14 | THE COURT:  Rephrase the question. |
| 10:07:54 | 15 | BY MR. LOEVY: |
| 10:07:55 | 16 | Q.  Whenever Derrick Kees said what he said, that was after |
| 10:07:57 | 17 | you were no longer involved, right? |
| 10:07:59 | 18 | A.  I left the state's attorney's office in 1987.  I don't |
| 10:08:03 | 19 | believe I had any contact with Derrick Kees. |
| 10:08:06 | 20 | Q.  All right.  Let's talk about the last area.  You have |
| 10:08:10 | 21 | gotten some familiarity in the course of our litigation with |
| 10:08:15 | 22 | the street file, correct? |
| 10:08:15 | 23 | A.  That's correct. |
| 10:08:16 | 24 | Q.  This is Plaintiff's Exhibit 1, your Honor. |
| 10:08:19 | 25 | THE COURT:  Okay. |

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 29 of 133 PageID #:31531
***REALTIME UNEDITED TRANSCRIPT ONLY***

28

10:08:19    1  BY MR. LOEVY:

10:08:25    2  Q.  Now, you have had an opportunity be to look through it and

10:08:28    3  review it, correct?

10:08:29    4  A.  Correct.

10:08:29    5  Q.  You are quite sure, are you not, that this information,

10:08:33    6  this file -- let me strike that.  This file was not available

10:08:38    7  to you back when you tried the capital murder case, correct?

10:08:41    8  A.  That's correct.

10:08:42    9  Q.  And the procedure was you would send a subpoena to the

10:08:47   10  police department for documents, right?

10:08:50   11  A.  I think initially it would just be a matter of just

10:08:57   12  ordering the police report.  I don't know that we would

10:09:01   13  subpoena it in the first instance.

10:09:03   14  Q.  All right.  But eventually -- first you'd ask for the

10:09:08   15  materials, right?

10:09:08   16  A.  Correct.

10:09:08   17  Q.  And then would you send a subpoena or you wouldn't?

10:09:11   18  A.  In this case, I believe I saw that there was a subpoena

10:09:15   19  issued at some point.

10:09:16   20  Q.  All right.  So the state's attorney's office issued a

10:09:19   21  subpoena compelling the police department to produce all its

10:09:21   22  material?

10:09:22   23  A.  Correct, it wasn't me, but somebody else did.  I saw that.

10:09:26   24  Q.  All right.  And the reason that you want all the material

10:09:29   25  is because you have a constitutional duty to turn over all

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 30 of 133 PageID #:31532
***REALTIME UNEDITED TRANSCRIPT ONLY***

29

| 10:09:33 | 1 | exculpatory information to the criminal defendant, correct? |
| 10:09:35 | 2 | A.  Absolutely. |
| 10:09:35 | 3 | Q.  And that's something you took very seriously? |
| 10:09:37 | 4 | A.  Yes. |
| 10:09:38 | 5 | Q.  And as a prosecutor, you had no intention of trying a case |
| 10:09:42 | 6 | where the rules weren't abided by, right? |
| 10:09:44 | 7 | A.  Correct. |
| 10:09:46 | 8 | Q.  But you couldn't physically go to the police department |
| 10:09:49 | 9 | and get the stuff and find it in the files, right? |
| 10:09:52 | 10 | A.  No, we had no access to it. |
| 10:09:54 | 11 | Q.  Who did you depend on to make sure you got access to all |
| 10:09:58 | 12 | the material, the police department, right? |
| 10:10:00 | 13 | A.  Yes. |
| 10:10:01 | 14 | Q.  All right.  At some point, Mr. Smeeton was raising an |
| 10:10:09 | 15 | objection that he wasn't getting the street file, wasn't he, |
| 10:10:13 | 16 | at the trial? |
| 10:10:14 | 17 | A.  I believe that came up, yes. |
| 10:10:20 | 18 | Q.  He was saying, look, all you've given me are eight pages |
| 10:10:26 | 19 | of benign GPRs from the date of the murder, I know there has |
| 10:10:29 | 20 | to be more.  He was telling the judge that, right? |
| 10:10:32 | 21 | A.  Correct. |
| 10:10:32 | 22 | Q.  So you then specifically requested to the police |
| 10:10:34 | 23 | department, we have to turn this over, give me any street |
| 10:10:37 | 24 | files that exist, correct? |
| 10:10:38 | 25 | A.  During the trial? |

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 31 of 133 PageID #:31533
***REALTIME UNEDITED TRANSCRIPT ONLY***

30

| | |
|---|---|
| 10:10:41 | 1 | Q. Well, when Mr. Smeeton was complaining that he wasn't |
| 10:10:43 | 2 | getting the investigative materials, it became your |
| 10:10:46 | 3 | responsibility to answer the court, right? |
| 10:10:48 | 4 | A. Yeah, and I believe that's when somebody from my office |
| 10:10:52 | 5 | subpoenaed the records and I think it came back the same way |
| 10:10:57 | 6 | with the eight pages you were talking about. |
| 10:10:59 | 7 | Q. But not Plaintiff's Exhibit 1, right? |
| 10:11:01 | 8 | A. That's correct. |
| 10:11:01 | 9 | Q. But when the defense attorney complained, the judge looked |
| 10:11:06 | 10 | at you and said give them the file, right? |
| 10:11:10 | 11 | A. We didn't hold that there was any other file. It was |
| 10:11:16 | 12 | already subpoenaed. That was what was returned. What we had |
| 10:11:22 | 13 | -- we had what the defense had. We gave the defense what we |
| 10:11:25 | 14 | had. |
| 10:11:25 | 15 | Q. I understand. I am not blaming you. The judge, though, |
| 10:11:28 | 16 | as the prosecutor, looked to you, right? |
| 10:11:30 | 17 | A. Well, he would have -- he probably asked us if there was |
| 10:11:35 | 18 | anything else. If I was even there at the time. Like I say, |
| 10:11:38 | 19 | during these preliminary -- these day-to-day dates leading up |
| 10:11:44 | 20 | to the trial, I was not in the courtroom. I came back to |
| 10:11:48 | 21 | actually do the trial, so a lot of these preliminaries I don't |
| 10:11:52 | 22 | believe I was even present. |
| 10:11:53 | 23 | Q. All right. Did you interact with Detective O'Callaghan? |
| 10:11:57 | 24 | A. At one point? |
| 10:12:00 | 25 | Q. At any point. |

12/01/16 AM   ***REALTIME UNEDITED TRANSCRIPT ONLY***

31

| 10:12:01 | 1 | A.  He was -- he was the detective I believe on this case. |
| 10:12:07 | 2 | Q.  And you put him on the stand to testify at the trial, |
| 10:12:09 | 3 | didn't you?  You were the attorney? |
| 10:12:11 | 4 | A.  I may have.  I don't remember.  Like I say, I haven't |
| 10:12:14 | 5 | reviewed a trial transcript. |
| 10:12:15 | 6 | Q.  All right.  And you also interacted with Sergeant Murphy, |
| 10:12:19 | 7 | correct? |
| 10:12:19 | 8 | A.  That's correct. |
| 10:12:19 | 9 | Q.  All right.  After Mr. Smeeton alleged that he wasn't |
| 10:12:24 | 10 | getting the investigative materials, did you ask the police |
| 10:12:27 | 11 | officers with whom you interacted, hey, are there more |
| 10:12:30 | 12 | materials? |
| 10:12:30 | 13 | A.  I don't remember.  I'm sure we would have. |
| 10:12:34 | 14 | Q.  I mean, you would have had to have, right? |
| 10:12:36 | 15 | A.  If there was a request, if there's anything more, I'm sure |
| 10:12:40 | 16 | we would have done that. |
| 10:12:41 | 17 | Q.  That would have been the protocol to talk to the police |
| 10:12:43 | 18 | officers and say is there anything more, right? |
| 10:12:45 | 19 | A.  Correct. |
| 10:12:46 | 20 | A.  All right.  You didn't get -- although you don't remember |
| 10:12:49 | 21 | the conversations, you do know you didn't get anything more, |
| 10:12:52 | 22 | correct. |
| 10:12:52 | 23 | A.  Did not get anything more. |
| 10:12:53 | 24 | Q.  And you've now had a chance to review the material and |
| 10:12:58 | 25 | it's correct? |

***REALTIME UNEDITED TRANSCRIPT ONLY***

| | | |
|---|---|---|
| 10:12:59 | 1 | A.  Yes. |
| 10:13:00 | 2 | Q.  It being Plaintiff's Exhibit 1? |
| 10:13:02 | 3 | A.  Well, I think so.  I mean, I have been given what I |
| 10:13:05 | 4 | believe to be that. |
| 10:13:06 | 5 | Q.  Yeah.  In other words, I am not going to go through it |
| 10:13:10 | 6 | now, the jury has seen it, but you have no doubt that if this |
| 10:13:13 | 7 | had been made available to you, you would have turned it over |
| 10:13:16 | 8 | to Mr. Fields, right? |
| 10:13:17 | 9 | A.  Absolutely. |
| 10:13:17 | 10 | Q.  Because it is potentially exculpatory, correct? |
| 10:13:19 | 11 | A.  Potentially. |
| 10:13:20 | 12 | Q.  And it would have been your responsibility to turn it over |
| 10:13:23 | 13 | to Mr. Fields? |
| 10:13:24 | 14 | A.  Correct. |
| 10:13:24 | 15 | Q.  All right.  There were? |
| 10:13:38 | 16 | MR. LOEVY:  Your Honor, may I have a quick sidebar to |
| 10:13:41 | 17 | show you? |
| 10:13:50 | 18 | (The following proceedings were had at sidebar outside the |
| 10:13:54 | 19 | hearing of the jury:) |
| 10:13:54 | 20 | MR. LOEVY:  I want to be on the careful side.  This |
| 10:13:56 | 21 | is testimony that I'd like to read to him. |
| 10:13:59 | 22 | THE COURT:  This is from the trial? |
| 10:14:00 | 23 | MR. LOEVY:  Yes. |
| 10:14:01 | 24 | THE COURT:  The '86 trial. |
| 10:14:02 | 25 | MR. LOEVY:  The reason I brought it over is because |

***REALTIME UNEDITED TRANSCRIPT ONLY***

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 34 of 133 PageID #:31536
***REALTIME UNEDITED TRANSCRIPT ONLY***

33

| | | |
|---|---|---|
| 10:14:04 | 1 | it wasn't in front of him. |
| 10:14:05 | 2 | THE COURT:  It's not testimony. |
| 10:14:06 | 3 | MR. LOEVY:  Exactly. |
| 10:14:07 | 4 | THE COURT:  It's a discussion between the lawyers. |
| 10:14:09 | 5 | It starts right here? |
| 10:14:10 | 6 | MR. LOEVY:  Yes. |
| 10:14:10 | 7 | THE COURT:  Do you want to look over my shoulder? |
| 10:14:17 | 8 | It's a question about Derrick Benson? |
| 10:14:20 | 9 | MR. LOEVY:  Right.  And this is the -- |
| 10:14:22 | 10 | THE COURT:  I am looking at pages 157 and 158.  Go |
| 10:14:25 | 11 | ahead.  Tell me what you are going to tell me. |
| 10:14:27 | 12 | MR. LOEVY:  The gist is that the judge says, I don't |
| 10:14:28 | 13 | care what you think, I just arrested your 11-year-old son |
| 10:14:31 | 14 | because he wasn't here, and what I'd like to suggest is |
| 10:14:34 | 15 | there's alternate reasons why people don't want to participate |
| 10:14:38 | 16 | in the court process other than threatening witnesses. |
| 10:14:44 | 17 | THE COURT:  Let me process that for a second.  Now |
| 10:14:48 | 18 | let me read it.  Okay. |
| 10:15:17 | 19 | MR. KULWIN:  Judge, the only admissibility of the |
| 10:15:20 | 20 | trial transcript is materiality.  Other than that, it's pure |
| 10:15:23 | 21 | hearsay.  All of these statements are pure hearsay.  They are |
| 10:15:28 | 22 | not admissible.  And he's trying to draw an argumentative |
| 10:15:32 | 23 | inference from it that doesn't exist.  He doesn't know what's |
| 10:15:35 | 24 | going on in the mind of the mother, he doesn't know if she's |
| 10:15:39 | 25 | been threatened or not threatened.  He doesn't know anything |

| | | |
|---|---|---|
| 10:15:44 | 1 | any of that. |
| 10:15:44 | 2 | THE COURT:  I don't think it's comparable enough. |
| 10:15:46 | 3 | I'm excluding it. |
| 10:15:49 | 4 | (The following proceedings were had in open court in the |
| 10:15:49 | 5 | presence and hearing of the jury:) |
| 10:15:49 | 6 | THE COURT:  Okay.  You can proceed. |
| 10:15:51 | 7 | MR. LOEVY:  I have no further questions, your Honor. |
| 10:15:57 | 8 | THE COURT:  Mr. Burns. |
| 10:15:59 | 9 | MR. BURNS:  Thank you, your Honor. |
| 10:16:09 | 10 | - - - |
| 10:16:09 | 11 | LAWRENCE WHARRIE, CROSS-EXAMINATION |
| 10:16:09 | 12 | BY MR. BURNS: |
| 10:16:28 | 13 | Q.  Good morning, Mr. Wharrie. |
| 10:16:29 | 14 | A.  Good morning. |
| 10:16:30 | 15 | Q.  So it's clear for us, would you tell us how long or when |
| 10:16:35 | 16 | you first became an assistant state's attorney and then tell |
| 10:16:38 | 17 | me when you left. |
| 10:16:40 | 18 | A.  I started in the state's attorney's office in 1978 and I |
| 10:16:45 | 19 | left in August 1st, 1987. |
| 10:16:50 | 20 | Q.  Now, in May of 1985, what was your assignment at that |
| 10:16:57 | 21 | time? |
| 10:16:57 | 22 | A.  At that time, I was in the gang prosecution unit of the |
| 10:17:02 | 23 | state's attorney's office at 26th and California. |
| 10:17:04 | 24 | Q.  And who was the chief of the unit? |
| 10:17:08 | 25 | A.  Earn /AOE /TKAO*EB. |

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 36 of 133 PageID #:31538
***REALTIME UNEDITED TRANSCRIPT ONLY***

35

| 10:17:10 | 1 | Q.  Now, you said just so we can understand what happened, you |
| 10:17:15 | 2 | were involved, you told me, or you told the ladies and |
| 10:17:18 | 3 | gentlemen of the jury early on in this case, the Smith/Hickman |
| 10:17:21 | 4 | prosecution; is that correct? |
| 10:17:23 | 5 | A.  That's correct. |
| 10:17:23 | 6 | Q.  And you said at some point your position as a member of |
| 10:17:27 | 7 | the gang crimes unit at the state's attorney's office changed, |
| 10:17:31 | 8 | am I also correct? |
| 10:17:32 | 9 | A.  That's correct. |
| 10:17:33 | 10 | Q.  Where did you go?  Were you still in the office? |
| 10:17:36 | 11 | A.  I was still in the office.  I received a promotion.  I was |
| 10:17:40 | 12 | made the supervisor of the sixth municipal district out in |
| 10:17:45 | 13 | Markham and that was in I want to say approximately August of |
| 10:17:50 | 14 | 1985, so shortly after this started, I went to Markham. |
| 10:17:56 | 15 | Q.  Now, at the time the case was tried in 1986, that was June |
| 10:18:01 | 16 | of 1986; am I correct? |
| 10:18:02 | 17 | A.  Correct. |
| 10:18:03 | 18 | Q.  What was your position within the state's attorney's |
| 10:18:06 | 19 | office then? |
| 10:18:07 | 20 | A.  I was still in Markham, I believe. |
| 10:18:10 | 21 | Q.  And what does the responsibility entail being the |
| 10:18:14 | 22 | supervisor of the Markham state's attorney's office? |
| 10:18:16 | 23 | A.  There's approximately 30 cities and villages on the south |
| 10:18:23 | 24 | side that makeup the sixth municipal district, any and all |
| 10:18:27 | 25 | cases misdemeanors and felonies would go to the Markham |

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 37 of 133 PageID #:31539
***REALTIME UNEDITED TRANSCRIPT ONLY***

36

| | | |
|---|---|---|
| 10:18:34 | 1 | courthouse.  I supervised lawyers who were in about seven or |
| 10:18:38 | 2 | eight courtrooms from minor traffic and misdemeanors through |
| 10:18:42 | 3 | three felony courtrooms trying serious felonies. |
| 10:18:46 | 4 | Q.  So from -- again, what was the start, August of 1985? |
| 10:18:51 | 5 | A.  I believe it was August of '85 when I transferred to |
| 10:18:55 | 6 | Markham. |
| 10:18:55 | 7 | Q.  All right.  And from that time until the time that this |
| 10:18:59 | 8 | case started, did you remain in the position as the chief of |
| 10:19:03 | 9 | the state's attorney's office in the sixth municipal district, |
| 10:19:07 | 10 | Markham, Illinois? |
| 10:19:08 | 11 | A.  Correct. |
| 10:19:08 | 12 | Q.  Now, let me take you back in time, if I may. |
| 10:19:11 | 13 |       You said that in June of 1985, that you were assigned |
| 10:19:15 | 14 | to the gang crimes unit; am I correct? |
| 10:19:18 | 15 | A.  Correct. |
| 10:19:18 | 16 | Q.  And in May of 1985, did you have occasion to be assigned |
| 10:19:24 | 17 | by Mr. /TKAO*EB, am I saying that name correctly? |
| 10:19:28 | 18 | A.  Correct. |
| 10:19:28 | 19 | Q.  So go to east Cleveland, Ohio? |
| 10:19:32 | 20 | A.  That's correct. |
| 10:19:33 | 21 | Q.  All right.  And what was the purpose in why you were sent |
| 10:19:37 | 22 | to east Cleveland, Ohio? |
| 10:19:40 | 23 | A.  Sergeant Brannigan was in east Cleveland, Ohio.  They had |
| 10:19:46 | 24 | five people in custody believed to be El Rukns, one of whom |
| 10:19:52 | 25 | was James walker.  He had a pending arrest warrant. |

***REALTIME UNEDITED TRANSCRIPT ONLY***

| | | |
|---|---|---|
| 10:19:59 | 1 | Q. Generally, then, just describe what your role was. |
| 10:20:03 | 2 | A. I was asked if I would go out there and see if -- to see |
| 10:20:11 | 3 | if there would be any statements taken from any of the five |
| 10:20:13 | 4 | people that were there. |
| 10:20:14 | 5 | Q. All right. Did you learn or come to learn that one of the |
| 10:20:17 | 6 | people that was there was an Earl Hawkins? |
| 10:20:20 | 7 | A. Correct. |
| 10:20:21 | 8 | Q. Was Earl Hawkins then detained or arrested or was he |
| 10:20:25 | 9 | ultimately released from east Cleveland, Ohio police |
| 10:20:29 | 10 | department? |
| 10:20:29 | 11 | A. He was released. |
| 10:20:30 | 12 | Q. And what about an Anthony Sumner, did you come to learn |
| 10:20:35 | 13 | that he was in at least detained by the east Cleveland police |
| 10:20:40 | 14 | department? |
| 10:20:40 | 15 | A. Correct. |
| 10:20:41 | 16 | Q. And that was following some type of raid in a home out in |
| 10:20:44 | 17 | east Cleveland, Ohio? |
| 10:20:45 | 18 | A. That's correct. |
| 10:20:45 | 19 | Q. Was Anthony Sumner held on an arrest warrant? |
| 10:20:51 | 20 | A. No. |
| 10:20:52 | 21 | Q. Were there any charges against Anthony Sumner? |
| 10:20:55 | 22 | A. No. |
| 10:20:56 | 23 | Q. Was Anthony Sumner free to leave at any time that he |
| 10:21:00 | 24 | wished? |
| 10:21:00 | 25 | A. In east Cleveland? |

| | | |
|---|---|---|
| 10:21:02 | 1 | Q. Yes, sir. |
| 10:21:02 | 2 | A. I don't know if he was free to leave when they were |
| 10:21:08 | 3 | talking to him. I don't know if he was free to leave, but he |
| 10:21:11 | 4 | wasn't under arrest. |
| 10:21:12 | 5 | Q. He began to cooperate at that time, didn't he? |
| 10:21:16 | 6 | A. Correct. |
| 10:21:16 | 7 | Q. He was under no obligation at that time to cooperate is |
| 10:21:22 | 8 | that true? |
| 10:21:23 | 9 | A. Correct. |
| 10:21:23 | 10 | Q. In fact, the information that he provided to you was |
| 10:21:26 | 11 | unknown to at least the gang crimes unit or at least the |
| 10:21:32 | 12 | state's attorney's office; is that correct? |
| 10:21:33 | 13 | A. Correct. |
| 10:21:33 | 14 | Q. At that time once he agreed to cooperate, May 10th, 1985 |
| 10:21:41 | 15 | in east Ohio, he said he wished to cooperate is that true? |
| 10:21:45 | 16 | A. At some point, yes. |
| 10:21:47 | 17 | Q. At some point that was over the time while still in east |
| 10:21:50 | 18 | Cleveland, Ohio; am I correct? |
| 10:21:52 | 19 | A. Correct. |
| 10:21:52 | 20 | Q. Did he turn to Chicago to your knowledge? |
| 10:21:57 | 21 | A. Yes. |
| 10:21:57 | 22 | Q. I am talking about Anthony Sumner? |
| 10:21:58 | 23 | A. Yes. |
| 10:21:59 | 24 | Q. And did he return to Chicago and then come to the state's |
| 10:22:05 | 25 | attorney's office? |

| | | |
|---|---|---|
| 10:22:05 | 1 | A.  Yes, the following Monday, which would have been May 13th, |
| 10:22:12 | 2 | he was brought to the Cook County state's attorney's office. |
| 10:22:13 | 3 | Q.  And, again, this is after he indicated that he wished to |
| 10:22:18 | 4 | cooperate; is that correct? |
| 10:22:20 | 5 | A.  He was cooperating regarding the one case of James walker. |
| 10:22:27 | 6 | Q.  And did you come to learn that he actually was providing |
| 10:22:31 | 7 | additional information? |
| 10:22:33 | 8 | A.  Sometime after he was brought back, he started providing |
| 10:22:40 | 9 | information on more cases. |
| 10:22:42 | 10 | Q.  Now, were you involved in this matter involving Anthony |
| 10:22:47 | 11 | Sumner and the information he was providing? |
| 10:22:49 | 12 | A.  I was involved. |
| 10:22:52 | 13 | Q.  Was this a task force between the Chicago Police |
| 10:22:58 | 14 | Department, the Cook County state's attorney's office, and the |
| 10:23:01 | 15 | United States attorney office? |
| 10:23:03 | 16 | A.  There were people. |
| 10:23:05 | 17 | Q.  I'm sorry? |
| 10:23:06 | 18 | A.  Yeah, there were people assigned from the Chicago Police |
| 10:23:09 | 19 | Department, yes. |
| 10:23:09 | 20 | Q.  All right.  Were you present when Anthony Sumner was |
| 10:23:15 | 21 | brought do the Cook County state's attorney's office on May |
| 10:23:20 | 22 | 13th, 1985? |
| 10:23:21 | 23 | A.  Yes. |
| 10:23:21 | 24 | Q.  Were you present then the following day when he was also |
| 10:23:27 | 25 | present, again Anthony Sumner at the Cook County state's |

12/01/16 AM    Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 41 of 133 PageID #:31543
***REALTIME UNEDITED TRANSCRIPT ONLY***

40

| | | |
|---|---|---|
| 10:23:31 | 1 | attorney's office on May 14th, 1985? |
| 10:23:32 | 2 | A.  Yes. |
| 10:23:33 | 3 | Q.  And at that time was he being debriefed by Sergeant Murphy |
| 10:23:38 | 4 | of the Chicago Police Department? |
| 10:23:40 | 5 | A.  Yes. |
| 10:23:40 | 6 | Q.  And Sergeant Murphy was conducting interviews of him, to |
| 10:23:44 | 7 | your knowledge, about his knowledge of the El Rukns is that |
| 10:23:47 | 8 | true? |
| 10:23:47 | 9 | A.  Correct. |
| 10:23:48 | 10 | Q.  Were you present at times during the course of that day in |
| 10:23:53 | 11 | which these interviews were taking place? |
| 10:23:55 | 12 | A.  I would talk to him from time to time. |
| 10:23:58 | 13 | Q.  Talk to Anthony Sumner? |
| 10:24:00 | 14 | A.  Correct. |
| 10:24:00 | 15 | Q.  Was Mr. /TKAO*EB present during this time? |
| 10:24:05 | 16 | A.  He would have been -- he would have been on the floor.  I |
| 10:24:09 | 17 | don't know if he participated in any of those or not.  I don't |
| 10:24:15 | 18 | remember. |
| 10:24:15 | 19 | Q.  I'm not suggesting he conducted the interviews, but was he |
| 10:24:18 | 20 | present for at least portions of those interviews? |
| 10:24:21 | 21 | A.  Well, he would have been present on the floor.  He would |
| 10:24:24 | 22 | have known what was going on at the time with these |
| 10:24:28 | 23 | interviews. |
| 10:24:29 | 24 | Q.  All right.  And there was also, if I recall, isn't it |
| 10:24:32 | 25 | correct there was an attorney from the United States attorneys |

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 42 of 133 PageID #:31544
***REALTIME UNEDITED TRANSCRIPT ONLY***

41

| 10:24:39 | 1 | office during the time of these interviews; isn't that |
| 10:24:39 | 2 | correct? |
| 10:24:41 | 3 | A.  One of the assistant U.S. attorneys came over at some |
| 10:24:45 | 4 | point during that week, correct. |
| 10:24:46 | 5 | Q.  And was that on May the 14th, 1985? |
| 10:24:49 | 6 | A.  It could have been. |
| 10:24:52 | 7 | Q.  May 14th, 1985, was the only day that Joseph Murphy |
| 10:24:58 | 8 | interviewed or debriefed, as it's been referred to, Anthony |
| 10:25:03 | 9 | Sumner; isn't that correct? |
| 10:25:05 | 10 | A.  I believe so.  I think he was only interviewed one or two |
| 10:25:09 | 11 | days at 26th Street. |
| 10:25:12 | 12 | Q.  Now, you were asked testimony about your involvement in |
| 10:25:17 | 13 | the prosecution.  You came back to prosecute the case against |
| 10:25:22 | 14 | Nathson Fields and Earl Hawkins; is that correct? |
| 10:25:26 | 15 | A.  That's correct. |
| 10:25:26 | 16 | Q.  And the theory of the prosecution was this was a gang |
| 10:25:32 | 17 | retaliation murders regarding or involving narcotics |
| 10:25:37 | 18 | trafficking; is that true? |
| 10:25:38 | 19 | A.  That's correct. |
| 10:25:38 | 20 | Q.  So at this point in time, there are some questions |
| 10:25:46 | 21 | relative to information that was available to you.  Do you |
| 10:25:51 | 22 | recall that by counsel a short time ago? |
| 10:25:53 | 23 | A.  Yes. |
| 10:25:53 | 24 | Q.  And you told the ladies and gentlemen of the jury that you |
| 10:25:57 | 25 | were responsible for preparing Anthony Sumner to give |

| | | |
|---|---|---|
| 10:26:01 | 1 | testimony at a trial? |
| 10:26:03 | 2 | A.  Correct. |
| 10:26:03 | 3 | Q.  You said your partner was that Randy Rueckert? |
| 10:26:08 | 4 | A.  Correct. |
| 10:26:08 | 5 | Q.  He was responsible, as I understood your testimony, for |
| 10:26:11 | 6 | preparing the witnesses, including Mr. Langston; is that |
| 10:26:16 | 7 | correct? |
| 10:26:16 | 8 | A.  Correct. |
| 10:26:17 | 9 | Q.  There was a question asked of you as to -- |
| 10:26:21 | 10 | MR. BURNS:  May I see Defendant's Exhibit 70, your |
| 10:26:23 | 11 | Honor, that was shown earlier? |
| 10:26:30 | 12 | THE WITNESS:  I have some up here. |
| 10:26:34 | 13 | MR. BURNS:  I think you are going to see things work |
| 10:26:36 | 14 | on the computer screen or the screen before you. |
| 10:26:41 | 15 | BY MR. BURNS: |
| 10:26:42 | 16 | Q.  Do you see this, sir? |
| 10:26:43 | 17 | A.  Yes. |
| 10:26:43 | 18 | Q.  Tell the ladies and gentlemen of the jury what that is? |
| 10:26:45 | 19 | A.  That's what they refer to as a general progress report. |
| 10:26:50 | 20 | Q.  And does it say general progress report, I'm looking to |
| 10:26:54 | 21 | the upper left-hand corner, what does that say specifically |
| 10:26:59 | 22 | there? |
| 10:26:59 | 23 | A.  General progress report. |
| 10:27:04 | 24 | Q.  Beneath that? |
| 10:27:05 | 25 | A.  Detective division/Chicago police. |

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 44 of 133 PageID #:31546
***REALTIME UNEDITED TRANSCRIPT ONLY***

43

| | |
|---|---|
| 10:27:08 | 1 |
| 10:27:18 | 2 |
| 10:27:18 | 3 |
| 10:27:19 | 4 |
| 10:27:24 | 5 |
| 10:27:28 | 6 |
| 10:27:32 | 7 |
| 10:27:33 | 8 |
| 10:27:38 | 9 |
| 10:27:43 | 10 |
| 10:27:47 | 11 |
| 10:27:48 | 12 |
| 10:27:49 | 13 |
| 10:27:53 | 14 |
| 10:27:57 | 15 |
| 10:28:06 | 16 |
| 10:28:11 | 17 |
| 10:28:13 | 18 |
| 10:28:13 | 19 |
| 10:28:17 | 20 |
| 10:28:23 | 21 |
| 10:28:31 | 22 |
| 10:28:32 | 23 |
| 10:28:33 | 24 |
| 10:28:40 | 25 |

1  Q.  And if you continue below, offense classification, do you

2  see that?

3  A.  Correct.

4  Q.  This is a report that is generated by a member of the

5  Chicago Police Department to document the interview that he

6  had of Anthony Sumner on May the 14th, 1985; am I correct?

7  A.  Correct.

8  Q.  And this is the report that you had and was tendered as

9  part of the discovery to the defense team, including Mr.

10  Fields' attorneys, for the 1986 trial before Judge Maloney

11  isn't that correct?

12  A.  Correct.

13  Q.  Now, in regard to that -- I am going to keep that up there

14  for a moment.  If we could look very briefly at the lower

15  portion.  There is information contained in there and I know

16  you've looked at that earlier, but would you take a look at

17  that again?

18  A.  Correct.

19  Q.  That's highlighted.  This is information Mr. Sumner was

20  providing about a conversation that he had previous to May

21  14th, 1985, with Nathson Fields about Mr. Fields' involvement

22  in the Smith/Hickman murders; is that correct?

23  A.  That's correct.

24  Q.  And there is a reference in there in the conversation, and

25  if you'd read that for us.  It begins with, he told.

| 10:28:46 | 1 | A. He told Fields that he. |
| 10:28:48 | 2 | Q. He being, excuse me, he being whom?  Who is the he? |
| 10:28:52 | 3 | A. That would be Fields. |
| 10:28:55 | 4 | Q. Is that Sumner? |
| 10:28:56 | 5 | A. Sumner, I'm sorry.  The he is Sumner. |
| 10:28:59 | 6 | Q. All right. |
| 10:29:00 | 7 | A. He told Fields that he had heard about the Fuddy shooting. |
| 10:29:05 | 8 | Q. And continue. |
| 10:29:06 | 9 | A. Fields at first smiled and then said, yeah, it was a good |
| 10:29:11 | 10 | exercise. |
| 10:29:12 | 11 | Q. And this is the report in which the information from |
| 10:29:17 | 12 | Anthony Sumner about this Smith/Hickman murders was documented |
| 10:29:22 | 13 | is that true? |
| 10:29:23 | 14 | A. Yes, that's correct. |
| 10:29:24 | 15 | Q. You were present, you told us, at times or throughout the |
| 10:29:33 | 16 | time that Anthony Sumner was present at the state's attorney's |
| 10:29:36 | 17 | office on May 14th, 1985, correct? |
| 10:29:38 | 18 | A. Say that again. |
| 10:29:40 | 19 | Q. Were you present during Mr. Sumner's interviews at the |
| 10:29:44 | 20 | state's attorney's office on May 14th, 1985? |
| 10:29:48 | 21 | A. Yes. |
| 10:29:48 | 22 | Q. The comment that you have just read, and I want referenced |
| 10:29:55 | 23 | again, yeah, it was a good exercise, did you hear that |
| 10:29:58 | 24 | statement made by Mr. Sumner on May 14th, 1985, when you were |
| 10:30:04 | 25 | present during his interview at the state's attorney's office? |

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 46 of 133 PageID #:31548
***REALTIME UNEDITED TRANSCRIPT ONLY***

45

| | | |
|---|---|---|
| 10:30:08 | 1 | A.  Yes, I believe so. |
| 10:30:10 | 2 | Q.  The prosecution theory was this was a gang retaliation |
| 10:30:28 | 3 | murders? |
| 10:30:29 | 4 | A.  Correct. |
| 10:30:29 | 5 | Q.  The hit team that was involved as part of your theory of |
| 10:30:36 | 6 | prosecution involved four people; am I correct? |
| 10:30:39 | 7 | A.  Correct. |
| 10:30:39 | 8 | Q.  Two of those people were George Carter and Nathson Fields; |
| 10:30:45 | 9 | is that correct? |
| 10:30:45 | 10 | A.  Correct. |
| 10:30:45 | 11 | Q.  And those were the two shooters who shoot and killed |
| 10:30:53 | 12 | Jerome Fuddy Smith and Talman Hickman is that also correct? |
| 10:30:55 | 13 | MR. LOEVY:  Objection to the foundation, your Honor. |
| 10:31:05 | 14 | Talking about the theory of the case. |
| 10:31:06 | 15 | THE COURT:  Rephrase the question.  He wasn't |
| 10:31:08 | 16 | present. |
| 10:31:10 | 17 | BY MR. BURNS: |
| 10:31:10 | 18 | Q.  On your theory of the case and the information that had |
| 10:31:13 | 19 | been gathered, was it the state's prosecution theory the two |
| 10:31:20 | 20 | shooters involved in the murder of Smith and Hickman were |
| 10:31:25 | 21 | Nathson Fields and George Carter? |
| 10:31:29 | 22 | A.  No. |
| 10:31:29 | 23 | Q.  Okay.  What was the theory? |
| 10:31:31 | 24 | A.  The theory was that it was Nathson Fields and Earl |
| 10:31:37 | 25 | Hawkins. |

12/01/16 AM                ***REALTIME UNEDITED TRANSCRIPT ONLY***

46

| | | |
|---|---|---|
| 10:31:37 | 1 | Q.  And that was based on the information that you had |
| 10:31:41 | 2 | received to that point in time; is that correct? |
| 10:31:44 | 3 | A.  That's correct. |
| 10:31:45 | 4 | Q.  And there were two other individuals who were involved. |
| 10:31:50 | 5 | What were those person's names who were involved under the |
| 10:31:53 | 6 | theory of prosecution the state advanced? |
| 10:31:55 | 7 | A.  Henry Andrews and George Carter. |
| 10:31:58 | 8 | Q.  Thank you. |
| 10:31:59 | 9 | And before we leave -- before we leave Exhibit No. |
| 10:32:14 | 10 | 70, if you could just take one more look at that, Mr. Wharrie, |
| 10:32:19 | 11 | was that report ever challenged by the defense during the |
| 10:32:23 | 12 | course of the trial in 1986? |
| 10:32:29 | 13 | MR. LOEVY:  Objection to challenge, your Honor. |
| 10:32:30 | 14 | THE COURT:  Sustained.  It's vague. |
| 10:32:35 | 15 | BY MR. BURNS: |
| 10:32:36 | 16 | Q.  Let me be more specific, was the report itself, Exhibit |
| 10:32:38 | 17 | No. 70, was it ever questioned as to when it was prepared |
| 10:32:41 | 18 | during the trial in 1986? |
| 10:32:43 | 19 | A.  Not that I recall. |
| 10:32:44 | 20 | Q.  Thank you. |
| 10:32:48 | 21 | Now, there was a question that was posed to you |
| 10:32:56 | 22 | relative to a lineup and a lineup involving a Mr. Earl |
| 10:33:07 | 23 | Hawkins.  Do you remember that questioning a short time ago? |
| 10:33:12 | 24 | A.  Correct. |
| 10:33:12 | 25 | Q.  And I would like, if I may, to ask that Exhibit 57, let me |

***REALTIME UNEDITED TRANSCRIPT ONLY***

12/01/16 AM ***REALTIME UNEDITED TRANSCRIPT ONLY***

47

| | | |
|---|---|---|
| 10:33:24 | 1 | be specific as to the date, pages 19 and 20. |
| 10:33:41 | 2 | Are you able to see those? |
| 10:33:42 | 3 | A.  I can see them, about you they are not very legible. |
| 10:33:46 | 4 | Q.  Take a minute and draw it near. |
| 10:33:54 | 5 | THE COURT:  Would it be easier if he had a hard copy |
| 10:33:57 | 6 | to look at maybe? |
| 10:33:59 | 7 | MR. BURNS:  I can approach, if I may, your Honor. |
| 10:34:01 | 8 | THE COURT:  Part of is just bad xeroxing. |
| 10:34:16 | 9 | MR. BURNS:  May I approach, Judge? |
| 10:34:18 | 10 | THE COURT:  Sure. |
| 10:34:19 | 11 | BY MR. BURNS: |
| 10:34:25 | 12 | Q.  This is the same report. |
| 10:34:53 | 13 | A.  Okay. |
| 10:34:53 | 14 | Q.  Mr. Wharrie, am I correct that this two-page report that |
| 10:35:03 | 15 | you have just reviewed, Defendant's Exhibit 57, pages 19 and |
| 10:35:08 | 16 | 20, is a supplemental or supplementary police report prepared |
| 10:35:18 | 17 | by members of the Chicago Police Department? |
| 10:35:19 | 18 | A.  Correct. |
| 10:35:19 | 19 | Q.  And is it in fact a report that references the lineup that |
| 10:35:26 | 20 | was conducted involving Earl Hawkins; is that correct? |
| 10:35:26 | 21 | A.  Correct. |
| 10:35:27 | 22 | Q.  It also referenced the fact that Earl Hawkins was |
| 10:35:30 | 23 | identified in that lineup on May 18th, 1985; is that correct? |
| 10:35:34 | 24 | A.  Correct. |
| 10:35:35 | 25 | Q.  Bear with me just for a moment, your Honor. |

***REALTIME UNEDITED TRANSCRIPT ONLY***

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 49 of 133 PageID #:31551
***REALTIME UNEDITED TRANSCRIPT ONLY***

48

| | | |
|---|---|---|
| 10:35:40 | 1 | THE COURT: Okay. |
| 10:35:42 | 2 | (Brief pause.) |
| 10:35:54 | 3 | BY MR. BURNS: |
| 10:35:56 | 4 | Q. I would like to direct your attention now, if I may, you |
| 10:36:04 | 5 | said that you presented Anthony Sumner at trial before Judge |
| 10:36:10 | 6 | Maloney in June of 1986; am I correct? |
| 10:36:13 | 7 | A. Correct. |
| 10:36:14 | 8 | Q. And was it just before the trial started that the |
| 10:36:19 | 9 | defendants waived their right to a jury trial and elected to |
| 10:36:23 | 10 | proceed to a bench trial before Judge Maloney? |
| 10:36:27 | 11 | A. Correct. |
| 10:36:27 | 12 | Q. In regard to Anthony Sumner, during the time that you were |
| 10:36:32 | 13 | with him and prepared in terms of debriefing and asking what |
| 10:36:37 | 14 | he knew about the Smith/Hickman murders, did he ever tell you |
| 10:36:40 | 15 | he had ever been mistreated by any members of the Chicago |
| 10:36:45 | 16 | Police Department? |
| 10:36:45 | 17 | A. No. |
| 10:36:45 | 18 | Q. And were you confident based upon your interaction with |
| 10:36:50 | 19 | him when you saw him in east Cleveland as well as in the |
| 10:36:52 | 20 | state's attorney's office when he returned to Chicago that he |
| 10:36:56 | 21 | had not been mistreated? |
| 10:36:57 | 22 | MR. LOEVY: Your Honor, objection, opens the door. |
| 10:36:59 | 23 | THE COURT: Hang on a second. Well, if it does, it |
| 10:37:07 | 24 | does. I don't think there is anything objectionable about the |
| 10:37:10 | 25 | question. We will worry about what happens later. Go ahead, |

Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 50 of 133 PageID #:31552
12/01/16 AM          ***REALTIME UNEDITED TRANSCRIPT ONLY***

49

| | |
|---|---|
| 10:37:14 | 1 |
| 10:37:17 | 2 |
| 10:37:19 | 3 |
| 10:37:20 | 4 |
| 10:37:23 | 5 |
| 10:37:29 | 6 |
| 10:37:32 | 7 |
| 10:37:33 | 8 |
| 10:37:41 | 9 |
| 10:37:43 | 10 |
| 10:37:45 | 11 |
| 10:37:58 | 12 |
| 10:38:01 | 13 |
| 10:38:01 | 14 |
| 10:38:05 | 15 |
| 10:38:24 | 16 |
| 10:38:27 | 17 |
| 10:38:30 | 18 |
| 10:38:33 | 19 |
| 10:38:37 | 20 |
| 10:38:40 | 21 |
| 10:38:43 | 22 |
| 10:38:47 | 23 |
| 10:38:52 | 24 |
| 10:38:54 | 25 |

1   you can proceed.  Why don't you rephrase it, Mr. Burns.

2          MR. BURNS:  Sure.

3   BY MR. BURNS:

4   Q.  Based on your interaction with Mr. Sumner, were you

5   satisfied that there was no suggestion by him that he had been

6   mistreated by members of the Chicago Police Department?

7   A.  Correct.

8   Q.  Now, he testified at trial.  And during the time that he

9   testified, you were the one who put him on the witness stand

10  and asked him questions?

11  A.  Correct.

12         MR. BURNS:  Judge, may I use the ELMO for the purpose

13  of this?

14         THE COURT:  Sure.

15  BY MR. BURNS:

16  Q.  Mr. Wharrie, I'm going to ask you a series of questions

17  with regard to the questioning of Mr. Sumner at the time of

18  the trial before Judge Maloney and the answers that he gave to

19  you.  So if you would read along as we do this.

20  A.  Do you want me to read it?

21  Q.  I will read it for you.  Please ensure that what I am

22  reading is accurate and that that was the testimony during the

23  1986 trial by Anthony Sumner, at least in relevant portion.

24  Is that agreeable?

25         THE COURT:  Just go ahead.

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 51 of 133 PageID #:31553
***REALTIME UNEDITED TRANSCRIPT ONLY***

50

| | | |
|---|---|---|
| 10:38:56 | 1 | MR. BURNS:  Thank you, your Honor. |
| 10:38:56 | 2 | BY MR. BURNS: |
| 10:38:58 | 3 | Q.  Question, your Honor.  This would have been by you. |
| 10:39:01 | 4 | Mr. Sumner, I would like to direct your to on or about April |
| 10:39:04 | 5 | 28, 1984.  Were you familiar or did you have knowledge of a |
| 10:39:08 | 6 | shooting involving a Fuddy, a Jerome Smith and a Talman |
| 10:39:16 | 7 | Hickman? |
| 10:39:16 | 8 | "ANSWER:  Yes. |
| 10:39:23 | 9 | "QUESTION:  I want to direct your attention to |
| 10:39:31 | 10 | approximately two days after April 28th of 1984.  Did you at |
| 10:39:37 | 11 | that time have any conversations with anybody with respect to |
| 10:39:40 | 12 | that shooting? |
| 10:39:43 | 13 | "ANSWER:  Yes. |
| 10:39:44 | 14 | "QUESTION:  Who did you talk to on that day?  A couple |
| 10:39:49 | 15 | days after the shooting, who did you talk to? |
| 10:39:53 | 16 | "ANSWER:  Earl Hawkins. |
| 10:40:01 | 17 | "QUESTION:  Does Earl Hawkins have a nickname? |
| 10:40:03 | 18 | "ANSWER:  Yes. |
| 10:40:05 | 19 | "QUESTION:  What is his nickname? |
| 10:40:08 | 20 | "ANSWER:  Monday sewer. |
| 10:40:10 | 21 | "QUESTION:  And is that the name that he had within an |
| 10:40:14 | 22 | organization? |
| 10:40:14 | 23 | "ANSWER:  Yes. |
| 10:40:16 | 24 | "QUESTION:  How long had you known Earl Hawkins? |
| 10:40:20 | 25 | "ANSWER:  About 12 years, 10 years. |

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 52 of 133 PageID #:31554
***REALTIME UNEDITED TRANSCRIPT ONLY***

51

10:40:25  1    "QUESTION:  Do you see him in court today?

10:40:28  2    "ANSWER:  Yes."

10:40:33  3        Continuing to the lower portion, question by you.

10:40:37  4    "QUESTION:  Where did this conversation take place

10:40:39  5    between you and Mr. Hawkins a couple days after the shooting?

10:40:44  6    "ANSWER:  At his house.

10:40:48  7    "QUESTION:  Where did he live at that time?

10:40:51  8    "ANSWER:  6416 Kenwood.

10:40:57  9    "QUESTION:  Is that a building that is owned and

10:41:00  10   operated by the El Rukns?

10:41:01  11   "ANSWER:  Yes.

10:41:03  12   "QUESTION:  On what floor of that building did this

10:41:07  13   conversation take place?

10:41:08  14   "ANSWER:  Third floor.

10:41:11  15   "QUESTION:  And who was present besides you and Mr.

10:41:15  16   Hawkins, if anybody, at that time?

10:41:17  17   "ANSWER:  Just me and him.

10:41:20  18   "QUESTION:  What do you recall saying to him and him

10:41:24  19   saying to you in that conversation relative to the shooting of

10:41:28  20   Fuddy two days earlier?

10:41:33  21   "ANSWER:  He told me they had got Fuddy.  They had seen

10:41:41  22   him -- rode around until they seen him and then as he was

10:41:45  23   walking towards the building, they parked the car, two guys

10:41:54  24   got out.  They shot him, got back in the car, drove off.

10:41:59  25   "QUESTION:  Did he tell you who they were?

12/01/16 AM Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 53 of 133 PageID #:31555
***REALTIME UNEDITED TRANSCRIPT ONLY***

52

| | | |
|---|---|---|
| 10:42:03 | 1 | "ANSWER:  Yes. |
| 10:42:05 | 2 | "QUESTION:  What did he -- excuse me.  Who did he say |
| 10:42:10 | 3 | did it? |
| 10:42:11 | 4 | "ANSWER:  Carter. |
| 10:42:13 | 5 | "QUESTION:  What is Carter's first name, if you know? |
| 10:42:17 | 6 | "ANSWER:  George. |
| 10:42:18 | 7 | "QUESTION:  And where does George Carter live, or where |
| 10:42:22 | 8 | did he live on or about April 1984, if you know? |
| 10:42:28 | 9 | "ANSWER:  He stay in Evanston. |
| 10:42:31 | 10 | "QUESTION:  Who else did he say was involved out of |
| 10:42:35 | 11 | these four? |
| 10:42:36 | 12 | "ANSWER:  S-u-d-d-l-e-m-a-n, Hank |
| 10:42:41 | 13 | Q.  What is Suddleman's real name? |
| 10:42:44 | 14 | "ANSWER:  Hank. |
| 10:42:45 | 15 | "QUESTION:  What is Hank's last name? |
| 10:42:47 | 16 | "ANSWER:  I don't know. |
| 10:42:49 | 17 | "QUESTION:  Do you know where Hank was living in April |
| 10:42:51 | 18 | of 1984? |
| 10:42:53 | 19 | "ANSWER:  Somewhere in Evanston. |
| 10:42:56 | 20 | "QUESTION:  Who else was involved out of the four |
| 10:43:00 | 21 | people? |
| 10:43:00 | 22 | "ANSWER:  And Fields, HUKM. |
| 10:43:05 | 23 | "QUESTION:  What did you call him? |
| 10:43:10 | 24 | "ANSWER:  HUKM. |
| 10:43:17 | 25 | "QUESTION:  Can you spell that? |

Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 54 of 133 PageID #:31556

| | | |
|---|---|---|
| 10:43:19 | 1 | "ANSWER:  H-u-k-a-m-. |
| 10:43:23 | 2 | "QUESTION:  Do you know Fields? |
| 10:43:24 | 3 | "ANSWER:  Yes. |
| 10:43:25 | 4 | "QUESTION:  How long have you known Fields? |
| 10:43:27 | 5 | "ANSWER:  About the same time, about 12 years. |
| 10:43:29 | 6 | "QUESTION:  Do you know his first name? |
| 10:43:32 | 7 | "ANSWER:  Yes. |
| 10:43:33 | 8 | "QUESTION:  What is it? |
| 10:43:34 | 9 | "ANSWER:  Nathson. |
| 10:43:37 | 10 | "QUESTION:  Do you see him in court? |
| 10:43:40 | 11 | "ANSWER:  Yes. |
| 10:43:42 | 12 | "QUESTION:  Would you point him out? |
| 10:43:44 | 13 | "ANSWER:  Right there." |
| 10:43:49 | 14 | Do you recall those questions and the answers by |
| 10:43:53 | 15 | Mr. Sumner during the trial in June of 1986? |
| 10:43:58 | 16 | A.  Yes. |
| 10:43:58 | 17 | Q.  Did you continue to ask further questions of him |
| 10:44:06 | 18 | beginning, question by Mr. Wharrie. |
| 10:44:10 | 19 | "QUESTION:  Did Mr. Hawkins go into detail and describe |
| 10:44:12 | 20 | to you in this conversation how the shooting went down? |
| 10:44:17 | 21 | "ANSWER:  Yes. |
| 10:44:19 | 22 | "QUESTION:  And what was that?  What did he say? |
| 10:44:22 | 23 | "ANSWER:  They rode around until they seen him.  And |
| 10:44:27 | 24 | then when they seen him, parked the car down the street. |
| 10:44:30 | 25 | "QUESTION:  Did he tell you where they parked the car? |

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 55 of 133 PageID #:31557
***REALTIME UNEDITED TRANSCRIPT ONLY***

54

| 10:44:33 | 1 | "ANSWER:  Down the street. |
| 10:44:35 | 2 | "QUESTION:  Did he tell you what happened after that? |
| 10:44:39 | 3 | "ANSWER:  What happened after that? |
| 10:44:41 | 4 | "QUESTION:  And they parked the car. |
| 10:44:48 | 5 | "ANSWER:  Two guys got out.  Carter and Fields got out |
| 10:44:52 | 6 | and met the guys.  He walked up under the breezeway. |
| 10:44:55 | 7 | "QUESTION:  And then what happened? |
| 10:44:56 | 8 | "ANSWER:  Then they shot him.  Then they got back in |
| 10:45:00 | 9 | the car and drove off." |
| 10:45:03 | 10 | Do you recall that testimony being given by |
| 10:45:07 | 11 | Mr. Sumner during the trial in June of 1986? |
| 10:45:11 | 12 | A.  Yes. |
| 10:45:12 | 13 | Q.  Question by Mr. Wharrie: |
| 10:45:19 | 14 | "QUESTION:  Did Mr. Hawkins talk to anybody else just |
| 10:45:21 | 15 | prior to the shooting? |
| 10:45:23 | 16 | "ANSWER:  Yes. |
| 10:45:27 | 17 | "QUESTION:  And who was that? |
| 10:45:31 | 18 | "ANSWER:  He said he had talked to Jeff. |
| 10:45:33 | 19 | "QUESTION:  And who is Jeff? |
| 10:45:37 | 20 | "ANSWER:  Jeff Fort. |
| 10:45:39 | 21 | "QUESTION:  And who is Jeff Fort? |
| 10:45:41 | 22 | "ANSWER:  The leader of the El Rukns. |
| 10:45:42 | 23 | "QUESTION:  What did he tell you Jeff Fort told them? |
| 10:45:46 | 24 | "ANSWER:  Told him don't be involved directly because |
| 10:45:50 | 25 | peoples in the neighborhood knew him, and get somebody else |

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 56 of 133 PageID #:31558
***REALTIME UNEDITED TRANSCRIPT ONLY***

55

| | | |
|---|---|---|
| 10:45:54 | 1 | that is not known in the neighborhood to do it." |
| 10:45:59 | 2 | Do you recall those questions and answers of |
| 10:46:01 | 3 | Mr. Sumner regarding a conversation he had with Earl Hawkins? |
| 10:46:05 | 4 | A.  Yes. |
| 10:46:05 | 5 | Q.  Now, continuing. |
| 10:46:11 | 6 | This was questioning by you of Mr. Sumner. |
| 10:46:16 | 7 | "QUESTION:  Let's go back to 1983.  Was Nathson Fields |
| 10:46:21 | 8 | well known in the area of 39th and Langley? |
| 10:46:25 | 9 | "ANSWER:  No. |
| 10:46:31 | 10 | "QUESTION:  Had Nathson Fields been in the area of 39th |
| 10:46:34 | 11 | and Langley or even in the area of Chicago for the time before |
| 10:46:37 | 12 | April of 1984? |
| 10:46:40 | 13 | "ANSWER:  No. |
| 10:46:46 | 14 | "QUESTION:  Now, the same day that you talked to Earl |
| 10:46:49 | 15 | Hawkins, approximately April 30th, 1984, did you also talk to |
| 10:46:54 | 16 | Nathson Fields on that day? |
| 10:46:57 | 17 | "ANSWER:  Yes. |
| 10:46:58 | 18 | "QUESTION:  And where did that conversation take place? |
| 10:47:01 | 19 | "ANSWER:  39th Street, in the Fort. |
| 10:47:10 | 20 | "QUESTION:  On 39th, at the Fort, who is the Fort? |
| 10:47:17 | 21 | "ANSWER:  The mosque, headquarters. |
| 10:47:19 | 22 | "QUESTION:  The headquarters of what? |
| 10:47:21 | 23 | "ANSWER:  The headquarters of the El Rukns. |
| 10:47:23 | 24 | "QUESTION:  Who was present besides yourself and |
| 10:47:25 | 25 | Nathson Fields when you talked to him on that day? |

10:47:29    1        "ANSWER:  What, in the room where he was at?

10:47:34    2        "QUESTION:  Yes.  Was anyone else present besides you

10:47:37    3   and Fields when you were talking to him?

10:47:41    4        "ANSWER:  No.

10:47:43    5        "QUESTION:  Do you recall what you said to him and what

10:47:47    6   he said to you during the course of that conversation?

10:47:51    7        "ANSWER:  Yes.

10:47:52    8        "QUESTION:  What was said?

10:47:55    9        "ANSWER:  I told him that I had heard about Fuddy

10:47:59   10   getting shot down in 39th Street and he had something to do

10:48:04   11   with it, and he said that, quote, it was a good exercise."

10:48:11   12        Do you recall that testimony being given during the

10:48:13   13   trial before Judge Maloney in June of 1986?

10:48:18   14   A.  Yes.

10:48:19   15   Q.  And that was testimony by Mr. Sumner, am I also correct?

10:48:23   16   A.  Correct.

10:48:38   17        MR. BURNS:  May I have just one moment, Judge?

10:48:41   18        THE COURT:  Yes.

10:48:42   19        MR. BURNS:  Thank you.  (Brief pause.  (.

10:49:10   20        MR. BURNS:  Just one final question, if I may.

10:49:12   21   BY MR. BURNS:

10:49:12   22   Q.  The information that was presented that we just read to

10:49:16   23   the ladies and gentlemen of the jury, that was the same

10:49:17   24   information that Mr. Sumner was telling you during the time

10:49:19   25   that you met with him in order to prepare to give testimony at

| | | |
|---|---|---|
| 10:49:22 | 1 | trial; is that correct? |
| 10:49:23 | 2 | A.  Correct. |
| 10:49:24 | 3 | MR. BURNS:  I have no further questions.  Thank you, |
| 10:49:26 | 4 | your Honor. |
| 10:49:26 | 5 | THE COURT:  Mr. Kulwin. |
| 10:49:28 | 6 | - - - |
| 10:49:28 | 7 | LAWRENCE WHARRIE, CROSS-EXAMINATION |
| 10:49:28 | 8 | BY MR. KULWIN: |
| 10:50:03 | 9 | Q.  Mr. Wharrie, you said that you tried the Smith/Hickman |
| 10:50:08 | 10 | murder trial, double murder trial at 26th and California with |
| 10:50:13 | 11 | another person, correct? |
| 10:50:14 | 12 | A.  Correct. |
| 10:50:15 | 13 | Q.  And that was typical in the state's attorney's office at |
| 10:50:20 | 14 | that time, correct? |
| 10:50:21 | 15 | A.  We usually tried all of them in pairs. |
| 10:50:24 | 16 | Q.  Right. |
| 10:50:25 | 17 | It was a trial team? |
| 10:50:28 | 18 | A.  Correct. |
| 10:50:28 | 19 | Q.  And you'd split up the witnesses? |
| 10:50:30 | 20 | A.  Correct. |
| 10:50:31 | 21 | Q.  And one attorney would take some witnesses and the other |
| 10:50:35 | 22 | attorney would take others? |
| 10:50:36 | 23 | A.  Correct. |
| 10:50:36 | 24 | Q.  Usually? |
| 10:50:38 | 25 | A.  Yes. |

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 59 of 133 PageID #:31561
***REALTIME UNEDITED TRANSCRIPT ONLY***

58

| | | |
|---|---|---|
| 10:50:38 | 1 | Q. Who was your trial partner on that case? |
| 10:50:42 | 2 | A. Randy Rueckert. |
| 10:50:46 | 3 | Q. And had you worked with him before? |
| 10:50:48 | 4 | A. Yes. |
| 10:50:48 | 5 | Q. Was he your trial partner in other cases as well, if you |
| 10:50:54 | 6 | recall? |
| 10:50:54 | 7 | A. I don't remember. |
| 10:50:58 | 8 | Q. Okay. Now, you said that Mr. Rueckert was handling the |
| 10:51:03 | 9 | eyewitnesses? |
| 10:51:04 | 10 | A. Correct. |
| 10:51:05 | 11 | Q. At any time did Mr. Rueckert ever come to you and say the |
| 10:51:11 | 12 | witnesses, the eyewitnesses have been threatened or coerced by |
| 10:51:14 | 13 | O'Callaghan, maybe we shouldn't use them? |
| 10:51:17 | 14 | MR. LOEVY: Objection, your Honor. |
| 10:51:19 | 15 | THE COURT: What's the basis? |
| 10:51:20 | 16 | MR. LOEVY: First of all, it's hearsay, second of |
| 10:51:23 | 17 | all, it's argumentative. |
| 10:51:24 | 18 | THE COURT: Overruled. |
| 10:51:26 | 19 | THE WITNESS: No. |
| 10:51:26 | 20 | BY MR. KULWIN: |
| 10:51:29 | 21 | Q. At any time -- now, you were asked some questions by |
| 10:51:44 | 22 | counsel, by both counsel about a hit team. Do you remember |
| 10:51:47 | 23 | those questions? |
| 10:51:47 | 24 | A. Yes. |
| 10:51:48 | 25 | Q. The word hit in your mind as an experienced gang |

12/01/16 AM    Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 60 of 133 PageID #:31562
***REALTIME UNEDITED TRANSCRIPT ONLY***

59

| | | |
|---|---|---|
| 10:51:55 | 1 | prosecutor and state's attorney means killing somebody, |
| 10:51:57 | 2 | correct? |
| 10:51:58 | 3 | A.  Yes. |
| 10:51:58 | 4 | Q.  It doesn't mean driving around thinking about it? |
| 10:52:00 | 5 | MR. LOEVY:  Objection, your Honor. |
| 10:52:01 | 6 | THE COURT:  Sustained. |
| 10:52:05 | 7 | BY MR. KULWIN: |
| 10:52:06 | 8 | Q.  People who make a plan to go kill somebody, they enter no |
| 10:52:09 | 9 | a conspiracy to kill somebody, that's something that they do, |
| 10:52:12 | 10 | right? |
| 10:52:12 | 11 | A.  Correct. |
| 10:52:13 | 12 | Q.  But the actual people who do the shooting and go to the |
| 10:52:17 | 13 | shooting, they're guilty of murder, they're a hit team, right? |
| 10:52:20 | 14 | A.  Correct. |
| 10:52:21 | 15 | Q.  And in this case, there was never any question that the |
| 10:52:37 | 16 | actual hit team who did the shooting and the driving away |
| 10:52:45 | 17 | were, one of the shooter was Fields, right? |
| 10:52:47 | 18 | A.  Correct. |
| 10:52:48 | 19 | Q.  And there was Hawkins? |
| 10:52:51 | 20 | A.  Correct. |
| 10:52:52 | 21 | Q.  And there was Carter? |
| 10:52:57 | 22 | A.  Yes. |
| 10:52:59 | 23 | Q.  I'm standing in front of everybody.  I apologize. |
| 10:53:04 | 24 | And then there was Andrews, right? |
| 10:53:08 | 25 | A.  Right. |

| | | |
|---|---|---|
| 10:53:08 | 1 | Q. Now, you just heard your presentation of Mr. Sumner's |
| 10:53:18 | 2 | testimony back in 1986 and you put him on the stand, right? |
| 10:53:23 | 3 | A. That's right. |
| 10:53:26 | 4 | Q. And he said that Hawkins told him that Carter? |
| 10:53:30 | 5 | MR. LOEVY: Objection, your Honor. This was covered |
| 10:53:31 | 6 | by Mr. Burns. |
| 10:53:33 | 7 | THE COURT: Sustained. |
| 10:53:33 | 8 | BY MR. KULWIN: |
| 10:53:43 | 9 | Q. Now, when you proceeded to trial on the Smith/Hickman |
| 10:53:59 | 10 | murder, you presented evidence that you believed was |
| 10:54:04 | 11 | sufficient to prove Nathson Fields guilty beyond a reasonable |
| 10:54:08 | 12 | doubt? |
| 10:54:08 | 13 | MR. LOEVY: Objection. |
| 10:54:09 | 14 | BY MR. KULWIN: |
| 10:54:09 | 15 | Q. That was your position, correct? |
| 10:54:10 | 16 | THE COURT: Basis? |
| 10:54:11 | 17 | MR. LOEVY: His opinion is not -- |
| 10:54:13 | 18 | THE COURT: Sustained. |
| 10:54:14 | 19 | MR. KULWIN: Judge, if I could be heard on that. I'm |
| 10:54:17 | 20 | not asking necessarily whether that's true, his view of it is |
| 10:54:22 | 21 | important, relevant to probable cause. That's why it's |
| 10:54:24 | 22 | relevant. |
| 10:54:25 | 23 | THE COURT: I will see you at sidebar. The jury is |
| 10:54:29 | 24 | directed to disregard the attorney's comments. |
| 10:54:36 | 25 | MR. KULWIN: Yeah, I apologize. |

| | | |
|---|---|---|
| 10:54:38 | 1 | (The following proceedings were had at sidebar outside the |
| 10:54:39 | 2 | hearing of the jury:) |
| 10:54:39 | 3 | THE COURT:  So state the argument. |
| 10:54:40 | 4 | MR. KULWIN:  The argument is, Judge, he is a |
| 10:54:42 | 5 | prosecutor, he believes the evidence at that point in time is |
| 10:54:45 | 6 | sufficient to be proof beyond a reasonable doubt.  I want to |
| 10:54:46 | 7 | elicit from him that that's a higher standard. |
| 10:54:49 | 8 | THE COURT:  It's an opinion on probable cause, |
| 10:54:51 | 9 | basically?  It's an opinion that's relevant on the issue of |
| 10:54:54 | 10 | probable cause. |
| 10:54:54 | 11 | MR. KULWIN:  Yeah, on the issue of probable cause. |
| 10:54:56 | 12 | THE COURT:  What do you want to show me? |
| 10:54:56 | 13 | MR. ART:  This is a motion in limine ruling ruling |
| 10:54:56 | 14 | that prohibiting the prosecutors from discussing the issues of |
| 10:55:02 | 15 | probable cause, the ultimate issues of materiality for |
| 10:55:02 | 16 | precisely the reasons the jury has to determine them on an |
| 10:55:04 | 17 | objective standard. |
| 10:55:05 | 18 | THE COURT:  Document No. 550, 3/19/14, item 1C.  Let |
| 10:55:13 | 19 | me read it to myself.  Let me look at it.  You should read it, |
| 10:55:27 | 20 | bottom of the previous page. |
| 10:55:52 | 21 | MR. KULWIN:  I don't think I am violating that. |
| 10:55:54 | 22 | THE COURT:  Based on what you just told me, that's |
| 10:55:56 | 23 | the exact opinion you are eliciting.  You are eliciting his |
| 10:56:01 | 24 | opinion on whether it was proof beyond a reasonable doubt to |
| 10:56:03 | 25 | essentially prove that it was sufficient for probable cause. |

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 63 of 133 PageID #:31565
***REALTIME UNEDITED TRANSCRIPT ONLY***

62

10:56:07  1     The Court wishes to reemphasize, however, its ruling

10:56:09  2  was pursuant to Rules 401 and 403 regarding the

10:56:12  3  inadmissibility opinions regarding the credibility of various

10:56:14  4  witnesses and on the ultimate issue of probable cause.  I

10:56:18  5  think that's probably referring back to an earlier ruling as

10:56:23  6  well just to reemphasize.

10:56:24  7     Look, guys, I am going to tell you, this is one of my

10:56:27  8  big problems in this case on both sides, all sides, I guess

10:56:31  9  all sides, is the constant request for me to revisit stuff

10:56:35  10  that was extensively briefed, extensively ruled on.  I am

10:56:39  11  sticking with the prior ruling.  I am sustaining the

10:56:42  12  objection.

10:56:42  13     MR. NOLAND:  Judge, during the trial, there were

10:56:44  14  rulings made with respect to allowing Mr. Sexton to testify.

10:56:48  15     THE COURT:  This isn't Mr. Sexton.  This isn't

10:56:50  16  Mr. Sexton.

10:56:51  17     MR. NOLAND:  Okay.

10:56:51  18     THE COURT:  Did this guy to testify about this at the

10:56:53  19  previous trial?

10:56:57  20     MR. LOEVY:  No, Mr. Sexton shouldn't have testified

10:56:59  21  --

10:56:59  22     THE COURT:  I don't know.  Again, I just point out to

10:57:03  23  you that the last line is any doubts that counsel may have

10:57:06  24  regarding the parameters of the court's ruling in this regard

10:57:09  25  are to be resolved by seeking particularized guidance from the

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 64 of 133 PageID #:31566
***REALTIME UNEDITED TRANSCRIPT ONLY***

63

| | | |
|---|---|---|
| 10:57:11 | 1 | Court before attempting to introduce the evidence.  The |
| 10:57:14 | 2 | objection is sustained. |
| 10:57:19 | 3 | (The following proceedings were had in open court in the |
| 10:57:20 | 4 | presence and hearing of the jury:) |
| 10:57:20 | 5 | THE COURT:  The objection is sustained.  The jury is |
| 10:57:22 | 6 | directed to disregard the question as well as the discussion |
| 10:57:25 | 7 | that was had before the sidebar. |
| 10:57:28 | 8 | BY MR. KULWIN: |
| 10:57:33 | 9 | Q.  Now, at the trial in 1986, the defense put on certain |
| 10:57:42 | 10 | witnesses, correct? |
| 10:57:43 | 11 | A.  Correct. |
| 10:57:44 | 12 | Q.  They did not put on? |
| 10:57:48 | 13 | MR. LOEVY:  Objection, your Honor.  The defense had |
| 10:57:51 | 14 | no obligation to put on anything. |
| 10:57:53 | 15 | THE COURT:  Let me hear the question and then I'll |
| 10:57:55 | 16 | rule on it. |
| 10:57:56 | 17 | BY MR. KULWIN: |
| 10:57:57 | 18 | Q.  They did not put on a woman by the name of Sandra Langston |
| 10:58:01 | 19 | in your defense? |
| 10:58:01 | 20 | MR. LOEVY:  Same objection, your Honor. |
| 10:58:03 | 21 | THE COURT:  Okay.  So I am instructing the jury that |
| 10:58:05 | 22 | a defendant in a criminal case doesn't have an obligation to |
| 10:58:07 | 23 | put on any witnesses at all.  With that understanding, I am |
| 10:58:12 | 24 | going to let you ask the question. |
| 10:58:13 | 25 | BY MR. KULWIN: |

Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 65 of 133 PageID #:31567
12/01/16 AM                ***REALTIME UNEDITED TRANSCRIPT ONLY***

64

| | | |
|---|---|---|
| 10:58:15 | 1 | Q.  Correct? |
| 10:58:15 | 2 | A.  I believe that's true. |
| 10:58:16 | 3 | Q.  And they also did not put on James Langston, correct, in |
| 10:58:21 | 4 | the trial as opposed to the death sentence hearing, correct? |
| 10:58:24 | 5 | A.  Correct. |
| 10:58:26 | 6 | Q.  Now, in addition to the GPR that Mr. Burns showed you, |
| 10:58:49 | 7 | there was a supplemental report that did indicate that a |
| 10:58:55 | 8 | confidential informant had supplied information to the police |
| 10:59:02 | 9 | indicating that there were several suspects in the case.  Do |
| 10:59:08 | 10 | you remember that? |
| 10:59:08 | 11 | A.  Yes. |
| 10:59:08 | 12 | Q.  Okay.  And I'm showing you -- |
| 10:59:12 | 13 |         MR. KULWIN:  If I may have the ELMO, Judge. |
| 10:59:14 | 14 |         THE COURT:  Yes. |
| 10:59:15 | 15 |         MR. KULWIN:  Thank you. |
| 10:59:17 | 16 |         THE COURT:  I think it's on actually. |
| 10:59:18 | 17 | BY MR. KULWIN: |
| 10:59:21 | 18 | Q.  Plaintiff's Exhibit 86 at Bates number 9544.  Let me zoom |
| 10:59:33 | 19 | in there a little bit. |
| 10:59:38 | 20 |         THE COURT:  It's like scratching your fingers on the |
| 10:59:40 | 21 | chalkboard. |
| 10:59:41 | 22 | BY MR. KULWIN: |
| 10:59:44 | 23 | Q.  Do you see that, sir? |
| 10:59:44 | 24 | A.  Yes. |
| 10:59:47 | 25 | Q.  And that's referring, even though it doesn't say his name, |

12/01/16 AM          ***REALTIME UNEDITED TRANSCRIPT ONLY***

65

| | | |
|---|---|---|
| 10:59:52 | 1 | that's referring ultimately to what was disclosed to the |
| 10:59:55 | 2 | defense being Anthony Sumner, true? |
| 10:59:56 | 3 | A.  Correct. |
| 10:59:57 | 4 | MR. LOEVY:  Objection to foundation, your Honor. |
| 10:59:58 | 5 | THE COURT:  Overruled. |
| 11:00:01 | 6 | MR. KULWIN:  If I can have a moment, Judge. |
| 11:00:44 | 7 | THE COURT:  Okay. |
| 11:00:44 | 8 | (Brief pause.) |
| 11:01:04 | 9 | MR. KULWIN:  No further questions. |
| 11:01:04 | 10 | THE COURT:  Redirect. |
| 11:01:05 | 11 | MR. LOEVY:  Thank you, your Honor. |
| 11:01:05 | 12 | - - - |
| 11:01:05 | 13 | LAWRENCE WHARRIE, REDIRECT EXAMINATION |
| 11:01:05 | 14 | BY MR. LOEVY: |
| 11:01:07 | 15 | Q.  Mr. Burns asked you if your theory of the case was that |
| 11:01:10 | 16 | Carter and Fields was the shooter or Hawkins and Fields was |
| 11:01:13 | 17 | the shooter.  Do you remember those questions? |
| 11:01:14 | 18 | A.  Yes. |
| 11:01:15 | 19 | Q.  You guys went with Hawkins and Fields, didn't you? |
| 11:01:18 | 20 | A.  Correct. |
| 11:01:19 | 21 | Q.  You asked the -- and you had to pick between Sumner saying |
| 11:01:23 | 22 | it was Hawkins and Carter and the four eyewitnesses who were |
| 11:01:26 | 23 | saying they saw supposedly Hawkins and Fields, right? |
| 11:01:29 | 24 | A.  Well, we had to select between whether or not Hawkins was |
| 11:01:35 | 25 | telling Sumner exactly everything how it went down. |

***REALTIME UNEDITED TRANSCRIPT ONLY***

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 67 of 133 PageID #:31569
***REALTIME UNEDITED TRANSCRIPT ONLY***

66

| | | |
|---|---|---|
| 11:01:41 | 1 | Q. You couldn't go with both theories, right, you had to pick |
| 11:01:44 | 2 | one? |
| 11:01:44 | 3 | A. Correct. |
| 11:01:44 | 4 | Q. And if Sumner was telling the truth, then all four of your |
| 11:01:49 | 5 | eyewitnesses misidentified the shooter, right? |
| 11:01:52 | 6 | A. Well, when you say Sumner, Sumner was just reiterating |
| 11:01:57 | 7 | what Hawkins told him. |
| 11:01:58 | 8 | Q. All right. If he was testifying truthfully that Hawkins |
| 11:02:00 | 9 | told him that, that all four of your eyewitnesses would have |
| 11:02:04 | 10 | made misidentifications of Hawkins, correct? |
| 11:02:06 | 11 | MR. KULWIN: Objection, argumentative. |
| 11:02:07 | 12 | THE COURT: Overruled. |
| 11:02:09 | 13 | THE WITNESS: Repeat that, please. |
| 11:02:10 | 14 | BY MR. LOEVY: |
| 11:02:11 | 15 | Q. If Sumner was truthfully testifying to what Hawkins told |
| 11:02:14 | 16 | him and the jury believed that, then all four of your |
| 11:02:20 | 17 | eyewitnesses misidentified Hawkins as one of the shooter? |
| 11:02:26 | 18 | A. If you believe that theory, you're correct. |
| 11:02:27 | 19 | Q. If they misidentified Hawkins, they sure were not going to |
| 11:02:31 | 20 | credibly identify the other going to? |
| 11:02:33 | 21 | MR. KULWIN: Objection, Judge. Argumentative. |
| 11:02:35 | 22 | THE COURT: Sustained. |
| 11:02:36 | 23 | BY MR. LOEVY: |
| 11:02:36 | 24 | Q. You were talking about east Cleveland and Nate was not in |
| 11:02:39 | 25 | east Cleveland, right? |

12/01/16 AM ***REALTIME UNEDITED TRANSCRIPT ONLY***

67

| | | |
|---|---|---|
| 11:02:41 | 1 | A.  No, he was not. |
| 11:02:42 | 2 | Q.  In fact Nate Fields name never came up in east Cleveland, |
| 11:02:46 | 3 | correct? |
| 11:02:46 | 4 | A.  You're right.  Correct. |
| 11:02:47 | 5 | Q.  So there was some conversations with Anthony Sumner, he |
| 11:02:50 | 6 | was saying what he was saying, and Nate Fields never came into |
| 11:02:53 | 7 | any scenario in east Cleveland, correct? |
| 11:02:57 | 8 | A.  Correct. |
| 11:02:57 | 9 | Q.  Did he write down what he told you? |
| 11:03:00 | 10 | A.  Who? |
| 11:03:00 | 11 | Q.  Sumner. |
| 11:03:01 | 12 | A.  In east Cleveland? |
| 11:03:03 | 13 | Q.  Yes. |
| 11:03:03 | 14 | A.  No, I didn't take notes. |
| 11:03:04 | 15 | Q.  All right.  This is page 823 of the April 2014 hearing. |
| 11:03:14 | 16 | This is page 823.  May I show you? |
| 11:03:17 | 17 | A.  Sure. |
| 11:03:18 | 18 | Q.  The middle of the page there.  It does say you took notes |
| 11:03:24 | 19 | of your meetings with Mr. Sumner, correct? |
| 11:03:26 | 20 | A.  I said I would make notes before I would present him to |
| 11:03:42 | 21 | the grand jury. |
| 11:03:43 | 22 | Q.  All right.  Where are the notes now? |
| 11:03:45 | 23 | MR. KULWIN:  Objection, not impeaching, Judge. |
| 11:03:47 | 24 | MR. LOEVY:  I didn't impeach, your Honor. |
| 11:03:49 | 25 | THE COURT:  Okay.  That's not why it was introduced, |

***REALTIME UNEDITED TRANSCRIPT ONLY***

12/01/16 AM

Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 69 of 133 PageID #:31571
***REALTIME UNEDITED TRANSCRIPT ONLY***

68

| | | |
|---|---|---|
| 11:03:53 | 1 | in other words.  The objection is overruled. |
| 11:03:54 | 2 | BY MR. LOEVY: |
| 11:03:55 | 3 | Q.  Where are those notes now, sir? |
| 11:03:56 | 4 | A.  I have no idea. |
| 11:03:57 | 5 | Q.  All right.  And when you went before the grand jury, you |
| 11:04:00 | 6 | did misspeak, correct? |
| 11:04:01 | 7 | A.  Correct. |
| 11:04:02 | 8 | Q.  And some of the stories Sumner were telling you in |
| 11:04:11 | 9 | Cleveland were obviously untrue? |
| 11:04:13 | 10 | MR. KULWIN:  Objection, stories, Judge, and |
| 11:04:15 | 11 | obviously.  Argumentative. |
| 11:04:18 | 12 | THE COURT:  Sustained as to the phrasing of the |
| 11:04:20 | 13 | question.  Choose a different word.  Time for argument is |
| 11:04:25 | 14 | argument at the end of the case, not now. |
| 11:04:27 | 15 | BY MR. LOEVY: |
| 11:04:29 | 16 | Q.  He did tell you, quote, some other wild stories, end |
| 11:04:33 | 17 | quote, correct? |
| 11:04:34 | 18 | A.  Correct. |
| 11:04:35 | 19 | Q.  And some of his explanations made no sense at all, |
| 11:04:41 | 20 | correct? |
| 11:04:41 | 21 | A.  Correct. |
| 11:04:42 | 22 | Q.  And you were asked about the confession.  Mr. Burns read |
| 11:04:51 | 23 | you the testimony about Hawkins supposedly confessing to |
| 11:04:55 | 24 | Anthony Sumner, do you remember that testimony? |
| 11:04:56 | 25 | A.  Yes. |

| | | |
|---|---|---|
| 11:04:56 | 1 | Q.  Now, there was also testimony on cross-examination that |
| 11:05:00 | 2 | Anthony Sumner was claiming that like seven different El Rukn |
| 11:05:03 | 3 | generals confessed to him always in private to other crimes, |
| 11:05:07 | 4 | right? |
| 11:05:07 | 5 | A.  I don't know. |
| 11:05:11 | 6 | Q.  You don't remember that either way? |
| 11:05:12 | 7 | A.  No. |
| 11:05:13 | 8 | Q.  All right.  The story that was read to you or the |
| 11:05:17 | 9 | allegations that were read to you that Sumner said on the |
| 11:05:19 | 10 | stand, Nate -- Hawkins told you this, Hawkins told me that, |
| 11:05:24 | 11 | Hawkins told me that, do you remember that testimony Mr. Burns |
| 11:05:27 | 12 | just read? |
| 11:05:27 | 13 | A.  Yes. |
| 11:05:27 | 14 | Q.  None of that was admissible against Mr. Fields at his |
| 11:05:30 | 15 | trial because it was hearsay vis-à-vis Mr. Fields isn't that |
| 11:05:36 | 16 | true? |
| 11:05:36 | 17 | A.  I don't know if they -- well, are you talking about as far |
| 11:05:42 | 18 | as rules of evidence? |
| 11:05:43 | 19 | Q.  Yes. |
| 11:05:43 | 20 | A.  I would say that's probably true. |
| 11:05:45 | 21 | Q.  This was a joint trial where Fields and Hawkins were being |
| 11:05:51 | 22 | tried together? |
| 11:05:51 | 23 | A.  Yes. |
| 11:05:51 | 24 | Q.  And it was a bench trial, so the judge received some |
| 11:05:54 | 25 | evidence that was admissible against only certain people and |

Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 71 of 133 PageID #:31573
12/01/16 AM          ***REALTIME UNEDITED TRANSCRIPT ONLY***

70

| 11:05:57 | 1 | other evidence that wasn't admissible against others, right? |
| 11:06:00 | 2 | A.  Yes. |
| 11:06:00 | 3 | Q.  So all that story about what Hawkins told Sumner is pure |
| 11:06:04 | 4 | hearsay vis-à-vis Nate? |
| 11:06:07 | 5 | MR. KULWIN:  Objection, Judge. |
| 11:06:07 | 6 | THE COURT:  Overruled. |
| 11:06:09 | 7 | THE WITNESS:  I mean, I don't recall the ruling, but |
| 11:06:12 | 8 | that could be possible what you're arguing there.  I mean, |
| 11:06:16 | 9 | that could have been the case. |
| 11:06:21 | 10 | BY MR. LOEVY: |
| 11:06:22 | 11 | Q.  What was admissible against Nate was his supposed |
| 11:06:24 | 12 | confession? |
| 11:06:25 | 13 | MR. KULWIN:  Objection to supposed, Judge, |
| 11:06:28 | 14 | argumentative. |
| 11:06:28 | 15 | THE COURT:  Overruled. |
| 11:06:29 | 16 | THE WITNESS:  Correct. |
| 11:06:29 | 17 | BY MR. LOEVY: |
| 11:06:34 | 18 | Q.  All right.  You don't know if the story -- the allegations |
| 11:06:40 | 19 | that Mr. Burns read to you that Sumner said were Mr. Sumner's |
| 11:06:45 | 20 | original story, do you? |
| 11:06:46 | 21 | A.  Well, original story, I don't know what you mean. |
| 11:06:52 | 22 | Q.  I mean, he talked about it multiple times over a series of |
| 11:06:56 | 23 | a week, correct? |
| 11:06:57 | 24 | A.  That's the only one I remember him stating. |
| 11:07:00 | 25 | Q.  No.  I'm saying he was interviewed outside of your |

11:07:04 presence, wasn't he?
11:07:04 A. Well, yes.
11:07:06 Q. By other law enforcement officers, correct?
11:07:08 A. Yes.
11:07:09 Q. And you don't know what happened in those interviews that
11:07:12 you weren't part of, correct?
11:07:13 A. Of course not.
11:07:14 Q. So you don't know either way whether maybe law enforcement
11:07:17 said, hey?
11:07:17 MR. KULWIN: Judge, I am going to object. Calls for
11:07:19 speculation.
11:07:21 THE COURT: Let me hear the whole question.
11:07:22 BY MR. LOEVY:
11:07:22 Q. You don't know either way whether the details were
11:07:25 suggested to Sumner and he adopted them or Sumner came forward
11:07:28 with them?
11:07:28 THE COURT: Sustained. Argumentative.
11:07:30 BY MR. LOEVY:
11:07:31 Q. You told Mr. Burns that O'Callaghan never said the
11:07:34 witnesses were threatened, correct?
11:07:35 A. Correct.
11:07:36 Q. You stand by that?
11:07:38 A. I don't -- yeah. Who are you talking about, Sumner?
11:07:42 Q. The witnesses.
11:07:46 MR. BURNS: Objection, your Honor?

| | | |
|---|---|---|
| 11:07:47 | 1 | MR. KULWIN:  Objection, Judge. |
| 11:07:48 | 2 | BY MR. LOEVY: |
| 11:07:49 | 3 | Q.  Mr. Burns asked you -- |
| 11:07:51 | 4 | THE COURT:  Go ahead. |
| 11:07:51 | 5 | BY MR. LOEVY: |
| 11:07:52 | 6 | Q.  Specifically if O'Callaghan told you the witnesses were |
| 11:07:53 | 7 | threatened and you said no, correct? |
| 11:07:55 | 8 | MR. BURNS:  Objection, your Honor. |
| 11:07:57 | 9 | THE COURT:  Well, the jury has heard the prior |
| 11:07:59 | 10 | testimony.  If it's -- why don't you just ask your question. |
| 11:08:02 | 11 | BY MR. LOEVY: |
| 11:08:02 | 12 | Q.  You were asked by Mr. Burns about gang retaliation theory, |
| 11:08:05 | 13 | that was your theory at trial, right? |
| 11:08:07 | 14 | A.  Correct. |
| 11:08:07 | 15 | Q.  Now, isn't it true that there was not one scrap of paper |
| 11:08:11 | 16 | or corroboration by anybody other than a corroborator that was |
| 11:08:15 | 17 | claiming that there was a problem between the El Rukns and the |
| 11:08:18 | 18 | Goon Squad? |
| 11:08:18 | 19 | MR. KULWIN:  Objection, argumentative, Judge. |
| 11:08:20 | 20 | MR. LOEVY:  No. |
| 11:08:23 | 21 | THE COURT:  Rephrase the question. |
| 11:08:28 | 22 | BY MR. LOEVY: |
| 11:08:29 | 23 | Q.  There was no Goon Squad witness, Gerald Morris, Randy |
| 11:08:34 | 24 | Langston, any other Goon Squad member who ever gave any |
| 11:08:37 | 25 | information that there was any problem between the Goon Squads |

| | | |
|---|---|---|
| 11:08:39 | 1 | and the El Rukns; isn't that true? |
| 11:08:43 | 2 | A.  My recollection was that there was -- there was some |
| 11:08:48 | 3 | problem.  Yeah, a beef between the two. |
| 11:08:51 | 4 | Q.  And that was all coming from Anthony Sumner, correct? |
| 11:08:55 | 5 | A.  I don't know if it was all coming from him.  I just don't |
| 11:08:58 | 6 | remember what the source was. |
| 11:09:00 | 7 | Q.  All right.  Would you dispute or do you have a memory |
| 11:09:03 | 8 | either way that not a single Goon Squad member ever in a piece |
| 11:09:06 | 9 | of paper or at trial corroborated this theory? |
| 11:09:10 | 10 | A.  I don't know. |
| 11:09:12 | 11 | Q.  You were asked about a hit team and he asked you if guys |
| 11:09:15 | 12 | get in a car, here's my question to you, sir.  If four guys |
| 11:09:21 | 13 | get into a car with guns with the intention of going to |
| 11:09:26 | 14 | assassinate somebody, that would be a hit team, wouldn't it? |
| 11:09:29 | 15 |         MR. KULWIN:  Objection, argumentative, covered in |
| 11:09:31 | 16 | direct. |
| 11:09:36 | 17 |         THE WITNESS:  Yes. |
| 11:09:31 | 18 |         THE COURT:  Overruled given the cross. |
| 11:09:36 | 19 | BY MR. LOEVY: |
| 11:09:37 | 20 | Q.  Your answer? |
| 11:09:37 | 21 |         THE COURT:  He said yes. |
| 11:09:39 | 22 |         THE WITNESS:  Yes. |
| 11:09:41 | 23 | BY MR. LOEVY: |
| 11:09:42 | 24 | Q.  It would still be a hit team, won't it? |
| 11:09:44 | 25 | A.  They'd all have the same responsibility. |

12/01/16 AM    Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 75 of 133 PageID #:31577
***REALTIME UNEDITED TRANSCRIPT ONLY***

74

| | | |
|---|---|---|
| 11:09:47 | 1 | Q.  All right.  You were asked if you had any reason to have |
| 11:09:52 | 2 | confidence that Mr. Sumner had been mistreated by the Chicago |
| 11:09:55 | 3 | police officers.  Do you remember that? |
| 11:09:56 | 4 | A.  Yes. |
| 11:09:57 | 5 | Q.  Isn't it true there were reasons why you would have lack |
| 11:10:02 | 6 | of confidence why Chicago police officers might have |
| 11:10:05 | 7 | mistreated witnesses during the '80s? |
| 11:10:08 | 8 | MR. BURNS:  Objection, your Honor. |
| 11:10:10 | 9 | THE COURT:  Sustained. |
| 11:10:11 | 10 | BY MR. LOEVY: |
| 11:10:15 | 11 | Q.  All right.  You were asked if there was a police report |
| 11:10:18 | 12 | and this is Plaintiff's Exhibit 86, this is what Mr. Kulwin |
| 11:10:22 | 13 | showed you about this, there was a cooperating information -- |
| 11:10:25 | 14 | individual who had supplied information relative to this case. |
| 11:10:29 | 15 | Do you see that? |
| 11:10:29 | 16 | A.  Yes. |
| 11:10:30 | 17 | Q.  That is not documented in murder confessions the way |
| 11:10:34 | 18 | police document murder confessions, is it? |
| 11:10:36 | 19 | A.  No. |
| 11:10:37 | 20 | Q.  That does not say Nate Fields confessed to Anthony Sumner |
| 11:10:42 | 21 | that he did it, correct? |
| 11:10:43 | 22 | A.  Correct. |
| 11:10:44 | 23 | Q.  All right.  You were shown a police report by Mr. Burns |
| 11:10:48 | 24 | dated May 21st documenting that Hawkins was identified.  Do |
| 11:10:54 | 25 | you remember seeing that document? |

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 76 of 133 PageID #:31578
***REALTIME UNEDITED TRANSCRIPT ONLY***

75

11:10:55   1   A.  Yes.

11:10:56   2   Q.  That's May 21st.  But the document that identified

11:10:59   3   Ferguson was dated when?  There is it is at the top.

11:11:05   4   A.  May 18th.

11:11:07   5   Q.  All right.  You were asked some questions about when Mr.

11:11:15   6   Fields and Mr. Hawkins elected a bench trial.  Do you remember

11:11:19   7   that question?

11:11:20   8   A.  Yes.

11:11:20   9   Q.  Isn't it true that during the trial you came to learn of

11:11:23   10  the bribe?

11:11:23   11  A.  Correct.

11:11:23   12  Q.  And you did not tell Mr. Fields' attorney, did you?

11:11:26   13  A.  No.

11:11:27   14  Q.  You were asked if you had the GPR report during discovery

11:11:39   15  and you said that you did?

11:11:40   16  A.  Yes.

11:11:40   17  Q.  But you didn't get it until April '86 isn't that also

11:11:44   18  true?

11:11:44   19  A.  I don't know.

11:11:46   20  Q.  All right.  Showing you a copy plaintiff's 86-11, this is

11:11:55   21  an official supp report on a different subject, correct?

11:11:58   22  A.  Yes.

11:12:00   23  Q.  And the official supp reports, if it's submitted on the

11:12:04   24  30th of April, 1984 will have a date stamp of when it's

11:12:09   25  received, correct?

12/01/16 AM          ***REALTIME UNEDITED TRANSCRIPT ONLY***

| | | |
|---|---|---|
| 11:12:10 | 1 | A. Yeah, okay. |
| 11:12:11 | 2 | Q. Can you read the date stamp that this April 30th report |
| 11:12:14 | 3 | was received by the police department? |
| 11:12:17 | 4 | A. May 1st, 1984. |
| 11:12:18 | 5 | Q. All right. GPRs bear no such stamp, correct? |
| 11:12:24 | 6 | A. I don't know. |
| 11:12:25 | 7 | Q. Showing you a copy of Plaintiff's Exhibit 12 which is also |
| 11:12:28 | 8 | Defendant's Exhibit 70, just confirm, there is no date stamp |
| 11:12:31 | 9 | on that document, correct? |
| 11:12:32 | 10 | A. There is not. |
| 11:12:34 | 11 | Q. All right. You told Mr. Burns that you believe you heard |
| 11:12:40 | 12 | Sumner say that Nate confessed. Do you remember that? |
| 11:12:42 | 13 | A. Say that again. |
| 11:12:44 | 14 | Q. Would it be fair to say you are not exactly sure anymore |
| 11:12:50 | 15 | you were actually there when Sumner said Nate confessed it was |
| 11:12:53 | 16 | a good exercise or are you sure, either way? |
| 11:12:56 | 17 | A. I know that he told me. |
| 11:12:59 | 18 | Q. At some point preparing for trial, right? |
| 11:13:01 | 19 | A. My recollection is that I knew that early on. That's my |
| 11:13:05 | 20 | recollection. |
| 11:13:05 | 21 | Q. Do you have any notes? |
| 11:13:07 | 22 | MR. KULWIN: Objection, Judge, asked and answered. |
| 11:13:08 | 23 | THE WITNESS: No. |
| 11:13:09 | 24 | MR. KULWIN: On direct. |
| 11:13:10 | 25 | THE COURT: Sustained. |

                    ***REALTIME UNEDITED TRANSCRIPT ONLY***

12/01/16 AM   Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 78 of 133 PageID #:31580
***REALTIME UNEDITED TRANSCRIPT ONLY***

77

| | | |
|---|---|---|
| 11:13:11 | 1 | BY MR. LOEVY: |
| 11:13:11 | 2 | Q.  You did say you had notes in preparing for the grand jury? |
| 11:13:15 | 3 | MR. KULWIN:  Objection, Judge. |
| 11:13:16 | 4 | THE COURT:  The question that you just asked that I |
| 11:13:18 | 5 | sustained the question to, you asked that exact question |
| 11:13:21 | 6 | during direct and I sustained it.  You are re-asking it on |
| 11:13:26 | 7 | redirect. |
| 11:13:26 | 8 | MR. LOEVY:  Understood. |
| 11:13:27 | 9 | BY MR. LOEVY: |
| 11:13:28 | 10 | Q.  Mr. Sumner during these debreifings made an allegation |
| 11:13:31 | 11 | that too much force was used against him, correct? |
| 11:13:33 | 12 | A.  When? |
| 11:13:35 | 13 | Q.  He later claimed that during the debriefings in Cleveland |
| 11:13:41 | 14 | more force than was appropriate was used on him, correct? |
| 11:13:44 | 15 | A.  What are you talking about? |
| 11:13:45 | 16 | Q.  At trial, didn't he -- wasn't he impeached with the fact |
| 11:13:50 | 17 | that he was making this allegation that there was too much |
| 11:13:52 | 18 | force used against him? |
| 11:13:53 | 19 | A.  Are you talking about the statement he made to the |
| 11:13:56 | 20 | defendants' lawyers? |
| 11:13:57 | 21 | Q.  Right.  And we have already covered that at this trial, so |
| 11:14:00 | 22 | I am just asking when you were present? |
| 11:14:02 | 23 | MR. KULWIN:  Judge, I'm going to object. |
| 11:14:04 | 24 | THE COURT:  Overruled.  Finish the question, please. |
| 11:14:07 | 25 | BY MR. LOEVY: |

| | | |
|---|---|---|
| 11:14:08 | 1 | Q. When you were present, none of that happened, correct? |
| 11:14:10 | 2 | A. Correct. |
| 11:14:10 | 3 | Q. And you were in and out of the rooms, correct? |
| 11:14:13 | 4 | A. Correct. |
| 11:14:13 | 5 | Q. But obviously if you had seen too much force, you would |
| 11:14:16 | 6 | not have permitted that, correct? |
| 11:14:17 | 7 | A. Correct. |
| 11:14:18 | 8 | MR. LOEVY: All right. I have no further questions, |
| 11:14:20 | 9 | your Honor. |
| 11:14:20 | 10 | THE COURT: Mr. Burns, anything else? |
| 11:14:21 | 11 | MR. BURNS: I would, Judge. Before I do, I need to |
| 11:14:26 | 12 | discuss. |
| 11:14:26 | 13 | THE COURT: Sidebar. |
| 11:14:37 | 14 | (The following proceedings were had at sidebar outside the |
| 11:14:38 | 15 | hearing of the jury:) |
| 11:14:38 | 16 | THE COURT: Yes. |
| 11:14:39 | 17 | MR. BURNS: I want to be careful, Judge, counsel |
| 11:14:41 | 18 | asked a question of Mr. Wharrie that he knew about the bribe. |
| 11:14:48 | 19 | I believe that opens the he was told there might be a bribe |
| 11:14:51 | 20 | that was being passed on behalf of both individuals. I'm |
| 11:14:54 | 21 | concerned now that I'd like to ask the question -- |
| 11:14:55 | 22 | THE COURT: Why would him opening the door to that be |
| 11:14:59 | 23 | -- why would his knowledge about the bribe and failure to tell |
| 11:15:02 | 24 | Fields about it open the door to what he was told about the |
| 11:15:07 | 25 | purpose of the bribe? I don't get it. It doesn't make sense |

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 80 of 133 PageID #:31582
***REALTIME UNEDITED TRANSCRIPT ONLY***

79

| | | |
|---|---|---|
| 11:15:09 | 1 | to me. |
| 11:15:09 | 2 | MR. BURNS:  I'm saying that he's raised the issue. |
| 11:15:12 | 3 | THE COURT:  Yeah, I don't understand why that would |
| 11:15:13 | 4 | open the door to this underlying statement. |
| 11:15:16 | 5 | MR. BURNS:  I would like to ask him, you did know the |
| 11:15:19 | 6 | bribe was being passed, you had been told the bribe was being |
| 11:15:23 | 7 | passed on behalf of both. |
| 11:15:25 | 8 | THE COURT:  Who was he told that by? |
| 11:15:28 | 9 | MR. BURNS:  It was coming through information that |
| 11:15:29 | 10 | they had from the FBI that was involved in this through the |
| 11:15:34 | 11 | state's attorney's office and he as the prosecutor in that |
| 11:15:37 | 12 | case was made aware of that, that they had received the |
| 11:15:38 | 13 | information, Michael Roland (phonetic) who was the direct |
| 11:15:42 | 14 | supervisor made him aware of this. |
| 11:15:43 | 15 | MR. LOEVY:  It's hearsay.  He was told by some |
| 11:15:46 | 16 | unknown declarant that it was on behalf of both and it doesn't |
| 11:15:50 | 17 | go to anything, and therefore what?  Therefore what?  So he |
| 11:15:53 | 18 | knew. |
| 11:15:54 | 19 | THE COURT:  What is the therefore what? |
| 11:16:00 | 20 | MR. KULWIN:  He's raised the inference to the jury |
| 11:16:02 | 21 | that you knew about this alleged bribe and you never told Nate |
| 11:16:04 | 22 | Fields or Nate Fields never had the opportunity to withdraw |
| 11:16:06 | 23 | from the alleged conspiracy or to make a note of it or raise |
| 11:16:09 | 24 | it later on, and you held that back. |
| 11:16:11 | 25 | THE COURT:  Okay.  What about that? |

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 81 of 133 PageID #:31583
***REALTIME UNEDITED TRANSCRIPT ONLY***

80

| | | |
|---|---|---|
| 11:16:12 | 1 | MR. LOEVY:  That's actually consistent with him |
| 11:16:15 | 2 | saying, I didn't tell Nate.  Why would he tell Nate's attorney |
| 11:16:17 | 3 | if Nate was allegedly involved in it?  The FBI is |
| 11:16:18 | 4 | investigating it. |
| 11:16:19 | 5 | THE COURT:  I think that's Mr. Kulwin's point.  In |
| 11:16:21 | 6 | other words -- in other words, you asked two questions.  You |
| 11:16:23 | 7 | asked did you learn about the bribe?  Answer, yes.  Did you |
| 11:16:26 | 8 | tell Mr. Fields' attorney?  Answer, no.  Arguably that leaves |
| 11:16:29 | 9 | the jury with the impression that there was something he |
| 11:16:32 | 10 | withheld from Mr. Fields during the trial of the case, and so |
| 11:16:35 | 11 | what he is being asked to do is explain why didn't you tell |
| 11:16:39 | 12 | Mr. Fields' attorney. |
| 11:16:39 | 13 | MR. LOEVY:  Well, even if it was purely Hawkins, |
| 11:16:43 | 14 | they're co-defendants, you couldn't tell -- |
| 11:16:44 | 15 | THE COURT:  Mr. Loevy, this is where your |
| 11:16:46 | 16 | carelessness gets the better of you.  Here's what's going to |
| 11:16:49 | 17 | happen.  This is going to be done extremely carefully.  Okay? |
| 11:16:56 | 18 | So it's going to be was there a reason, was there a reason why |
| 11:16:59 | 19 | you didn't tell Mr. Fields' attorney about the bribe?  If he |
| 11:17:03 | 20 | says no, that's the end.  If he says yes, then you're going to |
| 11:17:08 | 21 | ask him a leading question, was it the reason and what you had |
| 11:17:11 | 22 | been told was that the bribe had been passed on behalf of both |
| 11:17:14 | 23 | of the defendants? |
| 11:17:16 | 24 | You understand he will answer yes to that question? |
| 11:17:16 | 25 | I'm assuming you do. |

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 82 of 133 PageID #:31584
***REALTIME UNEDITED TRANSCRIPT ONLY***

81

| | | |
|---|---|---|
| 11:17:20 | 1 | MR. KULWIN:  Yes. |
| 11:17:20 | 2 | THE COURT:  That's the way you're going to do it. |
| 11:17:21 | 3 | MR. KULWIN:  It seems to me that Mr. Loevy by raising |
| 11:17:24 | 4 | this about wild stories that Sumner told the police about all |
| 11:17:27 | 5 | sorts of El Rukn -- |
| 11:17:28 | 6 | THE COURT:  That was his words, it was somebody |
| 11:17:29 | 7 | else's words.  He quoted that. |
| 11:17:31 | 8 | MR. KULWIN:  That's true.  But the inference is that |
| 11:17:35 | 9 | Sumner is a nut job and none of the stuff -- |
| 11:17:38 | 10 | THE COURT:  If people do not think that Sumner has |
| 11:17:41 | 11 | been covered -- what I do want to put in?  Just tell me. |
| 11:17:47 | 12 | MR. KULWIN:  That it was corroborated by a number of |
| 11:17:49 | 13 | other witnesses. |
| 11:17:50 | 14 | THE COURT:  That's argumentative. |
| 11:17:54 | 15 | (The following proceedings were had in open court in the |
| 11:17:55 | 16 | presence and hearing of the jury:) |
| 11:17:55 | 17 | THE COURT:  Okay.  Mr. Burns, you can go ahead. |
| 11:18:00 | 18 | - - - |
| 11:18:00 | 19 | LAWRENCE WHARRIE, CROSS-EXAMINATION |
| 11:18:01 | 20 | BY MR. BURNS: |
| 11:18:01 | 21 | Q.  Mr. Wharrie, I'm going to ask you a very direct question. |
| 11:18:18 | 22 | Listen closely to it.  Counsel asked you were you aware of a |
| 11:18:23 | 23 | bribe.  Do you remember that question? |
| 11:18:24 | 24 | A.  Yes. |
| 11:18:25 | 25 | Q.  And he asked you that you didn't tell Mr. Fields about it. |

12/01/16 AM    Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 83 of 133 PageID #:31585
***REALTIME UNEDITED TRANSCRIPT ONLY***

82

| | | |
|---|---|---|
| 11:18:32 | 1 | Do you remember that question? |
| 11:18:33 | 2 | A.  Yes. |
| 11:18:33 | 3 | Q.  Is there a reason you did not tell Mr. Fields or his |
| 11:18:41 | 4 | counsel about the bribe, yes or no? |
| 11:18:44 | 5 | A.  Yes. |
| 11:18:46 | 6 | Q.  And what was the? |
| 11:18:51 | 7 | MR. KULWIN:  No. |
| 11:18:53 | 8 | THE COURT:  Leading question, employees. |
| 11:18:55 | 9 | MR. KULWIN:  Sorry, Judge. |
| 11:18:56 | 10 | THE COURT:  Don't apologize. |
| 11:18:58 | 11 | BY MR. BURNS: |
| 11:19:04 | 12 | Q.  And was the reason that that was not shared with the |
| 11:19:09 | 13 | attorneys for Mr. Fields that Mr. Fields was involved in that |
| 11:19:21 | 14 | bribe? |
| 11:19:23 | 15 | THE COURT:  The jury is directed to disregard the |
| 11:19:25 | 16 | question completely.  Let me see you again at sidebar. |
| 11:19:34 | 17 | (The following proceedings were had at sidebar outside the |
| 11:19:35 | 18 | hearing of the jury:) |
| 11:19:35 | 19 | THE COURT:  Oh, my God.  I gave you the wording on |
| 11:19:43 | 20 | it. |
| 11:19:44 | 21 | MR. BURNS:  I thought I was trying to -- |
| 11:19:46 | 22 | THE COURT:  You aren't even close. |
| 11:19:48 | 23 | MR. LOEVY:  Your Honor. |
| 11:19:48 | 24 | THE COURT:  Hold on one second.  So just to be real |
| 11:20:18 | 25 | clear, I know you guys ordered the realtime feed, I got what I |

12/01/16 AM    Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 84 of 133 PageID #:31586
***REALTIME UNEDITED TRANSCRIPT ONLY***

83

| | |
|---|---|
| 11:20:26 | 1 |
| 11:20:30 | 2 |
| 11:20:33 | 3 |
| 11:20:38 | 4 |
| 11:20:40 | 5 |
| 11:20:43 | 6 |
| 11:20:46 | 7 |
| 11:20:48 | 8 |
| 11:20:51 | 9 |
| 11:20:54 | 10 |

1  told you to ask was exactly what you told me, what would the
2  evidence be, you said that he had been told that the bribe had
3  been passed on behalf of both defendants.  So I said is the
4  reason you didn't tell Mr. Fields' attorney was that you had
5  been told that the bribe had been passed on behalf of both
6  defendants.  That's the question you can ask him.  You asked
7  something different from that.  Were you told that Fields was
8  involved in the bribe.  It's something different.  It's
9  completely different.  That's -- so I'm going to give you one
10 more try.  If you botch it, it's excluded.

11  MR. LOEVY:  Your Honor, we would like to be heard if
12 we could.

13  THE COURT:  You have been heard.  You have been
14 heard.

15  MR. BURNS:  May I have one moment, Judge.

16  (The following proceedings were had in open court in the
17 presence and hearing of the jury:)

18 BY MR. BURNS:

19 Q.  Following up on the last question, and was the reason was
20 because you had been told the bribe had been passed on behalf
21 of both defendants, yes or no?

22 A.

23  THE COURT:  It's either yes or no.  It's a yes or no
24 question.  You're going to have to answer it that way.

25  THE WITNESS:  Yes.

***REALTIME UNEDITED TRANSCRIPT ONLY***

| 11:22:16 | 1 | MR. BURNS:  Thank you, your Honor. |
| 11:22:18 | 2 | THE COURT:  Anything else, Mr. Burns? |
| 11:22:19 | 3 | MR. BURNS:  No. |
| 11:22:20 | 4 | THE COURT:  Mr. Kulwin? |
| 11:22:21 | 5 | MR. KULWIN:  Yes, Judge. |
| 11:22:23 | 6 | - - - |
| 11:22:23 | 7 | LAWRENCE WHARRIE, RECROSS-EXAMINATION |
| 11:22:23 | 8 | BY MR. KULWIN: |
| 11:22:24 | 9 | Q.  Mr. Wharrie, you were asked some questions, it's worse |
| 11:22:30 | 10 | being a witness than being a lawyer? |
| 11:22:31 | 11 | A.  Yes, it is. |
| 11:22:33 | 12 | THE COURT:  That's always been true, by the way. |
| 11:22:35 | 13 | BY MR. KULWIN: |
| 11:22:38 | 14 | Q.  You were asked some questions about whether the only |
| 11:22:43 | 15 | documentation that there would say -- that the motive for the |
| 11:22:47 | 16 | shooting or that there was no written documentation that the |
| 11:22:50 | 17 | motive for the shooting was a conflict between the Goon Squad |
| 11:22:54 | 18 | and the El Rukns.  Do you remember those questions? |
| 11:22:57 | 19 | MR. LOEVY:  Objection, your Honor. |
| 11:22:57 | 20 | THE COURT:  I actually sustained an objection to that |
| 11:22:59 | 21 | question.  Just get to the question you are going to ask. |
| 11:23:02 | 22 | BY MR. KULWIN: |
| 11:23:02 | 23 | Q.  There was a written documentation -- let me show you |
| 11:23:05 | 24 | Plaintiff's Exhibit 86.  This is a statement -- |
| 11:23:10 | 25 | MR. KULWIN:  Can I have the ELMO? |

***REALTIME UNEDITED TRANSCRIPT ONLY***

Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 86 of 133 PageID #:31588

11:23:12    1         THE COURT:  You have it.

11:23:12    2    BY MR. KULWIN:

11:23:13    3    Q.  This is a statement made by Mr. Fields --

11:23:17    4         MR. LOEVY:  Reject that characterization, your Honor.

11:23:20    5         THE COURT:  Rephrase the question.  Actually, this --

11:23:23    6    if you go backup to the top.

11:23:25    7         MR. KULWIN:  Sure.

11:23:27    8         THE COURT:  Just rephrase the question.

11:23:30    9         MR. KULWIN:  Can I zoom back in, your Honor.

11:23:32   10         THE COURT:  Yes.  I wanted to get the jury to get a

11:23:35   11    policemen memory of what they were looking at.

11:23:38   12    BY MR. KULWIN:

11:23:39   13    Q.  Isn't it true you had a police report in the permanent

11:23:44   14    retention file that had a transcribed statement by Mr. Fields

11:23:45   15    in which he says he was asked about the motive, this is Mr.

11:23:50   16    Fields talking now, and stated that he did not know for sure

11:23:53   17    but that two members of the El Rukns had been shot by members

11:23:57   18    of the Goon Squad of the disciples.  He stated that Fuddy was

11:24:01   19    a known member of the disciples.  You had that as part of the

11:24:06   20    information before trial, correct?

11:24:07   21    A.  Correct.

11:24:08   22    Q.  And lastly, on this point, not to beat it into the ground,

11:24:21   23    but on this point of a hit team, four guys who get in a car

11:24:24   24    and get a bunch of guns to go assassinate somebody and don't

11:24:28   25    do it are not liable if the next day four other guys get no a

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 87 of 133 PageID #:31589
***REALTIME UNEDITED TRANSCRIPT ONLY***

86

| | | |
|---|---|---|
| 11:24:33 | 1 | car with a bunch of guns and actually go out and murder the |
| 11:24:36 | 2 | people, right? |
| 11:24:37 | 3 | MR. LOEVY: Objection, relevance, your Honor, why. |
| 11:24:39 | 4 | THE COURT: Phrased that way, I am going to let you |
| 11:24:42 | 5 | ask it. Objection sustained. |
| 11:24:43 | 6 | MR. KULWIN: I will rephrase. |
| 11:24:44 | 7 | MR. LOEVY: Actually, it's covered on direct. |
| 11:24:46 | 8 | THE COURT: Hang on. Go ahead and ask the question. |
| 11:24:48 | 9 | BY MR. KULWIN: |
| 11:24:49 | 10 | Q. The four guys who get into a car and actually shoot the |
| 11:24:54 | 11 | guy, are they responsible under the law as the hit team for |
| 11:24:58 | 12 | the double murder? |
| 11:24:59 | 13 | A. Correct. |
| 11:24:59 | 14 | Q. If the four -- if four other guys get into a car and drive |
| 11:25:03 | 15 | around and think about it but never do it, they're not |
| 11:25:06 | 16 | responsible under the law? |
| 11:25:07 | 17 | MR. LOEVY: Same objection, not relevance. |
| 11:25:12 | 18 | MR. KULWIN: It's responding to his statement. |
| 11:25:13 | 19 | THE COURT: Responsible under the law was not part of |
| 11:25:16 | 20 | the question. The objection is sustained. Let me just get |
| 11:25:19 | 21 | you over at sidebar for a second so I can tell you what I see |
| 11:25:22 | 22 | the real problem is. I apologize. |
| 11:25:29 | 23 | MR. KULWIN: |
| 11:25:30 | 24 | THE COURT: I'm poll apologizing to them not to you |
| 11:25:35 | 25 | (sidebar. |

Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 88 of 133 PageID #:31590

11:25:35  1        THE COURT:  The question you asked as you know is a

11:25:38  2   completely complicated question about accountability and

11:25:41  3   conspiracy law.

11:25:42  4        MR. KULWIN:  Okay.  Too complicated.  Thanks, Judge.

11:25:45  5     (The following proceedings were had in open court in the

11:25:49  6   presence and hearing of the jury:)

11:25:49  7        THE COURT:  I apologize to lawyers only rarely.

11:25:52  8   Let's put it that way.

11:25:53  9        MR. KULWIN:  It's always welcome.

11:25:55 10        I have nothing else, your Honor.

11:25:57 11        THE COURT:  Mr. Loevy.

11:25:59 12                          - - -

11:25:59 13        LAWRENCE WHARRIE, REDIRECT EXAMINATION

11:25:59 14   BY MR. LOEVY:

11:26:01 15   Q.  You have no personal knowledge about the bribe, correct?

11:26:03 16   A.  Correct.

11:26:03 17   Q.  You were asked questions about whether there's any

11:26:06 18   documentation.  Focusing specifically on whether any witness

11:26:11 19   other than the police officers and the cooperators, no Goon

11:26:15 20   Squad member said that there was any shooting between the El

11:26:18 21   Rukns and the Goon Squads, correct?

11:26:20 22        MR. KULWIN:  I'll object, covered already.

11:26:23 23        THE COURT:  Yes, he did.

11:26:24 24        MR. LOEVY:  I don't have any further questions.

11:26:25 25        THE COURT:  Do any of the jurors have any questions

| | | |
|---|---|---|
| 11:26:27 | 1 | for the witness.  I do not see anybody writing.  You just |
| 11:26:32 | 2 | raise your hand and waive.  I will apologize again that we |
| 11:26:35 | 3 | didn't do a break.  I'm so sorry.  We are taking our break. |
| 11:26:39 | 4 |   (Short break.) |
| 11:41:21 | 5 |   (The jury enters the courtroom.) |
| 11:41:21 | 6 |     THE COURT:  Mr. Murphy, you can come back up. |
| 11:41:56 | 7 |     Mr. Murphy, do you understand that you are still |
| 11:41:59 | 8 | under oath. |
| 11:42:00 | 9 |     THE WITNESS:  Yes, I do. |
| 11:42:01 | 10 |     THE COURT:  Let me do what's necessary to flip on the |
| 11:42:04 | 11 | wireless mic.  It should be working now.  Mr. Loevy, you can |
| 11:42:08 | 12 | go ahead. |
| 11:42:08 | 13 |         - - - |
| 11:42:08 | 14 |     JOSEPH MURPHY, DIRECT EXAMINATION CONTINUED |
| 11:42:08 | 15 | BY MR. LOEVY: |
| 11:42:13 | 16 | Q.  When we broke yesterday afternoon, you told us that you |
| 11:42:16 | 17 | always promised that if they get into trouble, you'll support |
| 11:42:20 | 18 | them at their parole hearings? |
| 11:42:24 | 19 |     MR. BURNS:  Objection, mischaracterizing the |
| 11:42:26 | 20 | testimony. |
| 11:42:26 | 21 |     THE COURT:  Overruled. |
| 11:42:27 | 22 |     THE WITNESS:  Could you repeat the question again? |
| 11:42:29 | 23 | BY MR. LOEVY: |
| 11:42:30 | 24 | Q.  What did you say you promised your cooperators, vis-à-vis |
| 11:42:35 | 25 | their parole when they first agreed to cooperate? |

Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 90 of 133 PageID #:31592

11:42:37   1   A.  I told them I couldn't make any promises to what would
11:42:41   2   happen to their sentence if they were found guilty or anything
11:42:44   3   like that, but I would bring to the attention of the
11:42:49   4   prosecutors and the state's attorneys in this case or the
11:42:55   5   federal attorneys.
11:42:56   6   Q.  Didn't you say last night, parole specifically?
11:43:00   7          MR. KULWIN:  Objection.
11:43:02   8          MR. BURNS:  Objection.
11:43:03   9          THE COURT:  He has to finish his answer.
11:43:05  10          THE WITNESS:  I would bring my attention to them and
11:43:07  11   if there was need be if there were other judicial hearings or
11:43:11  12   parole hearings, I would bring the attention to those members
11:43:14  13   of their cooperation as long as it's been truthful.
11:43:17  14   BY MR. LOEVY:
11:43:18  15   Q.  All right.  Are you going to honor your promise to
11:43:21  16   Derrick?
11:43:22  17   A.  I was never asked to.
11:43:27  18   Q.  Are you going to when owes's up for parole, keep your
11:43:31  19   promise if he is up for parole?
11:43:35  20          MR. BURNS:  Objection, your Honor?
11:43:37  21          THE COURT:  Overruled.
11:43:37  22          THE WITNESS:  If I am asked to, I will.
11:43:41  23   BY MR. LOEVY:
11:43:41  24   Q.  Have you ever intervened on any other murders's parole on
11:43:45  25   their behalf?

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 91 of 133 PageID #:31593
***REALTIME UNEDITED TRANSCRIPT ONLY***

90

11:43:45  1   A.  I have never been asked to.

11:43:47  2         MR. BURNS:  Objection to the form of the question,

11:43:48  3   your Honor.

11:43:48  4         THE COURT:  Overruled.

11:43:49  5   BY MR. LOEVY:

11:43:49  6   Q.  Have you ever done it?

11:43:51  7         MR. KULWIN:  Objection, asked and answered.

11:43:52  8         THE COURT:  Well, the question was if every had.  He

11:43:55  9   said he had never been asked to.  I am going to let him ask

11:43:59  10  the question, have you ever done it or not.

11:44:03  11        THE WITNESS:  No.

11:44:04  12  BY MR. LOEVY:

11:44:04  13  Q.  Do you have they understanding with Derrick whether he

11:44:07  14  asks you if you will support him?

11:44:09  15  A.  I made that offer to him when he cooperated with us back

11:44:13  16  in 89 or 88, I believe.

11:44:16  17  Q.  Is it your understanding presently that Derrick Kees has

11:44:18  18  an understanding that in connection with his testimony, you're

11:44:22  19  going to help him with his parole next year?

11:44:24  20        MR. KULWIN:  Objection, argumentative, asked and

11:44:27  21  answered.

11:44:30  22        THE COURT:  Rephrase the question.

11:44:33  23  BY MR. LOEVY:

11:44:33  24  Q.  Do you have an understanding with Derrick that when he's

11:44:36  25  up for parole next year, you're going to help him?

| | | |
|---|---|---|
| 11:44:39 | 1 | A. Well, as I mentioned, I made that -- I made that promise |
| 11:44:45 | 2 | to him back in '88 or 89.  I haven't had any conversation with |
| 11:44:51 | 3 | Derrick Kees since 1988 or 89. |
| 11:44:54 | 4 | Q. All right.  Have you talked to anybody on his behalf? |
| 11:44:57 | 5 | A. No, sir. |
| 11:44:58 | 6 | Q. How about the information that Derrick provided yesterday. |
| 11:45:04 | 7 | I want to talk to you about that specifically. |
| 11:45:07 | 8 |        Now, one of the things he told you was I overheard |
| 11:45:10 | 9 | four people confess, right? |
| 11:45:11 | 10 | A. Derrick Kees? |
| 11:45:13 | 11 | Q. Yeah. |
| 11:45:14 | 12 | A. I believe so. |
| 11:45:14 | 13 | Q. Now, a jail house confession by somebody who is looking |
| 11:45:18 | 14 | for a deal, that has limited probable cause value, would you |
| 11:45:21 | 15 | agree? |
| 11:45:21 | 16 |        MR. KULWIN:  Objection, Judge, jail house confession, |
| 11:45:24 | 17 | argumentative and misstates the evidence. |
| 11:45:26 | 18 |        THE COURT:  Overruled.  You can answer. |
| 11:45:29 | 19 | BY MR. LOEVY: |
| 11:45:29 | 20 | Q. Mr. Kulwin was in a jail house, a correctional facility, |
| 11:45:32 | 21 | correct? |
| 11:45:34 | 22 | A. When he had the conversation? |
| 11:45:39 | 23 | Q. No, when you're interacting with him? |
| 11:45:42 | 24 | A. Oh, when I was interacting with him? |
| 11:45:44 | 25 | Q. Yeah. |

12/01/16 AM    ***REALTIME UNEDITED TRANSCRIPT ONLY***

92

| | | |
|---|---|---|
| 11:45:45 | 1 | A. Yes, he was under arrest. |
| 11:45:47 | 2 | Q. So this is literally the equivalent of a jail house snitch |
| 11:45:50 | 3 | trying to make a deal for himself by implicating other people, |
| 11:45:56 | 4 | correct? |
| 11:45:57 | 5 | MR. KULWIN: Judge. |
| 11:45:59 | 6 | THE COURT: Overruled. |
| 11:45:59 | 7 | THE WITNESS: I don't believe so. |
| 11:46:00 | 8 | BY MR. LOEVY: |
| 11:46:01 | 9 | Q. Do you believe for probable cause value, for someone who |
| 11:46:04 | 10 | was in the kind of predicament be that Derrick Kees was in, he |
| 11:46:07 | 11 | would makeup something to help himself, could we agree on |
| 11:46:10 | 12 | that? |
| 11:46:10 | 13 | A. I don't believe so. |
| 11:46:11 | 14 | Q. All right. And isn't it true that if he wanted to be |
| 11:46:17 | 15 | credible for probable cause purposes e-has to put himself into |
| 11:46:20 | 16 | the crime? |
| 11:46:20 | 17 | MR. KULWIN: Judge, I am going to object, it calls |
| 11:46:22 | 18 | for speculation and argumentative. |
| 11:46:24 | 19 | THE COURT: Rephrase the question. It's a little |
| 11:46:26 | 20 | confusing I think. |
| 11:46:26 | 21 | BY MR. LOEVY: |
| 11:46:27 | 22 | Q. All right. There is a big difference between someone |
| 11:46:30 | 23 | saying, hey, I was in a booth once five years ago and someone |
| 11:46:34 | 24 | confessed to me, that's A, and, hey, I was in a booth once and |
| 11:46:38 | 25 | someone confessed to me but I'll put myself in the crime. |

***REALTIME UNEDITED TRANSCRIPT ONLY***

Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 94 of 133 PageID #:31596

| | | |
|---|---|---|
| 11:46:42 | 1 | Those are two very different things? |
| 11:46:43 | 2 | MR. KULWIN: Same objection, Judge. |
| 11:46:45 | 3 | THE COURT: Out -- overruled. I was writing out on |
| 11:46:47 | 4 | something. Overruled. |
| 11:46:52 | 5 | THE WITNESS: Are these hypotheticals you are giving |
| 11:46:55 | 6 | me? |
| 11:46:56 | 7 | BY MR. LOEVY: |
| 11:46:56 | 8 | Q. Yes. |
| 11:46:57 | 9 | A. I don't know. All I would do is present those statements |
| 11:47:02 | 10 | -- it's not my decision. |
| 11:47:03 | 11 | Q. All right. For probable cause purposes, would you agree |
| 11:47:06 | 12 | there's a big difference between A, I was in a booth once and |
| 11:47:10 | 13 | some guy confessed to me and I want a deal and, B, I was in a |
| 11:47:14 | 14 | booth once, some guy confessed to me, I want a deal and I was |
| 11:47:17 | 15 | part of the crime, B is a more serious story, right? |
| 11:47:20 | 16 | MR. KULWIN: Judge, I am going to object, |
| 11:47:21 | 17 | argumentative. |
| 11:47:22 | 18 | MR. LOEVY: He hasn't answered yet, your Honor. |
| 11:47:25 | 19 | THE COURT: The objection at this point is |
| 11:47:28 | 20 | argumentative. I am going to sustain the objection. |
| 11:47:29 | 21 | BY MR. LOEVY: |
| 11:47:30 | 22 | Q. All right. Mr. Kees did put himself into the story, |
| 11:47:34 | 23 | correct? |
| 11:47:34 | 24 | MR. KULWIN: Objection to story. |
| 11:47:36 | 25 | THE COURT: Overruled. Actually, no, use a |

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 95 of 133 PageID #:31597
***REALTIME UNEDITED TRANSCRIPT ONLY***

94

| | | |
|---|---|---|
| 11:47:39 | 1 | non-loaded word.  It's a question, not your closing argument. |
| 11:47:43 | 2 | BY MR. LOEVY: |
| 11:47:43 | 3 | Q.  All right.  You understand we don't agree whether Mr. Kees |
| 11:47:48 | 4 | was there? |
| 11:47:49 | 5 | MR. KULWIN:  Objection, Judge, what he agrees to. |
| 11:47:51 | 6 | THE COURT:  I told you to reword the question.  You |
| 11:47:54 | 7 | don't have to get his permission to do it.  You have your |
| 11:47:59 | 8 | direction from me. |
| 11:48:00 | 9 | BY MR. LOEVY: |
| 11:48:01 | 10 | Q.  Mr. Kees put himself in the scenario by claiming that he, |
| 11:48:07 | 11 | Hawkins, and Evans, he, Kees, Hawkins and Sumner were actually |
| 11:48:13 | 12 | the hit team, that's what he told you, right? |
| 11:48:15 | 13 | A.  Initially, they intended to kill the victim. |
| 11:48:22 | 14 | Q.  They got in a car with guns and set out to kill them but |
| 11:48:26 | 15 | then Derrick had to take a pee, right? |
| 11:48:29 | 16 | A.  Well, it's more than that.  I don't think I can answer |
| 11:48:35 | 17 | that yes or no. |
| 11:48:37 | 18 | Q.  You have talked to Anthony Sumner about it, right? |
| 11:48:40 | 19 | MR. KULWIN:  Objection, foundation, Judge. |
| 11:48:42 | 20 | THE COURT:  Overruled. |
| 11:48:44 | 21 | THE WITNESS:  Yes. |
| 11:48:45 | 22 | BY MR. LOEVY: |
| 11:48:45 | 23 | Q.  You talked to Anthony Sumner about this crime in great |
| 11:48:48 | 24 | detail, correct? |
| 11:48:49 | 25 | A.  Yes. |

| | | |
|---|---|---|
| 11:48:49 | 1 | Q.  It is a true statement that Anthony Sumner never once, |
| 11:48:53 | 2 | ever told you that Derrick Kees, Earl Hawkins, Harry Evans and |
| 11:48:58 | 3 | himself were involved in a plot to kill Fuddy, that's true, |
| 11:49:01 | 4 | isn't it? |
| 11:49:01 | 5 | A.  I don't recall. |
| 11:49:03 | 6 | Q.  Well, you would have made a note if that happened, |
| 11:49:06 | 7 | wouldn't you have?  Sir, are you saying -- |
| 11:49:09 | 8 | A.  I just don't recall that. |
| 11:49:10 | 9 | Q.  Let's slow down here. |
| 11:49:12 | 10 | Mr. Fields went on trial at which Anthony Sumner |
| 11:49:15 | 11 | pointed his finger and said he confessed, right? |
| 11:49:18 | 12 | A.  Yes. |
| 11:49:18 | 13 | Q.  And you're saying you don't recall whether Anthony Sumner |
| 11:49:21 | 14 | ever told you that he was involved in the murder? |
| 11:49:25 | 15 | MR. KULWIN:  Judge, I am going to -- it's |
| 11:49:27 | 16 | argumentative, Judge. |
| 11:49:29 | 17 | THE COURT:  Overruled. |
| 11:49:29 | 18 | THE WITNESS:  I just don't recall if I heard it from |
| 11:49:33 | 19 | Kees and Sumner.  I just can't recall.  I know I heard it from |
| 11:49:38 | 20 | Kees for sure. |
| 11:49:39 | 21 | BY MR. LOEVY: |
| 11:49:40 | 22 | Q.  If Anthony Sumner told you that he actually was part of |
| 11:49:43 | 23 | the murder plot, would you have written that down and given it |
| 11:49:46 | 24 | to Nate Fields? |
| 11:49:48 | 25 | A.  I would have given it to the state's attorney. |

| 11:49:51 | 1 | Q. All right. So if you didn't give it to the state's |
| 11:49:53 | 2 | attorney, can we have a high degree of confidence that Anthony |
| 11:49:56 | 3 | Sumner never told you that? |
| 11:49:56 | 4 | A. Again, I don't recall. |
| 11:49:59 | 5 | Q. All right. I am going to show you your notes from your |
| 11:50:01 | 6 | conversation with Anthony Sumner. |
| 11:50:03 | 7 | A. Okay. |
| 11:50:03 | 8 | Q. It's Defendant's Exhibit 70. Please tell us if Anthony |
| 11:50:09 | 9 | Sumner ever told you he was involved in the crime with Derrick |
| 11:50:11 | 10 | Kees? |
| 11:50:11 | 11 | A. No. |
| 11:50:31 | 12 | Q. What's that? |
| 11:50:31 | 13 | A. Not in this. |
| 11:50:33 | 14 | Q. Do you have other notes, sir? |
| 11:50:35 | 15 | A. No. |
| 11:50:35 | 16 | Q. That's the only notes you ever -- of your conversation |
| 11:50:37 | 17 | with Anthony Sumner; is that correct? |
| 11:50:39 | 18 | A. Yes, sir. |
| 11:50:39 | 19 | Q. And you did not write down that Anthony Sumner said he was |
| 11:50:42 | 20 | involved in the plot, did you? |
| 11:50:43 | 21 | A. He may have -- |
| 11:50:46 | 22 | Q. It's a yes, no, question. |
| 11:50:49 | 23 | A. He may have told me later. |
| 11:50:50 | 24 | MR. LOEVY: Objection, your Honor, that is not the |
| 11:50:53 | 25 | question. |

Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 98 of 133 PageID #:31600
12/01/16 AM                ***REALTIME UNEDITED TRANSCRIPT ONLY***

97

| | |
|---|---|
| 11:50:54 | 1 |
| 11:51:01 | 2 |
| 11:51:04 | 3 |
| 11:51:08 | 4 |
| 11:51:08 | 5 |
| 11:51:10 | 6 |
| 11:51:13 | 7 |
| 11:51:16 | 8 |
| 11:51:17 | 9 |
| 11:51:22 | 10 |
| 11:51:23 | 11 |
| 11:51:24 | 12 |
| 11:51:28 | 13 |
| 11:51:32 | 14 |
| 11:51:34 | 15 |
| 11:51:35 | 16 |
| 11:51:41 | 17 |
| 11:51:44 | 18 |
| 11:51:45 | 19 |
| 11:51:50 | 20 |
| 11:51:54 | 21 |
| 11:51:55 | 22 |
| 11:51:58 | 23 |
| 11:51:58 | 24 |
| 11:51:59 | 25 |

1    THE COURT:  Hang on a second.  The question is
2 whether you wrote it down.  The answer is stricken as
3 nonresponsive.  If you want to put the question again, go
4 ahead.
5 BY MR. LOEVY:
6 Q.  Isn't it true you've only had one and only one
7 conversation with Anthony Sumner about this crime?
8 A.  That's true.
9 Q.  And that one and only one conversation is memorialized in
10 your note, correct?
11 A.  True.
12 Q.  Tell the jury if Anthony Sumner ever told you that he,
13 Derrick Kees, Earl Hawkins and Harry Evans set out to kill
14 Fuddy?  Did he tell you that?
15 A.  Not that I recall.
16 Q.  Are you saying that -- if it's not in your notes, it's
17 possible he told you that and you didn't write it down, is
18 that a possibility, sir?
19 A.  I may have heard that later on in the other trials.
20 Q.  I'm talking about your meeting with Anthony Sumner?
21 A.  On the 14th of May?
22 Q.  That was the only debriefing you had with Anthony Sumner,
23 correct?
24 A.  No, that's correct.
25 Q.  All right.  Are you saying to the jury that it's possible

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 99 of 133 PageID #:31601
***REALTIME UNEDITED TRANSCRIPT ONLY***

98

| | | |
|---|---|---|
| 11:52:02 | 1 | Anthony Sumner told you he was involved in the murder and you |
| 11:52:05 | 2 | declined to write that down, is there any possibility of that? |
| 11:52:10 | 3 | A.  No, not on that day. |
| 11:52:11 | 4 | Q.  Can we say conclusively that the one and only one occasion |
| 11:52:15 | 5 | that you debriefed Anthony Sumner he did not mention that he, |
| 11:52:18 | 6 | Harry Evans, Earl Hawkins and Derrick Kees set out to kill |
| 11:52:23 | 7 | Fuddy? |
| 11:52:23 | 8 | MR. KULWIN:  I object, misstates the evidence, |
| 11:52:25 | 9 | argumentative. |
| 11:52:26 | 10 | THE COURT:  Objection.  The objection is overruled. |
| 11:52:28 | 11 | THE WITNESS:  One more time, please. |
| 11:52:30 | 12 | BY MR. LOEVY: |
| 11:52:30 | 13 | Q.  Can we say with certainty that on the one and only one |
| 11:52:34 | 14 | occasion you interviewed Anthony Sumner, he did not tell you |
| 11:52:36 | 15 | that he, Harry Evans, Earl Hawkins and Derrick Kees were part |
| 11:52:42 | 16 | of a team that went out to try to murder Fuddy? |
| 11:52:44 | 17 | A.  That's correct. |
| 11:52:45 | 18 | Q.  May I have it back, please? |
| 11:52:49 | 19 | A.  Yes, sir. |
| 11:52:49 | 20 | Q.  Earl Hawkins also never once told you that Anthony Sumner, |
| 11:52:57 | 21 | Harry Evans, Earl Hawkins and Derrick Kees went out in a car |
| 11:53:01 | 22 | with the intention of murdering Fuddy; isn't that correct? |
| 11:53:07 | 23 | A.  I don't recall. |
| 11:53:07 | 24 | Q.  Would you have written it down? |
| 11:53:09 | 25 | A.  I may have been part of the discussions.  I just don't |

| | | |
|---|---|---|
| 11:53:15 | 1 | recall that. |
| 11:53:15 | 2 | Q.  All right. |
| 11:53:16 | 3 | A.  He may have said it -- |
| 11:53:19 | 4 | Q.  Have you ever heard Earl Hawkins say that Anthony Sumner |
| 11:53:21 | 5 | was involved in the murder, you would have taken a note, |
| 11:53:24 | 6 | wouldn't you have, sir? |
| 11:53:24 | 7 | A.  Well, Hawkins eventually says he was involved in the |
| 11:53:29 | 8 | murder. |
| 11:53:29 | 9 | Q.  All right.  Sir, you have no notes anywhere in existence |
| 11:53:34 | 10 | reflecting that Derrick Kees, Earl Hawkins, Harry Evans and |
| 11:53:38 | 11 | Anthony Sumner supposedly wept out to murder them from Earl |
| 11:53:43 | 12 | Hawkins conversation; isn't that true? |
| 11:53:45 | 13 | A.  Not that I recall. |
| 11:53:46 | 14 | Q.  How about Harry Evans, did Harry Evans ever admit that he |
| 11:53:50 | 15 | was part of this hit team? |
| 11:53:51 | 16 | A.  I don't recall that either, sir.  Those were years later, |
| 11:53:57 | 17 | those interviews. |
| 11:53:58 | 18 | Q.  Now, the confession that Kees attributed to Nate, that was |
| 11:54:06 | 19 | the, yeah, it's a good exercise confession, right? |
| 11:54:11 | 20 | A.  Who are we talking about, Kees or who? |
| 11:54:15 | 21 | Q.  Obviously, the original confession that Anthony supposed |
| 11:54:18 | 22 | got from Nate at a secret meeting in the Fort was what? |
| 11:54:21 | 23 | A.  He said that. |
| 11:54:25 | 24 | Q.  Said what? |
| 11:54:26 | 25 | A.  That it was good -- Sumner told me that he met I believe |

| | | |
|---|---|---|
| 11:54:32 | 1 | it was the same day of the shooting but later on, he met Mr. |
| 11:54:37 | 2 | Fields over at the Fort. |
| 11:54:39 | 3 | Q.  Just the two of them were having a private conversation? |
| 11:54:44 | 4 | A.  He only mentioned himself and Mr. Fields. |
| 11:54:46 | 5 | Q.  And you saw his testimony this morning.  He said it was a |
| 11:54:49 | 6 | private conversation, just the two of them, right? |
| 11:54:51 | 7 | A.  I saw what? |
| 11:54:52 | 8 | Q.  His testimony was read this morning through Mr. Wharrie. |
| 11:54:55 | 9 | Do you remember that? |
| 11:54:56 | 10 | A.  Yes, yes, it appears so. |
| 11:54:58 | 11 | Q.  And what you're claiming -- what was the exact words that |
| 11:55:01 | 12 | implicated Mr. Fields when they had that conversation? |
| 11:55:05 | 13 | A.  The exact words, I quote it was, I believe, yeah, it was a |
| 11:55:13 | 14 | good exercise. |
| 11:55:13 | 15 | Q.  Now, you're talking to Derrick Kees some four years later, |
| 11:55:16 | 16 | right? |
| 11:55:16 | 17 | A.  About four or five years later. |
| 11:55:18 | 18 | Q.  And Derrick is now trying to be useful to law enforcement, |
| 11:55:21 | 19 | right? |
| 11:55:21 | 20 | A.  He's decided to cooperate.  Actually, he decided to |
| 11:55:26 | 21 | cooperate before that. |
| 11:55:28 | 22 | Q.  Okay.  Well, when did he decide to start cooperating? |
| 11:55:31 | 23 | A.  Strike that.  I was thinking about Hawkins.  Kees decided |
| 11:55:40 | 24 | to cooperate in I think it was -- |
| 11:55:45 | 25 | Q.  March 89, right? |

| | | |
|---|---|---|
| 11:55:48 | 1 | A. 89 we met him. |
| 11:55:50 | 2 | Q. When Kees was talking to you about, you know, ways he |
| 11:55:53 | 3 | could be -- he was talking to you about ways he could be |
| 11:55:55 | 4 | useful to law enforcement, correct? |
| 11:55:56 | 5 | A. Well, there was an initial meeting I had with Kees along |
| 11:56:01 | 6 | with Detective O'Callaghan. |
| 11:56:03 | 7 | Q. All right. Did you say to Kees or did O'Callaghan say to |
| 11:56:06 | 8 | Kees in your presence, hey, did Nate say it was a good |
| 11:56:10 | 9 | exercise? |
| 11:56:10 | 10 | A. Well. |
| 11:56:13 | 11 | Q. Can you answer that question? |
| 11:56:14 | 12 | A. There's different conversations. That's what I'm trying |
| 11:56:18 | 13 | to point out. We're talking about -- I just need some |
| 11:56:24 | 14 | clarity. |
| 11:56:24 | 15 | MR. KULWIN: Objection. |
| 11:56:25 | 16 | BY MR. LOEVY: |
| 11:56:25 | 17 | Q. At any conversation, did you ever say or hear O'Callaghan |
| 11:56:30 | 18 | say to Mr. Kees, hey, did Nate say it was a good exercise? |
| 11:56:33 | 19 | A. I don't recall. |
| 11:56:34 | 20 | Q. All right. If Kees was asked, hey, did Nate say it was a |
| 11:56:40 | 21 | good exercise, what was Kees' response, yes? |
| 11:56:43 | 22 | MR. BURNS: Objection, form of the question, your |
| 11:56:50 | 23 | Honor. |
| 11:56:51 | 24 | THE COURT: Sustained. |
| 11:56:51 | 25 | BY MR. LOEVY: |

***REALTIME UNEDITED TRANSCRIPT ONLY***

11:56:53  1  Q.  All right.  The confession that Kees later claimed Nate

11:57:00  2  gave, was it a different location with different people,

11:57:04  3  correct?

11:57:04  4  A.  That Kees provided us?

11:57:05  5  Q.  Yeah.

11:57:06  6  A.  Yes.

11:57:07  7  Q.  And it was the exact same words, wasn't it?

11:57:09  8  A.  Yes.  Well, there were others that said that later too.

11:57:13  9      MR. LOEVY:  Your Honor, I move to strike that.

11:57:15  10     THE WITNESS:  I'm sorry.  I'm sorry.

11:57:16  11     THE COURT:  The follow-up comment is stricken.  The

11:57:19  12  jury is directed to disregard it.  It was not responsive to

11:57:22  13  the question.

11:57:22  14  BY MR. LOEVY:

11:57:22  15  Q.  When you say there were others, those were cooperating

11:57:25  16  witnesses who were getting huge breaks on their deal --

11:57:28  17  actually, nobody said it was a good exercise.  Who else said

11:57:30  18  it was a good exercise?

11:57:33  19  A.  Hawkins.

11:57:34  20  Q.  He got a big break on his deal to say it?

11:57:38  21  A.  No.

11:57:39  22     MR. KULWIN:  Objection, Judge.

11:57:40  23     MR. LOEVY:  May I ask a question, your Honor?

11:57:42  24     THE COURT:  I got to deal with the objection first.

11:57:44  25  The objection is overruled.  The answer no can stand.


***REALTIME UNEDITED TRANSCRIPT ONLY***

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 104 of 133 PageID #:31606
***REALTIME UNEDITED TRANSCRIPT ONLY***

103

11:57:46  1  BY MR. LOEVY:

11:57:47  2  Q.  Hawkins never said he heard Nate say it was a good

11:57:50  3  exercise, did he?

11:57:50  4  A.  Yes, he did.

11:57:51  5  Q.  And is there a report on that, a note?

11:57:53  6  A.  I think he mentioned it to us later, but he just said it

11:58:02  7  yesterday.

11:58:02  8        MR. LOEVY:  Your Honor, can we focus on the question,

11:58:06  9  your Honor.

11:58:06  10       THE COURT:  He is not asking about testimony at the

11:58:08  11  trial.  The question is is there a report or a note on that.

11:58:12  12  That's the pending question.

11:58:13  13       THE WITNESS:  I think there is somewhere.

11:58:14  14  BY MR. LOEVY:

11:58:14  15  Q.  There should be, right?

11:58:15  16  A.  Well, yes, there is a note somewhere.

11:58:17  17  Q.  That says Earl Hawkins said that Nate gave that

11:58:21  18  confession?

11:58:22  19       MR. KULWIN:  Your Honor, I object.  I'd like to be

11:58:23  20  heard.

11:58:25  21       THE COURT:  Okay.  Maybe I'm missing something.  Let

11:58:27  22  me see you at sidebar.

11:58:38  23   (The following proceedings were had at sidebar outside the

11:58:40  24  hearing of the jury:)

11:58:40  25       THE COURT:  I have been told many times by the court

***REALTIME UNEDITED TRANSCRIPT ONLY***

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 105 of 133 PageID #:31607
***REALTIME UNEDITED TRANSCRIPT ONLY***

104

11:58:43   1   reporter that happen that the sidebar are virtually

11:58:48   2   incomprehensible and it's largely because everybody is talking

11:58:50   3   at once and people aren't talking towards the microphone.  We

11:58:55   4   actually tweak up the microphone and it's still not working.

11:58:59   5   What's your point, Mr. Kulwin.

11:59:00   6           MR. KULWIN:  My point, Judge, I will talk slowly, ask

11:59:04   7   is that there are probably written reports as part of the

11:59:09   8   federal investigation that are probably filled with all sorts

11:59:13   9   of other things, that would be my guess, none of that was part

11:59:17   10  -- that would be my reasonable belief, okay.  They were not --

11:59:22   11  you cannot get grand jury material, I don't believe, from the

11:59:25   12  federal government on all this stuff.  The inference is wrong.

11:59:29   13  It's unfair.  You can't tell witnesses you can't talk about

11:59:32   14  all the other murders, you have to be very, very careful what

11:59:35   15  you say but if you're asked is there one report about this

11:59:38   16  anywhere written down, he doesn't know what to do.

11:59:41   17          THE COURT:  The question on the table has to do with

11:59:42   18  Hawkins making a statement about whether Mr. Fields made this

11:59:46   19  good exercise comment is that right?

11:59:47   20          MR. LOEVY:  Yes, and there is no such report and we

11:59:49   21  have his notes, we have his Hawkins debriefing notes, pages,

11:59:53   22  dozens of pages.  I am not opening the door to anything to

11:59:56   23  say, there is no note and no report that this new story

12:00:00   24  Hawkins said on the stand or he might have heard that, there

12:00:04   25  is nothing remotely in basis in his objection.  It's a limited

| 12:00:07 | 1 | question, isn't it true there are no notes or report that |
| 12:00:10 | 2 | reflects this.  And why would that open the door to anything? |
| 12:00:13 | 3 | Why would that open the door to oh, there's a lot of notes, |
| 12:00:17 | 4 | there's a lot of reports. |
| 12:00:19 | 5 | THE COURT:  Mr. Kulwin. |
| 12:00:19 | 6 | MR. KULWIN:  Is Mr. Loevy representing that he |
| 12:00:21 | 7 | reviewed every 302 that every FBI agent and every ATF agent |
| 12:00:26 | 8 | wrote on this case in the El Rukn investigation?  If he is, |
| 12:00:27 | 9 | that's one thing.  But -- |
| 12:00:27 | 10 | THE COURT:  Wait a second.  Wait a second.  He's |
| 12:00:30 | 11 | asking the guy a question.  He's asking the guy a question. |
| 12:00:34 | 12 | Honestly, he's asked it four times and he hasn't gotten an |
| 12:00:38 | 13 | answer yet.  He basically heard Hawkins say that.  The |
| 12:00:42 | 14 | question is did he write it down anywhere.  That's the way you |
| 12:00:45 | 15 | are going to have to rephrase it.  Did he write it down |
| 12:00:48 | 16 | anywhere? |
| 12:00:48 | 17 | MR. KULWIN:  Did he write it? |
| 12:00:53 | 18 | THE COURT:  That's how you're going to have to |
| 12:00:53 | 19 | rephrase it.  Okay. |
| 12:00:54 | 20 | (The following proceedings were had in open court in the |
| 12:00:58 | 21 | presence and hearing of the jury:) |
| 12:00:58 | 22 | MR. LOEVY:  May I continue, your Honor? |
| 12:01:01 | 23 | THE COURT:  Go ahead. |
| 12:01:01 | 24 | BY MR. LOEVY: |
| 12:01:02 | 25 | Q.  Are you claiming, sir, that Hawkins in your presence said |

Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 107 of 133 PageID #:31609

12:01:05   1   that Nate confessed it was a good exercise?

12:01:07   2   A.  Yes, sir.

12:01:08   3   Q.  Okay.  Would you -- did you create a police report?

12:01:11   4   A.  No, sir.

12:01:11   5   Q.  Did you create a note?

12:01:14   6   A.  Yes, sir.

12:01:14   7   Q.  Where is that note?

12:01:16   8   A.  At that time I was with -- assigned with the U.S.

12:01:25   9   Attorney's Office and we had conversations throughout, I think

12:01:30   10  it started in '88, 89, and we prepared notes there.

12:01:35   11  Q.  All right.  And we have those notes at this trial, do we

12:01:40   12  not?

12:01:40   13  A.  I don't know.  Do we?

12:01:41   14  Q.  Have you reviewed the trial exhibits?

12:01:44   15  A.  Not all of them.

12:01:45   16  Q.  Have you reviewed your notes to see that there is or is

12:01:48   17  not this statement that you are attributing to Hawkins?

12:01:50   18  A.  No.

12:01:50   19  Q.  But you're saying they should be in your notes, right?

12:01:54   20          MR. BURNS:  Objection, your Honor.

12:01:55   21          THE COURT:  Overruled.  He's testified.

12:01:58   22  BY MR. LOEVY:

12:01:59   23  Q.  Is that true, they should be in your notes?

12:02:01   24          MR. BURNS:  Objection?

12:02:01   25          THE COURT:  That's the question I just sustained an

12:02:03   1   answer to.

12:02:04   2          MR. LOEVY:  I thought you said overruled.  I misheard

12:02:07   3   you, I apologize.

12:02:09   4          THE COURT:  Sustained.

12:02:10   5          THE COURT:  I misspoke.  I said overruled.  I meant

12:02:13   6   to say sustained.  You heard me right.  I said it wrong.

12:02:16   7   BY MR. LOEVY:

12:02:17   8   Q.  Let's he talk about?

12:02:20   9          THE COURT:  One of those rare times I apologize to

12:02:23   10  the lawyer.  The jurors probably picked up on that.

12:02:26   11         MR. LOEVY:  It's probably my fault for not reading

12:02:28   12  your mind.

12:02:29   13         THE COURT:  You are supposed to be able to read my

12:02:31   14  mind.

12:02:31   15  BY MR. LOEVY:

12:02:31   16  Q.  The other piece that Derrick Kees provided in court was

12:02:34   17  oh, I remember this one time that Nate told me in September

12:02:39   18  1983 that he wanted to join the hit team or words to that

12:02:42   19  effect.  Do you remember him saying that yesterday?

12:02:44   20  A.  Yes.

12:02:44   21  Q.  Isn't it true that 2013, some 25 or 8 years after the

12:02:50   22  conversation supposedly took place was the first time Derrick

12:02:55   23  Kees ever made an allegation that oh, yeah, Nate told me in

12:02:59   24  September 1983 that he wanted, he loved what you all are doing

12:03:03   25  with the chief and he wanted a part of it?

12:03:05   1          MR. KULWIN:  Objection, Judge, lacks foundation.  How

12:03:07   2   would he know.

12:03:07   3          THE COURT:  Sustained.  You are not going to be able

12:03:09   4   to ask that question that way.

12:03:10   5   BY MR. LOEVY:

12:03:10   6   Q.  You are no not aware of any prior time Derrick said that

12:03:15   7   before 2013, correct?

12:03:16   8   A.  I believe he did say that.

12:03:18   9   Q.  Where and when, sir?

12:03:19   10  A.  It was in our interviews.

12:03:21   11  Q.  Would that be in your notes?

12:03:23   12         MR. KULWIN:  Can he finish the question, Judge?

12:03:25   13         THE COURT:  Finish the answer.  It was in the notes,

12:03:28   14  he said.  Go ahead and finish your answer.  The question was

12:03:32   15  with where and when did he say it?  You started to say it was

12:03:36   16  in your notes or interviews or something along those lines.

12:03:39   17  BY MR. LOEVY:

12:03:40   18  Q.  In your notes?

12:03:40   19  A.  We had a number of interviews with him throughout 1988.

12:03:43   20  Q.  Showing you Defendant's Exhibit 171, these are your notes

12:03:58   21  dated May the 4th, 1989, right, sir?

12:04:02   22  A.  The first page is.

12:04:06   23  Q.  All right.  There's other notes, right?

12:04:08   24  A.  Yes, sir.

12:04:09   25  Q.  All right.  Show me or tell the jury where it says that

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 110 of 133 PageID #:31612
***REALTIME UNEDITED TRANSCRIPT ONLY***

109

| | | |
|---|---|---|
| 12:04:14 | 1 | Nate wanted to join the team? |
| 12:04:16 | 2 | MR. KULWIN:  Can we have the date of the notes, |
| 12:04:18 | 3 | Judge? |
| 12:04:19 | 4 | THE COURT:  It's Defendant's Exhibit 171 as Mr. Loevy |
| 12:04:22 | 5 | said a second ago dated May 4th, 1989. |
| 12:04:26 | 6 | MR. KULWIN:  Sorry, Judge.  I apologize. |
| 12:04:30 | 7 | THE WITNESS:  This. |
| 12:04:43 | 8 | BY MR. LOEVY: |
| 12:04:44 | 9 | Q.  It doesn't say it, does it, sir? |
| 12:04:45 | 10 | A.  It doesn't say it, no, no, but there were other |
| 12:04:48 | 11 | conversations with him. |
| 12:04:50 | 12 | Q.  But this was the first one, May 4th, 1989, right? |
| 12:04:58 | 13 | A.  With? |
| 12:04:59 | 14 | Q.  With Derrick Kees? |
| 12:04:59 | 15 | A.  With Derrick Kees, yes, sir. |
| 12:05:00 | 16 | Q.  And he told you his sorry that he was part of the hit team |
| 12:05:03 | 17 | and Nate confessed to him, right? |
| 12:05:05 | 18 | A.  Yes, sir. |
| 12:05:05 | 19 | Q.  And he did not tell you, oh, yeah, there was a time in |
| 12:05:08 | 20 | 1983 that Nate said I want to join the hit team and I want to |
| 12:05:12 | 21 | be part of what you all were doing, he didn't tell you that |
| 12:05:14 | 22 | when he told you the story the first time, right? |
| 12:05:16 | 23 | A.  Not the first time, no, sir. |
| 12:05:18 | 24 | Q.  In fact, this note on May the 4th, 1989, is not day one, |
| 12:05:23 | 25 | is it? |

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 111 of 133 PageID #:31613
***REALTIME UNEDITED TRANSCRIPT ONLY***

110

| | | |
|---|---|---|
| 12:05:23 | 1 | A.  That -- |
| 12:05:26 | 2 | Q.  Day one was March 1989, right?  This is more like day 45? |
| 12:05:33 | 3 | MR. KULWIN:  Objection, Judge.  No foundation. |
| 12:05:36 | 4 | THE WITNESS:  Could you show me those notes?  March |
| 12:05:39 | 5 | 89. |
| 12:05:40 | 6 | BY MR. LOEVY: |
| 12:05:40 | 7 | Q.  By May 89, Derrick had been cooperating for close to two |
| 12:05:43 | 8 | months at the MCC, right? |
| 12:05:46 | 9 | MR. KULWIN:  Objection, Judge. |
| 12:05:46 | 10 | THE COURT:  What's the basis for the objection. |
| 12:05:48 | 11 | MR. KULWIN:  No foundation.  Just ask him if he |
| 12:05:50 | 12 | knows. |
| 12:05:50 | 13 | MR. LOEVY:  Objection, your Honor. |
| 12:05:51 | 14 | THE COURT:  If you don't know, you can just say you |
| 12:05:54 | 15 | don't know. |
| 12:05:55 | 16 | THE WITNESS:  I don't know the question. |
| 12:05:57 | 17 | THE COURT:  Okay.  Ask the question again. |
| 12:05:58 | 18 | BY MR. LOEVY: |
| 12:05:59 | 19 | Q.  Derrick started being a cooperating witness in March 89, |
| 12:06:03 | 20 | right? |
| 12:06:03 | 21 | A.  I am not sure of the exact date. |
| 12:06:04 | 22 | Q.  All right.  Leaving aside the exact date, he got taken to |
| 12:06:08 | 23 | the MCC where he and the other cooperators interacted on the |
| 12:06:11 | 24 | sixth floor for two years, correct? |
| 12:06:13 | 25 | MR. KULWIN:  Objection, Judge, lacks foundation, he |

Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 112 of 133 PageID #:31614
***REALTIME UNEDITED TRANSCRIPT ONLY***

| | | |
|---|---|---|
| 12:06:17 | 1 | was taken to the MCC. |
| 12:06:18 | 2 | MR. LOEVY: Objection to the speaking objection, your |
| 12:06:20 | 3 | Honor. |
| 12:06:20 | 4 | THE COURT: The objection is overruled. |
| 12:06:26 | 5 | THE WITNESS: As I best recall, he wasn't put in the |
| 12:06:29 | 6 | MCC right away. I think he was sent out to Rock County. |
| 12:06:33 | 7 | BY MR. LOEVY: |
| 12:06:34 | 8 | Q. It's your recollection that I am asking. He was sent |
| 12:06:37 | 9 | somewhere? |
| 12:06:37 | 10 | A. He was sent off to Rock County I think in Wisconsin. |
| 12:06:40 | 11 | Q. All right. Now, you were asked last night about the email |
| 12:06:45 | 12 | and you did say that you didn't know there was an issue with |
| 12:06:49 | 13 | Derrick Kees' sentence break coming through? |
| 12:06:51 | 14 | A. The email that I received about the -- |
| 12:06:56 | 15 | Q. Right? |
| 12:06:56 | 16 | A. The motion. |
| 12:06:57 | 17 | Q. The government sent you a copy of the motion to cut |
| 12:07:05 | 18 | Derrick Kees' sentence by 12 years? |
| 12:07:07 | 19 | A. Yes, sir. |
| 12:07:08 | 20 | Q. And you got that on November 17th, the day the trial |
| 12:07:13 | 21 | started? |
| 12:07:14 | 22 | A. Yes, sir. |
| 12:07:14 | 23 | Q. And you didn't know there had been an issue, right? |
| 12:07:16 | 24 | A. Yes, I had no idea. I thought he was going to come in |
| 12:07:20 | 25 | like he did the last time to testify. |

***REALTIME UNEDITED TRANSCRIPT ONLY***

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 113 of 133 PageID #:31615
***REALTIME UNEDITED TRANSCRIPT ONLY***

112

| | | |
|---|---|---|
| 12:07:22 | 1 | Q.  If the email and showing you again Plaintiff's Exhibit |
| 12:07:26 | 2 | 1001, if the email is dated at 3/25 sending you a copy of the |
| 12:07:33 | 3 | government's motion asking to cut Kees' sentence in exchange |
| 12:07:36 | 4 | for his testimony, you responded at 4:53 that same afternoon, |
| 12:07:41 | 5 | right? |
| 12:07:41 | 6 | A.  Yes, sir. |
| 12:07:43 | 7 | Q.  O'Callaghan probably got off the stand around 4:45? |
| 12:07:47 | 8 | MR. KULWIN:  Objection, Judge, as to when O'Callaghan |
| 12:07:49 | 9 | got off the stand. |
| 12:07:50 | 10 | MR. LOEVY:  Established. |
| 12:07:52 | 11 | MR. LOEVY:  Were you in court? |
| 12:07:54 | 12 | THE COURT:  I am sustaining the objection anyway. |
| 12:07:54 | 13 | BY MR. LOEVY: |
| 12:07:56 | 14 | Q.  You didn't suggest in your response that there was any |
| 12:07:58 | 15 | uncertainty or unclarity on your part about why the government |
| 12:08:01 | 16 | was filing this motion, did you? |
| 12:08:03 | 17 | A.  It was clear in my mind why they were filing the motion, |
| 12:08:08 | 18 | because there was a problem having Derrick Kees. |
| 12:08:09 | 19 | THE COURT:  You need to -- |
| 12:08:13 | 20 | THE WITNESS:  I'm sorry.  Please ask the question |
| 12:08:15 | 21 | again. |
| 12:08:16 | 22 | BY MR. LOEVY: |
| 12:08:16 | 23 | Q.  I am going to switch to another Kees topic? |
| 12:08:19 | 24 | A.  Yes, sir. |
| 12:08:19 | 25 | Q.  Now, you took information from Derrick Kees, correct? |

| 12:08:21 | 1 | A.  Yes, sir. |
| 12:08:22 | 2 | Q.  Were you working for the Chicago Police Department? |
| 12:08:25 | 3 | A.  Detailed to the U.S. Attorney's Office. |
| 12:08:28 | 4 | Q.  All right.  Did you create a Chicago police report |
| 12:08:32 | 5 | detailing your conversations with Derrick Kees about the |
| 12:08:36 | 6 | Smith/Hickman murder? |
| 12:08:36 | 7 | MR. KULWIN:  Objection, I am going to object and ask |
| 12:08:38 | 8 | to be heard. |
| 12:08:40 | 9 | THE COURT:  Okay. |
| 12:08:45 | 10 | (The following proceedings were had at sidebar outside the |
| 12:08:48 | 11 | hearing of the jury:) |
| 12:08:48 | 12 | THE COURT:  I try not to be like some of my |
| 12:09:02 | 13 | colleagues that use phrases over and over again but it |
| 12:09:06 | 14 | happens.  Anybody watch Seinfeld, remember the serenity now? |
| 12:09:13 | 15 | Here is my question:  When a Chicago police officer |
| 12:09:14 | 16 | is detailed to a federal task force, is he required to prepare |
| 12:09:19 | 17 | Chicago police reports?  My hunch would be no.  The hunch is |
| 12:09:24 | 18 | just kind of based on 35, four years of experience, 35 let's |
| 12:09:30 | 19 | say. |
| 12:09:30 | 20 | MR. LOEVY:  I don't know.  I guess you know the |
| 12:09:32 | 21 | answer to that question and -- he took a note in 1989 |
| 12:09:37 | 22 | suggesting that Anthony Sumner was involved in the murder, |
| 12:09:40 | 23 | Nate at the time was on death row.  I don't care who is |
| 12:09:43 | 24 | signing his paychecks.  He is still working for the Chicago |
| 12:09:46 | 25 | Police Department, he took notes, he didn't give them to the |

12/01/16 AM          ***REALTIME UNEDITED TRANSCRIPT ONLY***

114

12:09:48   1   state's attorney, he gave them to a different law enforcement,

12:09:51   2   that's not discharging your braid obligation.

12:09:53   3          THE COURT:  Hold on a second.  We are talking about

12:09:55   4   just to back up a second here, what we are talking about is

12:09:59   5   what he learned about what in 1989 again?

12:10:02   6          MR. LOEVY:  Derrick Kees told him Anthony Sumner was

12:10:04   7   involved in the murder plot.  That's extremely exculpatory.

12:10:07   8          THE COURT:  Got it.  All right.  So I don't --

12:10:10   9   honestly, but I think the problem with the question is that it

12:10:14   10  suggests that preparing a Chicago police report was some

12:10:19   11  intermediate required step.  I mean, I don't really see a

12:10:22   12  problem with the subject matter.  You are going to have to

12:10:24   13  leave that part out of it because my pretty strong sense,

12:10:29   14  again, just from past experience, is that when one of these

12:10:33   15  officers is detailed to a federal task force, the paper flow

12:10:35   16  goes to the federal task force, it doesn't get put in the CPD

12:10:39   17  file.

12:10:39   18          MR. LOEVY:  That's our point.

12:10:40   19          THE COURT:  I understand.  But your point, as you

12:10:42   20  just described it to me, sir, is that he didn't do what was

12:10:47   21  necessary to get this information to Mr. Fields or his defense

12:10:51   22  attorney.  Okay?

12:10:52   23          MR. LOEVY:  Yes.

12:10:52   24          THE COURT:  You can make that point.  You cannot make

12:10:54   25  the point that he did not prepare a quote Chicago police


               ***REALTIME UNEDITED TRANSCRIPT ONLY***

| | | |
|---|---|---|
| 12:10:59 | 1 | report.  If that's not clear, there is nothing more I can do. |
| 12:11:05 | 2 | (The following proceedings were had in open court in the |
| 12:11:07 | 3 | presence and hearing of the jury:) |
| 12:11:07 | 4 | THE COURT:  All right.  The objection to the question |
| 12:11:15 | 5 | is sustained.  You can proceed with another question as we |
| 12:11:17 | 6 | discussed. |
| 12:11:18 | 7 | BY MR. LOEVY: |
| 12:11:18 | 8 | Q.  All right.  One of the problems with the case was that |
| 12:11:23 | 9 | Hank Andrews had a white car isn't that true, sir? |
| 12:11:28 | 10 | A.  At what time? |
| 12:11:35 | 11 | Q.  The witnesses who saw the bad guys drive away saw a blue |
| 12:11:41 | 12 | car, right? |
| 12:11:41 | 13 | A.  Yes, sir. |
| 12:11:41 | 14 | Q.  And Hank had a white car, right? |
| 12:11:43 | 15 | A.  He had a blue car, Cadillac. |
| 12:11:46 | 16 | Q.  Sorry, blue.  He had a white car? |
| 12:11:48 | 17 | A.  He had a blue Cadillac. |
| 12:11:50 | 18 | Q.  I'm sorry? |
| 12:11:51 | 19 | MR. KULWIN:  Objection. |
| 12:11:52 | 20 | THE COURT:  He's answered your question.  Now ask |
| 12:11:53 | 21 | another one. |
| 12:11:54 | 22 | BY MR. LOEVY: |
| 12:11:54 | 23 | Q.  All right.  You needed an explanation for how his blue car |
| 12:11:57 | 24 | became white, right? |
| 12:12:00 | 25 | MR. BURNS:  Objection to the form of the question, |

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 117 of 133 PageID #:31619
***REALTIME UNEDITED TRANSCRIPT ONLY***

116

| | | |
|---|---|---|
| 12:12:02 | 1 | your Honor? |
| 12:12:02 | 2 | THE COURT:  Overruled.  I mean, I think the problem |
| 12:12:04 | 3 | with your question is you just said had generally as opposed |
| 12:12:09 | 4 | to one time or another. |
| 12:12:10 | 5 | BY MR. LOEVY: |
| 12:12:10 | 6 | Q.  Did anybody check Hank's white car to see if there was |
| 12:12:14 | 7 | blue paint underneath it? |
| 12:12:16 | 8 | A.  I don't recall. |
| 12:12:17 | 9 | Q.  Wouldn't that have made sense if the police were saying |
| 12:12:22 | 10 | that Hank's car wasn't the right color because he painted it, |
| 12:12:26 | 11 | all you had to do was look under the paint, right? |
| 12:12:29 | 12 | A.  Is that your question? |
| 12:12:33 | 13 | Q.  Yes. |
| 12:12:33 | 14 | A.  No, sir. |
| 12:12:34 | 15 | Q.  All right.  Let's talk about Anthony Sumner's cooperation. |
| 12:12:45 | 16 | Now, he also told you that Nate was involved in the murder of |
| 12:12:51 | 17 | Joe White and Dee Eggars Vaughn, correct? |
| 12:12:55 | 18 | A.  Along with himself. |
| 12:12:56 | 19 | Q.  Yep.  But the problem was the kids only saw two people |
| 12:13:00 | 20 | commit the murder, right? |
| 12:13:01 | 21 | A.  They could only view two people. |
| 12:13:05 | 22 | Q.  I mean they watched their parents being tied up and |
| 12:13:10 | 23 | stabbed by two offenders? |
| 12:13:12 | 24 | A.  They had a limited view of what they could see. |
| 12:13:14 | 25 | Q.  The original police report didn't say anything about a |

Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 118 of 133 PageID #:31620

| | | |
|---|---|---|
| 12:13:16 | 1 | limited view, did they? |
| 12:13:17 | 2 | A. I believe they did, sir. |
| 12:13:18 | 3 | Q. All right. Isn't it true that what Sumner described was |
| 12:13:25 | 4 | three men actually participating in the crime, stabbing, |
| 12:13:29 | 5 | shooting, tying, that's what Sumner's description was, right? |
| 12:13:32 | 6 | A. He said that -- I believe he said that he tied up Joe and |
| 12:13:43 | 7 | Nathson tied up Dee Eggars. |
| 12:13:45 | 8 | Q. And then early shot them in the head? |
| 12:13:49 | 9 | A. Well, I think -- no, early stabbed them. |
| 12:13:53 | 10 | Q. Earl stabbed them. They each claimed the other one |
| 12:13:57 | 11 | stabbed them, right? |
| 12:13:58 | 12 | A. No, no, I think that -- I think that Earl said that he |
| 12:14:03 | 13 | stabbed them and shot them. |
| 12:14:04 | 14 | Q. All right. But in any event, the kids saw two people do |
| 12:14:08 | 15 | this crime, right? Right? |
| 12:14:13 | 16 | A. They only saw two. |
| 12:14:14 | 17 | Q. All right. Did that give you reason to doubt whether |
| 12:14:17 | 18 | maybe Sumner was lying about Nate Fields being the third guy? |
| 12:14:21 | 19 | A. No, sir. |
| 12:14:22 | 20 | Q. When did Hawkins first tell you that Nate was not involved |
| 12:14:29 | 21 | in that crime? |
| 12:14:29 | 22 | A. The first time I learned it was. |
| 12:14:35 | 23 | Q. The question was when did Hawkins first tell you, not when |
| 12:14:38 | 24 | you learned it. |
| 12:14:41 | 25 | MR. KULWIN: Judge, I object. It assumes that he |

12/01/16 AM

Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 119 of 133 PageID #:31621
***REALTIME UNEDITED TRANSCRIPT ONLY***

118

| | | |
|---|---|---|
| 12:14:46 | 1 | talked to Hawkins before Hawkins -- |
| 12:14:49 | 2 | THE COURT:  I object to the objection as overruled. |
| 12:14:52 | 3 | Assumes facts not in evidence. |
| 12:14:55 | 4 | THE WITNESS:  Ask the question again, please. |
| 12:14:58 | 5 | THE COURT:  When did Hawkins first tell you, not when |
| 12:15:00 | 6 | you learned it.  When did he first tell you as opposed to when |
| 12:15:04 | 7 | you first learned it. |
| 12:15:05 | 8 | THE WITNESS:  I don't recall, sir.  I don't recall |
| 12:15:08 | 9 | when he first told me. |
| 12:15:09 | 10 | BY MR. LOEVY: |
| 12:15:09 | 11 | Q.  Were you disturbed that Mr. Fields had been arrested and |
| 12:15:14 | 12 | prosecuted or, you know, charged with a double murder if he |
| 12:15:17 | 13 | had nothing to do with it? |
| 12:15:18 | 14 | A.  Of course. |
| 12:15:19 | 15 | Q.  Did that cause you to question maybe the same guy who lied |
| 12:15:24 | 16 | about him about that crime is lying about him about the other |
| 12:15:27 | 17 | crime? |
| 12:15:27 | 18 | A.  No, because we had cooperating evidence in the other |
| 12:15:33 | 19 | crimes. |
| 12:15:34 | 20 | MR. LOEVY:  Your Honor, we'd move to strike the |
| 12:15:36 | 21 | second part of that. |
| 12:15:37 | 22 | THE COURT:  Everything after no is stricken. |
| 12:15:39 | 23 | BY MR. LOEVY: |
| 12:15:40 | 24 | Q.  You did have other corroborating evidence in the form of |
| 12:15:43 | 25 | eyewitness identifications, right? |

12/01/16 AM    Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 120 of 133 PageID #:31622
***REALTIME UNEDITED TRANSCRIPT ONLY***

119

12:15:44   1    A.  At that time.

12:15:46   2        MR. KULWIN:  Foundation, at what time?

12:15:49   3        THE COURT:  Yeah.  You got to set a time.  As of

12:15:52   4    when, in other words.

12:15:53   5    BY MR. LOEVY:

12:15:54   6    Q.  When Nate went on trial for capital murder, the only

12:15:58   7    corroboration for Anthony Sumner was some kids who saw Earl

12:16:04   8    Hawkins supposedly and Nate Fields do the shooting?

12:16:08   9        MR. KULWIN:  I am going to object.  Argumentative.

12:16:10  10        THE COURT:  Overruled.  Overruled.  He can answer.

12:16:13  11    BY MR. LOEVY:

12:16:14  12    Q.  Do you remember the question?

12:16:14  13    A.  No.

12:16:15  14    Q.  In 1986 when Nate went on trial for capital murder, the

12:16:21  15    only corroboration you had for Anthony Sumner was those kids

12:16:25  16    who were saying that they saw Earl and Nate with the masks

12:16:29  17    from the distance as the shooters, right?

12:16:32  18    A.  I believe there were three witnesses.

12:16:34  19    Q.  The eyewitnesses, right?

12:16:35  20    A.  Yes, sir.

12:16:36  21    Q.  Now, I want to talk to you about your interview of Anthony

12:16:49  22    Sumner.  You don't dispute that there was only one and one

12:16:53  23    debriefing, correct?

12:16:54  24    A.  Correct, sir, with me.

12:16:57  25    Q.  With you?

Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 121 of 133 PageID #:31623

| | | |
|---|---|---|
| 12:16:59 | 1 | A.  Yes, sir. |
| 12:16:59 | 2 | Q.  And what was the date of your one and only one interview |
| 12:17:02 | 3 | with Anthony Sumner? |
| 12:17:02 | 4 | A.  14 May 85. |
| 12:17:06 | 5 | Q.  Was the subject of the Smith/Hickman murder discussed |
| 12:17:09 | 6 | during that briefing? |
| 12:17:10 | 7 | A.  Yes, sir. |
| 12:17:12 | 8 | Q.  And that is then the only time you've ever spoken to |
| 12:17:16 | 9 | Anthony Sumner about that subject was also May 14th, right? |
| 12:17:19 | 10 | A.  That I personally spoke to him, yes, sir. |
| 12:17:21 | 11 | Q.  Yes. |
| 12:17:22 | 12 | Were you taking notes when he was telling you about |
| 12:17:24 | 13 | the Smith/Hickman murder? |
| 12:17:25 | 14 | A.  Yes, sir. |
| 12:17:26 | 15 | Q.  Were you taking notes as he's telling you the details? |
| 12:17:31 | 16 | A.  Yes, sir.  Well, not initially.  I had him tell me the |
| 12:17:42 | 17 | story a couple times first. |
| 12:17:44 | 18 | Q.  And then you wrote it down after the conversation? |
| 12:17:46 | 19 | A.  The initial conversations, it's always better to talk to |
| 12:17:50 | 20 | someone first before you are writing down notes. |
| 12:17:55 | 21 | Subsequently, I did write down notes when I was talking to him |
| 12:17:58 | 22 | afterwards a number of times and went over the account with |
| 12:18:02 | 23 | him. |
| 12:18:02 | 24 | Q. |
| 12:18:05 | 25 | MR. LOEVY:  Your Honor, if you would entertain it, |

Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 122 of 133 PageID #:31624
12/01/16 AM ***REALTIME UNEDITED TRANSCRIPT ONLY***

121

| 12:18:07 | 1 | this would be a better place to take a break. |
| 12:18:10 | 2 | THE COURT:  I can't because it would basically |
| 12:18:13 | 3 | require shaving 15 minutes off our day.  I have another case |
| 12:18:16 | 4 | that's up at 1:30 that's probably going to take 10 minutes. |
| 12:18:19 | 5 | Sorry. |
| 12:18:19 | 6 | BY MR. LOEVY: |
| 12:18:20 | 7 | Q.  I am going to show you a copy of Defendant's Exhibit 72. |
| 12:18:23 | 8 | If you could turn to page 11, which is tabbed for you. |
| 12:18:34 | 9 | THE COURT:  That would be my suggestion actually is |
| 12:18:37 | 10 | just keep them. |
| 12:18:38 | 11 | THE WITNESS:  Okay. |
| 12:18:39 | 12 | THE COURT:  It's not a criticism.  You're going to be |
| 12:18:41 | 13 | looking at stuff. |
| 12:18:42 | 14 | THE WITNESS:  Okay, sir. |
| 12:18:43 | 15 | BY MR. LOEVY: |
| 12:18:44 | 16 | Q.  If you could turn to page 11 and 12. |
| 12:18:49 | 17 | A.  Hang on one second, please. |
| 12:19:02 | 18 | THE COURT:  I might suggest that after the lunch |
| 12:19:05 | 19 | break or even now the more felicitous way of doing this would |
| 12:19:09 | 20 | be to put it on the screen.  That's the whole reason -- |
| 12:19:12 | 21 | BY MR. LOEVY: |
| 12:19:14 | 22 | Q.  Can you see the screen, sir? |
| 12:19:15 | 23 | A.  Yeah, I can see the screen. |
| 12:19:18 | 24 | THE COURT:  Let me put the ELMO on.  Yeah, you can |
| 12:19:22 | 25 | see the screen.  I think it's going to be easier probably for |

| | | |
|---|---|---|
| 12:19:25 | 1 | you to look at the screen.  If you want to go closer to it, |
| 12:19:28 | 2 | that's fine. |
| 12:19:28 | 3 | THE WITNESS:  I can see it.  Thank you. |
| 12:19:31 | 4 | BY MR. LOEVY: |
| 12:19:32 | 5 | Q.  All right.  Sir, these are your notes, are they not, sir? |
| 12:19:39 | 6 | A.  Yes, sir. |
| 12:19:39 | 7 | Q.  And at the deposition, you denied these were your notes, |
| 12:19:42 | 8 | correct? |
| 12:19:42 | 9 | A.  I denied they were my notes? |
| 12:19:47 | 10 | Q.  You submitted an the errata sheet correcting your |
| 12:19:50 | 11 | testimony saying you got confused, but that they were your |
| 12:19:53 | 12 | notes, correct? |
| 12:19:54 | 13 | A.  Yeah, these are my notes. |
| 12:19:56 | 14 | Q.  And you corrected your sworn testimony by the errata |
| 12:20:00 | 15 | sheet, correct? |
| 12:20:01 | 16 | A.  I don't recall that.  I know that these are my notes I am |
| 12:20:05 | 17 | looking at.  That's my handwriting. |
| 12:20:08 | 18 | Q.  All right.  Let's walk through your notes of the Sumner |
| 12:20:11 | 19 | interview on -- this is your notes of May 14th, 1985, correct? |
| 12:20:17 | 20 | A.  Yes, sir. |
| 12:20:18 | 21 | Q.  All right.   Talman Hickman, Jerome Fuddy, 706 East 39th |
| 12:20:25 | 22 | Street, 28th of April, 017 hours.  Do you see that? |
| 12:20:29 | 23 | A.  Yes, sir. |
| 12:20:29 | 24 | Q.  It looks like you had access to the file at the time you |
| 12:20:32 | 25 | were interviewing Anthony Sumner? |

12/01/16 AM

Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 124 of 133 PageID #:31626
***REALTIME UNEDITED TRANSCRIPT ONLY***

123

| | | |
|---|---|---|
| 12:20:33 | 1 | A.  I didn't have that information at the time. |
| 12:20:35 | 2 | Q.  This is an RD number, isn't it? |
| 12:20:37 | 3 | A.  Yeah, I called the office to find out that information. |
| 12:20:40 | 4 | Q.  The question was this is an RD number, isn't it, your |
| 12:20:43 | 5 | Honor? |
| 12:20:44 | 6 | A.  Yes, sir, that is an RD number. |
| 12:20:45 | 7 | Q.  All right.  And it shows Nathson Fields, George Carter as |
| 12:20:52 | 8 | the shooter, Hank Andrews as the driver, Earl Hawkins as the |
| 12:20:56 | 9 | setup.  You're claiming this is what he told you, right? |
| 12:20:58 | 10 | A.  That's what he told me. |
| 12:20:59 | 11 | Q.  A couple of days after the shooting, he had a conversation |
| 12:21:02 | 12 | with Hawkins at this location? |
| 12:21:05 | 13 | A.  Yes. |
| 12:21:06 | 14 | Q.  Earl got Fields and Carter? |
| 12:21:10 | 15 | A.  Yes. |
| 12:21:10 | 16 | Q.  Now, tell the jury where in your notes it says that Nate |
| 12:21:15 | 17 | Fields confessed to him, the good exercise confession. |
| 12:21:20 | 18 | A.  That was in the subsequent interview. |
| 12:21:23 | 19 | Q.  I asked where it is in your notes? |
| 12:21:25 | 20 | A.  In this note? |
| 12:21:26 | 21 | Q.  On May 14th, 1985, that Sumner told you that Nate |
| 12:21:30 | 22 | confessed? |
| 12:21:31 | 23 | A.  It's in the other note I gave you. |
| 12:21:33 | 24 | Q.  Not in the in your notes? |
| 12:21:37 | 25 | MR. BURNS:  Objection? |

Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 125 of 133 PageID #:31627
12/01/16 AM        ***REALTIME UNEDITED TRANSCRIPT ONLY***

124

12:21:38    1           MR. KULWIN:  Objection, Judge, asked and answered.

12:21:40    2           THE COURT:  Sustained.

12:21:41    3   BY MR. LOEVY:

12:21:41    4   Q.  Is it in Defendant's Exhibit 72 that Nate supposedly

12:21:44    5   confessed to this murder?

12:21:46    6   A.  This exhibit, no.

12:21:55    7   Q.  These are your notes, are they not?

12:21:57    8           MR. KULWIN:  Objection, asked and answered, Judge.

12:21:59    9           THE COURT:  Sustained.

12:22:00   10   BY MR. LOEVY:

12:22:00   11   Q.  All right.  Let's take a look at your general progress

12:22:03   12   report, Defendant's Exhibit 70.  You created this as well,

12:22:09   13   right?

12:22:09   14   A.  Yes, sir.

12:22:09   15   Q.  And you're saying you created this on the same day you

12:22:12   16   created Defendant's Exhibit 70?

12:22:14   17   A.  Same day, same evening or afternoon.

12:22:17   18           THE COURT:  Mr. Loevy, why don't you retrieve those

12:22:19   19   documents.

12:22:20   20           MR. LOEVY:  All right.

12:22:21   21   BY MR. LOEVY:

12:22:22   22   Q.  The purpose of general -- may I, sir?

12:22:23   23   A.  Yeah, I got some on the floor.

12:22:25   24   Q.  That's okay.

12:22:26   25           The purpose of general progress reports is for police

Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 126 of 133 PageID #:31628

12:22:33   1   detectives to take notes, correct?

12:22:34   2   A.  Yes, sir.

12:22:38   3   Q.  In fact, the old rule was you're allowed to take notes on

12:22:41   4   scraps of paper and when they did the new special order,

12:22:44   5   detectives are required to take notes directly on the general

12:22:47   6   progress reports, correct?

12:22:48   7   A.  No, you're incorrect.

12:22:50   8   Q.  Were you here when lieutenant Duffin and Mr. Hickey

12:22:54   9   testified?

12:22:55   10  A.  Not Duffin.

12:22:57   11  Q.  Were you here for Hickey, though?

12:22:59   12  A.  Yes, sir.

12:23:00   13  Q.  Do you disagree with the suggestion that the reason GPRs

12:23:06   14  were created was so that detectives are supposed to take their

12:23:09   15  notes directly into GPRs, was that the practice?

12:23:11   16  A.  No, you can take your notes on other paper.

12:23:16   17  Q.  So the special order in the terms of the special order

12:23:21   18  required notes to be taken in the GPR, correct?

12:23:23   19  A.  I don't -- you can take notes in the GPRs.

12:23:27   20  Q.  The question was if the special order required it?

12:23:29   21  A.  No, it doesn't require.  I mean, it suggests maybe to do

12:23:35   22  it, but that's not the only way you can take notes.  That's

12:23:37   23  what I'm trying to explain.

12:23:38   24  Q.  All right.  You created this general progress report after

12:23:43   25  the fact, didn't you, sir?

| | | |
|---|---|---|
| 12:23:45 | 1 | MR. BURNS:  Objection. |
| 12:23:47 | 2 | THE COURT:  Overruled. |
| 12:23:47 | 3 | MR. BURNS:  Foundation, your Honor. |
| 12:23:48 | 4 | THE COURT:  Overruled. |
| 12:23:54 | 5 | THE WITNESS:  After the fact? |
| 12:23:55 | 6 | BY MR. LOEVY: |
| 12:23:56 | 7 | Q.  Yes? |
| 12:23:56 | 8 | A.  The interviews that I conducted on 14 May 85. |
| 12:23:59 | 9 | Q.  You took your notes which is Defendant's Exhibit 72? |
| 12:24:03 | 10 | A.  Yes. |
| 12:24:03 | 11 | Q.  And you rewrote them as a general progress report, |
| 12:24:06 | 12 | correct? |
| 12:24:06 | 13 | A.  I had another interview with him and went over it slowly, |
| 12:24:15 | 14 | I wanted to get the information on who the offenders were and |
| 12:24:18 | 15 | get that out to my team. |
| 12:24:19 | 16 | Q.  Sir, you did say you had one and only one interview with |
| 12:24:22 | 17 | Anthony Sumner, did you tell that jury this, did you? |
| 12:24:26 | 18 | A.  No.  I had -- |
| 12:24:30 | 19 | Q.  That's your answer.  You had more than one interview with |
| 12:24:33 | 20 | Anthony Sumner, sir? |
| 12:24:33 | 21 | A.  The only time I interviewed him was on 14 May 85 when -- |
| 12:24:39 | 22 | Q.  All right.  Let's take a look at the first line of your |
| 12:24:42 | 23 | notes.  It says, a couple of days after the shooting, he had a |
| 12:24:48 | 24 | conversation with Hawkins at 6416 Kenwood, correct? |
| 12:24:52 | 25 | A.  Yes. |

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 128 of 133 PageID #:31630
***REALTIME UNEDITED TRANSCRIPT ONLY***

127

| | | |
|---|---|---|
| 12:24:53 | 1 | Q. Let's take a look at your GPR report. It says, quote, a |
| 12:24:58 | 2 | couple of days after shooting, he had a conversation with Earl |
| 12:25:02 | 3 | Hawkins at his apartment located at 6416 south Kenwood, |
| 12:25:06 | 4 | correct? |
| 12:25:06 | 5 | A. Yeah, but then I go into the narrative. |
| 12:25:11 | 6 | MR. KULWIN: Objection. |
| 12:25:11 | 7 | THE COURT: He can only do one part of it at a time. |
| 12:25:14 | 8 | The objection is overruled. |
| 12:25:15 | 9 | BY MR. LOEVY: |
| 12:25:15 | 10 | Q. That's what it says, right? |
| 12:25:16 | 11 | A. That's what it says. |
| 12:25:18 | 12 | Q. What you did was you took your notes, a couple of days |
| 12:25:22 | 13 | after the shooting, he had a conversation with Hawkins, and |
| 12:25:24 | 14 | you rewrote them into the GPR, a couple of days after the |
| 12:25:28 | 15 | shooting, he had a conversation with Earl Hawkins at his |
| 12:25:30 | 16 | apartment located at Kenwood, correct? You rewrote your |
| 12:25:33 | 17 | notes? |
| 12:25:34 | 18 | A. Incorrect. |
| 12:25:35 | 19 | Q. All right. And then the next line says, Hawkins related |
| 12:25:40 | 20 | that he got Nathson Fields and George Carter to shoot Fuddy |
| 12:25:43 | 21 | because they were not known in the enabled. They used |
| 12:25:47 | 22 | pseudonym vehicle and a blue Cadillac. Do you see that? |
| 12:25:49 | 23 | A. Yes, sir. |
| 12:25:50 | 24 | Q. Let's look at the original note. Lot less detail, right? |
| 12:25:54 | 25 | Earl got Fields and Carter. Right? That's what it says? |

Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 129 of 133 PageID #:31631

12:25:59  1   A.  Yes, sir.

12:26:00  2   Q.  What was in all the white space that's been whited out on

12:26:04  3   this note, if you know?

12:26:06  4           MR. BURNS:  Objection?

12:26:07  5           MR. KULWIN:  I'll object, Judge.

12:26:08  6           THE COURT:  So you have to lay the foundation first

12:26:12  7   that something was whited out in other words.

12:26:14  8   BY MR. LOEVY:

12:26:14  9   Q.  I guess that's a question.  In your notes throughout all

12:26:17  10  the other paragraphs follow closely, correct?

12:26:22  11          THE COURT:  You are talking about the spacing between

12:26:24  12  the various bullet points.

12:26:25  13          THE WITNESS:  It's just the way I took the notes.

12:26:27  14  BY MR. LOEVY:

12:26:28  15  Q.  The question was the bottom half, there is no spacing,

12:26:33  16  correct?

12:26:33  17  A.  Listen, that's the way I take the notes.

12:26:38  18  Q.  Can you answer the question, sir?

12:26:40  19          MR. KULWIN:  Objection.  He is answering the

12:26:41  20  question.

12:26:42  21          THE COURT:  He is not.  The question was what the

12:26:48  22  spacing was at the bottom.

12:26:50  23          THE WITNESS:  Are you saying I whited out things or

12:26:53  24  something?

12:26:54  25          MR. LOEVY:  Objection, your Honor.  We ask to strike

***REALTIME UNEDITED TRANSCRIPT ONLY***

| | | |
|---|---|---|
| 12:26:55 | 1 | that. |
| 12:26:55 | 2 | THE WITNESS:  I'm sorry. |
| 12:26:57 | 3 | BY MR. LOEVY: |
| 12:26:57 | 4 | Q.  The question is isn't it true there is a dash with nothing |
| 12:27:02 | 5 | on paper and then below this there is three lines that don't |
| 12:27:07 | 6 | have text.  Can we agree on that? |
| 12:27:09 | 7 | A.  Yes, that's in that note. |
| 12:27:11 | 8 | Q.  All right.  The next line of the original note says Fuddy |
| 12:27:15 | 9 | had shot James, an El Rukn two or three weeks earlier.  Do you |
| 12:27:19 | 10 | see that? |
| 12:27:19 | 11 | A.  Yes, sir. |
| 12:27:20 | 12 | Q.  And on the rewritten note, Hawkins said -- |
| 12:27:29 | 13 | MR. KULWIN:  Objection to rewritten, Judge. |
| 12:27:31 | 14 | THE COURT:  Overruled. |
| 12:27:32 | 15 | BY MR. LOEVY: |
| 12:27:32 | 16 | Q.  Hawkins said he was across the street at 706 east 39th |
| 12:27:37 | 17 | while Carter and Fields shot Fuddy and a friend.  Stayed in |
| 12:27:42 | 18 | the vehicle, that's what it says? |
| 12:27:43 | 19 | A.  That's not a rewritten note.  I would have to say no. |
| 12:27:48 | 20 | Q.  All right. |
| 12:27:50 | 21 | A.  On everything. |
| 12:27:51 | 22 | Q.  At the bottom here, it says the hit ordered by Earl |
| 12:27:57 | 23 | through general banks in your original note, right? |
| 12:28:00 | 24 | A.  Yes, sir. |
| 12:28:04 | 25 | Q.  Okay.  In your rewritten note, it doesn't say that, does |

***REALTIME UNEDITED TRANSCRIPT ONLY***

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 131 of 133 PageID #:31633
***REALTIME UNEDITED TRANSCRIPT ONLY***

130

12:28:09  1   it?

12:28:12  2        MR. KULWIN:  Objection to rewritten.  The witness has

12:28:14  3   already said it wasn't.

12:28:15  4        THE COURT:  Rephrase --

12:28:16  5        THE WITNESS:  I have to say no.

12:28:18  6        THE COURT:  Rephrase the question.  Excuse me.  I'm

12:28:21  7   talking.  Rephrase the question.

12:28:22  8   BY MR. LOEVY:

12:28:23  9   Q.  You had one and only one interview with Anthony Sumner

12:28:25  10  isn't that correct, sir?

12:28:26  11  A.  No, that is incorrect.

12:28:28  12  Q.  Do you remember being -- giving testimony in this case at

12:28:48  13  a hearing in April 16th, 2014, and being asked this question

12:28:51  14  and giving this answer.  This is page 1550, lines 15 to 20.

12:28:59  15       "QUESTION:  Now you said you only met with Mr. Sumner

12:29:02  16  on one day; is that correct?

12:29:03  17       "ANSWER:  Well, the only time I ever interviewed him

12:29:06  18  about one case, any case was 14 May 1985.

12:29:09  19       "QUESTION:  You did meet Mr. Sumner on other occasions?

12:29:14  20       "ANSWER:  No, I didn't.  I saw him a couple times but I

12:29:16  21  never spoke to him about any cases

12:29:18  22       "QUESTION:  So this was your only interview of

12:29:21  23  Mr. Sumner?

12:29:22  24       "ANSWER:  Yes.  Yes, ma'am.

12:29:24  25        Did you give that answer, sir

| | | |
|---|---|---|
| 12:29:25 | 1 | MR. BURNS:  Objection, Judge, not impeaching |
| 12:29:27 | 2 | BY MR. LOEVY: |
| 12:29:27 | 3 | Q.  This was your only interview of Mr. Sumner, yes, ma'am? |
| 12:29:31 | 4 | THE COURT:  What's the objection? |
| 12:29:32 | 5 | MR. BURNS: . |
| 12:29:34 | 6 | THE COURT:  The objection is overruled. |
| 12:29:35 | 7 | THE WITNESS:  I said I interviewed him that one day. |
| 12:29:39 | 8 | It wasn't I went and talked to him one time.  I interviewed |
| 12:29:42 | 9 | him one day throughout the day. |
| 12:29:46 | 10 | MR. LOEVY:  All right. |
| 12:29:47 | 11 | THE COURT:  We will stop there. |
| 12:29:48 | 12 | MR. LOEVY:  Can I ask one more question? |
| 12:29:50 | 13 | THE COURT:  Yeah. |
| 12:29:51 | 14 | BY MR. LOEVY: |
| 12:29:51 | 15 | Q.  Was he changing his story throughout the day? |
| 12:29:54 | 16 | A.  No, I was getting a better version of it talking to him. |
| 12:29:57 | 17 | Q.  Better? |
| 12:29:58 | 18 | A.  I was getting a clearer account of what's going on. |
| 12:30:00 | 19 | Q.  Like the fact that Nate confessed, it got clarified? |
| 12:30:04 | 20 | MR. BURNS:  Objection, your Honor. |
| 12:30:04 | 21 | THE COURT:  Sustained.  Argumentative. |
| 12:30:06 | 22 | We are going to break for lunch right here.  I have |
| 12:30:08 | 23 | one other case as I said at 1:30.  I'm hoping it will take |
| 12:30:12 | 24 | five or ten minutes.  There is a chance it might take a little |
| 12:30:15 | 25 | bit more than that.  Be ready to go at 1:35 or so.  (The jury |

12/01/16 AM
Case: 1:10-cv-01168 Document #: 1185-22 Filed: 02/24/17 Page 133 of 133 PageID #:31635
***REALTIME UNEDITED TRANSCRIPT ONLY***

132

12:31:06    1    leaves the courtroom.)

12:31:06    2            THE COURT:  Anything we got to talk about before

12:31:12    3    stopping?

12:31:13    4            MR. LOEVY:  Not from plaintiff, your Honor.

12:31:15    5            THE COURT:  Okay.  Fine.  See you at -- be ready to

12:31:18    6    go at about 1:35 just like I told the jury.

12:31:21    7      (The trial was adjourned at 12:30 until 1:35 p.m. of this

12:31:27    8    same day and date.)

            9

           10

           11

           12

           13

           14

           15

           16

           17

           18

           19

           20

           21

           22

           23

           24

           25