# EXHIBIT 84

| | | |
|---|---|---|
| 09:27:20 | 1 | Judge Kennelly, November 30, 2016, 9:30 a.m. call and Fields |
| 09:28:15 | 2 | v. City of Chicago. |
| 09:36:11 | 3 | THE CLERK:  Case number 10 C 1168, Fields v. City of |
| 09:36:16 | 4 | Chicago. |
| 09:36:19 | 5 | MR. LOEVY:  Good morning, your Honor.  Jon Loevy, |
| 09:36:23 | 6 | Steve Art, Anand Swaminathan, and Candace Gorman on behalf of |
| 09:36:26 | 7 | the plaintiff. |
| 09:36:27 | 8 | MR. NOLAND:  Dan Noland, Terry Burns and Paul |
| 09:36:31 | 9 | Michalik for the City and Commander Murphy. |
| 09:36:31 | 10 | MR. KULWIN:  Shelly Kulwin and Rachel Katz on behalf |
| 09:36:34 | 11 | of Mr. O'Callaghan. |
| 09:36:35 | 12 | THE COURT:  Anything we need to talk about before we |
| 09:36:37 | 13 | get the jury out here? |
| 09:36:38 | 14 | MR. KULWIN:  I have a number of issues about |
| 09:36:40 | 15 | Mr. Kees, Judge. |
| 09:36:41 | 16 | THE COURT:  Okay. |
| 09:36:41 | 17 | MR. KULWIN:  The first is I anticipate -- |
| 09:36:44 | 18 | THE COURT:  Hang on one second.  Go ahead. |
| 09:36:48 | 19 | MR. LOEVY:  Your Honor, before he starts, I am going |
| 09:36:50 | 20 | to hand you a copy of your ruling so it's handy if you would |
| 09:36:54 | 21 | like. |
| 09:36:54 | 22 | THE COURT:  That's fine. |
| 09:36:55 | 23 | MR. LOEVY:  As well as the proffer that was related |
| 09:36:56 | 24 | to it by the defense. |
| 09:37:03 | 25 | THE COURT:  Wait a second. |

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 3 of 125 PageID #:31202
***REALTIME UNEDITED TRANSCRIPT ONLY***

2

09:37:09   1          MR. ART:  Your order refers to the defendant.

09:37:12   2          MR. KULWIN:  Whenever you are ready.

09:37:14   3          THE COURT:  Go ahead.

09:37:14   4          MR. KULWIN:  The first one is I anticipate that

09:37:16   5     plaintiff's counsel will try to cross-examine Mr. Kees about

09:37:20   6     statements made by the government in response to a Rule 35

09:37:26   7     that he filed in 1994.  I don't think that Mr. Kees should be

09:37:31   8     asked those questions, it's hearsay, the only way he would

09:37:34   9     know about them is through hearsay.  Those questions to the

09:37:37   10    extent that they are relevant, admissible, if they are, I am

09:37:42   11    not sighing they are.

09:37:42   12         THE COURT:  Rule 35 was filed when?

09:37:44   13         MR. KULWIN:  I believe he filed it in 1994 or 199 --

09:37:50   14         THE COURT:  Did it come out at the previous trial?

09:37:53   15         MR. KULWIN:  No, it came out -- I believe he filed it

09:37:56   16    --

09:37:56   17         THE COURT:  I'm asking were these statements elicited

09:38:00   18    at the previous trial?  Is this something you're intending to

09:38:04   19    attempt to elicit?

09:38:05   20         MR. LOEVY:  Yes, but not through this witness.  In

09:38:08   21    other words, what happened was the government --

09:38:10   22         THE COURT:  All right.  What are the statements that

09:38:12   23    you are talking about, Mr. Kulwin.

09:38:13   24         MR. KULWIN:  Barry Elden made a filing that the

09:38:20   25    government says they believes he is a liar.  This all came out

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 4 of 125 PageID #:31203
***REALTIME UNEDITED TRANSCRIPT ONLY***

3

| | | |
|---|---|---|
| 09:38:23 | 1 | at the El Rukn hearings. |
| 09:38:25 | 2 | THE COURT:  What's the witness that you are planning |
| 09:38:27 | 3 | to elicit. |
| 09:38:28 | 4 | MR. LOEVY:  We are planning to elicit from Mr. Kees |
| 09:38:29 | 5 | the underlying problem, he did lie repeatedly. |
| 09:38:33 | 6 | THE COURT:  Yeah.  What Mr. Kulwin is talking about |
| 09:38:34 | 7 | is the government's statement to that effect is that right? |
| 09:38:36 | 8 | MR. LOEVY:  Yes. |
| 09:38:37 | 9 | MR. KULWIN:  Yes. |
| 09:38:38 | 10 | MR. LOEVY:  And what the government said was after |
| 09:38:40 | 11 | Mr. Kees -- |
| 09:38:40 | 12 | THE COURT:  Look. |
| 09:38:41 | 13 | MR. LOEVY:  I'm telling you. |
| 09:38:42 | 14 | THE COURT:  Answer my question. |
| 09:38:43 | 15 | MR. LOEVY:  I'm trying to. |
| 09:38:44 | 16 | THE COURT:  What's the witness that you intend to |
| 09:38:46 | 17 | elicit this from? |
| 09:38:47 | 18 | MR. LOEVY:  Hogan. |
| 09:38:47 | 19 | THE COURT:  When is he going to testify? |
| 09:38:49 | 20 | MR. KULWIN:  Probably next -- |
| 09:38:51 | 21 | THE COURT:  I am not going to worry about it. |
| 09:38:53 | 22 | MR. KULWIN:  Great. |
| 09:38:53 | 23 | THE COURT:  I am not going to worry about it. |
| 09:38:55 | 24 | MR. KULWIN:  This is all about Kees. |
| 09:38:57 | 25 | The second thing is I want -- I want the plaintiffs |

***REALTIME UNEDITED TRANSCRIPT ONLY***

| | |
|---|---|
| 09:39:04 | 1 |
| 09:39:07 | 2 |
| 09:39:10 | 3 |
| 09:39:15 | 4 |
| 09:39:18 | 5 |
| 09:39:22 | 6 |
| 09:39:22 | 7 |
| 09:39:25 | 8 |
| 09:39:27 | 9 |
| 09:39:29 | 10 |
| 09:39:31 | 11 |
| 09:39:33 | 12 |
| 09:39:35 | 13 |
| 09:39:38 | 14 |
| 09:39:41 | 15 |
| 09:39:43 | 16 |
| 09:39:46 | 17 |
| 09:39:49 | 18 |
| 09:39:50 | 19 |
| 09:39:52 | 20 |
| 09:39:54 | 21 |
| 09:39:57 | 22 |
| 09:40:00 | 23 |
| 09:40:03 | 24 |
| 09:40:07 | 25 |

1   to be barred from saying when they gave you this deal, like
2   this, Judge, and I am making a hand gesture, so I am --
3            THE COURT:  You're asking me to bar the hand gesture.
4            MR. KULWIN:  I am moving in limine to bar hand
5   gestures on top of everything else, so I need your full
6   attention.
7            THE COURT:  I am paying attention.  I already know
8   what you are going to say.
9            MR. KULWIN:  And what they gave you, and what they
10  gave you, and what they gave you.
11           THE COURT:  Don't do the hand gesture, all right?
12           MR. LOEVY:  May I ask.  I won't gesture.  May I ask
13  the witness isn't it true you had an understanding -- in fact,
14  I can prove up that O'Callaghan made him a promise.
15           THE COURT:  You know what, when you stop in the
16  middle of a sentence and start a new sentence, it makes it
17  very difficult to follow what you're saying.  You do this with
18  witnesses too.
19           MR. KULWIN:  To great effect I might add.
20           THE COURT:  Start over.
21           MR. LOEVY:  Your Honor, we intend to prove that
22  O'Callaghan made him a promise that he would take care of him
23  that wasn't reflected in the agreement and Mr. Kulwin wants to
24  argue no, no, no, no, that was just the government trading his
25  testimony for a deal, but, yes, we intend to ask Mr. Kees,

11/30/16 AM   Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 6 of 125 PageID #:31205
***REALTIME UNEDITED TRANSCRIPT ONLY***

5

| | | |
|---|---|---|
| 09:40:11 | 1 | isn't it true O'Callaghan promised you he would take care of |
| 09:40:13 | 2 | you. |
| 09:40:13 | 3 | MR. KULWIN:  When, in 1989? |
| 09:40:16 | 4 | THE COURT:  All right. |
| 09:40:17 | 5 | MR. KULWIN:  I'm sorry, Judge. |
| 09:40:18 | 6 | THE COURT:  I don't have a problem with you asking |
| 09:40:19 | 7 | that question.  What I'm talking about is when you're talking |
| 09:40:22 | 8 | about the current Rule 35 which is what you're talking about? |
| 09:40:25 | 9 | MR. KULWIN:  It's one of them.  There are others, |
| 09:40:28 | 10 | because the state cut him a deal in 2013, he had an original |
| 09:40:33 | 11 | plea deal with the federal government in 1990.  The questions |
| 09:40:39 | 12 | always come out when they gave you a deal, when they gave you |
| 09:40:42 | 13 | another deal. |
| 09:40:42 | 14 | THE COURT:  There's not going to be a motion in |
| 09:40:45 | 15 | limine regarding pronounce, okay, that somebody can't use |
| 09:40:49 | 16 | pronounce.  I can bar the hand gestures.  I am not going to |
| 09:40:52 | 17 | bar somebody from using they.  Seriously, that level of micro |
| 09:40:57 | 18 | managing just isn't -- it's not just sane. |
| 09:40:59 | 19 | So no hand gestures. |
| 09:41:01 | 20 | MR. LOEVY:  No hand gestures. |
| 09:41:03 | 21 | THE COURT:  People giving you deals and they giving |
| 09:41:06 | 22 | you deals.  Just ask questions. |
| 09:41:08 | 23 | What's next? |
| 09:41:09 | 24 | MR. KULWIN:  I anticipate that there's going to be |
| 09:41:11 | 25 | questioning of Mr. Kees speculating on whether he got some |

09:41:14    1   consideration to testify in this case in April of 2014.
09:41:20    2   There's no evidence of it, there's no basis for it, there's no
09:41:24    3   good faith basis to ask the question.  In October -- he
09:41:28    4   testified in April 2014, in October of 2014, he went for
09:41:34    5   parole, he lost, there was no deal given and the question is
09:41:40    6   going to be like, oh, come on, we know that you really got
09:41:43    7   one, it's bad faith and the question itself is prejudicial.
09:41:47    8   So I want to bar it.
09:41:48    9          THE COURT:  Okay.  That request is overruled.
09:41:49   10          What's your next one?
09:41:50   11          MR. KULWIN:  No questions about why the state's
09:41:59   12   attorney or why he believes the state's attorney gave him a
09:42:02   13   deal in 2013.  They can ask him didn't you get a deal in 2013,
09:42:09   14   but not, you know, he would have no way of knowing the thought
09:42:13   15   process of the state's attorney and anyway he would know it is
09:42:18   16   through hearsay.
09:42:19   17          THE COURT:  Mr. Loevy?
09:42:20   18          MR. LOEVY:  We are going to ask him, isn't it true in
09:42:22   19   advance of the deposition that you gave in this case, you got
09:42:25   20   a deal and we had the same issue with Hawkins.  You know, they
09:42:28   21   can argue that it's unrelated to his testimony, but that's
09:42:30   22   what it was related to.  There was nothing else that
09:42:34   23   precipitated the deal.
09:42:35   24          THE COURT:  Did I not say that -- have I not said on
09:42:39   25   other witnesses -- honestly, I don't remember which way these

11/30/16 AM                ***REALTIME UNEDITED TRANSCRIPT ONLY***

7

09:42:43  1   requests were being made, but I think I have been relatively

09:42:46  2   consistent about it, that people can't talk about why other

09:42:49  3   people decided to do something.

09:42:51  4        MR. LOEVY:  Yes.

09:42:51  5        THE COURT:  Okay.  So you can't talk about that.  I

09:42:54  6   mean, but as I said, I think it was yesterday, it may have

09:42:57  7   been the day before yesterday, but I think it was yesterday,

09:42:59  8   there's a difference between whether person A can speculate on

09:43:07  9   what person B's motivation was generally speaking, they can't,

09:43:15  10  and on the other hand, whether somebody could argue that it's

09:43:18  11  a reasonable inference from the facts that A led to B or that

09:43:23  12  B acted for this reason, which, you know, if there's evidence

09:43:27  13  to support it, you can do.  Those are two different issues.

09:43:29  14  We are not in argument right now.  We'll worry about argument

09:43:33  15  when I get to argument.

09:43:34  16        So he is not going to be able to answer why, you

09:43:37  17  know, somebody else gave him a deal.

09:43:39  18        Next.

09:43:40  19        MR. KULWIN:  Next one, Judge, is Mr. Loevy when he

09:43:46  20  was examining Mr. Hawkins violated a motion in limine ruling

09:43:49  21  that you made in 2014.  I have the transcript.  I'll explain

09:43:53  22  briefly.

09:43:54  23        In 2014, Mr. Goodman tried to use this pros memo

09:43:59  24  argument, you got the pros memo from the government, it was

09:44:01  25  being passed around, you borrowed from me referring to it as a

                ***REALTIME UNEDITED TRANSCRIPT ONLY***

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 9 of 125 PageID #:31208
***REALTIME UNEDITED TRANSCRIPT ONLY***

8

| | | |
|---|---|---|
| 09:44:07 | 1 | document.  It didn't -- I didn't recognize it because -- |
| 09:44:11 | 2 | THE COURT:  Why didn't -- |
| 09:44:12 | 3 | MR. KULWIN:  I'm. |
| 09:44:13 | 4 | THE COURT:  Contemporaneous objection rule. |
| 09:44:16 | 5 | MR. KULWIN:  That's true. |
| 09:44:18 | 6 | THE COURT:  What you're trying to do is prospectively |
| 09:44:21 | 7 | deal with it. |
| 09:44:22 | 8 | MR. KULWIN:  I don't want it to happen on Kees or |
| 09:44:24 | 9 | Clay going forward and, you know, I do believe that Hogan, |
| 09:44:29 | 10 | because of what's happening with Hawkins, can simply say what |
| 09:44:32 | 11 | happened, what it was, and that should be the end of it, |
| 09:44:34 | 12 | Judge.  You made it really clear -- |
| 09:44:37 | 13 | THE COURT:  How does he know what the other people |
| 09:44:39 | 14 | had at the MCC. |
| 09:44:42 | 15 | MR. KULWIN:  It was his stuff. |
| 09:44:43 | 16 | THE COURT:  That's not my question.  How does he |
| 09:44:47 | 17 | know? |
| 09:44:47 | 18 | MR. KULWIN:  Because he covered it. |
| 09:44:49 | 19 | THE COURT:  He himself recovered had. |
| 09:44:52 | 20 | MR. KULWIN:  My understanding is he had the marshals |
| 09:44:54 | 21 | for the guys from OCDETF go there or he was called by the MCC, |
| 09:44:59 | 22 | I am going on my memory from 20 years ago, but this is how I |
| 09:45:03 | 23 | recall it, it was a big deal, it was a big conning attempt at |
| 09:45:09 | 24 | the time and /STKPWHR-FRBLT the day it happened, they went |
| 09:45:12 | 25 | over there, they got it, they came back, it was a scheduling |

Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 10 of 125 PageID #:31209
11/30/16 AM          ***REALTIME UNEDITED TRANSCRIPT ONLY***

9

09:45:15   1    memorandum.  When you ruled, Judge, you said it wasn't even a
09:45:19   2    close call.
09:45:19   3         THE COURT:  Well, you know, as I've said to
09:45:23   4    everybody, I have made thousands of rulings in this case,
09:45:26   5    literally, I can't be expected to remember.
09:45:28   6         MR. LOEVY:  May I?  I'm sorry.
09:45:30   7         THE COURT:  So what you're talking about right now is
09:45:33   8    you want to preclude questioning of this regarding Mr. Kees
09:45:36   9    who is the next witness.
09:45:38   10        MR. KULWIN:  Yes, Judge.
09:45:39   11        THE COURT:  Mr. Loevy.
09:45:39   12        MR. LOEVY:  Your Honor, what Mr. Kulwin just showed
09:45:42   13   me is a ruling with Sexton, so during a sidebar of a state's
09:45:47   14   attorney who had nothing to do with Mr. Hogan.
09:45:49   15        THE COURT:  Is anybody going to bother to show this
09:45:51   16   to me?
09:45:51   17        MR. KULWIN:  Ms. Katz is.  She's always ready, Judge.
09:45:55   18        MR. LOEVY:  What we have done is since proved up what
09:45:57   19   was missing.  You said you had no connection between the cross
09:46:00   20   memos and the underlying events and what Mr. Hawkins admitted
09:46:03   21   yesterday was, yes, I had the prosecution's memos --
09:46:06   22        THE COURT:  Actually, he didn't.  He said that he
09:46:08   23   didn't see it.  He said these other people had the document,
09:46:11   24   they were telling him about it, and he didn't see it.  That is
09:46:14   25   what he said.


                        ***REALTIME UNEDITED TRANSCRIPT ONLY***

| | | |
|---|---|---|
| 09:46:14 | 1 | MR. LOEVY:  He said it both ways, your Honor. |
| 09:46:18 | 2 | THE COURT:  You show me the transcript where he said |
| 09:46:21 | 3 | he actually had a document. |
| 09:46:22 | 4 | MR. KULWIN:  Yesterday he testified -- |
| 09:46:24 | 5 | THE COURT:  The question on the table is for him. |
| 09:46:26 | 6 | That's going to be the next thing that happens. |
| 09:46:49 | 7 | You know, I think I actually -- I actually think that |
| 09:47:00 | 8 | I -- there's a bunch of stuff here, it's kind of out of |
| 09:47:03 | 9 | sequence, I think I actually need a couple pages prior to what |
| 09:47:06 | 10 | Ms. Katz handed me. |
| 09:47:07 | 11 | MR. KULWIN:  Which pages do you need? |
| 09:47:08 | 12 | THE COURT:  I have 2458 and 2459, but it looks like |
| 09:47:12 | 13 | the discussion at the sidebar started before that.  I don't |
| 09:47:14 | 14 | know how much before. |
| 09:47:16 | 15 | MR. KULWIN:  Okay.  Can you grab that from the trial |
| 09:47:19 | 16 | two? |
| 09:47:19 | 17 | THE COURT:  And there is a reference of -- there's a |
| 09:47:22 | 18 | reference on 2479 to an earlier sidebar, 2459. |
| 09:47:32 | 19 | MR. LOEVY:  Page 32 and 33. |
| 09:47:37 | 20 | MR. KULWIN:  2479 you admonished. |
| 09:47:39 | 21 | THE COURT:  I understand.  I need the pages before |
| 09:47:42 | 22 | 2458. |
| 09:47:42 | 23 | MR. KULWIN:  Sure, Judge.  Why don't we get you -- |
| 09:47:47 | 24 | THE COURT:  I may actually have all of this |
| 09:47:50 | 25 | somewhere.  Can you tell me what date the -- |

***REALTIME UNEDITED TRANSCRIPT ONLY***

| | | |
|---|---|---|
| 09:47:54 | 1 | MR. KULWIN:  Yes. |
| 09:47:55 | 2 | THE COURT:  If you just give me the date I will be |
| 09:47:57 | 3 | able to find it myself probably easier. |
| 09:48:01 | 4 | MR. KULWIN:  Let me run to the closet and get that, |
| 09:48:03 | 5 | Judge. |
| 09:48:03 | 6 | THE COURT:  Okay. |
| 09:48:05 | 7 | MR. KULWIN:  She is in the closet getting it. |
| 09:48:07 | 8 | MR. LOEVY:  Your Honor, would you like to see the |
| 09:48:09 | 9 | testimony you asked for? |
| 09:48:11 | 10 | THE COURT:  Yeah.  Do you have a page cite from the |
| 09:48:14 | 11 | realtime? |
| 09:48:14 | 12 | MR. LOEVY:  The realtime it's page 32. |
| 09:48:17 | 13 | THE COURT:  From the morning? |
| 09:48:20 | 14 | MR. ART:  Afternoon of November 28th. |
| 09:48:22 | 15 | THE COURT:  Afternoon of November 28th. |
| 09:48:24 | 16 | MR. LOEVY:  Starting on page 32, line 17. |
| 09:49:06 | 17 | MR. ART:  Your Honor, I have a paper copy if you'd |
| 09:49:08 | 18 | like. |
| 09:49:08 | 19 | THE COURT:  It's the afternoon, you said page 32. |
| 09:49:10 | 20 | MR. LOEVY:  Starting at line 9. |
| 09:49:13 | 21 | THE COURT:  It's just taking a second for it to come |
| 09:49:16 | 22 | up here. |
| 09:49:38 | 23 | MR. LOEVY:  The important part is on 33. |
| 09:49:40 | 24 | THE COURT:  The important part is what I think is the |
| 09:49:42 | 25 | important part.  I am reading it in context.  Stop talking |

Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 13 of 125 PageID #:31212

| | | |
|---|---|---|
| 09:49:44 | 1 | until I ask you something. |
| 09:49:46 | 2 | Okay.  So you are correct that on whatever -- I |
| 09:50:21 | 3 | assume that's your examination of Mr. Hawkins. |
| 09:50:24 | 4 | MR. LOEVY:  Correct. |
| 09:50:25 | 5 | THE COURT:  He says that he saw -- this is the day |
| 09:50:28 | 6 | before yesterday, he said that he saw the documents, they were |
| 09:50:38 | 7 | shown to him by Eugene Hunter. |
| 09:50:42 | 8 | "QUESTION:  Those documents had the same facts that |
| 09:50:44 | 9 | later became part of your testimony, correct? |
| 09:50:47 | 10 | "ANSWER:  Yes, sir. |
| 09:50:47 | 11 | |
| 09:50:48 | 12 | "QUESTION:  How do you guys get your hands on them? |
| 09:50:50 | 13 | "ANSWER:  I guess they took them. |
| 09:50:52 | 14 | "QUESTION:  Anybody ever explain to you how they took |
| 09:50:54 | 15 | them? |
| 09:50:55 | 16 | "ANSWER:  No, because I wasn't interested." |
| 09:50:57 | 17 | So you're right that the previous day he testified |
| 09:51:00 | 18 | that he saw them.  Yesterday, he testified that he didn't see |
| 09:51:02 | 19 | them. |
| 09:51:02 | 20 | MR. KULWIN:  Right. |
| 09:51:03 | 21 | THE COURT:  You're correct that he testified both |
| 09:51:05 | 22 | ways. |
| 09:51:05 | 23 | All right.  So what I need to do now is I need to |
| 09:51:09 | 24 | look back at the full context of the ruling.  Do you know what |
| 09:51:19 | 25 | date it was? |

09:51:19   1        MR. KULWIN:  April 2nd, 2014.

09:52:34   2        THE COURT:  Okay.  So what happened in the previous

09:52:37   3   trial is that it looks like it's right at the beginning of the

09:52:40   4   cross of Mr. Kees in that trial he was called by the defense.

09:52:47   5   Mr. Goodman says page 2458, there's information -- I am going

09:52:53   6   to paraphrase it.  Mr. Kees admitted that during a meeting

09:52:57   7   with Mr. Hogan, he took the pros memo, short for prosecution

09:53:02   8   memo.  Shared it.  I asked what's the relevancy of it.

09:53:05   9   Mr. Goodman said it basically explains how they got the same

09:53:08  10   story about good exercise, good exercise, the quote that's

09:53:11  11   been used in the case.

09:53:12  12        I asked do you have a pros memo, Mr. Goodman says,

09:53:17  13   no.  I say, does the pros memo say anything about good

09:53:21  14   exercise?  Mr. Goodman says, I don't know that.  I say, how do

09:53:24  15   you connect A with B?  He says, well, I don't know how I can

09:53:26  16   connect it to good exercise, but it certainly shows they were

09:53:28  17   sharing information.  And I say it's not -- you didn't make a

09:53:34  18   connection.

09:53:35  19        Okay.  So do you have the pros memo?

09:53:38  20        MR. LOEVY:  We have asked the government.  They won't

09:53:40  21   give it to us.

09:53:41  22        THE COURT:  Well, big surprise there.

09:53:42  23        MR. LOEVY:  Well, it's part of the -- it should have

09:53:44  24   been in our view discoverable, but we did connect it is our

09:53:50  25   position.

Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 15 of 125 PageID #:31214

***REALTIME UNEDITED TRANSCRIPT ONLY***

09:53:50  1        THE COURT:  It probably would be determined to be

09:53:53  2   work product.  I can't guarantee that, but that's likely.

09:53:55  3        MR. LOEVY:  Hawkins said, yes, it became the basis of

09:53:57  4   the facts.  What the pros memo was, we know what it was, the

09:54:01  5   prosecution memo regarding the indictment, the RICO

09:54:04  6   indictment.  Smith/Hickman is one of the predicate acts,

09:54:07  7   Hawkins has said, yes, these are the facts that became my

09:54:11  8   testimony.

09:54:11  9        Kees and hunter they want to call and say isn't it

09:54:16  10  true you had personal knowledge of it, they had access to the

09:54:18  11  government's memos laying out the indictment of which

09:54:21  12  Smith/Hickman was one of the predicates.

09:54:27  13       THE COURT:  Let me ask this question, Mr. Kulwin.  As

09:54:29  14  you stand there, do you know what Mr. Hogan would say this

09:54:35  15  about topic?

09:54:36  16       MR. KULWIN:  I believe I do.

09:54:37  17       THE COURT:  What.

09:54:37  18       MR. KULWIN:  To the best of my knowledge he would say

09:54:39  19  it wasn't the pros memo, it was some form of scheduling forms

09:54:43  20  that talked about how they were going to put the trial

09:54:46  21  together.  I can double-check with a phone call.  It was not a

09:54:50  22  prosecution theory memo.  That's my understanding as I recall

09:54:53  23  it.  I haven't asked him specifically about it.

09:54:55  24       THE COURT:  This ended up as a dispute that was

09:54:58  25  brought before any judge?

***REALTIME UNEDITED TRANSCRIPT ONLY***

09:54:59    1           MR. LOEVY:  Yes.

09:55:00    2           MR. KULWIN:  Sure, it was one of the many, many

09:55:02    3    allegations of misconduct that went on during the El Rukn

09:55:05    4    hearings that was later reversed.

09:55:07    5           THE COURT:  Presumably there was some sort of hearing

09:55:09    6    or testimony somewhere about this at some point in time in one

09:55:12    7    of those cases.  If not testimony, at least there were briefs

09:55:15    8    filed.

09:55:16    9           MR. KULWIN:  I mean, there were so many allegations

09:55:19   10    back then, Judge.

09:55:20   11           THE COURT:  So, look, the stuff went in yesterday on

09:55:24   12    Hawkins, honestly without objection.

09:55:28   13           MR. KULWIN:  Right.

09:55:28   14           THE COURT:  And so you're telling me that you want to

09:55:34   15    be able to respond to it via Hogan, and you're also telling me

09:55:40   16    that you don't think that the plaintiff should be able to go

09:55:46   17    into it with the other witnesses who were involved.  I mean, I

09:55:48   18    really think you're trying to have it both ways.  I mean, you

09:55:50   19    guys -- to use a golf analogy, play it as it lies right now.

09:55:53   20    You are not asking to play it as you lies.  You are asking to

09:55:57   21    make the plaintiff play it as a lies, but you get to improve

09:56:04   22    upon it.  I don't know if you play golf.

09:56:07   23           MR. KULWIN:  I caddied a lot.

09:56:09   24           THE COURT:  Not good for your shoulders.

09:56:13   25           MR. KULWIN:  Be that as it may, I don't really think

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 17 of 125 PageID #:31216
***REALTIME UNEDITED TRANSCRIPT ONLY***

16

| | | |
|---|---|---|
| 09:56:16 | 1 | so.  Let me get to the point.  There was a motion in limine, |
| 09:56:20 | 2 | my -- the defense -- |
| 09:56:23 | 3 | THE COURT:  There was a motion in limine. |
| 09:56:25 | 4 | MR. KULWIN:  There was a motion, a ruling, a ruling. |
| 09:56:28 | 5 | THE COURT:  Okay. |
| 09:56:28 | 6 | MR. KULWIN:  And like you said, there's thousands of |
| 09:56:31 | 7 | them and that one slipped my mind and I apologize for that. |
| 09:56:34 | 8 | Your rational on the ruling at the time was correct, it got |
| 09:56:37 | 9 | out, it's no different than if, you know, if something goes |
| 09:56:44 | 10 | wrong, okay, even if, you know, as you say, even if nobody |
| 09:56:49 | 11 | objects, if there is a violation, it could be cause for a |
| 09:56:53 | 12 | mistrial, these other things, fine.  All we're saying is it |
| 09:56:56 | 13 | shouldn't be compounded but now it's out there.  We are not |
| 09:56:59 | 14 | trying to improve our -- if he goes through it with five |
| 09:57:04 | 15 | different people, it still doesn't matter that Hogan is going |
| 09:57:07 | 16 | to say this is what it is. |
| 09:57:09 | 17 | THE COURT:  May I ask this?  What is it that you're |
| 09:57:14 | 18 | intending or proposing to ask Mr. Kees on this? |
| 09:57:14 | 19 | MR. LOEVY:  Isn't it true you got a hold of the memos |
| 09:57:18 | 20 | -- isn't is true, that, Mr. Kees, you got a hold of the memos |
| 09:57:20 | 21 | laying out the prosecution's theory of the case, not what he |
| 09:57:23 | 22 | just described about a scheduling thing, it actually was a |
| 09:57:25 | 23 | preindictment prosecution memo, Judge Conlon did rule on it |
| 09:57:29 | 24 | just as you said, isn't it true you reviewed it before you |
| 09:57:32 | 25 | testified. |

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 18 of 125 PageID #:31217
***REALTIME UNEDITED TRANSCRIPT ONLY***

17

09:57:33  1     THE COURT:  Did Mr. Kees testify about this on some
09:57:35  2  prior occasion?
09:57:36  3     MR. LOEVY:  Yes, he has.  He did get the memos.  He
09:57:37  4  acknowledged he got the memos, he acknowledged that the shared
09:57:39  5  the memos with their other witness Eugene Hunter, who they're
09:57:43  6  going to call, in 1989 before they testified.  So he had the
09:57:45  7  prosecution memos laying out the facts about which he later
09:57:50  8  testified.  And by the way, he also says he thinks Hawkins had
09:57:53  9  them too so he contradicts Hawkins' second denial.
09:57:57  10     THE COURT:  Mr. Kulwin do you disagree that Mr. Kees
09:58:00  11  has testified on some prior occasion whenever it was.
09:58:06  12     MR. KULWIN:  I would have to see the transcript.
09:58:08  13     THE COURT:  When did he testify about this?
09:58:09  14     MR. LOEVY:  He testified about it in 1994, I believe
09:58:13  15  it was the Boyd case.  I am going to pull it right now, your
09:58:16  16  Honor.
09:58:16  17     THE COURT:  Okay.
09:58:18  18     MR. KULWIN:  I believe what occurred, Judge.
09:58:20  19     MR. LOEVY:  93.  I am handing you the transcripts
09:58:23  20  from Boyd, your Honor.  He's testified about it in his
09:58:26  21  deposition.
09:58:26  22     THE COURT:  This was Judge Conlon's case?
09:58:28  23     MR. LOEVY:  This one was Aspen, but judge Conlon
09:58:32  24  wrote the opinion.
09:58:33  25     THE COURT:  We are not going to go into the opinions

Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 19 of 125 PageID #:31218

| | | |
|---|---|---|
| 09:58:34 | 1 | one way or the other.  It's a point of reference for me. |
| 09:58:37 | 2 | So what page?  You gave me a whole bunch of stuff, |
| 09:58:41 | 3 | what should I be looking at? |
| 09:58:43 | 4 | MR. LOEVY:  I think the relevant page is 708. |
| 09:58:46 | 5 | THE COURT:  Okay.  Let me just page through. |
| 09:58:49 | 6 | MR. LOEVY:  708, 709. |
| 09:58:51 | 7 | THE COURT:  Stop talking.  Where is the testimony -- |
| 09:59:10 | 8 | what page is the testimony on where he says what this document |
| 09:59:13 | 9 | was?  On 708 he says I got a hold of some documents.  He says |
| 09:59:21 | 10 | he claims that he picked them up by accident.  He's shown |
| 09:59:31 | 11 | post-trial motion exhibits 12 and 13.  He says those look |
| 09:59:35 | 12 | familiar.  So it seems like those are the documents. |
| 09:59:39 | 13 | MR. LOEVY:  Your Honor, I found -- |
| 09:59:40 | 14 | THE COURT:  What's the page where he says what the |
| 09:59:42 | 15 | contents are?  Or is there a page?  Do you have post trial |
| 09:59:46 | 16 | exhibits 12 and 13? |
| 09:59:47 | 17 | MR. LOEVY:  Yes, what we have here, your Honor, if I |
| 09:59:49 | 18 | may is Judge Conlon's opinion stating as follows: In September |
| 09:59:53 | 19 | 89, Derrick Kees stole internal pre indictment memorandum from |
| 09:59:57 | 20 | the U.S. Attorney's Office and disseminated these records |
| 10:00:02 | 21 | presence describing the government's theory of the case, the |
| 10:00:05 | 22 | evidence and prospective charges against each defendant as |
| 10:00:08 | 23 | well as other issues to El Rukn inmate witnesses, stolen |
| 10:00:10 | 24 | documents were seized from the cells of Kees, Hunter and |
| 10:00:13 | 25 | Hawkins at USA Hogan's request.  That's our good faith basis |

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 20 of 125 PageID #:31219
***REALTIME UNEDITED TRANSCRIPT ONLY***

19

| | |
|---|---|
| 10:00:24 | 1 |
| 10:00:24 | 2 |
| 10:00:24 | 3 |
| 10:00:28 | 4 |
| 10:00:28 | 5 |
| 10:00:28 | 6 |
| 10:00:31 | 7 |
| 10:00:35 | 8 |
| 10:00:38 | 9 |
| 10:00:39 | 10 |
| 10:00:42 | 11 |
| 10:00:45 | 12 |
| 10:00:47 | 13 |
| 10:00:50 | 14 |
| 10:00:53 | 15 |
| 10:00:53 | 16 |
| 10:00:54 | 17 |
| 10:00:57 | 18 |
| 10:01:00 | 19 |
| 10:01:03 | 20 |
| 10:01:04 | 21 |
| 10:01:05 | 22 |
| 10:01:10 | 23 |
| 10:01:12 | 24 |
| 10:01:16 | 25 |

1  to ask the questions, your Honor.

2      MR. ART:  For the record, Judge, the cite is United

3  States against Andrews.

4      MR. KULWIN:  Whenever you're ready, Judge.

5      THE COURT:  Go ahead.

6      MR. KULWIN:  First of all, with all due respect to

7  Judge Conlon, there were a lot of factual findings made during

8  the El Rukn hearings, none of which were challenged by the

9  U.S. Attorney's Office at the time.  The U.S. Attorney's

10  Office never cross-examined anybody on those issues.  They

11  felt that all of it was --

12      THE COURT:  Honestly, I am not really so much

13  concerned -- in fact, I am not at all concerned about any

14  findings.  I am just trying to see if I can identify what the

15  exhibit are.

16      MR. KULWIN:  And --

17      THE COURT:  By the way, exhibits 12 and 13 were used

18  in open court, so that would seem to remove any work product

19  objection, assuming that those are what we are talking about

20  here.

21      MR. KULWIN:  Right.  And I don't believe that those

22  were the pros memos.  That's why they were used in open court.

23  And the testimony that they are reading doesn't say I got the

24  pros memos.  You know, Judge, this is pretty serious.

25      THE COURT:  Yeah, but what you're -- the basis of

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 21 of 125 PageID #:31220
***REALTIME UNEDITED TRANSCRIPT ONLY***

20

10:01:19   1   your argument where you started off is that there's no good
10:01:22   2   faith basis to ask the question.  I'm just not seeing that
10:01:26   3   here.
10:01:26   4         MR. KULWIN:  Wait a second, Judge.  The basis of my
10:01:29   5   argument is that you previously ruled that it shouldn't come
10:01:31   6   in.  We blew it.  We didn't hear it.  It shouldn't keep going.
10:01:35   7   If you're saying, look, you want it out and Hogan can't
10:01:39   8   explain it, we'll live with that, but it shouldn't keep going
10:01:42   9   forward.  You made a good ruling the last time.  They can't
10:01:46   10  connect it up.  They don't have it.  And there's no reason for
10:01:49   11  you to now vary from your prior ruling at this point.
10:01:51   12        THE COURT:  Okay.  So just to be clear about it, what
10:01:54   13  we are talking about here is not something where everybody
10:01:57   14  briefed something and argued it and I made a ruling like I've
10:02:00   15  done on several dozen things here.  We are talking about a
10:02:04   16  ruling that I made in the middle of trial essentially that
10:02:07   17  there hadn't been a foundation connecting anything up and
10:02:11   18  therefore you couldn't go into it and more than that has been
10:02:13   19  done in this trial, and, again, it happened without objection.
10:02:17   20  So, look, I mean, I see two possibilities here.  I'm not going
10:02:22   21  to retroactively go back and exclude testimony that nobody
10:02:26   22  asked me to exclude at the time.  I'm not, period.
10:02:31   23        So to me there are only two possibilities.
10:02:33   24  Possibility number one is everybody plays it as it lies, we go
10:02:38   25  with Hawkins' testimony, nobody else gets to testify about it

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 22 of 125 PageID #:31221
***REALTIME UNEDITED TRANSCRIPT ONLY***

21

10:02:41   1   and people argue whatever they want to argue from it.  That's

10:02:44   2   number one.

10:02:45   3         Number two is both you get to ask Mr. Hogan about

10:02:52   4   whatever he has personal knowledge about and the plaintiff

10:02:55   5   gets to ask and both sides get to ask, you know, Mr. Kees and

10:02:59   6   whoever else is going to testify about, you know, who has

10:03:02   7   knowledge of this, about whatever they have personal knowledge

10:03:05   8   of.  And I am not -- I don't see a third alternative.  I don't

10:03:09   9   see -- it's non-appropriate alternative and this is the end of

10:03:12   10  this part of the discussion.  It's not an appropriate

10:03:14   11  alternative to say the defendants get to respond to this by

10:03:17   12  eliciting information from Hogan and other witnesses that are

10:03:19   13  favorable to them but the plaintiffs don't get to ask anybody

10:03:23   14  else questions.  That request is overruled.

10:03:25   15        So those are the other two possibilities.  Let me

10:03:28   16  have your thoughts on those two possibilities.  By the way, we

10:03:31   17  are now 35 minutes late with the jury.  35 minutes.

10:03:35   18        Okay.  Yours first.

10:03:39   19        MR. KULWIN:  I think it's important that Mr. Hogan be

10:03:42   20  able to respond.

10:03:42   21        THE COURT:  Then I am not going to preclude asking

10:03:45   22  Mr. Kees because I do not agree with the argument that there

10:03:48   23  is no good faith basis.  That's it.

10:03:50   24        MR. KULWIN:  I'm sorry, there are two other points

10:03:52   25  with Mr. Kees.  I apologize.

Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 23 of 125 PageID #:31222

|  |  |  |
|---|---|---|
| 10:03:54 | 1 | One point, I anticipate that the plaintiff is going |
| 10:03:58 | 2 | to go into a bunch of Mr. Kees' testimony concerning -- that |
| 10:04:03 | 3 | went on during the El Rukn hearing.  What I'm concerned about. |
| 10:04:06 | 4 | THE COURT:  What are we talking about? |
| 10:04:08 | 5 | MR. KULWIN:  He is going to be saying I had a side |
| 10:04:10 | 6 | deal with Hogan, all that stuff.  You know, that may or may |
| 10:04:13 | 7 | not be fair game.  What I'm concerned about is is it's going |
| 10:04:18 | 8 | to open the door or try to open the door later on or during |
| 10:04:22 | 9 | his testimony that these were all -- I don't want the |
| 10:04:25 | 10 | discussion what the purpose of the El Rukn hearings, what |
| 10:04:29 | 11 | happened at the El Rukn hearings. |
| 10:04:30 | 12 | MR. LOEVY:  That's fine. |
| 10:04:31 | 13 | THE COURT:  You are not planning to go into that.  I |
| 10:04:33 | 14 | think that was a motion that I ruled on after briefing and I |
| 10:04:36 | 15 | precluded it.  That I remember. |
| 10:04:37 | 16 | MR. KULWIN:  Two last very minor, one minor, Mr. Kees |
| 10:04:42 | 17 | should be admonished by the Court before the jury comes in not |
| 10:04:45 | 18 | to mention the murder and not to mention Tredeste Murray. |
| 10:04:49 | 19 | MR. LOEVY:  Now on our points, your Honor, nobody has |
| 10:04:51 | 20 | prepped Mr. Kees except possibly Mr. Hogan who does not know |
| 10:04:56 | 21 | this Court's motion in limine rulings.  What we strongly |
| 10:05:01 | 22 | suggest is before he testifies your Honor explain to him and |
| 10:05:04 | 23 | we have handed you a copy of the ruling, there are four key |
| 10:05:07 | 24 | points, your ruling. |
| 10:05:08 | 25 | THE COURT:  That's this thing? |

11/30/16 AM     ***REALTIME UNEDITED TRANSCRIPT ONLY***

23

| | | |
|---|---|---|
| 10:05:09 | 1 | MR. LOEVY: Yes, your Honor. The first, if you like, |
| 10:05:11 | 2 | I can summarize it. Either way. |
| 10:05:14 | 3 | THE COURT: Hang on a second. Let me just ask this |
| 10:05:23 | 4 | question. Again, I'm hoping you guys have a better memory |
| 10:05:27 | 5 | than I do. Did I do this last go around? Did I talk to Kees |
| 10:05:31 | 6 | before the testimony last go around about what he could and |
| 10:05:35 | 7 | couldn't say? |
| 10:05:36 | 8 | MR. NOLAND: I don't remember. I don't remember. |
| 10:05:38 | 9 | MS. GORMAN: I recall that you did, your Honor. |
| 10:05:39 | 10 | THE COURT: Okay. What day did he testify? It would |
| 10:05:42 | 11 | be helpful to me to be able to look at what I said because I |
| 10:05:45 | 12 | can just reread it. |
| 10:05:47 | 13 | MS. KATZ: April 22nd. |
| 10:05:50 | 14 | THE COURT: April 22nd. Do you have a page number |
| 10:05:52 | 15 | for me. |
| 10:05:52 | 16 | MS. KATZ: 2405, but there were some initial rulings. |
| 10:05:57 | 17 | It goes on for a little while. Let me see when he actually |
| 10:06:01 | 18 | starts testifying. |
| 10:06:01 | 19 | THE COURT: I can find it. You clued me in on it. |
| 10:06:05 | 20 | Let me see what I've got. It doesn't look like I did. |
| 10:06:37 | 21 | MR. LOEVY: We don't they you did. |
| 10:06:39 | 22 | THE COURT: I didn't. |
| 10:06:41 | 23 | MR. LOEVY: There's four key points. |
| 10:06:44 | 24 | THE COURT: Okay. What are the four? |
| 10:06:45 | 25 | MR. LOEVY: First one you ruled out the Tredeste |

***REALTIME UNEDITED TRANSCRIPT ONLY***

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 25 of 125 PageID #:31224
***REALTIME UNEDITED TRANSCRIPT ONLY***

24

| | | |
|---|---|---|
| 10:06:47 | 1 | Murray stalking incident. |
| 10:06:50 | 2 | MR. KULWIN: We don't have they problem with that, |
| 10:06:51 | 3 | Judge. You already ruled on that. |
| 10:06:52 | 4 | MR. LOEVY: All of these are the ones you already |
| 10:06:54 | 5 | ruled on, your Honor. |
| 10:06:56 | 6 | The second one is. |
| 10:06:57 | 7 | THE COURT: Keep going. |
| 10:06:58 | 8 | MR. LOEVY: The second one is that any reference to |
| 10:07:00 | 9 | Nate's prior criminal record. I don't even know if he knows |
| 10:07:03 | 10 | about it, but that would be a disaster if he mentioned a prior |
| 10:07:06 | 11 | crime by Nate. |
| 10:07:06 | 12 | MR. KULWIN: Point on that, Judge. |
| 10:07:08 | 13 | THE COURT: Keep going. |
| 10:07:10 | 14 | MR. KULWIN: Sorry. |
| 10:07:10 | 15 | MR. LOEVY: No. 3 is in your opinion you ruled out |
| 10:07:13 | 16 | what he heard the next day about who committed the murders. |
| 10:07:16 | 17 | What you have allowed him to testify about is he got together |
| 10:07:19 | 18 | with the four guys and they all confessed to them but hearsay |
| 10:07:22 | 19 | about I heard from other people about what happened is barred |
| 10:07:25 | 20 | by your opinion. |
| 10:07:26 | 21 | And then the fourth point is the reasons why Fields |
| 10:07:29 | 22 | was chosen for the assignment. And then he is allowed -- |
| 10:07:35 | 23 | THE COURT: There is a fifth point. I am looking at |
| 10:07:38 | 24 | pages 15 and 16. He can't testify about what Alan Knox told |
| 10:07:41 | 25 | him about the prior -- |

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 26 of 125 PageID #:31225
***REALTIME UNEDITED TRANSCRIPT ONLY***

25

| | |
|---|---|
| 10:07:43 | 1 |
| 10:07:45 | 2 |
| 10:07:50 | 3 |
| 10:07:56 | 4 |
| 10:07:59 | 5 |
| 10:08:02 | 6 |
| 10:08:06 | 7 |
| 10:08:07 | 8 |
| 10:08:09 | 9 |
| 10:08:09 | 10 |
| 10:08:16 | 11 |
| 10:08:27 | 12 |
| 10:08:36 | 13 |
| 10:08:40 | 14 |
| 10:08:44 | 15 |
| 10:08:45 | 16 |
| 10:08:45 | 17 |
| 10:08:51 | 18 |
| 10:08:55 | 19 |
| 10:08:58 | 20 |
| 10:09:03 | 21 |
| 10:09:09 | 22 |
| 10:09:11 | 23 |
| 10:09:13 | 24 |
| 10:09:16 | 25 |

1  MR. KULWIN:  Judge, I didn't hear you.

2  THE COURT:  He can't testify about what Alan Knox

3  told him about the bribery of Judge Maloney.

4  MR. LOEVY:  And I think you said what is in

5  defendants' proffer, which we handed you, you said they could

6  do the first six and a half lines, you said the first six and

7  a half lines of page 11 of defendants' response.

8  THE COURT:  Yours is on page 15.

9  MR. LOEVY:  Exactly.

10  THE COURT:  Page 629 just so the record is clear.

11  So, look, it sometimes like I was comfortable enough

12  last go around to not admonish him about anything.  And I just

13  -- I guess I'm really kind of disinclined to sit here and give

14  this guy a laundry list of six or seven things that he can't

15  testify about.

16  MR. LOEVY:  Your Honor.

17  THE COURT:  I think I'm entitled to rely -- listen

18  very carefully, I am entitled to rely on lawyers who know what

19  my rulings were and who know what the possibilities are if

20  someone runs afoul of them, I am entitled to rely on lawyers

21  on both sides asking careful questions that don't tread into

22  prohibited ground or invite the witness to do that.

23  What was the point you wanted to make?

24  MR. KULWIN:  On that point, Judge, I'm basing my

25  examination of Mr. Kees of what was allowed at the last trial.

11/30/16 AM    Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 27 of 125 PageID #:31226
***REALTIME UNEDITED TRANSCRIPT ONLY***

26

| | | |
|---|---|---|
| 10:09:20 | 1 | THE COURT:  Right. |
| 10:09:21 | 2 | MR. KULWIN:  I am actually using the questions and |
| 10:09:24 | 3 | answers. |
| 10:09:24 | 4 | THE COURT:  Right. |
| 10:09:25 | 5 | MR. KULWIN:  That have all been allowed.  I don't |
| 10:09:28 | 6 | believe any of that crosses any lines. |
| 10:09:29 | 7 | THE COURT:  I don't think we had a problem with his |
| 10:09:31 | 8 | testimony last time.  I don't remember having one, so I don't |
| 10:09:35 | 9 | think we had any problems. |
| 10:09:35 | 10 | MR. KULWIN:  You did no.  And that's -- I'm just |
| 10:09:38 | 11 | telling you right now up front, that's what I am going to ask |
| 10:09:42 | 12 | about.  Now, depending on the cross, if Mr. Loevy is going to |
| 10:09:45 | 13 | into this whole you guys were all conspiring, I have some |
| 10:09:51 | 14 | thoughts. |
| 10:09:52 | 15 | THE COURT:  Conspiring about what? |
| 10:09:54 | 16 | MR. KULWIN:  Putting the case on Mr. Fields.  I'm not |
| 10:09:57 | 17 | going to go into what he was convicted for, but I am going to |
| 10:10:00 | 18 | test Mr. Kees' knowledge about whether he knew Mr. Fields was |
| 10:10:03 | 19 | in jail at the time this was going on and that he was |
| 10:10:06 | 20 | convicted for this crime at the time.  Okay?  I'm going to ask |
| 10:10:10 | 21 | him that.  I don't know what he is going to say. |
| 10:10:12 | 22 | THE COURT:  You're talking about in the '90s when all |
| 10:10:14 | 23 | of the El Rukn stuff was going on at the MCC did he know Mr. |
| 10:10:18 | 24 | Fields was in jail. |
| 10:10:19 | 25 | MR. KULWIN:  Yeah, and convicted for the |

11/30/16 AM ***REALTIME UNEDITED TRANSCRIPT ONLY***

27

| | | |
|---|---|---|
| 10:10:20 | 1 | Smith/Hickman crime.  Good.  Just wanted to know. |
| 10:10:24 | 2 | THE COURT:  That's kind of the predicate of the case |
| 10:10:26 | 3 | that Mr. Fields was convicted of the Smith/Hickman.  Do you |
| 10:10:29 | 4 | see a problem? |
| 10:10:29 | 5 | MR. LOEVY:  No, as long as he doesn't elicit the |
| 10:10:32 | 6 | prior conviction. |
| 10:10:32 | 7 | MR. KULWIN:  I am not planning on doing that. |
| 10:10:34 | 8 | THE COURT:  What else? |
| 10:10:35 | 9 | MR. KULWIN:  The last point, you did rule in the last |
| 10:10:38 | 10 | trial at page 2459-63 that the plaintiff could not attribute |
| 10:10:42 | 11 | the promise of Kees doing less than 99 years to O'Callaghan |
| 10:10:45 | 12 | under 404(b) because that comment is different than what's |
| 10:10:52 | 13 | alleged in the complaint. |
| 10:10:52 | 14 | THE COURT:  Hang on a second. |
| 10:10:55 | 15 | MR. KULWIN:  2459-63 actually through 66. |
| 10:11:05 | 16 | THE COURT:  I am looking at it right now. |
| 10:11:08 | 17 | MR. KULWIN:  Sure, Judge. |
| 10:12:00 | 18 | THE COURT:  So what it looks like that I did in the |
| 10:12:04 | 19 | actual ruling is at 2462 to 2463 that I said that the |
| 10:12:10 | 20 | plaintiff could not attribute the particular deal that's being |
| 10:12:15 | 21 | talked about there that Mr. Kees evidently thought he had, |
| 10:12:18 | 22 | that the plaintiff can't try to attribute that to Mr. |
| 10:12:22 | 23 | O'Callaghan.  Is that what you're talking about? |
| 10:12:24 | 24 | MR. KULWIN:  Yes, Judge. |
| 10:12:24 | 25 | MR. LOEVY:  I am not sure. |

***REALTIME UNEDITED TRANSCRIPT ONLY***

| | | |
|---|---|---|
| 10:12:25 | 1 | THE COURT:  That ruling stands. |
| 10:12:26 | 2 | THE COURT:  Then you got to read the transcript, |
| 10:12:29 | 3 | which I am confident you have done.  Have you read the |
| 10:12:31 | 4 | transcript? |
| 10:12:31 | 5 | MR. LOEVY:  I have, your Honor. |
| 10:12:33 | 6 | THE COURT:  Okay.  That ruling stands. |
| 10:12:35 | 7 | MR. KULWIN:  Thank you, Judge.  I apologize. |
| 10:12:36 | 8 | THE COURT:  And so you have a better sense of what |
| 10:12:39 | 9 | the deal is than I do, so if something is happening or |
| 10:12:43 | 10 | starting to happen that sounds like it's going awry, jump on |
| 10:12:46 | 11 | your feet and say objection, I need a sidebar.  Okay? |
| 10:12:50 | 12 | MR. KULWIN:  Judge, I'll stand up for sure. |
| 10:12:52 | 13 | MR. LOEVY:  Your Honor, may I ask so we don't have a |
| 10:12:55 | 14 | sidebar. |
| 10:12:55 | 15 | THE COURT:  I'll give you five minutes to read the |
| 10:13:01 | 16 | gosh darn transcript.  What are we on, Day 11 now?  I've lost |
| 10:13:05 | 17 | track.  It's been so much fun.  I've got 12 United States |
| 10:13:10 | 18 | citizens sitting back there who believe that they were |
| 10:13:14 | 19 | supposed to start this trial at 9:30.  Okay?  I know I've got |
| 10:13:17 | 20 | issues in the morning, but we have been talking for 40 minutes |
| 10:13:20 | 21 | now.  I'm done talking.  I am bringing the jury out.  That's |
| 10:13:25 | 22 | it. |
| 10:13:25 | 23 | MR. KULWIN:  Are you giving them five minutes to read |
| 10:13:27 | 24 | the transcript or bringing the jury out. |
| 10:13:30 | 25 | MR. ART:  I've got it. |

***REALTIME UNEDITED TRANSCRIPT ONLY***

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 30 of 125 PageID #:31229
***REALTIME UNEDITED TRANSCRIPT ONLY***

29

| | | |
|---|---|---|
| 10:13:30 | 1 | THE COURT:  Some of the folks can look at it and |
| 10:13:33 | 2 | stick it in front of Mr. Loevy's face. |
| 10:14:51 | 3 | (The jury enters the courtroom.) |
| 10:14:53 | 4 | THE COURT:  Okay.  Everybody can have a seat.  Good |
| 10:15:00 | 5 | morning, ladies and gentlemen.  I apologize.  You have been |
| 10:15:03 | 6 | sitting back there for 40 to 45 minutes. |
| 10:15:06 | 7 | You know, I have told the lawyers that we need to try |
| 10:15:08 | 8 | to get issues that are going to come up the next day dealt |
| 10:15:11 | 9 | with at the end of the previous day, but for various reasons |
| 10:15:14 | 10 | that's not always possible, so we were dealing with a bunch of |
| 10:15:17 | 11 | issues that frankly probably saved about seven sidebars, so |
| 10:15:21 | 12 | just take that on faith for present purposes. |
| 10:15:24 | 13 | As I told you, you know, a question was asked |
| 10:15:28 | 14 | yesterday by one of the jurors about scheduling, and so let me |
| 10:15:32 | 15 | just talk about that in general here.  So that little sheet |
| 10:15:35 | 16 | that I had given at the start of the trial I think gave you a |
| 10:15:40 | 17 | schedule through -- I've got it right here through a week from |
| 10:15:45 | 18 | Friday, so the 9th of December.  As you may recall as I told |
| 10:15:49 | 19 | you at the opening, I don't have any control over how long the |
| 10:15:55 | 20 | jury's deliberations go.  That's up to the jury.  How long or |
| 10:16:01 | 21 | how short it is is going to be completely up to you. |
| 10:16:04 | 22 | What I can tell you and I have to -- you have to take |
| 10:16:06 | 23 | everything with a grain of salt because I told you you were |
| 10:16:09 | 24 | going to start at 9:30 this morning and here it is 10:15. |
| 10:16:12 | 25 | It's my expectation that we will finish with the witnesses and |

| | | |
|---|---|---|
| 10:16:16 | 1 | the evidence and the arguments by the end of next week.  Okay? |
| 10:16:20 | 2 | It may be a little before that.  I can't guarantee it won't be |
| 10:16:24 | 3 | a little after that, but my expectation is we will finish by |
| 10:16:27 | 4 | the end of next week.  Now, what I can't tell you is how long |
| 10:16:30 | 5 | you're going to deliberate.  That's up to you.  I don't have |
| 10:16:32 | 6 | any control over that.  In terms of scheduling out beyond |
| 10:16:35 | 7 | that, I think it's reasonable to think that you might want to |
| 10:16:37 | 8 | think about, you know, that following week involving some |
| 10:16:42 | 9 | deliberations, and in terms of the scheduling for that, you |
| 10:16:45 | 10 | know, what are the hours?  I am going to leave that up to you |
| 10:16:48 | 11 | with, you know, I'm sort of the Court of Appeals on the hours. |
| 10:16:51 | 12 | I mean, if you were to say we're going to come in from 10:00 |
| 10:16:55 | 13 | to 12:00 and then go home, I'd probably say, no, not going to |
| 10:16:58 | 14 | do that, but I am not going to make you work past the normal |
| 10:17:01 | 15 | time we have been working.  You can use the schedule that we |
| 10:17:04 | 16 | have been using as a predictable guide.  I hope that's enough |
| 10:17:08 | 17 | information.  I should have more information at the beginning |
| 10:17:10 | 18 | of next week.  I have a sense of who is left, but I don't have |
| 10:17:13 | 19 | a sense of how long everything is going to take.  We are ready |
| 10:17:16 | 20 | to resume with I think the defendants' examination of Ms. |
| 10:17:19 | 21 | Lyon.  Do you understand you are still under oath? |
| 10:17:22 | 22 | THE WITNESS:  I do, your Honor. |
| 10:17:23 | 23 | THE COURT:  Mr. Noland, you can go ahead. |
| 10:17:24 | 24 | - - - |
| 10:17:24 | 25 | ANDREA LYON, CROSS-EXAMINATION CONTINUED |

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 32 of 125 PageID #:31231
***REALTIME UNEDITED TRANSCRIPT ONLY***

31

| | | |
|---|---|---|
| 10:17:24 | 1 | BY MR. NOLAND: |
| 10:17:26 | 2 | Q. Ms. Lyon, if we could just remind for the jury, you are |
| 10:17:30 | 3 | the post conviction criminal defense attorney for a man by the |
| 10:17:35 | 4 | name of Fulton? |
| 10:17:36 | 5 | A. Jon Fulton. |
| 10:17:37 | 6 | Q. And could you just remind the jury, Mr. Fulton was |
| 10:17:43 | 7 | convicted of a homicide? |
| 10:17:44 | 8 | A. He was. |
| 10:17:44 | 9 | Q. And when did that occur, when did the homicide occur? |
| 10:17:49 | 10 | A. 2003. |
| 10:17:50 | 11 | Q. And Mr. Fulton was then tried for that case in 2006, true? |
| 10:17:54 | 12 | A. It was either late 2005 or 2006, I am not a hundred |
| 10:18:00 | 13 | percent sure. |
| 10:18:00 | 14 | Q. And you were not the lawyer? |
| 10:18:01 | 15 | A. I was not. |
| 10:18:01 | 16 | Q. Who represented Mr. Fulton at that trial? |
| 10:18:03 | 17 | A. That was Mr. Zinger and Mr. /PWO*EU. |
| 10:18:05 | 18 | Q. All right. Elliot zinger, is that his name? |
| 10:18:08 | 19 | A. Correct. |
| 10:18:09 | 20 | Q. And so then from 2003 to 2006, I know you weren't |
| 10:18:14 | 21 | involved, but that would have been the pretrial period with |
| 10:18:16 | 22 | discovery and documents exchanged and motions filed, things |
| 10:18:19 | 23 | like that? |
| 10:18:19 | 24 | A. Yes, I would assume so. |
| 10:18:22 | 25 | Q. And then Mr. Fulton was convicted at that trial in 2006 of |

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 33 of 125 PageID #:31232
***REALTIME UNEDITED TRANSCRIPT ONLY***

32

| | | |
|---|---|---|
| 10:18:28 | 1 | that murder? |
| 10:18:28 | 2 | A.  There was a mistrial and then at the second trial, he was |
| 10:18:31 | 3 | convicted. |
| 10:18:31 | 4 | Q.  Thank you. |
| 10:18:31 | 5 | And then you got involved after that in 2011 to begin |
| 10:18:37 | 6 | your representation of Mr. Fulton; is that right? |
| 10:18:40 | 7 | A.  On the post conviction, correct. |
| 10:18:41 | 8 | Q.  On a post conviction petition. |
| 10:18:43 | 9 | And then in connection with that, you sent some |
| 10:18:50 | 10 | subpoenas -- strike that. |
| 10:18:51 | 11 | In connection with that, you gathered the files of |
| 10:18:54 | 12 | the prior criminal defense attorneys? |
| 10:18:56 | 13 | A.  I did. |
| 10:18:57 | 14 | Q.  And did you gather, I think you said the trial lawyers' |
| 10:19:02 | 15 | file? |
| 10:19:02 | 16 | A.  The trial lawyers' file, the appellate lawyers' file, |
| 10:19:06 | 17 | there was some of the file was from a family lawyer, I got it |
| 10:19:14 | 18 | from them as well, it took me a little while to get |
| 10:19:18 | 19 | everything, but I did. |
| 10:19:18 | 20 | Q.  And then after that, you spent subpoenas to the police |
| 10:19:23 | 21 | department, I'm sure you did some other things, but you sent |
| 10:19:25 | 22 | some subpoenas to the police department to follow up and to |
| 10:19:31 | 23 | make sure you had all the paperwork? |
| 10:19:32 | 24 | A.  That's correct, but I couldn't do that until after I filed |
| 10:19:35 | 25 | the post conviction petition because you are not allowed to |

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 34 of 125 PageID #:31233
***REALTIME UNEDITED TRANSCRIPT ONLY***

33

| | | |
|---|---|---|
| 10:19:38 | 1 | send a subpoena unless you have a case that's going on. |
| 10:19:41 | 2 | Q.  So you filed that.  And once you filed that petition, you |
| 10:19:45 | 3 | you had a case number, you had the authority to issue a |
| 10:19:48 | 4 | subpoena to various entities to get documents? |
| 10:19:51 | 5 | A.  Correct. |
| 10:19:52 | 6 | Q.  And one of those entities was the Chicago Police |
| 10:19:54 | 7 | Department? |
| 10:19:54 | 8 | A.  Correct. |
| 10:19:54 | 9 | Q.  And I think you testified that in response to one of those |
| 10:19:57 | 10 | subpoenas, you got an investigative file; is that right? |
| 10:20:01 | 11 | A.  I got the file, yes, the police reports. |
| 10:20:04 | 12 | Q.  And I believe correct me if I'm wrong, you said there were |
| 10:20:08 | 13 | about 12 pages in there that you hadn't seen before? |
| 10:20:10 | 14 | A.  Not from the subpoena.  That's from the basement file. |
| 10:20:13 | 15 | Q.  Okay.  And you did receive the basement file? |
| 10:20:15 | 16 | A.  Later, yes. |
| 10:20:16 | 17 | Q.  Okay.  And so that's what I wanted to talk about. |
| 10:20:18 | 18 | So from the basement file, you did receive that, |
| 10:20:22 | 19 | correct? |
| 10:20:23 | 20 | A.  Ultimately, yes. |
| 10:20:23 | 21 | Q.  And you looked at that file and that's the file that |
| 10:20:27 | 22 | you're saying that there were -- you think there were about 12 |
| 10:20:31 | 23 | pages in there that you didn't recognize, hadn't seen before? |
| 10:20:35 | 24 | A.  That's correct. |
| 10:20:35 | 25 | Q.  And you advised the plaintiff's counsel that you didn't |

Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 35 of 125 PageID #:31234
11/30/16 AM                ***REALTIME UNEDITED TRANSCRIPT ONLY***

34

| | |
|---|---|
| 10:20:40 | 1 |
| 10:20:42 | 2 |
| 10:20:44 | 3 |
| 10:20:46 | 4 |
| 10:20:48 | 5 |
| 10:20:49 | 6 |
| 10:20:54 | 7 |
| 10:20:57 | 8 |
| 10:21:01 | 9 |
| 10:21:08 | 10 |
| 10:21:09 | 11 |
| 10:21:12 | 12 |
| 10:21:17 | 13 |
| 10:21:33 | 14 |
| 10:21:40 | 15 |
| 10:21:42 | 16 |
| 10:21:42 | 17 |
| 10:21:46 | 18 |
| 10:21:46 | 19 |
| 10:21:55 | 20 |
| 10:22:02 | 21 |
| 10:22:05 | 22 |
| 10:22:06 | 23 |
| 10:22:08 | 24 |
| 10:22:13 | 25 |

1  recognize those pages and you hadn't seen them before?

2  A.  I did tell them at some point.  I don't think that's the

3  first thing I did.

4  Q.  Oh, yeah, I'm not suggesting that.  At some point?

5  A.  I did tell them, yes.

6  Q.  Okay.  So and I think you said of those 12 pages, and I

7  know a couple of them I showed to you yesterday, a couple of

8  the pages were not particularly important; is that fair?

9  A.  Not -- I mean, they varied in importance in my view.

10            MR. NOLAND:  If I could have the ELMO, your Honor.

11            THE COURT:  Sure.  You told me that before, and I

12  didn't catch up with you.  There you go.

13  BY MR. NOLAND:

14  Q.  Ms. Lyon, is this one of the pages that was you hadn't

15  seen before that was provided to you?

16  A.  Correct.

17  Q.  And it's dated January 19th, 2010; is that right?

18  A.  Yes.

19  Q.  And it looks like it's a to/from memoranda from chief

20  Thomas Byrne of the Chicago Police Department to Al /TPOPB

21  /SKPWHROE /WAOEURB in the Chicago Police Department, right?

22  A.  That's what it says it is, yes.

23  Q.  We are just reading.

24            And the subject line is a request for information

25  office of legal affairs in a case called l-a-n-z-a, v. City

11/30/16 AM    Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 36 of 125 PageID #:31235
***REALTIME UNEDITED TRANSCRIPT ONLY***

35

| | | |
|---|---|---|
| 10:22:18 | 1 | for the -- that's what it states? |
| 10:22:22 | 2 | A.  Correct. |
| 10:22:22 | 3 | Q.  It would appear that this is a request for information in |
| 10:22:25 | 4 | a civil case for information with respect to? |
| 10:22:29 | 5 | A.  That's what it looks like to me, yes. |
| 10:22:31 | 6 | Q.  And it's dated 2010, right? |
| 10:22:33 | 7 | A.  Correct. |
| 10:22:33 | 8 | Q.  And so the files that you had gathered from the prior |
| 10:22:39 | 9 | attorneys on the case would have within files that they had |
| 10:22:43 | 10 | created before 2010; is that right? |
| 10:22:45 | 11 | A.  Oh, of course, yes. |
| 10:22:46 | 12 | Q.  I didn't identify this for the record.  Thank you. |
| 10:22:53 | 13 | This is -- actually, it's plaintiff's 638 and it's |
| 10:23:01 | 14 | page 33498. |
| 10:23:05 | 15 | So this wouldn't have been a document that you would |
| 10:23:09 | 16 | have expected to find in the files that you had gathered |
| 10:23:12 | 17 | because it actually didn't even exist until after they were |
| 10:23:14 | 18 | done with the case? |
| 10:23:15 | 19 | A.  That's correct. |
| 10:23:16 | 20 | Q.  Am I right that this would have been one of the documents |
| 10:23:19 | 21 | that was not particularly important? |
| 10:23:20 | 22 | A.  That's correct.  Others were, this was not. |
| 10:23:36 | 23 | MR. NOLAND:  Your Honor, may I switch to the |
| 10:23:38 | 24 | computer, please? |
| 10:23:39 | 25 | THE COURT:  Yep. |

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 37 of 125 PageID #:31236
***REALTIME UNEDITED TRANSCRIPT ONLY***

36

| | | |
|---|---|---|
| 10:23:41 | 1 | MR. NOLAND:  Laura, can you pull up page defense 249, |
| 10:23:54 | 2 | Part 2-878. |
| 10:23:58 | 3 | BY MR. NOLAND: |
| 10:24:11 | 4 | Q.  This was the document that was I think shown to you |
| 10:24:14 | 5 | yesterday, one of the documents you said was important that |
| 10:24:17 | 6 | was new to you? |
| 10:24:18 | 7 | A.  Yes. |
| 10:24:24 | 8 | MR. NOLAND:  Laura, if you could just show the whole |
| 10:24:26 | 9 | document.  If you could highlight in the top left-hand corner |
| 10:24:33 | 10 | it says OCC 10 March '03 is that right? |
| 10:24:38 | 11 | THE WITNESS:  That's what it says. |
| 10:24:39 | 12 | BY MR. NOLAND: |
| 10:24:39 | 13 | Q.  That's what it says. |
| 10:24:42 | 14 | MR. NOLAND:  If you could pull upside by side with |
| 10:24:44 | 15 | this document defense 249, part 3, page 1248. |
| 10:24:56 | 16 | BY MR. NOLAND: |
| 10:24:58 | 17 | Q.  Down in the bottom of that document, could you highlight |
| 10:25:01 | 18 | the received 2/20/04 and also the attorney for defendant. |
| 10:25:09 | 19 | BY MR. NOLAND: |
| 10:25:10 | 20 | Q.  Ms. Lyon, can you explain to the ladies and gentlemen of |
| 10:25:13 | 21 | the jury what this document is? |
| 10:25:13 | 22 | A.  This is a way of sort of trying to keep track of discovery |
| 10:25:18 | 23 | that was instituted after some problems between the state.  So |
| 10:25:25 | 24 | when the state turns over certain documents to you, they'll |
| 10:25:29 | 25 | give you a list and it will say this many police reports or |

11/30/16 AM    Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 38 of 125 PageID #:31237
***REALTIME UNEDITED TRANSCRIPT ONLY***

37

10:25:32  1  this many photos and then what you should do as a defense

10:25:35  2  attorney is look through and make sure that the list and what

10:25:38  3  you got are the same and if it is, then you sign and say I got

10:25:41  4  that.  That's basically what it's for.

10:25:50  5          MR. NOLAND:  Laura, if you could highlight the line,

10:26:00  6  can you also highlight the top left-hand corner of the other

10:26:03  7  document.

10:26:10  8          THE WITNESS:  I see that.

10:26:10  9  BY MR. NOLAND:

10:26:11  10  Q.  So this receipt for discovery, Ms. Lyon, indicates that on

10:26:16  11  February 20th, 2004, by the way, this document, this receipt

10:26:26  12  for discovery was signed by it appears to be Elliot zinger,

10:26:29  13  Mr. Fulton's attorney at the time?

10:26:31  14  A.  I assume so.  His handwriting is a little difficult to

10:26:34  15  read, but I shouldn't talk about anybody else's handwriting.

10:26:38  16  Mine is bad too.

10:26:39  17  Q.  So the document shows that Mr. Zinger who was Mr. Fulton's

10:26:46  18  attorney acknowledged receipt of in the middle here one

10:26:54  19  page-four photos, page marked OCC equal 10 March '03; is that

10:26:54  20  right?

10:26:59  21  A.  That's what he signed, yes.

10:27:00  22  Q.  And that's this document, right?

10:27:07  23          MR. NOLAND:  Can you take this stuff off, Laura?

10:27:10  24  Highlight again the 0 cc 10 March 3.

10:27:14  25          THE WITNESS:  It's not necessary.  It appears to me

| | | |
|---|---|---|
| 10:27:17 | 1 | that this was referring to this document.  It was not in the |
| 10:27:21 | 2 | file nor produced by the police in response to the subpoena. |
| 10:27:25 | 3 | It was in the basement file.  I can't tell you if he got it or |
| 10:27:28 | 4 | didn't get it.  I can tell you it wasn't there. |
| 10:27:30 | 5 | MR. NOLAND:  I am not sure there is a question |
| 10:27:32 | 6 | pending. |
| 10:27:32 | 7 | THE WITNESS:  I'm sorry. |
| 10:27:33 | 8 | THE COURT:  The question was is that this document? |
| 10:27:35 | 9 | The answer is stricken as nonresponsive. |
| 10:27:40 | 10 | THE WITNESS:  Sorry. |
| 10:27:41 | 11 | BY MR. NOLAND: |
| 10:27:42 | 12 | Q.  Ms. Lyon, this receipt for discovery shows that the on |
| 10:27:45 | 13 | February 20th, 2004, that the state's attorney's office |
| 10:27:49 | 14 | provided these four photographs to Mr. Zinger, Mr. Fulton's |
| 10:28:02 | 15 | attorney on that date; is that right? |
| 10:28:04 | 16 | A.  It appears to say that, yes. |
| 10:28:29 | 17 | MR. NOLAND:  Laura, could you also pull up page on |
| 10:28:35 | 18 | the left, replace it with page D 249 Part 2, 119. |
| 10:28:48 | 19 | BY MR. NOLAND: |
| 10:28:49 | 20 | Q.  Ms. Lyon, is this I'm showing you a crime scene processing |
| 10:28:54 | 21 | report.   Is this one of the documents that was -- you say was |
| 10:29:02 | 22 | new to you? |
| 10:29:02 | 23 | A.  Yes, although the information was not, you know, not new |
| 10:29:11 | 24 | in the same way other things were, but, yes. |
| 10:29:14 | 25 | Q.  It was a document that you hadn't recognized as receiving |

Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 40 of 125 PageID #:31239

| | | |
|---|---|---|
| 10:29:17 | 1 | from Mr. Zinger's file? |
| 10:29:19 | 2 | A.  Or Mr. /PWO*EU's file or Mr. Pullman's file or the Chicago |
| 10:29:26 | 3 | Police Department for that matter. |
| 10:29:28 | 4 | MR. NOLAND:  Judge. |
| 10:29:29 | 5 | THE COURT:  Overruled.  I assume that was an |
| 10:29:32 | 6 | objection. |
| 10:29:32 | 7 | BY MR. NOLAND: |
| 10:29:33 | 8 | Q.  Okay.  Going back to the receipt for discovery on the |
| 10:29:36 | 9 | right? |
| 10:29:36 | 10 | A.  Yes, sir. |
| 10:29:37 | 11 | Q.  Do you see? |
| 10:29:40 | 12 | MR. NOLAND:  Laura, if you could highlight the four |
| 10:29:42 | 13 | lines down. |
| 10:29:44 | 14 | BY MR. NOLAND: |
| 10:29:46 | 15 | Q.  This would indicate that a crime scene, one page crime |
| 10:29:51 | 16 | scene processing report was also tendered to Mr. Zinger on |
| 10:29:57 | 17 | February 20th of 2004; is that right? |
| 10:29:59 | 18 | A.  Yes, it does say that.  I don't know if it's the same one, |
| 10:30:02 | 19 | but, yes. |
| 10:30:12 | 20 | MR. NOLAND:  Laura, can you pull up page -- leave |
| 10:30:16 | 21 | that receipt for discovery there -- page 122, Part 2.  Can you |
| 10:30:38 | 22 | highlight, Laura, in the top left-hand -- leave it on the |
| 10:30:41 | 23 | screen there.  Just highlight it.  Don't tear it out, leave |
| 10:30:46 | 24 | the bomb and arson section, detective division. |
| 10:30:53 | 25 | BY MR. NOLAND: |

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 41 of 125 PageID #:31240
***REALTIME UNEDITED TRANSCRIPT ONLY***

40

| | | |
|---|---|---|
| 10:30:54 | 1 | Q.  Is this one of the pages, Ms. Lyon, that you didn't get |
| 10:30:58 | 2 | from the prior defense counsel? |
| 10:30:59 | 3 | A.  From any of the sources I previously discussed, yes. |
| 10:31:07 | 4 | MR. NOLAND:  Laura, could you also highlight where I |
| 10:31:10 | 5 | put that cross there, two-page bomb and arson worksheet. |
| 10:31:15 | 6 | BY MR. NOLAND: |
| 10:31:16 | 7 | Q.  Again, Ms. Lyon, it would appear on February 20th, 2004, |
| 10:31:20 | 8 | Mr. Zinger signed for a receipt acknowledging that he had this |
| 10:31:23 | 9 | document too; is that right? |
| 10:31:25 | 10 | A.  I am not sure that I can say that because there is a |
| 10:31:28 | 11 | difference between a report and a worksheet. |
| 10:31:32 | 12 | Q.  Well, in the top left-hand corner, Ms. Lyon, it states |
| 10:31:36 | 13 | this is a bomb and arson worksheet is that true? |
| 10:31:39 | 14 | A.  It does. |
| 10:31:41 | 15 | Q.  And on the right side -- |
| 10:31:44 | 16 | A.  I can't say.  I don't know. |
| 10:31:45 | 17 | THE COURT:  The question was. |
| 10:31:48 | 18 | BY MR. NOLAND: |
| 10:31:48 | 19 | Q.  On the right side it says bomb and arson worksheet? |
| 10:31:51 | 20 | A.  It does, it does. |
| 10:31:54 | 21 | Q.  Laura, can you go to the very next page?  Ms. Lyon, this |
| 10:31:58 | 22 | is the second page of that bomb and arson worksheet? |
| 10:32:02 | 23 | A.  It's the second page, yes, of that report. |
| 10:32:05 | 24 | Q.  And this is another page that you said you hadn't received |
| 10:32:09 | 25 | from prior -- |

Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 42 of 125 PageID #:31241

| | | |
|---|---|---|
| 10:32:11 | 1 | A.  From all the other sources we discussed, yes. |
| 10:32:17 | 2 | MR. NOLAND:  Laura, can you go to page 2, part 1161. |
| 10:32:27 | 3 | Can you take the highlighting off of the bomb and arson |
| 10:32:30 | 4 | worksheet.  Actually, you know, you can leave it on there. |
| 10:32:33 | 5 | Highlight the next two lines down, the vehicle tow report, a |
| 10:32:39 | 6 | two-pager.  Yeah, there you go. |
| 10:32:49 | 7 | BY MR. NOLAND: |
| 10:32:50 | 8 | Q.  Showing the witness page 1161 on the left, Ms. Lyon, |
| 10:32:54 | 9 | again, this is another page that you're saying you hadn't got |
| 10:32:59 | 10 | from the prior source; is that right? |
| 10:33:01 | 11 | A.  Correct. |
| 10:33:01 | 12 | Q.  And, again, on the discovery receipt, Mr. Zinger received |
| 10:33:04 | 13 | it from the state on February 20th, 2004; is that right? |
| 10:33:07 | 14 | A.  He signed that receipt, yes. |
| 10:33:36 | 15 | MR. NOLAND:  Laura, if you could go to the next page |
| 10:33:38 | 16 | of the discovery receipt which would be 1249, please.  If you |
| 10:33:50 | 17 | could highlight the four lines down, it says 38 pages, GPRs. |
| 10:34:06 | 18 | Can you pull up, Laura, page number -- on the left, |
| 10:34:14 | 19 | page number 1173, please. |
| 10:34:22 | 20 | BY MR. NOLAND: |
| 10:34:22 | 21 | Q.  Ms. Lyon, is this page 1173 a general progress report that |
| 10:34:28 | 22 | you say you hadn't received from those other sources? |
| 10:34:31 | 23 | A.  That's correct. |
| 10:34:35 | 24 | MR. NOLAND:  Could you go, Laura, to 1175, please. |
| 10:34:45 | 25 | BY MR. NOLAND: |

11/30/16 AM     ***REALTIME UNEDITED TRANSCRIPT ONLY***

| | | |
|---|---|---|
| 10:34:47 | 1 | Q. Ms. Lyon, is this another general progress report that you |
| 10:34:50 | 2 | hadn't received from the other sources? |
| 10:34:52 | 3 | A. That's correct. |
| 10:34:52 | 4 | Q. And then if you go to page 1176, Laura. |
| 10:35:02 | 5 | BY MR. NOLAND: |
| 10:35:03 | 6 | Q. Am I right that this is another general progress report |
| 10:35:06 | 7 | that you didn't receive from those other sources? |
| 10:35:09 | 8 | A. Correct. |
| 10:35:09 | 9 | Q. On the right side we have the discovery receipt again |
| 10:35:11 | 10 | signed on February 20th, 2004, by Mr. Fulton's attorney that |
| 10:35:17 | 11 | he does acknowledge receiving 38 general progress reports that |
| 10:35:20 | 12 | day? |
| 10:35:21 | 13 | A. He signed that receipt, yes.  It appears that way.  I |
| 10:35:28 | 14 | wasn't there. |
| 10:35:28 | 15 | Q. It would appear? |
| 10:35:29 | 16 | A. It would appear that way, yes. |
| 10:35:30 | 17 | Q. It would appear that he was signing receipt acknowledging |
| 10:35:34 | 18 | receipt of all of these documents we have been talking about |
| 10:35:36 | 19 | here today is that true? |
| 10:35:37 | 20 | A. It would so appear, yes. |
| 10:35:46 | 21 | MR. NOLAND:  Laura, could you pull up page |
| 10:35:51 | 22 | defendants' 249, part 3, why don't we put this on the right as |
| 10:35:58 | 23 | well, take off the other discovery receipt.  1278, part 3. |
| 10:36:15 | 24 | Could you pull up, Laura, on the left side of the |
| 10:36:19 | 25 | screen page defense 249, Part 2, page 011. |

***REALTIME UNEDITED TRANSCRIPT ONLY***

10:36:34   1         Laura, could you highlight the bottom of the

10:36:38   2    right-hand portion of the screen page 1278.  And could you

10:36:49   3    actually put that document on the left back to the way it was,

10:36:52   4    please.

10:36:58   5         Laura, could you highlight the part beginning with

10:37:01   6    all discovery equals all the way to the end of that paragraph,

10:37:08   7    the entirety.

10:37:11   8    BY MR. NOLAND:

10:37:12   9    Q.  Ms. Lyon, this would appear to be another discovery

10:37:14   10   receipt signed by Mr. Zinger in connection with his

10:37:19   11   representation of Jon Fulton on September the 2nd, 2005; is

10:37:19   12   that right?

10:37:24   13   A.  That's what it appears to be, yes.

10:37:26   14   Q.  And can you read the part beginning with all discovery

10:37:30   15   equals just into the record, please, so the jury can hear it?

10:37:34   16   A.  All discovery equals page numbers 5 equals 1 through 1241,

10:37:42   17   period.  Parentheses, because of scrivener's error, pages 266

10:37:50   18   and 571 through 579 do not exist, close parentheses, period.

10:37:56   19   This packet of discovery includes, there's something that's

10:37:58   20   crossed out there, materials previously tendered from defense

10:38:02   21   to state and previously tendered from state to defense,

10:38:07   22   period.

10:38:08   23   Q.  So it looks like during the course of the pretrial

10:38:11   24   proceedings before Mr. Fulton's trial that the parties were --

10:38:16   25   meaning the prosecution and the defense, were exchanging their

11/30/16 AM    Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 45 of 125 PageID #:31244
***REALTIME UNEDITED TRANSCRIPT ONLY***

44

10:38:19    1    documents and numbering for each other in connection with this

10:38:23    2    discovery receipt; is that fair?

10:38:25    3    A.  It does appear that way, yes.

10:38:29    4          MR. NOLAND:  Laura, if you could highlight the bottom

10:38:31    5    right-hand corner, the circled 1 there on page defendant 249,

10:38:37    6    page 11.

10:38:39    7    BY MR. NOLAND:

10:38:40    8    Q.  That would appear to be a 1, correct?

10:38:41    9    A.  It looks like it to me, or it could be a dash if you're

10:38:45    10   looking at it the other way.

10:38:46    11   Q.  It may be hard to see but on the right-hand side of this

10:38:49    12   screen at the bottom, Laura, can you highlight the RD number?

10:38:52    13   It's actually vertical, H J. 228346.  That would appear --

10:39:01    14   that's the RD number for the case for which Mr. Fulton was

10:39:05    15   convicted, the murder case?

10:39:06    16   A.  Yes, that is.

10:39:06    17   Q.  So that's page 1, right?  It appears to be page 1?

10:39:12    18   A.  I would assume so.

10:39:14    19          MR. NOLAND:  Laura, can you go to the next one, page

10:39:16    20   2, which would be -- in the bottom right-hand corner we have

10:39:21    21   page 2.

10:39:22    22   BY MR. NOLAND:

10:39:23    23   Q.  Right?

10:39:23    24   A.  Yes, that says page 2.

10:39:26    25   Q.  Can you go to the next page, Laura, page 3.  It appears to

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 46 of 125 PageID #:31245
***REALTIME UNEDITED TRANSCRIPT ONLY***

45

10:39:32   1   be page 3, correct?

10:39:33   2   A.  Yes.

10:39:33   3   Q.  And those Bates stamps were in order.  There's page 4.

10:39:40   4   And I am not going to go through them obviously until we get

10:39:46   5   to the numbers.  I want to focus your attention on the

10:39:48   6   right-hand side of the screen it says because of scrivener's

10:39:52   7   error pages 266 and 571 through 579 don't exist.  Do you see

10:39:59   8   that?

10:39:59   9   A.  I do see that.  I said that a moment ago.

10:40:02   10         MR. NOLAND:  Laura, can you go to page defense page

10:40:18   11   274, please.  Can you highlight the circled number in the

10:40:26   12   bottom right-hand corner.  Screen.

10:40:28   13   BY MR. NOLAND:

10:40:28   14   Q.  That's page 264, right?

10:40:30   15   A.  That's what it looks like, yes.

10:40:31   16   Q.  Can you go to just the next page in the entire document.

10:40:35   17   Just go to the next page, page 265.

10:40:37   18   A.  I see it.

10:40:38   19   Q.  Can you highlight that, Laura.  I just want you to go to

10:40:44   20   the very next page and see if it's 266 or some other number.

10:40:49   21   BY MR. NOLAND:

10:40:49   22   Q.  Now, this very next page is 267, do you see that?

10:40:53   23   A.  I do.

10:40:53   24   Q.  And again the Bates number on this one, Laura is what --

10:40:59   25   Ms. Lyon -- actually, on the bottom right?

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 47 of 125 PageID #:31246
***REALTIME UNEDITED TRANSCRIPT ONLY***

46

| | | |
|---|---|---|
| 10:41:03 | 1 | A.  I see that. |
| 10:41:03 | 2 | Q.  Okay.  And then there's it's page 276, right? |
| 10:41:09 | 3 | A.  That's what it says, yes. |
| 10:41:11 | 4 | THE COURT:  267.  You're talking about the lower |
| 10:41:16 | 5 | right-hand corner. |
| 10:41:16 | 6 | THE WITNESS:  2-276. |
| 10:41:19 | 7 | BY MR. NOLAND: |
| 10:41:19 | 8 | Q.  Just so we're clear and probably confused everybody, the |
| 10:41:22 | 9 | circled number in handwriting is 267? |
| 10:41:25 | 10 | A.  Correct. |
| 10:41:25 | 11 | Q.  And then the number it starts with D 0249, Part 2, 276, |
| 10:41:31 | 12 | right? |
| 10:41:31 | 13 | A.  Correct. |
| 10:41:33 | 14 | MR. NOLAND:  Laura, if you could go to the prior page |
| 10:41:36 | 15 | again. |
| 10:41:41 | 16 | BY MR. NOLAND: |
| 10:41:41 | 17 | Q.  And the prior page is 265, so there is a gap between 265 |
| 10:41:45 | 18 | and 266, right? |
| 10:41:46 | 19 | A.  Correct. |
| 10:41:48 | 20 | Q.  And there is the 275 and 276 showing that these are in |
| 10:41:52 | 21 | order, right? |
| 10:41:52 | 22 | A.  In order as produced at this time it looks like to me, |
| 10:41:55 | 23 | yes. |
| 10:41:56 | 24 | Q.  And, again, referring to the right-hand side of the screen |
| 10:41:58 | 25 | it said because of scrivener's error pages 266 and 571 through |

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 48 of 125 PageID #:31247
***REALTIME UNEDITED TRANSCRIPT ONLY***

47

| | | |
|---|---|---|
| 10:42:05 | 1 | 579 do not exist.  That would appear that that's a reference |
| 10:42:08 | 2 | to 266 does not exist, right? |
| 10:42:10 | 3 | A.  That's what it appears to be, yes. |
| 10:42:13 | 4 | MR. NOLAND:  Laura, can you go to page 578 of Part 2 |
| 10:42:33 | 5 | on the right-hand side of the screen, sorry, on the left-hand |
| 10:42:36 | 6 | side. |
| 10:42:36 | 7 | BY MR. NOLAND: |
| 10:42:36 | 8 | Q.  Now, I want to talk about the scrivener's error again for |
| 10:42:39 | 9 | pages 571 through 579.  Here's page 569? |
| 10:42:43 | 10 | A.  Um-hmm. |
| 10:42:44 | 11 | Q.  Which has the typewritten Bates stamp on the bottom of |
| 10:42:47 | 12 | 578? |
| 10:42:48 | 13 | A.  I see that. |
| 10:42:49 | 14 | Q.  Okay? |
| 10:42:50 | 15 | MR. NOLAND:  Laura, go to the next page, please, the |
| 10:42:53 | 16 | very next page in the exhibit. |
| 10:42:54 | 17 | BY MR. NOLAND: |
| 10:42:55 | 18 | Q.  This would be 570, so we have 569 and 570, right? |
| 10:43:00 | 19 | A.  Um-hmm. |
| 10:43:01 | 20 | Q.  Let's see if the next one is 571 or if it skips to 580. |
| 10:43:07 | 21 | Go to the next page, Laura.  The very next page in the Bates |
| 10:43:11 | 22 | range on the handwritten range, it's 580 and in the Bates |
| 10:43:15 | 23 | range on the bottom which is sequential is also 580, do you |
| 10:43:19 | 24 | see that? |
| 10:43:20 | 25 | A.  Yes, I do. |

11/30/16 AM    Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 49 of 125 PageID #:31248
***REALTIME UNEDITED TRANSCRIPT ONLY***

48

| | |
|---|---|
| 10:43:20 | 1 | Q.  Again, this would appear to be reflecting the scrivener's |
| 10:43:24 | 2 | error that is noted in receipt for discovery which Mr. Zinger |
| 10:43:27 | 3 | acknowledged signing and getting these documents on September |
| 10:43:33 | 4 | 2nd, 2005? |
| 10:43:34 | 5 | A.  That would be correct. |
| 10:43:35 | 6 | Q.  Okay? |
| 10:43:47 | 7 | MR. NOLAND:  Lawyer are, go -- |
| 10:43:48 | 8 | BY MR. NOLAND: |
| 10:43:49 | 9 | Q.  Ms. Lyon, going back to the documents we talked about |
| 10:43:52 | 10 | earlier, can you pull up once again those photographs page |
| 10:44:00 | 11 | Part 2, 878.  Can you highlight that number in the bottom |
| 10:44:10 | 12 | reasoned.  There you go 888. |
| 10:44:10 | 13 | BY MR. NOLAND: |
| 10:44:16 | 14 | Q.  Do you see there again is a circle of '888 on this |
| 10:44:21 | 15 | grouping of four photographs that you said -- that you hadn't |
| 10:44:25 | 16 | seen before when you gathered the documents, right? |
| 10:44:27 | 17 | A.  From all the different sources, that's correct. |
| 10:44:29 | 18 | Q.  And this receipt for discovery would indicate that |
| 10:44:36 | 19 | Mr. Zinger actually got this document again on September the |
| 10:44:39 | 20 | 2nd, 2005, in advance of Mr. Fulton's criminal trial; is that |
| 10:44:39 | 21 | right? |
| 10:44:45 | 22 | A.  He signed the receipt, yes. |
| 10:44:51 | 23 | MR. NOLAND:  Laura, if you could go to page Part 2, |
| 10:44:55 | 24 | 119. |
| 10:45:04 | 25 | BY MR. NOLAND: |

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 50 of 125 PageID #:31249
***REALTIME UNEDITED TRANSCRIPT ONLY***

49

10:45:05   1   Q.  This is the crime scene processing report that we talked

10:45:08   2   about earlier, the other receipt for discovery showed had been

10:45:12   3   tendered, right?

10:45:13   4   A.  Yes, that Mr. Zinger signed.

10:45:14   5   Q.  And again on this page, there's page 109 in this sequence

10:45:17   6   of 1 through 1241 on the receipt on the right-hand side of the

10:45:22   7   screen, right?

10:45:23   8   A.  Correct.

10:45:29   9        MR. NOLAND:  Laura, if you could pull up on the left,

10:45:33   10  page 2-12.

10:45:33   11  BY MR. NOLAND:

10:45:37   12  Q.  Here is that bomb and arson worksheet again that we looked

10:45:40   13  at a few minutes ago, right?

10:45:42   14  A.  Yes, sir.

10:45:42   15  Q.  Is there a handwritten number in the bottom right-hand

10:45:45   16  side again?

10:45:45   17  A.  There is.

10:45:46   18  Q.  What's that?

10:45:46   19  A.  112 it appears.

10:45:49   20       MR. NOLAND:  Laura, can you go to the next page of

10:45:53   21  page 123.

10:45:56   22  BY MR. NOLAND:

10:45:56   23  Q.  Again, in the bottom right-hand corner there is a

10:45:59   24  handwritten 113, right?

10:46:00   25  A.  Yes.

11/30/16 AM    Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 51 of 125 PageID #:31250
***REALTIME UNEDITED TRANSCRIPT ONLY***

50

| | | |
|---|---|---|
| 10:46:00 | 1 | Q.  And these are all the pages that you hadn't received |
| 10:46:03 | 2 | before from the other sources, right? |
| 10:46:05 | 3 | A.  Correct. |
| 10:46:06 | 4 | MR. NOLAND:  Laura, could you go to page 1161. |
| 10:46:13 | 5 | BY MR. NOLAND: |
| 10:46:14 | 6 | Q.  This is that vehicle tow report we talked about a little |
| 10:46:17 | 7 | while ago, right? |
| 10:46:18 | 8 | A.  Yes. |
| 10:46:18 | 9 | Q.  And? |
| 10:46:20 | 10 | A.  It looks like 1171. |
| 10:46:22 | 11 | Q.  1171.  Sorry.  I got the number wrong. |
| 10:46:26 | 12 | Again, this would be another number in this sequence |
| 10:46:30 | 13 | that had been signed for by Mr. Zinger on that date? |
| 10:46:35 | 14 | A.  It does appear so, yes. |
| 10:46:36 | 15 | Q.  Laura, if you could go to page Part 2, 1168.  Now we |
| 10:46:43 | 16 | hadn't shown the jury this one before, but Ms. Lyon, is this |
| 10:46:46 | 17 | another one of the documents that you hadn't -- you didn't |
| 10:46:50 | 18 | have from the prior sources? |
| 10:46:52 | 19 | A.  The prior sources, yes. |
| 10:46:53 | 20 | Q.  Again, this has the 1178 handwritten number indicating |
| 10:46:56 | 21 | that it was on that receipt for discovery proving production |
| 10:47:03 | 22 | -- strike that. |
| 10:47:03 | 23 | This document, page 1178, would be within that range |
| 10:47:08 | 24 | of the documents that Mr. Zinger signed for on September the |
| 10:47:14 | 25 | 2nd, 2005? |

Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 52 of 125 PageID #:31251
11/30/16 AM          ***REALTIME UNEDITED TRANSCRIPT ONLY***

51

| | | |
|---|---|---|
| 10:47:15 | 1 | A. Right. |
| 10:47:15 | 2 | Q. Just one more. |
| 10:47:51 | 3 | So just to recap, Ms. Lyon, based on these two |
| 10:47:54 | 4 | receipts for discovery, they would show that Mr. Zinger had |
| 10:47:56 | 5 | received these documents that we have been talking about that |
| 10:48:01 | 6 | you didn't get from him or these other sources first in 2004, |
| 10:48:08 | 7 | correct? |
| 10:48:08 | 8 | A. It shows he signed a receipt for them, yes. |
| 10:48:11 | 9 | Q. And then he signed another receipt for them in 2005, |
| 10:48:15 | 10 | correct? |
| 10:48:15 | 11 | A. Correct. |
| 10:48:20 | 12 | MR. NOLAND: If I may have a moment, your Honor. |
| 10:48:22 | 13 | THE COURT: Sure. |
| 10:48:33 | 14 | MR. NOLAND: Thank you very much, Ms. Lyon. |
| 10:48:37 | 15 | THE COURT: Mr. Kulwin, do you have questions? |
| 10:48:38 | 16 | MR. KULWIN: No, your Honor. |
| 10:48:39 | 17 | THE COURT: Mr. Swaminathan. Redirect Examination. |
| 10:48:45 | 18 | BY MR. SWAMINATHAN: |
| 10:48:46 | 19 | Q. Ms. Lyon, a couple questions. |
| 10:48:48 | 20 | First, just to be clear, you got involved in this |
| 10:48:50 | 21 | case -- can you tell us approximately when you got involved in |
| 10:48:53 | 22 | the case? |
| 10:48:53 | 23 | A. It would have been sometime in 2011. I am not a hundred |
| 10:48:57 | 24 | percent sure. I believe probably February, but I am not a |
| 10:48:59 | 25 | hundred percent sure of the date. |

| | | |
|---|---|---|
| 10:49:00 | 1 | Q.  And so then you issued -- we talked about some of the |
| 10:49:03 | 2 | things you did including getting documents from criminal |
| 10:49:05 | 3 | defense attorneys, correct? |
| 10:49:06 | 4 | A.  Correct. |
| 10:49:06 | 5 | Q.  And in addition to that, you issued a subpoena to the |
| 10:49:09 | 6 | Chicago Police Department, correct? |
| 10:49:10 | 7 | A.  I did after we filed in December, in December. |
| 10:49:14 | 8 | Q.  And what did you basically ask the Chicago Police |
| 10:49:15 | 9 | Department for? |
| 10:49:16 | 10 | A.  Any and all police reports, street files, you know, notes, |
| 10:49:20 | 11 | investigative reports, you know, basically please give me your |
| 10:49:23 | 12 | kitchen sink, whatever is in it. |
| 10:49:25 | 13 | Q.  And in response to that, they gave you certain material, |
| 10:49:28 | 14 | correct? |
| 10:49:28 | 15 | A.  They did. |
| 10:49:29 | 16 | Q.  And was the dealer they gave you all material that you |
| 10:49:32 | 17 | already had in your file from the criminal defense attorneys? |
| 10:49:34 | 18 | A.  It was. |
| 10:49:35 | 19 | Q.  Did they give you this file, the basement file for |
| 10:49:42 | 20 | Mr. Fulton? |
| 10:49:42 | 21 | A.  When I did the original subpoena, no. |
| 10:49:44 | 22 | Q.  Later on, later on you learned that there was a basement |
| 10:49:48 | 23 | file for Mr. Fulton, correct? |
| 10:49:49 | 24 | A.  I did. |
| 10:49:50 | 25 | Q.  You learned that after it was revealed that there was one |

Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 54 of 125 PageID #:31253

***REALTIME UNEDITED TRANSCRIPT ONLY***

| | | |
|---|---|---|
| 10:49:52 | 1 | for Mr. Fields that hadn't been tendered long ago, correct? |
| 10:49:56 | 2 | A.  Correct. |
| 10:49:56 | 3 | Q.  After you learned that, after you issued the subpoena to |
| 10:49:59 | 4 | the Chicago Police Department and gotten documents, then you |
| 10:50:02 | 5 | made a special request now that you knew about the basement |
| 10:50:04 | 6 | file for the basement file, correct? |
| 10:50:07 | 7 | A.  Correct. |
| 10:50:08 | 8 | Q.  Okay.  And at that time you had a basement file produced |
| 10:50:12 | 9 | to you and you conducted a review is that right? |
| 10:50:14 | 10 | A.  I did. |
| 10:50:14 | 11 | Q.  And based on that review then you were able to determine |
| 10:50:17 | 12 | that these pages had not been produced to you, correct? |
| 10:50:20 | 13 | A.  Correct. |
| 10:50:20 | 14 | Q.  Okay.  And that's the pages that Mr. Noland was asking you |
| 10:50:23 | 15 | about, correct? |
| 10:50:24 | 16 | A.  Correct. |
| 10:50:24 | 17 | Q.  Okay.  Now, those page, are you confident that you did not |
| 10:50:27 | 18 | have those pages in your file? |
| 10:50:28 | 19 | A.  Until I got the basement file, yes, I am confident about |
| 10:50:32 | 20 | that. |
| 10:50:32 | 21 | Q.  Now, he asked you about a number of the documents in the |
| 10:50:38 | 22 | file and I'll just go through a couple.  I am not going to go |
| 10:50:45 | 23 | through all of them. |
| 10:50:47 | 24 | MR. SWAMINATHAN:  Judge, could you put the ELMO back |
| 10:50:49 | 25 | on? |

***REALTIME UNEDITED TRANSCRIPT ONLY***

Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 55 of 125 PageID #:31254

| | |
|---|---|
| 10:50:49 | 1 |   THE COURT:  Sure. |
| 10:50:53 | 2 | BY MR. SWAMINATHAN: |
| 10:50:55 | 3 | Q.  So, for example, he asked you about this document? |
| 10:50:58 | 4 | A.  Right. |
| 10:50:59 | 5 | Q.  You are confident that this is one of the documents that |
| 10:51:03 | 6 | was not given to you previously by the Chicago Police |
| 10:51:05 | 7 | Department in response to your subpoena around 2012? |
| 10:51:07 | 8 | A.  Correct. |
| 10:51:07 | 9 | Q.  Okay.  Now, this document it's a reference to a case named |
| 10:51:17 | 10 | Lanza, is that of any relevance or is that notable to you at |
| 10:51:20 | 11 | all? |
| 10:51:20 | 12 |   MR. NOLAND:  Judge, objection. |
| 10:51:23 | 13 |   THE COURT:  Put the question again.  Lanza.  I was |
| 10:51:27 | 14 | trying to figure out where it was on the page.  Can I see the |
| 10:51:32 | 15 | lawyers at sidebar, please. |
| 10:51:43 | 16 |   THE COURT:  You folks obviously know more than I do. |
| 10:51:45 | 17 | What's the issue or problem here? |
| 10:51:47 | 18 |   MR. NOLAND:  I think she acknowledged that document, |
| 10:51:50 | 19 | she wouldn't have expected to see that before.  I believe that |
| 10:51:54 | 20 | involved a lawsuit that the plaintiff's law firm handled and |
| 10:51:57 | 21 | they obtained a judgment against bar tech and so that would be |
| 10:52:02 | 22 | unduly prejudicial.  I think it's been gone over before.  I |
| 10:52:06 | 23 | didn't get anything other than what the document is. |
| 10:52:08 | 24 |   MR. SWAMINATHAN:  He asked her is this document |
| 10:52:12 | 25 | important and my understanding, my understanding is she would |

Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 56 of 125 PageID #:31255
11/30/16 AM       ***REALTIME UNEDITED TRANSCRIPT ONLY***

55

| | |
|---|---|
| 10:52:15 | 1 | testify that this document is not important.  It was actually |
| 10:52:17 | 2 | notable to her that there was a case going in 2010 because the |
| 10:52:24 | 3 | idea is just to say even which he is suggesting is unimportant |
| 10:52:28 | 4 | is important to her.  So the basement file -- |
| 10:52:31 | 5 | THE COURT:  The lawsuit postdated the -- the lawsuit |
| 10:52:34 | 6 | postdated the prosecution of the criminal case, right? |
| 10:52:37 | 7 | MR. SWAMINATHAN:  That is true. |
| 10:52:38 | 8 | THE COURT:  I am going to exclude it under 403. |
| 10:52:41 | 9 | (The following proceedings were had in open court in the |
| 10:52:46 | 10 | presence and hearing of the jury:) |
| 10:52:46 | 11 | THE COURT:  Okay.  The objection is sustained.  You |
| 10:52:49 | 12 | can proceed. |
| 10:52:50 | 13 | BY MR. SWAMINATHAN: |
| 10:52:51 | 14 | Q.  This is another document that they showed you? |
| 10:52:54 | 15 | A.  Correct. |
| 10:52:54 | 16 | Q.  And you testified a little bit about this document |
| 10:52:56 | 17 | previously.  Is this gentleman Mr. Fulton? |
| 10:52:58 | 18 | A.  Yes. |
| 10:52:58 | 19 | Q.  And you explained previously the relevance -- strike that. |
| 10:53:02 | 20 | You explained previously why this document was |
| 10:53:05 | 21 | notable to you? |
| 10:53:06 | 22 | MR. NOLAND:  Objection, this is beyond the scope. |
| 10:53:08 | 23 | THE COURT:  Hang on a second.  I don't think I got |
| 10:53:13 | 24 | enough of a question yet to figure out whether it's beyond the |
| 10:53:16 | 25 | scope or not.  Go ahead. |

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 57 of 125 PageID #:31256
***REALTIME UNEDITED TRANSCRIPT ONLY***

56

| | | |
|---|---|---|
| 10:53:17 | 1 | BY MR. SWAMINATHAN: |
| 10:53:18 | 2 | Q.  Now, was this document produced to you in response to your |
| 10:53:20 | 3 | subpoena to the Chicago Police Department? |
| 10:53:23 | 4 | THE COURT:  The objection is overruled. |
| 10:53:24 | 5 | THE WITNESS:  It was not. |
| 10:53:25 | 6 | BY MR. SWAMINATHAN: |
| 10:53:26 | 7 | Q.  Okay.  And each of the other documents that were shown to |
| 10:53:30 | 8 | you by counsel, I am not going doing through all of them now, |
| 10:53:33 | 9 | were they produced to you in response to your subpoena to the |
| 10:53:36 | 10 | Chicago Police Department? |
| 10:53:37 | 11 | A.  They were not. |
| 10:53:38 | 12 | Q.  Okay.  So when you asked the police department for a file, |
| 10:53:41 | 13 | those documents were not given to you? |
| 10:53:43 | 14 | A.  Correct. |
| 10:53:46 | 15 | MR. NOLAND:  Objection. |
| 10:53:46 | 16 | THE COURT:  What? |
| 10:53:48 | 17 | MR. NOLAND:  Objection, asked and answered. |
| 10:53:49 | 18 | THE COURT:  Overruled. |
| 10:53:51 | 19 | BY MR. SWAMINATHAN: |
| 10:53:56 | 20 | Q.  So your understanding in response to the subpoena that you |
| 10:53:59 | 21 | made to the Chicago Police Department before you ever learned |
| 10:54:01 | 22 | of there being a basement file, they went and produced some |
| 10:54:05 | 23 | material to you but they didn't go into the file and get this |
| 10:54:08 | 24 | file? |
| 10:54:09 | 25 | MR. NOLAND:  Objection, your Honor. |

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 58 of 125 PageID #:31257
***REALTIME UNEDITED TRANSCRIPT ONLY***

57

| | | |
|---|---|---|
| 10:54:11 | 1 | THE COURT:  Sustained. |
| 10:54:11 | 2 | THE COURT:  Leave it for argument. |
| 10:54:13 | 3 | BY MR. SWAMINATHAN: |
| 10:54:14 | 4 | Q.  Now, I want to turn back -- let me ask you about one more |
| 10:54:22 | 5 | document that you reviewed. |
| 10:54:23 | 6 | They showed you a few documents called GPRs. |
| 10:54:27 | 7 | A.  Yes. |
| 10:54:27 | 8 | Q.  Correct? |
| 10:54:28 | 9 | Now, counsel showed you a discovery receipt related |
| 10:54:33 | 10 | to 38 GPRs, right? |
| 10:54:35 | 11 | A.  Correct. |
| 10:54:35 | 12 | Q.  It just said 38 GPRs on it? |
| 10:54:39 | 13 | A.  Correct. |
| 10:54:39 | 14 | Q.  Do you have any idea whether or not this specific GPR was |
| 10:54:42 | 15 | in there? |
| 10:54:42 | 16 | A.  I have no personal knowledge that it was. |
| 10:54:44 | 17 | Q.  Was this one of the documents that you talked about -- we |
| 10:54:50 | 18 | talked about some documents yesterday that I didn't show you |
| 10:54:53 | 19 | and I said were there other documents that were useful to you? |
| 10:54:55 | 20 | A.  Yes. |
| 10:54:55 | 21 | Q.  Was this one of the documents that you were referring to? |
| 10:54:58 | 22 | A.  Yes. |
| 10:54:58 | 23 | Q.  And this was not given to you in response to your subpoena |
| 10:55:02 | 24 | to the Chicago Police Department? |
| 10:55:02 | 25 | A.  It was not. |

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 59 of 125 PageID #:31258
***REALTIME UNEDITED TRANSCRIPT ONLY***

58

| | | |
|---|---|---|
| 10:55:02 | 1 | Q.  And this is the last document I want to talk to you about. |
| 10:55:09 | 2 | We talked about a number of documents.  Counsel showed you a |
| 10:55:11 | 3 | number of documents.  He didn't show you this document, |
| 10:55:14 | 4 | correct? |
| 10:55:15 | 5 | MR. NOLAND:  Objection.  Beyond the scope. |
| 10:55:18 | 6 | THE COURT:  Overruled. |
| 10:55:21 | 7 | THE WITNESS:  He did not. |
| 10:55:22 | 8 | MR. SWAMINATHAN:  Okay.  Now, he didn't show you any |
| 10:55:24 | 9 | discovery receipt to suggest that this document had -- |
| 10:55:27 | 10 | THE COURT:  Let's just ask questions about whether -- |
| 10:55:29 | 11 | not about whether or not somebody else did or didn't show |
| 10:55:32 | 12 | something. |
| 10:55:33 | 13 | BY MR. SWAMINATHAN: |
| 10:55:33 | 14 | Q.  Was there any indication on the discovery receipt that you |
| 10:55:36 | 15 | were shown that this document was produced to the criminal |
| 10:55:38 | 16 | defense attorneys? |
| 10:55:38 | 17 | A.  There was not. |
| 10:55:39 | 18 | Q.  Is there any indication on this document that it has an |
| 10:55:42 | 19 | OCC number or a circled number in the bottom right corner? |
| 10:55:46 | 20 | A.  There is not either number. |
| 10:55:48 | 21 | Q.  You were asked some questions about the importance of |
| 10:55:53 | 22 | documents.  Talked a little bit about this document yesterday. |
| 10:56:04 | 23 | Your testimony is -- |
| 10:56:05 | 24 | MR. NOLAND:  Objection, beyond the scope. |
| 10:56:10 | 25 | MR. SWAMINATHAN:  This document -- |

Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 60 of 125 PageID #:31259

| | | |
|---|---|---|
| 10:56:11 | 1 | THE COURT:  Adds I said this, I am not a mind reader. |
| 10:56:13 | 2 | I can't figure out whether a question is proper or not after |
| 10:56:19 | 3 | hearing only 30 percent of it.  Go ahead. |
| 10:56:20 | 4 | BY MR. SWAMINATHAN: |
| 10:56:22 | 5 | Q.  This document leads you to believe that this may lead to a |
| 10:56:26 | 6 | potential perpetrator of the crime? |
| 10:56:29 | 7 | MR. NOLAND:  Objection. |
| 10:56:30 | 8 | THE COURT:  Overruled. |
| 10:56:31 | 9 | THE WITNESS:  Correct. |
| 10:56:34 | 10 | BY MR. SWAMINATHAN: |
| 10:56:35 | 11 | Q.  If you look at this document in isolation, isn't it |
| 10:56:37 | 12 | possible that someone could be mistaken to think that this is |
| 10:56:41 | 13 | not a particularly notable document? |
| 10:56:42 | 14 | MR. NOLAND:  Objection, Judge. |
| 10:56:43 | 15 | THE COURT:  Sustained. |
| 10:56:44 | 16 | BY MR. SWAMINATHAN: |
| 10:56:45 | 17 | Q.  This document, would you agree, is basically some |
| 10:56:48 | 18 | scribbles of numbers and a few names? |
| 10:56:52 | 19 | MR. NOLAND:  Objection, Judge. |
| 10:56:55 | 20 | THE COURT:  While everybody is looking at it, they |
| 10:56:58 | 21 | can see what it is. |
| 10:57:01 | 22 | BY MR. SWAMINATHAN: |
| 10:57:02 | 23 | Q.  Someone looking at this document in isolation, could they |
| 10:57:04 | 24 | reasonably look at it in isolation and say this doesn't seem |
| 10:57:08 | 25 | particularly notable? |

11/30/16 AM            ***REALTIME UNEDITED TRANSCRIPT ONLY***

60

| | | |
|---|---|---|
| 10:57:09 | 1 | MR. NOLAND:  Objection. |
| 10:57:10 | 2 | THE WITNESS:  I suppose they could. |
| 10:57:11 | 3 | THE COURT:  The objection is overruled and the answer |
| 10:57:13 | 4 | can stand. |
| 10:57:15 | 5 | BY MR. SWAMINATHAN: |
| 10:57:16 | 6 | Q.  Now, if based on what you know of someone who is handling |
| 10:57:18 | 7 | this file, that isn't actually true; is that correct? |
| 10:57:22 | 8 | A.  That's correct. |
| 10:57:23 | 9 | MR. NOLAND:  Objection. |
| 10:57:24 | 10 | THE COURT:  What's the basis for the objection? |
| 10:57:25 | 11 | MR. NOLAND:  Argumentative. |
| 10:57:28 | 12 | THE COURT:  Overruled. |
| 10:57:30 | 13 | BY MR. SWAMINATHAN: |
| 10:57:31 | 14 | Q.  This document proved to be useful to you, correct? |
| 10:57:33 | 15 | A.  It is proving to be useful right now. |
| 10:57:35 | 16 | Q.  And in your career, is it your experience that sometimes |
| 10:57:40 | 17 | small, little scribbles on a page have proven to be useful to |
| 10:57:46 | 18 | you in your cases? |
| 10:57:46 | 19 | A.  They have turned the whole case sometimes. |
| 10:57:48 | 20 | MR. KULWIN:  Calls for expert. |
| 10:57:50 | 21 | THE COURT:  Overruled.  I don't agree with that. |
| 10:57:52 | 22 | BY MR. SWAMINATHAN: |
| 10:57:53 | 23 | Q.  Go ahead. |
| 10:57:53 | 24 | A.  Sometimes a small detail like this will lead to something |
| 10:57:58 | 25 | really, really important in a case and how to exonerate |

***REALTIME UNEDITED TRANSCRIPT ONLY***

| | | |
|---|---|---|
| 10:58:00 | 1 | somebody, yes. |
| 10:58:02 | 2 | MR. SWAMINATHAN:  Nothing further. |
| 10:58:03 | 3 | THE COURT:  Mr. Noland. |
| 10:58:08 | 4 | - - - |
| 10:58:08 | 5 | ANDREA LYON, RECROSS-EXAMINATION |
| 10:58:08 | 6 | BY MR. NOLAND: |
| 10:58:17 | 7 | Q.  Counsel showed you this page and said that -- talked about |
| 10:58:22 | 8 | the 38 GPRs.  Do you remember that just a moment ago? |
| 10:58:24 | 9 | A.  Yes. |
| 10:58:24 | 10 | Q.  Now, this was one of the pages in the bottom right-hand |
| 10:58:32 | 11 | corner that had the handwritten page 1185 that it was |
| 10:58:37 | 12 | acknowledging receipt by the actual criminal defense attorney |
| 10:58:41 | 13 | at the time of the trial, right? |
| 10:58:43 | 14 | A.  There is a signature on a receipt that says pages -- I |
| 10:58:46 | 15 | forgot, 1 to 1241. |
| 10:58:49 | 16 | Q.  Yes. |
| 10:58:52 | 17 | A.  So, yes, there is such a signature. |
| 10:58:54 | 18 | Q.  Those receipts establish that all the documents that we |
| 10:58:57 | 19 | have been talking about except for that last one were signed |
| 10:59:00 | 20 | for by Mr. Zinger in 2004 and in 2005; is that right? |
| 10:59:05 | 21 | A.  It shows that he signed the receipt.  I have no way of |
| 10:59:08 | 22 | knowing if he sat there and went through and made sure that |
| 10:59:11 | 23 | there were actually 38 pages.  I have no way of knowing that. |
| 10:59:14 | 24 | I do know that he signed the receipt.  That I do know. |
| 10:59:16 | 25 | Q.  And the purpose of the discovery receipt is to have a |

Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 63 of 125 PageID #:31262
11/30/16 AM          ***REALTIME UNEDITED TRANSCRIPT ONLY***

62

| | | |
|---|---|---|
| 10:59:19 | 1 | record that the state had tendered information to the criminal |
| 10:59:23 | 2 | defense attorney in advance of the criminal trial; is that |
| 10:59:23 | 3 | right? |
| 10:59:26 | 4 | A.  That's right, and a careful lawyer would -- |
| 10:59:29 | 5 | THE COURT:  The answer is that's right.  The rest of |
| 10:59:31 | 6 | it is stricken. |
| 10:59:31 | 7 | MR. NOLAND:  Thank you. |
| 10:59:33 | 8 | - - - |
| 10:59:33 | 9 | ANDREA LYON, REDIRECT EXAMINATION |
| 10:59:37 | 10 | BY MR. NOLAND: |
| 10:59:37 | 11 | Q.  Was that document produced to you in response to your |
| 10:59:42 | 12 | request from the police department? |
| 10:59:43 | 13 | A.  No. |
| 10:59:51 | 14 | MR. NOLAND:  Objection. |
| 10:59:52 | 15 | THE COURT:  Overruled.  Any questions. |
| 11:00:11 | 16 | (The following proceedings were had at sidebar outside the |
| 11:00:15 | 17 | hearing of the jury:) |
| 11:00:15 | 18 | THE COURT:  We had one from yesterday that -- you may |
| 11:00:20 | 19 | recall that there was an objection during or when going |
| 11:00:25 | 20 | through the background and I said shorten it up.  One of the |
| 11:00:28 | 21 | jurors yesterday handed me.  Provide a brief work history from |
| 11:00:32 | 22 | Andrea Lyon from 1979 until she became dean of Valparaiso, so |
| 11:00:35 | 23 | I am going to allow her to do that. |
| 11:00:38 | 24 | The other one is two questions.  Can a juror ask a |
| 11:00:39 | 25 | witness their opinion?  If not, then disregard.  Second page, |

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 64 of 125 PageID #:31263
***REALTIME UNEDITED TRANSCRIPT ONLY***

63

| | | |
|---|---|---|
| 11:00:43 | 1 | what is your opinion on why the CPD did not give you the |
| 11:00:46 | 2 | basement file in response to your subpoena? |
| 11:00:48 | 3 | The answer is no, she can't give her opinion on that. |
| 11:00:51 | 4 | And so I am not going to ask that question.  I am not going to |
| 11:00:54 | 5 | tell her why.  I am just going to say don't speculate. |
| 11:00:59 | 6 | MR. KULWIN:  Judge, with respect to her background, I |
| 11:01:01 | 7 | mean -- |
| 11:01:03 | 8 | THE COURT:  You have to be louder. |
| 11:01:03 | 9 | MR. KULWIN:  With respect to her background,. |
| 11:01:03 | 10 | THE COURT:  I am going to ask her her work history. |
| 11:01:05 | 11 | I didn't say background, work history, which has been done |
| 11:01:09 | 12 | with every other witness.  Okay? |
| 11:01:17 | 13 | (The following proceedings were had in open court in the |
| 11:01:17 | 14 | presence and hearing of the jury:) |
| 11:01:17 | 15 | THE COURT:  One of these was from yesterday.  I think |
| 11:01:21 | 16 | when you were being questioned about your work history, you |
| 11:01:24 | 17 | got cut off someplace.  What jobs did you hold from 79 until |
| 11:01:27 | 18 | you became dean of the law school in Valparaiso? |
| 11:01:31 | 19 | THE WITNESS:  I was in the public defender office in |
| 11:01:34 | 20 | 1990, then I ran an agency called the capital resource center. |
| 11:01:38 | 21 | THE COURT:  From when? |
| 11:01:41 | 22 | THE WITNESS:  1990 to 1995.  Then I joined the |
| 11:01:43 | 23 | University of Michigan faculty from 1995 to 2000. |
| 11:01:46 | 24 | THE COURT:  The law school or undergrad? |
| 11:01:49 | 25 | THE WITNESS:  The law school.  Then I turned to |

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 65 of 125 PageID #:31264
***REALTIME UNEDITED TRANSCRIPT ONLY***

64

| | | |
|---|---|---|
| 11:01:51 | 1 | Chicago and joined the DePaul University law school faculty |
| 11:01:54 | 2 | there and worked there, became the dean of the clinical |
| 11:01:57 | 3 | programs there in 2006 I think that's right, no, 2008, I'm |
| 11:02:05 | 4 | sorry. |
| 11:02:05 | 5 | THE COURT:  There until Valparaiso. |
| 11:02:08 | 6 | THE WITNESS:  Then I went to Valparaiso in 2014. |
| 11:02:12 | 7 | THE COURT:  There is one other question I am not |
| 11:02:14 | 8 | going to ask.  I just remind the jury don't speculate on what |
| 11:02:18 | 9 | the answers might have been.  We are going to take a short |
| 11:02:26 | 10 | break.  I will take the jury out and come back right.    (The |
| 11:02:56 | 11 | jury leaves the courtroom.) |
| 11:02:56 | 12 | THE COURT:  So the marshals are going to bring |
| 11:03:03 | 13 | Mr. Kees down once the jury is in the jury room.  Let me just |
| 11:03:06 | 14 | make sure that's happening.  I am hoping that the fact that |
| 11:03:25 | 15 | people are hovering by the podium does not moan you want to |
| 11:03:30 | 16 | raise more issues with me. |
| 11:03:31 | 17 | MR. KULWIN:  I don't. |
| 11:03:32 | 18 | THE COURT:  People being Mr. Loevy. |
| 11:03:33 | 19 | MR. LOEVY:  I have a motion to reconsider a motion |
| 11:03:36 | 20 | that I not be allowed to raise an issue. |
| 11:03:38 | 21 | THE COURT:  What's the issue? |
| 11:03:39 | 22 | MR. LOEVY:  He just got a deal to testify in the case |
| 11:03:43 | 23 | by the U.S. Attorney's Office.  He has been prepped by Bill |
| 11:03:47 | 24 | Hogan to testify in this case. |
| 11:03:48 | 25 | THE COURT:  How do you know that. |

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 66 of 125 PageID #:31265
***REALTIME UNEDITED TRANSCRIPT ONLY***

65

| | | |
|---|---|---|
| 11:03:49 | 1 | MR. LOEVY:  His attorney told. |
| 11:03:51 | 2 | THE COURT:  How do you know he was prepped by |
| 11:03:53 | 3 | Mr. Hogan? |
| 11:03:53 | 4 | MR. LOEVY:  I don't know.  I withdraw it.  But he has |
| 11:03:55 | 5 | not -- before the last trial -- |
| 11:03:57 | 6 | THE COURT:  What is the ruling that you want me to |
| 11:03:59 | 7 | reconsider? |
| 11:03:59 | 8 | MR. LOEVY:  To not advise him not to volunteer the |
| 11:04:04 | 9 | Tredeste Murray incident, what he heard about the murder and |
| 11:04:07 | 10 | anything about Mr. Fields' criminal background. |
| 11:04:09 | 11 | THE COURT:  Hang on just one second. |
| 11:04:12 | 12 | MR. LOEVY:  Before the last trial, he was warned by |
| 11:04:14 | 13 | attorneys explained in the motion in limine in 2014.  This |
| 11:04:18 | 14 | time it's been years that anybody's explained the motions. |
| 11:04:21 | 15 | THE COURT:  I follow what you're saying. |
| 11:04:23 | 16 | MR. LOEVY:  Nobody has told him. |
| 11:04:24 | 17 | MR. KULWIN:  I don't care. |
| 11:04:25 | 18 | THE COURT:  I assume nobody has a problem with that. |
| 11:04:27 | 19 | MR. NOLAND:  The criminal background, Mr. Kees has |
| 11:04:30 | 20 | testified in 2014 that at some point after Mr. Fields was |
| 11:04:37 | 21 | released from prison. |
| 11:04:37 | 22 | THE COURT:  So what I would say to him is that |
| 11:04:40 | 23 | there's not going to be any questions to him about the |
| 11:04:44 | 24 | Tredeste Murray incident, there's not going to be any |
| 11:04:46 | 25 | questions to him about Mr. Fields' prior convictions other |

Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 67 of 125 PageID #:31266

11:04:50    1   than the Smith/Hickman murder, and there's not going to be any

11:04:53    2   questions to him about what was the third thing?

11:04:56    3        MR. LOEVY: What he heard about the murder from other

11:04:58    4   people.

11:04:58    5        THE COURT: What he heard about the murder from

11:05:00    6   people other than Mr. Fields.

11:05:02    7        MR. KULWIN: No, Judge, no, you let that precise

11:05:05    8   testimony in the last trial. There was -- no.

11:05:12    9        THE COURT: Page. I am -- I said at page 15 of my

11:05:16   10   ruling on certain motions in limine, document number 629 Kees

11:05:23   11   may not testify regarding what he heard the next day about who

11:05:26   12   had committed the murders or why certain persons including

11:05:29   13   Fields were chosen for the assignment. That testimony is

11:05:31   14   hearsay and possibly second or third left hearsay not subject

11:05:35   15   to any exception established by defendants.

11:05:38   16        MR. KULWIN: Judge, here is the exact testimony that

11:05:40   17   was let in. Do you want me to read it to you?

11:05:44   18        THE COURT: No, I want to look at it. This is page

11:05:47   19   2449. It looks like at page 2449, he was asked about

11:06:18   20   conversation at the Al Hambra on April 29th with Charles

11:06:25   21   Green, Earl Hawkins, no Mr. Fields was there.

11:06:27   22        MR. KULWIN: Right.

11:06:28   23        MR. LOEVY: The confession is okay.

11:06:32   24        MR. KULWIN: It's to put the rest of the statements

11:06:33   25   in context. As long as I can bring that conversation up.

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 68 of 125 PageID #:31267
***REALTIME UNEDITED TRANSCRIPT ONLY***

67

| | | |
|---|---|---|
| 11:06:36 | 1 | Fields is there. |
| 11:06:37 | 2 | THE COURT:  You can bring this conversation up. |
| 11:06:39 | 3 | MR. KULWIN:  Thanks. |
| 11:06:40 | 4 | THE COURT:  I am going to leave that alone.  I am |
| 11:06:42 | 5 | just going to talk to him about Tredeste Murray and prior |
| 11:06:45 | 6 | criminal history.  That's it.  Okay?  No more issues before he |
| 11:06:49 | 7 | starts. |
| 11:06:49 | 8 | MR. KULWIN:  Thank you, Judge. |
| 11:06:51 | 9 | THE COURT:  Everybody stay here while I admonish him. |
| 11:07:28 | 10 | Mr. Kees, the jury is taking a break.  We will be |
| 11:07:30 | 11 | back in 10 minutes, I'll swear you in, you'll start your |
| 11:07:34 | 12 | testimony.  There's two things I want to tell you.  Based on |
| 11:07:36 | 13 | some rulings I have made, there's not going to be any |
| 11:07:38 | 14 | questions to you about Mr. Fields' prior criminal history |
| 11:07:42 | 15 | other than his conviction on the Smith/Hickman murders. |
| 11:07:45 | 16 | That's number one.  And number two, there's not going to be |
| 11:07:47 | 17 | any questions to you about an incident involving a person by |
| 11:07:51 | 18 | the name of Tredeste Murray.  Do you know what I'm talking |
| 11:07:53 | 19 | about? |
| 11:07:54 | 20 | THE WITNESS:  Yeah. |
| 11:07:54 | 21 | THE COURT:  There's not going to be any questions to |
| 11:07:57 | 22 | you about that.  I have ruled that that evidence is not |
| 11:07:59 | 23 | admissible.  You are noting to go into those two things.  He |
| 11:08:06 | 24 | is nodding his head yes. |
| 11:08:09 | 25 | Everybody take a short break and then we will go |

| 11:08:11 | 1 | ahead. |
|---|---|---|

11:08:11    1  ahead.
11:08:12    2    (Short break.)
11:14:24    3        MS. GORMAN:
11:15:18    4    (The jury enters the courtroom.)
11:15:19    5        THE COURT:  Everybody can have a seat except the
11:15:21    6  witness.
11:15:21    7    (Witness sworn.)
11:15:31    8        THE COURT:  Mr. Loevy, you can go ahead.
11:15:31    9                        - - -
11:15:31   10        DERRICK KEES, DIRECT EXAMINATION
11:15:31   11  BY MR. LOEVY:
11:15:37   12  Q.  If you could state your name for the record.
11:15:38   13  A.  Derrick Kees.
11:15:39   14  Q.  You are presently in prison?
11:15:41   15  A.  That's correct.
11:15:42   16  Q.  A former member of the El Rukn organization?
11:15:43   17  A.  That's correct.
11:15:44   18  Q.  And when did you stop being a member of the El Rukn
11:15:47   19  organization?
11:15:47   20  A.  In about '86.
11:15:48   21  Q.  All right.  Back in the '70s and '80s, your role in the
11:15:59   22  organization was an enforcer, correct?
11:15:59   23  A.  That's correct.
11:16:00   24  Q.  You were a hit man essentially, right?
11:16:01   25  A.  I was not a hit man.

| | | |
|---|---|---|
| 11:16:02 | 1 | Q.  You did assassinate people? |
| 11:16:04 | 2 | A.  I killed people. |
| 11:16:05 | 3 | Q.  All right.  How many people did you kill? |
| 11:16:06 | 4 | A.  I wasn't keeping count. |
| 11:16:11 | 5 | Q.  You weren't keeping count you said? |
| 11:16:13 | 6 | A.  Right. |
| 11:16:13 | 7 | Q.  Can you give us a ballpark? |
| 11:16:15 | 8 | A.  No. |
| 11:16:15 | 9 | Q.  More than 10? |
| 11:16:16 | 10 | A.  Whatever number you have. |
| 11:16:21 | 11 | Q.  I'm asking you.  More than 10, less than ten? |
| 11:16:24 | 12 | A.  Whatever number you have. |
| 11:16:25 | 13 | Q.  How many did you plead guilty to, sir? |
| 11:16:27 | 14 | A.  About four or five. |
| 11:16:47 | 15 | Q.  Six sound right? |
| 11:16:48 | 16 | A.  You may be right. |
| 11:16:52 | 17 | Q.  All right.  Sir, you got a sentence in exchange for those |
| 11:16:57 | 18 | murders, right?  How many years were you sentenced to? |
| 11:17:00 | 19 | A.  99. |
| 11:17:01 | 20 | Q.  Isn't it true, sir, that you were approached about |
| 11:17:05 | 21 | testifying in this trial in exchange -- in this trial in |
| 11:17:09 | 22 | exchange for a reduction in sentence? |
| 11:17:13 | 23 | A.  Come again? |
| 11:17:15 | 24 | Q.  Isn't it true, sir, that prior to this trial before Judge |
| 11:17:19 | 25 | Kennelly, you were approached about the possibility of you |

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 71 of 125 PageID #:31270
***REALTIME UNEDITED TRANSCRIPT ONLY***

70

| | | |
|---|---|---|
| 11:17:22 | 1 | testifying for the defense and you would get a break on your |
| 11:17:25 | 2 | sentence, correct? |
| 11:17:26 | 3 | A.  That's correct. |
| 11:17:29 | 4 | Q.  When was the deal struck? |
| 11:17:31 | 5 | A.  A couple of weeks ago. |
| 11:17:39 | 6 | Q.  Was it struck before the trial started? |
| 11:17:41 | 7 | A.  I don't know when the trial started. |
| 11:17:45 | 8 | Q.  The trial started November the 14th, two weeks ago |
| 11:17:50 | 9 | Monday,.  Was a deal made with you to cut your time in |
| 11:17:54 | 10 | exchange for your testimony at this civil trial before we |
| 11:17:57 | 11 | started? |
| 11:17:57 | 12 | A.  Yeah I asked for a deal, I asked for a Rule 35. |
| 11:18:03 | 13 | Q.  In fact, the motion to cut your time was granted on |
| 11:18:06 | 14 | Monday, wasn't it? |
| 11:18:06 | 15 | A.  Yeah. |
| 11:18:07 | 16 | Q.  And that cut in time, when are you going to get out of |
| 11:18:11 | 17 | prison, sir? |
| 11:18:12 | 18 | A.  About November 21. |
| 11:18:16 | 19 | Q.  Of? |
| 11:18:17 | 20 | THE COURT:  November of the year 2021? |
| 11:18:20 | 21 | THE WITNESS:  2021. |
| 11:18:26 | 22 | BY MR. LOEVY: |
| 11:18:26 | 23 | Q.  That's not 99 years? |
| 11:18:28 | 24 | A.  No. |
| 11:18:28 | 25 | Q.  They cut 12 years off your sentence in he can change for |

Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 72 of 125 PageID #:31271
11/30/16 AM       ***REALTIME UNEDITED TRANSCRIPT ONLY***

71

| 11:18:31 | 1 | your testimony in this case, correct? |
| 11:18:33 | 2 | A.  Yeah. |
| 11:18:34 | 3 | Q.  Isn't it true, sir, the deal wasn't struck until last |
| 11:18:40 | 4 | Thursday, the day O'Callaghan testified? |
| 11:18:43 | 5 | MR. KULWIN:  Judge, I am going to object. |
| 11:18:45 | 6 | THE COURT:  Sustained. |
| 11:18:45 | 7 | BY MR. LOEVY: |
| 11:18:45 | 8 | Q.  Isn't it true the deal was not struck until last Thursday? |
| 11:18:48 | 9 | A.  I thought we had a deal a couple of weeks ago. |
| 11:18:55 | 10 | Q.  Why did you have that understanding? |
| 11:18:57 | 11 | A.  I suppose -- |
| 11:19:01 | 12 | THE COURT:  Can I just see the lawyers at sidebar for |
| 11:19:03 | 13 | a second. |
| 11:19:06 | 14 | (The following proceedings were had at sidebar outside the |
| 11:19:09 | 15 | hearing of the jury:) |
| 11:19:09 | 16 | THE COURT:  This seems to me to be an appropriate |
| 11:19:13 | 17 | point for me to tell you, Mr. Loevy, that you cannot do your |
| 11:19:17 | 18 | normal thing on this witness.  You got to be extremely careful |
| 11:19:21 | 19 | when you start something somebody like this an open-ended |
| 11:19:25 | 20 | question.  I'm warning you. |
| 11:19:27 | 21 | MR. LOEVY:  May I speak? |
| 11:19:29 | 22 | THE COURT:  Do you understand my warning? |
| 11:19:31 | 23 | MR. LOEVY:  Yes. |
| 11:19:31 | 24 | THE COURT:  Then go ahead. |
| 11:19:32 | 25 | MR. LOEVY:  A hundred percent I understand.  What I'm |

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 73 of 125 PageID #:31272
***REALTIME UNEDITED TRANSCRIPT ONLY***

72

11:19:34　1　saying is it was told to us that the deal was struck by his

11:19:38　2　attorney, and so he's now saying it was struck before trial.

11:19:42　3　　　　　THE COURT:  But you got his answer.  You got his

11:19:45　4　answer.

11:19:45　5　　　　　MR. LOEVY:  I want to probe it.  There was a deal

11:19:48　6　struck before trial and nobody told us.  That's a big deal.  I

11:19:52　7　agree with you I'm asking a question that I have no idea what

11:19:55　8　the answer is but this is a big deal.  There was a deal struck

11:19:59　9　before trial and nobody told us.

11:20:00　10　　　　　THE COURT:  When did the motion get filed?

11:20:02　11　　　　　MR. LOEVY:  The motion got filed Thursday.

11:20:04　12　　　　　THE COURT:  Those motions don't appear out of thin

11:20:08　13　air.  It's five or six pages.  Any reasonable lawyer looking

11:20:13　14　at that motion would understand that that thing didn't appear

11:20:16　15　suddenly on that day and there was some prior discussion I'm

11:20:22　16　warning you.  I'm warning you.

11:20:24　17　　　　　MR. KULWIN:  He has an attorney-client privilege and

11:20:26　18　if he heard all of this from his attorney --

11:20:29　19　　　　　THE COURT:  I don't necessarily agree with that.  Let

11:20:32　20　me explain why.  So it was contemplated that the deal was

11:20:36　21　going to be presented to a judge, so when he learned it

11:20:38　22　happened, whether he learned it from a lawyer or somebody else

11:20:42　23　I don't think it's a privileged.  I'm just saying I think

11:20:46　24　you're really skating on thin ice here.  I'm just telling you.

11:20:49　25　　　　　MR. LOEVY:  You're right.

11/30/16 AM     Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 74 of 125 PageID #:31273
***REALTIME UNEDITED TRANSCRIPT ONLY***

73

| | | |
|---|---|---|
| 11:20:50 | 1 | THE COURT:  I am not going to micro manage your |
| 11:20:53 | 2 | questions, but I'm telling you that you're skating on thin ice |
| 11:20:58 | 3 | when you start asking this guy open ended questions like that. |
| 11:21:01 | 4 | MR. LOEVY:  That's the point. |
| 11:21:02 | 5 | THE COURT:  You've got his answer.  You may not like |
| 11:21:05 | 6 | his answer, but it's not -- you are not going to get anything |
| 11:21:08 | 7 | different out of him. |
| 11:21:09 | 8 | MR. LOEVY:  Understood. |
| 11:21:10 | 9 | THE COURT:  That's all I'm going to say. |
| 11:21:14 | 10 | (The following proceedings were had in open court in the |
| 11:21:14 | 11 | presence and hearing of the jury:) |
| 11:21:14 | 12 | THE COURT:  All right.  You can proceed. |
| 11:21:16 | 13 | BY MR. LOEVY: |
| 11:21:17 | 14 | Q.  They did cut 12 years off your sentence, correct? |
| 11:21:20 | 15 | A.  Yeah. |
| 11:21:21 | 16 | Q.  And you have an understanding that that 12-year cut is in |
| 11:21:26 | 17 | exchange for testimony that you're going to give in this |
| 11:21:30 | 18 | courtroom? |
| 11:21:31 | 19 | A.  From my perspective, it's for what I've already done. |
| 11:21:41 | 20 | Q.  For the murders you've done? |
| 11:21:43 | 21 | A.  No, testimony. |
| 11:21:45 | 22 | Q.  All right.  Let's talk -- let's back up.  In the late '80s |
| 11:21:49 | 23 | after you committed some of these murders, you got caught by |
| 11:21:51 | 24 | the police, right? |
| 11:21:52 | 25 | A.  Caught, no, I didn't get caught. |

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 75 of 125 PageID #:31274
***REALTIME UNEDITED TRANSCRIPT ONLY***

74

| | | |
|---|---|---|
| 11:21:56 | 1 | Q.  When did you get caught? |
| 11:22:00 | 2 | THE COURT:  Why don't you just use the word arrested. |
| 11:22:02 | 3 | BY MR. LOEVY: |
| 11:22:03 | 4 | Q.  When did you get arrested, sir? |
| 11:22:07 | 5 | A.  I was arrested in '88, 87. |
| 11:22:08 | 6 | Q.  All right.  At that point, you knew you were in serious |
| 11:22:11 | 7 | legal trouble, correct? |
| 11:22:12 | 8 | A.  I knew I had some problems. |
| 11:22:16 | 9 | Q.  You were looking at life in prison? |
| 11:22:18 | 10 | A.  Exactly what case are you talking about being arrested on? |
| 11:22:26 | 11 | Q.  You told me you committed more murders than you can |
| 11:22:28 | 12 | remember, right? |
| 11:22:30 | 13 | A.  I didn't say that. |
| 11:22:33 | 14 | Q.  All right.  When you got arrested, you knew you had a very |
| 11:22:36 | 15 | real possibility of spending the rest of your life in prison, |
| 11:22:41 | 16 | correct? |
| 11:22:41 | 17 | A.  I knew I had some legal problems, how about that. |
| 11:22:43 | 18 | Q.  All right.  We can agree on that. |
| 11:22:45 | 19 | You also knew that they were talking about the death |
| 11:22:47 | 20 | penalty, correct? |
| 11:22:47 | 21 | A.  No. |
| 11:22:52 | 22 | Q.  This is your testimony -- do you remember giving this |
| 11:22:54 | 23 | statement on November the 17th, 1994, in the matter of U.S. v. |
| 11:22:59 | 24 | Kees at page 167. |
| 11:23:02 | 25 | "QUESTION:  Well, weren't you aware, sir, that the |

***REALTIME UNEDITED TRANSCRIPT ONLY***

11/30/16 AM   Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 76 of 125 PageID #:31275
***REALTIME UNEDITED TRANSCRIPT ONLY***

75

| | | |
|---|---|---|
| 11:23:04 | 1 | assistant state's attorneys initially wanted the death penalty |
| 11:23:08 | 2 | for you? |
| 11:23:08 | 3 | "ANSWER:  Yeah, I was made aware of that." |
| 11:23:11 | 4 | Did you give that testimony, sir? |
| 11:23:17 | 5 | The first question is did you give that testimony? |
| 11:23:20 | 6 | A.  I don't want you to minutes my words at all. |
| 11:23:24 | 7 | MR. LOEVY:  Your Honor. |
| 11:23:25 | 8 | THE COURT:  The question is did you give the |
| 11:23:27 | 9 | testimony that he just quoted to you there? |
| 11:23:31 | 10 | THE WITNESS:  He is talking about something in '94. |
| 11:23:33 | 11 | THE COURT:  I understand.  He is asking whether you |
| 11:23:35 | 12 | gave that testimony -- the question is whether you gave that |
| 11:23:38 | 13 | testimony in 1994, that is the question.  That's the question |
| 11:23:41 | 14 | I want you to answer. |
| 11:23:42 | 15 | THE WITNESS:  If that's what he has before him, then, |
| 11:23:45 | 16 | yes, I testified to that. |
| 11:23:46 | 17 | BY MR. LOEVY: |
| 11:23:47 | 18 | Q.  When you got arrested, they took you to Joliet? |
| 11:23:49 | 19 | A.  Come again? |
| 11:23:51 | 20 | Q.  Where did they put you after they arrested you? |
| 11:23:53 | 21 | A.  At the county jail. |
| 11:23:57 | 22 | Q.  At some point, were you transferred to Joliet? |
| 11:24:01 | 23 | A.  Yeah. |
| 11:24:01 | 24 | Q.  What facility over there? |
| 11:24:02 | 25 | A.  In Joliet. |

| 11:24:04 | 1 | Q. Okay. What's it called? |
| 11:24:06 | 2 | A. It's prison. |
| 11:24:07 | 3 | Q. What's that? |
| 11:24:07 | 4 | A. Illinois state prison. |
| 11:24:09 | 5 | Q. All right. Were you under a sentence when you got to |
| 11:24:12 | 6 | Joliet? |
| 11:24:13 | 7 | A. Yeah. |
| 11:24:13 | 8 | Q. What sentence was that? |
| 11:24:14 | 9 | A. 5 five years. |
| 11:24:15 | 10 | Q. On the State charges? |
| 11:24:17 | 11 | A. Yeah. |
| 11:24:17 | 12 | Q. And at that point, sometime around March 1989, you got an |
| 11:24:22 | 13 | unexpected visit from Detective O'Callaghan, correct? |
| 11:24:24 | 14 | A. Yeah. |
| 11:24:25 | 15 | Q. And Sergeant Murphy as well, right? |
| 11:24:28 | 16 | A. You got him with him. |
| 11:24:36 | 17 | Q. You spoke to O'Callaghan and Murphy for about three hours, |
| 11:24:39 | 18 | right? |
| 11:24:39 | 19 | A. I mean, I wasn't looking at the clock, but, yeah, we |
| 11:24:42 | 20 | talked for a while. |
| 11:24:44 | 21 | Q. And they wanted you to help them make their cases, right? |
| 11:24:47 | 22 | A. Yeah, yes, they did. |
| 11:24:48 | 23 | Q. And you asked them what's in it for me, right? |
| 11:24:50 | 24 | A. Absolutely. |
| 11:24:51 | 25 | Q. And what did they tell you? |

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 78 of 125 PageID #:31277
***REALTIME UNEDITED TRANSCRIPT ONLY***

77

| | | |
|---|---|---|
| 11:24:53 | 1 | A. They talked to the U.S. Attorney's Office. |
| 11:24:59 | 2 | Q. And you would get a deal? |
| 11:25:01 | 3 | A. That was my idea of it. |
| 11:25:04 | 4 | Q. Because all things being equal, you didn't want to testify |
| 11:25:08 | 5 | against other people, right? |
| 11:25:09 | 6 | A. I had no reason to. |
| 11:25:14 | 7 | Q. Right. So you decided to save yourself to do that, right? |
| 11:25:17 | 8 | A. Absolutely. |
| 11:25:19 | 9 | Q. That's what I'm asking. |
| 11:25:21 | 10 | So in 1989, you reached an agreement that you would |
| 11:25:26 | 11 | point your finger at others in exchange for less time for |
| 11:25:29 | 12 | yourself, right? |
| 11:25:30 | 13 | A. Come again? |
| 11:25:32 | 14 | Q. When they were asking you to cooperate, they were asking |
| 11:25:36 | 15 | you to cooperate about a lot of cases, correct? |
| 11:25:38 | 16 | A. Yeah. |
| 11:25:40 | 17 | Q. A lot of cases against a lot of people, right? |
| 11:25:42 | 18 | A. Yeah. |
| 11:25:42 | 19 | Q. And you understood that if they were going to give you a |
| 11:25:45 | 20 | deal, you were going to have to give them something very |
| 11:25:47 | 21 | useful and be very helpful, correct? |
| 11:25:49 | 22 | A. Absolutely. |
| 11:25:50 | 23 | Q. All right. And your plea agreement that you signed |
| 11:25:55 | 24 | required you to testify about all the various cases, correct, |
| 11:25:59 | 25 | that you talked about? |

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 79 of 125 PageID #:31278
***REALTIME UNEDITED TRANSCRIPT ONLY***

78

| | | |
|---|---|---|
| 11:26:01 | 1 | A.  Yeah. |
| 11:26:02 | 2 | Q.  Now, at some point after you agreed with Mr. O'Callaghan |
| 11:26:09 | 3 | and Mr. Murphy to be a cooperator, they transferred you to |
| 11:26:14 | 4 | Chicago, correct? |
| 11:26:15 | 5 | A.  Yeah. |
| 11:26:17 | 6 | Q.  And O'Callaghan did most of the interviewing during this |
| 11:26:20 | 7 | time period, correct? |
| 11:26:21 | 8 | A.  He did the initial interviewing. |
| 11:26:25 | 9 | Q.  He did most of the interviewing, didn't he? |
| 11:26:27 | 10 | A.  I said he did the initial interviewing. |
| 11:26:30 | 11 | Q.  All right.  Was he doing most of the interviewing during |
| 11:26:35 | 12 | the initial interview? |
| 11:26:37 | 13 | A.  Yeah. |
| 11:26:39 | 14 | Q.  Who was doing most of the talking? |
| 11:26:41 | 15 | A.  Okay.  Yeah, okay. |
| 11:26:44 | 16 | Q.  You were asked about certain incidents before you brought |
| 11:26:48 | 17 | those incidents up; is that fair? |
| 11:26:59 | 18 | A. |
| 11:26:59 | 19 | MR. NOLAND:  Objection. |
| 11:27:00 | 20 | THE COURT:  He said he can't remember. |
| 11:27:02 | 21 | THE WITNESS:  I don't remember the order of how he |
| 11:27:04 | 22 | asked all the questions, but. |
| 11:27:06 | 23 | BY MR. LOEVY: |
| 11:27:06 | 24 | Q.  Isn't it true he was bringing up certain murders before |
| 11:27:09 | 25 | you were bringing up certain murders and asking if you knew |

11/30/16 AM    Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 80 of 125 PageID #:31279
***REALTIME UNEDITED TRANSCRIPT ONLY***

79

| | | |
|---|---|---|
| 11:27:12 | 1 | about that? |
| 11:27:12 | 2 | MR. NOLAND:  Judge, objection. |
| 11:27:13 | 3 | THE COURT:  The objection is sustained. |
| 11:27:16 | 4 | BY MR. LOEVY: |
| 11:27:16 | 5 | Q.  Isn't it true that O'Callaghan brought out a box of files |
| 11:27:19 | 6 | and he was asking you do you know anything about this, do you |
| 11:27:22 | 7 | know anything about that one? |
| 11:27:23 | 8 | MR. NOLAND:  Objection, Judge, if I could be heard. |
| 11:27:25 | 9 | THE COURT:  Okay. |
| 11:27:28 | 10 | (The following proceedings were had at sidebar outside the |
| 11:27:41 | 11 | hearing of the jury:) |
| 11:27:41 | 12 | MR. NOLAND:  I apologize for having to ask for the |
| 11:27:43 | 13 | sidebar.  I'm worried about the Ronnie bell incident. |
| 11:27:47 | 14 | THE COURT:  Remind me. |
| 11:27:48 | 15 | MR. NOLAND:  The Houston.  That O'Callaghan and |
| 11:27:50 | 16 | Murphy went down there to talk to him and they specifically |
| 11:27:53 | 17 | were going down there to exonerate those two guys.  That was |
| 11:27:58 | 18 | the case they initially were talking to him about.  I think |
| 11:28:01 | 19 | the record would support that they did bring up that case and |
| 11:28:03 | 20 | he did provide the consistent information which was |
| 11:28:06 | 21 | exonerating those two El Rukns in prison, saying that other |
| 11:28:10 | 22 | guys did it, that's my concern and I'm concerned that it would |
| 11:28:12 | 23 | open the door to what he might say and that something would |
| 11:28:15 | 24 | have to come in after. |
| 11:28:17 | 25 | MR. LOEVY:  Our theory of the case is not that they |

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 81 of 125 PageID #:31280
***REALTIME UNEDITED TRANSCRIPT ONLY***

80

| | | |
|---|---|---|
| 11:28:19 | 1 | said tell us about your murders and he said, oh, |
| 11:28:23 | 2 | Smith/Hickman, that they suggested cases to him and as you'll |
| 11:28:25 | 3 | see he puts himself in them.  It is relevant that he didn't |
| 11:28:28 | 4 | bring up Smith/Hickman.  What's relevant is the question I |
| 11:28:31 | 5 | asked had nothing to do about Bell.  It's true he pulled out a |
| 11:28:34 | 6 | box of files and started asking you about different cases.  I |
| 11:28:37 | 7 | am not going to ask specifics, so I can take care of that |
| 11:28:37 | 8 | concern.  I am just going to say, isn't it true they were |
| 11:28:42 | 9 | pulling out files, asking you about different cases and |
| 11:28:43 | 10 | whether you knew anything. |
| 11:28:44 | 11 | THE COURT:  Okay. |
| 11:28:44 | 12 | MR. LOEVY:  That's the question. |
| 11:28:46 | 13 | THE COURT:  I don't see that as opening the door if |
| 11:28:48 | 14 | that's what you're going to do. |
| 11:28:50 | 15 | MR. KULWIN:  I will say if all he says is they pulled |
| 11:28:53 | 16 | out a box, they asked you about this case, fine, I'm going to |
| 11:28:57 | 17 | say, they asked you about a murder.  On my examination, I'll |
| 11:29:01 | 18 | say, okay, well, your Honor asked some questions about the box |
| 11:29:04 | 19 | and they pulled out a file, they asked you did you know |
| 11:29:08 | 20 | anything about this? |
| 11:29:09 | 21 | MR. LOEVY:  That's what I am going to ask. |
| 11:29:11 | 22 | THE COURT:  That's what he is going to ask. |
| 11:29:16 | 23 | MR. KULWIN:  Okay. |
| 11:29:16 | 24 | (The following proceedings were had in open court in the |
| 11:29:17 | 25 | presence and hearing of the jury:) |

| | | |
|---|---|---|
| 11:29:17 | 1 | THE COURT: Okay. You can proceed, Mr. Loevy. |
| 11:29:20 | 2 | BY MR. LOEVY: |
| 11:29:20 | 3 | Q. Did the question get asked? |
| 11:29:25 | 4 | THE COURT: Yeah, the question was did Mr. |
| 11:29:28 | 5 | O'Callaghan bring out a box of files and he was showing them |
| 11:29:30 | 6 | to you and asking you if you knew anything about particular |
| 11:29:33 | 7 | files. Do you want to rephrase it or is that good enough? |
| 11:29:35 | 8 | BY MR. LOEVY: |
| 11:29:36 | 9 | Q. Isn't it true what happened was he brought out this box |
| 11:29:39 | 10 | that had files in it, he was asking you do you know anything |
| 11:29:42 | 11 | about this one, do you know anything about that one? |
| 11:29:44 | 12 | A. Yeah. |
| 11:29:45 | 13 | Q. And some of them you knew about? |
| 11:29:46 | 14 | A. You are right. |
| 11:29:47 | 15 | Q. And some of them you didn't, right? |
| 11:29:49 | 16 | A. Right. |
| 11:29:49 | 17 | Q. And this time period is March '89, correct? |
| 11:29:52 | 18 | A. I thought it might have been like -- yeah, yeah, about |
| 11:30:07 | 19 | March '89, somewhere around there, yeah. |
| 11:30:09 | 20 | Q. All right. Once you became a cooperating witness, two of |
| 11:30:14 | 21 | the people they wanted you to cooperate against were Earl |
| 11:30:17 | 22 | Hawkins and Nate Fields, correct? |
| 11:30:19 | 23 | A. Yeah. |
| 11:30:21 | 24 | Q. And in fact, at various proceedings you did give testimony |
| 11:30:24 | 25 | involving Hawkins, correct? |

11/30/16 AM          ***REALTIME UNEDITED TRANSCRIPT ONLY***

82

| | | |
|---|---|---|
| 11:30:25 | 1 | A. Yep. |
| 11:30:26 | 2 | Q. And he testified against you, didn't he? |
| 11:30:28 | 3 | A. Yes, he did. |
| 11:30:28 | 4 | Q. So you had no problem pointing your finger at Earl |
| 11:30:31 | 5 | Hawkins, did you? |
| 11:30:31 | 6 | A. If you are talking about a tit for tat, you know, that's |
| 11:30:40 | 7 | not our issue. |
| 11:30:41 | 8 | Q. Fair enough. |
| 11:30:42 | 9 | How many times did you meet with Mr. O'Callaghan |
| 11:30:45 | 10 | between March 89 and May of '89? |
| 11:30:49 | 11 | A. Between March and May? |
| 11:30:53 | 12 | Q. Yeah, first few months you were cooperating. |
| 11:30:56 | 13 | A. At the initial one, end of May, a couple of times. Three, |
| 11:31:09 | 14 | four times, I guess. |
| 11:31:10 | 15 | Q. Three or four times. Were you talking about various |
| 11:31:13 | 16 | different cases? |
| 11:31:14 | 17 | A. Yeah. |
| 11:31:14 | 18 | Q. You were telling them what you knew or didn't know? |
| 11:31:16 | 19 | A. Yeah. |
| 11:31:16 | 20 | Q. Now, the first time you ever talked about Smith/Hickman, |
| 11:31:19 | 21 | the murder that we are here to talk about today was May 4th, |
| 11:31:22 | 22 | 1989, correct? |
| 11:31:24 | 23 | A. If you have that, you know, document, then, yeah. |
| 11:31:28 | 24 | Q. I am going to -- |
| 11:31:29 | 25 | MR. LOEVY: May I approach, your Honor? |

***REALTIME UNEDITED TRANSCRIPT ONLY***

Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 84 of 125 PageID #:31283

| | | |
|---|---|---|
| 11:31:30 | 1 | THE COURT:  Sure. |
| 11:31:31 | 2 | BY MR. LOEVY: |
| 11:31:31 | 3 | Q.  Showing you some notes dated May 4, does that refresh your |
| 11:31:37 | 4 | recollection? |
| 11:31:37 | 5 | MR. KULWIN:  Could we have an exhibit number? |
| 11:31:40 | 6 | THE WITNESS:  It says May 4th, 89. |
| 11:31:43 | 7 | MR. LOEVY:  The exhibit number at the bottom. |
| 11:31:44 | 8 | THE WITNESS:  172. |
| 11:31:46 | 9 | MR. LOEVY:  172. |
| 11:31:48 | 10 | MR. KULWIN:  Thank you. |
| 11:31:48 | 11 | BY MR. LOEVY: |
| 11:31:49 | 12 | Q.  Does that refresh your recollection that the first time |
| 11:31:50 | 13 | Smith/Hickman came up was May 4th? |
| 11:31:52 | 14 | A.  Yeah, that refreshed my memory. |
| 11:31:56 | 15 | Q.  And on May 4th, that's when they brought you a document to |
| 11:32:00 | 16 | sign, correct? |
| 11:32:01 | 17 | A.  You got that document. |
| 11:32:08 | 18 | Q.  First I'm asking your memory? |
| 11:32:10 | 19 | A.  Do you have a document?  I don't know the date. |
| 11:32:12 | 20 | Q.  What was the document they asked you to sign, sir? |
| 11:32:16 | 21 | MR. NOLAND:  Objection, foundation. |
| 11:32:18 | 22 | THE COURT:  Overruled.  I think he's basically saying |
| 11:32:22 | 23 | he doesn't remember dates.  That's what he just said a second |
| 11:32:24 | 24 | ago. |
| 11:32:25 | 25 | BY MR. LOEVY: |

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 85 of 125 PageID #:31284
***REALTIME UNEDITED TRANSCRIPT ONLY***

84

| | | |
|---|---|---|
| 11:32:25 | 1 | Q.  Did you sign a cooperation agreement? |
| 11:32:26 | 2 | A.  In May 89? |
| 11:32:34 | 3 | Q.  Yes. |
| 11:32:35 | 4 | A.  I can't quite remember. |
| 11:32:40 | 5 | Q.  All right.  Do you remember giving this statement on |
| 11:32:42 | 6 | November the 16th, 1994, at page 77 in U.S. v. Kees. |
| 11:32:48 | 7 | "QUESTION: |
| 11:32:48 | 8 | MR. KULWIN:  Hold on a second, Judge.  I have to find |
| 11:32:50 | 9 | that transcript. |
| 11:32:54 | 10 | THE COURT:  What's the date and page, Mr. Loevy, |
| 11:32:56 | 11 | again? |
| 11:32:56 | 12 | MR. LOEVY:  The date is November the 16th, 1994, |
| 11:32:59 | 13 | United States v. Kees, page 77. |
| 11:33:01 | 14 | THE COURT:  Okay.  Go ahead. |
| 11:33:01 | 15 | BY MR. LOEVY: |
| 11:33:03 | 16 | Q.  "QUESTION:  Did you discuss at that time what you would |
| 11:33:05 | 17 | be receiving for the information you were giving? |
| 11:33:07 | 18 | "ANSWER:  At that time, no, not at that time.  Let me |
| 11:33:11 | 19 | ask you, Derrick, I will market it as Defendant's Exhibit 2, |
| 11:33:14 | 20 | whether or not you recognize this document? |
| 11:33:15 | 21 | "ANSWER:  Yes. |
| 11:33:16 | 22 | "QUESTION:  Is that your signature in the lower |
| 11:33:18 | 23 | right-hand corner? |
| 11:33:19 | 24 | "ANSWER:  Yes, it is. |
| 11:33:20 | 25 | "QUESTION:  What is the date on there? |

| | | |
|---|---|---|
| 11:33:22 | 1 | "ANSWER:  5/4/89. |
| 11:33:25 | 2 | "QUESTION:  Was this the date that Murphy and |
| 11:33:27 | 3 | O'Callaghan were visiting you in jail? |
| 11:33:30 | 4 | "ANSWER:  Yes |
| 11:33:31 | 5 | "QUESTION:  What is the document that your signature |
| 11:33:33 | 6 | appears on the lower right-hand corner on? |
| 11:33:36 | 7 | "ANSWER:  That's a waiver. |
| 11:33:37 | 8 | "QUESTION:  Did you sign this document? |
| 11:33:39 | 9 | "ANSWER:  Yes, I did." |
| 11:33:41 | 10 | Did you give that statement |
| 11:33:42 | 11 | MR. KULWIN:  It's not a cooperating agreement.  It's |
| 11:33:45 | 12 | a waiver. |
| 11:33:45 | 13 | THE COURT:  Sustained. |
| 11:33:46 | 14 | BY MR. LOEVY: |
| 11:33:47 | 15 | Q.  What was it you signed with them on May 4th, 1989? |
| 11:33:50 | 16 | A.  Obviously just the document that you have in front of you. |
| 11:33:54 | 17 | Q.  What is a waiver?  Either you don't remember it sounds |
| 11:33:57 | 18 | like what it was? |
| 11:33:58 | 19 | MR. KULWIN:  Objection, Judge, multiple questions. |
| 11:34:00 | 20 | THE COURT:  Sustained. |
| 11:34:01 | 21 | BY MR. LOEVY: |
| 11:34:02 | 22 | Q.  All right.  You did come to cooperate on the Smith/Hickman |
| 11:34:05 | 23 | case, correct? |
| 11:34:14 | 24 | A.  I cooperated in federal court. |
| 11:34:15 | 25 | Q.  On a number of different scenarios, correct? |

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 87 of 125 PageID #:31286
***REALTIME UNEDITED TRANSCRIPT ONLY***

86

| | | |
|---|---|---|
| 11:34:18 | 1 | A.  Right. |
| 11:34:19 | 2 | Q.  And once you decided to become a cooperator, they isn't |
| 11:34:22 | 3 | you over to the MCC, correct? |
| 11:34:23 | 4 | A.  Say it again. |
| 11:34:26 | 5 | Q.  There is a federal prison down the street from this |
| 11:34:28 | 6 | building, the MCC? |
| 11:34:30 | 7 | A.  Yeah. |
| 11:34:30 | 8 | Q.  That's where you got September, right? |
| 11:34:32 | 9 | A.  That's where I was housed for quite some time. |
| 11:34:35 | 10 | Q.  A couple years, right?  You were on the sixth floor? |
| 11:34:38 | 11 | A.  Yeah. |
| 11:34:39 | 12 | Q.  With you, Earl Hawkins, he was there too, right? |
| 11:34:44 | 13 | MR. NOLAND:  Judge, could we have a foundation, time |
| 11:34:46 | 14 | frame? |
| 11:34:47 | 15 | THE COURT:  Set the time frame as best you can. |
| 11:34:53 | 16 | BY MR. LOEVY: |
| 11:34:53 | 17 | Q.  This is 87 to about 89, would you agree, sir? |
| 11:34:57 | 18 | MR. KULWIN:  Judge, I am going to object on that time |
| 11:34:59 | 19 | frame.  He has to be more specific given the housing. |
| 11:35:02 | 20 | BY MR. LOEVY: |
| 11:35:02 | 21 | Q.  You tell us, sir? |
| 11:35:03 | 22 | THE COURT:  Do you know what period of time you were |
| 11:35:05 | 23 | at the MCC? |
| 11:35:06 | 24 | THE WITNESS:  I went into the MCC in '89. |
| 11:35:08 | 25 | BY MR. LOEVY: |

***REALTIME UNEDITED TRANSCRIPT ONLY***

| | | |
|---|---|---|
| 11:35:09 | 1 | Q.  All right.  How long did you stay there? |
| 11:35:11 | 2 | A.  Well, I was there until about 90 and then I got |
| 11:35:16 | 3 | transferred. |
| 11:35:16 | 4 | Q.  All right.  But you started cooperating as far back as 86, |
| 11:35:19 | 5 | right? |
| 11:35:19 | 6 | A.  No. |
| 11:35:23 | 7 | Q.  On May 4th? |
| 11:35:25 | 8 | THE COURT:  That would be 89. |
| 11:35:27 | 9 | MR. LOEVY:  89, got it. |
| 11:35:29 | 10 | THE COURT:  That's what you elicited. |
| 11:35:30 | 11 | MR. LOEVY:  I misunderstood. |
| 11:35:32 | 12 | BY MR. LOEVY: |
| 11:35:33 | 13 | Q.  In '89 to 90, you are in the MCC with Earl Hawkins, early |
| 11:35:40 | 14 | Sumner and Jackie Clay? |
| 11:35:41 | 15 | A.  Yeah. |
| 11:35:42 | 16 | Q.  And you guys were all allowed to exchange information? |
| 11:35:47 | 17 | A.  There was no exchange of information. |
| 11:35:49 | 18 | MR. NOLAND:  Objection. |
| 11:35:49 | 19 | THE COURT:  Overruled. |
| 11:35:50 | 20 | BY MR. LOEVY: |
| 11:35:51 | 21 | Q.  You had the opportunity to exchange information with them, |
| 11:35:53 | 22 | right? |
| 11:35:53 | 23 | A.  There was no exchange of information. |
| 11:35:54 | 24 | Q.  For that -- I understand that you say you didn't exchange |
| 11:35:57 | 25 | information. |

| | | |
|---|---|---|
| 11:35:58 | 1 | A.  Let's be clear. |
| 11:35:59 | 2 | Q.  What's that? |
| 11:35:59 | 3 | A.  Let's be clear.  There was no exchange of information. |
| 11:36:02 | 4 | Q.  I'm asking you a different question. |
| 11:36:04 | 5 | There was an opportunity if you were so inclined to |
| 11:36:08 | 6 | exchange information with Earl, Jackie, and Eugene, the other |
| 11:36:11 | 7 | cooperators, correct? |
| 11:36:12 | 8 | A.  That sounds like a theory to me. |
| 11:36:15 | 9 | THE COURT:  Just answer the question, please. |
| 11:36:17 | 10 | THE WITNESS:  There is no other answer for it. |
| 11:36:19 | 11 | BY MR. LOEVY: |
| 11:36:19 | 12 | Q.  All right.  You and the others, they also made deals to |
| 11:36:22 | 13 | cooperate with the government, correct? |
| 11:36:24 | 14 | A.  I guess they did. |
| 11:36:30 | 15 | Q.  You understood that at the time, right? |
| 11:36:32 | 16 | A.  Yeah. |
| 11:36:33 | 17 | Q.  All of you were trying to be as helpful as possible to the |
| 11:36:36 | 18 | government to save yourself, correct? |
| 11:36:38 | 19 | MR. KULWIN:  I object as to what -- |
| 11:36:40 | 20 | THE COURT:  Sustained. |
| 11:36:40 | 21 | BY MR. LOEVY: |
| 11:36:41 | 22 | Q.  All right.  You eventually gave testimony to a grand jury, |
| 11:36:43 | 23 | correct? |
| 11:36:43 | 24 | A.  Yeah. |
| 11:36:45 | 25 | Q.  And you spent quite a bit of time preparing that |

Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 90 of 125 PageID #:31289
***REALTIME UNEDITED TRANSCRIPT ONLY***

| | | |
|---|---|---|
| 11:36:48 | 1 | testimony, right? |
| 11:36:49 | 2 | A.  Preparing for the grand jury, no. |
| 11:36:54 | 3 | Q.  Well, didn't you create a statement that listed out all of |
| 11:36:56 | 4 | your information about all your crimes? |
| 11:36:58 | 5 | A.  I didn't create a statement. |
| 11:37:00 | 6 | Q.  Okay.  Did you cooperate with a lawyer named Bill Hogan? |
| 11:37:04 | 7 | A.  I went before a grand jury and they asked me questions and |
| 11:37:07 | 8 | I answered them. |
| 11:37:07 | 9 | Q.  All right.  But before you went to the grand jury and |
| 11:37:11 | 10 | asked questions and answered them, you spent quite a bit of |
| 11:37:15 | 11 | time getting ready, right? |
| 11:37:16 | 12 | A.  No. |
| 11:37:20 | 13 | Q.  They just said, hey, let's go to the grand jury, tell us |
| 11:37:23 | 14 | what you know? |
| 11:37:24 | 15 | MR. KULWIN:  Objection, argumentative, Judge. |
| 11:37:25 | 16 | THE COURT:  Overruled. |
| 11:37:26 | 17 | BY MR. LOEVY: |
| 11:37:26 | 18 | Q.  That's your testimony? |
| 11:37:27 | 19 | A.  That is my testimony. |
| 11:37:28 | 20 | Q.  All right.  In the time when you were at the MCC for that |
| 11:37:32 | 21 | year or so, were you interacting with Bill Hogan, the U.S. |
| 11:37:35 | 22 | attorney? |
| 11:37:36 | 23 | A.  Yes. |
| 11:37:36 | 24 | Q.  Were you talking about cases? |
| 11:37:37 | 25 | A.  We were talking about cases, yeah. |

| | | |
|---|---|---|
| 11:37:40 | 1 | Q. Were you interacting with O'Callaghan and Murphy? |
| 11:37:42 | 2 | A. Yes. |
| 11:37:43 | 3 | Q. Were you talking about cases? |
| 11:37:45 | 4 | A. Yes. |
| 11:37:45 | 5 | Q. Wasn't that getting ready for your grand jury testimony? |
| 11:37:48 | 6 | A. No. |
| 11:37:49 | 7 | Q. All right. At some point during this process, you got |
| 11:37:55 | 8 | your hand on the -- your hands-on the internal prosecution |
| 11:37:59 | 9 | memos, correct? |
| 11:37:59 | 10 | A. A memo got into my file when he was picking up a bunch of |
| 11:38:08 | 11 | stuff that I had. |
| 11:38:09 | 12 | Q. All right. Before we talk about how you got it? |
| 11:38:11 | 13 | A. I'm telling you how I got it. |
| 11:38:14 | 14 | Q. I wasn't asking you how you got it. I'm asking you what |
| 11:38:17 | 15 | it is. What you got was a memo that laid out the government's |
| 11:38:20 | 16 | case, correct? |
| 11:38:21 | 17 | A. I don't remember the entire memo. |
| 11:38:23 | 18 | Q. But the gist of it was, it was an internal preindictment |
| 11:38:27 | 19 | prosecution memo? |
| 11:38:28 | 20 | A. Not -- you said I read. |
| 11:38:33 | 21 | Q. Oh, you didn't read it? |
| 11:38:35 | 22 | A. No, I didn't. |
| 11:38:37 | 23 | Q. When you sort of read it, did you see that it was an |
| 11:38:39 | 24 | internal preindictment, let me ask the question, if you would, |
| 11:38:42 | 25 | sir. When you sort of read it, did you see that it was an |

Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 92 of 125 PageID #:31291

| | | |
|---|---|---|
| 11:38:45 | 1 | internal preindictment prosecution memo laying out the |
| 11:38:47 | 2 | government's theory of the case? |
| 11:38:48 | 3 | A.  I don't remember everything that it said.  I really -- I |
| 11:38:57 | 4 | really just looked at it and said this is not mine.  That is |
| 11:39:00 | 5 | not I went down there to pick up. |
| 11:39:04 | 6 | Q.  I think we established that you sort of looked at it.  Did |
| 11:39:07 | 7 | you sort of get the sense that even though you weren't meant |
| 11:39:11 | 8 | to see it that that's what it was? |
| 11:39:12 | 9 | A.  Well, I had no idea about, you know, it being part of a |
| 11:39:18 | 10 | strategy or anything like that, no. |
| 11:39:19 | 11 | Q.  But you knew you shouldn't have it, right? |
| 11:39:21 | 12 | A.  Yeah, I knew it wasn't mine. |
| 11:39:23 | 13 | Q.  You read enough of it to know that you had no business? |
| 11:39:25 | 14 | A.  I knew it wasn't mine. |
| 11:39:26 | 15 | Q.  How did you get your hands-on the government preindictment |
| 11:39:29 | 16 | prosecution memo? |
| 11:39:30 | 17 | MR. KULWIN:  Judge, I am going to object to the |
| 11:39:32 | 18 | question. |
| 11:39:32 | 19 | THE COURT:  Rephrase the question. |
| 11:39:33 | 20 | BY MR. LOEVY: |
| 11:39:33 | 21 | Q.  How did you get your hands-on this piece of paper? |
| 11:39:37 | 22 | A.  I was picking up a bunch of stuff that I had, and it was |
| 11:39:41 | 23 | obviously on the table under something and it got collected up |
| 11:39:45 | 24 | in my stuff. |
| 11:39:46 | 25 | Q.  By accident? |

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 93 of 125 PageID #:31292
***REALTIME UNEDITED TRANSCRIPT ONLY***

92

| | | |
|---|---|---|
| 11:39:48 | 1 | A.  Yeah. |
| 11:39:48 | 2 | Q.  Who did it belong to? |
| 11:39:50 | 3 | A.  It belonged to the government. |
| 11:39:53 | 4 | Q.  All right.  You shared this document with another |
| 11:39:55 | 5 | cooperator, didn't you? |
| 11:39:56 | 6 | A.  Yeah. |
| 11:39:58 | 7 | Q.  Who did you share it with? |
| 11:39:59 | 8 | A.  I asked Eugene Hunter to look at it. |
| 11:40:02 | 9 | Q.  Why did you ask Eugene Hunter to look at it? |
| 11:40:05 | 10 | A.  Basically, the title of it, it didn't seem like it had |
| 11:40:11 | 11 | nothing to do with nothing directly to me, you know, as far as |
| 11:40:15 | 12 | what I was doing, so I let him look at it. |
| 11:40:18 | 13 | Q.  Well, even know it had nothing to do, why Eugene Hunter, |
| 11:40:22 | 14 | why did you let him look at it? |
| 11:40:25 | 15 | A.  He was available. |
| 11:40:25 | 16 | Q.  What did he tell you? |
| 11:40:26 | 17 | A.  He said it belongs to the government.  He needs to tell |
| 11:40:34 | 18 | Hogan and them. |
| 11:40:34 | 19 | Q.  Did you tell Hogan? |
| 11:40:35 | 20 | A.  No, I didn't tell him, he told him. |
| 11:40:38 | 21 | Q.  Why didn't you tell Hogan that you accidentally got your |
| 11:40:41 | 22 | hands-on the preindictment prosecution memo? |
| 11:40:43 | 23 | MR. KULWIN:  Argumentative, ask to be heard. |
| 11:40:45 | 24 | THE COURT:  You are going to have to rephrase the |
| 11:40:48 | 25 | question. |

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 94 of 125 PageID #:31293
***REALTIME UNEDITED TRANSCRIPT ONLY***

93

| | |
|---|---|
| 11:40:48 | 1 BY MR. LOEVY: |
| 11:40:49 | 2 Q. Why did you not tell Hogan that you got your hands-on this |
| 11:40:54 | 3 piece of paper? I think that was the question. |
| 11:40:56 | 4 A. Because by the time I talked to Hogan he already knew |
| 11:41:00 | 5 because Eugene Hunter had already told him. |
| 11:41:01 | 6 Q. I got you. And Earl Hawkins also got a copy of this |
| 11:41:05 | 7 document, correct? |
| 11:41:06 | 8 A. I don't know what Earl got a hold of. |
| 11:41:08 | 9 Q. This is your deposition in October of 2013 at page 176, |
| 11:41:13 | 10 lines 13 through 16. |
| 11:41:16 | 11    "QUESTION: Did you give some other inmates some of |
| 11:41:19 | 12 those files, some of those documents? |
| 11:41:21 | 13    "ANSWER: I showed it to what, Henry hair he is and |
| 11:41:26 | 14 Eugene Hunter |
| 11:41:27 | 15    "QUESTION: Did you show it to Earl Hawkins? |
| 11:41:30 | 16    "ANSWER: I think I did. I think I did." |
| 11:41:32 | 17     Did you give that answer under oath? |
| 11:41:35 | 18 A. I gave it to Eugene Hunter. He obviously shared it, so |
| 11:41:39 | 19 you know, at the time, it really didn't matter to me. |
| 11:41:42 | 20 Q. Doubling back to my question, did you give that answer? |
| 11:41:45 | 21 A. If that's what you have before you, then, yeah, that's |
| 11:41:48 | 22 what I gave. |
| 11:41:49 | 23 Q. And you did review them, didn't you? |
| 11:41:58 | 24    MR. KULWIN: Objection, Judge. Asked and answered. |
| 11:42:00 | 25    THE COURT: Sustained. |

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 95 of 125 PageID #:31294
***REALTIME UNEDITED TRANSCRIPT ONLY***

94

| 11:42:00 | 1 | BY MR. LOEVY: |
| 11:42:01 | 2 | Q. Do you remember being asked this question? |
| 11:42:02 | 3 | MR. KULWIN: I'm sorry. I didn't hear your ruling. |
| 11:42:05 | 4 | THE COURT: I sustained that objection, but now he's |
| 11:42:07 | 5 | asking another question. |
| 11:42:08 | 6 | BY MR. LOEVY: |
| 11:42:08 | 7 | Q. On October 13th, 1993, did you give the following answer |
| 11:42:11 | 8 | to the following question. |
| 11:42:13 | 9 | "QUESTION: |
| 11:42:13 | 10 | MR. KULWIN: Judge. |
| 11:42:14 | 11 | THE COURT: Page? |
| 11:42:15 | 12 | MR. LOEVY: Page 13, lines 21 through 23. |
| 11:42:18 | 13 | MR. KULWIN: He is impeaching him with something he |
| 11:42:22 | 14 | doesn't know the answer. |
| 11:42:23 | 15 | THE COURT: I disagree. The objection is overruled. |
| 11:42:25 | 16 | BY MR. LOEVY: |
| 11:42:25 | 17 | Q. Were you asked this? |
| 11:42:26 | 18 | "QUESTION: Question did you review those along with |
| 11:42:28 | 19 | some. Other cooperating witnesses? Let me back up so I am |
| 11:42:32 | 20 | very clear what we are talking about. Line 12. |
| 11:42:34 | 21 | "QUESTION: Did you share those documents with the |
| 11:42:36 | 22 | other cooperating witnesses, let them review them? |
| 11:42:38 | 23 | "ANSWER: Yes. |
| 11:42:39 | 24 | "QUESTION: And these documents that had the |
| 11:42:41 | 25 | government's theory of the case, the evidence, and the |

Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 96 of 125 PageID #:31295

| 11:42:45 | 1 | prospective charges against each defendant is that true? |
| 11:42:51 | 2 | "ANSWER:  All that. |
| 11:42:53 | 3 | "QUESTION:  All of that was in there so you reviewed |
| 11:42:55 | 4 | those along with some of the other cooperating witnesses isn't |
| 11:42:58 | 5 | that correct? |
| 11:42:59 | 6 | "ANSWER:  Yeah, we reviewed.  Yeah, absolutely." |
| 11:43:02 | 7 | Did you give that testimony under oath? |
| 11:43:03 | 8 | A.  If that's what you have before you, then that's my answer. |
| 11:43:07 | 9 | Q.  Was it true? |
| 11:43:07 | 10 | A.  Was it true?  What was true? |
| 11:43:11 | 11 | THE COURT:  The testimony he just read.  That's what |
| 11:43:13 | 12 | he's asking you about. |
| 11:43:14 | 13 | THE WITNESS:  Yeah, the testimony is true.  He's got |
| 11:43:17 | 14 | it right in front of him. |
| 11:43:18 | 15 | BY MR. LOEVY: |
| 11:43:18 | 16 | Q.  When you reviewed the memos, the papers, isn't it true |
| 11:43:21 | 17 | that what you saw was the government's theory of the evidence |
| 11:43:23 | 18 | that proved all of the predicate acts? |
| 11:43:26 | 19 | A.  That's a compound question.  Break that down. |
| 11:43:33 | 20 | Q.  When you reviewed these papers, they laid out the |
| 11:43:37 | 21 | government's case, right? |
| 11:43:38 | 22 | A.  If that's what the document was about, yeah. |
| 11:43:41 | 23 | Q.  And when you reviewed those papers, you saw facts relating |
| 11:43:44 | 24 | to cases you were going to testify in, correct? |
| 11:43:46 | 25 | A.  Yeah.  Yeah. |

11/30/16 AM

Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 97 of 125 PageID #:31296
***REALTIME UNEDITED TRANSCRIPT ONLY***

96

| | | |
|---|---|---|
| 11:43:52 | 1 | Q.  This was before you testified, correct? |
| 11:43:54 | 2 | A.  Yeah. |
| 11:43:57 | 3 | Q.  This was 1989, wasn't it? |
| 11:43:59 | 4 | A.  Yeah. |
| 11:43:59 | 5 | Q.  Isn't it true that copies were made of these documents |
| 11:44:06 | 6 | before they were retrieved? |
| 11:44:08 | 7 | A.  I don't know about that.  I don't remember making no |
| 11:44:12 | 8 | copies.  I didn't have a copier. |
| 11:44:15 | 9 | Q.  Remember this statement on July 22nd, 1993, at page 710. |
| 11:44:20 | 10 | "QUESTION:  Did you show them to anybody else? |
| 11:44:23 | 11 | "ANSWER:  I only remember showing them to hunter and he |
| 11:44:26 | 12 | got to talking about making some copies. |
| 11:44:28 | 13 | "QUESTION:  Did he make copies? |
| 11:44:30 | 14 | "ANSWER:  I think he did." |
| 11:44:32 | 15 | Did you give that testimony? |
| 11:44:33 | 16 | A.  If that's what you have before, but that don't mean I made |
| 11:44:37 | 17 | copies. |
| 11:44:38 | 18 | Q.  All right.  Isn't it true that you testified at the grand |
| 11:44:49 | 19 | jury based on a prepared statement that Hogan wrote up after |
| 11:44:54 | 20 | he interacted with you? |
| 11:44:54 | 21 | A.   The grand jury? |
| 11:45:04 | 22 | Q.  Yes. |
| 11:45:04 | 23 | A.  He asked questions, I answered questions. |
| 11:45:06 | 24 | Q.  I'm asking isn't it true he had a prepared statement that |
| 11:45:09 | 25 | you and him had worked out and then he read it to you at the |

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 98 of 125 PageID #:31297
***REALTIME UNEDITED TRANSCRIPT ONLY***

97

| | | |
|---|---|---|
| 11:45:13 | 1 | grand jury? |
| 11:45:13 | 2 | A.  This prepared statement was prepared by him. |
| 11:45:19 | 3 | Q.  Do you remember giving this testimony on November the |
| 11:45:21 | 4 | 17th, 1994, at page 176 lines 5 through 12. |
| 11:45:27 | 5 | "QUESTION:  Now you gave your grand jury testimony from |
| 11:45:29 | 6 | a prepared statement from Mr. Hogan, did you not? |
| 11:45:31 | 7 | "ANSWER:  That's correct. |
| 11:45:33 | 8 | "QUESTION:  And Mr. Hogan wrote that statement up? |
| 11:45:36 | 9 | "ANSWER:  Yes. |
| 11:45:37 | 10 | "QUESTION:  And he read that to you in a narrative form |
| 11:45:40 | 11 | during the grand jury proceedings? |
| 11:45:41 | 12 | "ANSWER:  Yes, he did." |
| 11:45:43 | 13 | Did you give that testimony? |
| 11:45:44 | 14 | A.  That's exactly what happened. |
| 11:45:45 | 15 | Q.  All right.  Does that refresh your recollection that what |
| 11:45:47 | 16 | happened was he read you a long document and you said that's |
| 11:45:50 | 17 | accurate, that's accurate, that's accurate? |
| 11:45:52 | 18 | A.  Right. |
| 11:45:52 | 19 | Q.  And what was your understanding at this point in time what |
| 11:46:02 | 20 | was in it for you forgiving that testimony? |
| 11:46:06 | 21 | THE COURT:  Are you talking about the grand jury |
| 11:46:07 | 22 | testimony? |
| 11:46:08 | 23 | MR. LOEVY:  Yes, at that time. |
| 11:46:09 | 24 | BY MR. LOEVY: |
| 11:46:09 | 25 | Q.  What was your understanding of what was going to benefit |

| | | |
|---|---|---|
| 11:46:11 | 1 | Derrick Kees? |
| 11:46:11 | 2 | A.  We hadn't come to that part. |
| 11:46:15 | 3 | Q.  What was that? |
| 11:46:15 | 4 | A.  We hadn't come to that part right there. |
| 11:46:17 | 5 | Q.  How many -- you were testifying against more than a dozen |
| 11:46:20 | 6 | of your colleagues? |
| 11:46:21 | 7 | A.  You're talking about the grand jury. |
| 11:46:23 | 8 | Q.  That's what I'm talking about? |
| 11:46:24 | 9 | A.  The grand jury is early in the process. |
| 11:46:26 | 10 | Q.  I'm asking you at the grand jury you're implicating more |
| 11:46:28 | 11 | than a dozen of your colleagues, correct? |
| 11:46:30 | 12 | A.  Yeah, I am pretty much talking about the entire El Rukn |
| 11:46:35 | 13 | government. |
| 11:46:35 | 14 | Q.  You're saying it hadn't come up what's in it for Derrick |
| 11:46:39 | 15 | Kees at that point? |
| 11:46:39 | 16 | A.  Oh, yeah, Derrick Kees definitely asked about that. |
| 11:46:41 | 17 | Q.  Okay.  What did they tell you? |
| 11:46:43 | 18 | A.  We hadn't come to that part yet. |
| 11:46:44 | 19 | Q.  Okay. |
| 11:46:46 | 20 | A.  We hadn't got to all of that part. |
| 11:46:48 | 21 | Q.  Isn't it true you were threatened that they would send you |
| 11:46:51 | 22 | back to death row if you didn't cooperate? |
| 11:46:54 | 23 | A.  There were times that I felt that way.  As a matter of |
| 11:47:03 | 24 | fact, I wasn't on death row and I felt it if I had another |
| 11:47:07 | 25 | state murder case, that's where I'd be going. |

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 100 of 125 PageID #:31299
***REALTIME UNEDITED TRANSCRIPT ONLY***

99

| | | |
|---|---|---|
| 11:47:09 | 1 | Q. And you were instructed to lie if the judge asked you if |
| 11:47:13 | 2 | there was any promises, correct? |
| 11:47:15 | 3 | A. I was never instructed to lie. |
| 11:47:19 | 4 | Q. You told the judges you had no side agreements, no |
| 11:47:23 | 5 | understanding about a sentence, correct, when you testified? |
| 11:47:26 | 6 | A. Yeah. |
| 11:47:31 | 7 | Q. All right. This is your testimony on November 16th, 1994, |
| 11:47:35 | 8 | at Page 91. Were you asked these questions and give these |
| 11:47:40 | 9 | answers. |
| 11:47:42 | 10 | "QUESTION: Was anything else said to you? |
| 11:47:45 | 11 | "ANSWER: You. |
| 11:47:46 | 12 | "QUESTION: By Mr. Hogan concerning your plea or plea |
| 11:47:50 | 13 | agreement? |
| 11:47:50 | 14 | "ANSWER: Yes. |
| 11:47:52 | 15 | "QUESTION: What? |
| 11:47:53 | 16 | "ANSWER: He said after he explained all that, that |
| 11:47:57 | 17 | what I just previously said, he said, he told me he said when |
| 11:48:01 | 18 | the judge asks you about any other representations made about |
| 11:48:04 | 19 | the plea agreement in the written plea agreement, he said say |
| 11:48:07 | 20 | no and don't tell Mike Mann." |
| 11:48:10 | 21 | That's what he told you, right? |
| 11:48:14 | 22 | A. That's what I testified to? |
| 11:48:16 | 23 | Q. That's what he told you, right? |
| 11:48:18 | 24 | A. Is that what you're saying I testified to? |
| 11:48:20 | 25 | MR. LOEVY: Your Honor, may I put it on the screen so |

11/30/16 AM

Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 101 of 125 PageID #:31300
***REALTIME UNEDITED TRANSCRIPT ONLY***

100

11:48:22  1  he can see it only?

11:48:23  2        THE COURT:  So he can see it only.  Give me a second.

11:48:28  3  Now you can put it on the screen.

11:48:30  4  BY MR. LOEVY:

11:48:31  5  Q.  This is 91, line 23 there.  Do you see at the bottom.  And

11:48:44  6  then continuing through line ten.  Mike m-a-n-n-^ ?

11:49:01  7        THE COURT:  Okay.  So did he accurately read the

11:49:03  8  testimony before?

11:49:04  9        THE WITNESS:  Yeah.

11:49:05  10        THE COURT:  He said yes.  Go ahead, Mr. Loevy.

11:49:07  11        MR. LOEVY:  May I have a moment, your Honor?  Let me

11:49:16  12  get a transcript.

11:49:18  13    (Brief pause.)

11:49:27  14  BY MR. LOEVY:

11:49:33  15  Q.  Am and although you told -- you were told not to say you

11:49:37  16  had been given any promises but that you had been given

11:49:40  17  promises, correct?

11:49:40  18  A.  I thought so.

11:49:45  19  Q.  And you thought so because you had been made promises,

11:49:48  20  right?

11:49:48  21  A.  I thought so.

11:49:50  22  Q.  All right.  So since you thought so, when you told the

11:49:53  23  judges that you hadn't been made promises, you were lying,

11:49:56  24  correct?

11:49:56  25  A.  I found out different.

Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 102 of 125 PageID #:31301

| | | |
|---|---|---|
| 11:50:02 | 1 | Q.  All right.  You had been instructed to say you hadn't been |
| 11:50:04 | 2 | made any promises even though you had, correct? |
| 11:50:06 | 3 | A.  At that point, it was -- everything is kind of ambiguous |
| 11:50:15 | 4 | and confusing and it was like a back and forth thing. |
| 11:50:19 | 5 | Q.  Do you remember being asked this question.  This is on |
| 11:50:21 | 6 | page 132 of the same transcript. |
| 11:50:24 | 7 | "QUESTION:  And you're telling us, sir, that Mr. Hogan |
| 11:50:27 | 8 | told you if you were asked about these promises by Judge Aspen |
| 11:50:30 | 9 | at your guilty plea to deny them is that right? |
| 11:50:32 | 10 | "ANSWER:  He said to say no." |
| 11:50:36 | 11 | That's what you were told, right? |
| 11:50:38 | 12 | A.  If that's what the document right there is saying. |
| 11:50:40 | 13 | Q.  But that's what happened, isn't it? |
| 11:50:41 | 14 | A.  That's what I testified to. |
| 11:50:44 | 15 | Q.  And you were specifically told that with you being able to |
| 11:50:54 | 16 | represent yourself as having a 99 year sentence that would |
| 11:50:57 | 17 | make you more credible in these trials, right? |
| 11:50:59 | 18 | A.  I never represented myself. |
| 11:51:05 | 19 | MR. KULWIN:  Your Honor. |
| 11:51:06 | 20 | THE COURT:  The objection is overruled. |
| 11:51:07 | 21 | BY MR. LOEVY: |
| 11:51:08 | 22 | Q.  Do you remember being asked these questions and giving |
| 11:51:09 | 23 | these answers.  This is page 90, lines 17 through 23. |
| 11:51:12 | 24 | "QUESTION: |
| 11:51:14 | 25 | THE WITNESS:  Can I see it? |

| | | |
|---|---|---|
| 11:51:17 | 1 | MR. LOEVY:  Sure. |
| 11:51:17 | 2 | THE COURT:  Just put it up there. |
| 11:51:25 | 3 | THE WITNESS:  Starting where? |
| 11:51:26 | 4 | BY MR. LOEVY: |
| 11:51:26 | 5 | Q.  Line 17. |
| 11:51:27 | 6 | "QUESTION:  Did he tell you anything else regarding the |
| 11:51:29 | 7 | reason that -- |
| 11:51:30 | 8 | "ANSWER:  Yes, he did |
| 11:51:32 | 9 | "QUESTION:  That the sentence was 99? |
| 11:51:34 | 10 | "ANSWER:  Yes. |
| 11:51:35 | 11 | "QUESTION:  What else did he say? |
| 11:51:37 | 12 | "ANSWER:  He said that it would look good in trial and |
| 11:51:39 | 13 | it would make a more believable witness." |
| 11:51:43 | 14 | Correct? |
| 11:51:44 | 15 | A.  That's what the testimony says right here. |
| 11:51:47 | 16 | Q.  That's your testimony, right? |
| 11:51:48 | 17 | A.  It is my testimony. |
| 11:51:49 | 18 | Q.  So you intentionally to make yourself a more believable |
| 11:51:54 | 19 | witness gave the judge the false impression that you were in |
| 11:51:57 | 20 | for 99 even though you knew they were going to take care of |
| 11:52:00 | 21 | you later? |
| 11:52:00 | 22 | A.  Is that a question? |
| 11:52:14 | 23 | Q.  It is. |
| 11:52:15 | 24 | A.  Say it again. |
| 11:52:16 | 25 | Q.  You intentionally misrepresented to the judges that you |

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 104 of 125 PageID #:31303
***REALTIME UNEDITED TRANSCRIPT ONLY***

103

| | | |
|---|---|---|
| 11:52:19 | 1 | believed you were in for 99 years even though you knew you had |
| 11:52:22 | 2 | a deal that you were going to do less and you did that in |
| 11:52:26 | 3 | order to make yourself look better on the stand; isn't that |
| 11:52:26 | 4 | true? |
| 11:52:34 | 5 | A.   That sounds like more than one question. |
| 11:52:35 | 6 | Q.   Mr. Hogan wanted you to testify at trials, correct? |
| 11:52:40 | 7 | A.   Yes. |
| 11:52:41 | 8 | Q.   And you didn't really want to do that after a while, |
| 11:52:46 | 9 | right? |
| 11:52:46 | 10 | A.   That was really not the case. |
| 11:52:50 | 11 | Q.   And isn't it true that the only reason you went through |
| 11:52:53 | 12 | with it is because you had been made this promise that you'd |
| 11:52:56 | 13 | do less time? |
| 11:52:57 | 14 | A.   My perception was that, sure, I would be rewarded in some |
| 11:53:05 | 15 | type of way, yeah. |
| 11:53:06 | 16 | Q.   All right.  Isn't it true that on the day -- at some point |
| 11:53:14 | 17 | Hogan threatened you that death awaited you if you didn't |
| 11:53:16 | 18 | cooperate with the proffer? |
| 11:53:17 | 19 | A.   Do you have that in testimony, to? |
| 11:53:25 | 20 | Q.   That's a question, sir.  Didn't Hogan tell you something |
| 11:53:28 | 21 | like that? |
| 11:53:28 | 22 | A.   No, he didn't tell me anything like that. |
| 11:53:32 | 23 | Q.   What's that? |
| 11:53:33 | 24 | A.   No, he didn't tell me anything like that. |
| 11:53:34 | 25 | Q.   This is your testimony, November 16th, 1994, at page 99. |

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 105 of 125 PageID #:31304
***REALTIME UNEDITED TRANSCRIPT ONLY***

104

| | | |
|---|---|---|
| 11:53:42 | 1 | A.  Where are we starting? |
| 11:53:43 | 2 | Q.  Line 21. |
| 11:53:44 | 3 | A.  Okay. |
| 11:53:44 | 4 | Q. |
| 11:53:45 | 5 |      "QUESTION:  Well, when you asked them or did you ask |
| 11:53:47 | 6 | him, let me ask you, what would be done for you? |
| 11:53:49 | 7 |      "ANSWER:  Well, the next day, when I was brought in to |
| 11:53:52 | 8 | testify -- actually testify, I asked Hogan had he contacted |
| 11:53:55 | 9 | Mike Mann and I asked, you know, did he talk to the U.S. |
| 11:54:00 | 10 | attorneys, what they examining do tore me.  And Hogan, he |
| 11:54:04 | 11 | looked at me and said, Derrick, death waits for you over there |
| 11:54:07 | 12 | in the state,you know.  It scared me, you know.  I |
| 11:54:13 | 13 |      THE COURT:  Looked at Hogan. |
| 11:54:14 | 14 | BY MR. LOEVY: |
| 11:54:15 | 15 | Q.  I looked at Hogan, I said that's like putting a gun to my |
| 11:54:18 | 16 | head.  He said, yeah, it is and I'm making the rules.  Did you |
| 11:54:21 | 17 | give that answer? |
| 11:54:22 | 18 | A.  Yeah, I remember that. |
| 11:54:24 | 19 | Q.  And you went through with the proffer and Hogan's |
| 11:54:28 | 20 | statement because you felt you had no choice, correct? |
| 11:54:30 | 21 |      MR. KULWIN:  Judge, objection as to what proffer, |
| 11:54:32 | 22 | what statement, it's five years after the proffer, five years |
| 11:54:36 | 23 | later. |
| 11:54:36 | 24 | BY MR. LOEVY: |
| 11:54:37 | 25 | Q.  You were cooperating in a number of cases, correct? |

| | | |
|---|---|---|
| 11:54:38 | 1 | A.  Yeah. |
| 11:54:39 | 2 | Q.  And isn't it true that each time you had to tell a story |
| 11:54:42 | 3 | about a lot of cases, right? |
| 11:54:44 | 4 | MR. KULWIN:  Objection as to story. |
| 11:54:45 | 5 | BY MR. LOEVY: |
| 11:54:46 | 6 | Q.  You had to testify about a lot of cases, right? |
| 11:54:50 | 7 | A.  I did testify about a lot of cases. |
| 11:54:51 | 8 | Q.  One of them was the Smith/Hickman murder? |
| 11:54:53 | 9 | A.  Yeah. |
| 11:54:53 | 10 | Q.  And you felt you were being threatened that if you didn't |
| 11:54:56 | 11 | go through with the whole thing, that death awaited you? |
| 11:55:00 | 12 | MR. KULWIN:  Objection, Judge. |
| 11:55:01 | 13 | THE COURT:  Overruled. |
| 11:55:02 | 14 | THE WITNESS:  I was already obligated, so why would I |
| 11:55:06 | 15 | back out then, you know, regardless of what our conversation |
| 11:55:10 | 16 | was. |
| 11:55:10 | 17 | BY MR. LOEVY: |
| 11:55:20 | 18 | Q.  Isn't it true, and last question on the lying under oath, |
| 11:55:23 | 19 | but you did lie under oath? |
| 11:55:25 | 20 | MR. KULWIN:  Judge, I am going to object to the |
| 11:55:27 | 21 | comment. |
| 11:55:27 | 22 | THE COURT:  The objection is sustained. |
| 11:55:29 | 23 | MR. ART:  Isn't it true. |
| 11:55:30 | 24 | THE COURT:  The comment is sustained.  The jury is |
| 11:55:32 | 25 | directed to disregard it. |

11:55:34    1   BY MR. LOEVY:

11:55:34    2   Q.  You lied under oath on Hogan's instructions to lie?

11:55:37    3           MR. KULWIN:  Objection, asked and answered..

11:55:39    4           THE COURT:  Sustained.

11:55:42    5   BY MR. LOEVY:

11:55:42    6   Q.  All right.  There came a point when you did not in 1994

11:55:47    7   when you testified about a number of cases including the

11:55:50    8   Smith/Hickman case, correct?  I'm sorry, January 93.

11:55:53    9   A.  You compounding your questions.  Break it down.

11:55:59   10   Q.  Thank you.

11:56:00   11           In 1993, January, there came a time when you were

11:56:03   12   going to be called onto give your testimony about all the

11:56:05   13   different cases, correct?

11:56:08   14   A.

11:56:10   15           MR. NOLAND:  Objection, form, Judge.

11:56:11   16           THE COURT:  Overruled.

11:56:12   17           MR. NOLAND:  Compound.

11:56:13   18           THE COURT:  It's not compound.  Overruled.

11:56:16   19           THE WITNESS:  I knew that when I testified.

11:56:18   20   BY MR. LOEVY:

11:56:18   21   Q.  Hogan did a briefing with you to prepare for that

11:56:21   22   testimony?

11:56:21   23   A.  Yeah.

11:56:23   24   Q.  And you refused to come out of your cell?

11:56:25   25   A.  What was that date again?

Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 108 of 125 PageID #:31307

| | | |
|---|---|---|
| 11:56:34 | 1 | Q. January 1993. |
| 11:56:35 | 2 | A. I remember having an altercation at the MCC. |
| 11:56:42 | 3 | Q. The warden was instructing you go talk to Hogan before |
| 11:56:46 | 4 | your testimony, right? |
| 11:56:46 | 5 | A. Well, it didn't start because of Hogan. It started |
| 11:56:53 | 6 | because of something else. |
| 11:56:53 | 7 | Q. All right. |
| 11:56:54 | 8 | A. Hogan ended up getting involved. |
| 11:56:56 | 9 | Q. And then the orange crush came and got you out of the |
| 11:56:59 | 10 | cell? |
| 11:57:00 | 11 | MR. KULWIN: Objection as to orange crush, Judge. |
| 11:57:02 | 12 | THE COURT: Rephrase the question. |
| 11:57:04 | 13 | BY MR. LOEVY: |
| 11:57:04 | 14 | Q. Six or seven big guys in riot gear and helmets came and |
| 11:57:08 | 15 | got you out of the cell? |
| 11:57:09 | 16 | A. They were standing out there: They were just standing out |
| 11:57:15 | 17 | there, but I agreed to come out. |
| 11:57:16 | 18 | Q. All right. And you were still trying to make sure you got |
| 11:57:19 | 19 | your deal, right? |
| 11:57:20 | 20 | A. I always wanted a deal, so let's get that out. |
| 11:57:28 | 21 | Q. You stopped trying -- you stopped starting to trust them, |
| 11:57:35 | 22 | didn't you? |
| 11:57:36 | 23 | A. Phrase that again. |
| 11:57:43 | 24 | Q. At some point you filed a motion asking to enforce the |
| 11:57:46 | 25 | agreement that you had been promised, correct? That's a |

| | | |
|---|---|---|
| 11:58:02 | 1 | question. |
| 11:58:03 | 2 | A.  I am going to need to come through my lawyer that |
| 11:58:10 | 3 | something was coming my way. |
| 11:58:11 | 4 | Q.  Isn't it true that for most of that time you thought Hogan |
| 11:58:14 | 5 | was your lawyer? |
| 11:58:14 | 6 | A.  Not at all. |
| 11:58:15 | 7 | Q.  Not at all.  You never thought Bill Hogan was your lawyer? |
| 11:58:19 | 8 | A.  No. |
| 11:58:21 | 9 | Q.  And isn't it true that you thought Bill Hogan was your |
| 11:58:25 | 10 | lawyer is because Mr. O'Callaghan told you that he was? |
| 11:58:27 | 11 | A.  I just said I never thought he was my lawyer. |
| 11:58:30 | 12 | MR. LOEVY:  May I have a moment, your Honor? |
| 11:58:31 | 13 | THE COURT:  Yes. |
| 11:58:34 | 14 | (Brief pause.) |
| 11:58:42 | 15 | BY MR. LOEVY: |
| 11:58:42 | 16 | Q.  Do you remember giving this statement on November 16th, |
| 11:58:45 | 17 | 1994, at page 76. |
| 11:58:49 | 18 | A.  Let me see that. |
| 11:58:51 | 19 | Q.  Lines 18 through 15.  I'm sorry, lines 8 through 15? |
| 11:59:00 | 20 | THE COURT:  11 through 15. |
| 11:59:01 | 21 | THE WITNESS:  11 through 15. |
| 11:59:03 | 22 | THE COURT:  Or 9 through 15. |
| 11:59:05 | 23 | THE WITNESS:  It's not real clear over here. |
| 11:59:08 | 24 | BY MR. LOEVY: |
| 11:59:08 | 25 | Q.  I'll read it.  Okay. |

Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 110 of 125 PageID #:31309

| | | |
|---|---|---|
| 11:59:13 | 1 | "ANSWER: |
| 11:59:14 | 2 | "QUESTION:  Do you recall that?  I'll backup. |
| 11:59:17 | 3 | "QUESTION:  Here at 219, this building, answer in this |
| 11:59:21 | 4 | building here on the 24th floor. |
| 11:59:22 | 5 | "QUESTION:  And how were you taken there by |
| 11:59:26 | 6 | O'Callaghan?  Yeah O'Callaghan brought. |
| 11:59:28 | 7 | "QUESTION:  Do you recall? |
| 11:59:29 | 8 | "ANSWER:  It was a U.S. Marshal with O'Callaghan.  I |
| 11:59:32 | 9 | was brought from the state by another car by some state |
| 11:59:35 | 10 | officers.  Okay okay when I got there, then I met O'Callaghan |
| 11:59:38 | 11 | and another guy named t-i-n-t-i-l-l-a, another U.S. Marshal. |
| 11:59:45 | 12 | Okay.  O'Callaghan talked with me and then he had Hogan. |
| 11:59:49 | 13 | Quote, this is Bill Hogan from the U.S. Attorney's Office, |
| 11:59:52 | 14 | this is your lawyer.  Did you make that statement |
| 11:59:54 | 15 | A.  Who asked this question? |
| 12:00:10 | 16 | Q.  You.  This is your direct in U.S. v. Kees.  Did you make |
| 12:00:19 | 17 | that statement? |
| 12:00:19 | 18 | A.  My answer is at line 9. |
| 12:00:31 | 19 | Q.  That's what I read, correct? |
| 12:00:37 | 20 | THE COURT:  The question is did he read the testimony |
| 12:00:42 | 21 | correct? |
| 12:00:42 | 22 | THE WITNESS:  Yeah, he read the testimony correct. |
| 12:00:44 | 23 | Yeah. |
| 12:00:46 | 24 | BY MR. LOEVY: |
| 12:00:46 | 25 | Q.  Now, the reason you filed that motion was because you |

| | |
|---|---|
| 12:00:51 | 1 | believed that Mr. O'Callaghan had made you a promise that your |
| 12:00:54 | 2 | time would be cut if you followed through, correct? |
| 12:00:57 | 3 |         MR. KULWIN:  Judge, I am going to object as to what |
| 12:01:02 | 4 | he represented, it's not correct, O'Callaghan. |
| 12:01:04 | 5 |         THE COURT:  It's the question. |
| 12:01:07 | 6 |         MR. KULWIN:  Judge, we'd like to be heard, please. |
| 12:01:10 | 7 |   (The following proceedings were had at sidebar outside the |
| 12:01:26 | 8 | hearing of the jury:) |
| 12:01:26 | 9 |         MR. LOEVY:  Here's the testimony that I propose to |
| 12:01:27 | 10 | read. |
| 12:01:34 | 11 |         THE COURT:  He showed me page 79 from what date is |
| 12:01:37 | 12 | this?  Is this the same transcript? |
| 12:01:40 | 13 |         MR. LOEVY:  Same transcript. |
| 12:01:41 | 14 |         THE COURT:  November 16, 94.  At that point in time |
| 12:01:46 | 15 | had either O'Callaghan or Murphy made to you any promises that |
| 12:01:50 | 16 | about sentence that you would receive as far as numbers. |
| 12:01:53 | 17 |         "ANSWER:  No.  Dave O'Callaghan told me I wouldn't have |
| 12:01:56 | 18 | to do all my time.  Okay.  So what's the objection? |
| 12:02:01 | 19 |         MR. KULWIN:  Here's your ruling at the second trial. |
| 12:02:03 | 20 | The Court, I am not going -- |
| 12:02:05 | 21 |         THE COURT:  This is page 2462. |
| 12:02:09 | 22 |         MR. KULWIN:  We talked about this this morning. |
| 12:02:17 | 23 |         THE COURT:  I want to make sure that this is the same |
| 12:02:18 | 24 | this.  Okay?  That's what I'm trying to figure out. |
| 12:02:24 | 25 |         That's the thing I ruled on.  It's excluded. |

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 112 of 125 PageID #:31311
***REALTIME UNEDITED TRANSCRIPT ONLY***

111

| | | |
|---|---|---|
| 12:02:50 | 1 | MR. KULWIN:  Thank you. |
| 12:02:54 | 2 | (The following proceedings were had in open court in the |
| 12:02:55 | 3 | presence and hearing of the jury:) |
| 12:02:55 | 4 | THE COURT:  Okay.  The objection is sustained. |
| 12:02:59 | 5 | BY MR. LOEVY: |
| 12:03:05 | 6 | Q.  All right.  Sir, fast forward to 2013, you gave a |
| 12:03:13 | 7 | deposition in this case, correct? |
| 12:03:15 | 8 | A.  2013, I testified. |
| 12:03:26 | 9 | Q.  The question was you gave a deposition? |
| 12:03:28 | 10 | THE COURT:  You gave a deposition. |
| 12:03:29 | 11 | BY MR. LOEVY: |
| 12:03:29 | 12 | Q.  On October the 7th, 1993, you gave a deposition in this |
| 12:03:32 | 13 | case, correct, sir? |
| 12:03:33 | 14 | A.  Do you have it? |
| 12:03:35 | 15 | Q.  Yes.  Let me have a keep of Mr. Kees' deposition, guys. |
| 12:03:58 | 16 | MR. LOEVY:  May I approach, your Honor? |
| 12:03:59 | 17 | THE COURT:  Yes. |
| 12:04:01 | 18 | THE WITNESS:  Yep. |
| 12:04:02 | 19 | BY MR. LOEVY: |
| 12:04:03 | 20 | Q.  Thank you. |
| 12:04:04 | 21 | And prior to giving the deposition in this case, they |
| 12:04:07 | 22 | cut your time, correct? |
| 12:04:09 | 23 | MR. NOLAND:  Judge, objection. |
| 12:04:10 | 24 | THE COURT:  Sustained. |
| 12:04:11 | 25 | BY MR. LOEVY: |

Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 113 of 125 PageID #:31312

| | | |
|---|---|---|
| 12:04:11 | 1 | Q.  The state cut your time? |
| 12:04:14 | 2 | A.  The state cut my time, I think I was -- I think I was done |
| 12:04:22 | 3 | testifying. |
| 12:04:23 | 4 | Q.  Okay.  As a matter of fact, you testified, the deposition |
| 12:04:27 | 5 | was on the 7th and then they took you over to see judge Ford |
| 12:04:30 | 6 | on the 9th, right? |
| 12:04:31 | 7 | A.  Okay.  Yeah. |
| 12:04:36 | 8 | Q.  And then you went back on the stand in a different |
| 12:04:38 | 9 | proceeding on the 10th, right? |
| 12:04:39 | 10 | A.  Is that a true fact? |
| 12:04:44 | 11 | Q.  I'm asking you if you remember it that way, that you |
| 12:04:47 | 12 | started testifying, then they cut your time, then you |
| 12:04:49 | 13 | testified again?  Either you remember it that way or you |
| 12:04:59 | 14 | don't.  Do you remember it that way? |
| 12:05:00 | 15 | A.  I don't quite remember, you know. |
| 12:05:01 | 16 | Q.  All right.  Prior to the deposition, you met with |
| 12:05:05 | 17 | Mr. Sexton, the state's attorney, for a couple hours to go |
| 12:05:07 | 18 | over the documents, correct? |
| 12:05:08 | 19 | A.  Okay. |
| 12:05:10 | 20 | Q.  What's that? |
| 12:05:11 | 21 | A.  Yeah. |
| 12:05:11 | 22 | Q.  And by the documents, I mean the document relating to the |
| 12:05:14 | 23 | Smith/Hickman case, right? |
| 12:05:15 | 24 | A.  Okay.  Yeah. |
| 12:05:16 | 25 | Q.  And you went over the transcripts of your prior testimony |

| | |
|---|---|
| 12:05:24 | 1 |
| 12:05:25 | 2 |
| 12:05:25 | 3 |
| 12:05:30 | 4 |

about Smith/Hickman?

A.  Yes.

Q.  And Mr. Sexton left you copies of your old testimony from
Smith/Hickman to study up, right?

A.  He asked me to review them.

Q.  And did you?

A.  Yeah, I reviewed them.

Q.  Then you went before judge Ford over at 26th and Cal to
get your time cut, correct?

A.  Yeah.

Q.  And how much did they cut your time by?

A.  They cut my time five years.

Q.  Five years?

A.  In the state.

Q.  And when they explained to judge Ford that they were going
to cut your time, you had to tell them what your out date was,
right?

        MR. NOLAND:  Judge, objection as to they.

        THE COURT:  Rephrase the question.

BY MR. LOEVY:

Q.  The person there --

        THE COURT:  Just ask --

BY MR. LOEVY:

Q.  I'm sorry.  The person there was state's attorney Sexton,
right?

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 115 of 125 PageID #:31314
***REALTIME UNEDITED TRANSCRIPT ONLY***

114

| | | |
|---|---|---|
| 12:06:09 | 1 | A.  Yeah. |
| 12:06:09 | 2 | Q.  What's his first name?  All right? |
| 12:06:15 | 3 | THE COURT:  It doesn't really matter. |
| 12:06:17 | 4 | BY MR. LOEVY: |
| 12:06:17 | 5 | Q.  Whatever pronoun I use, that's who I am talking about. |
| 12:06:20 | 6 | A.  Yeah, I know what you're talking about. |
| 12:06:22 | 7 | Q.  The judge asked you what your out date was, correct? |
| 12:06:25 | 8 | A.  I don't remember everything the judge asked me. |
| 12:06:29 | 9 | Q.  All right.  This is the October 9th, 2013, proceeding |
| 12:06:33 | 10 | before judge Ford at page 8. |
| 12:06:36 | 11 | THE COURT:  Do you want to put it up there so he can |
| 12:06:38 | 12 | see it? |
| 12:06:39 | 13 | MR. LOEVY:  All right. |
| 12:06:40 | 14 | BY MR. LOEVY: |
| 12:06:42 | 15 | Q.  You were asked, well, in your presence, the Court asked, |
| 12:06:47 | 16 | well, what's his current out date from the federal, his first |
| 12:06:50 | 17 | eligibility date from the federal parole?  And then |
| 12:06:55 | 18 | Mr. Sexton, you know what?  And the Court said, do you know |
| 12:06:57 | 19 | that?  Mr. Sexton said I do not know that first has been. |
| 12:07:06 | 20 | Then you said 2042.  And the court said 2042.  You know that |
| 12:07:11 | 21 | happened? |
| 12:07:11 | 22 | A.  Yeah. |
| 12:07:12 | 23 | Q.  That wasn't true? |
| 12:07:13 | 24 | A.  That was -- that was the last date that I heard from my |
| 12:07:16 | 25 | case manager at the unit. |

| | | |
|---|---|---|
| 12:07:17 | 1 | Q.  Do you remember giving this statement on October the 10th, |
| 12:07:23 | 2 | the day after that happened at page 75? |
| 12:07:27 | 3 | MR. KULWIN:  Can you -- |
| 12:07:28 | 4 | MR. LOEVY:  The 10/10 transcript, the same |
| 12:07:32 | 5 | proceeding. |
| 12:07:33 | 6 | THE WITNESS:  Can you show me? |
| 12:07:34 | 7 | BY MR. LOEVY: |
| 12:07:34 | 8 | Q.  You were asked the following question and gave the |
| 12:07:36 | 9 | following answers.  When you went before judge Ford yesterday |
| 12:07:40 | 10 | afternoon and he asked you what your earliest possible out |
| 12:07:43 | 11 | date was, what did you tell him?  Answer answer I told him |
| 12:07:46 | 12 | 2042. |
| 12:07:46 | 13 | "QUESTION:  That wasn't correct, was it? |
| 12:07:48 | 14 | "ANSWER:  I might have had the number wrong." |
| 12:07:52 | 15 | Did you give that testimony, sir? |
| 12:07:54 | 16 | A.  That's the testimony I gave. |
| 12:07:55 | 17 | Q.  What was your out date after you were done testifying at |
| 12:08:00 | 18 | the 2013 proceeding and Mr. Fields' deposition?  What would |
| 12:08:09 | 19 | the right number have been? |
| 12:08:11 | 20 | A.  The number was 2042 until they showed it to me on |
| 12:08:15 | 21 | documents. |
| 12:08:15 | 22 | Q.  Okay.  So what should you have said if you had testified |
| 12:08:19 | 23 | truthfully? |
| 12:08:20 | 24 | A.  I said what I should have said. |
| 12:08:21 | 25 | Q.  2042? |

Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 117 of 125 PageID #:31316

| | | |
|---|---|---|
| 12:08:24 | 1 | A.  Yeah. |
| 12:08:24 | 2 | Q.  What was your actual out date?  I think we're missing each |
| 12:08:27 | 3 | other? |
| 12:08:27 | 4 | A.  Yeah, we are. |
| 12:08:29 | 5 | Q.  On October 2013, what was your actual out date? |
| 12:08:33 | 6 | A.  As of October 2013, be before or after I got the |
| 12:08:39 | 7 | reduction? |
| 12:08:39 | 8 | Q.  Say before. |
| 12:08:41 | 9 | A.  Before, it was 2042. |
| 12:08:43 | 10 | Q.  Okay. |
| 12:08:44 | 11 | A.  As far as I knew. |
| 12:08:45 | 12 | Q.  And then when you got the reduction, what was your out |
| 12:08:47 | 13 | date? |
| 12:08:47 | 14 | A.  It came down a couple of years. |
| 12:08:53 | 15 | Q.  Well, let's be precise.  I assume you knew what your out |
| 12:08:56 | 16 | date was, right? |
| 12:08:58 | 17 | 2042 is where you started.  After 2013, what was your |
| 12:09:01 | 18 | new out date after that cooperation against Mr. Fields? |
| 12:09:04 | 19 | A.  I can't see that. |
| 12:09:05 | 20 | Q.  I'll write it accurate.  What year? |
| 12:09:09 | 21 | A.  That would be five years earlier. |
| 12:09:16 | 22 | Q.  Okay.  You knew exactly how many years they were cutting, |
| 12:09:20 | 23 | didn't you? |
| 12:09:20 | 24 | A.  I said five years. |
| 12:09:22 | 25 | Q.  I don't want to put words in your mouth.  Are you saying |

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 118 of 125 PageID #:31317
***REALTIME UNEDITED TRANSCRIPT ONLY***

117

| | | |
|---|---|---|
| 12:09:25 | 1 | after 2013 your out date was 2037? |
| 12:09:29 | 2 | A.  Yeah, okay. |
| 12:09:30 | 3 | Q.  If your out date was 2037 in October of 2013, then why are |
| 12:09:37 | 4 | you going to be free three years from now or how many years |
| 12:09:42 | 5 | from now, five years from now? |
| 12:09:44 | 6 | A.  I asked for a Rule 35. |
| 12:09:47 | 7 | Q.  It's your understanding you were going to walk out of |
| 12:09:53 | 8 | prison on what date? |
| 12:09:54 | 9 | A.  I don't have the exact date. |
| 12:09:56 | 10 | Q.  I bet you do? |
| 12:09:58 | 11 | A.  Somewhere. |
| 12:09:58 | 12 | MR. KULWIN:  I object to that.  Ask it be stricken. |
| 12:10:02 | 13 | THE COURT:  The comment is stricken. |
| 12:10:03 | 14 | BY MR. LOEVY: |
| 12:10:03 | 15 | Q.  You know the exact date you are going to walk out of |
| 12:10:05 | 16 | prison, don't you, sir? |
| 12:10:07 | 17 | A.  It's like November 2021, something like that. |
| 12:10:12 | 18 | Q.  Did you say 20 or 21? |
| 12:10:16 | 19 | THE COURT:  No, he said November of the year 2021, is |
| 12:10:19 | 20 | that what you said? |
| 12:10:20 | 21 | THE WITNESS:  That's what I said, your Honor. |
| 12:10:22 | 22 | BY MR. LOEVY: |
| 12:10:25 | 23 | Q.  You have not cooperated against any other witnesses |
| 12:10:28 | 24 | between 2013 and this trial, have you? |
| 12:10:30 | 25 | A.  No. |

Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 119 of 125 PageID #:31318

| | | |
|---|---|---|
| 12:10:32 | 1 | Q.  Just Mr. Fields and this civil proceeding since 2013, |
| 12:10:36 | 2 | correct? |
| 12:10:37 | 3 | A.  Correct. |
| 12:10:38 | 4 | Q.  Let's talk about your story -- |
| 12:10:43 | 5 | MR. KULWIN:  Judge, I am going to object to story. |
| 12:10:47 | 6 | It's argumentative. |
| 12:10:48 | 7 | MR. LOEVY:  We don't concede that it's -- |
| 12:10:50 | 8 | THE COURT:  Okay.  I have to make rulings on whether |
| 12:10:54 | 9 | questions are argumentative.  I am sustaining the objection. |
| 12:10:56 | 10 | MR. LOEVY:  All right. |
| 12:10:56 | 11 | BY MR. LOEVY: |
| 12:10:56 | 12 | Q.  Let's talk about your allegations that you knew something |
| 12:10:59 | 13 | about the Smith/Hickman murder and Mr. Fields.  All right, |
| 12:11:02 | 14 | sir? |
| 12:11:02 | 15 | A.  Okay. |
| 12:11:03 | 16 | Q.  Let's -- you were not present when Mr. Jerome Fuddy Smith |
| 12:11:11 | 17 | was murdered, correct? |
| 12:11:12 | 18 | A.  That is correct. |
| 12:11:13 | 19 | Q.  You did not witness the murder? |
| 12:11:14 | 20 | A.  That is correct. |
| 12:11:14 | 21 | Q.  So you had no firsthand personal knowledge of who did it? |
| 12:11:18 | 22 | MR. KULWIN:  Objection as to the firsthand personal |
| 12:11:21 | 23 | knowledge. |
| 12:11:21 | 24 | THE COURT:  You've sustained 403. |
| 12:11:23 | 25 | BY MR. LOEVY: |

11/30/16 AM
Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 120 of 125 PageID #:31319
***REALTIME UNEDITED TRANSCRIPT ONLY***

119

| | | |
|---|---|---|
| 12:11:25 | 1 | Q.  So you were still notwithstanding lacking personal |
| 12:11:28 | 2 | knowledge, you were still able to get a deal in relation to |
| 12:11:32 | 3 | this particular murder, correct? |
| 12:11:34 | 4 | MR. KULWIN:  Judge, I am going to object. |
| 12:11:35 | 5 | THE COURT:  Sustained, argumentative. |
| 12:11:36 | 6 | BY MR. LOEVY: |
| 12:11:37 | 7 | Q.  All right.  You claim you were part of the Smith/Hickman |
| 12:11:45 | 8 | hit team, correct? |
| 12:11:46 | 9 | A.  He was part of the El Rukn team. |
| 12:11:54 | 10 | Q.  Okay.  Who was the hit team that Jeff Fort assigned to |
| 12:11:59 | 11 | kill Hickman and Smith?  It was you, right? |
| 12:12:04 | 12 | A.  Me. |
| 12:12:07 | 13 | Q.  Earl Hawkins? |
| 12:12:08 | 14 | A.  Earl Hawkins. |
| 12:12:09 | 15 | Q.  Who else, sir? |
| 12:12:10 | 16 | A.  Harry Evans. |
| 12:12:17 | 17 | Q.  Who else was on the Smith/Hickman hit team? |
| 12:12:20 | 18 | A.  That depends. |
| 12:12:21 | 19 | Q.  I'm asking who the four guys were? |
| 12:12:24 | 20 | A.  You mean the four people that killed him or the four |
| 12:12:27 | 21 | people that -- |
| 12:12:28 | 22 | Q.  The four people you claim were on the hit team is you, |
| 12:12:31 | 23 | Hawkins, Harry Evans and Anthony Sumner, right? |
| 12:12:34 | 24 | MR. KULWIN:  Judge, I am object for lack of |
| 12:12:37 | 25 | foundation. |

12:12:37  1      THE COURT:  What we are going to do since I don't

12:12:39  2  have any cases up at 1:30, I have a little more flexibility of

12:12:45  3  when we are going to take the lunch break.  We are going to do

12:12:48  4  it now.  I am going to take the jury out.

12:13:19  5    (The jury leaves the courtroom.).

12:13:19  6      THE COURT:  Everybody stay here other than the

12:13:21  7  witness.  I'll be right out.

12:13:21  8    (Brief pause.)

12:15:06  9      THE COURT:  The question is vague.  I mean, I don't

12:15:08  10  know what you mean by "hit."  I don't know what you mean by

12:15:11  11  "hit team."  You may know what you mean by hit time.

12:15:13  12      Everybody else can sit down other than the people I

12:15:17  13  am talking to.  That would be him.  You guys can have a seat.

12:15:20  14      I know that because I have seen you try a lot of

12:15:23  15  cases including this one part that of the MO is putting the

12:15:26  16  whole theory in through the way you ask questions.  You're not

12:15:28  17  going to get to do that with this witness and it's to stop

12:15:31  18  right now.  Okay?  You're courting disaster with a witness

12:15:34  19  like this.  You are courting disaster.  If you didn't pick

12:15:38  20  that up in the first two minutes of his testimony, then it's

12:15:40  21  only because you are not paying attention.

12:15:42  22      You're going to have to ask tighter questions.  You

12:15:45  23  can't -- you can't be asking him, what's hit team?  I don't

12:15:49  24  know what that means.  Does that mean the people that planned

12:15:51  25  it, does that mean the people that did it?  It's obvious you

Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 122 of 125 PageID #:31321
***REALTIME UNEDITED TRANSCRIPT ONLY***

12:15:55  1  didn't know what you meant by that.  You are not going to be

12:15:57  2  able to do that.

12:15:59  3          Do you understand what I'm telling you?

12:16:01  4          MR. LOEVY:  I do.

12:16:01  5          THE COURT:  You know, sanctions can go every which

12:16:05  6  way in this case.  It can go every which way in this case if

12:16:09  7  there ends up being a mistrial.  It doesn't just apply to the

12:16:11  8  defendants.  It applies to you personally.

12:16:14  9          I don't think you are paying attention to what the

12:16:16  10 guy is saying, first of all.  You ask him a question and you

12:16:18  11 are staring down at the page and not even looking at the guy.

12:16:21  12 It's going to have to be done in a tighter way.  If that's not

12:16:27  13 your MO, then you better fix your MO in the next hour.  That's

12:16:31  14 what I'm telling you.

12:16:31  15         MR. LOEVY:  I understand, your Honor.

12:16:32  16         I would like to be heard.

12:16:34  17         THE COURT:  On what?

12:16:35  18         MR. LOEVY:  On that.

12:16:35  19         THE COURT:  Do you disagree with what I am saying?

12:16:35  20         MR. LOEVY:  Not at all.

12:16:36  21         THE COURT:  What do you want to tell me then?

12:16:38  22         MR. LOEVY:  I understand you're saying.

12:16:36  23         THE COURT:  What do you want to tell me?

12:16:38  24         MR. LOEVY:  What I want to tell you is every time

12:16:39  25 this man has told the story, the hit team was him, Harry


***REALTIME UNEDITED TRANSCRIPT ONLY***

Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 123 of 125 PageID #:31322
***REALTIME UNEDITED TRANSCRIPT ONLY***

| | |
|---|---|
| 12:16:43 | 1 |
| 12:16:49 | 2 |
| 12:16:51 | 3 |
| 12:16:51 | 4 |
| 12:16:52 | 5 |
| 12:16:55 | 6 |
| 12:16:56 | 7 |
| 12:16:57 | 8 |
| 12:17:01 | 9 |
| 12:17:04 | 10 |
| 12:17:16 | 11 |
| 12:17:21 | 12 |
| 12:17:22 | 13 |
| 12:17:24 | 14 |
| 12:17:26 | 15 |
| 12:17:28 | 16 |
| 12:17:32 | 17 |
| 12:17:35 | 18 |
| 12:17:37 | 19 |
| 12:17:40 | 20 |
| 12:17:42 | 21 |
| 12:17:42 | 22 |
| 12:17:45 | 23 |
| 12:17:47 | 24 |
| 12:17:49 | 25 |

1  Evans, Earl Hawkins.  The fact that he's trying to change it

2  now, IT will be the first time he's ever told the story

3  differently.

4       THE COURT:  Where is the question at which he

5  responded to -- let me see it.  I want to see it, "hit team."

6       MR. LOEVY:  I will show you.

7       THE COURT:  If that's the case, then you have a basis

8  for and he answered it that way.  Hit team.  If that's the

9  case, then you have a basis for asking that question.  Put it

10  on the ELMO.  Tell me what it is and put it on the ELMO.

11       MR. LOEVY:  He went out in a car with Harley Evans

12  and he took --

13       THE COURT:  You just got an order from a judge.  The

14  next thing that is going to happen is that you are going to

15  comply with the order from the judge.

16       MR. LOEVY:  I'm already done.  He said he had to take

17  a break, a leak I believe is the expression he used in one of

18  the transcripts.  Yeah, where did you go?  I stepped out over

19  there in a field.  He got back in the car.

20       THE COURT:  I am looking for the word "hit team."

21  Show them to me.

22       MR. LOEVY:  The word hit team is not this there.

23       THE COURT:  Okay.  You are missing my point.  You are

24  not evening listen to me, for God's sake.  You're not even

25  listening to me.  You're trying to jam this language into his

***REALTIME UNEDITED TRANSCRIPT ONLY***

12:17:51  1  ear.  And I know that's part of the strategy, I get it.  I

12:17:54  2  mean, that's what lawyers do.  You're not going to be able to

12:17:56  3  do it with this witness.  You are just not.

12:17:59  4         MR. LOEVY:  I am past that because I am not going to

12:18:01  5  try.

12:18:01  6         THE COURT:  No, you are not past it because that's

12:18:03  7  where this thing fell apart right now.

12:18:05  8         MR. LOEVY:  Four men got in the car --

12:18:06  9         THE COURT:  So you're now listening to what the judge

12:18:08  10 is telling you.

12:18:08  11        MR. LOEVY:  I already am.

12:18:09  12        THE COURT:  Okay.  No.  I mean, I just said to you if

12:18:12  13 there was some question that you could show me where, you

12:18:15  14 know, he's asked a question, who was the hit team and he names

12:18:18  15 four people, then, of course, you have a basis to ask that

12:18:20  16 question.  I asked you to show it to me.  You showed me

12:18:23  17 something else.  I said where is the word hit team.  You said

12:18:26  18 I don't have that in there, so you can't use this vague

12:18:29  19 terminology.

12:18:29  20        MR. LOEVY:  That I am well past.  No hit team words.

12:18:33  21        Four men got in a car to kill Fuddy.  Four men got in

12:18:37  22 a car to kill him.  That's always been his story.

12:18:39  23        THE COURT:  I understand.  Then ask him that

12:18:41  24 question.

12:18:41  25        MR. LOEVY:  All right.  There you go.  Because I do

Case: 1:10-cv-01168 Document #: 1185-20 Filed: 02/24/17 Page 125 of 125 PageID #:31324

12:18:43    1    get --

12:18:44    2             THE COURT:  It's just -- I don't understand if you're

12:18:46    3    getting the message here.  This is a witness, okay, who is

12:18:50    4    poised, I'll just use this word, to screw you.  He's poised to

12:18:55    5    screw you.  And what you do with a witness like that, and I

12:18:59    6    know you've tried a lot of cases, maybe you have tried more

12:19:02    7    cases than I've tried as a lawyer, but you haven't tried more

12:19:04    8    cases than I've seen as a judge and I have seen every possible

12:19:08    9    mistake that can be made times about ten.  What you do with a

12:19:12    10   witness who is trying to screw you is don't give him floating

12:19:15    11   softballs that he can screw you on.

12:19:17    12            MR. LOEVY:  I hear you.

12:19:18    13            THE COURT:  And you got to stop doing it.

12:19:19    14            MR. LOEVY:  I hear you.

12:19:20    15            THE COURT:  And that's all I'm going to say.

12:19:22    16            MR. LOEVY:  Thank you, your Honor.

12:19:23    17            THE COURT:  1:15.

12:19:25    18      (The trial was adjourned at 12:15 p.m. until 1:15 p.m. of

12:19:30    19   this same day and date.)

            20

            21

            22

            23

            24

            25