UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOSE JUAN MAYSONET, JR. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-CV-2342 |
| | ) | |
| REYNALDO GUEVARA, ET AL. | ) | District Judge Mary M. Rowland |
| | ) | Magistrate Judge Keri L. Holleb |
| Defendants. | ) | |

**PLAINTIFF'S MOTION TO SUSPEND SUMMARY JUDGMENT BRIEFING IN LIGHT OF THE CITY'S DISCLOSURE LAST WEEK OF THE ACTUAL INVESTIGATIVE FILE IN THIS CASE**

NOW COMES, Plaintiff JOSE JUAN MAYSONET, JR., by and through his counsel the BONJEAN LAW GROUP and the GREENBERG TRIAL LAWYERS, and respectfully brings this motion to suspend summary judgment briefing in light of the Defendant City of Chicago's disclosure of the investigative file in this case produced last week, over six years late. It would appear that the City produced a parallel file (street-file, area-file, running-file) to Plaintiff at the start of this litigation rather than the actual investigative file. The belated disclosure, which will invariably result in driving up the cost of this litigation, is a serious discovery violation for which Plaintiff reserves the right to seek sanctions.

The City agrees that summary judgment must be suspended, and that fact and expert discovery will have to be re-opened (although the scope of discovery is still up for dispute). That said, Plaintiff strongly objects to any continuance of the trial in this case and will seek to expedite any additional discovery that needs to be completed because of the City's discovery violation. Plaintiff does not expect he will have to conduct expansive additional discovery and

seeks a modified scheduling order detailed in his prayer for relief. Plaintiff would also welcome an immediate telephone status conference with the Court.

## PERTINENT FACTS

Plaintiff filed his Complaint in this case on April 1, 2018. He alleges, *inter alia,* that he was wrongfully arrested and prosecuted in 1990 for the double homicide of two men from Garfield Park, the Wiley brothers. Plaintiff raised a myriad of claims against the individual Defendant Officers, including *Brady* claims. Plaintiff also alleged various *Monell* theories of liability, including that the City has a policy and practice of suppressing exculpatory and or impeaching evidence. The Defendant City denies that it had any such practice notwithstanding that two separate federal juries held otherwise in the cases of *Fields v. Chicago,* No. 10 C 1168 (N.D. Ill.) and *Rivera v. Guevara,* No. 12 V 4428 (N.D. Ill.)[1]

The Defendant City made initial disclosures in this case on August 20, 2018, and produced two files associated with the Wiley brothers' homicide investigation. One of the files purported to be an "investigative file," and one purported to be the permanent retention file. According to the Defendant Officers, the investigative file is a comprehensive file that typically contains, *inter alia,* an investigatory inventory log, all case reports, and general progress reports. The investigative file that was produced as part of the initial disclosures was suspiciously slim, consisting of only 66 pages. It did not contain an investigatory inventory log, any general

---

[1] Plaintiff has moved for summary judgment on this theory, arguing that collateral estoppel precludes the Defendant City from relitigating this *Monell* theory in light of the *Fields* and *Rivera* verdicts - investigations that occurred during the same time-period as this case. Plaintiff is asking this court to preclude re-litigation of the well-settled issue that the City had an official policy or practice of suppressing exculpatory material, just as Judge Lefkow did in *Kluppelberg v. Burge,* 276 F. Supp. 3d 773, 776 (N.D. Ill. 2017). In *Kluppelberg,* Judge Lefkow entered her ruling based entirely on the *Fields* decision. Here, Plaintiff can now point to *two* separate verdicts that should put this issue to rest, namely that the City did have an official policy or practice of suppressing exculpatory evidence in 1990. The City should not get a third bite at this apple.

progress reports, or other case reports that Plaintiff would have expected to be contained in the file.

During discovery, the City agreed that it was not a complete file and blamed its apparent incompleteness on the age of the case. The Cook County State's Attorney's file contained certain documents that were not in the "investigative file" that was produced by the City. The City did not offer much of an explanation for its production of a 66-page file and did not take the position that the file it produced was a parallel file. During depositions of the Defendant Officers, they generally claimed that the investigative file was incomplete and insisted that they prepared GPRs for certain critical investigative events but that the file was incomplete because of the age of the case. Simply put, no one could explain why the file did not contain any GPRs.

Undersigned counsel was suspicious of these explanations and issued a second set of interrogatories to the City in November 2019, attempting to discover if the file produced was actually the investigative file, what efforts were made to confirm it was the file, and where other reports might be that were not in the file. [Exhibit A - Plaintiff's Second Set of Interrogatories with City's Answers] Generally, undersigned counsel sought to determine whether the produced file was, in fact, the "investigative file," an incomplete "investigative file," or some other file. For example, Plaintiff asked such questions as:

- Rog No. 4: Do you contend that the documents produced by the Defendant City bearing batestamp RFC -Maysonet 000001-000066 constitute the "Investigative File" associated with RD234247

- Rog No. 5: Do you contend that the documents produced by the Defendant City bearing batestamp RFC -Maysonet 000001-000066 constitute the "Investigative File" associated with murder investigation of Kevin and Torrence Wiley.

- Rog No. 7: Do you contend that any reports, writing or documents prepared in connection with the Chicago Police Department's investigation of the murders of Torrence and Keving Wiley have been kept, held, maintained in any file other than the "Investigative File" or the "Permanent Retention File" since the case was cleared and closed?

3

- Rog No. 2: Identify each and every location where the Chicago Police Department currently keeps, stores, or maintains any reports, documents, or materials prepared in connection with the Chicago Police Department's investigation of the murders of Torrence and Kevin Wiley? Specify who took what actions and when those actions were taken. [Ex. A]

The City responded in December 2019 and generally objected to the interrogatories as premature and further on the bases that Plaintiff had no right to conduct "discovery on discovery." [Ex. A] The City stated that it did not believe the file was the "investigative file" but continued to represent that its "Investigation Continues." The City never amended its Answers to Plaintiff's Second Set of Interrogatories prior to the close of fact discovery or produced any additional reports or files that were not contained in the 66-page file that was produced at the start of the litigation. The City never offered any explanation for either the absence of the investigative file or identified the origins of the file that was produced.

Six years later, after the close of fact discovery, after the close of expert discovery, and in the middle of summary judgment briefing, the City claims it discovered the real investigative file in the "warehouse." The City claims that it found the file as a result of an interrogatory propounded to them by Plaintiff's criminal co-defendant via his lawyers Loevy & Loevy. [Exhibit B - Gonzalez Interrogatory] The file that the City now claims is the investigative file was produced for the first time on July 20, 2024. It is over 500 pages long, but still does not contain GPRs or reports that Plaintiff would expect to be contained in the file.

## ARGUMENT

Unfortunately, Plaintiff must now ask this Court to suspend summary judgment briefing. The Defendant City agrees that summary judgment briefing must be suspended. The City also agrees "in principle" that discovery must be re-opened but reserves its right to object to the scope of discovery. Plaintiff clearly shows good cause for his request in light of the very belated

4

disclosure of arguably the most important set of documents that exist in any § 1983 case alleging constitutional claims leading to a wrongful conviction. Fed. R. Civ. P. 16(b)(4).

First, and perhaps the most obvious, that Plaintiff was initially provided a file that was neither the investigative file nor the permanent retention file establishes rather definitively that the Chicago Police Department did maintain parallel files in 1990. This evidence is certainly relevant to Plaintiff's *Monell* claim against the City concerning the policy and practice of concealing exculpatory evidence and relevant to the *Brady* claims brought against the Defendant Officers. Plaintiff's expert will unquestionably seek to consider this development and review the actual investigative file and amend his expert report as necessary.

Second, the newly discovery investigative file is *still* devoid of GPRs and reports that should exist based on known facts. Unless the City is going to take the position that there are even more parallel files out there, the absence of these documents in the actual investigative file allows Plaintiff to allege undisputed facts relevant to his motion for summary judgment on Plaintiff's *Brady* claim against the Defendant Officers. The absence of these documents from the 500-page investigatory file debunks the testimony of the Defendant Officers who claimed that they did prepare GPRs, but they were simply missing due to the age of the case.[2]

Third, Plaintiff must be permitted to conduct additional discovery on how and why the investigatory file was not produced at the start of this litigation and what exactly *is* the file that was produced. Again, this evidence is all relevant to Plaintiff's *Monell* theory that the City maintained a policy and practice that allowed police officers to conceal exculpatory material.

---

[2] The existence or non-existence of GPRs is also material to Plaintiff's fabrication of evidence claim where the Defendant Officers fabricated false oral statement of the Plaintiff, claiming that they memorialized those statements in a GPR that have yet to materialize anywhere, including in the newly produced investigative file.

Although Plaintiff does not seek sanctions presently, Plaintiff reserves his right to do so in light of the additional cost and delay this belated discovery will cause. Plaintiff has acted with due diligence since the start of this litigation. Indeed, Plaintiff conducted discovery at the beginning of this litigation, attempting to get to the bottom of the missing "investigatory file." The City objected and generally refused to answer relevant questions, insisting that it would continue its investigation. Although the City claims that the interrogatory propounded by Plaintiff's criminal co-defendant Alfredo Gonzalez (attached as Exhibit B) prompted the discovery of the investigative file, that explanation is rubbish. Gonzalez's interrogatory does not propound a question any different than those propounded by Plaintiff in his initial Requests to Produce and in his Second Supplemental Interrogatories to the City. If the City could find the file as a result of Gonzalez's interrogatory there is no excuse for its failure to produce it to Plaintiff earlier, particularly after Plaintiff propounded his Second Set of Interrogatories in 2019 (Exhibit A).

Plaintiff has not determined precisely what type of additional discovery must be conducted, but at a minimum, Plaintiff's expert must be permitted to review the file and amend his report and/or provide a supplemental report; Plaintiff must be permitted to issue additional written discovery and conduct a Rule 30(b)(6) deposition relating to the maintenance of Area 5 investigative files, including this one; and Plaintiff may have to re-depose (in a limited fashion) certain Defendant Officers although he does not expect to have to re-depose all of them. Plaintiff believes that this supplemental discovery can be conducted within 45 days with the City's cooperation. Plaintiff would also welcome an immediate telephone status conference with the Court.

WHEREFORE, Plaintiff asks this Court to enter the following modified scheduling Order:

(1) to suspend summary judgment briefing;

(2) to reopen discovery until September 16, 2024, to allow Plaintiff to amend his expert report; take a 30(b)(6) deposition; and conduct any additional written discovery (including requiring the City to Answer Plaintiff's Second Set of Supplemental Interrogatories, and/or to conduct any additional depositions related to the disclosure of the investigative file;

(3) leave to inspect any and all locations where Area Five investigatory files or parallel investigative files are stored depending on information learned during the Rule 30(b)(6) deposition.

(4) to require the Defendants to answer Plaintiff's supplemental discovery requests to meet the September 16, 2024, deadlines;

(5) to permit Plaintiff to re-file his motion for summary judgment to the extent necessary by September 30, 2024. Oppositions due within 14 days on October 14, 2024, and any replies on October 28, 2024.

(6) to maintain the remainder of the scheduling order.

Respectfully Submitted,
PLAINTIFF JOSE MAYSONET

By:  /s/*Jennifer Bonjean*
*One of Plaintiff's attorneys*

Jennifer Bonjean
Ashley Cohen
Bonjean Law Group, PLLC
303 Van Brunt Street, 1st Fl
Brooklyn, New York 11231
718-875-1850
Jennifer@bonjeanlaw.com

**Chicago Office:**
Bonjean Law Group, PLLC

7

53 W. Jackson Blvd., Ste. 315
Chicago, Illinois 60604

Steve Greenberg
GREENBERG TRIAL LAWYERS
Attorneys and Counselors
53 W. Jackson Blvd., Suite 315
Chicago, IL  60604
(312) 399-2711