# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION
Jose Juan Maysonet, Jr. v. City of Chicago, et al.
Case No. 1:18-CV-2342

**Supplemental Report of Expert – Thomas J. Tiderington**
**January 19, 2024**

### INTRODUCTION

**BACKGROUND:**

My name is Thomas J. Tiderington. On January 12, 2023, I submitted an expert report describing my opinions in this case. Since the date of my initial report, I have received and reviewed the expert disclosures submitted by Stefan Bjes[1] and his deposition from November 17, 2023. This rebuttal report is intended to reply to certain opinions and conclusions offered by Mr. Bjes.

I incorporate my initial report dated January 12, 2023, in its entirety by reference herein. As in my initial report, references to documents and testimony herein are meant to provide examples of supporting information, but are not intended to be comprehensive or an exhaustive list of all known supporting information. The information in this report is based on discovery to date and the information that is currently available.

**SUMMARY OF REBUTTAL OPINIONS:**

In Mr. Bjes' expert report, he presents a variety of misdirected critiques and unsupported opinions regarding the involvement of "gang activity" and "gang culture" in the murder of the Wiley brothers, as well as the subsequent investigation of the murders by Chicago Police Detectives.

Stefan Bjes was retained by Defendants to assess what, if any, role gang activity and gang culture played in the murder of the Wiley brothers and detectives' subsequent investigation of murders. Mr. Bjes provides a general background of "gang culture" although it is unclear what his source is for his discussion of Chicago Latin Kings street gangs in 1990 in Chicago. Mr. Bjes does not cite to his sources of information and his background reflects that he was not a gang investigator in Chicago in the 1990s or at any time.

The precise and comprehensive information about the Chicago "gang culture" presented by Mr. Bjes contradicts the content of police reports authored by the defendant officers who conducted the Wiley Brother murder investigation. This contrast leads me to two possible conclusions:

---

[1] Mr. Bjes's expert report is undated but was provided to me on September 8, 2023 by Plaintiff's counsel.

either the defendant Chicago Police Detectives were unaware of the described and detailed "gang culture" as presented by Mr. Bjes in his report, or the Detectives were aware of the inner workings of the Chicago-based Latin Kings but did not deem it relevant enough to include in their police reports. When examining these inconsistencies, which I will elaborate on in a subsequent section of my report, I took into account Mr. Bjes's law enforcement background as presented in his CV (Appendix A of his report). While Mr. Bjes has indeed had an admirable and distinguished career in law enforcement, it does not inherently qualify him to provide expert testimony on the intricate workings of Chicago gangs during the 1980s and 1990s. In fact, I noted a number of discrepancies when comparing Mr. Bjes's CV to his qualifications outlined in his expert report where he claims the following:

*I am a retired police officer from the Addison Police Department. ("APD"), where I served for twenty-one years. Throughout the entirety of my career, I dealt with gangs in some form, although for almost half my time with APD, gangs were my specific focus.*

*From approximately 2000 -2005 I served as a patrol officer in the patrol division. As a part of my duties in the patrol division, I responded to all types of calls for service, and conducted proactive policing. Proactive policing included gang enforcement and responding to gang related calls for service, investigating gang-related crime, interacting with identified gang members, and gathering intelligence on street gangs.*

*In 2005, I was assigned to the Criminal Investigations Division as a Gang Investigator. As a Gang Investigator, I focused exclusively on investigating gang related crimes, gathering and disseminating gang intelligence, and providing training to police officers and the public on street gang trends. A crime was considered gang-related where there was a gang nexus. For example:*

- *"Representing," which is a type of offense related to denotation of gang identity or alliance through hand signs, language, and clothing;*
- *"Recruitment," which is a type of offense related to recruiting members for a street gang;*
- *"Intimidation" which is a type of offense related to the intimidation of victims or witnesses;*
- *"Extortion," which involved gang members' efforts to compel membership or exact tribute for the gang;*
- *"Turf violations," which is a type of offense committed to disrespect another gang's territory;*
- *"Prestige," which involved acts committed either to glorify the street gang or to gain rank within the gang;*
- *"Personal conflicts," which involved conflicts related to leadership disputes or punitive action within the rank and file of a gang;*
- *"Vice," which is a term used to describe general activities involved in the street-level distribution of narcotics by street gang members; and*

- *"Retaliation," which included acts of revenge for offenses against the gang by rival gang members.*

Mr. Bjes's CV however illustrates a very different career and demonstrates that he has limited experience investigating gang related crimes. His listed assignments and work related responsibilities never mention any gang related investigative experience and certainly does not reflect any experience at all with Chicago gang activity in the 1980's or 1990's. It is worth noting that Mr. Bjes was not even a police officer when these murders occurred in Chicago.

According to his CV, Mr Bjes' was hired by the Addison Police Department in 2000 and served as a patrol officer there until 2005. Following his time as a patrol officer he was assigned as a School Resource Officer (SRO) where he served from 2005 – 2016. In 2016 he was promoted to the rank of patrol Sergeant where he served until January of 2022. I note that Mr. Bjes testified at his deposition that he worked in gang investigations for the Addison Police Department, this testimony is not borne out by his CV. In 2022 he was hired as the Assistant Director of Campus Safety for North Central College in Naperville, IL.

**CV Submitted by Mr. Bjes:**

| CV | Comment |
|---|---|
| **PROFESSIONAL SUMMARY** — Experienced Supervisor leading team member's on-time job completion. Assign tasks, train employees, provide feedback, mediate interpersonal conflicts and implement company procedures. Excellent communication and listening skills. Provide leadership and vision which drives teams to meet goals. | No mention Gang Investigation Experience. |
| **SKILLS** <ul><li>Training and Development</li><li>Conflict Resolution</li><li>Team Building</li><li>Background investigations</li><li>Performance Appraisals</li><li>Active shooter training</li><li>Personnel supervision</li><li>Search and seizure</li><li>Community Oriented Policing</li><li>Criminal Investigations</li><li>Nonlethal force apprehension</li><li>Lesson Planning</li><li>Classroom management</li><li>Class instruction</li><li>Lecturing</li><li>Curriculum Development</li></ul> | No mention Gang Investigation Experience. |
| *Assistant Director of Campus Safety for Patrol, 01/2022 Current North Central College-Naperville, Il* | No mention Gang Investigation Experience. |
| Patrol Sergeant, 05/2016 to 01/2022<br>Addison Police Department – Addison, IL<br>   Led teams by example, consistently demonstrating correct behaviors and enforcing policies and procedures.<br>      Commanded on-scene tactical teams during critical incidents.<br>      Structured assignments for subordinates based on current patrol priorities, special requirements and | No mention of being a gang specialist or investigating gang related crimes. |

| | |
|---|---|
| individual strengths…….. | |
| CEO and Founder of Blue Line Spectrum, <u>01/2018 to Current</u><br>Safety<br>    Provide comprehensive training to first responders relating to unique challenges of those affected by<br>Autism and intellectual disabilities<br>    Promote greater understanding between First Responders and those with disabilities.<br>    Provide basic understanding of Autism Spectrum Disorders and strategies for interactions with<br>individuals with an Autism Spectrum Disorder.<br>    Created guides and course materials to reiterate lecture information and help students. | No mention of being a gang specialist or investigating gang related crimes. |
| Adjunct Faculty, <u>01/2017 to Current</u><br>Waubonsee Community College – Sugar Grove, IL<br>    Creates, distributes, and reviews course syllabus.<br>    Presents prepared materials and supervises organized activities.<br>    Evaluates student performance promptly and accurately based on departmental rubrics<br>    Developed and kindled professional relationships with students to better communicate and enhance<br>instruction…….. | No mention of being a gang specialist or investigating gang related crimes. |
| Instructor, 09/2019 to Current<br>North East Multi-Regional Training – North Aurora, IL<br>    Provide instruction for law enforcement personnel in the areas of:<br>    Child Abuse<br>    Autism and developmental disabilities<br>    Report writing<br>    Interviewing victims and witnesses<br>    Mental health awareness | No mention of being a gang specialist or investigating gang related crimes. |
| <u>Detective/School Resource Officer, 07/2005 to 06/2016</u><br>Addison Police Department – Addison, IL<br>    Collaborated with administration and teachers to develop crisis plans.<br>    Investigated criminal matters occurring within school and on school property, compiling findings into<br>detailed activity reports.<br>    Conducted regular campus security patrols and handled incidents promptly to maintain overall safety for<br>staff, students and visitors.<br>    Performed conflict resolution between student body, parents, teachers, and administration.<br>    Provided security and safety to school staff and students. | No mention of being a gang specialist or investigating gang related crimes. |
| <u>Patrol Officer, 09/2000 to 07/2005</u><br>Addison Police Department – Addison, IL | |

| | |
|---|---|
| • Gathered necessary information for court appearances and testified as witness under oath in court.<br>• Organized criminal documents such as logs, records, reports and agendas to streamline processing and improve traceability.<br>• Gave presentations at community groups and public events highlighting work of police officers and special teams.<br>• Maintained positive community relations through active communication at crime scenes and assistance with programs such as mentoring underprivileged kids and teaching at Citizen's Police Academy events.<br>• Investigated incidents and crimes, collected evidence and recorded witness statements.<br>• Patrolled designated areas in patrol vehicle and on foot to identify security and safety issues. | No mention of being a gang specialist or investigating gang related crimes. |
| **ARTICLES AND MEDIA**<br>• Author: Bjes, Stefan P, *Responding to Autism: A Law Enforcement Approach*, ILEETA Journal 2019, Volume 9, Edition 1 (p.73-74)<br>• Author: Bjes, Stefan P, *What Cops Need to Know about Autism*, Calibre Press August 16, 2019 https://www.calibrepress.com/2019/08/copsandautism/<br>• Author: Bjes, Stefan P, *Wandering and Autism: What Cops Need to Know*, Calibre Press April 17, 2019 https://www.calibrepress.com/2020/04/what-cops-need-to-know-about-autism-wandering/<br>• Law Enforcement Approach, Calibre Press https://calibrepress.com/2020/10/communicating-with-autism-a-law-enforcement-approach/ October 2020<br>• Contributor: Bjes, Stefan P, For Officer, Missing Kids With Autism Hits Home, https://www.missingkids.org/blog/2020/for-officer-missing-kids-with-autism-hits-home October 2020<br>• Interview: Bjes, Stefan P, 'Autism Database' Seeks To Help Provide Help When Special Needs Kids Get Lost Or Go Missing, https://chicago.cbslocal.com/2021/04/13/autism-special-needs-database-lost-missing-children-app-police-tool/<br>• Author: Bjes, Stefan P, Interacting with Autism: A School Resource Officer Approach, https://www.campussafetymagazine.com/news/interacting-with-autism-a-school-resource-officer-approach/<br>• Interview: Bjes, Stefan P, Criminal Justice Evolution Podcast Ep 406: Stefan Bjes – Patrol Sergeant & Founder of Blue Line Safety Spectrum, LLC https://www.cjevolution.com/ep-406-stefan-bjes-patrol-sergeant-founder-of-blue-line-safety-spectrum-llc/<br>• Interview: Bjes, Stefan P, Entrust Compliance Podcast, Safe Policing for the Special Needs Community https://www.powerdms.com/entrust-compliance/safe-policing-for-the-special-needs-community<br>• Interview: Bjes, Stefan P Public Safety Innovators Podcast, https://psi.chat/episode/strategies-for-safe-interactions-with-autistic-individuals-with-stefan-bjes/<br>• Interview: Bjes, Stefan P Humanizing the Headset, People with Autism with Sgt. Stefan Bjes, https://anchor.fm/humanize911/episodes/Episode-18-People-With-Autism-with-SgtStefan-Bjes-e18qjf8. | No mention of being a gang specialist or investigating gang related crimes. |

**Based on my review of Mr. Bjes' qualifications and areas of expertise, I do not believe that he is qualified to render opinions related to gang activity occurring in Chicago during the 1980's and 1990's.**

Expert Report of Stefan Bjes:

1. Mr. Bjes opines that *"street gang culture played a heavy role in the murder of Kevin and Torrence Wiley, particularly in the motive for the murders."* Mr. Bjes reaches this conclusion based entirely on evidence that Plaintiff and witnesses claim was fabricated by the defendant officers, namely (1) Plaintiff's court-reported statement; (2) the statements of Gonzalez and Cruz; and (3) statement of Rosa Bello. Mr. Bjes does not reference any uncontested evidence that definitively supports the idea that this crime was motivated by gang-related factors, aside from the fact that the shooting occurred in an area known for prevalent gang violence.

2. The materials I've examined in this case indicate that the Plaintiff does not dispute his affiliation with the Latin King street gang, nor does he deny the membership of his co-defendants in this criminal group. However, it's essential to note that Mr. Maysonet's membership in the Latin King street gang, by itself, does not establish that this crime had gang-related motives. This is because Mr. Maysonet and his co-defendants maintain that they had no involvement in the crime.

3. As I previously detailed in my initial report, beyond the evidence that the Plaintiff claims to be fabricated, there is no supporting evidence for Mr. Bjes' assertion that this crime was motivated by gang affiliations. Mr. Bjes appears to imply that every crime occurring in the Humboldt Park area is gang-motivated solely because gangs were prevalent in the region. However, this line of reasoning is flawed, as it commits a logical fallacy by assuming that all crimes in such areas are gang-related, even though non-gang-motivated crimes can also occur in communities with gang violence. Importantly, there was nothing in the investigative file prior to Plaintiff's arrest for the murder that suggested that this shooting was gang motivated and plenty to suggest that the crime was not gang-motivated.

4. First, the backgrounds and histories of the victims do not indicate their involvement as members of any gang. During their depositions, the Defendant Officers concurred that considering the victims' backgrounds and prior criminal records, there was no apparent indication that they were affiliated with any gang or engaged in gang-related activities.[2]

5. Second, occurrence witnesses who heard the shooting described an argument between two African American men that lasted for approximately an hour before the shooting. She did not describe hearing any gang slogans being shouted, did not hear any dispute that appeared to involve gang members, and did not hear the voices of third parties, including voices of individuals speaking with a Spanish or Puerto Rican accent.[3]

---

[2] Deposition of Fernando Montilla, August 27, 2019 (pgs. 351 – 354); Deposition of Edward Mingey, September 11, 2019 (pgs. 152 – 158); Deposition of Lee Epplen, August 28, 2019 (pgs. 207 -216)
[3] RFC-Maysonet 55-56

6. Third, the reporting detectives' notes in their initial reports that the motive for the shooting was unknown. The first time any detective reports that the shooting was gang-motivated was in the cleared/closed report submitted over three months after the shooting and only after the defendant officers obtained confessions and statements that Plaintiffs maintain were fabricated. Ultimately, the determination of whether the contested evidence indicating that the crime had gang-related motivations is accurate or not rests with a jury, not with Mr. Bjes. Examining the investigative materials independently of the disputed evidence, there is no indication that this was a gang-motivated crime, and instead, there is substantial evidence suggesting otherwise.

7. Mr. Bjes also opined that "[g]ang culture also played a heavy role in the criminal investigation, as detectives followed connections based on similar crimes with the same type of gun and based on the gang territory where the crimes occurred." As discussed above, investigators did not report any gang theory until after they had charged Plaintiff. Although Defendant Mingey claimed that he believed there might be a connection between a drive-by shooting that occurred on July 3, 1990 for which Plaintiff was arrested and the Wiley brothers murders because ballistics evidence showed that both shootings involved the use of .9mm ammunition. But Sergeant Mingey made no effort to use the ballistics evidence to connect the two crimes in July 1990 when he claimed he thought the two crimes might be connected. Mingey's failure to attempt to make a forensic connection between the July 3, 1990 drive-by shooting and the Wiley brothers' shooting suggests the exact opposite, namely, Sergeant Mingey did not see a connection between these offenses. Only after Plaintiff was charged with both crimes was ballistic testing conducted and the results showed that there was no connection between the gun used in the July 1990 shooting and the Wiley brother's shooting. Thus, Mr. Bjes' claim that defendant followed connections "based on similar crimes with the same type of gun" is not reflected in the investigative record. Mingey did not attempt to make any connection until after Plaintiff was arrested and charged and the results of that forensic analysis did not reveal that the shootings involved the same weapon.

I reserve the right to supplement and/or revise my opinion(s) and this report in response to any further information, including any additional documents or testimony, which may be brought to my attention.

*Thomas J. Tiderington*

/s/Thomas J. Tiderington
1/19/2024